## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 22-1378-MN |
| ) | |
| MASIMO CORPORATION and ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| MASIMO CORPORATION and CERCACOR ) | |
| LABORATORIES, INC., ) | |
| ) | |
| Counter-Claimants, ) | |
| ) | |
| v. ) | |
| ) | |
| APPLE INC., ) | |
| ) | |
| Counter-Defendant. ) | |

### APPLE'S ANSWERING BRIEF TO SOUND UNITED'S MOTION TO DISMISS

OF COUNSEL:

John M. Desmarais
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant*
*Apple Inc.*

Dated: January 10, 2023
10540649 / 12209.00052

**<u>TABLE OF CONTENTS</u>**

<u>Pages</u>

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF THE ARGUMENT ........................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

LEGAL STANDARD...............................................................................................................5

ARGUMENT ...........................................................................................................................5

I.      APPLE PLAUSIBLY ALLEGED SU'S DIRECT INFRINGEMENT..............................5

II.     APPLE PLAUSIBLY ALLEGED SU'S INDIRECT INFRINGEMENT..........................8

        A.      Apple Plausibly Alleged SU's Knowledge Of, And/Or Willful Blindness
                Of, The Patents-in-Suit And Infringement To Support Apple's Claims For
                Indirect Infringement. ..........................................................................................10

                1.      Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or
                        Willful Blindness Of, The Patents-In-Suit And Infringement Via
                        SU's Collaboration With Masimo To Launch The Copycat W1
                        Product. ....................................................................................................10

                2.      Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or
                        Willful Blindness Of, The Patents-In-Suit And Infringement Via
                        Allegations of Masimo's Knowledge, Which Should Be Imputed
                        To Its Subsidiary SU.................................................................................12

                3.      Apple Plausibly Alleged SU's Post-Suit Knowledge Before This
                        Court. ........................................................................................................15

        B.      Apple Adequately Pleaded Induced Infringement.................................................16

        C.      Apple Adequately Pleaded Contributory Infringement. ........................................18

III.    IF THE COURT INTENDS TO GRANT SU'S MOTION, APPLE SHOULD BE
        GIVEN LEAVE TO AMEND. ........................................................................................19

CONCLUSION........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*10x Genomics, Inc. v. Celsee, Inc.*,
C.A. No. 19-862-CFC-SRF, 2019 WL 5595666 (D. Del. Oct. 30, 2019) ..............................10

*Align Tech., Inc. v. 3Shape A/S*,
339 F. Supp. 3d 435 (D. Del. 2018).................................................................................8, 11

*Apple Inc. v. Masimo Corp. et al.*,
C.A. No. 22-1377-MN (D. Del. Oct. 20, 2022) .................................................................1, 7

*APS Tech., Inc. v. Vertex Downhole, Inc.*,
C.A. No. 19-1166-MN, 2020 WL 4346700 (D. Del. July 29, 2020)......................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................5

*Celanese Int'l Corp. v. Anhui Jinhe Indus. Co.*,
C.A. No. 20-1775-LPS, 2021 WL 7209494 (D. Del. Dec. 10, 2021).................................15

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
935 F. Supp. 2d 772 (D. Del. 2013).................................................................................17

*Foman v. Davis*,
371 U.S. 178 (1962).................................................................................................... 19-20

*Frac Shack Inc. v. Afd Petroleum Tex.*,
No. 7:19-cv-00026-DC, 2019 WL 3818049 (W.D. Tex. June 13, 2019) ..............................15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011).............................................................................................................9

*Groove Digital, Inc. v. Jam City, Inc.*,
C.A. No. 18-01331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) ..............................8, 13

*Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*,
104 F. App'x 721 (Fed. Cir. 2004) ...................................................................................12

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012).................................................................................... 16-17

*Intellectual Ventures I LLC v. Nikon Corp.*,
  935 F. Supp. 2d 787 (D. Del. 2013)...................................................................17

*Jones v. Lapina*,
  450 F. App'x 105 (3d Cir. 2011) .....................................................................5, 7

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
  C.A. No. 17-313-MSG, 2018 WL 834583 (D. Del. Feb. 12, 2018) ....................6, 18

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)......................................................................16, 19

*Lytone Enterprise, Inc. v. Agrofresh Sols., Inc.*,
  C.A. No. 20-678-GBW-SRF, 2021 WL 534868 (D. Del. Feb. 12, 2021) .............13

*Masimo Corp. v. Apple Inc.*,
  No. 20-cv-48-JVS-JDE (C.D. Cal. Jan. 9, 2020) ..............................................3-4

*McDermott v. Clondalkin Grp., Inc.*,
  649 F. App'x 263 (3d Cir. 2016) ........................................................................9

*REC Solar Pte. Ltd. v. Hanwha Sols. Corp. et al.*,
  C.A. No. 20-1622-MN, D.I. 50 (D. Del. Nov. 30, 2020).....................................15

*Rhodes Pharms. L.P. v. Indivior, Inc.*,
  C.A. No. 16-1308-MSG, 2018 WL 326405 (D. Del. Jan. 8, 2018)..............9, 16, 18

*RK Sols., LLC v. Vitajoy USA Inc.*,
  No. 218CV06608CASEX, 2018 WL 6179492 (C.D. Cal. Nov. 26, 2018) .............14

*Shire ViroPharma Inc. v. CSL Behring LLC*,
  C.A. No.17-414-MSG, 2018 WL 326406 (D. Del. Jan. 8, 2018)...........................6

*Softview LLC v. Apple Inc.*,
  C.A. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ......................14

*Telecomm Innovations, LLC v. Ricoh Co., Ltd.*,
  966 F. Supp. 2d 390 (D. Del. 2013)...................................................................17

*Walker Digital, LLC v. Facebook, Inc.*,
  852 F. Supp. 2d 559 (D. Del. 2012)..............................................................14, 18

*WCM Indus., Inc. v. IPS Corp.*,
  721 F. App'x 959 (Fed. Cir. 2018) .....................................................................13

## STATUTES & RULES

35 U.S.C. § 271(a) .............................................................................................6

FED. R. CIV. P. 12(b)(6) ................................................................................................1, 5

FED. R. CIV. P. 12(e) ........................................................................................................6

FED. R. CIV. P. 15(a)(2) ..................................................................................................19

FED. R. EVID. 201(e) .........................................................................................................7

Plaintiff Apple Inc. ("Apple") respectfully submits this answering brief in opposition to Defendant Sound United, LLC's ("SU") Motion to Dismiss.

## NATURE AND STAGE OF THE PROCEEDINGS

On October 20, 2022, Apple sued Defendant Masimo Corporation ("Masimo") and SU (collectively, "Defendants") for direct, indirect, and willful infringement of six utility patents related to smart watches, namely U.S. Patent Nos. 10,076,257, 10,627,783, 10,942,491, 10,987,054, 11,106,352, and 11,474,483 (together, "the Patents-in-Suit"). *See* D.I. 1 ("Complaint"). Apple also sued Masimo and SU for their direct and willful infringement of Apple's design patents in a companion case currently pending before this Court. *See* Complaint (D.I. 1), *Apple Inc. v. Masimo Corp. et al.*, C.A. No. 22-1377-MN (D. Del. Oct. 20, 2022). In Apple's Complaint in this case, Apple alleged that Masimo and SU directly infringe the Patents-in-Suit by, among other acts, selling, offering to sell, and importing a smart watch called "the Masimo W1" ("W1"), and indirectly infringe those patents by inducement and contributory infringement. *Id.* On December 12, 2022, Masimo answered the Complaint and SU moved to dismiss Apple's claims of direct and indirect infringement against SU for failure to state a claim.[1] D.I. 13; D.I. 14 ("Motion"); Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF THE ARGUMENT

Masimo's CEO represented to the public and Masimo's investors that Masimo acquired SU to distribute W1 and, several months later, Masimo and SU together launched W1, offering it

---

[1] SU did not move to dismiss Apple's claims of enhanced damages in this case based on an incorrect assertion that the Complaint does not include such claims. Mot. at 8 n.1. As shown herein, the Complaint includes plausible allegations of copying and SU's willful collaboration with Masimo to knowingly sell the copycat W1, which are more than sufficient to establish Masimo's and SU's willfulness at the pleading stage. To the extent SU improperly seeks to broaden its Motion on reply to dismiss Apple's claims for enhanced damages, that request should be denied at least for the reasons herein and in Apple's answering brief in response to SU's motion to dismiss in Apple's companion case asserting design patent infringement.

for sale in the United States. Those facts, as alleged in the Complaint, are sufficient to support a plausible allegation that SU directly infringes the Patents-in-Suit by operating in collaboration with Masimo (indeed, as a subsidiary) to sell, offer to sell, or import W1. SU's Motion should therefore be denied as to Apple's claims of direct infringement.

SU's Motion should also be denied as to Apple's claims of indirect infringement because the Complaint: (1) plausibly alleges SU's pre-suit knowledge of, and/or willful blindness of, the Patents-in-Suit and infringement via: (A) allegations that SU collaborated with Masimo to sell a copycat product such that SU at least should have recognized infringement; and (B) allegations of Masimo's deliberate decision to make a product that rips off Apple Watch, coupled with knowledge of (or at least willful blindness of) the Patents-in-Suit, which should be imputed to SU because it is a subsidiary acquired specifically to sell, offer to sell, and/or import W1[2]; (2) plausibly alleges before this Court SU's post-suit knowledge of, and/or willful blindness of, the Patents-in-Suit and infringement; and (3) pleads claims of inducement and contributory infringement in more than sufficient detail to provide SU fair notice of Apple's indirect infringement claims. For at least those reasons, SU's Motion should be denied in all respects.

**FACTUAL BACKGROUND**

Since its founding in 1989, Masimo has been a hospital equipment manufacturer that, until August 2022, had never offered a watch. Compl. ¶¶ 3, 21, 24–25. In or around 2018, however, Masimo noticed that the nature of health technology was changing—driven by innovative companies like Apple—to evince a new focus on consumer health and well-being in the overall consumer wearables segment, and more specifically the broad smart watch segment. *Id.* ¶ 28. For

---

[2] SU's Motion focuses on the Complaint's allegations of SU's knowledge of the Patents-in-Suit rather than SU's knowledge of infringement or a risk of infringement. Mot. at 3. However, as shown herein, the Complaint sufficiently pleaded SU's knowledge of both the Patents-in-Suit and infringement in any event.

example, Masimo noted to investors in 2018 that leading technology companies, including specifically Apple, had expanded into consumer health technology.  *Id.*  In 2020, Masimo again referenced Apple's success in its 10-K and remarked: "If we are unable to successfully compete against [Apple], our financial performance could decline."  *Id.*  Masimo referenced Apple again in its 2021 10-K, this time highlighting Apple Watch.  *Id.*  Masimo told investors: "To effectively compete, we may need to expand our product offerings and distribution channels. . . ."  *Id.*

Seeing the continued success of Apple Watch, Masimo tried to pivot to focus on the consumer.  *Id.*  Specifically, Masimo set out to launch a smart watch.  *Id*. ¶¶ 22, 37, 39.  But Masimo had never designed a smart watch.  *Id*. ¶ 29.  Delivering a high-quality consumer product to market from scratch would have taken years of investment and innovation that Masimo did not have.  *Id.*  Thus, rather than take the necessary time to develop its own innovations to make W1 attractive to consumers, Masimo copied Apple Watch's patented designs and brought carefully timed lawsuits to try to kick Apple out of the smart watch segment.  *Id*. ¶ 22.

In January 2020, more than 18 months before the commercial release of W1, Masimo brought a patent lawsuit against Apple targeting Apple Watch.  *Id*. ¶ 30.  Importantly, ***Masimo carefully studied Apple's IP for its litigation campaign***.  *Id*. ¶ 40.  Indeed, Masimo cited numerous Apple Watch patent publications in its complaints in federal court including, for example, Apple's U.S. Patent Application Publication 2019/0072912, titled "Wearable Electronic Device with Electrodes for Sensing Biological Parameters," and Apple's U.S. Patent Application Publication 2019/0090806, titled "Optical Sensor Subsystem Adjacent a Cover of an Electronic Device Housing," each of which relates to components of Apple Watch.  *See id*.; Complaint (D.I. 1) at ¶¶ 45, 58, 71, 73, 86, 101, 114, 127, 141, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE,

(C.D. Cal. Jan. 9, 2020); *id.*, U.S. Patent Pub. No. 2019/0072912 (D.I. 1-11); *id.*, U.S. Patent Pub. No. 2019/0090806 (D.I. 1-12).

Later, in June 2021 and approximately one year prior to the eventual launch of W1, Masimo filed a complaint before the U.S. International Trade Commission (ITC), an administrative agency, seeking an order that bans Apple Watch from being imported into the United States. Compl. ¶ 31.

Critically, Masimo's sudden pivot into watches required consumer distribution channels for W1 that Masimo lacked. *Id*. ¶ 38. With the ITC lawsuit against Apple ongoing, Masimo acquired SU for the express purpose of bringing W1 to market as quickly as possible. *Id*. ¶ 37. In February 2022, Masimo announced that it would acquire SU for $1.025 billion. *Id.* Masimo's stated reason for the acquisition, which closed in April 2022, was to "leverage SU's expertise across consumer channels to ***accelerate distribution*** of the ***combined company's*** expanding portfolio of consumer-facing healthcare products." *Id.*[3] Masimo's CEO stated on an earnings call in February 2022: "We like SU the most for several reasons. One, it's [(sic)] management team. ***Two, the distribution channel, that is essential to what we are doing as an important product for us which is the Masimo Watch***." *Id.* Masimo admits to making each of those statements. *See* D.I. 15 ¶ 37.

When Masimo and SU ultimately launched W1 in the United States on August 31, 2022, it was clear that W1 had copied Apple Watch. Compl. ¶¶ 3, 4, 8, 22, 34, 36, 37, 38, 40. As more details emerged, it was clear that the copying was expansive. *Id.* ¶ 36. W1 not only copied Apple Watch's overall look and feel, W1 also copied Apple's patented features and functionalities from Apple Watch. *Id.*

---

[3] All emphases are added unless otherwise noted.

Thus, the Complaint alleges that ***both*** Masimo ***and*** SU collaborated to sell a product (W1) that copies Apple Watch such that SU at least should have recognized infringement. The Complaint further pleads facts plausibly showing that Masimo's deliberate decision to make a product that blatantly rips off Apple Watch, coupled with the knowledge of (or at least willful blindness of) the Patents-in-Suit, should be imputed to SU because it is a subsidiary acquired specifically to sell, offer to sell, and/or import W1. *Id.* ¶¶ 3, 4, 8, 22, 34, 36–38, 40.

## LEGAL STANDARD

A complaint must set forth sufficient factual matter, accepted as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56. When considering a Rule 12(b)(6) motion to dismiss, courts consider the complaint in its entirety, documents incorporated by reference, and matters of which a court may take judicial notice, which include the record in other litigations. *See Jones v. Lapina,* 450 F. App'x 105, 108 (3d Cir. 2011) ("A court may take judicial notice of the record from a previous court proceeding between the parties.").

## ARGUMENT

## I.    APPLE PLAUSIBLY ALLEGED SU'S DIRECT INFRINGEMENT.

The Complaint plausibly alleged that SU directly infringes the Patents-in-Suit by operating in collaboration with Masimo to sell, offer for sale, or import W1. At the outset, the Complaint provides that Apple is seeking "relief ***jointly***, ***severally***, ***or in the alternative*** against Masimo ***and*** its wholly owned subsidiary SU ***arising from the making, using, importing into the United States, offering for sale, and/or selling of the same infringing product***, [] W1." Compl. ¶ 8. Indeed, the

5

Complaint alleges that ***both*** Masimo ***and*** SU "launched" W1 and recites how ***Masimo*** described Masimo and SU as a "***combined company***" and "***essential***" to selling W1.  *Id.* ¶¶ 22, 37.  In other words, the Complaint alleges specific acts of direct infringement by SU: sale, offer for sale, and/or importation of W1.  *Id.*  That express allegation, which must be taken as true and viewed in the light most favorable to Apple, is alone sufficient to deny SU's Motion as to direct infringement. *See* 35 U.S.C. § 271(a).[4]

Contrary to SU's assertion, *see* Mot. at 6, Apple's use of the word "launch" is more than sufficient to plausibly allege SU's sales and/or offers to sell and to provide SU fair notice of Apple's claim for relief.[5]  *See, e.g.*, *Shire ViroPharma Inc. v. CSL Behring LLC*, C.A. No.17-414-MSG, 2018 WL 326406, at *3-5 (D. Del. Jan. 8, 2018) (denying motion to dismiss complaint that alleged defendants "launch[ed]" infringing products).  Belying its assertion that "launch" is vague or conclusory, SU uses that exact term in its opening brief, admitting that "[e]arlier this year, Masimo ***launched*** its own wrist-worn device, Masimo's W1™ watch[.]"  Mot. at 1.  There can therefore be no credible dispute that the Complaint provides fair notice of Apple's claims against SU based on the allegation that SU  (with Masimo) "launched" the infringing W1 product.

Further, the Complaint includes more than sufficient facts from which the Court can reasonably infer SU's collaboration with Masimo to sell, offer to sell, and/or import W1.  *See Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, C.A. No. 17-313-MSG, 2018 WL 834583, at *10 (D. Del. Feb. 12, 2018) ("At the pleading stage, the question before the Court on defendants' motions to dismiss is whether the plaintiff has plead sufficient facts for the Court to *infer*" the conduct alleged) (internal quotations omitted) (emphasis in original).  The Complaint alleges that Masimo

---

[4] In fact, Apple made identical allegations against Masimo, which did not file a motion to dismiss and thus does not dispute that the Complaint plausibly alleges direct infringement.

[5] Notably, SU did not seek a more definite statement under Federal Rule of Civil Procedure 12(e).

acquired SU for over $1 billion dollars for the *specific purpose* of offering for sale and selling W1. *See* Compl. ¶ 37.  For example, the Complaint describes how *Masimo*: (1) sought to "leverage [SU]'s expertise . . . to *accelerate distribution* . . . of consumer-facing healthcare products"; (2) characterized Masimo and SU as a "*combined company*[]" and "*essential*" to selling W1; (3) stated that the purpose of SU's acquisition was to "*bring [] W1 to the market* as quickly as possible"; and (4) planned to use "*SU's expertise across consumer channels*" for W1's distribution.  *Id.*  Indeed, SU even admitted that Masimo announced that it would acquire SU "*in part to help distribute [] W1®*."  Defendants' Opp. to Mot. for Expedited Discovery (D.I. 21) at 15, *Apple Inc. v. Masimo Corp. et al.*, C.A. No. 22-1377-MN (D. Del. Oct. 20, 2022).[6]  Apple's Complaint further alleges that Masimo *and* SU accomplished their goal of "launch[ing]" W1 on August 31, 2022, just four months after Masimo's acquisition of SU closed in April 2022.  Compl. ¶ 22, 37, 39.  With that context, the fact that W1 was released just four months after Masimo acquired SU makes it more than plausible that SU was, and currently is, involved with the distribution and sale of W1.  *Id.* ¶ 39.

SU speciously claims that Apple's allegations are inconsistent because Apple also alleged that Masimo sells or offered to sell W1, and because an August 2022 press release explains that consumers may purchase W1 on Masimo's website.  Mot. at 6.  But as shown above, it is more than plausible that sales made from Masimo's website are distributed by and/or through SU— Masimo's billion-dollar distributor—as evidenced at least by Masimo's own statements regarding SU's acquisition and SU's role in selling and distributing W1, as well as the timing of the

---

[6] Apple respectfully requests that the Court take judicial notice of all relevant records addressed herein from Masimo's litigations and the United States Patent and Trademark Office pursuant to Federal Rule of Evidence 201(e) at least because they are matters of public record.  *Lapina,* 450 F. App'x at 108.

acquisition and the launch of W1 thereafter.  Compl. ¶¶ 37, 39, 40.  Those facts distinguish SU's

cited case, *SIPCO, LLC v. Streetline, Inc.*, in which the Court dismissed a claim based on only one

statement on an accused infringer's website that its "offerings" include a product that was

"*clear[ly]*" the accused infringer's subsidiary's.  2018 WL 762335, at *1 (D. Del. Feb. 7, 2018).

SU is also wrong that the Complaint contains only a "formulaic recitation of the legal

elements of direct patent infringement."  Mot. at 6.  Instead, the Complaint provides: (1) detailed

background on Apple's products, innovations embodied in which are protected by the Patents-in-

Suit, among other intellectual property (Compl. ¶¶ 12–20); (2) detailed background regarding

Masimo's and SU's accused W1 product (Compl. ¶¶ 29–40); (3) what each of the Patents-in-Suit

is generally directed to (Compl. ¶¶ 41–145); (4) exemplary infringed claims (*id.*); and (5) how

Masimo's and SU's accused W1 product infringes an exemplar claim of each Patent-in-Suit and

the nature of Masimo's and SU's infringement (*id*).  Those allegations are more than sufficient to

provide SU fair notice of Apple's claims and to plausibly state Apple's claim for relief.  Thus,

contrary to SU's summary of the Complaint, the allegations include far more than a "formulaic

recitation of the legal elements[.]"  Mot. at 6; *Groove Digital, Inc. v. Jam City, Inc.*, C.A. No. 18-

1331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (finding complaint that "identifies the

asserted claims, and explains the basis of the infringement allegation" sufficient at the pleading

stage").

## II.    APPLE PLAUSIBLY ALLEGED SU'S INDIRECT INFRINGEMENT.

Apple's Complaint sufficiently states claims for induced and contributory infringement.

To plausibly allege either form of indirect infringement in this District, a plaintiff must "allege

facts allowing the reasonable inference that the defendant had knowledge of the patent-in-suit in

the key time period, and that its products infringed that patent."  *Align Tech., Inc. v. 3Shape A/S*,

339 F. Supp. 3d 435, 447 (D. Del. 2018) (internal quotations omitted).  The knowledge requirement

must be met by showing actual knowledge or willful blindness.  *Rhodes Pharms. L.P. v. Indivior, Inc.*, C.A. No. 16-1308-MSG, 2018 WL 326405, at *6 (D. Del. Jan. 8, 2018); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.").  In the Third Circuit, "pleading upon information and belief is permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control."  *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal quotations omitted).

In addition to knowledge, to adequately plead induced infringement, a plaintiff must allege: "(1) direct infringement, and (2) that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *Rhodes*, 2018 WL 326405, at *4 (internal quotations omitted).  To adequately plead contributory infringement, the Complaint must plausibly allege: "(1) an offer to sell, sale, or import; (2) a component . . . [of a patented machine] constituting a material part of the invention; (3) knowledge by the defendant that the component is especially made or especially adapted for use in an infringement of such patents; and (4) the component is not a staple or article suitable for substantial non-infringing use."  *See id.* at *8.

Apple met its pleading burden here.  ***First***, Apple plausibly alleged SU's pre-suit knowledge of, and/or willful blindness of, the Patents-in-Suit and its  infringement via: (A) allegations that SU collaborated with Masimo to sell a copycat product such that SU at least should have recognized infringement; and (B) allegations of Masimo's deliberate decision to make a product that rips off Apple Watch, coupled with knowledge of (or at least willful blindness of) the Patents-in-Suit and infringement, which should be imputed to SU because it is a subsidiary acquired specifically to sell, offer to sell, and/or import W1.  ***Second***, service of Apple's Complaint

further establishes the requisite knowledge and intent for a plausible claim against SU for its post-suit conduct before this Court. ***Third***, the Complaint pleads the other elements required for claims of inducement and contributory infringement in more than sufficient detail to provide SU notice of Apple's indirect infringement claims.  SU's Motion should therefore be denied.[7]

> **A.      Apple Plausibly Alleged SU's Knowledge Of, And/Or Willful Blindness Of, The Patents-in-Suit And Infringement To Support Apple's Claims For Indirect Infringement.**

> > **1.      Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or Willful Blindness Of, The Patents-In-Suit And Infringement Via SU's Collaboration With Masimo To Launch The Copycat W1 Product.**

Apple's allegations of indirect infringement against SU include allegations that ***both*** Masimo ***and*** SU: (1) knew about Apple Watch and (2) collaborated to sell and offer to sell an infringing product—W1—that copies the patented features and functionalities of Apple Watch. Compl. ¶¶ 3, 4, 8, 22, 34, 36, 38, 40.  Courts in this District regularly find those types of allegations sufficient to plausibly allege pre-suit knowledge of, or willful blindness of, the Patents-in-Suit and infringement.  For example, in *10x Genomics*, the district court found allegations that, "on information and belief, [the defendant] regularly monitors [the plaintiff's] patent portfolio" and "cop[ied] [the plaintiff's] technology," and the plaintiff's description of "the allegedly infringing [product] as a competing product copying [the plaintiff's] technology" sufficient to plausibly allege "pre- and post-suit knowledge of the patents-in-suit" for indirect infringement.  *See, e.g., 10x Genomics, Inc. v. Celsee, Inc.*, C.A. No. 19-862-CFC-SRF, 2019 WL 5595666, at *8, *11–12 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, No. CV 19-862-CFC/SRF, 2019

---

[7] Apple's allegations that SU directly infringed the Patents-in-Suit by "launch[ing]" (i.e., selling, offering to sell, and/or importing) W1 in collaboration with Masimo—allegations that are described above and incorporated herein by reference—are more than sufficient to overcome SU's assertion that the Complaint fails to state a claim for enhanced damages based on a failure to allege that SU committed any infringing acts separate and apart from Masimo.  Mot. at 3, 8 n.1.

WL 6037558 (D. Del. Nov. 14, 2019).  Likewise, in *Align Technology*, the district court found allegations of pre-suit knowledge of the patents-in-suit and infringement to be plausible based on, among other things, knowledge of plaintiff's practicing products, direct competition between the plaintiff and the defendant, and the defendant's sale of "knockoff products."  *Align*, 339 F. Supp. 3d at 447–48.

This Court should reach the same holding as other courts in this District, including those above, and find that the allegations in the Complaint are sufficient to plead the knowledge requirement of SU's indirect infringement.  *See, e.g.,* Compl. ¶¶ 3, 4, 8, 22, 34, 36, 38, 40.  Indeed, the Complaint's allegations that both Masimo and SU  (1) knew about Apple Watch and (2) collaborated to sell and offer to sell the copycat W1 product track with *10x Genomics* and *Align Technology*.  As in those cases, the allegations here are more than sufficient to plausibly allege SU's pre-suit knowledge of, or willful blindness of, the Patents-in-Suit and a risk of infringement that was either known or should have been known.

Further, Sound United's knowledge or willful blindness to the Patents-in-Suit and infringement based on its collaboration with Masimo to knowingly sell the copycat W1 product are made even more plausible by the facts alleged in the Complaint regarding the circumstances surrounding Masimo's and SU's infringement.  For example, Masimo acquired SU to create a "**combined company**[]" for the specific purpose of distributing the copycat W1 product during a litigation campaign against Apple through which **Masimo carefully studied Apple's IP**.  Compl. ¶¶ 37, 40.  And in August 2022, just four months after the close of SU's acquisition in April 2022, Masimo and SU **together** "launch[ed]" W1.  *Id.* ¶¶ 8, 22, 37, 39.  Each of those facts, which must be taken as true and viewed in the light most favorable to Apple, further supports the plausibility of Apple's allegations of willful infringement against both Masimo and SU.

Finally, the cases that SU relies on provide it no support as the allegations at issue in those cases do not provide the level of detail and plausibility that Apple's allegations do in this case. For example, in *LoganTree LP v. Omron Healthcare, Incorporated*, the complaint was so deficient that this Court could not even decipher if the plaintiff was "asserting direct infringement or indirect infringement or both." C.A. No. 18-1617-MN, 2019 WL 4538730, at *4 (D. Del. Sept. 19, 2019). Further, the plaintiff conceded in its answering brief that it failed to plead knowledge of the asserted patent. *Id.* The complaint in *Boston Scientific Corporation v. Nevro Corporation* was similarly deficient as evidenced by the Court's finding that the plaintiff "[made] no attempt to connect specific components of the accused system to elements of the asserted claims." 415 F. Supp. 3d 482, 490 (D. Del. 2019). As shown above, Apple pleaded much more than that here.

> ### 2. Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or Willful Blindness Of, The Patents-In-Suit And Infringement Via Allegations of Masimo's Knowledge, Which Should Be Imputed To Its Subsidiary SU.

Even if the allegations regarding SU's own pre-suit knowledge were not sufficient—though as explained above, they are sufficient—Apple's Complaint makes plausible allegations regarding SU's corporate parent Masimo's pre-suit knowledge of the Patents-in-Suit and infringement that should be imputed to SU. For example, Masimo's deliberate copying and pre-suit knowledge of the Patents-in-Suit and the risk of infringement should be imputed to SU because it is a subsidiary acquired specifically to facilitate Masimo's and SU's sale of the copied W1. While one corporate affiliate's knowledge of a patent is not necessarily imputed to another, such knowledge can be imputed in certain factual circumstances. *See, e.g., Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*, 104 F. App'x 721, 723, 725 (Fed. Cir. 2004) (holding that notice of infringement of patent for athletic shoe to President of FUBU could be imputed to licensee of FUBU trademark for shoes, due to control FUBU had over shoe designs, and desire to avoid a "perverse incentive" "to disguise the true identity of an infringing party" through "[s]everal layers

of corporate disguise").  Similarly here, Masimo's copying and pre-suit knowledge of the Patents-in-Suit should be imputed to its collaborator SU.

> ***First***, it is undisputed that Apple alleged sufficient facts regarding Masimo's willful infringement of the Patents-in-Suit (e.g., Masimo's ***knowledge*** of the Patents-in-Suit and the risk of infringement).[8]   Indeed, Apple plausibly alleged that Masimo monitored Apple's ongoing success, "copied Apple while filing lawsuits to try to prevent sales of Apple Watch," "carefully studied Apple's IP," "cited numerous Apple Watch patents in its complaints in federal court," and incorporated Apple's patented technology into W1.  Compl. ¶¶ 3, 22, 34, 36–37, 40.  Those allegations firmly establish Masimo's pre-suit knowledge or willful blindness of the Patents-in-Suit and infringement.  *See* Section II.A.1, *supra*; *see also, e.g., Groove Digital*, 2019 WL 351254, at *4 ("The complaint alleges that [defendant] monitors patent litigation against its competitors and has therefore been aware of the [patent-in-suit] . . . . That allegation is not implausible and, if true, would support a claim of willful infringement") (internal quotations and citations omitted); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 971 (Fed. Cir. 2018) (allowing circumstantial evidence to prove knowledge of patents, including testimony from employee who monitored the patent-holder's products, noted when some of the patent holder's patents were pending, and the infringer's "culture of copying").

> ***Second***, Masimo's copying and knowledge of the Patents-in-Suit and infringement should be imputed to SU because, in jointly planning and launching W1, it is more than plausible that Masimo shared its knowledge of the Patents-in-Suit and infringement with SU.  *See Lytone Enterprise, Inc. v. Agrofresh Sols., Inc.*, C.A. No. 20-678-GBW-SRF, 2021 WL 534868, at *4 (D.

---

[8] Masimo did not seek to dismiss Apple's claim for indirect infringement against Masimo based on a failure to allege the requisite knowledge or intent of Masimo.

Del. Feb. 12, 2021) (finding pre-suit knowledge of subsidiary based in part on knowledge of and relationship with parent); *Softview LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027, at *5-6 (D. Del. July 26, 2012) (finding parent/subsidiary relationship and three different alleged bases of pre-suit knowledge to be, individually, "inadequate allegations," but denying motion to dismiss because, "[t]aken in combination, the Court concludes that [the plaintiff] has alleged a plausible basis from which one might reasonably infer that [the defendant] had knowledge of the patents-in-suit prior to this litigation"); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 568 (D. Del. 2012) (denying motion to dismiss in part "[b]ecause Zappos is a wholly owned subsidiary of Amazon, [and] the court can infer that Zappos also had pre-suit knowledge" based on Amazon's pre-suit knowledge).

Indeed, Masimo acquired SU during Masimo's litigation campaign, during which Masimo carefully studied Apple's IP, specifically ***to utilize SU's management team*** to launch W1.  Compl. ¶¶ 37, 40.  Masimo acquired SU to create a "***combined company***[.]"  *Id*. ¶ 37.  Masimo copied Apple Watch because Masimo ***never previously offered a watch in its 33-year history***, and Masimo and SU needed to trade off Apple's brand, which is highly familiar to and respected by consumers.  *Id*. ¶ 3.  Thus, contrary to SU's suggestion, Apple does not seek to impute Masimo's knowledge to SU based merely on their parent/subsidiary relationship.  Mot. at 1-2.  Rather, the Complaint alleges a much closer relationship specifically as to W1 between Masimo and SU demonstrating that SU is and was a partner with Masimo—indeed, a "combined company[]"—in planning and launching the copycat W1 that incorporates Apple's patented features and functionality.  *See* Compl. ¶¶ 8, 36, 37.  Imputation of Masimo's knowledge to SU is warranted as a result.  *See RK Sols., LLC v. Vitajoy USA Inc.*, No. 218CV06608CASEX, 2018 WL 6179492, at *4 (C.D. Cal. Nov. 26, 2018) (finding that "[a]lthough [the subsidiary] disputes the plausibility of

plaintiffs' allegations, at this juncture the Court must accept plaintiffs' allegations as true and finds that [the parent's] alleged knowledge of the [patent-in-suit] could be imputed to [the subsidiary]."); *Frac Shack Inc. v. Afd Petroleum Tex.*, No. 7:19-cv-00026-DC, 2019 WL 3818049, at \*4 (W.D. Tex. June 13, 2019) (rejecting argument that a plaintiff had not plausibly shown pre-suit knowledge of asserted patent by all related entity defendants where the "[p]laintiff ha[d] sufficiently articulated facts from which a finder of fact could conclude that [one defendant's awareness of the patent] was imputed to all the other [d]efendants through the common ownership and governance of each company").

### 3.   Apple Plausibly Alleged SU's Post-Suit Knowledge Before This Court.

SU's arguments that Apple has not adequately pleaded pre-suit knowledge cannot defeat Apple's indirect infringement claims based on SU's *post*-suit knowledge and conduct before this Court.  Indeed, before this Court, the knowledge of the Patents-in-Suit and infringement that SU obtained from Apple's Complaint—with its detailed factual allegations explaining how SU infringes with exemplary mappings of at least one asserted claim—satisfy the knowledge element of, and sufficiently support, Apple's claim for post-suit indirect infringement. *APS Tech., Inc. v. Vertex Downhole, Inc.*, C.A. No. 19-1166-MN, 2020 WL 4346700, at \*7 (D. Del. July 29, 2020) ("Defendants received notice of the allegation of infringement from the original complaint–and the pre-suit letter–yet continued their marketing[.]"); *REC Solar Pte. Ltd. v. Hanwha Sols. Corp. et al.*, C.A. No. 20-1622-MN, D.I. 50 at 21 (D. Del. Nov. 30, 2020) ("I do recognize post-inducement."); *accord Celanese Int'l Corp. v. Anhui Jinhe Indus. Co.,* C.A. No. 20-1775-LPS, 2021 WL 7209494, at \*7 (D. Del. Dec. 10, 2021), *report and recommendation adopted,* C.A. No. 20-1775-RGA, 2022 WL 797595 (D. Del. Mar. 16, 2022) ("Celanese's allegations of knowledge based on the filing of the original complaint are sufficient for purposes of stating a claim under § 271(b).").  SU's Motion should therefore be denied at a minimum based on SU's post-suit conduct.

15

### B.    Apple Adequately Pleaded Induced Infringement.

The Complaint pleads claims of inducement in more than sufficient detail to provide SU fair notice of Apple's claims.  "There is no requirement for [a plaintiff] to prove its case at the pleading stage."  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotations omitted).  Rather, a complaint need only "place the alleged infringer on notice of what activity . . . is being accused of infringement."  *Id.* (internal quotations omitted).  Apple's Complaint provides such notice here.  SU's assertions that Apple's allegations are not "specific to" SU and fail to support any reasonable inference that SU "did any of the acts or specifically intended anyone to infringe" are meritless and should be rejected because they ignore the well pleaded facts about Masimo's acquisition of SU and collaboration with SU specifically to sell the W1 to customers.  Mot. at 8.

***First***, Apple plausibly alleged an underlying act of direct infringement.  *See Rhodes*, 2018 WL 326405, at *4 (inducement requires allegations of "(1) direct infringement, and (2) that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement") (internal quotations omitted).  Specifically, after alleging that W1 infringes each of Apple's Patents-in-Suit, the Complaint sufficiently alleges that SU's customers ***use*** W1 in a manner that infringes the exemplary asserted claims.  *See* Compl. ¶ 54, 70, 87, 105, 122, 143.  *See, e.g., In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,* 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("[A] plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.") (emphasis in original); *see also Rhodes*, 2018 WL 326405, at *6 ("[a] plaintiff need not specifically identify the customers who are induced to infringe," and instead need only plead sufficient facts for an inference that "at least one direct infringer exists").

*Second*, as detailed above, Apple's Complaint sufficiently alleges that SU had knowledge of, or was willfully blind of, the Patents-in-Suit prior to or after the filing of the Complaint, and thus that SU knew or should have known that the induced acts constitute infringement.  *See* Section II.A, *supra*.

*Third*, the Complaint plausibly alleges that SU possessed a specific intent to encourage its customers' infringement.  Compl. ¶ 54, 70, 87, 105, 122, 143.  To satisfy this element, a complaint must merely contain facts "plausibly showing that [the alleged indirect infringer] specifically intended [the direct infringer] to infringe [the patent-at-issue]."  *Bill of Lading*, 681 F.3d at 1339.  However, "the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."  *Id*. at 1341 (quoting *Twombly*, 550 U.S. at 556).   Allegations that a defendant "provided technical support and instructions to [its] customers on how to use products in such a way as to infringe the patented invention" are sufficient.  *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 395 (D. Del. 2013); *see also e.g., Intellectual Ventures I LLC v. Nikon Corp.,* 935 F. Supp. 2d 787, 794-95 (D. Del. 2013) (allegations that defendants knew of the patents-in-suit and indirectly infringed them by "contracting with others to market and sell infringing products with the knowledge and intent to facilitate infringing sales of the products by others within this District and by creating and/or disseminating instructions and other materials for the products with like mind and intent" were "facially plausible"); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.,* 935 F. Supp. 2d 772, 778 (D. Del. 2013) (allegations that defendant, acting with knowledge of the patent-in-suit, included infringing technology in a product which would then be used by customers, sufficient for inducement).

Here, Apple plausibly alleged that, despite having knowledge of, or remaining willfully blind of, the Patents-in-Suit, SU provides its customers instructions for using W1 in a manner that infringes the Patents-in-Suit. Compl. ¶¶ 54, 70, 87, 105, 122, 143; *see also* Section II.A, *supra*. Those instructions, including user manuals, are cited throughout Apple's Complaint to demonstrate SU's infringement. *See, e.g.,* Compl. ¶¶ 48, 66, 81, 100–02, 115–20, 140–41. Apple's allegations are more than sufficient to withstand SU's Motion. *See, e.g., Kyowa*, 2018 WL 834583, at *11 ("[The Plaintiff's] allegations are sufficient, at this stage of the litigation, to allow an inference of intent."); *Rhodes*, 2018 WL 326405, at *8 (declining to dismiss claim of induced infringement where complaint provided defendant with notice of the induced infringement claim via examples of information disseminated to induce infringement); *Walker Digital*, 852 F. Supp. 2d at 564-66 (denying motion to dismiss inducement claim where plaintiff alleged that defendant "instructs its users and/or customers on using the infringing apparatuses in a manner that is accused herein to infringe" and otherwise induced infringing activity without tying the intent to specific claim elements). SU's cited case, *Uniloc USA, Incorporated v. Logitech, Incorporated*, is not to the contrary. 2018 WL 6025597, at *2 (N.D. Cal. Nov. 17, 2018). In that case, the district court concluded that the complaint could not survive due to its "fundamental failure to allege [defendant's] knowledge of customers' infringing conduct." *Id.* Apple's Complaint sufficiently pleads such knowledge, as shown above. SU's Motion should therefore be denied.

### C.      Apple Adequately Pleaded Contributory Infringement.

The Complaint pleads claims of contributory infringement in more than sufficient detail to provide SU notice of Apple's claims. *Rhodes*, 2018 WL 326405, at *8 (contributory infringement requires plausible allegations that the defendant (1) offered to sell, sale, or import; (2) a component of a patented machine constituting a material part of the invention; (3) knowledge by the defendant

that the component is especially made or especially adapted for use in an infringement of such patents; and (4) the component is not a staple or article suitable for substantial non-infringing use)..

As detailed above, Apple's Complaint sufficiently alleges that SU sold, offered to sell, and/or imported W1.  *See* Section I, *supra*.  Thus, SU's assertion that "Apple fails to plausibly show that [SU] has sold, offered for sale, or imported Masimo's W1" is unfounded, and ignores all the well-pleaded facts that explain SU's role in collaboration with Masimo to sell W1.  *See* Mot. at 9.  Also as shown above, Apple's Complaint pleaded the requisite pre- and/or post-suit knowledge to support a claim of contributory infringement.  *See* Section II.A, *supra*.

Further, Apple's Complaint plausibly alleges that SU knows that the infringing technology in W1 is especially made and/or adapted for infringing use, and thus that SU sells W1 with knowledge that others infringe and will continue to infringe.  *See, e.g.,* Compl. ¶¶ 3, 4, 8, 22, 34, 36, 38, 40, 55, 71, 88, 106, 123, 144.  The Complaint also includes allegations that W1 is not a staple article of commerce and does not have substantial non-infringing uses.  *Id*. ¶¶ 8, 22, 55, 71, 88, 106, 123, 144.  Those allegations are sufficient.  SU's Motion and should be denied based on the sufficient allegations in the Complaint.  *Lifetime*, 869 F.3d at 1379 ("[Defendant's] complaints concerning lack of detail ask for too much.").

### III.    IF THE COURT INTENDS TO GRANT SU'S MOTION, APPLE SHOULD BE GIVEN LEAVE TO AMEND.

In the event the Court credits any of SU's arguments, the proper course is amendment of the Complaint, not dismissal.[9]  Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its pleading with "the court's leave," which "[t]he court should freely grant [] when justice so requires."  The decision to grant or deny leave to amend lies within the discretion of the Court.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  In the absence of undue delay, bad

---

[9] Notably, SU did not seek dismissal with prejudice.

faith, or dilatory motives on the part of the moving party, amendment should be freely granted, unless it would be futile or unfairly prejudicial to the non-moving party. *See id.* Based at least on the current allegations in the Complaint, an amendment by Apple to further support its direct and willful infringement claims, while not necessary, would not be futile. Further, this case is currently in its early stages, so amendment poses no risk of prejudice to SU. Apple also has not acted with undue delay, bad faith, or dilatory motives. Thus, should the Court conclude that the Complaint is deficient with respect to any of Apple's claims, the Court should grant Apple leave to amend.

## <u>CONCLUSION</u>

For the foregoing reasons, Apple respectfully requests that this Court deny SU's motion to dismiss Apple's claims for direct patent infringement and indirect infringement.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ Bindu A. Palapura*

OF COUNSEL:

John M. Desmarais
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Dated:  January 10, 2023
10540649 / 12209.00052

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*