# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378-MN |
| | ) | |
| MASIMO CORPORATION and | ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION and | ) | |
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## PLAINTIFF APPLE INC.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO

**(1) SEVER MASIMO'S 16 UNRELATED ANTITRUST, FALSE ADVERTISING, AND PATENT INFRINGEMENT COUNTERCLAIMS AND**

**(2) STAY MASIMO'S PATENT INFRINGEMENT COUNTERCLAIMS RELATED TO OTHER INFRINGEMENT COUNTERCLAIMS ALREADY STAYED PURSUANT TO 28 U.S.C. § 1659**

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Leon B. Greenfield
Jennifer Milici
Mark A. Ford
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington DC 20006
Tel: (202) 663-6000

Dated:  February 3, 2023
10580494 / 12209.00052

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant*
*Apple Inc.*

# TABLE OF CONTENTS

Pages

I.     INTRODUCTION ...................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III.   SUMMARY OF THE ARGUMENTS ................................................................2

IV.    FACTUAL BACKGROUND ...............................................................................3

       A.     Apple Filed This Patent Infringement Case To Redress Masimo's
              Infringement Of Apple's Patents By Masimo's Recently-Released W1
              Watch ...........................................................................................................3

       B.     Masimo Seeks To Inject Into This Case 16 Unrelated Counterclaims
              Regarding Apple, Including Antitrust Counterclaims, False Advertising
              Counterclaims, And Infringement Counterclaims For 10 Masimo Patents ............3

       C.     Masimo Asserted Five Of Its Counterclaim Patents In A Parallel ITC
              Proceeding Against Apple, This Court Has Stayed Those Patents, And The
              Remaining Five Counterclaim Patents Relate To The Stayed ITC Patents ............5

V.     LEGAL STANDARD ...........................................................................................8

VI.    ARGUMENT .........................................................................................................9

       A.     The Court Should Sever Masimo's 16 Unrelated Counterclaims ...........................9

              1.     Masimo's Unrelated Counterclaims Do Not Arise From The Same
                     Transaction Or Occurrence As Apple's Patent Infringement Claims ..........9

              2.     Masimo's Unrelated Counterclaims Raise Significantly Different
                     Legal And Factual Issues Than Apple's Patent Infringement
                     Claims ...................................................................................................12

              3.     Avoidance Of Prejudice And Delay Favors Severing Masimo's
                     Unrelated Counterclaims .......................................................................14

              4.     Judicial Economy And Fundamental Fairness Favor Severing
                     Masimo's Unrelated Counterclaims .......................................................15

              5.     In This District, Masimo Itself Sought And Obtained Relief
                     Similar To What Apple Seeks Here When Another Defendant
                     Sought To Inject Antitrust Counterclaims Into Masimo's Patent
                     Infringement Case ................................................................................16

## TABLE OF CONTENTS (cont'd)

**Pages**

B.    The Court Has Already Stayed Masimo's Infringement Counterclaims For The Stayed ITC Patents And Should Likewise Stay The Remaining Counterclaims Asserting Masimo's Related Patents ..............................................16

1.    Staying The Related Patents Would Simplify The Issues Of This Case.......................................................................................................17

2.    Staying The Related Patents Would Not Unduly Prejudice Masimo ........18

3.    This Case Is In Its Infancy, Which Favors A Stay....................................19

4.    Denying A Stay Of The Related Patents Would Prejudice Apple.............19

VII.    CONCLUSION.........................................................................................................20

# **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*10X Genomics v. Nanostring Techs.*,
    C.A. No. 22-261-MFK (D. Del. Jan. 24, 2023) ................................................. 8

*Akzona Inc. v. E.I. Du Pont de Nemours & Co.*,
    607 F. Supp. 227 (D. Del. 1984) ....................................................................... 15

*Anza Tech., Inc. v. Mushkin, Inc.*,
    934 F.3d 1359 (Fed. Cir. 2019) ......................................................................... 13

*Eurand Inc. v. Mylan Pharms. Inc.,*
    C.A. No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ...................... 10, 11, 15

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*,
    No. 5:05CV156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) .......................... 9, 18, 20

*FormFactor, Inc. v. Micronics Japan Co., Ltd.*,
    No. CV-06-07159, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .......................... 9, 18, 20

*Fresenius Kabi USA, LLC v. Fera Pharms., LLC,*
    No. CV153654KMMAH, 2017 WL 2213123 (D.N.J. May 19, 2017) ...................... 13-14

*Graphic Properties Holdings, Inc. v. Toshiba Am. Info., Sys., Inc.*,
    C.A. No. 12-213-LPS, 2014 WL 923314 (D. Del. Mar. 5, 2014) ........................... *passim*

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ......................................................................... 8, 10

*In re Innotron Diagnostics*,
    800 F.2d 1077 (Fed. Cir. 1986) ......................................................................... 13, 16

*LG Elecs. Inc. et al v. Toshiba Samsung Storage Tech. Korea Corp.*,
    C.A. No. 12-01063-LPS (D. Del. Aug. 31, 2015) ............................................... 14

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
    C.A. No. 09-80-JJF-MPT, 2010 WL 925864 (D. Del. Mar. 11, 2010) ................... 16

*Orthophoenix, LLC v. Dfine, Inc.*,
    C.A. No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015) ...................... 11, 15

*Sanofi-Synthelabo v. Apotex Inc.,*
    No. 02 Civ. 2255 (SHS), 2006 WL 3103321 (S.D.N.Y. Nov. 2, 2006) ................... 8, 11, 14

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Siemens Indus. v. Westinghouse Air Brake,*
   C.A. No. 16-284-LPS-CJB (D. Del. Aug. 17, 2017) .......................................................... 8

*Square D Co. v. E.I. Elecs., Inc.,*
   No. 06 C 5079, 2009 WL 136177 (N.D. Ill. Jan. 15, 2009) ............................................. 13

*SZ DJI Tech. Co., Ltd. v. Autel Robotics USA LLC,*
   C.A. No. 16-706-LPS, 2019 WL 1244948 (D. Del. Mar. 18, 2019) ........................ *passim*

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.,*
   330 F.R.D. 143 (D. Del. 2019) ................................................................................. passim

## **Rules**

Fed. R. Civ. P. 21 ...................................................................................................................... 8

## I.     INTRODUCTION

Plaintiff and Counterclaim Defendant Apple Inc. ("Apple") filed this patent infringement case to redress Masimo Corporation's ("Masimo's") ongoing infringement of six Apple utility patents by Masimo's recently-released W1 watch—Masimo's first ever watch, which Masimo released after spending years suing Apple in an attempt to take Apple Watch off the market.  In response to Apple's patent infringement complaint, Masimo filed a 162-page pleading through which it now attempts to inject *16 wide-ranging, unrelated counterclaims regarding Apple and Apple Watch*—including antitrust counterclaims, false advertising counterclaims, and infringement counterclaims regarding 10 of Masimo's own patents ("Unrelated Counterclaims").[1] The Court promptly issued a mandatory stay of Masimo's infringement counterclaims for five of Masimo's patents under 28 U.S.C. § 1659 because Masimo concurrently asserts them against Apple in a parallel proceeding in the United States International Trade Commission ("Stayed ITC Patents")[2]—but, critically, the five remaining patents relate to and raise substantial overlapping issues with the Stayed ITC Patents ("Related Patents").[3]

To facilitate efficient case management, promote judicial economy, avoid complication of the issues, and minimize prejudice and unnecessary duplication, Apple respectfully requests that the Court (1) sever the Unrelated Counterclaims from this case and (2) stay Masimo's infringement counterclaims regarding the Related Patents pending the final resolution of Masimo's ITC proceeding regarding the Stayed ITC Patents.

---

[1] The Unrelated Counterclaims are Masimo's First through Sixth Counts (i.e., Masimo's antitrust, false advertising, and other non-patent counterclaims) and Seventh through Sixteenth Counts (i.e., Masimo's patent infringement counterclaims).  (D.I. 15.)

[2] The "Stayed ITC Patents" are U.S. Patent Nos. 10,912,501 ("'501 Patent"); 10,912,502 ("'502 Patent"); 10,945,648 ("'648 Patent"); 10,687,745 ("'745 Patent"); and 7,761,127 ("'127 Patent").

[3] The "Related Patents" are U.S. Patent Nos. 10,687,743 ("'743 Patent"); 10,722,159 ("'159 Patent"); 8,190,223 ("'223 Patent"); 10,736,507 ("'507 Patent"); and 10,984,911 ("'911 Patent").

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On October 20, 2022, Apple filed a complaint against Masimo and its subsidiary Sound United, LLC asserting infringement of six Apple utility patents by Masimo's recently-released W1 watch.  (D.I. 1.)  On December 12, 2022, Masimo answered Apple's complaint and raised *31 counterclaims*, including 16 counterclaims for antitrust, false advertising, and infringement of Masimo's own patents.  (D.I. 15.)  The deadline for Apple to respond to Masimo's counterclaims is February 21, 2023.  (D.I. 22.)  On January 10, 2023, the Court issued a mandatory stay of Masimo's counterclaims for five of Masimo's patents (i.e., the Stayed ITC Patents) under 28 U.S.C. § 1659.  (D.I. 25.)  No scheduling order has issued, and no trial date has been set.

## III.    SUMMARY OF THE ARGUMENTS

1.     The Court should sever Masimo's 16 Unrelated Counterclaims against Apple from Apple's patent infringement case against Masimo.  Masimo's antitrust counterclaims, false advertising counterclaims, and infringement counterclaims based on 10 Masimo patents arise from overwhelmingly different transactions and occurrences as well as different issues of law and fact.  Severing Masimo's Unrelated Counterclaims is the best procedural approach for avoiding prejudice and delay, promoting judicial economy, and safeguarding fundamental fairness.

2.     The Court has already issued a mandatory stay of Masimo's infringement counterclaims for the five Stayed ITC Patents due to a pending ITC proceeding (D.I. 25) and should now issue a discretionary stay for the remaining five Related Patents.  The Related Patents substantially overlap with the Stayed ITC Patents, including through patent family relationships, overlapping inventors, similar claims and subject matters, identical specifications, identical accused Apple products, and common infringement theories and allegations.  As a result, staying the Related Patents at this early stage would simplify the issues, cause no prejudice to Masimo, and prevent significant prejudice to Apple.

## IV.     FACTUAL BACKGROUND

### A.     Apple Filed This Patent Infringement Case To Redress Masimo's Infringement Of Apple's Patents By Masimo's Recently-Released W1 Watch

Masimo is a hospital products company that had never sold watches during its 33-year history.  Rather, its business centered on selling patient monitoring equipment with disposable biometric sensors.  But in recent years, Masimo witnessed the rise of consumer interest in Apple Watch.  Desperate not to be left out of this new emerging opportunity, Masimo copied the iconic designs of Apple Watch and its charger in an attempt to develop a knock-off product, the Masimo W1 watch, which it launched to the general public on August 31, 2022.  (*See* D.I. 1 at ¶¶ 21-39.)

Apple's October 20, 2022 patent infringement complaint in this case accused Masimo of infringing six Apple utility patents, namely U.S. Patent Nos. 10,076,257, 10,627,783, 10,942,491, 10,987,054, 11,106,352, and 11,474,483 ("Apple Patents-in-Suit").  (*Id.* at ¶¶ 41-145.)  The Apple Patents-in-Suit claim various architectures and implementations regarding consumer wearable technology, such as that useful for watches and other wearable electronic devices.  (*Id.* at Exs. A-F.)  Apple's complaint accused Masimo products, including Masimo's M1 watch device and charger, of infringing claims of the Apple Patents-in-Suit.  (*Id.* at ¶¶ 3-4, 41-145.)  Apple's patent infringement claims thus focus on the specific technical implementations of ***Masimo's*** infringing products and how they compare to the ***Apple*** Patents-in-Suit.  (*Id.*)

### B.     Masimo Seeks To Inject Into This Case 16 Unrelated Counterclaims Regarding Apple, Including Antitrust Counterclaims, False Advertising Counterclaims, And Infringement Counterclaims For 10 Masimo Patents

Masimo's December 12, 2022 answer runs 162 pages (not counting its exhibits) and asserts ***31 counterclaims***.  (D.I. 15 at ¶¶ 237-449 (First Through Thirty-First Counts).)  Masimo has not merely asserted declaratory judgment counterclaims related to Apple's patent infringement claims.  (*Id.* at ¶¶ 378-449 (Seventeenth through Thirty-First Counts).)  Instead, Masimo also seeks to raise

in this case **16 Unrelated Counterclaims asserting wide-ranging, unrelated allegations about Apple and Apple Watch**, including antitrust counterclaims, false advertising counterclaims, and infringement counterclaims accusing Apple of infringing 10 of Masimo's own patents.  (*Id*. at ¶¶ 237-377 (First through Sixteenth Counts).)

For example, Masimo's antitrust counterclaims assert that Apple has engaged in monopolization and attempted monopolization in violation of the Sherman Act.  (D.I. 15 at ¶¶ 237-254 (First and Second Counts); *see also id*. at ¶¶ 166-222.)  Masimo's antitrust counterclaims seek to adjudicate wide-ranging, ***antitrust-specific*** legal and factual issues, such as (1) the "relevant market" for antitrust purposes; (2) whether "Apple has monopoly power" in that market; (3) whether "Apple has willfully acquired, maintained, and/or enlarged its monopoly power . . . through . . . exclusionary and anticompetitive means"; (4) whether Apple's conduct has "cause[d] injury or loss to interstate commerce and to consumers"; (5) whether "Masimo's injuries are of the type that antitrust laws are intended to prohibit"; (6) whether "Masimo has antitrust standing"; and (7) whether any antitrust-specific damages, injunctions, or other remedies are warranted as a result of Apple's conduct.  (*Id*.)

Similarly, Masimo's false advertising counterclaims assert that Apple has violated the Lanham Act, California's False Advertising Law, Delaware's Deceptive Trade Practices Act, and California's Unfair Competition Law.  (D.I. 15 at ¶¶ 255-287 (Third through Sixth Counts); *see also id*. at ¶¶ 142-165.)  Masimo's false advertising counterclaims likewise seek to adjudicate wide-ranging, advertising-specific allegations about Apple, such as (1) whether "Apple has made false, misleading, and deceptive descriptions . . . about the Apple Watch products"; (2) whether "Apple knew or should have known that its advertising and promotional activities . . . were false, misleading, and deceptive"; (3) whether Apple's statements "deceived . . . a substantial segment

of their intended audience"; (4) whether Apple's statements "caused injury to Masimo"; and (5) whether any damages or injunctive relief is warranted as a result of Apple's conduct.  (*Id.*)

Finally, Masimo's infringement counterclaims seek to adjudicate whether Apple infringes 10 Masimo patents.  These counterclaims focus on the technical implementations of ***Apple's*** products and how they allegedly compare to ***Masimo's*** own patents.  (D.I. 15 at ¶¶ 288-377 (7th through 16th Counts); ¶¶ 223-236.)  Apple's and Masimo's patents are unrelated and do not share any inventors or prosecution record.  (*Compare* D.I. 1 at Exs. A-F *with* D.I. 15 at Exs. 1-10.)

### C.     Masimo Asserted Five Of Its Counterclaim Patents In A Parallel ITC Proceeding Against Apple, This Court Has Stayed Those Patents, And The Remaining Five Counterclaim Patents Relate To The Stayed ITC Patents

On June 29, 2021, Masimo filed an ITC complaint against Apple that accused Apple's "products, including, but not limited to, the 'Apple Watch Series 6'" of infringing the five Stayed ITC Patents (i.e., the '501, '502, '648, '745, and '127 Patents).  (Ex. 1 [ITC complaint] at ¶¶ 1-3.) Masimo's infringement allegations against Apple with respect to these five patents have since been the subject of an ongoing ITC proceeding (Investigation No. 337-TA-1276).  On January 10, 2023, pursuant to 28 U.S.C. § 1659, the Court issued a mandatory stay of Masimo's counterclaims for the five Stayed ITC Patents.  (D.I. 25.)

Pertinent here, the five remaining counterclaim patents (i.e., the Related Patents) are related to and substantially overlap with the subject matter of the Stayed ITC Patents in many ways:

The '159 and '743 Patents Are Related To The '745 Stayed ITC Patent: The '159 Related Patent is the "parent" of the '745 Stayed ITC Patent because the '745 Stayed ITC Patent is a direct continuation of the application (no. 16/791,963) that issued as the '159 Related Patent.  (*Compare* D.I. 15-6 at cover (identifying the '159 Patent as "Appl. No.: 16/791,963") *with* D.I. 15-5 at 1:7-8 (identifying the '745 Patent as "a continuation of U.S. patent application Ser. No. 16/791,963").) Similarly, the '743 Related Patent is a "cousin" of the '745 Stayed ITC Patent because both

descended from the same application (no. 15/195,199) that issued as U.S. Patent No. 10,448,871. (*Compare* D.I. 15-4 at cover and second page (identifying the '743 Patent as descending from "a continuation of application No. 15/195,199 . . . now Pat. No. 10,448,871") *with* D.I. 15-5 at second page (identifying the '745 Patent as descending from "a continuation of application No. 15/195,199 . . . now Pat. No. 10,448,871").)  Notably, all three patents name the same single inventor, Ammar Al-Ali; share an identical specification; have similar titles ("Physiological Monitoring Devices, Systems, and Methods" and "Physiological Measurement Devices, Systems, and Methods"); and issued within only five weeks of one another.  (D.I. 15-4, -5, -6.)

The '223 and '911 Patents Are Related To The '127 Stayed ITC Patent: The '223 Related Patent, '911 Related Patent, and '127 Stayed ITC Patent are related because each claims priority to the same four applications (nos. 60/657,596, 60/657,759, 60/657,268, and 60/657,281). (*Compare* D.I. 15-8 at 1:8-17 *with* D.I. 15-10 at 1:6-33; D.I. 15-7 at 1:8-17.)  Notably, all three patents have multiple overlapping inventors, such as Ammar Al-Ali and Mohamed Diab. (*Compare* D.I. 15-7 at cover *with* D.I. 15-8 at cover; D.I. 15-10 at cover.)  And except for minor deviations in their "summary" sections, the '911 Patent and the '127 Stayed ITC Patent otherwise share an identical specification.  (*Compare* D.I. 15-10 at Figures 1-46, 3:60-19:33 *with* D.I. 15-7 at Figures 1-46, 3:31-19:2.)

'507 Patent: Although not in the same family as the Stayed ITC Patents, the '507 Related Patent relates to the same general pulse oximeter technical subject matter as the Stayed ITC Patents and the Related Patents, i.e., the use of light to non-invasively measure properties of a patient's blood, such as oxygen levels.  (*Compare* D.I. 15-9 at Fig. 4A-D *with* D.I. 15-1, -2, -3 at Fig. 2B; D.I. 15-4, -5, -6 at Fig. 8; D.I. 15-7 at Fig. 1; D.I. 15-8 at Fig. 2; D.I. 15-10 at Fig. 1.)

The family trees below show the relationships between the Related and Stayed ITC Patents:

6



The Related and Stayed ITC Patents share not only similar claims and accused products (Apple Watch Series 6), but also common claim charts and infringement theories/analyses. *Notably, each and every Masimo infringement chart for each Related Patent expressly relies on the infringement chart for the '501 Stayed ITC Patent to meet <u>multiple</u> claim limitations*:

| Exemplary Infringement Claim Chart for U.S. Patent No. 10,736,507 | |
|---|---|
| Defendant Masimo Corporation and Counterclaimants Masimo Corporation and Cercacor Laboratories, Inc. ("Masimo") hereby provides exemplary evidence of infringement of the claims of U.S. Patent No. 10,736,507 ("the '507 Patent"). Masimo's chart below demonstrates infringement of Claim 13 of the '507 Patent by an exemplary accused product—Apple Watch Series 6. The chart shows how the exemplary accused product infringes that claim literally or under the doctrine of equivalents. The chart (including any images, annotations, and/or highlighting herein) is exemplary and demonstrates infringement of the identified claim regardless of whether the accused product is used with other modes and/or with other firmware or software. Masimo expressly reserves the right to amend or supplement this chart in view of further discovery, information, and analysis, including by, but not limited to, identifying additional accused products and evidence of infringement. | |
| **Claim 13** | **Apple Watch Series 6** |
| [13PRE] A computer-implemented method of informing a user of mobile measurement of oxygen saturation ("SpO2"), the computer-implemented method comprising: | Apple Watch Series 6 practices a computer-implemented method of informing a user of mobile measurement of oxygen saturation (SpO2). *See, e.g.*, Infringement Claim Chart for '501 Patent, at Claim Limitation [1PRE]. |

(D.I. 15-19 ('507 chart relying on the chart for the '501 Stayed ITC Patent for claim limitations [13PRE], [13A], [13B]); *see also* D.I. 15-14 ('743 chart at [1PRE], [1B], [1C], [1F]); D.I. 15-16

('159 chart at [1PRE], [1F]); D.I. 15-18 ('223 chart at [27PRE], [27C]); D.I.15-20 ('911 chart at [19PRE], [19A]-[19D]).)   And vice versa, as Masimo's chart for the '745 Stayed ITC Patent expressly relies on a Related Patent to meet multiple claim limitations.  (*See* D.I. 15-15 (chart for the '745 Stayed ITC Patent relying on the '743 chart for claim limitations [1A], [1B], [1D], [1E]).)

## V.     LEGAL STANDARD

Federal Rule of Civil Procedure 21 provides that the "court may . . . sever any claim against a party."  Fed. R. Civ. P. 21; *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 150 (D. Del. 2019).  "Motions to sever in a patent case are governed by Federal Circuit law."  *Westinghouse*, 330 F.R.D. at 147.  In ruling on a motion to sever, courts look to Federal Rule of Civil Procedure 20 for guidance and thus assess the two Rule 20-related factors: (1) whether the claims "arise out of the same transaction or occurrence" and (2) whether the "claims share any common issues of law and fact."  *Westinghouse*, 330 F.R.D. at 147-148; *accord In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012).  Courts also consider the "the interest[s] of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principals of fundamental fairness."  *Westinghouse*, 330 F.R.D. at 147.  Courts routinely sever unrelated counterclaims from a plaintiff's patent infringement case.  *See Westinghouse*, 330 F.R.D. at 150; *10X Genomics v. Nanostring Techs.*, No. 22-261-MFK (D. Del. Jan. 24, 2023) (Ex. 2); *Siemens Indus. v. Westinghouse Air Brake*, No. 16-284-LPS-CJB (D. Del. Aug. 17, 2017) (Ex. 3); *Sanofi-Synthelabo v. Apotex Inc.*, 02 Civ. 2255-SHS, 2006 WL 3103321, at *4 (S.D.N.Y. Nov. 2, 2006).

In addition, "[d]istrict courts have the discretionary power to stay litigation under their inherent power to control their own dockets."  *Graphic Properties Holdings, Inc. v. Toshiba Am. Info., Sys., Inc.*, No. CV 12-213-LPS, 2014 WL 923314, at *2 (D. Del. Mar. 5, 2014); *accord SZ DJI Tech. Co., Ltd. v. Autel Robotics USA LLC*, No. 16-706-LPS, 2019 WL 1244948, at *1 (D. Del. March 18, 2019).  "In determining whether to grant a discretionary stay, a court considers:

(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Graphic Properties Holdings*, 2014 WL 923314, at *2; *accord SZ DJI Tech.*, 2019 WL 1244948, at *1. "Courts have also referenced undue prejudice or hardship to the movant as a factor to be considered in evaluating a request to stay litigation." *Graphic Properties Holdings*, 2014 WL 923314, at *2 (internal citation and quotations omitted); *accord SZ DJI Tech.*, 2019 WL 1244948, at *1. Courts routinely grant discretionary stays of patents that relate to or overlap with an ITC patent that has been stayed under 28 U.S.C. § 1659. *See, e.g.*, *Graphic Properties Holdings*, 2014 WL 923314, at *3; *SZ DJI Tech.*, 2019 WL 1244948, at *1; *Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, No. 5:05CV156, 2005 WL 1126750, at *3-4 (N.D. Ohio Apr. 29, 2005); *FormFactor, Inc. v. Micronics Japan Co., Ltd.*, No. CV-06-07159, 2008 WL 361128, at *2-4 (N.D. Cal. Feb. 11, 2008).

## VI.   ARGUMENT

### A.   The Court Should Sever Masimo's 16 Unrelated Counterclaims

The relevant factors strongly favor severing Masimo's Unrelated Counterclaims. Apple's patent infringement claims and Masimo's Unrelated Counterclaims do not arise from the same transaction or occurrence and raise different questions of law and fact. Severance also would avoid prejudice and delay, promote judicial economy, and safeguard fundamental fairness. Indeed, Masimo's Unrelated Counterclaims run a high risk of overcomplicating this already-complex case.

#### 1.   Masimo's Unrelated Counterclaims Do Not Arise From The Same Transaction Or Occurrence As Apple's Patent Infringement Claims

To determine whether counterclaims arise from the same transaction or occurrence as a plaintiff's patent infringement claim, "the Court analyzes whether there is a 'logical relationship between the separate causes of action' such that 'there is substantial evidentiary overlap in the

facts giving rise to the' different sets of claims or the claims 'share an aggregate of operative facts.'"  *Westinghouse*, 330 F.R.D. at 148 (quoting *In re EMC Corp.*, 677 F.3d at 1358).  Here, Apple's patent infringement claims focus on the specific technical implementations of Masimo's products and how they compare to the asserted claims of the Apple Patents-in-Suit.  (D.I. 1 at ¶¶ 41-145 (Counts I through VI).)  By contrast, Masimo's Unrelated Counterclaims focus on different and/or broader sets of evidence and operative facts, and thus do ***not*** logically arise out of the same narrow transactions or occurrences giving rise to Apple's patent infringement claims.

       <u>Masimo's Antitrust and False Advertising Counterclaims</u>: District precedent recognizes that "for the most part, the resolution of patent infringement claims and antitrust-related claims require different types of analysis."  *Westinghouse*, 330 F.R.D. at 148.  *Westinghouse* found that patent infringement claims and antitrust counterclaims "d[id] not share a logical relationship or an aggregate of operative facts" and thus did not arise from the same transaction or occurrence.  *Id*. at 148 (internal quotations omitted).  Plaintiff Wabtec asserted patent infringement claims against Siemens, who then asserted antitrust counterclaims.  *Id*. at 145-147.  The court found:

> The question of whether Siemens' Trainguard PTC system infringes Wabtec's patents will focus on technical issues relating to the comparison of system components or methods of use to the content of the asserted patent claims. As to these claims, it is Siemens' conduct that will be at issue. ***Conversely, Siemens' antitrust claims are broad in scope and will be primarily focused on Wabtec's alleged monopolistic activity that is said to have occurred in three different product markets. There, it will be Wabtec's conduct that is being called out.***
>
> Thus, it can be said that [b]ecause the [a]ntitrust [l]itigation arises from [Wabtec's] conduct, and the [patent] [l]itigation arises from [Siemens'] conduct, ***the two [sets of claims] could not arise from the same transaction or occurrence***.

*Id*. at 148 (internal quotations omitted, brackets in original).  The court ruled "[f]or this reason alone, Rule 20's requirements would not be satisfied" and granted severance.  *See id*. at *148-150.

       Numerous cases comport with this approach.  *See, e.g*., *Eurand Inc. v. Mylan Pharms. Inc.*, No. 08-889-SLR, 2009 WL 3172197, at *1-2 (D. Del. Oct. 1, 2009) (recognizing the "standard

practice" of separating patent issues from antitrust issues because of the "distinct lack of evidentiary overlap between issues of patent validity and infringement and issues of patent misuse and antitrust"); *Sanofi-Synthelabo*, 2006 WL 3103321, at *3-4 ("[T]he Antitrust Allegations relate to agreements and conduct that are distinct from the narrow question of patent validity and enforceability . . . . [T]he Antitrust Allegations principally concern questions of antitrust law and contract law, not patent law."); *Orthophoenix, LLC v. Dfine, Inc.*, No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) ("[A]ntitrust counterclaim raises complex issues potentially requiring discovery well beyond what is relevant to patent infringement and invalidity.").

Here, Masimo's pleadings confirm that its antitrust counterclaims differ from Apple's patent infringement claims.  As discussed above, unlike Apple's patent infringement claims against Masimo, Masimo's antitrust counterclaims ***focus on Apple's conduct concerning antitrust issues***, such as "monopoly power," "relevant [antitrust] market," "injury or loss to interstate commerce and to consumers," "injuries . . . of the type that antitrust laws are intended to prohibit," "antitrust standing," and antitrust-specific remedies.  (*Supra*, § IV(B); D.I. 15 at ¶¶ 237-254.)

Similarly, Masimo's false advertising counterclaims ***focus on non-patent allegations about Apple's advertising relating to Apple Watch***.  (*Supra*, § IV(B); D.I. 15 at ¶¶ 255-287 (Third through Sixth Counts).)  Masimo's false advertising counterclaims against Apple do not share a logical relationship or aggregate of operative facts with Apple's patent infringement claims against Masimo, and thus likewise do not arise from the same transaction or occurrence.

Masimo's Patent Infringement Counterclaims: Apple's patent infringement claims and Masimo's patent infringement counterclaims concern different patents with no familial relationship or overlap—Apple's and Masimo's respective patents are not related to one another; have different owners, inventors, and prosecution records; and are asserted against different

11

accused products.  (*Compare* D.I. 1 at Exs. A-F *with* D.I. 15 at Exs. 1-10.)  Apple's patent infringement claims arise out of the specific technical implementation of ***Masimo's products*** as compared to the ***Apple Patents-in-Suit***; conversely, Masimo's infringement counterclaims arise out of the specific technical implementation of ***Apple's products*** as compared to ***Masimo's counterclaim patents***.  (*Compare* D.I. 1 at ¶¶ 41-145 *with* D.I. 15 at ¶¶ 288-377.)  Masimo's patent infringement counterclaims do not share a logical relationship or aggregate of operative facts with Apple's patent infringement claims, and thus do not arise from the same transaction or occurrence.

### 2. Masimo's Unrelated Counterclaims Raise Significantly Different Legal And Factual Issues Than Apple's Patent Infringement Claims

Courts in the Third Circuit have found that "the same series of transactions or occurrences prerequisite under Rule 20 essentially consumes the second requirement that there arise a question of law or fact common to all joined parties."  *Westinghouse*, 330 F.R.D. at 149.  As a result, even if there are "*some* common questions of law or fact, the significant difference in legal and factual issues still suggests that severance is appropriate."  *Id.* (emphasis in original).

Like in *Westinghouse*, Apple's "patent litigation will focus on patent law issues, such as construction of the patent claims and whether the asserted patents are valid and whether those patents are infringed by" Masimo.  *Id.* at 148.  And like in *Westinghouse*, "[Masimo's] antitrust case, in contrast, will focus on typical antitrust issues such as whether [Apple is a] monopolist, whether [Apple] engaged in anticompetitive conduct, and what are the relevant product markets and/or consumers."  *Id.* at 148-149 (internal quotations omitted).  In these circumstances, "[t]he documentary proof, fact witness testimony and expert witness testimony needed to litigate both sets of claims will therefore vary significantly."  *Id*. at 149.  The significant difference in legal and factual issues between Apple's patent infringement claims and Masimo's antitrust and false advertising counterclaims (*see, supra*, § VI(A)(1)) suggests that severance is appropriate here.

Apple does not dispute that Masimo's allegation of inequitable conduct in response to Apple's patent infringement case raises a small but meaningful common issue with one of the elements of Masimo's antitrust counterclaims.  Specifically, Masimo's antitrust counterclaims require that Apple committed inequitable conduct, in addition to the non-patent elements discussed in Section IV(B).  But because resolution of the inequitable conduct issue in favor of the patentee would moot at least that required element of the antitrust counterclaim, courts have found that this particular common issue ***supports separating*** the plaintiff's patent infringement case and trying it before the defendant's antitrust counterclaim.  *See, e.g., In re Innotron Diagnostics*, 800 F.2d 1077, 1078, 1085-86, 1085 n.15 (Fed. Cir. 1986) (bifurcating patent infringement case including defendant's inequitable conduct defense from defendant's antitrust counterclaims); *Fresenius Kabi USA, LLC v. Fera Pharms., LLC*, No. CV153654KMMAH, 2017 WL 2213123, at *5 (D.N.J. May 19, 2017) ("severance and stay of [Defendant's Walker Process antitrust] counterclaims will ensure an orderly presentation of the issues, conserve judicial resources, and enhance the parties' right to a jury trial by making the issues the jury must consider less complex"); *Square D Co. v. E.I. Elecs., Inc.*, No. 06 C 5079, 2009 WL 136177, at *2 (N.D. Ill. Jan. 15, 2009) ("Thus, unless EI is able to prove its inequitable conduct claim, its Walker Process [antitrust] claim would never even get off the ground.  This fact counsels in favor of bifurcating, trying to avoid the expense and hassle of dealing with the antitrust claims until it is clear that the attendant burden is necessary.").

Finally, pertinent to Masimo's infringement counterclaims, the Federal Circuit has held that "it is improbable that allegations regarding different products, involving different patents, would have a common core of operative facts."  *Anza Tech., Inc. v. Mushkin, Inc*., 934 F.3d 1359, 1373 (Fed. Cir. 2019).  As discussed above, Apple's patent infringement claims against Masimo and Masimo's patent infringement counterclaims against Apple concern different, unrelated

13

patents and accused products.  (*See, supra,* §§ IV(C) & VI(A)(1).)  Accordingly, the facts underlying the claims and counterclaims will be different.

### 3.   Avoidance Of Prejudice And Delay Favors Severing Masimo's Unrelated Counterclaims

Denial of severance would result in the simultaneous adjudication of Apple's patent infringement claims and Masimo's 16 Unrelated Counterclaims in the same case, which would prejudice Apple and delay resolution of Apple's patent infringement claims.  As discussed above, Masimo's wide-ranging Unrelated Counterclaims—alleging antitrust violations, false advertising, and infringement of 10 of Masimo's own patents—seek to inject into this case a plethora of complex legal and factual issues unrelated to Apple's patent infringement claims.  Any attempt to adjudicate Masimo's 16 wide-ranging Unrelated Counterclaims in the same case as Apple's patent infringement claims will necessarily distract from, diminish, and delay resolution of the very claims for which Apple filed its complaint here in the first place.  By contrast, severing Masimo's Unrelated Counterclaims into their own separate case would cause no prejudice to Masimo.

Accordingly, avoidance of prejudice and delay supports severing Masimo's Unrelated Counterclaims from Apple's patent infringement claims.  *See, e.g., Westinghouse*, 330 F.R.D. at 149 ("Wabtec rightly asserts that the complexity and cost inherent in antitrust litigation could serve to unnecessarily delay the resolution of its earlier-filed patent claims, were the Amended Counterclaims not severed."); *Sanofi-Synthelabo*, 2006 WL 3103321, at *4 ("Neither party would be prejudiced by the severance of the Antitrust Allegations from this action."); *LG Elecs. Inc. et al v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 12-cv-01063-LPS (D. Del. Aug. 31, 2015), D.I. 91, July 22, 2015 Hr'g Tr. at 20:18-22:9, 21:17-23 (severing patent infringement counterclaims because, "as a matter of common sense, a case that involves eight patents is more difficult to manage and, all else being equal, will proceed more slowly than a case with four

patents. Similarly, a case in which patents are being asserted by both sides as opposed to just by one side, likewise is all else being equal more complex and will proceed more slowly.") (Ex. 4).

### 4. Judicial Economy And Fundamental Fairness Favor Severing Masimo's Unrelated Counterclaims

The entanglement of Apple's patent infringement claims with Masimo's 16 varying and unwieldly Unrelated Counterclaims—including its sweeping antitrust counterclaims—all in a single case threatens to cause a logjam that will impose a heavy burden on judicial resources. This District has long recognized that "antitrust litigation surely holds the potential for enormously costly and time-consuming discovery[.]" *Westinghouse*, 330 F.R.D. at 149 (internal citation and quotations omitted); *accord Orthophoenix*, 2015 WL 1938702, at *1 ("[T]here will also likely be substantial and expensive discovery that is related solely to antitrust issues[.]"); *Akzona Inc. v. E.I. Du Pont de Nemours & Co*., 607 F. Supp. 227, 236 (D. Del. 1984) ("Major antitrust litigation is often enormously time-consuming.").

Severing Masimo's Unrelated Counterclaims from Apple's patent infringement claims will prevent such a judicial logjam and facilitate the resolution of Apple's patent infringement case, which will promote judicial economy. *See Westinghouse*, 330 F.R.D. at 150 ("[D]isentangling Wabtec's earlier-filed patent infringement allegations from Siemens' Amended Counterclaims will at least help Wabtec's patent case get to resolution on a much speedier timetable. . . . And getting resolution on at least a subset of the current action, sooner rather than later, might well aid overall judicial economy."); *Eurand*, 2009 WL 3172197, at *1 (bifurcating patent infringement and antitrust claims because "this request is supported by the promotion of judicial economy and avoiding the injection of complex, unrelated and perhaps unnecessary issues into the patent infringement case"). Allowing each party's claims to proceed in an orderly manner on their own tracks, rather than as an unwieldy group, would be fundamentally fair to each party.

**5.    In This District, Masimo Itself Sought And Obtained Relief Similar To What Apple Seeks Here When Another Defendant Sought To Inject Antitrust Counterclaims Into Masimo's Patent Infringement Case**

As patent plaintiff in this District years ago, Masimo sought and obtained relief similar to what Apple presently seeks—and more.  In *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-JJF-MPT, 2010 WL 925864 (D. Del. Mar. 11, 2010), Masimo filed a complaint for patent infringement against Phillips, and Phillips then filed antitrust counterclaims against Masimo.  *See id.* at *1.  Masimo moved to bifurcate ***and stay*** discovery of Philips' antitrust counterclaims (*see id.*), seeking to prevent Phillips' antitrust counterclaims from moving forward at all.  The court granted Masimo's motion, recognizing that the antitrust counterclaims raised:

> [I]ntricate factual and economic analyses regarding (1) the alleged relevant markets before and after Masimo's purported anticompetitive behavior; (2) actual and potential shares in such market; (3) barriers to entry in such market; (4) . . . whether [Masimo's] contracts violated antitrust laws; (5) antitrust damages; and (6) all remaining concomitant antitrust considerations.

*Id.* at *2.  The court also found that efficiency weighed in favor of the requested relief:

> First, there is a strong likelihood that consideration of the patent validity issues will be delayed significantly if tried together with the antitrust issues.  Major antitrust litigation is often enormously time-consuming.  Second, the court finds . . . that there is a possibility that a trial on Masimo's patent claims will simplify some of Phillips' antitrust counterclaims.

*Id.*  Here, the Court should grant Apple's motion to sever for the same reasons as the court granted Masimo's motion to bifurcate antitrust counterclaims.  *Cf. In re Innotron Diagnostics*, 800 F.2d at 1085 (explaining how economy, convenience, expedition, and avoidance of prejudice and confusion favor separating the patent case from the antitrust case).

**B.    The Court Has Already Stayed Masimo's Infringement Counterclaims For The Stayed ITC Patents And Should Likewise Stay The Remaining Counterclaims Asserting Masimo's Related Patents**

Pursuant to 28 U.S.C. § 1659, the Court recently issued a mandatory stay of Masimo's counterclaims for the five Stayed ITC Patents that Masimo had asserted against Apple in a parallel,

pending ITC proceeding. (D.I. 25.) The stay factors strongly favor a discretionary stay of Masimo's infringement counterclaims for the remaining five Related Patents that complements the mandatory stay that the Court has recently issued for the Stayed ITC Patents.

### 1.   Staying The Related Patents Would Simplify The Issues Of This Case

Due to the substantial relationships and overlaps between the Related Patents and the Stayed ITC Patents, a stay of the Related Patents will greatly simplify the issues of this case. Section IV(C) above discusses the numerous ways in which the Related Patents relate to and overlap with the Stayed ITC Patents, including through (1) family relationships among the patents, (2) multiple overlapping inventors, (3) similar claims and subject matters, (4) identical specifications, (5) identical accused Apple products, and (6) Masimo's common infringement charts and analyses across the Related Patents and Stayed ITC Patents. (*See, supra*, § IV(C).)

The relationship and overlap between the Related Patents and Stayed ITC Patents raise many overlapping legal and factual issues that render it more efficient to litigate these patents once, simultaneously, rather than through duplicative, serial litigations of the Related Patents first and then again via the Stayed ITC Patents afterwards. Due to their overlapping familial relationships, inventors, claims, specifications, and technical subject matters, the Related Patents and Stayed ITC Patents likely will raise overlapping claim construction and invalidity issues. *See Graphic Properties Holdings*, 2014 WL 923314, at *2 ("Because of this overlap, claim construction and invalidity issues with respect to one [ITC] patent will necessarily impact those same issues with respect to the other [non-ITC] patent."); *accord SZ DJI Tech.*, 2019 WL 1244948, at *1. And because Masimo asserts these patents against the same Apple products and features based on overlapping infringement theories—as confirmed by its infringement charts for the Related Patents that expressly rely on the Stayed ITC Patents, and vice versa—the Related and Stayed ITC Patents also likely will raise overlapping non-infringement issues. *See Graphic Properties Holdings*, 2014

WL 923314, at *2 ("Thus, much of the infringement analysis in the ITC Action will overlap with the infringement analysis in the Associated Cases."); *accord SZ DJI Tech.*, 2019 WL 1244948, at *1. Serial litigations of the Related and Stayed ITC Patents will guarantee unnecessary duplication, including duplicative depositions/discovery, motions, hearings, and adjudications of overlapping issues—all without the benefit of the pending ITC proceeding regarding these very issues.

Unsurprisingly, in circumstances such as here, where non-ITC asserted patents overlap with ITC asserted patents, courts regularly find that a stay would simplify the issues of the case:

> A stay will also simplify the issues and trial of this case. The Court will not have to engage in duplicative proceedings regarding the '158 Patent that could be held in conjunction with the '327 Patent. . . . Similarly, because the [] actions are subject to a mandatory stay for the '327 Patent, staying the Associated [district court] Cases with respect to the '158 Patent is likely to substantially reduce the amount of duplicative time and effort the parties and the Court will have to put into these cases.

*Graphic Properties Holdings*, 2014 WL 923314, at *2; *accord SZ DJI Tech.*, 2019 WL 1244948, at *1 ("Because the '000 patent and '013 patent 'share common inventors, specification, and prosecution history,' a stay will simplify the issues.") (citation omitted); *FormFactor*, 2008 WL 361128, at *2-4, 3 ("[T]he ITC's interpretation of the overlapping patents . . . could inform this Court about the claims relating to the non-overlapping patents and also narrow the issues in this matter."); *Flexsys Americas,* 2005 WL 1126750, at *3-4 ("It is more than likely that after the ITC ruling, the parties in this case will have fewer issues for this Court to resolve. . . . [T]he Court finds that a temporary stay will result in a tremendous savings of judicial time and resources. Absent a stay, the Court will hold status conferences and hearings and address discovery disputes only to be faced with many of these same issues after the stay is lifted.").

### 2.    Staying The Related Patents Would Not Unduly Prejudice Masimo

Masimo chose to bring these patent infringement counterclaims knowing that five of the 10 counterclaim patents would be subject to a mandatory stay due to Masimo's assertion of them

against Apple in an ITC proceeding.  Masimo also knew, or should have known, of the relationships and overlaps between the Related and Stayed ITC Patents because they are apparent from the patents themselves and confirmed by Masimo's overlapping infringement charts for these patents.  (*See, supra,* § IV(C).)  As such, the prospect of a discretionary stay of the Related Patents was a foreseeable consequence of Masimo's litigation choices, which undermines any alleged prejudice.  *See SZ DJI Tech.*, 2019 WL 1244948, at *2 (granting stay where counterclaim plaintiff "elected to file its action in the ITC knowing that this would guarantee a stay for two of its three patent counterclaims; it could foresee or at least reasonably should have foreseen that this would lead to a stay of proceedings here with respect to the third, related patent as well").

Indeed, rather than face undue prejudice or tactical disadvantage, Masimo will benefit from a stay because it will avoid duplicative litigation.  *See Graphic Properties Holdings*, 2014 WL 923314, at *2 ("A discretionary stay with respect to the '158 Patent in the Associated Cases will not unduly prejudice [patentee]. . . . By not having to litigate substantially similar matters in both the ITC and this Court, [patentee] will not have to engage in duplicative discovery and other pretrial matters.").  Thus, a stay of the Related Patents would not unduly prejudice Masimo.

### 3.    This Case Is In Its Infancy, Which Favors A Stay

This case is in its earliest possible stage.  Masimo just answered the complaint and asserted the counterclaims in December 2022.  (D.I. 15.)  No scheduling conference has occurred, no scheduling order has issued, no discovery has taken place, and no trial date has been set.  Apple brought this motion swiftly.  This early stage strongly favors a stay.  *See Graphic Properties Holdings*, 2014 WL 923314, at *3 ("No trial date has been set for this case and discovery is not yet complete in th[e] Associated Cases. . . . Thus, the third stay factor also supports a stay . . . .").

### 4.    Denying A Stay Of The Related Patents Would Prejudice Apple

Denying a stay of the Related Patents would prejudice Apple for many of the reasons that

19

granting a stay would simplify the issues of this case.  (*See, supra,* § VI(B)(1).)  The absence of a stay would subject Apple to duplicative litigations regarding the same overlapping issues.

Indeed, Apple would face duplicative litigations regarding the overlapping issues on two fronts.  First, without a stay of the Related Patents, Apple immediately would face simultaneous duplicative litigations of the Stayed ITC Patents in the pending ITC proceeding and of the Related Patents in this district court case.  Second, without a stay of the Related Patents, Apple also would face serial duplicative litigations of the Related Patents in this district court case and then, after the mandatory stay gets lifted, of any Stayed ITC Patent.

The duplicative litigations that would result from denial of a stay would result in the inefficient re-litigation of issues, raise the risk of inconsistent rulings, and waste resources:

> Without the implementation of the discretionary stay for the non-overlapping patents during the duration of the ITC proceeding, ***there will be similar and overlapping issues addressed in both proceedings and addressed again in this action after the mandatory stay is lifted on the overlapping patents***.

*FormFactor*, 2008 WL 361128, at *3; *accord SZ DJI Tech.*, 2019 WL 1244948, at *2 ("[I]n the absence of a stay, [counterclaim defendant] would be prejudiced by potentially having to relitigate issues, with the attendant possibility of inconsistent rulings and a waste of both judicial and party resources."); *Flexsys Americas,* 2005 WL 1126750, at *3 (finding prejudice to the movant if the case proceeded "only with respect to the [related] Patent [not subject to a mandatory stay under 28 U.S.C. § 1659(a)").  Accordingly, denial of a stay would inflict significant prejudice on Apple.

## VII.    CONCLUSION

For the foregoing reasons, Apple requests that the Court (1) sever the Unrelated Counterclaims (i.e., the First through Sixteenth Counts) and (2) stay Masimo's infringement counterclaims for the Related Patents (i.e., the Tenth, Twelfth, Fourteenth, Fifteenth, and Sixteenth Counts) pending final resolution of Masimo's ITC proceeding regarding the Stayed ITC Patents.

Respectfully submitted,

OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP

John M. Desmarais                              By:  */s/ David E. Moore*
Jordan N. Malz                                      David E. Moore (#3983)
Cosmin Maier                                        Bindu A. Palapura (#5370)
Kerri-Ann Limbeek                                   Andrew L. Brown (#6766)
DESMARAIS LLP                                       Hercules Plaza, 6th Floor
230 Park Avenue                                     1313 N. Market Street
New York, NY 10169                                  Wilmington, DE  19801
Tel: 212-351-3400                                   Tel:  (302) 984-6000
                                                    dmoore@potteranderson.com
Peter C. Magic                                      bpalapura@potteranderson.com
DESMARAIS LLP                                       abrown@potteranderson.com
101 California Street
San Francisco, CA 94111                        *Attorneys for Plaintiff/Counter-Defendant*
Tel: 415-573-1900                              *Apple Inc.*

Leon B. Greenfield
Jennifer Milici
Mark A. Ford
Dominic Vote
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington DC 20006
Tel: (202) 663-6000

Dated:  February 3, 2023
10580494 / 12209.00052