**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378-MN |
| | ) | |
| MASIMO CORPORATION and | ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION and | ) | |
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
MASIMO CORPORATION'S COUNTERCLAIMS AND STRIKE ITS INEQUITABLE
CONDUCT AFFIRMATIVE DEFENSE**

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant
Apple Inc.*

Jennifer Milici
Leon B. Greenfield
Dominic Vote
Thad Eagles
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  February 21, 2023
10650032 / 12209.00052

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................................1

ARGUMENT ..............................................................................................................................2

I.     Masimo Fails To State A Monopolization Or Attempted Monopolization Claim ................2

       A.     Masimo Lacks Standing To Bring Its Antitrust Claims.............................................2

       B.     Masimo Fails To Allege A Plausible Product Market ................................................3

       C.     Masimo Fails To Plausibly Allege Monopoly Power.................................................6

       D.     Masimo Fails To Plausibly Allege Any Cognizable Exclusionary Conduct.............7

              1.     Masimo's Patent Fraud Allegations Cannot Support Section 2
                     Liability.................................................................................................7

              2.     Masimo's Monopoly Leveraging Allegations Do Not State a Claim............8

              3.     The False Advertising Allegations Cannot Support Section 2
                     Liability.................................................................................................9

              4.     The Infringement Allegations Cannot Support Section 2 Liability.............13

II.    Masimo Fails To State A False Advertising Claim ...........................................................13

       A.     Masimo's Lanham Act Claim Fails .........................................................................14

              1.     Apple's Alleged Statements Are Not False Or Misleading.........................14

              2.     Masimo Has Not Plausibly Alleged That Any Purported
                     Misstatements Proximately Caused It Any Injury .......................................14

       B.     Masimo's False Advertising Claims Under State Law Also Fail .............................15

III.   Masimo Fails To State A California Unfair Competition Law Claim.................................16

IV.    Masimo Fails To State Inequitable Conduct Claims And Affirmative Defense .................16

       A.     Masimo Fails To Plausibly Allege Mr. Myers Had A Duty Of Disclosure.............17

       B.     Masimo Fails To Plausibly Allege That Mr. Myers Knew Of Allegedly
              Material Art Or Had Specific Intent To Deceive The PTO .....................................19

V.     Masimo Fails To State Pre-Suit Willful And Indirect Infringement Claims ......................20

CONCLUSION...........................................................................................................................20

## **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*Allergan USA, Inc. v. Prollenium US Inc.,*
2019 WL 7298569 (D. Del. Dec. 30, 2019)........................................................................18

*American Council of Certified Podiatric Physicians & Surgeons v. American Board of
Podiatric Surgery, Inc.,*
323 F.3d 366 (6th Cir. 2003) ............................................................................................9

*AstraZeneca AB v. Glenmark Generics Ltd.,*
2014 WL 5366050 (D. Del. Oct. 9, 2014) ......................................................................7-8

*Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.,*
784 F.2d 1325 (7th Cir. 1986) .........................................................................................3

*Bocobo v. Radiology Consultants of South Jersey, P.A.,*
477 F. App'x 890 (3d Cir. 2012) ......................................................................................3

*Borough of West Mifflin v. Lancaster,*
45 F.3d 780 (3d Cir. 1995)..............................................................................................16

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977)..........................................................................................................2

*Certainteed Gypsum, Inc. v. Pacific Coast Building Products, Inc.,*
2021 WL 5449073 (N.D. Cal. Nov. 22, 2021) ................................................................18

*Christy Sports, LLC v. Deer Valley Resort Co.,*
555 F.3d 1188 (10th Cir. 2009) ....................................................................................4, 5

*Commil USA, LLC v. Cisco Systems, Inc.,*
575 U.S. 632 (2015)........................................................................................................20

*Coronavirus Reporter v. Apple Inc.,*
2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .................................................................8

*Eatoni Ergonomics, Inc. v. Research In Motion Corp.,*
826 F. Supp. 2d 705 (S.D.N.Y. 2011).........................................................................7, 13

*Eisai, Inc. v. Sanofi Aventis U.S., LLC,*
821 F.3d 394 (3d Cir. 2016)............................................................................................12

*EMC Corp. v. Pure Storage, Inc.,*
2014 WL 5795557 (D. Del. Nov. 5, 2014) ......................................................................18

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)...............................................................................17, 19

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
   2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) ...................................................................4

*FTC v. Facebook, Inc.*,
   560 F. Supp. 3d 1 (D.D.C. 2021) ...................................................................................6, 7

*Gunawardana v. American Veterinary Medical Ass'n*,
   2021 WL 4951697 (7th Cir. Oct. 25, 2021) ...................................................................13

*Hicks v. PGA Tour Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .....................................................................................3, 16

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
   32 F.4th 242 (3d Cir. 2022) ..............................................................................................2

*iFIT Inc. v. Peloton Interactive, Inc.*,
   2022 WL 609605 (D. Del. Jan. 28, 2022).......................................................................20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)...................................................................................................14, 15

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
   2019 WL 10252725 (D. Del. Apr. 30, 2019) ..................................................................15

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
   2004 WL 7094930 (C.D. Cal. May 28, 2004) ................................................................13

*Mathews v. Lancaster General Hospital*,
   87 F.3d 624 (3d Cir. 1996)................................................................................................3

*McNeilab, Inc. v. American Home Products Corp.*,
   848 F.2d 34 (2d Cir. 1988)..............................................................................................15

*MedImmune, Inc. v. Genentech, Inc.*,
   427 F.3d 958 (Fed. Cir. 2005)...........................................................................................7

*Multiple Energy Technologies, LLC v. Under Armour, Inc.*,
   2021 WL 807722 (W.D. Pa. Mar. 3, 2021) ......................................................................4

*Novartis Consumer Health, Inc., v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
   290 F.3d 578 (3d Cir. 2002).............................................................................................14

*O'Connor v. Uber Technologies, Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ..............................................................................16

*Otsuka Pharmaceutical Co. v. Torrent Pharmaceuticals Ltd.*,
   187 F. Supp. 3d 483 (D.N.J. 2016) ...................................................................8

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
   555 U.S. 438 (2009)..................................................................................7, 8

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
   2021 WL 2188219 (D. Del. May 28, 2021)......................................................16

*Pernod Ricard USA, LLC v. Bacardi U.S.A.*,
   653 F.3d 241 (3d Cir. 2011)..........................................................................14

*Philadelphia Taxi Ass'n, Inc v. Uber Technologies, Inc.*,
   886 F.3d 332 (3d Cir. 2018)..........................................................................13

*Prescient Medical Holdings, LLC v. Laboratory Corp. of American Holdings*,
   2019 WL 635405 (D. Del. Feb. 14, 2019) ...............................................2, 3, 4

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997)....................................................................3, 4, 6

*Reilly v. Apple Inc.*,
   578 F. Supp. 3d 1098 (N.D. Cal. 2022) .......................................................8, 9

*Retractable Technologies, Inc. v. Becton Dickinson & Co.*,
   842 F.3d 883 (5th Cir. 2016) .........................................................................13

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*,
   401 F.3d 123 (3d Cir. 2005)..........................................................................12

*Simon & Simon, PC v. Align Technology, Inc.*,
   2020 WL 1975139 (D. Del. Apr. 24, 2020).......................................................8

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993)........................................................................................2

*Syncsort Inc. v. Sequential Software, Inc.*,
   50 F. Supp. 2d 318 (D.N.J. 1999) ....................................................................6

*Synthes, Inc. v. Emerge Medical, Inc.*,
   2012 WL 4473228 (E.D. Pa. Sept. 28, 2012) ...................................................6

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
   2022 WL 612669 (9th Cir. Mar. 2, 2022)........................................................15

*United States v. E. I. du Pont de Nemours & Co*,
   351 U.S. 377 (1956)........................................................................................5

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)................................................................................................2

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*,
    540 U.S. 398 (2004)...........................................................................................8, 9

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ...........................................................16

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965)................................................................................................7

*Weiss v. York Hospital*,
    745 F.2d 786 (3d Cir. 1984)...............................................................................2, 9

## STATUTES, RULES, AND REGULATIONS

6 Del. C. § 2532 ....................................................................................................14

15 U.S.C. § 1125(a) ...............................................................................................14

37 C.F.R. § 1.56 .....................................................................................................17

Cal. Bus. & Prof. Code § 17200 ...........................................................................16

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ...........................................................14

## OTHER AUTHORITIES

Phillip Areeda & Herbert Hovenkamp, Antitrust Law (5th ed. 2022)......................................9, 13

### INTRODUCTION AND SUMMARY OF ARGUMENTS

Masimo's counterclaims and defenses fall far short of meeting the pleading requirements. To begin, Masimo's monopolization and attempted monopolization claims fail for four independent reasons.  *First*, Masimo lacks antitrust standing because it has failed to plausibly allege that it suffered any cognizable antitrust injury—that is, an injury that stems from conduct that harmed *competition*, rather than just supposedly harmed Masimo.  *Second*, Masimo's antitrust claims rely on an implausibly narrow alleged "health watch" market in which the only competing products are wristwatches that can measure an arbitrary subset of "physiological parameters." *Third,* Masimo alleges no facts supporting its allegations of monopoly power, relying instead on conclusory market share estimates for different markets than the one it purportedly defines. *Fourth*, none of the four types of conduct alleged by Masimo is actionable under the antitrust laws, either individually or collectively.  Counts I and II should therefore be dismissed.

Masimo's Lanham Act, California False Advertising Law, and Delaware Deceptive Trade Practices Act claims fare no better.  Masimo alleges Apple Watch's Blood Oxygen feature is not "suitable for medical or clinical purposes," but it points to no statements where Apple claimed or even implied that this feature was suitable for those specialized purposes.  Masimo likewise asserts that only some users who learned of an irregular pulse from Apple Watch's electrocardiogram (ECG) and irregular rhythm detection features ultimately received a "clinically actionable cardiovascular diagnosis of interest."  Again, Masimo never alleges that Apple ever stated or even suggested that an irregular rhythm notification was tantamount to such a diagnosis.  Masimo also alleges no facts suggesting either that Apple knew any of its statements were false or that these statements could have proximately caused Masimo to lose sales.  Counts III-V therefore fail. Because Masimo's California Unfair Competition Law claim is entirely derivative of these other fatally flawed claims, Count VI should likewise be dismissed.

Finally, Masimo's inequitable conduct claims and affirmative defense should be dismissed and stricken because they are directed to only one individual—Apple's Chief IP Counsel, Jeffrey Myers—but Masimo does not plausibly allege that Mr. Myers owed a duty of disclosure to the Patent and Trademark Office ("PTO") or knew of material prior art, let alone intended to deceive the PTO. Masimo's claims for pre-suit willful and indirect infringement fail because Masimo does not plausibly allege that Apple had pre-suit knowledge of any patent asserted by Masimo.

## ARGUMENT

### I.    Masimo Fails To State A Monopolization Or Attempted Monopolization Claim

To state a monopolization claim, a plaintiff must allege (i) antitrust standing, including an antitrust injury, and (ii) a relevant antitrust market (iii) in which the defendant has monopoly power (iv) that it willfully obtained or maintained through illegal exclusionary conduct. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Weiss v. York Hosp.*, 745 F.2d 786, 805 (3d Cir. 1984). Attempted monopolization claims require the same elements, except that only a dangerous probability of obtaining monopoly power is required, along with specific intent to monopolize. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Masimo fails at each step.

### A.    Masimo Lacks Standing To Bring Its Antitrust Claims

To have antitrust standing, a plaintiff must have suffered an "antitrust injury"—an "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). A plaintiff's allegations must therefore "show that its loss comes from acts that reduce output or raise prices to consumers in the relevant market." *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 252 (3d Cir. 2022) (cleaned up). There must be "an actual adverse effect on competition as a whole in the relevant market, not just on plaintiff as a competitor." *Prescient Med. Holdings, LLC v. Lab'y Corp. of Am. Holdings*, 2019 WL 635405, at *2 (D. Del. Feb. 14, 2019) (cleaned up). Harm to a single rival can harm *competition* only if

the rival "is completely shut out of the market." *Id.* at *3; *see also Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477 F. App'x 890, 897-98 (3d Cir. 2012).

Masimo alleges that Apple's purported conduct has caused Masimo "to expend substantial amounts of money, time, and human resources to defend this action," "threatens to impact Masimo's business and reputation," "diminish[es] the attractiveness of Masimo's W1 Watch," and "has caused Masimo to lose sales, customers, and opportunities[,] … as well as erosion of its goodwill and brand." D.I. 15 ("CC") 19-162 ¶¶ 216-17. At most, these are alleged injuries to Masimo alone. Such individualized injuries could amount to *antitrust* injury only if Masimo has been "excluded entirely" from the relevant market. *Bocobo*, 477 F. App'x at 897-98. But Masimo alleges no threat to its ability to compete. To the contrary, Masimo boasts that it is thriving, profitable, *see, e.g.*, CC ¶¶ 2-3, 30-43, and poised to greatly *expand* W1 sales in the very short term, including through a recent billion-dollar acquisition to enhance W1 distribution, *see* D.I. 45 at 5-6. Masimo's allegations of injuries to "just [its] own welfare" do not suffice to state an antitrust claim. *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996).

### B.      Masimo Fails To Allege A Plausible Product Market

Plaintiffs in monopolization cases must allege a plausible relevant product market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). That market must "encompass the product at issue"—here, Apple Watch—"as well as all economic substitutes." *Hicks v. PGA Tour Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Product markets must include all economic substitutes because those substitutes are what constrains the defendant's "ability to control [the] output and prices" of its own product. *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1336 (7th Cir. 1986) (Easterbrook, J.).

An alleged market with vague and "imprecise" boundaries cannot "adequately define the relevant product market," because it does not provide enough information to determine if all

reasonable economic substitutes are included.  *Prescient Med.*, 2019 WL 635405, at *6.  And if a plaintiff "alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."  *Queen City*, 124 F.3d at 436.  Courts thus routinely dismiss antitrust claims that arbitrarily focus on just one product feature to exclude obvious substitutes.  *See, e.g.*, *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922, at *5, 8 (E.D. Pa. Aug. 9, 2002) (rejecting alleged market for "Russian dairy foods" because plaintiff did not allege facts showing market was "distinct from the market for … dairy products in general"); *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192, 1194 (10th Cir. 2009) (rejecting alleged market for "ski rentals to destination skiers in Deer Valley" because plaintiffs alleged "nothing to suggest" skiers chose a resort based only on that one feature).

Masimo's alleged "health watch" market fails for precisely these reasons.[1]  The alleged relevant market is "for consumer wrist-worn watches that measure physiological parameters," including, "for example, the ability to measure oxygen saturation, the ability to take an ECG, and the ability to detect arrythmias," but excluding "features typically found in fitness trackers, such as step counters, calorie counters, and pulse or heart rate" measurements.  CC ¶ 166.

*First*, this definition is fatally ambiguous.  What "physiological parameter" measuring capabilities make a device a "health watch" instead of a "fitness tracker"?  Why not pulse or heart rate?  Masimo fails to define the limits of its alleged market, and so has not carried its burden.  *See Prescient Med.*, 2019 WL 635405, at *6 (collecting cases); *Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2021 WL 807722, at *2 (W.D. Pa. Mar. 3, 2021) (dismissing antitrust claim where

---

[1] The alleged "market for distributing iOS Apps," CC ¶ 173, is relevant only to Masimo's purported "leveraging" claim, *see id.* ¶ 206, which fails for other reasons.  *See infra* Part I.D.2.

"it is unclear what clothing or type of clothing is part of" the alleged market).

*Second*, this definition arbitrarily excludes both (1) devices that can measure the arbitrary subset of "physiological parameters" that Masimo singles out, but are not wristwatches, and (2) wristwatches that share many key capabilities with Apple Watch, but do not measure those few parameters. Both sets of products are obvious competitors with and reasonable economic substitutes for Apple Watch. Masimo alleges no facts suggesting they are not.

To start, many products that are not wristwatches do measure physiological parameters. Masimo points to many of its own such products, including the "Masimo Root" and "Radius-7 wearable monitor," CC ¶ 33; the "iSpO$_2$" and "MightySat," *id.* ¶ 39; the "Radius PPG," *id.* ¶ 40; the "Masimo SafetyNet," *id.* ¶ 201; and the "Masimo Sleep," *id.* ¶ 41. Masimo alleges no reason why a material number of prospective purchasers would consider only wristwatches and not these many other options. Indeed, Masimo alleges that "physiological parameter measurement features [are] a key reason why consumers purchase a health watch." *Id.* ¶ 167. If that is true, then other products with those same material capabilities are necessarily reasonable economic substitutes.

Masimo also implausibly excludes smart watches that do not measure these physiological parameters, but that share myriad features with Apple Watch, including "the ability to send and receive messages, take phone calls, or view a calendar." CC ¶¶ 166, 168. While physiological measuring features might affect some purchasers' choices among many available smart watches, these preferences do not define a separate "health watch" market. *See United States v. E. I. du Pont de Nemours & Co,* 351 U.S. 377, 1006-07 (1956) (differentiated products can exist in same market). "To define one small component of the overall product as the relevant product market is simply implausible." *Christy Sports*, 555 F.3d at 1194. Masimo alleges no facts suggesting that price changes to non-"health watches" would not affect Apple Watch demand and vice versa.

Masimo's "failure to define the market in terms of reasonable interchangeability or explain the rationale underlying its narrow proposed market definition is, in itself, grounds for dismissal." *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 333 (D.N.J. 1999) (citing *Queen City*, 124 F.3d at 437). The Court need go no further.

### C. Masimo Fails To Plausibly Allege Monopoly Power

Even if Masimo had pled a plausible market, it fails to plausibly allege that Apple either has or has a dangerous probability of obtaining monopoly power. A mere "statement of market power in the pleadings … is an insufficient allegation." *Syncsort*, 50 F. Supp. 2d at 330; *see also Synthes, Inc. v. Emerge Med., Inc.*, 2012 WL 4473228, at *11 (E.D. Pa. Sept. 28, 2012) (rejecting allegation that defendant has "over 50% market share" as a "threadbare recital[] unsupported by any factual allegations"). Moreover, where a complaint makes only a "thin showing" of an "idiosyncratically drawn" market, courts "demand something more robust from Plaintiff's market-share allegations." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 17-18 (D.D.C. 2021).

Masimo alleges that "Apple's market share of the U.S. health watch market exceeds 70%." CC ¶ 184. Its only support is that some unnamed "[a]nalysts have estimated Apple's share of U.S. smart watch sales exceeds 90%," while "[o]thers" put its global share at "about 50%." *Id.* Masimo then conjectures that "[o]ne would expect Apple's market share of the *health watch* market to be greater than or equal to its share of the *smart watch* market." *Id.* (emphasis added). Masimo thus starts with conclusory allegations about undefined smart watch markets—insufficient allegations even if they concerned markets at issue in this case—then summarily infers Apple's power in the market actually alleged. Layering one unsupported conclusory allegation atop another does not state a claim. *See Synthes*, 2012 WL 4473228, at *11 (allegation of market power in "Orthopedic Trauma space" did not support allegation of market power in relevant market for certain "Generic Fixation Devices"). A threadbare allegation of market share in "an unusual, nonintuitive product

market—the confines of which are only somewhat fleshed out and the players within which remain almost entirely unspecified—is not enough." *Facebook*, 560 F. Supp. 3d at 20.

> ### D. Masimo Fails To Plausibly Allege Any Cognizable Exclusionary Conduct

Masimo alleges an "anticompetitive scheme" consisting of four types of allegedly exclusionary conduct. *See* CC ¶¶ 205-08. As a matter of law, Masimo fails to allege an antitrust claim based on any of the alleged conduct. And Masimo cannot combine four types of conduct that do not violate the antitrust laws into a valid antitrust claim. *See Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (refusing to "alchemize" two invalid antitrust claims into a "new form of antitrust liability" because "[t]wo wrong claims do not make one that is right"). There is no "authority for the proposition that a series of unilateral acts that do not violate the antitrust laws may be aggregated into an unlawful 'course of conduct.'" *Eatoni Ergonomics, Inc. v. Rsch. In Motion Corp.*, 826 F. Supp. 2d 705, 709-10 (S.D.N.Y. 2011), *aff'd*, 486 F. App'x 186 (2d Cir. 2012); *see also Facebook*, 560 F. Supp. 3d at 25 (refusing to consider cumulative impact of actions that are not "themselves independent violations" of applicable antitrust doctrines).

> ### 1. Masimo's Patent Fraud Allegations Cannot Support Section 2 Liability

Masimo alleges that Apple is knowingly enforcing patents obtained by fraud on the PTO. *See* CC ¶ 205; *see also Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965). "Like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of Fed. R. Civ. P. 9(b)." *MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007). As explained below with respect to Masimo's inequitable conduct claims, Masimo fails to allege fraud with particularity. *See infra* Part IV. That failure also dooms its *Walker Process* claim.

Masimo's *Walker Process* claim also fails because it alleges no harm to competition. The "harm in having to defend [a] patent infringement lawsuit is purely personal and cannot establish

an antitrust injury on its own." *AstraZeneca AB v. Glenmark Generics Ltd.*, 2014 WL 5366050, at *1 n.1 (D. Del. Oct. 9, 2014).  A plaintiff must also allege that litigation costs "harmed the competitive landscape" or prevented it "from pursuing its entry into the [relevant] market." *Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*, 187 F. Supp. 3d 483, 487 (D.N.J. 2016).  Masimo does not and cannot make such allegations, given that it is *expanding* W1 distribution and sales.  *See supra* at 3.  Apple also seeks to enforce ten patents, only six of which Masimo alleges were obtained by fraud.  *Compare* D.I. 1 ¶¶ 12-13; C.A. No. 22-1377 D.I. 1 ¶¶ 12-13 *with* CC ¶¶ 75, 115.  Masimo litigating ten patents instead of four will not plausibly harm competition.

### 2.      Masimo's Monopoly Leveraging Allegations Do Not State a Claim

Masimo next alleges that Apple has engaged in exclusionary conduct by "leveraging" its "monopoly power in the iOS app distribution market to harm Masimo and competition as a whole in the separate health watch market."  CC ¶ 206.[2]  But "leveraging" is not an antitrust violation. *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko*, 540 U.S. 398, 415 n.4 (2004).  Allegations that a purported monopolist in one market has used its power to gain an advantage in another market thus do not "relieve a party's obligation to allege anticompetitive conduct."  *Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, at *9 (D. Del. Apr. 24, 2020) (collecting cases).

Any claim that the conditions Apple allegedly placed on Masimo's access to the iOS App Store constitute exclusionary conduct fails as a matter of law.  "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *linkLine*, 555 U.S. at 448; *see also Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *15 (N.D. Cal. Nov. 30, 2021) (limiting what apps are sold in App Store is not an exclusionary act); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110-11 (N.D. Cal. 2022) (same).

---

[2] Although this "iOS app distribution market" is the kind of single-brand aftermarket that courts regularly reject, the Court need not reach the issue given Masimo's other pleading failures.

There is a narrow exception to this rule when a firm terminates a prior "course of dealing with its rivals" at a sacrifice of profits.  *Trinko*, 540 U.S. at 409.  Masimo has not alleged such facts.  Nor has Masimo claimed that the conditions Apple allegedly placed on Masimo's access to the iOS App Store threaten its ability to compete such that it might theoretically harm competition, rather than Masimo alone.  To the contrary, Masimo alleges that its Health App is approved on the Play Store for Android devices, CC ¶ 74, meaning Masimo *was already* competing in the alleged health watch market *without* access to the iOS App Store.  Masimo thus "fails to connect [its] supposed injury to injury to competition generally."  *Reilly*, 578 F. Supp. 3d at 1109-10.

### 3.    The False Advertising Allegations Cannot Support Section 2 Liability

Because the likelihood of a "false claim leading to or perpetuating durable market power" is "so small," courts presume false advertising has no cognizable anticompetitive effect absent factual allegations showing that the statements were "clearly false."  Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 782b (5th ed. 2022) ("Areeda"); *see also Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 371 n.7 (6th Cir. 2003) (statements must be "clearly false" to support antitrust liability, not merely "misleading").  Further, false statements can give rise to antitrust liability only if *knowingly* false, as there can be no antitrust violation without "*willful* conduct designed to acquire or maintain monopoly power."  *Weiss*, 745 F.2d at 825 (emphasis added).  Masimo has not alleged that Apple stated anything even misleading—much less knowingly and clearly false.  In any event, Masimo nowhere alleges facts showing that any purported false statements plausibly harmed competition.

**Blood oxygen measurements.**  Masimo's claim as to Apple's advertising of the Blood Oxygen feature relies entirely on its own study supposedly finding that the feature is not "suitable for medical or clinical purposes."  CC ¶¶ 152, 154.  But Masimo identifies no Apple statement to the contrary.  Masimo points only to statements not about the Blood Oxygen feature at all, *id.*

¶ 144; statements about blood oxygen measurements generally and announcement of new research projects, *id.* ¶ 146; non-actionable opinions, *id.* ¶ 145 ("amazing"), ¶ 147 ("remarkable"), ¶ 149 ("essential," "best-in-class"); and advertisements that mention the feature in passing and do not even show it being used in a medical setting, *id.* ¶¶ 147-48.  None of this remotely promises that the Blood Oxygen feature can measure blood oxygen "in a clinically sufficient manner."  *Id.* ¶ 154.

Masimo also focuses on the statements that Apple Watch can take a blood oxygen measurement "anytime, anywhere," CC ¶ 155, and "background readings, day and night," *id.* ¶ 156.  But Masimo's claim that these statements are false relies solely on its purported findings that the Blood Oxygen feature does not "track [a] test control hospital monitor" and is not "suitable for medical or clinical purposes."  *Id.* ¶ 154.  Apple's statements about when and where the Blood Oxygen feature can work—not about *how* it works—do not somehow suggest the feature is hospital-grade.  These statements are not false, and certainly are not clearly and knowingly false.

Moreover, incorporated material shows that Apple *expressly informed* consumers that its pulse oximetry feature is meant for fitness and wellness, not medical, purposes.  Masimo relies heavily on Dr. Desai's statement that Apple Watch can measure blood oxygen "anywhere at any time."  *See* CC ¶¶ 146, 151, 155.  But Masimo omits what she said just before:  "Now, the Blood Oxygen app on Series 6 lets you measure your blood oxygen *for fitness and wellness purposes* from your wrist anywhere and at any time."  *See* bit.ly/3HSZksx at 12:17.  Likewise, the news stories on which Masimo relies show that Apple told consumers that "the feature is simply there to help users understand their fitness and wellness," bit.ly/3Y0lCOF, CC ¶ 158; is for "wellness," not "medical diagnostics," bit.ly/3jlLCoJ, CC ¶ 159; and is "not intended for medical use" but rather is "only designed for general fitness and wellness purposes," bit.ly/40DhSED, CC ¶ 157.  Even accepting all alleged, plausible facts as true, Masimo has alleged no false advertising.

**Irregular rhythm notifications and ECG features.**  Masimo next alleges that Apple's advertisements about its irregular rhythm and ECG features were false.  Masimo relies solely on a study it describes as finding that only 11.4% of participants who were alerted to an abnormal pulse received a "clinically actionable cardiovascular diagnosis of interest."  CC ¶ 163.  Masimo both misrepresents the study's findings and nowhere alleges that Apple ever claimed that detection of an irregular pulse or an atrial fibrillation alert guaranteed any diagnosis.

The study on which Masimo relies found that only 11.4% of participants received a "*new* clinically actionable" diagnosis, while "[n]early half (48.9%)" had a "preexisting cardiovascular diagnosis."  bit.ly/3Z1HBVh at 1362 (emphasis added).  *Over 60%* of participants who were alerted to an irregular pulse had an underlying diagnosis—hardly a "'crying wolf' problem."  CC ¶ 165.  Separately, only "a small proportion of participants" had "a newer-generation Apple Watch" with the ECG feature.  bit.ly/3Z1HBVh at 1362-63.  The study thus cannot refute the statements Masimo cites, which do not reference the older generation Apple Watch.  *See* CC ¶ 162.

Regardless, Masimo nowhere alleges that Apple ever claimed that Apple Watch detects abnormal pulses or issues atrial fibrillation alerts only when there is "a clinically actionable cardiovascular diagnosis of interest."  Masimo instead partially quotes a September 7, 2022 statement from Tim Cook that Apple Watch "gets help when you need it," CC ¶ 162, which is too vague to support a false advertising claim.  Moreover, Cook's full statement refers to Apple Watch generally—which wearers can use to call emergency services—not to any particular feature.  *See* bit.ly/3DE9zOV at 3:02-3:10 (Apple Watch "keeps you connected to the things you care about most, encourages you to stay active, and monitors your health and gets help when you need it.").  Neither this broad statement of opinion nor the customer stories that follow even *imply* a guarantee that detection of an irregular pulse reflects any particular diagnosis.  Masimo also relies on a true

description of Apple Watch's feature allowing wearers to "capture an ECG," *see* CC ¶ 161, and

on opinion that the Apple Watch Series 4 with ECG "is the intelligent guardian for your health,"

*id.* ¶ 162.  And Masimo quotes language from Apple's website that *contradicts* Masimo's claim:

Apple Watch "checks for signs of irregular rhythms that *may be suggestive* of atrial fibrillation."

*Id.* ¶ 161 (emphasis added).  That website also notes that alerts provide "an early indication that

further evaluation *may be* warranted."  https://www.apple.com/healthcare/apple-watch/ (emphasis

added).  Again, Masimo's own allegations and incorporated material show that Apple made no

false statements, much less clearly and knowingly false statements.

**Neither set of allegedly false statements plausibly harmed competition.**  Even clearly

false statements harm competition only in "rare circumstances."  *Eisai, Inc. v. Sanofi Aventis U.S.,

LLC*, 821 F.3d 394, 407 n.40 (3d Cir. 2016).  False advertising cannot be exclusionary if rivals

remain "free to tout [their] products" and consumers are not "constrained from buying the

plaintiff's products."  *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 133

(3d Cir. 2005).  A plaintiff therefore must allege a "reason to believe that it could not have

corrected [the] misstatements by supplying [consumers] with accurate information."  *Eisai*, 821

F.3d at 408 n.40.  Masimo alleges it has data contradicting Apple's advertising, *see* CC ¶¶ 153-54,

and enormous resources to make that public, *id.* ¶¶ 2-3, 32-35.  Masimo thus can readily correct

any purported Apple misstatements, so those statements could never support an antitrust claim.

Many of the allegedly false statements were also made *years* before W1 was released.

*Compare* CC ¶ 43 (W1 released in Aug. 2022), *with* ¶¶ 144-46 (statements in Sept. 2020); ¶ 148

(July and Sept. 2021); ¶ 162 (2018, when Apple released Watch Series 4).  If these old statements

truly threatened Masimo's ability to compete, Masimo would not have entered the market in the

first place, much less recently doubled down with a billion-dollar investment.  *See supra* at 3.

Perhaps recognizing that it has not alleged any traditional anticompetitive conduct, Masimo offers the novel assertion that Apple's purported false advertising harms competition by "flooding the market" with allegedly inferior technologies.  CC ¶ 212.  But by introducing Apple Watch, Apple *increased* output and consumer choice, "thereby *increasing* competition."  *Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 344 (3d Cir. 2018); *see also id.* at 340 (rejecting allegation that "'flood[ing]' the Philadelphia taxicab market" was anticompetitive conduct); *Gunawardana v. Am. Veterinary Med. Ass'n*, 2021 WL 4951697, at *4 (7th Cir. Oct. 25, 2021) (allegation that defendant "flood[ed] the market" had "nothing to do with the antitrust laws").

### 4.     The Infringement Allegations Cannot Support Section 2 Liability

Contrary to Masimo's allegations, *see* CC ¶ 208, "patent infringement cannot serve as a basis for imposing antitrust liability" because it "causes competing products to enter the market, and thereby increases competition."  *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 893 (5th Cir. 2016); *see also* Areeda ¶ 782a3 (this holding is "[c]learly … correct").  Courts have accordingly refused to find that infringement can support an antitrust claim.  *See Eatoni*, 826 F. Supp. 2d at 708 (finding no "case in which patent infringement has been considered anticompetitive conduct"); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2004 WL 7094930, at *2 (C.D. Cal. May 28, 2004) ("no legal authority supports basing a patentee's antitrust case on a finding of patent infringement").  Moreover, "the patent laws themselves contain remedial provisions," and an antitrust claim premised on infringement would rest on the same elements.  Areeda ¶ 782a3.  "There is no authority to support allowing Masimo to be doubly compensated by allowing the same conduct for which Masimo will be compensated in the patent case to serve as the basis of an antitrust claim."  *Masimo*, 2004 WL 7094930, at *2.

## II.     Masimo Fails To State A False Advertising Claim

Masimo next brings claims for false advertising under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a); California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and the Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532. But Masimo has alleged no facts showing that Apple made any false or misleading statements, much less that any statements (even if false or misleading) proximately caused Masimo any injury.

### A.     Masimo's Lanham Act Claim Fails

To state a false advertising claim under Section 43(a) of the Lanham Act, Masimo must allege, among other things, that Apple's advertising is either "(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers," *Novartis Consumer Health, Inc., v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002), and that it suffered an injury that was proximately caused by a violation of the statute, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Masimo has not done so.

### 1.     Apple's Alleged Statements Are Not False Or Misleading

As explained in Part I.D.3, Masimo identifies no Apple statement about Apple Watch's Blood Oxygen or irregular rhythm features that is rendered false or misleading by the purported studies on which Masimo relies, particularly given Apple's disclosure of the purposes and limits of these two functions.  *See Pernod Ricard USA, LLC v. Bacardi U.S.A.*, 653 F.3d 241, 252-53 (3d Cir. 2011) ("Havana Club" mark was not misleading as to origin where bottle was labeled "Puerto Rican Rum").  That failure disposes of Masimo's Lanham Act claim as well.

### 2.     Masimo Has Not Plausibly Alleged That Any Purported Misstatements Proximately Caused It Any Injury

The Lanham Act's proximate cause requirement "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."  *Lexmark*, 572 U.S. at 133.  The injury must "flow[] directly" from the alleged false statements, meaning the "deception of consumers causes them to withhold trade from the plaintiff."  *Id.*  Allegedly "misleading, non-comparative

commercials which tout[] the benefits of the product advertised but [make] no direct reference to any competitor's product" are unlikely to cost any particular competitor any sales, so courts require specific factual allegations "of actual injury and causation." *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988); *see also ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022) (affirming dismissal where plaintiff "did not plead facts showing anything like a 1:1 relationship" between false advertising and lost sales).

Masimo baldly alleges that "[p]otential Masimo consumers withheld purchasing products and services from Masimo, including purchases of the W1 and related services, based on Apple's advertising and promotion statements."  CC ¶ 260.  But Masimo alleges no *facts* plausibly suggesting that any consumer would have purchased a W1 but for the alleged misrepresentations. Masimo's own allegations show that consumers likely prefer Apple Watch or another smart watch over the W1 for many reasons unrelated to physiological parameter measuring capabilities. *Compare id.* ¶ 43 (describing limited function of W1), *with id.* ¶ 166 (listing just a few of the many capabilities of other smart watches).  Given Apple Watch's wide variety of available features, especially relative to W1, Apple Watch sales "might instead have resulted from any number of other reasons" apart from the alleged misrepresentations.  *Lexmark*, 572 U.S. at 140 (cleaned up).

Furthermore, many statements on which Masimo relies are from years before it introduced its W1.  *See supra* at 12.  These statements are thus "too remote" to have proximately caused consumers not to purchase a W1.  *Lexmark*, 572 U.S. at 133; *see also Liqwd, Inc. v. L'Oréal USA, Inc.*, 2019 WL 10252725, at *12 (D. Del. Apr. 30, 2019) (recommending dismissal where false statements were made "months or years prior" to launch of counterclaimant's products).

### B.    Masimo's False Advertising Claims Under State Law Also Fail

Masimo's other false advertising claims turn on the same allegations as its Lanham Act claim, *see* CC ¶¶ 264, 273, and fail for the same reasons.  Delaware courts "typically treat DTPA

claims and Lanham Act claims as rising and falling together." *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *8 (D. Del. May 28, 2021).  And "claims of unfair competition and false advertising under [the California FAL and UCL] are 'substantially congruent' to claims made under the Lanham Act." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007).  Counts III-V should be dismissed.[3]

## III.    Masimo Fails To State A California Unfair Competition Law Claim

Masimo's California Unfair Competition Law ("UCL") claim falls together with its other claims.  The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]."  Cal. Bus. & Prof. Code § 17200.  Masimo has not alleged any "unlawful" acts, *see* CC ¶ 283, because its Sherman Act, Lanham Act, FAL, and DTPA claims all fail.  Masimo has not alleged any "unfair" acts, *see id.* ¶ 284, because the alleged unfair conduct is identical to the purportedly anticompetitive conduct underlying its invalid Sherman Act claims.  *See Hicks*, 897 F.3d at 1124 (affirming dismissal of UCL claim premised entirely on same allegedly unfair conduct that failed to state an antitrust claim).  And Masimo has not alleged any "fraudulent" conduct, *see* CC ¶ 285, because it has not alleged that Apple falsely advertised its products or fraudulently obtained its patents.  Nor has it alleged that Masimo relied on any alleged false statement, as the UCL requires. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (dismissing UCL fraud claim for false advertising because plaintiff did not plead reliance).

## IV.    Masimo Fails To State Inequitable Conduct Claims And Affirmative Defense

Masimo asserts inequitable conduct for the '783, '491, and '483 patents (defined in Masimo's counterclaims as the "Utility Patents").  *See* CC at 17 (Second Defense) & ¶¶ 115-41,

---

[3] Alternatively, because Masimo's federal claims fail, the court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  No such affirmative justifications are present here.

438-49.  "[I]nequitable conduct … must be pled with particularity under Rule 9(b)" and "identify the specific who, what, when, where, and how of the material misrepresentation or omission." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326, 1328-29 (Fed. Cir. 2009).  Masimo fails to plead those facts.  Instead, Masimo directs its allegations to "Apple" in general: "Apple withheld [three] but-for material references, including Kotanagi, Tanagi, and Shmueli during the prosecution of the Utility Patents."  CC ¶ 119; *id.* ¶ 115 ("Apple prosecuted," "Apple withheld from the PTO," "Apple's duty of candor").  Masimo's allegations about "Apple" and unnamed "others at Apple" fail to "identify the specific who," as *Exergen* requires, and should be dismissed on that basis alone.  *Exergen*, 575 F.3d at 1328.  The *only* specific "who" Masimo identifies is Apple's Chief IP Counsel, Jeffrey Myers.  *See* CC ¶¶ 120, 128-30, 138-39.  For the reasons below, the Court should dismiss the inequitable conduct claims and strike the defense based on Mr. Myers.

## A.     Masimo Fails To Plausibly Allege Mr. Myers Had A Duty Of Disclosure

Inequitable conduct pleadings must provide a "factual basis to infer that any specific individual … owed a duty of disclosure in prosecuting" the patent.  *Exergen*, 575 F.3d at 1330.  That duty applies to only three classes of "[i]ndividuals associated with the filing or prosecution of a patent application": (1) each named inventor; (2) each attorney or agent who prepares or prosecutes the application; and (3) every other person substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.  37 C.F.R. § 1.56; *see Exergen*, 575 F.3d at 1329 (referencing § 1.56).  Masimo fails to plausibly allege that Mr. Myers had any duty to the PTO.  *See* CC ¶¶ 120, 128-30, 138-39.  Masimo makes only one allegation concerning Mr. Myers and prosecution of the Utility Patents: "From September 10, 2016 to September 28, 2022, Myers was an attorney of record for prosecution of the Utility Patents."  *Id.* ¶ 128; *accord id.* ¶ 138.  That allegation fails to meet Rule 9(b)'s pleading requirement and is flat-out false.

*First*, Masimo's bare "attorney of record" allegation does not plausibly show that Mr. Myers had a duty of disclosure.  In *EMC Corp. v. Pure Storage, Inc.*, 2014 WL 5795557 (D. Del. Nov. 5, 2014), the court dismissed inequitable conduct allegations against two attorneys whose only alleged involvement in prosecution was that they had been appointed powers of attorney, finding that "[w]ithout more, there is no reason to infer that the lawyers, simply listed as power of attorney along with five others, were substantively involved in prosecuting the [] patent."  *Id.* at *2.  Similarly, in *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, 2021 WL 5449073 (N.D. Cal. Nov. 22, 2021), the court dismissed inequitable conduct allegations against an attorney because the pleading "fail[ed] to identify any specific actions performed by [attorney] that involve the development of the 'content of the application or decisions related thereto.'"  *Id.* at *8.

Here, Masimo pleads far less.  Masimo does not even purport to allege, let alone plead facts showing, that Mr. Myers was substantively involved in prosecuting the Utility Patents.  Masimo does not allege that Mr. Myers signed or filed any document with the PTO, presented any argument to the PTO, or was otherwise involved in these activities.  *See EMC,* 2014 WL 5795557, at *2 n.2 ("The absence of any factual allegations suggests the opposite—that [attorney was] not involved … in the prosecution of the [] patent"); *Certainteed Gypsum,* 2021 WL 5449073, at *8.  Indeed, rather than identify Mr. Myers, Masimo pleads "the law firm Brownstein Hyatt Farber Schreck, LP … *prosecute[d]* the Utility Patents."  CC ¶ 129 (emphasis added); *accord id*. ¶ 139.

*Second*, Masimo's bare "attorney of record" allegation fails because it is self-evidently false.  Apple requests that the Court take judicial notice of the PTO's prosecution histories for the Utility Patents.  "[T]he court may take judicial notice of the prosecution history, which is a matter of public record."  *Allergan USA, Inc. v. Prollenium US Inc.*, 2019 WL 7298569, at *6 (D. Del. Dec. 30, 2019) (dismissing inequitable conduct claim after taking "judicial notice of the

prosecution history" and finding that inventor's "summary of the [reference] in the provisional application makes no representations" as plaintiff alleged).  Here, Mr. Myers's name does not appear anywhere in these records, which fatally contradicts Masimo's bare "attorney of record" allegation and confirms the insufficiency of Masimo's claim.  *See* Ex. 8.

### B.  Masimo Fails To Plausibly Allege That Mr. Myers Knew Of Allegedly Material Art Or Had Specific Intent To Deceive The PTO

Rule 9(b) also requires that inequitable conduct pleadings "include sufficient allegations of underlying facts" showing that a specific individual "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Exergen,* 575 F.3d at 1328-29.  Masimo offers only one allegation supposedly suggesting that Mr. Myers knew of the prior art— he "signed the power of attorney authorizing Fish and Richardson to represent Apple" in certain IPRs that used the prior art.  CC ¶¶ 128, 138.  But that does not plausibly show that he knew of the prior art, let alone knew of the specific passages and figures Masimo now claims to be material. *See Exergen*, 575 F.3d at 1330 ("[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference.").[4]

Masimo's only allegation regarding purported intent to deceive the PTO is that "Mr. Myers and others at Apple selected the law firm Brownstein Hyatt Farber Schreck, LLP to prosecute the Utility Patents" and selected "Fish and Richardson [] to represent Apple in the IPRs."  CC ¶ 129, *accord id.* ¶ 139.  But mere use of different law firms for different kinds of proceedings does not plausibly show intent to deceive, especially here where nothing more is alleged.  Indeed, Apple had regularly retained these two firms for these separate functions for years before the period at

---

[4] Masimo also does not allege that Mr. Myers knew of the Kotanagi or Tanagi references themselves, as opposed to just the broader "family" to which they belong, and does not allege that he signed the power of attorney for any IPR concerning Tanagi.  CC ¶¶ 128-29.

issue, and requests that the Court take judicial notice of these facts.  Exs. 1-4.

## V.      Masimo Fails To State Pre-Suit Willful And Indirect Infringement Claims

"[T]o plead a claim for willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge."  *iFIT Inc. v. Peloton Interactive, Inc.*, 2022 WL 609605, at *1 (D. Del. Jan. 28, 2022).  Claims for induced and contributory infringement likewise require "knowledge of the patent[s] in suit."  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).  Masimo fails to plausibly allege that Apple had pre-suit knowledge of Masimo's patents.

'743, '159, '223, and '911 patents.  Masimo's pre-suit knowledge assertion rests solely on an *outside-counsel-eyes-only* interrogatory response that Masimo served in an ITC Investigation. *See* CC ¶¶ 318, 336, 354, 372.  Masimo does not allege that *any* Apple employee ever saw that response, let alone the patents.  And because Masimo marked its response "COMPLAINANTS' CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER"—and still takes that position—no Apple employee was allowed to see it.  *See* Exs. 5-6 & 7 ¶¶ 2(a), 3.

'507 patent.  Masimo relies solely on Apple's production of "four copies of the published *application* underlying the issued '507 Patent … during discovery in the ITC Investigation."  CC ¶ 363 (emphasis added); *see also id.* ("Masimo filed provisional patent application no. 61/703,729, which led to the '507 Patent, on September 20, 2012, while Dr. O'Reilly and Lamego were affiliated with Masimo and/or Cercacor.").  As a matter of law, however, "[k]nowledge of a patent application alone … is not enough to establish knowledge of the patent(s) that issued from that application and therefore not enough to establish willfulness."  *iFIT Inc.*, 2022 WL 609605, at *2.

## CONCLUSION

For the reasons above, the Court should dismiss, with prejudice, counterclaims I-VI, all inequitable conduct claims and defenses, and all pre-suit willful and indirect infringement claims.

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
Jamie L. Kringstein
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
Thad Eagles
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  February 21, 2023
10650032 / 12209.00052

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant
Apple Inc.*

-21-