**IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | C.A. No. 22-1378 (MN) |
| v. | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| *Defendants*. | |

**<u>DEFENDANTS' OPPOSITION TO APPLE INC.'S MOTION TO SEVER
AND STAY MASIMO'S ANTITRUST, FALSE ADVERTISING,
AND PATENT INFRINGEMENT COUNTERCLAIMS</u>**

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Perry D. Oldham
Benjamin A. Katzenellenbogen
Jared C. Bunker
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

Brian Horne
Knobbe, Martens, Olson & Bear, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
3579 Valley Centre Drive, Suite 300

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
Phillips, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

Dated: February 24, 2023

San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 3

III.    SUMMARY OF ARGUMENTS ........................................................................ 3

IV.     STATEMENT OF FACTS ................................................................................. 4

V.      LEGAL STANDARDS ...................................................................................... 6

VI.     ARGUMENT ..................................................................................................... 7

    A.      The Court Should Not Sever Masimo's Counterclaims ......................... 7

        1.      Masimo's Antitrust Counterclaims Arise from the Same
            Transaction or Occurrence as Apple's Patent Infringement
            Claims ........................................................................................ 7

        2.      Severance Threatens to Violate Masimo's Constitutional Right
            to a Jury Trial .......................................................................... 8

        3.      Masimo's Counterclaims Raise Legal and Factual Issues that
            Overlap with Apple's Patent Infringement Claims................... 11

        4.      Severing Masimo's Counterclaims Would Prejudice Masimo
            and Cause Delay ...................................................................... 15

        5.      Judicial Economy and Fundamental Fairness Do Not Favor
            Severing Masimo's Counterclaims ......................................... 17

    B.      The Court Should Not Stay Masimo's Patent Infringement
        Counterclaims ...................................................................................... 18

        1.      Staying the Non-ITC Patents Would Not Simplify the Issues ............... 18

        2.      Staying the Non-ITC Patents Would Prejudice Masimo ........................ 19

        3.      The Stage of this Case Does Not Support Granting a Stay..................... 20

        4.      Denying a Stay of the Non-ITC Patents Would Not Unfairly
            Prejudice Apple....................................................................... 20

VII.    CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page No(s).**

*Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*,
    No. 20-1630, 2021 WL 3363496 (D. Del. Aug. 3, 2021)........................................................14

*Anza Tech., Inc. v. Mushkin, Inc.*,
    934 F.3d 1359 (Fed. Cir. 2019)......................................................................................13, 14

*AOB Prods. Co. v. Good Sportsman Mktg, LLC*,
    No. 22-1264, 2023 WL 130885 (D. Del. Jan. 9, 2023) .........................................................15

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959).................................................................................................8, 9, 10, 15

*Boston Scientific Corp. v. Edwards Lifesciences Corp.*,
    No. 16-275-JFB, 2018 WL 1891403 (D. Del. Apr. 20, 2018)..................................................6

*C.R. Bard, Inc. v. Med. Components, Inc.*,
    No. 2:17-cv-754, 2019 WL 1746309 (D. Utah Apr. 18, 2019) ...............................................9

*Celgene Corp. v. Barr Labs., Inc.*,
    No. 07-286, 2008 WL 2447354 (D.N.J. June 13, 2008)..........................................................9

*Climax Molybdenum Co. v. Molychem, LLC*,
    414 F. Supp. 2d 1007 (D. Colo. 2005)..................................................................................12

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012)...........................................................................................6, 8

*Eurand Inc. v. Mylan Pharm. Inc.*,
    No. 08-889, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ..........................................................8

*Flexsys Amers., LP v. Kumho Tire, U.S.A.*,
    No. 5:05-cv-156, 2005 WL 1126750 (N.D. Oh. Apr. 29, 2005) ......................................18, 20

*FormFactor, Inc. v. Micronics Japan Co.*,
    No. 06-07159, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) ...........................................18, 20

*Fresenius Kabi USA, LLC v. Fera Pharms., LLC*,
    No. No. 15-3654, 2017 WL 2213123 (D.N.J. May 19, 2017).........................................10, 20

*Graphic Properties Holdings, Inc. v. Toshiba Am. Info., Sys., Inc.*,
    No. 12-213, 2014 WL 923314 (D. Del. Mar. 5, 2014) ...............................................18, 19, 20

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page No(s).**

*Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*,
   No. 17-1623, D.I. 332 (D. Del. July 23, 2019) ..........................................................10, 11, 12

*Hagan v. Rogers*,
   570 F.3d 146 (3d Cir. 2009)...............................................................................................2, 6

*In re Innotron Diagnostics*,
   800 F.2d 1077 (Fed. Cir. 1986)............................................................................................12

*j2 Glob. Commc'ns, Inc. v. Captaris, Inc.*,
   No. 6:08-cv-262, 2009 WL 10672155 (E.D. Tex. Apr. 16, 2009) .........................................12

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   No. 2:06-cv-1797, 2014 WL 982848 (E.D. Pa. Mar. 13, 2014) ..............................................9

*LG Electronics, Inc. v. Toshiba Samsung Storage*,
   No. 12-1063, 2015 WL 8674901 (D. Del. Dec. 11, 2015) .....................................................19

*Malibu Boats, LLC v. MasterCraft Boat Co.*,
   No. 3:16-cv-82, 2016 WL 8317032 (E.D. Tenn. Oct. 28, 2016)............................................12

*Masimo Corp. v. Mindray DS USA Inc.*,
   No. 12-02206, 2013 WL 12129654 (C.D. Cal. July 17, 2013)..............................................13

*Masimo Corp. v. Philips Elecs. N. Am.*,
   No. 09-80, 2010 WL 925864 (D. Del. Mar. 11, 2010) ................................................16, 17, 18

*Masimo Corp. v. Philips Elecs. N. Am.*,
   No. 09-80, D.I. 995 and D.I. 1027 (D. Del. 2015)...................................................................16

*Orthophoenix, LLC v. Dfine, Inc.*,
   No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015) ...............................................8

*Procter & Gamble Co. v. CAO Grp.*,
   No. 1:13-cv-337, 2013 WL 6061103 (S.D. Ohio Nov. 18, 2013) ..........................................13

*Quantum Loyalty Sys., Inc. v. TPG Rewards*,
   No. 09-022, 2011 WL 6652346 (D. Del. Dec. 22, 2011) .......................................................13

*Ragner Tech. Group v. Berardi*,
   No. 1:15-7752, 2018 WL 6804486 (D.N.J. Dec. 27, 2018) .....................................................7

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Rohm and Haas Co. v. Brotech Corp.*,
  770 F. Supp. 928 (D. Del. 1991) .................................................................................7

*Sanofi-Synthelabo v. Apotex Inc.*,
  No. 02-2255, 2006 WL 3103321 (S.D.N.Y. Nov. 2, 2006) ......................................8

*Schering Corp. v. Mylan Pharms., Inc.*,
  No. 09-6383, 2010 WL 11474547 (D.N.J. June 10, 2010) .......................................9

*SenoRx, Inc. v. Hologic, Inc.*,
  920 F. Supp. 2d 565 (D. Del. Jan. 30, 2013) .............................................15, 16, 17

*Shum v. Intel Corp.*,
  499 F.3d 1272 (Fed. Cir. 2007) .................................................................................9

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
  No. 17-1734, 2021 WL 982730 (D. Del. March 16, 2021) .....................................15

*Square D Co. v. E.I. Elecs., Inc.*,
  No. 06-5079, 2009 WL 136177 (N.D. Ill. Jan. 15, 2009) ................................10, 11

*Synopsys, Inc. v. Magma Design Automation*,
  No. 05-701, 2006 WL 1452803 (D. Del. May 25, 2006) ................................12, 13

*SZ DJI Tech. Co., Ltd. v. Autel Robotics USA LLC*,
  No. 16-706, 2019 WL 1244948 (D. Del. March 18, 2019) ..............................19, 20

*In re Theodor Groz & Sohne*,
  972 F.2d 1352, 1992 WL 188908 (Fed. Cir. May 18, 1992) ...................................12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (en banc) .....................................................9, 10, 11

*TransWeb, LLC v. 3M Innovative Props. Co.*,
  812 F.3d 1295 (Fed. Cir. 2016) .......................................................................7, 9, 17

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*,
  330 F.R.D. 143 (D. Del. 2019) .........................................................................6, 8, 11

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

## OTHER AUTHORITIES

Fed. R. Civ. P. 13 .................................................................................................................7

Fed. R. Civ. P. 20 ..............................................................................................................6, 7

Fed. R. Civ. P. 42 ...............................................................................................................10

Seventh Amendment ..................................................................................................... *passim*

## I.        INTRODUCTION

Apple asserts related utility and design patents in two separate lawsuits and, through its motions, seeks to (1) expedite discovery and trial on its design patents (in C.A. No. 22-1377 ("-1377")); (2) proceed with separate discovery and a second trial on its utility patents targeting the same Masimo products (in C.A. No. 22-1378 ("-1378")); (3) proceed with separate discovery and a ***third*** trial on Masimo's antitrust and false advertising counterclaims (in -1378) and; (4) stay and then, at some undetermined date, proceed with separate discovery and a ***fourth*** trial on Masimo's patent counterclaims (in -1378).  Apple's proposal is highly prejudicial and inefficient, and it would waste the Court's resources by unnecessarily complicating and amplifying proceedings on related patents, products, and claims.

In its present motion, Apple primarily argues that the Court should sever Masimo's counterclaims because they are unrelated to Apple's patent infringement claims.  That is incorrect.  Masimo's *Walker Process* antitrust counterclaims are expressly based on Apple's assertion of its fraudulently obtained patents in this litigation.  In fact, the overlap is so extensive that, under the Seventh Amendment, this Court cannot resolve inequitable conduct (and thus Apple's patent claims as a whole) before the jury decides Masimo's *Walker Process* claims.  As explained below, Apple's proposal to conduct a (1) first trial on Apple's patent claims and (2) a second trial on Masimo's antitrust counterclaims threatens to violate Masimo's Seventh Amendment right to trial by jury.

Masimo's false advertising claims overlap extensively with Masimo's antitrust claims, which allege that Apple's false advertising is part of Apple's overall anticompetitive scheme to exclude Masimo from the market.  Moreover, Masimo's patent infringement claims will address much of the same evidence as Apple's patent claims, including evidence regarding the relevant

market, the parties' similar technologies, the parties' competing products (which will both be relevant in both cases) and the parties' prior relationship and history. Apple identifies no persuasive reason the parties should conduct discovery of these overlapping issues in four separate proceedings and present the same repeating evidence in multiple trials.

As Masimo will explain in its forthcoming motion to consolidate, the Court should consolidate the -1377 proceeding with the -1378 proceeding. Consolidation would enable the parties to address all of their pending claims in a single lawsuit, which is consistent with the Supreme Court's and the Third Circuit's guidance that courts should "entertain[] the broadest possible scope of action consistent with fairness to the parties….'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mind Workers of Am. V. Gibbs*, 383 U.S. 715, 724 (1966)). After discovery, the Court may consider whether separate trials may be appropriate or helpful.

The Court should also deny Apple's request to stay discovery and trial on all of Masimo's patent counterclaims. Apple's proposal would be inefficient and would prejudice Masimo. As Masimo explains in its antitrust counterclaims, Apple is asserting fraudulently obtained patents in an attempt to exclude Masimo from competing in a developing market for health watches. In contrast, Apple was already found to infringe two of Masimo's valid patents at the International Trade Commission, and Apple may be banned from importing the watch. Moreover, the Patent Office has already rejected Apple's challenges to many of Masimo's patents. Apple should not be permitted to prioritize its patents over Masimo's patents. Such a result would provide Apple an enormous competitive advantage for a product that has already been determined to be illegally imported into the market in the United States, from which Masimo may never recover, solidifying Apple's illegal dominance and control of the developing health watch market. The Court should deny Apple's motion in its entirety.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Apple filed this lawsuit and a companion lawsuit, Case No. 22-1377, on October 20, 2022. Apple asserts utility patents in this case and design patents in the companion case. Masimo filed its answer and counterclaims on December 12, 2022. After having threatened to move for a preliminary injunction in the companion case, Apple instead filed its present motion on February 3, 2023 seeking to sever Masimo's antitrust, false advertising, and patent infringement counterclaims. On the same day, Apple filed a motion to expedite trial in the companion case.

## III.     SUMMARY OF ARGUMENTS

1.     The Court should deny Apple's motion to sever. Masimo's antitrust counterclaims are based on the same transaction and occurrence as Apple's patent claims. Masimo's false advertising claims extensively overlap with Masimo's antitrust claims. Masimo's patent infringement claims address numerous issues that overlap with Masimo's other counterclaims and Apple's patent infringement claims. Separating the parties' claims into four separate discovery proceedings and trials would prejudice Masimo, unnecessarily complicate and amplify these proceedings, and waste judicial resources.

2.     The Court should also deny Apple's request to stay Masimo's patent infringement claims. Such a stay would prejudice Masimo and enable Apple to solidify its domination and control of the developing health watch market. Apple cites cases where the parties had not yet engaged in substantial litigation before the International Trade Commission ("ITC"). In those cases, the court stayed patents related to those at issue in the ITC to (1) avoid duplicative litigation and (2) provide the court the benefit of the ITC's rulings. Here, the parties have largely completed the ITC litigation. The Court has the benefit of the ALJ's findings. Staying Masimo's non-ITC patent claims would accomplish little and would prejudice Masimo by delaying Masimo's ability

to seek relief at this critical juncture in the developing health watch market against the Apple Watches that have already been found to infringe.

## IV.    STATEMENT OF FACTS

Apple filed the present lawsuit asserting six utility patents against Masimo's W1 health watch.  D.I. 1 ¶¶ 41–145.  Apple filed a companion lawsuit in this Court accusing the same W1 of infringing four Apple design patents ("Companion Case").  Case No. 1:22-cv-01377, D.I. 1 ¶¶ 41–68.  In both lawsuits, Masimo asserts defenses alleging that Apple obtained many of its asserted utility and design patents through fraud at the Patent Office.  D.I. 15 at 17 (Second Defense) and Counterclaims ¶¶ 75–141; Case No. 1:22-cv-01377, D.I. 31 at 11–33 (Second Defense).

In the present lawsuit, Masimo relies on the same fraud allegations to support its *Walker Process* antitrust counterclaims.  D.I. 15 Counterclaims ¶¶ 6, 205, 237–254.  Masimo alleges Apple is engaging in classic anticompetitive conduct by asserting fraudulently obtained patents in an attempt to exclude Masimo from the developing health-watch market.  *Id.* ¶ 6.  Masimo's antitrust allegations overlap with Masimo's inequitable conduct defenses in both lawsuits and are based on Apple's fraudulent assertion of patents in both lawsuits.  However, Masimo filed its antitrust counterclaims in the present lawsuit only.  Masimo did so to avoid duplication pending Masimo's forthcoming motion to consolidate.

Masimo's inequitable conduct defenses and *Walker Process* counterclaims allege Apple withheld from the Patent Office multiple prior art references it knew were material to patentability. *Id.* ¶¶ 115–141.  Apple had deep knowledge of these references because Apple asserted the **same** references against Masimo and other medical devices companies in multiple litigations.  *Id.* ¶¶ 115, 126–129, 136–139.  Apple also applied for design patents claiming designs that Apple knew were functional, non-ornamental and not patentable subject matter, as documented in an earlier-filed

Apple utility patent.  *Id*. ¶¶ 75–100.  Apple further concealed the true inventors of the claimed designs.  *Id*. ¶¶ 101–114.

In the present lawsuit, Masimo also asserts false advertising claims alleging that Apple has misrepresented to the public the capabilities of the Apple Watch with respect to the blood oxygen, irregular rhythm notification, and ECG features, thereby harming the reputation of such technologies in the minds of many consumers.  *Id*. ¶¶ 143–165, 255–287.  Masimo relies on these same allegations to support its antitrust counterclaims.  *Id*. ¶¶ 8, 207, 237–254.

In the present lawsuit, Masimo further asserts patent infringement counterclaims alleging Apple infringes ten Masimo patents relating to non-invasive monitoring of physiological parameters.  *Id.* ¶¶ 288–377.  Masimo asserted five of these patents against Apple before the ITC (the "ITC Patents"), Horne Decl. ¶ 2 & Ex. 1 at 1, and the Court has stayed those ITC Patents, D.I. 25.[1]  The ITC investigation is nearly complete.  The ALJ held an evidentiary hearing in June 2022. Ex. 1 at 3.  In January 2023, the ALJ ruled that Apple infringed two of Masimo's valid patents.  *Id.* at 336.  Because the ALJ also found that Masimo satisfied the domestic industry requirement on one of those patents, Apple may be banned from importing the Apple Watch.  Apple filed twelve petitions before the Patent Trial and Appeals Board to institute invalidity proceedings against the five ITC Patents Masimo asserts in this case.  Horne Decl. ¶ 4.  The Board denied nine of Apple's petitions, wholly declining to review three of the ITC Patents.  *Id*.  Apple has not petitioned for review of any of the non-ITC Patents.  *Id*.

In its present motion, Apple seeks to sever Masimo's antitrust, false advertising, and patent infringement counterclaims.  D.I. 35 at 1.  Apple also seeks to stay Masimo's patent infringement

---

[1] All exhibits are attached to the Horne Declaration filed herewith.

counterclaims as to the five patents Masimo did not assert in the ITC.  *Id*.  Separately, in the Companion Case, Apple moved to expedite discovery and trial.  Case No. 1:22-cv-01377, D.I. 44.

## V.    LEGAL STANDARDS

"For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  *Hagan*, 570 F.3d at 153 (quoting *United Mine Workers*, 383 U.S. at 724); *see In re EMC Corp.,* 677 F.3d 1351, 1353 (Fed. Cir. 2012) (same).  When deciding to sever counterclaims from a patent action, this Court first considers the threshold factors of (1) "whether the … [c]ounterclaims arise out of the same transaction or occurrence" as the original claims, and (2) "whether the two sets of claims share any common issues of law and fact."  *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 148 (D. Del. 2019).  This Court then considers additional factors such as "the interest[s] of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."  *Id*. at 147–48.

When considering whether to grant a motion to stay, this Court typically considers three factors:  (1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage.  *Boston Scientific Corp. v. Edwards Lifesciences Corp.*, No. 16-275-JFB, 2018 WL 1891403, at *2 (D. Del. Apr. 20, 2018)*.

## VI.   ARGUMENT

**A.   The Court Should Not Sever Masimo's Counterclaims**

### 1.   Masimo's Antitrust Counterclaims Arise from the Same Transaction or Occurrence as Apple's Patent Infringement Claims

Apple claims Masimo is attempting to inject unrelated counterclaims into the parties' litigation.  Apple is incorrect.  Masimo asserts *Walker Process* antitrust claims, which are based on the patentee's "abuse of the legal process" by filing a complaint that asserts fraudulently obtained patents.  *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016).  *Walker Process* counterclaims are based on the same transaction or occurrence as the patent claims on which they are based.  *See, e.g.*, *Ragner Tech. Group v. Berardi*, No. 1:15-7752, 2018 WL 6804486, at *4 (D.N.J. Dec. 27, 2018); *Rohm and Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 931–932 (D. Del. 1991); *see also In re EMC*, 677 F.3d at 1357–58 ("the transaction-or-occurrence test of Rule 20(a) is similar to the transaction-or-occurrence test of Rule 13(a) for compulsory counterclaims").  Indeed, as discussed further below, the overlap between Apple's claims and Masimo's *Walker Process* counterclaims is so extensive that, under the Seventh Amendment, this Court cannot resolve Masimo's inequitable conduct defense (and thus Apple's patent case as a whole) before the jury decides Masimo's *Walker Process* counterclaims.

Masimo also asserts false advertising claims.  Those claims overlap with Masimo's antitrust claims, which allege that Apple's false advertising is part of Apple's overall anticompetitive scheme.  D.I. 15 Counterclaims ¶¶ 8, 207, 237–254.  Masimo further asserts patent infringement claims.  Those claims will address numerous issues that overlap with Masimo's antitrust claims and Apple's patent infringement claims, such as the design and function of the Apple Watch, market definition, and the competition between the Apple Watch and Masimo's W1

watch.  Separate discovery proceedings and trials for these claims will undermine judicial economy and cause delay.

Apple cites *Westinghouse*, 330 F.R.D.at 150, but *Westinghouse* did not address *Walker Process* claims.  Unlike here, the antitrust claims in *Westinghouse* were based on conduct, such as tying and unfair exclusive dealing, not based on the patent infringement claims.  330 F.R.D. at 147.  *Westinghouse*'s antitrust counterclaims also addressed different product markets than the patent infringement claims.  In contrast, Masimo's *Walker Process* counterclaims are based on Apple's assertion of its patents in an attempt to exclude Masimo from the health watch market.  Thus, Masimo's antitrust counterclaims will address the same market as Apple's patent claims.

Most of Apple's cases do not address *Walker Process* counterclaims.  *See Sanofi-Synthelabo v. Apotex Inc.*, No. 02-2255, 2006 WL 3103321, at *4 (S.D.N.Y. Nov. 2, 2006) (antitrust claims addressing contracts and commercial conduct "distinct from the underlying patent dispute."); *Orthophoenix, LLC v. Dfine, Inc.*, No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) (plaintiff asserted fifteen patents against numerous defendants; court bifurcated and stayed antitrust counterclaims brought by one defendant against plaintiff and additional new defendants); *In re EMC*, 677 F.3d at 1353 (eight of eighteen defendants in patent infringement case sought to sever patent infringement claims against them); *Westinghouse*, 330 F.R.D. at 150 (severing antitrust counterclaims that, unlike those at issue here, shared no logical relationship with patent infringement claims); *Eurand Inc. v. Mylan Pharm. Inc.*, No. 08-889, 2009 WL 3172197, at *2 (D. Del. Oct. 1, 2009) (defendant consented to bifurcation).

### 2.    Severance Threatens to Violate Masimo's Constitutional Right to a Jury Trial

Apple proposes that the Court address Masimo's antitrust counterclaims in a second trial.  D.I. 35 at 13.  But such an approach would violate Masimo's ***right to a jury***.  Under the Supreme Court's *Beacon Theatres* decision, "when legal claims involve factual issues that are 'common

with those upon which [the] claim to equitable relief is based, the legal claims involved in the action must be determined *prior to* any final court determination of [the] equitable claims.'" *Shum v. Intel Corp.*, 499 F.3d 1272, 1276 (Fed. Cir. 2007); *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–511 (1959).[2]

Thus, courts cannot resolve equitable defenses, like inequitable conduct, before resolving legal claims, like *Walker Process* counterclaims. *See Schering Corp. v. Mylan Pharms., Inc.*, No. 09-6383, 2010 WL 11474547, at *1 (D.N.J. June 10, 2010) ("because Plaintiffs' request to bifurcate the inequitable conduct defense and the antitrust counter claims would lead to this Court resolving an equitable claim (the inequitable conduct defenses) prior to a legal claim (the *Walker Process* counterclaims), and said claims share common factual elements, bifurcation would violate MPI's Constitutionally-guaranteed right to trial by jury"). Doing so would eliminate a party's right to a jury trial on the legal claims. *Celgene Corp. v. Barr Labs., Inc.*, No. 07-286, 2008 WL 2447354, at *2–3 (D.N.J. June 13, 2008) (bifurcating inequitable conduct and Walker Process "would violate [defendant's] Constitutionally-guaranteed right to trial by jury" and "must be denied" under *Beacon Theatres*).

This Constitutional overlap is particularly clear after the Federal Circuit's decision in *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276 (Fed. Cir. 2011) (en banc). "After *Therasense*, the showing required for proving inequitable conduct and the showing required for proving the fraud component of *Walker Process* liability may be nearly identical." *TransWeb*, 812 F.3d at 1307; *see also C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:17-cv-754, 2019 WL 1746309, at *6 (D. Utah Apr. 18, 2019). After *Therasense*, it is even more clear that courts cannot resolve inequitable conduct before *Walker Process* claims. *See King Drug Co. of Florence, Inc.*

---

[2]     All emphasis is added unless otherwise noted.

*v. Cephalon, Inc.*, No. 2:06-cv-1797, 2014 WL 982848, at *10 (E.D. Pa. Mar. 13, 2014) (holding that *Therasense* changed the law such that a party's pre-*Therasense* failure to object to bifurcation on Seventh Amendment grounds was not a waiver).

Apple argues that a trial on Apple's claims and Masimo's inequitable conduct defense may resolve or narrow Masimo's antitrust counterclaims.   Magistrate Judge Burke rejected that argument when denying a similar bifurcation request:

> [O]ne of Plaintiff's most significant arguments . . . was that bifurcation is warranted here because Defendant's antitrust counterclaims will be moot if Defendant cannot first prove that Plaintiff committed inequitable conduct.  Under precedent of the Supreme Court of the United States, however, when factual issues common to both legal and equitable claims are involved in a single case, the ***legal claims must be determined by the jury prior to any final court determination of the equitable claims***.  Defendant's inequitable conduct defense is an equitable claim, while its antitrust counterclaims are legal in nature; yet these claims share common factual elements.  Both claims, for example, rely on allegations of misrepresentation to the United States Patent Office during patent prosecution.  Thus, it appears that bifurcation of Defendant's antitrust counterclaims would ***violate Defendant's right to a trial by jury*** on such claims, because it would require the Court to resolve Defendant's inequitable conduct defense prior to Defendant's antitrust counterclaims.

*Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*, No. 17-1623, D.I. 332 (D. Del. July 23, 2019), Ex. 3 at 2.  Apple simply ignores clear precedent explaining the Constitutional limitation to separating trials.  "When ordering a separate trial, the court must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).  Masimo raised this issue and cited *Beacon Theatres* during the parties' meet and confer.  Horne Decl. ¶ 5.  Apple simply ignored the issue in its motion filed minutes later.

Apple's cases do not address the Seventh Amendment issue.  *See Fresenius Kabi USA, LLC v. Fera Pharms., LLC*, No.  No. 15-3654, 2017 WL 2213123, at *5 (D.N.J. May 19, 2017); *Square D Co. v. E.I. Elecs., Inc.*, No. 06-5079, 2009 WL 136177, at *2 (N.D. Ill. Jan. 15, 2009).  Moreover, *Square D* is a pre-*Therasense* case that relies on outdated law.  Apple omits the court's

outdated reasoning that bifurcation was appropriate because "to prevail on a *Walker Process* claim, counterclaimant must prove that the patent-in-suit was obtained through actual fraud upon the Patent and Trademark Office; it is **not enough** to show inequitable conduct." *Square D*, 2009 WL 136177, at *2. That is no longer the law after *Therasense*, which harmonized the standard for inequitable conduct with the standard for proving the fraud component of *Walker Process* liability.

### 3.      Masimo's Counterclaims Raise Legal and Factual Issues that Overlap with Apple's Patent Infringement Claims

Apple also ignores the extensive overlap between Apple's claims and Masimo's counterclaims. As discussed above, Masimo's *Walker Process* antitrust counterclaims are **expressly based** on Apple's assertion of its fraudulently obtained patents in this litigation. Masimo's *Walker Process* counterclaims thus raise numerous issues that overlap with Apple's patent claims and Masimo's inequitable conduct defense to those claims. Apple's own case, *Westinghouse*, observes the overlap between the market issues raised by Apple's patent claims and Masimo's antitrust claims:

> the commercial success of [patentee's] products that read on the asserted patents may be relevant to both cases. Similarly, [the patentee's] asserted market dominance and the scope of its market power will be relevant to patent damages and to antitrust issues. And [patent defendant's] sales will be relevant to damages in the patent case and to issues of competition in the antitrust matter.

330 F.R.D. at 148.[3] Similarly, in *Guardant Health*, this Court observed the "overlap between the monopoly power issues relevant to Defendant's antitrust counterclaims and the facts Plaintiff would need to prove regarding damages about the relevant market. In light of this, the Court is

---

[3]      Apple cites *Westinghouse* because that court ultimately chose to sever. But *Westinghouse* did so because (1) unlike the *Walker Process* claims here, the antitrust claims were not based on the same conduct as the patentee's filing of patent claims; and (2) failure to sever in that case would have "almost certainly mean[t] that the current case schedule [would] be entirely displaced." *Westinghouse*, 330 F.R.D. at 150. No such issue regarding the schedule is presented in this case.

not convinced that bifurcation at this stage would promote the efficient use of judicial resources." *Guardant Health*, D.I. No. 332, Ex. 3 at 2.

Apple relies on *In re Innotron Diagnostics*, 800 F.2d 1077, 1078, 1085–86, 1085 n.15 (Fed. Cir. 1986), but *Innotron* did not address *Walker Process* counterclaims.   Courts distinguish *Innotron* where, as here, a party is seeking to bifurcate claims directed to the "fraudulent procurement and enforcement of the patent."   *See Malibu Boats, LLC v. MasterCraft Boat Co.*, No. 3:16-cv-82, 2016 WL 8317032, at *2 (E.D. Tenn. Oct. 28, 2016) ("because both the impending antitrust counterclaim and the patent unenforceability counterclaim will turn in large part upon the same alleged 'inequitable conduct' of Malibu employees before the USPTO, there is likely to be significant evidentiary overlap between the patent and antitrust issues" and therefore "bifurcation at this juncture would not promote judicial economy, reduce jury confusion, or conserve resources"); *see also Climax Molybdenum Co. v. Molychem, LLC*, 414 F. Supp. 2d 1007, 1013–14 (D. Colo. 2005); *j2 Glob. Commc'ns, Inc. v. Captaris, Inc*., No. 6:08-cv-262, 2009 WL 10672155, at *3 (E.D. Tex. Apr. 16, 2009).

District courts instead rely on *In re Theodor Groz & Sohne*, 972 F.2d 1352, 1992 WL 188908, at *2 (Fed. Cir. May 18, 1992), where the Federal Circuit distinguished *Innotron* and upheld denial of bifurcation of patent and *Walker Process* claims because they were "so interwoven as to preclude effective separation."   As this Court explained in *Synopsys, Inc. v. Magma Design Automation*, No. 05-701, 2006 WL 1452803, at *4 (D. Del. May 25, 2006), "the evidentiary presentation in one case would likely be substantially duplicative of the evidentiary presentation in the other." Additionally, "bifurcation would likely create further duplication of evidence because both juries would need to be educated in the same relevant technology."   *Id*.

-12-

Thus, courts routinely decline to sever patent claims and overlapping antitrust claims. *See Masimo Corp. v. Mindray DS USA Inc.*, No. 12-02206, 2013 WL 12129654, at *7 (C.D. Cal. July 17, 2013) (declining to bifurcate because of "significant overlapping issues" such that "determination of each will likely involve similar issues and evidence, and judicial economy is therefore best served by conducting discovery and pretrial proceedings together"); *Procter & Gamble Co. v. CAO Grp.*, No. 1:13-cv-337, 2013 WL 6061103, at *3 (S.D. Ohio Nov. 18, 2013) ("[T]here is a substantial overlap between the patent [issues, i.e., an inequitable conduct affirmative defense] and antitrust claims, and overlap weighs strongly in favor of consolidated discovery and trial.").

Severance would be particularly inefficient here because Masimo's *Walker Process* counterclaims overlap with Masimo's invalidity and unenforceability defenses. *See Synopsys*, 2006 WL 1452803, at *4 (denying bifurcation because antitrust claims were based on fraud allegations that were "also a centerpiece of [the defendant's] invalidity claims"). Masimo alleges that Apple's utility patents are invalid because of prior art that Apple also fraudulently concealed from the Patent Office. D.I. 15 Counterclaims ¶¶ 115–141. Apple's attempt to sever these issues into separate discovery proceedings and trial makes no sense. *See Quantum Loyalty Sys., Inc. v. TPG Rewards*, Inc., No. 09-022, 2011 WL 6652346, at *3 (D. Del. Dec. 22, 2011) ("[T]he invalidity and unenforceability of the '949 patent is, in part, the basis of TPG's antitrust claims, as well as, two of its affirmative defenses to Quantum's infringement claim. Therefore, bifurcation here, as in *Synopsys*, would likely result in substantial duplication of evidence, and the presentation thereof, in two separate cases."), *rev'd in part on other grounds*, 2012 WL 1134779 (D. Del. Apr. 4, 2012). Apple cites *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1373 (Fed. Cir. 2019),

but that case did not address severance or bifurcation.  *Anza* addressed whether an amended pleading related back to an original complaint.

Apple's intent to monopolize also explains and supports Apple's intent to deceive the Patent Office and assert fraudulent patents.  To fully present its inequitable conduct defense, Masimo should be permitted to show that Apple engaged in inequitable conduct and asserted fraudulent patents in an attempt to enforce those patents against competitors to eliminate competition.  The potential reward—monopolizing the health watch market—explains in part why Apple was willing to engage in such fraudulent conduct.  Apple cannot dispute that "there are at least some overlapping factual and legal issues that will be addressed more efficiently by coordinating fact and expert discovery and claim construction."  *Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, No. 20-1630, 2021 WL 3363496, at *2 (D. Del. Aug. 3, 2021).  To the extent separate trials would truly be helpful, the Court will be in a "better position" to make that decision after discovery and summary judgment.  *Id*.

Severing Masimo's antitrust counterclaims from Apple's patent claims would also invite gamesmanship and inconsistent positions.  For example, in the patent case, Apple will likely argue there are no non-infringing substitutes and little competition when seeking lost profits.  In contrast, in the antitrust case, Apple will likely argue there are many alternatives and competitors in an attempt to defeat Masimo's allegations of monopoly and market power.  Severance would also enable Apple to try to define the relevant markets differently in each proceeding, narrowly defining the market to show lost profits and then broadly defining the market to show it lacks monopoly or market power.  Denying severance would reduce such gamesmanship and inconsistent positions.

Severing Masimo's other counterclaims would likewise be inefficient.  Masimo's false advertising claims overlap extensively with Masimo's antitrust claims.  Apple also fails to explain

why severing discovery and trial on Masimo's patent infringement claims is necessary.  "It is not uncommon for a patent jury trial to involve multiple patents and technologies."  *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 17-1734, 2021 WL 982730, at *3 (D. Del. March 16, 2021).  Both parties' products will likely be at issue in both patent cases:  (1) Apple's products will be relevant to any allegation of lost profits or commercial success in Apple's patent case; and (2) Masimo's products will be relevant to Masimo's lost profits and commercial success in Masimo's patent case.  Thus, the parties will likely need to address overlapping evidence and witnesses on both parties' products.  *See Sprint Commc'ns*, 2021 WL 982730, at *3 (denying bifurcation where there were "certain topics on which overlapping evidence would need to be presented twice if the trial was bifurcated").  Moreover, other overlap is "inevitable, as it will likely be necessary to set out certain core testimony about the relevant products and industry in both the liability and damages trials."  *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 569 (D. Del. Jan. 30, 2013); *see also id.* ("the more that two bifurcated trials would tread the same legal and evidentiary ground, the less it can be said that bifurcation would serve judicial efficiency"); *AOB Prods. Co. v. Good Sportsman Mktg, LLC*, No. 22-1264, 2023 WL 130885, at *2 (D. Del. Jan. 9, 2023) (denying bifurcation where party "identifie[d] potentially overlapping witnesses involved in both sets of claims").

### 4.    Severing Masimo's Counterclaims Would Prejudice Masimo and Cause Delay

Severing Masimo's counterclaims would also prejudice Masimo by requiring Masimo to address its antitrust counterclaims in a separate, second trial (violating the Seventh Amendment).  Under *Beacon Theatres,* this court cannot resolve Masimo's inequitable conduct defense (and thus Apple's patent case as a whole) before a jury decides Masimo's *Walker Process* claims.  *See Beacon Theatres*, 359 U.S. at 510–511.  Thus, discovery and trial must proceed expeditiously on

both Apple's claims and Masimo's counterclaims to obtain final judgment on Apple's claims. Failure to do so will result in unfair and unnecessary delay.

Indeed, such delay is precisely what occurred in Apple's primary cited case, *Masimo Corp. v. Philips Elecs. N. Am.*, No. 09-80, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010). The Court bifurcated and stayed discovery on Philips' patent misuse defense and antitrust counterclaims, which were both based on alleged tying. *Id.* at *2, *4. The *Philips* court reasoned that the patent trial may resolve questions regarding the scope of Masimo's patents and thus Philips' patent misuse defense and antitrust counterclaims. *Id.* at *2. That, however, turned out to be incorrect. After the parties' jury trial on Masimo's patent claims, the court held that Philips' patent misuse defense was not resolved. *Masimo Corp. v. Philips Elecs. N. Am.*, No. 09-80, D.I. 995 (D. Del. May 18, 2015), Ex. 4 at 18–23 (denying Masimo's post-trial motion for judgment on the pleadings on Philips' patent misuse defense); *see generally SenoRx*, 920 F. Supp. 2d at 570 (observing that case narrowing "while possible" is "entirely speculative"). The parties thus entered an entirely new phase of discovery and faced the prospect of another trial merely to resolve Philips' patent misuse defense and obtain final judgment on Masimo's patent claims.[4] *Masimo Corp. v. Philips Elecs. N. Am.*, No. 09-80 (D. Del. Sept. 18, 2015), D.I. 1027, Ex. 5 at 4 (setting discovery and trial schedule for "*Masimo III*" regarding Philips' patent misuse defense and antitrust counterclaims). Apple's proposal to sever and stay Masimo's counterclaims into a separate lawsuit and second trial simply invites delay. Indeed, Apple has indicated that it may file yet another motion and seek to stay of discovery relating to Masimo's antitrust and false advertising claims. Horne Decl. ¶ 6 & Ex. 2 at 1. Such an approach invites the unnecessary delay that occurred in *Masimo v. Philips*.

---

[4]    The parties eventually settled before a trial addressing Philips' antitrust claims. Horne Decl. ¶ 10.

5.    **Judicial Economy and Fundamental Fairness Do Not Favor Severing Masimo's Counterclaims**

Apple argues that litigating Masimo's antitrust counterclaims in the same case as Apple's claims would "cause a logjam that will impose a heavy burden on judicial resources."  D.I. 35 at 15.  Apple fails to explain why litigating the parties' claims together will create any such issues. In reality, separate trials and discovery—including separate Markman hearings, summary judgment motions, document requests, responses, depositions, and discovery disputes regarding many of the same discovery subjects—will create additional burdens on both the parties and the Court.  Apple "ignore[s] the harm" from the "inevitable delay, and resulting prejudice of two separate trials," much less the four trials Apple proposes. *SenoRx*, 920 F. Supp. 2d at 568.  "Courts have noted that such prejudice is real, and cannot be mitigated by any action short of denying the request for separate trials."  *Id*. at 569.

Apple relies heavily on *Philips*, but *Philips* is inapposite for many reasons.  First, *Philips* did not address *Walker Process* counterclaims.  Second, Masimo asserted 24 patents in that litigation and the Court reasoned that including Philips' seven antitrust counterclaims, which addressed many separate categories of Masimo conduct, would confuse jurors.  *Philips,* 2010 WL 925864, at *2.  Third, the Court reasoned that Philips could have brought its claims much earlier, which undercut Philips' prejudice arguments against severance and stay.  *Id*.  In contrast, here, Masimo's *Walker Process* counterclaims are based on Apple's filing of this lawsuit.  Masimo could not have brought those claims earlier.  *See TransWeb,* 812 F.3d at 1312 (*Walker Process* claims are based on the "abuse of the legal process by the antitrust-defendant").

Fourth, *Philips* reasoned that resolution of the patent case might simplify and narrow the scope of Philips' antitrust claims.  *Philips,* 2010 WL 925864, at *2.  Here, as explained above, such an approach would violate Masimo's right to a jury trial under the Seventh Amendment.

-17-

Moreover, the *Philips* court's prediction that severance might narrow the case turned out to be incorrect—it instead resulted in unnecessary delay.

Fifth, the court in *Philips* did not sever or bifurcate Philips' patent infringement counterclaims.  The parties proceeded through discovery and eventually trial with each party asserting patents against the other's products.  In contrast, here, Apple seeks to prioritize its own patents and delay all discovery and trial on all of Masimo's patents.

**B.    The Court Should Not Stay Masimo's Patent Infringement Counterclaims**

**1.    Staying the Non-ITC Patents Would Not Simplify the Issues**

Apple seeks to stay all of Masimo's patent claims because some of those patents are presently stayed pending the outcome of the ITC investigation.  But the parties have largely completed all litigation of the ITC Patents.  Thus, Apple's requested stay would not simplify any issues for trial.  Apple's proposed stay would instead merely cause delay.

Apple cites cases where the parties had not yet engaged in substantial ITC litigation.  In those cases, the courts reasoned that a stay would: (1) avoid duplicative litigation in the ITC; (2) potentially narrow the issues; and (3) provide the court the benefit of the ITC's rulings.  *See FormFactor, Inc. v. Micronics Japan Co.*, No. 06-07159, 2008 WL 361128, at *2–4 (N.D. Cal. Feb. 11, 2008); *Flexsys Amers., LP v. Kumho Tire, U.S.A.*, No. 5:05-cv-156, 2005 WL 1126750, at *3–4 (N.D. Oh. Apr. 29, 2005); *Graphic Properties Holdings, Inc. v. Toshiba Am. Info., Sys., Inc.,* No. 12-213, 2014 WL 923314, at *2 (D. Del. Mar. 5, 2014).  None of those reasons apply here.  The parties have already completed discovery and trial in the ITC, the ALJ has already ruled, and the Commission will issue a final determination by May 10, 2023.  Ex. 1 at 3.  Thus, a stay will not avoid duplicative litigation in the ITC or narrow any issues.  And this Court already has the benefit of the ALJ's findings.

Apple also cites *SZ DJI Tech. Co., Ltd. v. Autel Robotics USA LLC*, No. 16-706, 2019 WL 1244948, at *1–2 (D. Del. March 18, 2019), but that case likewise addressed a motion to stay early in the ITC proceedings.  Moreover, in *SZ DJI*, two of the three patents were stayed because of the ITC proceedings, and the Court found that a stay of the third patent would not "greatly harm" the patentee because the patentee did not practice that patent.  *Id*.  In contrast, here, as explained further below, Apple's proposed stay would substantially prejudice Masimo.

### 2.    Staying the Non-ITC Patents Would Prejudice Masimo

Through its motion to stay, and its motion to expedite trial in the Companion Case, Apple seeks to prioritize its patents over Masimo's patents.  As Masimo explains in its counterclaims, however, Apple is using ***fraudulently*** obtained patents to exclude Masimo from competing in a developing market for health watches to monopolize the market with the Apple Watch.  In contrast, the ALJ in the ITC has already found that the same Apple Watch infringes two of Masimo's valid patents, and the Patent Office has rejected Apple's validity challenges to those same patents. Apple should not be permitted to prioritize its patent claims over Masimo's claims, which have already been determined to be meritorious.  Doing so would provide Apple an enormous competitive advantage from which Masimo may never recover.  Apple's attempt to prioritize its patents is further evidence of its intent to solidify its dominance and control of the developing health watch market with a product already found illegal.

Apple cites *Graphic Properties*, but the patentee in that case did not market products covered by the asserted patent and thus "staying this litigation [would] not result in any competitive disadvantage . . . ."  2014 WL 923314, at *2.  Here, Masimo practices the asserted patents and has alleged that Apple's sales of watches each quarter floods the market with products that harm Masimo and continue to spoil the market.   D.I. 15 Counterclaims at ¶¶ 9, 207, 216–218.  "The Court hesitates to grant stays where the parties are direct competitors."  *LG Electronics, Inc. v.*

*Toshiba Samsung Storage*, No. 12-1063, 2015 WL 8674901, at \*6 (D. Del. Dec. 11, 2015).  Apple should not be permitted to continue to flood the market with products that have already been found to infringe Masimo's patents and prioritize Apple's patent claims.

### 3.    The Stage of this Case Does Not Support Granting a Stay

Apple argues that the stage of this case supports granting a stay.  Apple cites *Graphic Properties*, 2014 WL 923314, at \*3.  In *Graphic Properties*, the parties had not yet engaged in substantial ITC litigation and the Court granted a stay to avoid duplicative litigation in the ITC.  *See Graphic Properties*, 2014 WL 923314, at \*2 (the stay would avoid the parties "having to litigate substantially similar matters in both the ITC and this Court").  Apple cites no case supporting a stay of patent claims where such ITC litigation is nearly complete.

### 4.    Denying a Stay of the Non-ITC Patents Would Not Unfairly Prejudice Apple

Apple argues that denying a stay would subject Apple to duplicative litigations regarding overlapping issues.  But Apple has already litigated and tried the ITC Patents.  Thus, a stay would not avoid duplicative litigation.  Apple identifies no other compelling reason to delay discovery and move the parties' issues forward.  As Apple's own precedent explains, the "routine costs of litigation, without more, do not constitute a particular hardship." *Fresenius Kabi*, 2017 WL 2213123, at \*7.  Apple again cites *FormFactor*, *SZ DJI*, and *Flexsys*.  As discussed, in those cases, the court sought to avoid duplicative ITC litigation and granted a stay to obtain the benefit of the ITC's rulings.  No such duplicative litigation will occur here.  And this Court will already have the benefit of the ALJ's findings.  The Court should deny Apple's request for a stay.

### VII.    CONCLUSION

For the reasons discussed above, the Court should deny Apple's motion.

Respectfully submitted,

Phillips McLaughlin & Hall, P.A.

February 24, 2023

Of Counsel:

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Perry D. Oldham
Benjamin A. Katzenellenbogen
Jared C. Bunker
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

Brian Horne
Knobbe, Martens, Olson & Bear, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

By: */s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

Counsel for Defendants
Masimo Corporation and Sound United, LLC