# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MASIMO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PHILIPS ELECTRONIC NORTH AMERICA CORPORATION and PHILIPS MEDIZIN SYSTEME BÖBLINGEN GMBH,<br><br>Defendants. | : | C.A. No. 09-80-LPS |

Julia Heaney, Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, DE

Joseph R. Re, Karen Vogel Weil, Jon W. Gurka, Perry D. Oldham, KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, CA

Attorneys for Plaintiff.

Richard L. Horwitz, David E. Moore, Bindu A. Palapura, POTTER, ANDERSON & CORROON, LLP, Wilmington, DE

Brian A. Rosenthal, Alan M. Grimaldi, Ann Marie Duffy, Brian K. Andrea, Cody I. Gillians MAYER BROWN, LLP, Washington, DC

Steven Yovits, MAYER BROWN, LLP, Chicago, IL

William Rooklidge, GIBSON DUNN, Irvine, CA

Gregory A. Castanias, JONES DAY, Washington, DC

Sasha Mayergoyz, JONES DAY, Chicago, IL

Attorneys for Defendants.

---

**MEMORANDUM OPINION**

May 18, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Plaintiff's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c). (D.I. 972) Plaintiff contends that Defendants cannot prevail on their Tenth Defense of patent misuse regarding Masimo's '222 and '984 patents. For the reasons below, Plaintiff's motion is denied.

## I. BACKGROUND

### A. '222 and '984 Patent Infringement

On February 3, 2009, Plaintiff Masimo Corporation ("Masimo" or "Plaintiff") filed this patent infringement action, alleging that Defendants Philips Electronic North American Corporation and Philips Medizin Systeme Böblingen GMBH (collectively, "Philips" or "Defendants") infringed fourteen patents. (D.I. 1) In its initial answer, Philips contended that Masimo's patents are invalid and that Philips did not infringe. (*See* D.I. 15) In addition, Philips asserted patent misuse as an affirmative defense and brought antitrust counterclaims against Masimo for alleged violations of the Sherman and Clayton Acts. (*Id.* ¶¶ 105-06; *see also* D.I. 884 ¶¶ 105-06) On April 19, 2010, Philips' patent misuse defense was bifurcated from issues related to patent validity, and discovery related to patent misuse was stayed. (D.I. 86 at 10-11; D.I. 118) Philips' antitrust counterclaims have also been bifurcated and stayed. (*See* D.I. 67 at 6, 10; D.I. 118)

A jury trial was held in September 2014 involving two of Masimo's patents-in-suit: U.S. Patent Nos. 6.263,222 (the "'222 patent") and 7,215,984 (the "'984 patent"). The '222 and '984 patents are both entitled "Signal Processing Apparatus." (D.I. 1, Exs. 4 ('222 patent) & 10 ('984 patent)) Claim 17 of the '222 patent, for example, recites "[a] physiological monitor that

computes arterial oxygen saturation in tissue material having arterial and venous blood." ('222 patent at col. 74 ll. 57-59) According to claim 17, the monitoring apparatus comprises:

> a light emitter which emits light of at least first and second wavelengths;
>
> a light detector responsive to light from said light emitter which has passed through body tissue having arterial and venous blood, said light detector providing at least first and second intensity signals associated with said at least first and second wavelengths, each of said first and second intensity signals having, during motion of the tissue, at least a first signal portion indicative of arterial blood and a second signal portion indicative of motion induced noise;
>
> and a signal processor responsive to the first and second intensity signals to calculate arterial oxygen saturation without significant interference in the calculation from the motion induced noise portion of the first and second intensity signals.

(*Id.* at col. 74 l. 60-col. 75 l. 8) Likewise, the system and method claims of the '984 patent discuss "an optical probe" and "a signal processing device." ('984 patent at col. 66 ll. 17-20)

The asserted claims of the '222 and '984 patents do not mention cables for connecting the sensor to the physiological monitor. (*See generally* '222 patent; '984 patent)

**B. Philips' Stipulations of Infringement**

In the Pretrial Order for the jury trial filed on August 18, 2014, Philips admitted infringement of Masimo's '222 and '984 patents as follows:

> [ ] Philips concedes that it has directly and indirectly infringed Claims 17 and 18 of the '222 Patent and Claims 1-5, 15-16, 19-20, 22 and 52-54 of the '984 Patent under the Court's claim construction and summary judgment orders.
>
> [ ] Specifically, this concession includes that Philips' infringement has occurred literally for all the asserted claims. In addition, Philips' concession of indirect infringement includes

> induced infringement, and contributory infringement, as set forth in 35 U.S.C. § 271(b) and (c). The infringing acts include the making, using, selling, offering for sale, and importing of all products containing the FAST algorithm (and sensors used therewith). Philips concedes these infringing acts have been occurring continuously since the issuance of the two asserted patents.

(D.I. 834 at 4-5)

**C. Trial on Validity and Damages**

In September 2014, the Court held a ten-day trial in which the parties tried issues related to validity and damages concerning Masimo's '222 and '984 patents.[1] At trial, Masimo sought damages in the form of lost profits, which included "convoyed sales." (Trial Tr. at 2382-83) Masimo also presented testimony that the sensors were part of the claimed system. (*Id.* at 1091, 1094-95, 1128) Masimo sought damages that included a reasonable royalty related to pulse oximeters, cables, and sensors forming the claimed system. (*Id.* at 1123-24, 1162-64) On October 1, 2014, the jury returned a verdict upholding the validity of the '222 and '984 patents and awarding damages to Masimo of $466,774,783 for lost profits based on pulse oximeter boards, cables, and sensors as compensation for Philips' infringement of the '222 and '984 patents. (D.I. 912 at 1-5)

**D. Philips' Patent Misuse Defense**

During post-trial proceedings, the parties informed the Court that Philips' patent misuse defense to Masimo's '222 and '984 patents remains to be litigated. (D.I. 966, 967) After the parties sought the Court's guidance on how to proceed with respect to this defense, the Court authorized Masimo to file a motion for judgment on the pleadings and ordered briefing. (D.I.

[1]All citations to the trial transcript are in the format "Trial Tr." followed by the page number.

985 (Post-trial Motions Hearing Transcript) at 220) On February 21, 2015, Masimo filed its motion. (D.I. 972) The parties initially completed briefing on March 4, 2015. (D.I. 973, 978, 981) Philips then filed a motion for leave to file a sur-reply brief in opposition to Masimo's reply brief (D.I. 986), attaching its proposed sur-reply brief, and in turn Masimo filed an answering brief in opposition to the motion (D.I. 987), attaching its proposed response to the sur-reply brief.[2]

In its briefing, Philips summarizes its patent misuse defense as follows:

> [Philips'] detailed allegations, if proven, show that Masimo has engaged in unlawful licensing activities by tying its patented articles to sales of commodity cables and sensors; that it has employed an anticompetitive technology tie; and that it has improperly bundled together sales of commodity products with sales of products that practice the patents-in-suit.

(D.I. 978 at 1) In essence, through various alleged mechanisms, Masimo is accused of "foreclos[ing] competition from non-infringing cables and sensors." (*Id.* at 2)

## II. LEGAL STANDARDS

### A. Judgment on the Pleadings

Failure to state a legal defense to a claim may be raised by a motion under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B). Under Rule 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Such a motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

A majority of the district courts within the Third Circuit that have addressed the issue

---

[2]Philips' motion for leave to file a sur-reply brief (D.I. 986) will be granted, as will Masimo's alternative request for leave to file a response to that brief (D.I. 987).

have determined that the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), do not apply to the pleading of affirmative defenses. *See Bayer CropSci. AG v. Dow AgroScis. LLC*, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011) ("While the Third Circuit has not yet opined as to whether *Twombly/Iqbal* is applicable to affirmative defenses, this Court agrees with those courts that have found *Twombly/Iqbal* inapplicable to affirmative defenses."); *see also Internet Media Corp. v. Hearst Newspapers, LLC*, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012) ("In light of the differences between Rules 8(a) and 8(c) in text and purpose, . . . *Twombly* and *Iqbal* do not apply to affirmative defenses, which need not be plausible to survive. [An affirmative defense] must merely provide fair notice of the issue involved.") (internal quotation marks omitted); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 386 n.3 (D. Del. 2012) (joining "the majority of the District Courts in the Third Circuit [that] have rejected the application of *Twombly* and *Iqbal*" to affirmative defenses).

**B. Patent misuse**

"Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (internal quotation marks omitted). "The key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998).

> The courts have identified certain specific practices as constituting per se patent misuse, including so-called "tying" arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties . . . .

*Va. Panel*, 133 F.3d at 869 (internal citation omitted).

When a practice is not per se patent misuse, the practice may still constitute patent misuse if it "has the effect of extending the patentee's statutory rights and does so with an anticompetitive effect." *Id.* In those circumstances, the practice must be analyzed in accordance with the "rule of reason." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 706 (Fed. Cir. 1992).

> Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect.

*Va. Panel*, 133 F.3d at 869 (internal quotation marks omitted).

Pursuant to 35 U.S.C. § 271(d), certain practices are exempt from the affirmative defense of patent misuse (and are therefore permissible). These practices include:

> condition[ing] the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned.

35 U.S.C. § 271(d)(5). Thus, under § 271(d), "in the absence of market power, even a tying arrangement does not constitute patent misuse." *Va. Panel*, 133 F.3d at 869.

## III. DISCUSSION

Masimo contends that Philips' affirmative defense is inadequately pled and also that it is barred by the law of the case. (D.I. 973 at 2) Philips responds that its patent misuse affirmative defense – which was stayed five years ago and upon which Philips has not had the opportunity to take any discovery[3] – satisfies the low pleading standard required for affirmative defenses. Philips further argues that no prior ruling by this Court or any aspect of the jury's verdict bars it from advancing its patent misuse defense, and also that its theory of misuse is consistent with existing law. The Court agrees with Philips.

### A. Sufficiency of Philips' Pleadings

Federal Rule of Civil Procedure 8(c) requires only that a defendant "affirmatively state any . . . affirmative defense." It does not require a statement "showing that the [defendant] is entitled to" judgment on the defense. *See also* Fed. R. Civ. P. 8(a) (requiring "[a] pleading that states a claim for relief" contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Masimo improperly suggests that to overcome a Rule 12(c) motion, Philips was required to plead its affirmative defense with "particularity." (*See* D.I. 973 at 7) (citing *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 601 F.3d 1359, 1367 (Fed. Cir. 2010), *rev'd*, 132 S. Ct. 1670 (2012))[4]

---

[3]Naturally, some facts relevant to Philips' patent misuse defense have come to light during discovery, motion practice, and trial that have occurred.

[4]*Novo Nordisk A/S*, which said nothing about the pleading stage, does not impose any such heightened pleading requirement. *See* 601 F.3d at 1363, 1367 (reviewing district court's grant of injunction entered pursuant to grant of summary judgment on defendant's counterclaim). Moreover, the Federal Circuit in *Novo Nordisk A/S* declined to adjudicate patent misuse. *See id.* (rejecting appellee's attempt to affirm injunction on independent basis of patent misuse where district court declined to reach issue and no factual findings had been made).

Although Masimo has not formally moved to strike Philips' affirmative defense, it cites a host of case law under Federal Rule of Civil Procedure 12(f). (D.I. 973 at 7-8) (citing, e.g., *Takeda Pharm. Co. v. Zydus Pharm. USA Inc.*, 2011 WL 2115819, at *9 (D.N.J. May 25, 2011) ("[B]ald and conclusory assertions simply fail to state a claim under the appropriate standard.")). Neither party has addressed whether Masimo's motion should be treated as a motion to strike. However, whether analyzed under Rule 12(c) or 12(f), the Court reaches the same conclusion.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A court is not required to accept affirmative defenses that are mere 'bare bones conclusory allegations,' and may strike such inadequately pleaded defenses." *Sun Microsys., Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009). "Motions to strike are generally disfavored and ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties," *id.* at 400 (internal quotation marks omitted), "or if the allegations confuse the issues." *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, 2012 WL 4565013, at *1 (D. Del. Oct. 1, 2012). "A motion to strike will not be granted where the sufficiency of the defense depends on disputed issues of facts or where it is used to determine disputed and substantial questions of law." *Id.* (internal quotation marks omitted).

Masimo contends Philips' pleadings (taken as true) establish only antitrust violations (which indisputably have been and remain bifurcated and stayed) that cannot sustain a claim for patent misuse. "While proof of an antitrust violation shows that the patentee has committed wrongful conduct having anticompetitive effects, that does not establish misuse of the patent in suit unless the conduct in question restricts the use of that patent and does so in one of the

specific ways that have been held to be outside the otherwise broad scope of the patent grant." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010) (en banc). Given its narrow scope, "the defense of patent misuse is not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects." *Id.* Rather, patent misuse turns on whether the patentee has leveraged its patent beyond the rights granted. *See id.* at 1328 ("Where the patentee has not leveraged its patent beyond the scope of rights granted by the Patent Act, misuse has not been found.").

Masimo goes to great lengths to characterize Philips' pleadings as stating, at best, an antitrust claim having nothing to do with the patents-in-suit. (D.I. 973 at 8) This argument is unavailing, as Philips' Amended Answer plainly alleges patent misuse. (D.I. 884 ¶ 106 ("Masimo has engaged in a systematic campaign to broaden the scope of its patent rights with anticompetitive effect. As a result, Masimo has misused the . . . '222 [and] '984 . . . patents, and is barred from asserting them against Philips under the equitable doctrine of patent misuse."), 105 (incorporating ¶¶ 110-445 by reference)) On the basis of the pleadings in its Tenth Defense, including the paragraphs incorporated by reference, Philips has provided adequate notice of its affirmative defense at the pleading stage. Even in the context of a Rule 12(f) motion to strike, the cases cited by Masimo make clear that notice of the existence of the defense is sufficient under Rule 8(c). *See Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 901 (E.D. Pa. 2011) ("Providing knowledge that the issue exists, not precisely how the issue is implicated under the facts of a given case, is the purpose of requiring averments of affirmative defenses.");

*Malibu Media, LLC v. Doe 1*, 2013 WL 1702549, at *3 (E.D. Pa. Mar. 6, 2013) (same).[5]

Philips has adequately pled its affirmative defense of patent misuse. Accordingly, Masimo is not entitled to judgment on the pleadings based on purported inadequacies in how Philips has stated its affirmative defense.

**B. Philips' Theory of Patent Misuse**

The Amended Answer contains factual allegations regarding the technology relevant to Philips' theory of patent misuse. These allegations must, at this point, be taken as true. Masimo's contention that Philips will be unable to sustain its evidentiary burden is not a basis for the relief Masimo seeks at this time.

In particular, the Amended Answer alleges that pulse oximetry is a non-invasive method for measuring oxygen levels in the blood of a patient. (D.I. 884 ¶ 117) Pulse oximetry measurements are produced by the combination of three distinct products: monitors, cables, and sensors. (*Id.*) A sensor detects the amount of light that is not absorbed through a patient's tissue. (*Id.*) This information is transmitted from the sensor through a cable into a monitor. (*Id.*) Via one or more algorithms, the monitor converts the information from the sensor into a measurement of a patient's blood oxygen level. (*Id.*) Pulse oximetry using sensors, cables, and monitors was invented in the 1970s and introduced into the United States in the early 1980s, well before Masimo was founded. (*Id.*) Monitors can function for up to ten years before needing to be replaced. (*Id.* ¶ 118) Cables and sensors, by contrast, are "consumables;" that is, staple

[5]Philips' incorporation by reference of later paragraphs in its Answer – some of which involve allegations also supporting its separate counterclaims for violations of the Sherman Act and Clayton Act, along with those supporting its claims of non-infringement, invalidity, and inequitable conduct – does not establish Philips intends improperly to rely solely on its antitrust claims unrelated to the patents in trying to prove its patent misuse defense.

commodity products that need to be replaced frequently over that same ten-year period. (*Id.* ¶ 119)

Philips asserts that Masimo improperly expanded the scope of its patent rights over the claimed pulse oximetry system by tying the sales of its patented monitors (and by tying licenses it offered to the '222 and '984 patents) to sales of staple goods – i.e., the cables and sensors that could also be produced by competitors. (D.I. 978 at 2) Philips asserts Masimo did this by using (1) patent licensing and distribution agreements, (2) a technological lock-out, and (3) bundled discounts, all of which foreclose competition from non-infringing rival cables and sensors. (*Id.*) Contrary to Masimo's arguments, and as further explained below, at least the first of these theories adequately states a claim of patent misuse on which Philips may ultimately prevail.

**1. Per se patent misuse**

Courts have recognized specific practices that constitute "per se patent misuse," including "so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good." *Va. Panel*, 133 F.3d at 869 (discussing *Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 491 (1942), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006)).

Philips' first basis for tying adequately alleges per se patent misuse. In *Virginia Panel*, the Federal Circuit cited as an example of per se patent misuse the Supreme Court's holding in *Morton Salt*. *Va. Panel*, 133 F.3d at 869. In *Morton Salt*, the Supreme Court held that a district court rightly dismissed the patentee's complaint for want of equity where the patentee leased its patented machines to commercial canners under licenses that allowed the use of the machines "upon condition and with the agreement of the licensees that only the subsidiary's salt tablets be

used with the leased machines." 314 U.S. at 491. The Court stated:

> [i]t is the established rule that a patentee who has granted a license on condition that the patented invention be used by the licensee only with unpatented materials furnished by the licensor, may not restrain as a contributory infringer one who sells to the licensee like materials for like use.

*Id.* (citing *Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27 (1931)).

In turn, the Federal Circuit sitting en banc in *Princo Corp. v. International Trade Commission*, 616 F.3d 1318 (Fed. Cir. 2010), restated as follows the holding in *Carbice* (which had been discussed in *Morton Salt*) while reviewing the line of Supreme Court cases that gave rise to the doctrine of patent misuse: a "patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'" *Id.* at 1327 (quoting *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)). *Carbice* held it was improper for the holder of a patent on "refrigerating transportation packages" for transporting and storing dry ice to require licensees to purchase their dry ice – a single element recited in the claim ("frozen carbon dioxide") – from the patent owner or its affiliates. *Carbice*, 283 U.S. at 29.[6]

Philips alleges that Masimo conditioned sales of its patented monitors on customers' agreements to purchase Masimo sensors and cables, and by conditioning licenses of its monitor-related patents (in litigation settlement agreements) on the licensees' agreement to require customers to purchase Masimo sensors and cables. The Masimo sensors and cables are alleged by Philips to be unpatented commodity products like those found in *Morton Salt* and

---

[6]*Morton Salt* and *Carbice* were decided before the 1988 amendment to § 271(d), which "was designed to confine patent misuse, with respect to certain licensing practices, to conduct having anticompetitive effects." *Princo*, 616 F.3d at 1330. However, *Carbice* remains good law governing patent misuse to the extent a patentee stretches the patent right beyond §§ 271(c) or (d) or any other use properly within its grant.

*Carbice*; they are products with respect to which Masimo would otherwise face competition from a variety of others. (D.I. 978 at 4-5) (citing D.I. 884 ¶¶ 132, 137) Thus, again, Philips has adequately stated a claim for per se patent misuse with respect to at least this first alleged tying arrangement.[7]

### 2. Section 271(d) Exemptions

In narrowing the doctrine of patent misuse, § 271(d) provides five specific categories of conduct that do not constitute patent misuse. *See Va. Panel*, 133 F.3d at 869 ("Congress, however, has established that other specific practices may not support a finding of patent misuse."). Masimo contends several of these exemptions entitle Masimo to judgment on the pleadings. The Court disagrees.

Section 271(d)(1) provides it is not misuse where a patentee "derived revenue from acts which if performed by another without his consent would constitute contributory infringement of

---

[7]Philips' second basis for alleging tying contends that Masimo's "ProCal" system functions as a technological tie that expands the scope of Masimo's patented monitor and signal processing products by excluding competing, non-infringing sensors and cables. (D.I. 978 at 5-6) (citing D.I. 884 ¶¶ 138-48) Philips' third basis is a bundled discounts theory alleging that Masimo offers patented monitors to hospitals at no cost or substantially below production cost in exchange for a commitment that the hospital will enter into a long-term purchase agreement to buy a minimum number of sensors and cables from Masimo over the course of a long-term contract. (*Id.* at 6) (citing D.I. 884 ¶¶ 149-55) As the Court has concluded that Philips may proceed at least on its first basis for alleging tying, the Court does not at this time address the legal sufficiency of Philips' additional two theories.

However, the Court does note that it rejects Masimo's contention – evidently based solely on its reading (and not the only reasonable reading) of one sentence in one paragraph of Philips' 84-page Amended Answer – that Philips alleges "Masimo's cables and sensors ***are*** 'patented.'" (D.I. 981 at 2) (emphasis added) (citing D.I. 884 ¶ 138 ("Masimo pulse oximeters and pulse oximetry sensors employ a proprietary interface called 'ProCal.' The ProCal interface is comprised of a patented resistor resident in Masimo's sensor, together with a software program in the pulse oximeter that detects the presence of the resistor once upon insertion of the cable and again prior to rendering a measurement."))

Case 1:09-cv-00080-LPS Document 995 Filed 05/18/15 Page 15 of 24 PageID #: 31347

the patent." As such, Masimo may show the revenue it derived from sales of Masimo sensors and cables were properly within the scope of its rights by proving, for instance, that its competitors in the pulse oximetry market would have contributorily infringed the '222 and '984 patents by selling their own such sensors or cables. At this point, Masimo has not proven this is so and has, at most, raised a factual dispute.

Similarly, pursuant to § 271(d)(5), Masimo's actions would not constitute patent misuse if Masimo "conditioned the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned." Philips has adequately alleged Masimo has the requisite market power. (*See* D.I. 884 ¶¶ 123, 124, 126) (alleging Masimo, Philips, Nellcor, and Nonin are competitors in United States market for monitors and Masimo controls at least 80% of such market) As this allegation must, at this point, be taken as true, the Court cannot conclude that Masimo's actions fall within the scope of the statutory exemption from patent misuse.

**3. Rule of reason**

"When a practice alleged to constitute patent misuse is neither per se patent misuse nor specifically excluded from a misuse analysis by § 271(d), a court must determine if that practice is 'reasonably within the patent grant, i.e., that it relates to subject matter within the scope of the patent claims.'" *Va. Panel*, 133 F.3d at 869 (quoting *Mallinckrodt*, 976 F.2d at 708). "If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse." *Id.* "If, on the other hand, the practice has the effect of extending the

patentee's statutory rights and does so with an anti-competitive effect, that practice must then be analyzed in accordance with the 'rule of reason,'" involving a factually intensive inquiry. *Id.*

> Under the rule of reason, "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect."

*Id.* at 869 (internal citation omitted).

To the extent Philips has not stated a claim for per se patent misuse, it has at minimum provided notice of a patent misuse claim that, taken as true, states patent misuse when evaluated under the rule of reason. At most, Masimo has shown that there are factual disputes which will need to be resolved through discovery and further proceedings. Again, Masimo has failed to show that judgment on the pleadings is warranted.

**4. Law of patent misuse**

At various points, Masimo contends that Philips' theory of patent misuse contradicts settled law. The Court has considered these arguments and concludes that they do not justify granting Masimo judgment on the pleadings.

For instance, Masimo places great emphasis on Philips' request to Judge Thynge, early in this case, to certify the following question to the Federal Circuit for interlocutory review: "Whether, a patent holder, wielding economic monopoly power over a patented article, may rely on a 'system claim' to exclude aftermarket competition from commodity components of the claimed system." (D.I. 72 at 10; *see also* D.I. 973 at 13 ("Philips' request for certification is recognition that it lacks any viable legal basis to assert a defense of patent misuse.")) The Court finds nothing in Philips' request that supports Masimo's position that Philips' theory of patent

misuse is affirmatively barred as a matter of existing law. Rather, any lack of clarity in the law (which is at least arguably implicit in Philips' request) counsels further against granting judgment at this stage of the proceedings. *See generally Cadence*, 2012 WL 4565013, at *1 (stating motion to strike defense will not be granted "where it is used to determine disputed and substantial questions of law").

Elsewhere, Masimo contends that Philips' claim must fail because Philips has not alleged that staple cables and sensors are "entirely separate products." Masimo bases this argument on *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 670 (Fed. Cir. 1986), which Masimo appears to interpret as holding that if the patented invention expressly mentions a staple component as an element, a patentee cannot be found to have impermissibly tied a license on the claimed method or system to the patentee's own staple component because the component is a "necessary concomitant of the invention." Again, the Court disagrees.

As an initial matter, Philips persuasively explains that if Masimo's contention were correct, it would follow that patentees could exercise control over a market well beyond the scope of their invention – and immunize themselves against misuse claims – merely by drafting system claims that include every non-patented article that might possibly interact with the patented article. (*See* D.I. 978 at 12-13) This is not the law. Furthermore, Philips expressly alleged that staple sensors and cables are each separate products, each of which compete in separate product markets from monitors. (*See* D.I. 986-1 at 2) (citing D.I. 884 ¶¶ 120-22)

Moreover, in *Senza-Gel*, the Federal Circuit affirmed summary judgment that the patentee engaged in patent misuse under these very circumstances. *See* 803 F.2d at 669. The evidence there established that the patentee never licensed its process patent without leasing its

Case 1:09-cv-00080-LPS Document 995 Filed 09/18/15 Page 18 of 24 PageID #: 31350

"Macerator" machine which was "useable in carrying out a step of the patented process," and the Court found the machine was a staple article of commerce. *Id.* at 667-68 (finding no clear error in district court's conclusion that "the machine as leased was suitable for substantial non-infringing use and therefore a staple article of commerce"); *see also Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 213 (1980) ("[B]y enacting §§ 271(c) and (d), Congress granted to patent holders a statutory right to control nonstaple goods that are capable only of infringing use in a patented invention, and that are essential to that invention's advance over prior art."). Interpreting the product separability analysis in *Senza-Gel* as Masimo does here would contravene the case's holding affirming the patent misuse defense. *See Senza-Gel*, 803 F.2d at 667-68.

Finally, the language Masimo quotes from *Senza-Gel* addressed a different proposition: the distinction between what a court must look to in the "separate products" analysis for tying in the context of antitrust as compared to patent misuse. As the Federal Circuit explained:

> The law of patent misuse in licensing need not look to consumer demand (which may be non-existent) but need look only to the nature of the claimed invention as the basis for determining whether a product is a necessary concomitant of the invention or an entirely separate product. The law of antitrust violation, tailored for situations that may or may not involve a patent, looks to a consumer demand test for determining product separability.

*Id.* at 670 n.14. Based on the nature of the invention as claimed here, Masimo's arguments are unavailing. Cables are never recited in the asserted claims of the '984 or '222 patents. Likewise, the claimed invention is not over an individual sensor. Nor is it over Masimo's particular sensors, nor any aftermarket replacement sensor. The claimed invention of each of the asserted claims is over a pulse oximetry system as a whole, which involves multiple components,

including a sensor alleged to be a staple article that on its own is capable of non-infringing use. To the extent there remains a factual dispute over whether Philips can make the required separability showing, Masimo has presented no argument as to why unpatented cables and sensors are not "entirely separate products" from the full read-through motion oximetry systems claimed in the patents-in-suit based on "the nature of the claimed invention." *Senza-Gel*, 803 F.2d at 670.[8]

**C. Law of the Case**

Masimo further contends that Philips' affirmative defense is barred by law of the case. "The law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (internal quotation marks omitted). "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Law of the case directs a court's discretion, it does not limit a tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983) (internal citation omitted). For several reasons, Masimo's argument fails.

First, Masimo's reliance on law of the case doctrine assumes that the Court could broaden the scope of Masimo's patent rights, but this is not correct. Essentially, Masimo argues

[8]Masimo also points to *Ricoh Co. v. Nashua Corp.*, 1999 WL 88969 at *6 (Fed. Cir. 1999), which found the district court did not err in ruling that a tying claim failed because the accused infringer failed to show that unpatented bulk toner and patented cartridges "could be sold separately," where the toner was not only explicitly contemplated in the patent claims but also was "a practical necessity in selling toner cartridges." In contrast to the *Ricoh* Court's reasoning that a toner cartridge cannot practically be sold without toner in it, the record here makes clear that at the very least, the claimed pulse oximeter system can be sold without cables or replacement sensors. Indeed, both parties' damages analyses of the claimed systems suggest as much. Moreover, any uncertainty or factual disputes on these points only illustrate again that judgment on the pleadings is unwarranted.

Case 1:09-cv-00080-LPS Document 995 Filed 05/18/15 Page 20 of 24 PageID #: 31352

that, having prevailed at trial on its asserted ***system claims*** – over a series of elements that together make up an invention – it has proven that it also has patent rights over any ***individual element*** of that system sufficient to defeat any claim of patent misuse involving such an element (i.e., sensors or cables). However, the scope of Masimo's rights are defined by the patent claims. The Court cannot broaden those rights.

It is undisputed that Masimo has not patented a cable alone. Nor does Masimo have a patent claim over a sensor alone. Masimo has claims over a system.[9] In that system, sensors and monitors (cables are not recited) are only components used by the claimed invention – they are not the claimed system itself. (*See, e.g.*, '222 patent at col. 74 l. 77 - col. 75 l. 8) (claiming physiological monitor for computing arterial oxygen saturation in tissue material having arterial and venous blood, comprising three elements: (i) "a light emitter" and (ii) "light detector" (together, a sensor) as well as (iii) a "signal processor" that reads signals "without significant interference" from "motion induced noise") Masimo has a broad range of rights in the '222 and '984 patents, including the right to exclude direct infringement, inducement, and contributory infringement. However, those rights are defined (by statute and the patent claims) and the Court cannot broaden them.

Second, Masimo's contentions regarding law of the case rely on an overly broad misinterpretation of Philips' pre-trial stipulations of infringement. In Masimo's view, Philips' admissions of (i) direct infringement, (ii) inducement, and (iii) contributory infringement, as well as (iv) the damages analysis at trial, each establish that cables and sensors are "patented" and

---

[9]The asserted claims consist of claims 17 and 18 of the '222 patent and claims 1-5, 15, 19, 20, 22, 52, and 53 of the '984 patent. All of the asserted claims in the present action are method, apparatus, or system claims relating to the recited pulse oximetry system.

Case 1:09-cv-00080-LPS Document 995 Filed 09/18/15 Page 21 of 24 PageID #: 31353

"within the scope" of Masimo's system claims. The Court disagrees. Instead, Philips has not conceded that Masimo's patent rights extend to ***all*** sensors and cables in the pulse oximetry market. The Court agrees with Philips that it "did ***not*** concede that aftermarket sales of sensors outside the complete system are infringing." (D.I. 978 at 19)

The core exclusionary right of a patent is the negative right of a patentee to "exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States." 35 U.S.C. § 154(a)(2). A patent, in effect, provides a patentee with a bundle of rights that flow from the right to exclude. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). The Patent Act provides a patentee with causes of action for direct infringement pursuant to 35 U.S.C. § 271(a), as well as indirect infringement for inducement under 35 U.S.C. § 271(b), and contributory infringement under 35 U.S.C. § 271(c).

For direct infringement under § 271(a), it is "well settled that ***each element*** of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of ***every element*** or its substantial equivalent in the accused device." *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) (emphasis added); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111 (2014) ("A method patent claims a number of steps . . . [and] the patent is not infringed unless all the steps are carried out."). The "all elements" rule is an important requirement, applying equally to literal infringement and infringement by the doctrine of equivalents. *See, e.g., Warner-Jenkinson Co. v. Hilton Davis*

*Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").

In keeping with these principles, Philips conceded that the sales of (i) Philips monitors with the FAST algorithm together with (ii) Philips sensors sold "***therewith***" constitute direct infringement, as they ***together*** form the complete system claimed by the '222 and '984 patents. (D.I. 834 at 4-5) (emphasis added) As Philips' stipulation makes plain, however, Philips did ***not*** concede that sales of aftermarket replacement sensors ***without*** a monitor containing the FAST algorithm also constitute direct infringement. Hence, through its stipulation, Philips neither expressly nor implicitly conceded that all competitor sensors (or cables) sold individually without practicing the rest of the claimed system are "within the scope" of the '222 and '984 patents claims pursuant to § 271(a). Accordingly, the law of the case on direct infringement does not establish Masimo has separate rights over rival cables and sensors sold without the claimed system.

For the same reasons, Masimo's stipulations of induced infringement and contributory infringement do not establish law of the case warranting granting Masimo judgment on the pleadings on Philips' allegations of patent misuse. *See* 35 U.S.C. § 271(b)-(c). "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted). "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.

Ct. 2060 (2011). Thus, far from an exclusive right over the sale of all cables and sensors, Masimo has the right to exclude an inducer's cables or sensors only where Masimo can establish that direct infringement actually occurred and that the inducer (i) acted with the requisite intent to cause acts by another that constituted direct infringement, (ii) knew of the patent (or exhibited willful blindness), and (iii) knew or should have known its act would result in infringement of the patent. Hence, the claimed system must be practiced, not just an individual element of it. *See Lemelson*, 752 F.2d at 1551. Here, Philips' stipulation established only that through the sales of monitors with the FAST algorithm and the sensors sold "therewith," Philips acted as an inducer and thus had infringed Masimo's right to exclude under those requisite circumstances. (D.I. 834 at 4-5) Nothing about this stipulation established law of the case giving rise to the rights now asserted by Masimo.

Under the doctrine of contributory infringement, a patentee has the right to exclude components "especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Thus, the right to prevent contributory infringement does not extend to ***all*** rival sensors and cables. Here, Philips conceded that monitors containing the Philips FAST algorithm contribute to infringement because an oximeter monitor that contains the FAST algorithm would be a component especially adapted for an infringing use that cannot be used in a non-infringing way. (*See* D.I. 834 at 4-5) Nothing in this stipulation creates law of the case that gives Masimo the broad rights it asserts in seeking judgment on the pleadings.

Finally, Masimo argues that the parties' damages theories, and the jury's damages verdict, give rise to law of the case that warrants granting it judgment on the pleadings relating

Case 1:09-cv-00080-LPS Document 995 Filed 05/18/15 Page 24 of 24 PageID #: 31356

to patent misuse. Masimo asserts that at trial both sides calculated damages based on Philips' sale of pulse-oximetry boards with sensors and cables, and the jury awarded damages on this basis. However, it is unclear whether the jury awarded damages on the basis of Masimo's alternative theory of damages, based on its sales of cables and sensors along with the oximeter monitors, under the doctrine of "convoyed sales." (Trial Tr. at 2382-83) *See also DePuy Spine, Inc. v. Medtronic Sofamor Danek*, 567 F.3d 1314, 1333 ("A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale . . . ."). In any event, the parties' damages calculations or the jury's award of damages owed on cables and sensors involved ***in the infringing FAST pulse oximetry system*** do not create in Masimo a separate patent right over the staple articles of cables and sensors, which were known in the prior art.

In sum, the law of the case doctrine does not provide a basis for granting Masimo judgment on the pleadings on Philips' patent misuse defense.

## IV. CONCLUSION

Accordingly, for the reasons above, the Court will deny Masimo's motion for judgment on the pleadings. An appropriate Order follows.