## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378-MN-JLH |
| | ) | |
| MASIMO CORPORATION and | ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION and | ) | |
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## PLAINTIFF APPLE INC.'S OPPOSITION TO
## <u>DEFENDANTS' MOTION TO CONSOLIDATE</u>

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
Jamie L. Kringstein
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  March 10, 2023
10682844 / 12209.00051

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*

**TABLE OF CONTENTS**

Pages

I.      INTRODUCTION ..................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III.    SUMMARY OF THE ARGUMENTS ................................................................3

IV.     FACTUAL BACKGROUND ..............................................................................3

V.      LEGAL STANDARD..........................................................................................5

VI.     ARGUMENT .......................................................................................................6

        A.    Masimo Overstates Any Purported Commonalities Between The Design
              Case And The Utility Case, Which At Most Concern The Threshold
              Question Of Whether The Court "Could" Consolidate These Cases ....................6

              1.    There Are Substantial Differences Between Apple's Claims In The
                    Design Case And Apple's Claims In The Utility Case..............................6

              2.    There Are Substantial Differences Between Apple's Claims In The
                    Design Case And Masimo's Counterclaims In The Utility Case .............12

        B.    Masimo Does Not And Cannot Meet Its Burden Of Demonstrating That The
              Court "Should" Consolidate The Design Case And The Utility Case.................15

              1.    Masimo Fails To Analyze The Considerations Pertinent To
                    Whether The Court Should Consolidate The Design Case And The
                    Utility Case ..........................................................................................15

              2.    Consolidation Would Cause Inefficiencies, Expense, And
                    Inconvenience ......................................................................................16

              3.    Consolidation Would Cause Prejudicial Delays; Frustrate
                    Fundamental Fairness; And Subject Apple to Additional,
                    Avoidable Irreparable Harm ................................................................18

VII.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Pages**

## Cases

*10X Genomics, Inc. v. Nanostring Techs., Inc.*,
No. 22-cv-261-MFK, D.I. 83, Slip Op. (D. Del. Jan. 24, 2023) ....................... 6, 9, 17, 19

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ...................................... 11

*Akzona Inc. v. E.I. Du Pont de Nemours & Co.*,
607 F. Supp. 227 (D. Del. 1984) .................................................................................... 20

*Amazon.com Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ....................................................................................... 7

*Beacon Theaters v. Westover*,
359 U.S. 500 (1959) ....................................................................................................... 14

*Borough of Olyphant v. PPL Corp.*,
153 F. App'x 80 (3d Cir. 2005) ....................................................................................... 6

*Bos. Sci. Scimed, Inc. v. Edwards Lifesciences Corp.*,
No. 16-275-JFB-SRF, 2018 WL 6040261 (D. Del. Nov. 9, 2018) ............................. 5, 16

*Cirba Inc. v. VMWARE, Inc.*,
No. 19-cv742-LPS, 2020 WL 7489765 (D. Del. Dec. 21, 2020) .................................... 12

*Complete Genomics, Inc. v. Illumina, Inc.*,
No. 21-cv-00217-WHO, 2021 WL 1197096 (N.D. Cal. Mar. 30, 2021) ....... 14, 15, 17, 19

*Cordant Tech. Inc. v. Alliant Techsys. Inc.*,
45 F. Supp. 2d 398 (D. Del. 1999) .............................................................................. 9, 10

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010) ....................................................................................... 8

*DMF, Inc. v. AMP Plus, Inc.*,
2:18-cv-07090-CAS(GJSx), 2019 WL 9077477 (C.D. Cal. Dec. 13, 2019) ........... 7, 9, 10

*Eastman Chem. Co. v. AlphaPet, Inc.*,
No. 09-971-LPS-CJB, 2011 WL 7121180 (D. Del. Dec. 29, 2011) ................................ 11

*eBay v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ....................................................................................................... 20

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ........................................................................... 8, 9

*Emerson Elec. Co. v. Emerson Quiet Kool Co. Ltd.*,
    17-1846-LPS-JLH, 2021 WL 663058 (D. Del. Feb 19, 2021) ................................ passim

*Eurand Inc. v. Mylan Pharms. Inc.*,
    08-889, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ..................................................... 17, 19

*GI Sportz, Inc. v. Valken, Inc.*,
    No. 1:16-cv-07170-NLH-KMW, D.I. 134, Slip Op. (D.N.J. Aug. 30, 2019) ............ passim

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ........................................................................... 9

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ................................... 8

*Outten v. Wilmington Tr. Corp.*,
    281 F.R.D. 193 (D. Del. 2012) ........................................................................... 5, 16

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 8

*Rohm & Haas Co. v. Mobil Oil Corp.*,
    525 F. Supp. 1298 (D. Del. 1981) ...................................................................... 11

*SenoRx, Inc. v. Hologic, Inc.*,
    920 F. Supp. 2d 565 (D. Del. 2013) ................................................................... 12

*SRI Int'l v. Matsushita Elec. Corp. Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) ........................................................................... 9, 10

*Sygenta Seeds, Inc. v. Monsanto Co.*,
    C.A. 02–1331–SLR, 2004 WL 2002208 (D. Del. Aug. 27, 2004) ........................... 11, 17

*Sygenta Seeds, Inc. v. Monsanto Co.*,
    No. 04-908-SLR, 2005 WL 678855 (D. Del. Mar. 24, 2005) .......................... 11

*Westinghouse Air Brake Techs. Co. v. Siemens Mobility, Inc.*,
    330 F.R.D. 143 (D. Del. 2019) .................................................................. 13, 17, 19, 20

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
    19 F.3d 1418 (Fed. Cir. 1994) ........................................................................... 10

## Statutes

35 U.S.C. § 101 .................................................................................................... 7

## TABLE OF AUTHORITIES (cont'd)

**Pages**

35 U.S.C. § 112(a) .................................................................................................... 8

35 U.S.C. § 112(b) .................................................................................................... 8

35 U.S.C. § 112(c) .................................................................................................... 8

35 U.S.C. § 171(a) .................................................................................................... 7

**Regulations**

37 C.F.R. §§ 1.152 .................................................................................................... 7

37 C.F.R. §§ 1.153 .................................................................................................... 7

37 C.F.R. §§ 1.75 ..................................................................................................... 8

**Rules**

D. Del. Local Rules 7.1.3(c)(2) ................................................................................ 16

Fed. R. Civ. P. 42(a)(2) ............................................................................................. 5

**Other Authorities**

*Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006) ........................... 8

## I.     INTRODUCTION

In its latest attempt to create an inefficient and unworkable judicial logjam with the obvious goal of delaying resolution of Apple's claims, Masimo moves to consolidate two separate cases (C.A. No. 22-1377-MN-JLH ("Design Case") and C.A. No. 22-1378-MN-JLH ("Utility Case")).[1] Masimo already sought to hinder the Utility Case by injecting into it over 30 disparate counterclaims—including six non-patent counterclaims for alleged violations of the Sherman Act, the Lanham Act, the California False Advertising Law, the Delaware Deceptive Trade Practices Act, and the California Unfair Competition Law, as well as 10 patent infringement counterclaims. Masimo's numerous counterclaims already have forced Apple to file its pending motion to sever the now-sprawling Utility Case to break the claims and counterclaims into two manageable proceedings.  (Utility Case, D.I. 34-35.)   Masimo's motion to consolidate, however, seeks to further hinder resolution of Apple's claims by combining the already-unwieldly Utility Case with the simple, straightforward Design Case—essentially shoehorning ***all disputes filed by the parties in this District*** into a single, prolonged, and unmanageable mega-proceeding.

Masimo fails to satisfy its burden of demonstrating that consolidating these cases into a single, protracted morass is appropriate.  *First*, Masimo exaggerates the purported commonalities in the Design Case and the Utility Case.  The claims at issue in the Design Case and the Utility Case are substantially different, and Masimo's purported commonalities rely on its Utility Case counterclaims which are unlikely to survive dismissal.  (*See* Utility Case, D.I. 40 at 1-2, 7-8, 16-20; *see also* Design Case, D.I. 55.)  *Second,* even if any commonalities were to exist, they would be relevant only to the threshold issue of whether the Court could consolidate the cases under the Federal Rules.  But Masimo does not and cannot meet its burden of demonstrating that the Court

---

[1] Masimo's opening brief refers to "Masimo" as shorthand for both Defendants Masimo and Sound United.  Apple's opposition brief therefore uses this same shorthand.

*should* consolidate the Design Case and the Utility Case.  The relevant considerations of efficiency, expense, fairness, inconvenience, and delay—which Masimo fails to address beyond mere cursory, conclusory assertions that they are met—weigh decisively against consolidation. Accordingly, the Court should deny Masimo's motion to consolidate.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On October 20, 2022, Apple filed two separate complaints.  In the Design Case, Apple sued Masimo and Sound United (Masimo's consumer division) for infringing four Apple design patents.  (Design Case, D.I. 1 ¶¶ 41–68.)  In the Utility Case, Apple sued Masimo and Sound United for infringing six Apple utility patents.  (Utility Case, D.I. 1 ¶¶ 41–145.)  There is no overlap between the patents asserted in the Design Case and those asserted in the Utility Case.

On December 12, 2022, Masimo filed two different answers in the two different cases.  In the Design Case, the only counterclaims asserted by Masimo were for declaratory judgments related to the four Apple design patents.  (Design Case, D.I. 31.)  That same day in the Utility Case, however, Masimo asserted *31 counterclaims in a 162-page pleading*—not only for various declaratory judgments related to the six Apple utility patents, but also 16 disparate counterclaims regarding purported violations of antitrust and false advertising laws as well as for infringement of 10 of Masimo's own patents.  (Utility Case, D.I. 15.)

On January 10, 2023, the Court issued a mandatory stay of Masimo's counterclaims for five of Masimo's patents under 28 U.S.C. § 1659 in the Utility Case.  (Utility Case, D.I. 25.)

On February 3, 2023, Apple filed a motion for an expedited trial of the Design Case to mitigate significant irreparable harms that Apple will suffer from Masimo's copying of Apple's iconic patented designs.  (Design Case, D.I. 44-45.)  Also on February 3, 2023, Apple filed in the Utility Case a motion to (1) sever Masimo's unrelated counterclaims from Apple's patent infringement claims and (2) stay Masimo's infringement counterclaims with respect to patents that

are related to the Masimo patents that this Court had stayed based on Masimo's parallel assertion of them in the International Trade Commission.  (Utility Case, D.I. 34–35.)  On February 21, 2023, Apple filed a motion to dismiss and strike Masimo's inequitable conduct allegations in the Design Case and filed a motion to dismiss Masimo's antitrust, false advertising, and inequitable conduct counterclaims as well as strike Masimo's inequitable conduct allegations in the Utility Case. (Design Case, D.I. 54–55; Utility Case, D.I. 39–40.)

## III.    SUMMARY OF THE ARGUMENTS

1.    The Design Case and the Utility Case are substantially different cases that present overwhelmingly different legal and factual issues, and Masimo exaggerates any purported commonalities between them.  The patents asserted in the Design Case and the Utility Case are not only entirely different patents, but also different statutory types of patents.  Masimo's attempt to bog down these proceedings by asserting facially deficient *Walker Process* counterclaims (among others) in the Utility Case likewise does not support, much less require, consolidation.

2.    Masimo does not and cannot meet its burden of demonstrating that the Court ***should*** consolidate the Design Case and the Utility Case.  Masimo fails to analyze and instead merely offers cursory, conclusory assertions regarding the relevant consolidation considerations— efficiency, expense, fairness, inconvenience, and delay—all of which weigh decisively against consolidating these cases into a single, protracted mega-proceeding.

## IV.    FACTUAL BACKGROUND

Apple's October 20, 2022 patent infringement complaint in the Design Case accused Masimo of infringing four Apple design patents: U.S. Patent Nos. D883,279, D947,842, D962,936, and D735,131 (collectively, the "Asserted Design Patents").  (Design Case, D.I. 1.)  These design patents claim iconic, ornamental designs as shown in their figures.  (*Id.* ¶¶ 18-19, 41-68.)

By contrast, Apple's October 20, 2022 patent infringement complaint in the Utility Case

accused Masimo of infringing six Apple utility patents, namely U.S. Patent Nos. 10,076,257, 10,627,783, 10,942,491, 10,987,054, 11,106,352, and 11,474,483 (collectively, the "Asserted Utility Patents"). (Utility Case, D.I. 1 at ¶¶ 41-145.) The Asserted Utility Patents claim various features and functionalities for a wearable electronic device, such as a heart monitor, a biosensor module, wireless charging, and graphical user interfaces. (*Id.*)

Masimo's December 12, 2022 answer in the Design Case asserted declaratory judgment counterclaims related to the Asserted Design Patents mirroring Masimo's defenses, but asserted no affirmative counterclaims. (Design Case, D.I. 31 at 35–38 (Counts I-III).) By contrast, Masimo's December 12, 2022 answer in the Utility Case raised ***16 unrelated counterclaims asserting wide-ranging, unrelated allegations about Apple and Apple Watch***, including antitrust and false advertising counterclaims as well as infringement counterclaims accusing Apple of infringing 10 Masimo patents. (Utility Case, D.I. 15 ¶¶ 237-377 (First through Sixteenth Counts).)

For example, Masimo's antitrust counterclaims in the Utility Case seek to adjudicate wide-ranging, ***antitrust-specific*** legal and factual issues, such as (1) the "relevant market" for antitrust purposes; (2) whether "Apple has monopoly power" in that market; (3) whether "Apple has willfully acquired, maintained, and/or enlarged its monopoly power . . . through . . . exclusionary and anticompetitive means"; (4) whether Apple's conduct has "cause[d] injury or loss to interstate commerce and to consumers"; (5) whether "Masimo's injuries are of the type that antitrust laws are intended to prohibit"; (6) whether "Masimo has antitrust standing"; and (7) whether any antitrust-specific damages, injunctions, or other remedies are warranted as a result of Apple's conduct. (Utility Case, D.I. 15 ¶¶ 237-254 (First and Second Counts); *see also id.* ¶¶ 166-222.)

In addition, Masimo's false advertising counterclaims in the Utility Case seek to adjudicate wide-ranging, advertising-specific allegations about Apple, such as (1) whether "Apple has made

false, misleading, and deceptive descriptions and representations of fact about the Apple Watch products"; (2) whether "Apple knew or should have known that its advertising and promotional activities . . . were false, misleading, and deceptive"; (3) whether Apple's statements "deceived . . . a substantial segment of their intended audience"; (4) whether Apple's statements "caused injury to Masimo"; and (5) whether any damages or injunctive relief is warranted as a result of Apple's conduct.  (Utility Case, D.I. 15 ¶¶ 255-287 (Third through Sixth Counts); ¶¶ 142-165.)

Moreover, Masimo's infringement counterclaims in the Utility Case seek to adjudicate whether Apple infringes 10 of Masimo's own patents.  (Utility Case, D.I. 15 ¶¶ 288-377 (Seventh through Sixteenth Counts); *see also id.* ¶¶ 223-236.)

Apple's February 3, 2023 motion to sever in the Utility Case sought to separate the claims and disparate counterclaims of that now-sprawling case into two manageable proceedings.  (Utility Case, D.I. 34-35.)  By contrast, Masimo's February 24, 2023 motion to consolidate seeks to shoehorn all of the parties' disputes in this District into a single, protracted mega-proceeding.

## V.    LEGAL STANDARD

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court *may*…consolidate the actions[.]" Fed. R. Civ. P. 42(a)(2) (emphasis added).  "While decisions to consolidate are discretionary, the court *should* 'balance considerations of efficiency, expense, and fairness.'"  *Emerson Elec. Co. v. Emerson Quiet Kool Co. Ltd.*, No. 17-1846-LPS-JLH, 2021 WL 663058, *2 (D. Del. Feb 19, 2021) (Hall, J.) (emphasis added) (quoting *Bos. Sci. Scimed, Inc. v. Edwards Lifesciences Corp.*, No. 16-275-JFB-SRF, 2018 WL 6040261, at *1 (D. Del. Nov. 9, 2018)).  To that end, "[t]he court *must* weigh 'the savings of time and effort gained through consolidation … against the inconvenience, delay or expense that might result . . . .'"  *Id.* at *2 (emphasis added); *accord Bos. Sci.*, 2018 WL 6040261, at *1; *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 196-97 (D. Del. 2012).

"The moving party bears the burden to demonstrate that consolidation is appropriate." *Emerson*, 2021 WL 663058, at *2 (citing *Borough of Olyphant v. PPL Corp.*, 153 F. App'x 80, 82 (3d Cir. 2005)). Courts routinely deny motions to consolidate. *See, e.g.*, *id.* at *2 ("[J]ust because the cases involve similar legal theories doesn't mean that it would be efficient to try them together."); *10X Genomics, Inc. v. Nanostring Techs., Inc.*, No. 22-261-MFK, D.I. 83, Slip Op. at 2 (D. Del. Jan. 24, 2023) ("The subject matter in these cases is already highly complex . . . . Including a claim of infringement by a separate party involving a different patent runs a very high risk of overcomplicating the proceedings[.]") (Ex. 1); *GI Sportz, Inc. v. Valken, Inc.*, No. 1:16-cv-07170-NLH-KMW, D.I. 134, Slip Op. at 3 (D.N.J. Aug. 30, 2019) ("although the parties are the same in the three cases and all the matters generally present a dispute over paintballs and paintball guns, the discrete issues presented in each case are distinct and do not involve sufficient commonality to obtain the benefits of consolidation") (Ex. 2).

## VI.   ARGUMENT

### A.   Masimo Overstates Any Purported Commonalities Between The Design Case And The Utility Case, Which At Most Concern The Threshold Question Of Whether The Court "Could" Consolidate These Cases

Masimo purports to identify "common questions of law and fact" between Apple's claims in the Design Case and Apple's claims in the Utility Case, and between Apple's claims in the Design Case and Masimo's counterclaims in the Utility Case. But Masimo overstates the purported commonalities; these cases are vastly different from one another.

#### 1.   There Are Substantial Differences Between Apple's Claims In The Design Case And Apple's Claims In The Utility Case

Masimo disregards the substantial differences between Apple's claims in the Design Case and Apple's claims in the Utility Case, including the fact that the asserted patents are completely different, arise under different statutory law, and raise distinct legal and factual issues.

For starters, the Asserted Design Patents and the Asserted Utility Patents are entirely different sets of patents.  The patents asserted in the Design Case are U.S. Patent Nos. D735,131, D883,279, D947,842, and D962,936.  (Design Case, D.I. 1.).  The patents asserted in the Utility Case are U.S. Patent Nos. 10,076,257, 10,627,783, 10,942,491, 10,987,054, 11,106,352, and 11,474,483.  (Utility Case, D.I. 1)  There is no overlap between the patents asserted in each action. The Asserted Design Patents and Asserted Utility Patents in-Suit are not even in the same patent families.  Because infringement and validity are assessed on a claim-by-claim basis (*Amazon.com Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001)), and the Asserted Design Patents and Asserted Utility Patents are different patents that have different claims, the basic patent issues of infringement and validity in the two cases are different rather than "common" issues.

The Asserted Design Patents and the Asserted Utility Patents also are different ***types*** of patents that arise under different federal statutes.  *See* 35 U.S.C. § 101 ("new and useful process, machine, manufacture, or composition of matter"), § 171(a) ("new, original and ornamental design for an article of manufacture"); *DMF, Inc. v. AMP Plus, Inc.*, 2:18-cv-07090-CAS(GJSx), 2019 WL 9077477, at *13 (C.D. Cal. Dec. 13, 2019) (denying consolidation of a utility patent case and a design patent case; recognizing "not only do the Utility Patent Case and the Design Patent Case concern different patents, they involve different ***types*** of patents . . . .") (emphasis in original). Notably, the issues of claim construction and infringement—perhaps the most fundamental of legal and factual issues in a patent case—distinctly differ for design patents and utility patents.

Design patent and utility patent cases have vastly different approaches regarding the need for claim construction.  In a design patent, the figures themselves ***are*** the claim, and each design patent has only one claim.  37 C.F.R. §§ 1.152, 1.153.  Thus, in a design patent case, "the preferable course ordinarily will be for a district court ***not*** to attempt to 'construe' a design patent claim by

providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (emphasis added); *cf. Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("As a rule, the illustration in the drawing views is its own best description.") (quoting *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006)).

By contrast, in a utility patent, the claim comprises written words at the end of a more-detailed written description, "particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(a)-(b); 37 C.F.R. §§ 1.75. Utility patents may each have multiple claims (as is the case here) set forth in independent or dependent form. 35 U.S.C. § 112(b)-(c). Therefore, in a utility patent case, claim construction is the rule, not the exception, and courts have fashioned an entire body of case law governing claim construction. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) ("An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing"), *aff'd*, 517 U.S. 370, 390 (1996) (for utility patents, "[v]ictory in an infringement suit . . . necessitates a determination of 'what the words in the claim mean.'"); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). Consequently, issues of claim interpretation are decidedly more complex in a utility patent case than in a design patent case.

In addition, design patent cases and utility patent cases require different infringement analyses. For design patents, the "sole test" for infringement is the "ordinary observer" test—whether the claimed design and the accused product "would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. In other words, in a design patent case, the central comparison for the accused product is to the figures (the claim) of the design patent. And notably, in a design patent case, additional comparisons of the accused product to the prior

art and to the patentee's commercial product are not only permissible, but in fact ***facilitate*** the

design infringement analysis.  *See id.* at 677–78; *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d

1117, 1125–26 (Fed. Cir. 1993).  For utility patents, by contrast, these types of comparisons are

not permitted: "Infringement, literal or by equivalence, is determined by comparing an accused

product ***not*** with a preferred embodiment described in the specification, or with a commercialized

embodiment of the patentee, but with the properly and ***previously construed claims*** in suit."  *SRI*

*Int'l v. Matsushita Elec. Corp. Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (emphasis added);

*accord Cordant Tech. Inc. v. Alliant Techsys. Inc.*, 45 F. Supp. 2d 398, 421 (D. Del. 1999).  The

infringement issues in the Design Case and the Utility Case are totally distinct and different.  *DMF*,

2019 WL 9077477, at *13.  The cases will require different evidence, different analyses, and

different expert discovery—raising entirely different pretrial issues.

  As for purported commonalities, Masimo relies on the circular tautology that Apple's cases

against Masimo unremarkably concern Apple, Masimo, and their products.  But because the

Asserted Design Patents and Asserted Utility Patents are different types of patents with distinctly

different claims, the many claim-specific matters at issue in the different cases—*e.g.*, construction

of those different claims, comparison of those different claims to Masimo's products, and

comparison of those different claims to any alleged prior art—are necessarily different rather than

"common" issues.  *See, e.g., Emerson*, 2021 WL 663058, at *3 ("The differences between the

cases are considerable enough to cancel any benefit gained by consolidation."); *10X Genomics*,

Slip Op. at 2 (denying consolidation because "[t]he subject matter in these cases is already highly

complex" and "[i]ncluding a claim of infringement by a separate party involving a different patent

runs a very high risk of overcomplicating the proceedings[.]") (Ex. 1); *GI Sportz*, Slip Op. at 3–4

("[A]lthough the parties are the same in the three cases and all the matters generally present a

dispute over paintballs and paintball guns, the discrete issues presented in each case are distinct and do not involve sufficient commonality to obtain the benefits of consolidation. . . .") (Ex. 2). Masimo also disregards the distinction that, in the Utility Case, Masimo brought counterclaims on behalf of a new party—Cercacor Laboratories, Inc.—which is not a party in the Design Case.

Masimo's other attempts to identify legal and factual overlap also fail. Masimo asserts that one figure from one of the Asserted Utility Patents looks similar to designs claimed in the Asserted Design Patents (Design Case, D.I. 62 at 6); however, the pertinent infringement analysis compares each respective ***patent claim*** to the ***infringing product***—not to a specification figure from an Apple utility patent. *See Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("the only proper comparison is with the claims of the patent"); *accord SRI*, 775 F.2d at 1121; *Cordant*, 45 F. Supp. 2d at 421. Masimo also asserts that it will rely on one of the Asserted Utility Patents "to defend itself against Apple's Asserted Design Patents" (Design Case, D.I. 62 at 6). But Masimo can still do that in the Design Case—as it could with any other evidence—without consolidation, and this is not an issue in the Utility Case at all. Indeed, combining the separate issues of (1) whether an Asserted Utility Patent is infringed by Masimo's product and (2) whether that Asserted Utility Patent allegedly invalidates the Asserted Design Patents, would confusingly conflate two separate issues, which weighs against consolidation. *See DMF*, 2019 WL 9077477 ("In light of the different legal standards that govern claims for infringement of utility patents and design patents, the likelihood of juror confusion further counsels against consolidation.").

Masimo's remaining arguments fare no better. Masimo's assertion that it may rely on an earlier-filed document that is ***not*** one of the Asserted Utility Patents for its inequitable conduct defense in the Design Case (Design Case, D.I. 62 at 7) is irrelevant because Masimo does not show how this is an issue in the Utility Case. In any event, Masimo's inequitable conduct allegations

are unlikely to survive dismissal.  (Design Case, D.I. 54, 55; Utility Case, D.I. 39, 40 at 16-20.)

Masimo's cases also miss the mark.  In *Rohm & Haas*, the first suit merely concerned the validity of a single utility patent, and the second suit concerned the patentee's additional assertion of "the same network of patents and patent applications pertinent to the [first] suit."  *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1300, 1302 (D. Del. 1981).  Moreover, the plaintiff's patents in both cases "all [] traced to a common disclosure" and neither suit involved any antitrust, false advertising, or other non-patent claims.  *Id.* at 1310.  By contrast, here the Design Case and Utility Case collectively involve ten different Apple patents of different statutory types, plus over 30 of Masimo's own disparate counterclaims, including for alleged violations of antitrust and false advertising laws as well as for infringement of 10 of Masimo's own patents.  *Sygenta Seeds II* also addressed only a limited issue (consolidating a single infringement claim and a single antitrust claim)—not a 20-patent plus antitrust and false advertising behemoth.  *Sygenta Seeds, Inc. v. Monsanto Co.*, No. 04-908-SLR, 2005 WL 678855, at *3 (D. Del. Mar. 24, 2005) ("*Sygenta Seeds II*").  The Court also did not "perceive any expense or fairness issues which would marshal against consolidating" (*id.*) [2]—issues which, as discussed below, Masimo's motion fails to address.

Likewise, *Abbott* and *Eastman* each concluded that the two groups of patents covered very similar subject matter, which is plainly not true of Apple's Asserted **Design** Patents and Asserted **Utility** Patents, and neither *Abbott* nor *Eastman* involved affirmative counterclaims.  *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. 06-514-GMS, 2007 WL 2892707, at *1 (D. Del. Sept. 30, 2007); *Eastman Chem. Co. v. AlphaPet, Inc.*, No. 09-971-LPS-CJB, 2011 WL 7121180, at *3 (D. Del. Dec. 29, 2011).  *SenoRx* addressed bifurcation of a single claim—not consolidation of

---

[2] That court earlier refused to consolidate more complicated proceedings involving those parties. *Sygenta Seeds, Inc. v. Monsanto Co.*, No. 02-1331-SLR, 2004 WL 2002208 (D. Del. Aug. 27, 2004) ("consolidation…would be more burdensome than beneficial.") ("*Sygenta Seeds I*").

cases.  *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013).  And in *Cirba*, the Court previously granted and held an expedited trial in one of the actions.  *Cirba Inc. v. VMWARE, Inc.*, No. 19-742-LPS, 2020 WL 7489765, at *6–7 (D. Del. Dec. 21, 2020).  Only after granting a new trial did the Court consolidate the new trial with the second action.

In short, Masimo disregards the substantial differences between Apple's respective claims in the Design Case and in the Utility Case.

### 2.    There Are Substantial Differences Between Apple's Claims In The Design Case And Masimo's Counterclaims In The Utility Case

Masimo also disregards the many differences between Apple's claims in the Design Case and Masimo's counterclaims in the Utility Case, which mirror the differences described in Apple's pending motion to sever in the Utility Case.  (Utility Case, D.I. 35 at 3-5, 9-15; D.I. 50 at 1-2, 5-6, 8-9.)  Masimo's motion to consolidate, like its opposition to the motion to sever, rests on the thin reed of its legally insufficient counterclaims.  But Masimo's allegations fail to state a *Walker Process* or inequitable conduct counterclaim; upon dismissal, Masimo's purported commonality assertions will necessarily evaporate.  (*See* Utility Case, D.I. 39, 40; Design Case, D.I. 54, 55.)

Masimo's counterclaims in the Utility Case raise fundamentally different issues than Apple's claims in either the Design Case or the Utility Case.  Apple's motion to sever filed in the Utility Case explained the wide-ranging issues raised by Masimo's 16 disparate counterclaims as well as the adverse consequences of permitting Masimo to inject those unrelated issues and counterclaims into the already-complex Utility Case.  (Utility Case, D.I. 35 at 3–5, 9–15; D.I. 50 at 1-2, 5-6, 8-9).  Among other things, Apple's motion to sever explained why Masimo's counterclaims did not arise from the same transaction or occurrence as Apple's patent infringement claims and raised significantly different legal and factual issues.  (*Id.*).

As set forth in that motion, Apple's patent infringement claims strictly compare the claims

of Apple's utility patents with the specific technical implementations of Masimo's infringing products.  (Utility Case, D.I. 35 at 3; D.I. 50 at 2.)  By contrast, Masimo's antitrust counterclaims raise a slew of ***antitrust-specific*** issues, such as definition of the relevant antitrust market, monopoly power, exclusionary conduct, antitrust injury, and antitrust standing.  (Utility Case, D.I. 35 at 4, 10-11; D.I. 40 at 1-13; D.I. 50 at 1-2.)  In addition, Masimo's false advertising counterclaims raise a slew of ***advertising-specific*** issues, such as whether Apple made any false or misleading statements, had any knowledge that any statements were false or misleading, deceived the intended audience, or caused any injury to Masimo.  (Utility Case, D.I. 35 at 4-5, 11; D.I. 50 at 5.)  Furthermore, Masimo's patent infringement claims are not related to Apple's patent infringement claims; the parties assert different patents that have no familial relationship and that have entirely different owners, inventors, prosecution records, and different accused products. (Utility Case, D.I. 35 at 5, 11-12; D.I. 40 at 9-16; D.I. 50 at 5-6.).

Apple's infringement claims in the Design Case and Masimo's counterclaims in the Utility Case are even more distinct.  Masimo's antitrust-specific and advertising-specific counterclaims have no bearing on the issue of whether W1 infringes Apple's Asserted Design Patents, and vice versa.  Moreover, the scope of discovery in the Design Case is narrow and limited relative to the scope of discovery in antitrust litigations.  *See, e.g.*, *Westinghouse Air Brake Techs. Co. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 149 (D. Del. 2019) ("antitrust litigation surely holds the potential for enormously costly and time-consuming discovery" (internal citation and quotations omitted).)

In addition, Masimo's counterclaim allegations in the Utility Case are legally insufficient and unlikely to survive Apple's motions to dismiss.  (Utility Case, D.I. 35 at 3–5, 9–15; D.I. 40 at 2–19; D.I. 50 at 1-2, 5-6, 8-9; Design Case, D.I. 55 at 6–20).  As a result, Masimo's counterclaims not only fail to raise sufficient commonalities, but any such purported commonalities would

disappear if the Court were to grant Apple's motion to dismiss.

Finally, Masimo is wrong that *Beacon Theaters* requires consolidation of the Design Case with the Utility Case.  (Design Case, D.I. 62 at 8-9.)  As discussed above, Masimo's facially deficient inequitable conduct allegations in the Design Case and *Walker Process* allegations in the Utility Case are unlikely to survive Apple's motions to dismiss, which would moot Masimo's argument.  (Utility Case, D.I. 40 at 16–20; Design Case, D.I. 55 at 16–20).  In any event, *Beacon Theaters* does not purport to apply to two different cases and in no way requires consolidating the Design Case with the Utility Case.  In *Beacon Theaters v. Westover*, the Supreme Court addressed "***joinder in one suit*** of legal and equitable causes."  359 U.S. 500, 510 (1959) (emphasis added).  None of the cases Masimo cites interpreted *Beacon Theaters* as applying to claims in two separate cases or otherwise relied on *Beacon Theaters* to consolidate two separate cases.

Masimo does not and cannot explain how *Beacon Theaters* purports to require consolidation of two separate, pre-existing actions.  *Complete Genomics* recently considered and rejected a similar argument in circumstances in which the defendant pleaded an equitable defense in one case and a factually overlapping legal counterclaim in the other.  *Complete Genomics, Inc. v. Illumina, Inc.*, No. 21-00217-WHO, 2021 WL 1197096, at *3-4 (N.D. Cal. Mar. 30, 2021) (staying *Walker Process* action).  The court held that "resolving the inequitable conduct defense in the Infringement Action prior to a jury trial on [the defendant's] *Walker Process* claim [in a different action] is permissible and would not violate [the defendant's] Seventh Amendment rights."  *Id.* at *3-4.  Like Masimo, the defendant in *Complete Genomics* brought a *Walker Process* claim in a separate action "rest[ing] on the same factual theory as an inequitable conduct defense . . . in the Infringement Action."  *Id.* at *1.  Like Masimo argues here (Design Case, D.I. 62 at 8), the *Complete Genomics* defendant argued "the Seventh Amendment requires that its legal *Walker*

14

*Process* claim in the antitrust action be determined before its inequitable conduct defense in the Infringement Action." *Complete Genomics*, 2021 WL 1197096, at \*3. The court rejected that argument, noting that "[t]he law does not require such an inefficient or absurd result." *Id.*

### B. Masimo Does Not And Cannot Meet Its Burden Of Demonstrating That The Court "Should" Consolidate The Design Case And The Utility Case

Masimo's opening brief purports to address only the threshold question of whether the Court could consolidate the Design Case and the Utility Case; notably, Masimo did not analyze the considerations relevant to the ultimate question of whether the Court *should* consolidate these cases. Here, the relevant considerations—*i.e.*, efficiency, expense, fairness, inconvenience, and delay—weigh heavily against consolidation. Masimo does not and cannot meet its burden of demonstrating that the Court should consolidate the Design Case and the Utility Case.

#### 1. Masimo Fails To Analyze The Considerations Pertinent To Whether The Court Should Consolidate The Design Case And The Utility Case

Masimo does not attempt to meet its burden of demonstrating that the Court should consolidate the simplified, streamlined Design Case with the already-unwieldly Utility Case. The issue of whether a court *could* consolidate cases based on a "common question of law or fact" is merely a threshold question of whether the court has discretion to consolidate in the first place. *See Emerson Elec.*, 2021 WL 663058, at \*2. That threshold question differs from the ultimate question of whether "considerations of efficiency, expense, and fairness"—including "the inconvenience, delay or expense" that might result from consolidation—demonstrate that the Court *should* indeed consolidate separate cases. *Id.*; *see also GI Sportz* at 2-3 ("[T]he mere existence of common issues does not automatically require consolidation, but rather the Court *must* balance such factors as the interest or efficiency and judicial economy gained through consolidation, against the delay or expense that might result from simultaneous disposition of separate actions.") (emphasis added) (Ex. 2).

15

Here, Masimo fails to analyze the considerations relevant to the pertinent question of whether the Court *should* consolidate the Design Case and the Utility Case—*i.e.*, efficiency, expense, fairness, inconvenience, and delay.  *See Emerson*, 2021 WL 663058, at *2; *Outten*, 281 F.R.D. at 196; *Bos. Sci.*, 2018 WL 6040261, at *1.  Masimo merely pays lip service to these considerations by sprinkling into its brief a few cursory, conclusory assertions that consolidation "would promote efficiency and fairness."  (Design Case, D.I. 62 at 7.)  Masimo does not explain *why* the required considerations demonstrate that consolidation is appropriate.

Masimo may not cure through its reply brief its failure to address in its opening brief these relevant factors regarding whether the Court should consolidate cases.  *See* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

### 2. Consolidation Would Cause Inefficiencies, Expense, And Inconvenience

Consolidation would not facilitate an efficient and orderly resolution of the parties' disputes.  Masimo's attempt to shoehorn all disputes filed by the parties in this District into a single, prolonged morass will result in an unmanageable judicial logjam, essentially guaranteeing a highly inefficient, expensive, and inconvenient mega-proceeding.

The Utility Case already involves many complex issues—Apple's six claims for Masimo's infringement of the Apple Asserted Utility patents plus Masimo's 31 disparate counterclaims, including Masimo's six non-patent counterclaims for violations of the Sherman Act, the Lanham Act, California's False Advertising Law, the Delaware Deceptive Trade Practices Act, and California's Unfair Competition Law, as well as Masimo's 10 patent infringement counterclaims on its own patents.  The Utility Case includes so many issues that, to facilitate case management, Apple filed a pending motion to sever Masimo's 16 disparate counterclaims (*e.g.*, Masimo's

antitrust, false advertising, and patent infringement claims.  (Utility Case, D.I. 34, 35, 50).

Masimo's attempt to inextricably chain the two cases would fatally exacerbate, rather than redress, the already-existing case management problem in the Utility Case.  *See, e.g., 10X Genomics*, Slip Op. at 2 ("The subject matter in these cases is already highly complex. . . . Including a claim of infringement by a separate party involving a different patent runs a very high risk of overcomplicating the proceedings. . . ") (Ex. 1); *Sygenta Seeds I*, 2004 WL 2002208, at *2 ("Adding another patent to the plaintiff's claims will only increase the case's complexity. . . . consolidation of the two cases would be more burdensome than beneficial."); *GI Sportz*, Slip Op. at 4 ("the need for consolidation is reduced because the same magistrate judge . . . is assigned to all three cases") (Ex. 2); *Westinghouse*, 330 F.R.D. at 149 ("disentangling Wabtec's earlier-filed patent infringement allegations from Siemens' [antitrust] Counterclaims will at least help Wabtec's patent case get to resolution on a much speedier timetable"); *Eurand Inc. v. Mylan Pharms. Inc.*, No. 08-889, 2009 WL 3172197, at *1-2 (D. Del. Oct. 1, 2009) (severing antitrust claims was "supported by the promotion of judicial economy and avoiding the injection of complex, unrelated and perhaps unnecessary issues into the patent infringement case."); *Complete Genomics*, 2021 WL 1197096 ("The law does not require such an inefficient or absurd result" as "delaying resolution of the Infringement Action by at least a year or more while the parties conduct antitrust discovery and other pretrial litigation").

Here, the parties' numerous disparate claims and counterclaims logically fall into three groupings: (1) Apple's infringement claims against Masimo with respect to the four Apple Asserted Design Patents, (2) Apple's infringement claims against Masimo with respect to the six Apple Asserted Utility Patents, and (3) Masimo's unrelated counterclaims against Apple, including its antitrust and false advertising counterclaims.  *See GI Sportz*, Slip Op. at 3 ("although the parties

are the same in the three cases and all the matters generally present a dispute over paintballs and paintball guns, the discrete issues presented in each case are distinct") (Ex. 2).  Efficiency would be best served through focused, manageable proceedings that address and adjudicate the parties' disputes in the context of the appropriate groupings in which they logically fall.  For example, as discussed above, design patent cases typically do not require a claim construction proceeding. Consolidation would not lead to any efficiencies with respect to claim construction, and would unnecessarily drag the Design Case through hurdles that are only pertinent to the Utility Case.

In short, bogging down the Design Case with the numerous complexities of the separate, sprawling Utility Case would undermine rather than facilitate the relevant considerations of efficiency, expense, and convenience.

### 3. Consolidation Would Cause Prejudicial Delays; Frustrate Fundamental Fairness; And Subject Apple to Additional, Avoidable Irreparable Harm

Consolidating the Design Case and the Utility Case also would delay resolution of the claims in each case.  *See GI Sportz*, Slip Op. at 4 ("if the cases were consolidated, the procedural posture of one case could stall the rest") (Ex. 2).  Tying these cases together will cause the streamlined Design Case to stall and likely will stall the Utility Case as well.  In the Design Case, these delays would unfairly allow Masimo to escalate its infringement while subjecting Apple to continuing irreparable harm.  (Design Case, D.I. 45 at 1, 5; D.I. 65 at 9–10).  Masimo fails to rebut Apple's showing of irreparable harm (*See* Design Case, D.I. 58 at 18; *see also* Design Case, D.I. 65 at 1–3) and does not even mention, let alone address, delay in its motion to consolidate.

Apple moved for an expedited trial to adjudicate liability for Masimo's design patent infringement **before** Masimo's planned expansion of W1 sales.  As noted in that motion, Masimo plans to increase its sales of W1 and other potentially infringing watches as early as "the latter half of 2023," and plans to sell those products through some of the same retail channels as Apple.

(Design Case, D.I. 45 at 1, 5, 7–12).  Masimo also projected that it would increase its consumer product base from 1,000-23,000 to "4 million devices worldwide" by the end of 2023.  (*Id.*)  As noted in a recent article, Masimo's nascent consumer expansion is already underway.  *See* Robert Archer, *Sound United Officially Rebrands as Masimo Consumer*, CEPRO (Mar. 8, 2023) (Ex. 4).

Apple seeks expedited relief so it may seek a post-trial injunction "***before*** Masimo expends further resources in significantly expanding its manufacturing and distribution infrastructure for W1" (Design Case, D.I. 45 at 17 (emphasis added)), and therefore with minimal prejudice to either party.  Masimo's motion to consolidate, which if granted would complicate and stall these proceedings, would unfairly deprive Apple of an expeditious resolution of the Design Case.  *See, e.g., Westinghouse*, 330 F.R.D. at 149 ("Wabtec rightly asserts that the complexity and cost inherent in antitrust litigation could serve to unnecessarily delay the resolution of its earlier-filed patent claims, were the [antitrust] Counterclaims not severed."); *10X Genomics*, Slip Op. at 2 ("The subject matter in these cases is already highly complex. . . . Including a claim of infringement by a separate party involving a different patent runs a very high risk of overcomplicating the proceedings. . . ") (Ex. 1); *Eurand*, 2009 WL 3172197, at *1 (bifurcating patent infringement and antitrust claims was "supported by the promotion of judicial economy and avoiding the injection of complex, unrelated and perhaps unnecessary issues into the patent infringement case"); *Complete Genomics*, 2021 WL 1197096, at *4 (rejecting proposal to "delay[] resolution of the Infringement Action by at least a year or more while the parties conduct antitrust discovery and other pretrial litigation" as "inefficient" and "absurd").

In practical terms, Apple proposed focused proceedings to adjudicate liability in the straightforward Design Case in approximately eight months.  (Design Case, D.I. 46, Exhibit R).  Apple's proposal is consistent with the past practice of Courts in this District.  (*See* Design Case,

D.I. 45 at 6–7).  Masimo, in contrast, proposes a trial in 2026.  (Ex. 3).  These unnecessary delays would subject Apple to *years* of additional, avoidable irreparable harm.

As explained in Apple's Motion to Expedite, the liability issues for the Design Case will require only limited discovery and pretrial proceedings.  (Design Case, D.I. 45, at 18-19).  Unlike the Design Case, the Utility Case (and Masimo's patent counterclaims) will require significant claim construction proceedings and discovery on varying, highly technical topics.  And in contrast to the limited discovery for the Design Case, courts generally recognize that antitrust discovery is expensive and time-consuming.  *Westinghouse*, 330 F.R.D. at 149; *Orthophoenix*, 2015 WL 1938702, at *1; *Akzona Inc. v. E.I. Du Pont de Nemours & Co*., 607 F. Supp. 227, 236 (D. Del. 1984).  Under Masimo's proposal to combine all issues into a single prolonged mega-proceeding, the limited discovery and pretrial issues for the Design Case will undoubtedly be swallowed and delayed by the sprawling, unfocused discovery Masimo will inevitably seek for its patent infringement, antitrust and other unrelated counterclaims.

Consolidating (and further complicating) these cases also would frustrate fundamental fairness.  The concomitant delays would unfairly allow Masimo to gain a foothold in the smart watch industry—using Apple's patented designs and hard-won reputation—subjecting Apple to irreparable harms in the interim.  (Design Case, D.I. 45 at 1, 5; D.I. 65 at 9–10).  Irreparable harms are, by definition, not remediable by an award of damages.  *See eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Masimo should not be permitted to evade liability and harm Apple by tying up these proceedings, conflating unrelated issues, and running out the clock.

## VII.  CONCLUSION

Masimo fails to satisfy its burden of demonstrating that the Court should consolidate the simple, streamlined Design Case and the Utility Case into a single, protracted mega-proceeding. Accordingly, the Court should deny Masimo's motion to consolidate.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ David E. Moore*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
Jamie L. Kringstein
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

*Attorneys for Plaintiff/Counter-Defendant*
*Apple Inc.*

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
   AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  March 10, 2023
10682844 / 12209.00051