# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 10X GENOMICS, INC., et al., | ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 22-cv-261-MFK |
| NANOSTRING TECHNOLOGIES, INC., | ) ) ) | |
| Defendant. | ) ) | |
| -------------------------------------------------- | ) ) | |
| NANOSTRING TECHNOLOGIES, INC., | ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| 10X GENOMICS, INC., | ) ) | |
| Defendant. | ) | |

**ORDER ON 10X GENOMICS' MOTION TO SEVER AND CONSOLIDATE
(FILED IN CASE NO. 22-CV-261) AND ON NANOSTRING TECHNOLOGIES,
INC.'S MOTION TO CONSOLIDATE (FILED IN CASE NO. 22-CV-1375)**

MATTHEW F. KENNELLY, District Judge:

10X Genomics and co-plaintiff President and Fellows of Harvard College (collectively 10X) have sued NanoString Technologies for patent infringement in Case No. 22-cv-261 (the 261 case). In the 261 case, 10X alleges infringement of five patents owned by Harvard and licensed by 10X. NanoString asserted as a counterclaim a claim that 10X was infringing a patent owned by NanoString, the '689 patent. 10X did not oppose adding this counterclaim but reserved the question of whether the counterclaim regarding the '689 patent should be tried together with 10X's patent infringement claims.

About 10 weeks after NanoString added the '689 infringement counterclaim in the

261 case, it filed Case No. 22-cv-1375 against 10X (the 1375 case).  The 1375 case concerns NanoString's '142 patent.  The '142 patent arises from the same patent application as NanoString's '689 patent.  In addition, NanoString's infringement claims against 10X regarding both the '142 and the '689 patents involve the same 10X product that is claimed to infringe.

10X has filed a motion in the 261 case asking to sever NanoString's counterclaim regarding the '689 patent from the 261 case and join it with the 1375 case.  NanoString opposes the motion and has moved (in the 1375 case) to consolidate the 261 case in its entirety with the 1375 case.

The Court grants 10X's motion (with one point reserved, noted below) and overrules NanoString's motion.  The subject matter in these cases is already highly complex, and conducting pretrial proceedings (e.g., claim construction), summary judgment proceedings, and a trial regarding the 10X patents that are involved in the 261 case is going to be complicated enough.  Including a claim of infringement by a separate party involving a different patent runs a very high risk of overcomplicating the proceedings in the 261 case.  For this reason, severing NanoString's infringement counterclaim is appropriate.

The only real downside to severing the NanoString infringement counterclaim is that the 261 case is, at this point, a bit further along than the 1375 case.  But any delay severance might cause with respect to the '689 infringement counterclaim is likely to be minimal.  In sum, severing the '689 infringement counterclaim from the 261 case and consolidating it with the 1375 case will promote expedition and economy and will cause no unfair prejudice.

By contrast, NanoString's proposal to combine the two cases in their entirety would be highly likely to cause unnecessary and unwarranted overcomplexity. Among other things, the Court believes it to be extraordinarily unlikely that a joint jury trial involving all of the infringement claims made by both sides in the two cases could be done in a manageable way.

Any scheduling hiccups that might result from taking the '689 infringement counterclaim out of the 261 case and adding it to the 1375 case can and should be addressed by way of proposed revisions to the case management schedule in the 1375 case. In addition, the Court acknowledges that there are witnesses who are common to both cases, and there is an interest in not making them appear twice, at least for depositions, unless that is not reasonably avoidable. This, too, should be addressed by way of proposed revisions to the case management schedules in the two cases. The parties are directed to confer on these points and are to submit a proposed revision by no later than February 3, 2022.

The Court reserves until later whether all claims in the 1375 case in its new form should be tried together as part of a single trial. That's a decision better made far closer to trial.

## Conclusion

In sum, 10X Genomics' motion to sever and consolidate (Case No. 22-cv-261, dkt. no. 65) is granted, and NanoString's motion to consolidate (Case No. 22-cv-1375, dkt. no. 16) is denied. NanoString's infringement counterclaim regarding the '689 patent, now part of Case No. 22-cv-261, is stricken without prejudice, and NanoString is directed to promptly file an amended complaint in Case No. 22-cv-1375 that includes

that claim of infringement.

Date:  January 24, 2023

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge

# EXHIBIT 2

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| GI SPORTZ, INC. and<br>GI SPORTZ DIRECT, LLC,<br><br>        Plaintiffs,<br><br>  v.<br><br>VALKEN, INC.,<br><br>        Defendant. | 1:16-cv-07170-NLH-KMW<br><br>**MEMORANDUM<br>OPINION & ORDER** |

**APPEARANCES**:

JOHN M. HANAMIRIAN
HANAMIRIAN LAW FIRM PC
40 EAST MAIN STREET
MORRESTOWN, NJ 08057

    *On behalf of Plaintiffs*

ANTHONY J. DIMARINO, III
EMMETT STEPHAN COLLAZO
A.J. DIMARINO, III, PC
41 GROVE STREET
HADDONFIELD, NJ 08033

    *On behalf of Defendant*

**HILLMAN, District Judge**

    WHEREAS, before the Court is the motion of Defendant, Valken, Inc., to consolidate three actions pending between Defendant and Plaintiff, GI Sportz, Inc. and GI Sportz Direct, LLC (hereinafter "GI"); and

    WHEREAS, the Federal Civil Procedure Rule governing consolidation of cases provides:

    a) Consolidation. If actions before the court involve a

> common question of law or fact, the court may:
>
>> (1) join for hearing or trial any or all matters at issue in the actions;
>> (2) consolidate the actions; or
>> (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a); and

WHEREAS, Rule 42 supplements the Court's "inherent power to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 80 (D.N.J. 1993) (citations and quotations omitted); and

WHEREAS, the mere existence of common issues does not automatically require consolidation, but rather the Court must balance such factors as the interest or efficiency and judicial economy gained through consolidation, against the delay or expense that might result from simultaneous disposition of separate actions, id.; and

WHEREAS, the actions Valken seeks to consolidate are:

1. This action, 1:16-cv-7170, which concerns Valken's alleged infringement of GI's registered trade dress associated with GI's Marballizer paintballs and a breach of a 2014 settlement agreement regarding those paintballs ("Marballizer case"); and

2. Action 1:17-cv-05040, which concerns GI's claims that Valken's "Code" branded paintball guns infringes three of GI's

2

patents and further infringes the trade dress of GI's Mini and Axe families of paintball markers ("Code case"); and

    3.   Action 1:17-cv-05590, which concerns GI's claims that Valken has infringed on GI's two patents for pneumatic assemblies for compressed gas operated paintball guns through Valken's V12 Airsoft Engine and compressed gas guns using the V12 Engine ("V12 case"); and

    WHEREAS, the Court is familiar with the claims, counterclaims, and issues involved in each of the three cases, and has considered the parties' arguments[1]; and

    WHEREAS, the Court finds that although the parties are the same in the three cases and all the matters generally present a dispute over paintballs and paintball guns, the discrete issues presented in each case are distinct and do not involve sufficient commonality to obtain the benefits of consolidation which are present when two or more cases involve common questions of law and facts; and

    WHEREAS, the Court further finds that the need for consolidation is reduced because the same magistrate judge – Judge Karen Williams - is assigned to all three cases, and Judge Williams has been efficiently and effectively managing the cases

---

[1] GI has opposed Valken's motion to consolidate.

3

without any delay; and

WHEREAS, the Court further finds that if the cases were consolidated, the procedural posture of one case could stall the rest: In this Marballizer case, currently pending is an appeal of the magistrate judge's decision denying Valken's motion to amend its counterclaims, as well as Valken's request to extend discovery; the Code case is set for a Markman hearing on October 7, 2019; in the V12 case, the Court has already held a Markman hearing and has issued a claim construction Opinion, but GI now seeks to amend its infringement contentions, a motion relating to which was recently filed; and

WHEREAS, the differing procedural postures of the three cases and the disparate pending motions and issues to be resolved in each case demonstrate why consolidation would not result in a more efficient resolution of the cases;

THEREFORE,

IT IS on this ___30th___ day of ___August___, 2019

ORDERED that the MOTION to Consolidate Cases by VALKEN, INC. [96] be, and the same hereby is, DENIED.

At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

4

# EXHIBIT 3

| EVENT | PROPOSED DEADLINE |
|---|---|
| Deadline for each party to serve initial disclosures pursuant to Rule 26(a)(1) (¶1) | February *, 2023 (mid) |
| Deadline for the parties to file a proposed protective order (¶3) | February *, 2023 (late) |
| Deadline for the parties to serve disclosures pursuant to Default Standard for Discovery, ¶ 3 | February *, 2023 (late) |
| Deadline for each party asserting patent infringement to identify all accused product(s), its damages model, as well as the asserted patent(s) that the accused product(s) allegedly infringe(s), and to produce the file history for each asserted patent (¶7(a)) | April *, 2023 (late) |
| Deadline for each party defending against a claim of patent infringement to produce core technical documents related to the accused product(s) sufficient to show how the accused product(s) work (¶7(b)) | May *, 2023 (late) |
| Deadline for each party asserting patent infringement to serve initial infringement contentions (¶7(c)) | June *, 2023 (late) |
| Deadline for each party defending against a claim of patent infringement to serve initial invalidity contentions, as well as produce the known related invalidating references (¶7(d)) | July *, 2023 (late) |
| Deadline for each party defending against a claim of patent infringement to serve initial non-infringement contentions | July *, 2023 (late) |
| Deadline for each party asserting patent infringement to serve initial response to invalidity contentions | August *, 2023 (late) |
| Deadline for joinder of other parties and amendment of pleadings (¶2) | September *, 2023 (early) |
| Deadline for the parties to exchange lists of claim terms/phrases and proposed constructions for claim construction (¶11) | September *, 2023 (late) |
| Deadline for the substantial completion of document production (¶8(b)) | December *, 2023 (mid) |
| Deadline for the parties to finally supplement the identification of all accused products and all invalidity references (¶14) | January *, 2023 (late) |
| Deadline for the close of fact discovery (¶8(a)) | May *, 2024 (mid) |
| Deadline for each party asserting patent infringement to serve final infringement contentions (¶7e) | June *, 2024 (mid) |

| EVENT | PROPOSED DEADLINE |
|---|---|
| Deadline for each party defending against a claim of patent infringement to serve final invalidity contentions (¶7(f)) | June *, 2024 (mid) |
| Deadline for each party defending against a claim of patent infringement to serve final non-infringement contentions | July *, 2024 (late) |
| Deadline for each party asserting patent infringement to serve final response to invalidity contentions | July *, 2024 (late) |
| Deadline for the parties to file joint claim construction chart (¶11) | August *, 2024 (mid) |
| Deadline for Plaintiff to serve opening claim construction brief (¶12) | September *, 2024 (mid) |
| Deadline for Defendants to serve answering claim construction brief (¶12) | October *, 2024 (mid) |
| Deadline for Plaintiff to serve reply claim construction brief (¶12) | October *, 2024 (late) |
| Deadline for Defendants to serve sur-reply claim construction brief (¶12) | November *, 2024 (mid) |
| Deadline for the parties to file their joint claim construction brief (¶12) | November *, 2024 (late) |
| Deadline to file optional technology tutorial (¶10) | November *, 2024 (late) |
| Claim Construction Hearing (¶13) | December *, 2024 (mid) |
| Deadline for opening expert reports for each party that bears the initial burden of proof (¶8(f)(i)) | February *, 2024 (mid) |
| Deadline for rebuttal expert reports (¶8(f)(i)) | April *, 2025 (early) |
| Deadline for reply expert reports (¶8(f)(i)) | May *, 2025 (early) |
| Deadline for the completion of expert discovery (¶8(iv)) | June *, 2025 (late) |
| Deadline for the parties to file all case dispositive and *Daubert* motions, as well as an opening brief, statement of facts, and affidavits, if any (¶15) | July *, 2025 (late) |
| Deadline for the parties to oppose case dispositive and *Daubert* motions (¶15) | August *, 2025 (late) |
| Deadline for the parties to reply to case dispositive and *Daubert* motions (¶15) | September *, 2025 (mid) |
| Deadline for Plaintiff to serve a draft pretrial order (¶18; L.R. 16.3(d)(1)) | October *, 2025 (early) |
| Deadline for parties to serve motions *in limine* (¶17) | October *, 2025 (early) |
| Deadline for parties to serve oppositions to motions *in limine* (¶17) | October *, 2025 (late) |
| Deadline for parties to serve replies to motions *in limine* (¶17) | November *, 2025 (early) |

| EVENT | PROPOSED DEADLINE |
|---|---|
| Deadline for Defendants to serve response to Plaintiff's draft pretrial order (¶18; L.R. 16.3(d)(1)) | November *, 2025 (early) |
| Deadline for parties to file joint pretrial order (¶18) | November *, 2025 (late) |
| Deadline for the parties to file proposed jury instructions, voir dire, and verdict forms | December *, 2025 (mid) |
| Pretrial Conference | January *, 2026 |
| Trial | February *-*, 2026 |

# EXHIBIT 4




TOPICS  PRODUCTS  RESOURCES  SUBSCRIBE  DISCOVER

SUBSCRIBE | CEDIA EXPO | CEPro-iQ

CE PRO'S FEATURED TOPIC: > **OUTDOOR TECHNOLOGY**

**TOP STORY**



Are Solar Carports Your Next Niche Market?

Former iRoom CEO Marc Hofer sees potential market for integrators installing solar car ports with built-in EV charging stations.

**LATEST IN OUTDOOR TECHNOLOGY**

7 Outdoor Entertainment Areas to Make You Rethink the Home Theater

Pure Resonance Audio S6.1 and S8.1 Speakers

CEDIA Announces 2023 CEDIA Smart Home Awards

Leon 2022 Install of the Year Award Winners Announced

See All Outdoor Technology

**FEATURED RESOURCE**



CE Pro 2023 Outdoor Technology Deep Dive

Download the report now to take a "deep dive" into the challenges of outdoor technology.

PRESENTED BY

   

AMPLIFIERS/RECEIVERS | AUDIO/VIDEO | HEADPHONES | HOME THEATER | MULTIROOM AV | NEWS | SPEAKERS/SUBWOOFERS | WIRELESS AV

MARCH 8, 2023

# Sound United Officially Rebrands as Masimo Consumer

Masimo Consumer division includes Marantz, HEOS, Denon, Classé, Bowers & Wilkins, Polk Audio and Definitive Technology.

Robert Archer





Blair Tripodi of Masimo Consumer says the custom installation market is vitally important to the company.

Sound United has officially rebranded as Masimo Consumer. Masimo acquired the Sound United brands, which include Marantz, HEOS, Denon, Classé, Polk Audio, Bowers & Wilkins and Definitive Technology, in February 2022. More recently, Masimo announced it would be expanding the HEOS platform into its large healthcare division. Blair Tripodi, Chief Operating Officer, Masimo Consumer, spoke with CE Pro about the changes at the company and what lies ahead.

**CE Pro: Why did the executive team behind the Marantz, HEOS, Denon, Classé, Polk Audio, Bowers & Wilkins, and Definitive Technology brands decide to rebrand the group from Sound United to Masimo Consumer?**

**Blair Tripodi:** The corporate evolution began last year in April and the name Masimo Consumer encapsulates the entire consumer division for Masimo. This division oversees the legacy Sound United audio business and brands, and now includes Masimo's expansion into consumer health. Our collective division and company aspirations are to improve lives beyond the way consumers experience sound, and continuing with the legacy name didn't encapsulate everything we're setting out to accomplish.

**CE Pro: How if any impact will the rebranding have on custom integrators that carry the brands?**

**Tripodi:** Little to no impact on our dealer partners. As the Masimo Consumer division continues to grow, the end consumer will remain at the center of our combined focus, across audio and health. We will bring additional innovation to consumers through our dealer family by combining Masimo's 30-year expertise in signal processing and non-invasive monitoring with the world-class acoustic engineering from our audio businesses. Our audio brands will continue to operate individually, as they possess the value and trust desired by our consumers around the world. In doing so, we will remain a go-to leader offering a one-stop audio portfolio for current and future dealers.

> "The name Masimo Consumer encapsulates the entire consumer division for Masimo. This division oversees the legacy Sound United audio business and brands, and now includes Masimo's expansion into consumer health."
> BLAIR TRIPODI, MASIMO CONSUMER

**CE Pro: Masimo Consumer's brands offer solutions that range from amplifiers and receivers to architectural loudspeakers; how important is the custom electronics market to Masimo Consumer in 2023 and beyond?**

**Tripodi:** The existing audio market, which is inclusive of custom integrators, is a vitally important area for Masimo Consumer. We see tremendous opportunity to continue driving innovation up and down the category. In addition, we're excited about creating new consumer experiences through sound and at the same time improving the lives of consumers by combining our legacy in home audio with Masimo's expertise in non-invasive monitoring. It is absolutely imperative that we continue to grow and nurture this section of the roadmap to facilitate those relationships.

3/10/23, 12:60 PM
Case 1:22-cv-01378-MN-JLH Document 57-1 Filed 03/10/23 Page 18 of 20 PageID #: 3109
fwd: Sound United Officially Rebrands as Masimo Consumer - CE Pro - www.cepro.com



## Meet the Next Generation of Home Automation Remotes

Remote controls continue to evolve at a rapid pace. The days of integrators providing remote controls simply for the TV have migrated to full home automation control of lights, shades, security, HVAC and audio/video in a single form factor. Join this free one-hour CE Pro webinar to hear from a panel of experts who will delve into finding the right remote that can effectively control all the subsystems in a home and empower consumers to customize the solution, while at the same time allowing integrators balance their service requirements. **Register Now!**

**CE Pro**: HEOS was an important acquired technology platform to Masimo and its core business of medical devices. Could we see Masimo entering the emerging wellness category that is building through technologies such as circadian lighting and indoor air quality?

**Tripodi**: The current focus for the HEOS platform in the health and wellness segment is to give users the ability to capture secure, continuous health data throughout their home and share it with clinicians and loved ones. In December, HEOS expanded to be more than just a music resource by proving users an always-on connection to the Masimo Health secure cloud through select Masimo personal products and our Denon Home line of HEOS-enabled audio products. This is just the first step in connecting the hospital to the home.

**CE Pro: With Denon and Marantz announcing new products to address home theater, can we expect new solutions from a brand like Classé for today's two-channel stereo?**



**Related:** Sound United Parent Expands Denon HEOS Reach into Healthcare Sector

**Tripodi:** Classé has earned a coveted position among the very highest segment of audio brands worldwide and will continue to advance its performance with an exciting product portfolio. Perhaps not exclusively, the focus will remain dedicated to the stereo two-channel listening market with updates to our Delta PRE platform later this year. As we meticulously engineer our next generation of equipment, we will continue to be focused on satisfying discerning listeners' most demanding requests.

**CE Pro**: What can dealers expect in the way of loudspeakers from Definitive Technologies and Bowers & Wilkins this year to address home theater, multiroom audio, stereo and even commercial possibly?

**Tripodi:** The Definitive Technology and Bowers & Wilkins brands will continue to push the envelope in the loudspeaker category through innovation, performance and design. Dealers have already begun to get a sense of what's to come with both brands and let's just say, it's going to be an exciting year.

## ABOUT THE AUTHOR



Follow Robert Archer:
✉ 🐦

Bob is an audio enthusiast who has written about consumer electronics for various publications within Massachusetts before joining the staff of CE Pro in 2000. Bob is THX Level I certified, and he's also taken classes from the Imaging Science Foundation (ISF) and Home Acoustics Alliance (HAA). Bob has also served as the technology editor for CE Pro's sister publication Commercial Integrator. In his personal time beyond his family, he's studied guitar and music theory at Sarrin Music Studios in Wakefield, Mass., and he also studies Kyokushin karate at 5 Dragons and Brazilian jiu-jitsu at Binda Brazilian Jiu Jitsu.

View Robert Archer's complete profile

### ARTICLE TOPICS

Amplifiers/Receivers · Audio/Video · Headphones · Home Theater · Multiroom AV · News · Speakers/Subwoofers · Wireless AV

### ARTICLE TAGS

Bowers & Wilkins · Classe · Definitive Technology · Denon · HEOS · Marantz · Masimo · Masimo Consumer · Polk Audio · Sound United

### SHARE

3/10/23, 12:50 PM
Case 1:22-cv-01378-MN-JLH   Document 57-1   Filed 03/10/23   Page 19 of 29 PageID #: 3110
fireShotCapture006-ScreenUnitedOfficiallyRebrandsasMasimoConsumer-CEPro-www.cepro.com

   

## RELATED POSTS













## Content Types
- News
- Products
- Projects
- Companies
- Downloads
- Webcasts
- Podcasts
- Events

## Specials
- CEDIA EXPO
- CE Pro 100
- CE Pro Summit
- Awards Programs

## Company Info
- About
- Contact Us
- Customer Service
- Media Solutions & Advertising

## Subscribe
- Magazine
- Newsletters
- Digital Edition

## Connect
- Twitter
- Facebook
- LinkedIn
- YouTube
- RSS Feed

## Categories

**AUDIO/VIDEO**
- AV Accessories
- AV Racks
- Amplifiers/Receivers
- Cabling
- Displays
- Furniture
- Mounts/Lifts
- Multiroom AV
- Projector Screens
- Speakers/Subwoofers
- Wireless AV

**CONTROL**
- Central Vac
- Energy/Power
- Interfaces/Devices
- HVAC/IAQ
- Lighting
- Motorized Shades
- Whole-House Systems

**NETWORKING**
- Cellular
- Devices/Equipment
- Wireless
- Wiring/Installation

**SECURITY**
- Access Control
- Alarms/Sensors
- Services/Platforms
- Surveillance Cameras

**BUSINESS SUPPORT**
- Associations/Buying Groups
- Distributors/Reps
- Operations
- Recurring Revenue
- Research
- Sales/Marketing
- Software/Services
- Tools/Testers

**MARKETS**
- Builders
- Commercial
- Design
- Europe
- Outdoors
- Wellness

FOLLOW US ON

POWERED BY EMERALD

© 2023 Emerald X, LLC. All Rights Reserved.

ABOUT   CAREERS   TERMS OF USE   PRIVACY POLICY