# IN THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| APPLE INC.,<br><br>       *Plaintiff*,<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>       *Defendants*. | Civil Action No. 22-1378-MN-JLH |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS MASIMO CORPORATION'S COUNTERCLAIMS AND STRIKE ITS INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE**

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Stephen W. Larson
Jared C. Bunker
Matthew Pham
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Fax
joe.re@knobbe.com
steve.jensen@knobbe.com
stephen.larson@knobbe.com
ben.katzenellenbogen@knobbe.com
jared.bunker@knobbe.com Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Fax
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

Dated: March 28, 2023

San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION AND SUMMARY OF ARGUMENTS ......................................................... 1

ARGUMENT ............................................................................................................................ 2

I.      Masimo States Monopolization and Attempted Monopolization Claims ......................... 2

        A.      Masimo Plausibly Alleges Antitrust Injury ......................................................... 3

        B.      Masimo Plausibly Defines A Relevant Antitrust Market ..................................... 3

        C.      Masimo Plausibly Alleges Apple Has Monopoly Power ..................................... 5

        D.      Masimo Plausibly Alleges Anticompetitive Conduct .......................................... 6

                1.      *Walker Process* Liability ........................................................................ 6

                2.      Monopoly Leveraging ............................................................................. 8

                3.      Apple's False Advertising ....................................................................... 9

                4.      Apple's Predatory Infringement ............................................................. 10

II.     Masimo States False Advertising Claims ...................................................................... 12

        A.      Masimo States a Lanham Act Claim .................................................................. 12

                1.      Masimo Alleges False and Misleading Statements ................................. 12

                        i.      Apple's Blood Oxygen Advertising Is False And
                                Misleading.................................................................................. 12

                        ii.     IRN and ECG Advertising Is False And Misleading.................. 13

                        iii.    Apple's Fine Print Does Not Immunize Apple From
                                Liability...................................................................................... 14

                2.      Masimo Alleges Proximate Injury ......................................................... 15

        B.      Masimo States False Advertising Claims Under State Law ................................ 16

III.    Masimo States California Unfair Competition Claims .................................................... 17

IV.     Masimo States Inequitable Conduct Claims and Affirmative Defenses ......................... 17

## TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

A.    Masimo Plausibly Alleges Myers Had a Duty of Disclosure ............................. 17

B.    Masimo Plausibly Alleges Myers' Knowledge and Intent ................................. 19

V.    Masimo States Willful and Indirect Infringement Claims ................................ 19

VI.   Apple's Request for Dismissal With Prejudice Is Unsupported .................................... 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page No(s).**

*AliveCor, Inc. v. Apple Inc.*,
   592 F. Supp. 3d 904 (N.D. Cal. 2022) ...................................................................................8

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*,
   603 F.3d 967 (Fed. Cir. 2010).............................................................................................18

*Ball Mem'l Hospital, Inc. v. Mut. Hosp. Ins., Inc.*,
   784 F.2d 1325 (7th Cir. 1986) ..............................................................................................4

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D.N.J. 2009) ....................................................................................15

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007).............................................................................................5, 6

*Brown Shoe Co. v. U.S.*,
   370 U.S. 294 (1962).............................................................................................................5

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*,
   2021 WL 5449073 (N.D. Cal. Nov. 22, 2021) ...................................................................18

*Christy Sports, LLC v. Deer Valley Resort Co.*,
   555 F.3d 1188 (10th Cir. 2009) ............................................................................................5

*Coronavirus Reporter v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .....................................................................8

*Dependable Sales & Serv., Inc. v. Truecar, Inc.*,
   2016 WL 79992 (S.D.N.Y. Jan. 6, 2016) ..........................................................................15

*Dole v. Arco Chem. Co.*,
   921 F.2d 484 (3d Cir. 1990)...............................................................................................20

*Eisai, Inc. v. Sanofi Aventis U.S.*,
   821 F.3d 394 (3d Cir. 2016).................................................................................................9

*EMC Corp. v. Pure Strategies, Inc.*,
   2014 WL 5795557 (D. Del. Nov. 5, 2014) ...................................................................17, 18

*Epic Games, Inc. v. Apple Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021) ...............................................................................17

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page No(s).**

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)..........................................................................17

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
  2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) ........................................................5

*FTC v. Facebook*,
  560 F. Supp. 3d 1 (D.D.C. 2021) ..........................................................................6

*Guardant Health, Inc. v. Foundation Medicine, Inc.*,
  2020 WL 2461551 (D. Del. May 7, 2020)..............................................................7

*Gunawardana v. Am. Veterinary Med. Ass'n*,
  2021 WL 4951697 (7th Cir. Oct. 25, 2021)..........................................................10

*Hicks v. PGA Tour Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ...............................................................................5

*Honeywell Int'l Inc. v. Maltseff*,
  2014 WL 3360334 (W.D. Wash. July 9, 2014) .....................................................19

*Int'l Code Council, Inc. v. UpCodes Inc.*,
  43 F.4th 46 (2d Cir. 2022) ....................................................................................15

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003)..........................................................................6, 9, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...............................................................................................16

*Liqwd, Inc. v. L'Oreal USA*,
  2019 WL 10252725 (D. Del. Apr. 30, 2019) ........................................................16

*Multiple Energy Techs., LLC v. Under Armour, Inc.*,
  2021 WL 807722 (W.D. Pa. Mar. 3, 2021) .......................................................5, 20

*Novartis Consumer Health, Inc., v. Johnson & Johnson-Merck Consumer
  Pharms. Co.*,
  290 F.3d 578 (3d Cir. 2002)...................................................................................15

*Oltz v. St. Peter's Cnty. Hosp.*,
  861 F.2d 1440 (9th Cir. 1988) ................................................................................5

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
    2021 WL 2188219 (D. Del. May 28, 2021)................................................................16

*Pernod Ricard USA, LLC v. Bacardi U.S.A.*,
    653 F.3d 241 (3d Cir. 2011)................................................................14

*Philadelphia Taxi Ass'n v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018)................................................................10

*Polara Eng'g, Inc. v. Campbell Co.*,
    2014 WL 12584441 (C.D. Cal. Nov. 4, 2014)................................................................18

*Queen City Pizza Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)................................................................5

*Retractable Technologies, Inc. v. Beckton Dickinson & Co.*,
    842 F.3d 883 (5th Cir. 2016)................................................................11

*Santana Prods. v. Bobrick Washroom Equipment*,
    401 F.3d 123 (3d Cir. 2005)................................................................9

*Simon & Simon, PC v. Align Tech., Inc.*,
    2020 WL 1975139 (D. Del. Apr. 24, 2020)................................................................8

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    2019 WL 6841992 (C.D. Cal. Oct. 30, 2019)................................................................17

*Stiles v. Wal-Mart Stores, Inc.*,
    2019 WL 1429651 (E.D. Cal. Mar. 29, 2019)................................................................11

*Synscort, Inc. v. Sequential Software, Inc.*,
    50 F. Supp. 2d 318 (D.N.J. 1999)................................................................5, 6

*Synthes, Inc. v. Emerge Med., Inc.*,
    2012 WL 4473228 (E.D. Pa. Sept. 28, 2012)................................................................6

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
    2022 WL 612669 (9th Cir. Mar. 2, 2022)................................................................15, 16

*TransWeb, LLC v. 3M Innovative Props.*,
    812 F.3d 1295 (Fed. Cir. 2016)................................................................3

## TABLE OF AUTHORITIES
### (cont'd)

**Page No(s).**

*U.S. v. American Tobacco Co.*,
    221 U.S. 106 (1911)................................................................................................................11

*U.S. v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)..................................................................................................................4

*U.S. v. Grinnell Corp.*,
    384 U.S. 563 (1966)..................................................................................................................4

*Walker Process Equip. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965).......................................................................................................1, 3, 6, 7

*WCM Indus., Inc. v. IPS Corp.*,
    721 Fed. App'x 959 (Fed. Cir. 2018).....................................................................................20

*Weiss v. York Hospital*,
    745 F.2d 786 (3d Cir. 1984)...................................................................................................10

## OTHER AUTHORITIES

6 Del. C. § 2532 ....................................................................................................................16

37 C.F.R. § 1.32 ....................................................................................................................18

37 C.F.R. § 1.56 ..............................................................................................................17, 18

Areeda, Phillip et al, <u>Antitrust Law</u> (5th ed. 2022)...............................................................9, 12

Lanham Act.......................................................................................................................12, 15

Fed. R. Civ. P. 15................................................................................................................20

## INTRODUCTION AND SUMMARY OF ARGUMENTS

In response to Masimo releasing its pioneering W1 watch, Apple released a torrent of litigation.  Apple filed two Delaware lawsuits asserting numerous patents in an attempt to prevent the W1 from competing against the Apple Watch.  Dkt. 15, Counterclaims (hereinafter "CC") ¶ 205.  Apple even sought expedited discovery, remarkably arguing that competition on the merits may result in the W1 capturing as much as "100%" of the market.  *Id.* ¶ 10.  Apple's own actions and statements confirm Apple is seeking to exclude the competitor most able to provide a competitive check, open up the health watch market, and eliminate Apple's monopoly power.  *Id.* ¶¶ 9-10.  Excluding Masimo at this critical juncture in the health watch market will eliminate competition, bolster Apple's monopoly power, increase prices, and result in fewer customer choices and inferior products.  *Id.* ¶¶ 209-11.  Apple's attempt to use fraudulently-obtained patents to exclude a competitor and bolster Apple's monopoly power is classic unlawful monopolization under *Walker Process Equip. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 173–74 (1965).

Masimo also plausibly alleges a variety of other Apple anticompetitive conduct, including Apple:  (1) leveraging its monopoly power over iOS app distribution to harm competition by Masimo's W1 in the separate market for health watches; (2) engaging in a campaign of false advertising to misrepresent the Apple Watch's performance; and (3) pilfering Masimo's technology through Apple's widely-recognized practice of so-called "efficient" (but in reality predatory) infringement.  Masimo's pleading explains in detail why each category of conduct, individually and collectively, harms competition.  *See, e.g.,* CC ¶¶ 204-15.

Rather than address Masimo's allegations, Apple repeatedly invites this Court to apply bright-line rules from other circuits that differ from the law in this circuit.  Apple also repeatedly asks the Court to draw inferences in Apple's favor based on documents outside the pleadings.  For

example, Apple attacks Masimo's inequitable conduct allegations by asking the Court to look outside the pleadings to find as a matter of law that Apple's Chief IP Counsel, Myers, was not sufficiently involved in patent prosecution matters.  But the PTO's website lists Myers as one of few Apple inside counsel with "Power of Attorney" for the challenged Utility Patents.  Horne Decl., Exs. 1-3.[1]  Masimo plausibly alleges Myers (1) asserted key references against Masimo and AliveCor patents during *inter partes* review ("IPR") and (2) withheld the references during prosecution of related Apple patents.  CC ¶¶ 112-13, 120, 128-30, 138-39.

Apple similarly asks the Court to rely on documents and fine-print disclaimers outside the pleadings to rule as a matter of law that its advertisements were not false and misleading.  In doing so, Apple ignores Masimo's well-pleaded allegations of consumers actually being misled.  Apple also quibbles with Masimo's interpretation of studies analyzing the Apple Watch's performance.  Such arguments do not support dismissal, where all well-pleaded allegations must be taken as true.

Apple further asks the Court to look outside the pleadings to find no willful infringement because Masimo's discovery responses identifying Masimo's patents were labeled Attorneys' Eyes Only.   But Apple fails to explain why its attorneys could not share the mere existence of these publicly available patents with Apple.  Apple also never asserts it was truly unaware of the patents.  And for good reason: Apple repeatedly ***produced*** copies of Masimo's patents in a separate case.  The Court should deny Apple's motion to dismiss.

## ARGUMENT

### I.  Masimo States Monopolization and Attempted Monopolization Claims

---

[1] Exhibits are appended to the declaration of Brian Horne.  All emphasis added unless indicated otherwise.

### A.   Masimo Plausibly Alleges Antitrust Injury

Apple studiously ignores Masimo's voluminous allegations of antitrust injury and standing. CC ¶¶ 216-22.  For example, Apple's assertion of fraudulent patents "has forced Masimo to expend substantial amounts of money, time, and human resources to defend this action." *Id.* ¶ 216.  The Federal Circuit has held that such fees "are both injury-in-fact and antitrust injury." *TransWeb, LLC v. 3M Innovative Props.*, 812 F.3d 1295, 1309 (Fed. Cir. 2016).

Apple claims Masimo alleges "injuries to Masimo alone." Mot. at 3.  Not so.  Masimo explains how excluding the W1 will eliminate competition, bolster Apple's monopoly power, increase prices, and result in fewer choices and inferior products. CC ¶¶ 208-11.  Apple also argues Masimo must allege it was already "excluded entirely" from the market. Mot. at 3.  That misunderstands *Walker Process* claims, which focus on the anticompetitive effects that would result ***if*** the patentee were to succeed in enforcing fraudulently obtained patents. *See TransWeb*, 812 F.3d at 1309 (affirming Delaware jury's *Walker Process* verdict based on anticompetitive effects that "***would have*** resulted ***had*** 3M succeeded in its suit").  Apple also ignores Masimo's allegations explaining why Apple's other conduct harms competition and Masimo. CC ¶¶ 209-22.  Masimo's allegations are nothing like those in Apple's cases, which alleged harm to plaintiff alone. Mot. at 2-3 (citing *Mathews*, *Bocobo*, *Prescient* and *Host*).

### B.   Masimo Plausibly Defines A Relevant Antitrust Market

Apple attacks Masimo's market allegations, asking what "physiological parameter measuring capabilities make a device a health watch instead of a fitness tracker?  Why not pulse or heart rate?" Mot. at 4.  But Masimo's complaint answers Apple's questions, explaining that health watches provide advanced health tracking parameters—such as oxygen saturation and ECG—that distinguish them from fitness trackers with basic features such "pulse or heart rate," CC ¶ 166.  Masimo cites an analyst differentiating between medical-oriented devices and casual

fitness devices. *Id*. ¶ 169. Masimo alleges why devices with basic fitness features are not reasonably interchangeable substitutes based on a lack of cross-elasticity of demand and the hypothetical monopolist test. *Id*. ¶¶ 166-71.

Apple next argues that Masimo implausibly excludes watches that do not measure physiological parameters but have "the ability to send and receive messages, take phone calls, or view a calendar." Mot. at 5. But Apple fails to explain why Masimo's allegations are implausible. In the related companion case, Apple's alleged economist relied on an analysis discounting non-physiological features such as "phone calls…text messages…[and] alarms, timers, reminders" when opining Apple will sustain "irreparable harm" by Masimo's W1 sales. *See* C.A. 22-1377, Dkt. 51-4 (Ex. O), ¶¶ 70, 72. Apple's economist even relied on an assertion that Masimo's W1—which does not include such features—may command a "***100%***" share. *Id*. ¶ 75.[2]

Apple also attacks Masimo's market because it is directed to watches, as opposed to other devices that measure physiological parameters. Mot. at 5. But Apple merely disagrees with Masimo's allegations, failing to show they are implausible. *Id.* Apple's economist exclusively discussed smartwatches when opining Apple will be irreparably harmed by Masimo's W1 sales. *See* Dkt. No. 51-4 (Ex. O). He never suggested there would be competition from non-watches.

Apple's cases are inapposite for many reasons. *See U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 379 (1956) (reviewing market findings after "lengthy trial"); *Ball Mem'l Hospital, Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1331 (7th Cir. 1986) (reviewing court's "extensive findings of fact"); *U.S. v. Grinnell Corp.*, 384 U.S. 563, 573 (1966) (affirming market, observing "[t]here are, to be sure, substitutes" but none "operate on the same level" as the relevant products

---

[2] Before the International Trade Commission, Apple repeatedly argued the W1 is an "aspirational" product contrived for jurisdiction.

"so as to meet the interchangeability test"); *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922 at *5, 8 (E.D. Pa. Aug. 9, 2002) (plaintiff failed to allege lack of reasonably interchangeable alternatives); *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1194 (10th Cir. 2009) ("nothing to suggest" plaintiff's market limited to "one small component" of overall product); *Synscort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 333 (D.N.J. 1999) (alleged market did not include acknowledged comparable products); *Queen City Pizza Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997) (market implausibly limited to Domino's Pizza ingredients and cups); *Hicks v. PGA Tour Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (alleged golf advertising submarket excluded "commercials during golf-related television programs"); *Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2021 WL 807722 at *2 (W.D. Pa. Mar. 3, 2021) (plaintiff failed to explain what "clothing or type of clothing" was in market).

Apple also misconceives the role of defining a market. "Defining the market is not the aim of antitrust law; it merely aids the search for competitive injury." *Oltz v. St. Peter's Cnty. Hosp.*, 861 F.2d 1440, 1448 (9th Cir. 1988). Apple never explains why Masimo's claims would fail if the market were defined more broadly or narrowly. Apple also ignores Masimo's alternative allegation of a health watch **sub**market. *Compare* CC ¶¶ 166-72, *with Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962) ("practical indicia" establish submarket). Masimo's allegations are more than sufficient to define a relevant market or submarket.

### C.  Masimo Plausibly Alleges Apple Has Monopoly Power

To establish "monopoly power, a plaintiff typically must plead and prove that a firm has a dominant share in a relevant market, and that significant 'entry barriers' protect that market." *Broadcom Corp. v. Qualcomm Inc.,* 501 F.3d 297, 307 (3d Cir. 2007). Apple does not dispute that Masimo plausibly alleged significant entry barriers. Apple merely challenges Masimo's market share allegations. But those allegations are plausible and based on numerous third-party sources.

First, Masimo cites analysts that estimated Apple's share of U.S. smart watch sales exceed 90%. CC ¶ 184. Second, Masimo cites analyst estimates that Apple's global market share of smart watches is about 50%. *Id*. Masimo then explains that brands like Huawei and Samsung are more popular overseas, so one would expect Apple's U.S. market share to be significantly greater than its worldwide share. *Id*. Third, Masimo explains that Apple's share of the health watch market would be higher than Apple's share of the broader smart watch market, "including because the health watch market excludes smart watches that lack physiological measurement features." *Id*. Based on these allegations, Masimo alleges Apple's market share "exceeds 70% and could exceed 90%." *Id*. Masimo's allegations are plausible. Apple's own economist opined that "the Apple Watch [is] a leading smartwatch in the market." *See* C.A. 22-1377, Dkt. No. 51-4 (Ex. O), ¶ 32. He expects "Apple will again be the leading smartwatch sold in 2023." *Id*. ¶ 33.

Apple cites cases that addressed conclusory or erroneous allegations. *See FTC v. Facebook*, 560 F. Supp. 3d 1, 18 (D.D.C. 2021) (conclusory allegation of market share); *Synscort*, 50 F. Supp. 2d at 330 (conclusory allegation defendant "controls the majority" of market); *Synthes, Inc. v. Emerge Med., Inc.*, 2012 WL 4473228 at *11 (E.D. Pa. Sept. 28, 2012) (plaintiff alleged market share in wrong market). Apple identifies no such flaw here. Nor does Apple dispute that a 70-90% share is large enough to establish monopoly power. In the alternative, Masimo plausibly alleges there is at least a dangerous probability Apple will acquire such monopoly power, supporting attempted monopolization. CC ¶ 249.

### D.     Masimo Plausibly Alleges Anticompetitive Conduct

#### 1.     *Walker Process* Liability

Having plausibly alleged monopoly power, Masimo need only allege anticompetitive conduct to state Section 2 claims. "Numerous cases hold that the enforcement of the legal monopoly provided by a patent procured through fraud may violate § 2." *LePage's Inc. v. 3M*,

324 F.3d 141, 152 (3d Cir. 2003).  Apple argues Masimo's *Walker Process* allegations fail because Masimo's inequitable conduct allegations are inadequate.  First, Apple does not challenge Masimo's allegations as to Apple's design patents.  *See* Mot. at 7, 16-19; CC ¶¶ 44-67.[3]  Second, Masimo plausibly alleges fraud as to Apple's utility patents.  *See infra*, Section IV.

Apple argues that Masimo "allege[s] no harm to competition."  Mot. at 7.  That is incorrect. As discussed, Apple is asserting fraudulently obtained patents to exclude the very competitor most able to provide a competitive check against Apple.  CC ¶¶ 9-10.  Contrary to Apple's argument, Masimo need not show it has already been excluded.  *See Guardant Health, Inc. v. Foundation Medicine, Inc.*, 2020 WL 2461551 at *11 (D. Del. May 7, 2020) (denying summary judgment even though claimant was not yet excluded because "In a *Walker Process* claim…the focus is on harm to competition that ***will result*** if [the patentee's] lawsuit is successful.").  Apple's non-*Walker Process* cases are inapposite. Mot. at 7-8 (citing *Astra Zeneca* and *Otsuka*).

Apple also argues Masimo's claims fail because Apple asserted some patents not currently accused of fraud.  Mot. at 8.  But Masimo alleges those patents are invalid and not infringed.  CC ¶¶ 378-82, 393-97, 398-402 (noninfringement), 408-12, 423-27, 428-32 (invalidity); C.A. 22-1377, Dkt. 31, CC ¶¶ 12-15 (noninfringement), 16-19 (invalidity).  Whether Apple is entitled to exclude Masimo with those patents presents factual issues that cannot be resolved on the pleadings. *See Guardant Health, Inc. v. Foundation Medicine, Inc.*, 2020 WL 2461551 at *16 n.18, n.21 (D. Del. May 7, 2020) (denying summary judgment despite existence of asserted patent not subject to *Walker Process* claims).

---

[3] Apple challenges the design patent allegations in the companion case, C.A. 22-1377, Dkt. 54 at 1.  Apple should not be permitted to circumvent the page limit by relying on that briefing here, particularly while opposing consolidation.

2. **Monopoly Leveraging**

Apple argues leveraging "is not an antitrust violation."  Mot. at 8.  But Apple's own cited case collects monopoly leveraging cases, explaining that "[a] monopoly leveraging claim is a Section 2 monopolization claim or attempted monopolization claim involving conduct in more than one market."  *Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139 at *9 (D. Del. Apr. 24, 2020) (collecting cases).  That is precisely what Masimo alleges.  *See* CC ¶ 74.

Apple argues Masimo must do more than assert "monopoly leveraging" and must also allege anticompetitive conduct.  Mot. at 8.  That ignores Masimo's allegations.  Masimo explains how Apple exploits anticompetitive provisions in its agreements and Apple's control of iOS app distribution to obtain confidential information from competitors that Apple then uses to unfairly compete.  *Id.* ¶¶ 71-74.  Masimo further explains how Apple has exploited its control over iOS app distribution to hinder the performance of the product most likely to provide a competitive check against Apple in the health watch market.  *Id*. ¶¶ 74, 206.  Masimo alleges that "[b]y engaging in the ***above-pleaded conduct***, Apple is also leveraging its monopoly power in the iOS distribution app market to harm competition in the separate health watch market."  *Id*. ¶ 241.

Apple cites *Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910 at *15 (N.D. Cal. Nov. 30, 2021), but that case concerned Apple's rejection of apps with no showing of competitive harm or benefit.  *Coronavirus* explained that, for example, a newspaper is generally not liable for excluding certain advertisements.  *Id*.  But newspapers ***could*** be liable if they "attempted to squelch competition by telling advertisers" not to advertise "in an up-and-coming competing newspaper."  *Id*.  Here, Apple excluded Masimo's app in an attempt to hinder competition by Masimo, an up-and-coming competitor most able to provide a competitive check against Apple.  Such conduct is anticompetitive and supports a Section 2 claim.  *See AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 919 (N.D. Cal. 2022) (AliveCor plausibly pleaded Apple "abused or leveraged its monopoly

power" over apps to hinder certain competing apps).  Apple argues Masimo must satisfy the requirements of *Aspen Skiing*.  Mot. at 8-9 (citing *Trinko*).  But Masimo challenges Apple's affirmative misconduct—including affirmative attempts to obtain competitive confidential information under false pretenses—not a mere refusal to deal.  *See, e.g.,* CC ¶¶ 70-74.

### 3.    Apple's False Advertising

"[F]alse, deceptive, and misleading advertisements" is also "the type of conduct § 2 encompasses."  *LePage's*, 324 F.3d at 162; *see also* Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 782b (5th ed. 2022) ("Areeda") ("A monopolist's misrepresentations encouraging the purchase of its product" can be an "exclusionary practice[]").  Apple cites an out-of-circuit case to argue Masimo must present factual allegations showing that Apple's statements are "clearly false."  Mot. at 9 (citing *Am. Council*).  Apple's cited cases from within this circuit debunk that assertion.  *See LePage's*, 324 F.3d at 162 (Section 2 encompasses "false, deceptive, and misleading advertisements"); *Santana Prods. v. Bobrick Washroom Equipment,* 401 F.3d 123, 133 (3d Cir. 2005) (imposing no clearly false requirement); *Eisai, Inc. v. Sanofi Aventis U.S.*, 821 F.3d 394, 407 n.40 (3d Cir. 2016) ("false or deceptive statements").

Apple also argues Masimo must allege it had "reason to believe it could not have corrected the misstatements by supplying consumers with accurate information."  Mot. at 12.  But Masimo alleges the harm from Apple's false advertising persists despite being exposed in public articles.  CC ¶¶ 157-60.  Thus, Masimo plausibly alleges that the anticompetitive effects of Apple's false advertising cannot be resolved by providing accurate information, especially for consumers who believe Apple would release only "the best possible technology."  *Id*. ¶ 207.

Apple also argues that "flooding the market" cannot be anticompetitive because it increases output.  Mot. at 13.  But Masimo's claims are not based on Apple selling products.  Masimo alleges Apple's false advertising will spoil the market for legitimate competitors because Apple's faulty

devices lead consumers to question *all* watch-based health technologies.  CC ¶ 216.  Apple fails

to address, much less show any flaw, in Masimo's actual allegations.

Apple also argues Masimo must allege Apple made "knowingly false" statements.  Mot. at

9.  Apple cites *Weiss v. York Hospital*, 745 F.2d 786, 825 (3d Cir. 1984), but that case imposed no

such rule for false advertising or any other type of anticompetitive conduct.  Instead, *Weiss*

declined to attribute the economic motives of doctors to a hospital that had an economic interest

"directly contradictory" to the doctors.  *Id*. at 828.  No such conflict of interest exists here.

Apple also cites *Philadelphia Taxi Ass'n v. Uber Techs.*, *Inc*., 886 F.3d 332, 344 (3d Cir.

2018), but in that case—unlike here—the plaintiff failed to allege any "negative impact on

consumers or to competition in general…."  Apple also combines two separate quotes from

*Gunawardana v. Am. Veterinary Med. Ass'n*, 2021 WL 4951697 at *4 (7th Cir. Oct. 25, 2021), to

claim the court held an allegation of "flooding the market" had "nothing to do with the antitrust

laws."  Mot. at 13.  In reality, *Gunawardana* rejected an allegation that the defendant was

"flood[ing] the market" because the plaintiff did not allege such conduct injured any "relevant

market."  2021 WL 4951697 at *4.  The court separately observed the plaintiff's injury to itself

had "nothing to do with the antitrust laws" because it was not "plausibly link[ed] to any injury to

consumers."  *Id*.  Masimo's allegations include no such deficiencies.

Apple's remaining arguments challenge the merits of Masimo's false advertising

allegations.  Mot. at 9-12.  Masimo addresses those arguments in Section II below.

### 4. Apple's Predatory Infringement

Apple cites cases outside this circuit to advocate a bright-line rule that patent infringement

can never be anticompetitive, regardless of the specific allegations.  Mot. at 13 (citing *Retractable*).

Apple identifies no such rule in the Third Circuit.  The Third Circuit has correctly observed that

"'[a]nticompetitive conduct' can come in too many different forms, and is too dependent upon

context, for any court or commentator ever to have enumerated all the varieties." *LePage*, 324 F.3d at 152. Anticompetitive conduct is "every conceivable act which could possibly come within the spirit or purpose of the prohibitions of the law, without regard to the garb in which such acts were clothed." *U.S. v. American Tobacco Co.*, 221 U.S. 106, 181 (1911). Masimo's pleading explains in detail why Apple's widely recognized practice of predatory infringement harms competition, including smaller competitors. CC ¶¶ 61-66, 216. Masimo explains how Apple uses this practice to capture markets and destroy competitors. *Id.* ¶¶ 44-51 (Apple used this practice against AliveCor, Omni MedSci, and Valencell). Apple should not be permitted to discard Masimo's important challenge based on an out-of-circuit bright-line rule that differs from the law in this circuit.

Apple's primary case, *Retractable Technologies, Inc. v. Beckton Dickinson & Co.*, 842 F.3d 883, 893 (5th Cir. 2016), reasoned that patent infringement "by definition" causes "competing products to enter the market, and thereby increases competition." That reasoning is plainly incorrect. A company can sell a product without infringing by, for example, negotiating a license with the patent holder. Thus, patent infringement does not "by definition" increase competition. Another court distinguished *Retractable* where, like here, patent infringement was part of a scheme to "push Plaintiff out of the" market. *Stiles v. Wal-Mart Stores, Inc.*, 2019 WL 1429651, at *3 (E.D. Cal. Mar. 29, 2019); *see, e.g.,* CC ¶ 208. None of Apple's other cases address allegations similar to Masimo's allegations. Mot. at 13 (citing *Tyco* and *Eatonic*).

Apple also argues patent infringement cannot be anticompetitive because the patent laws contain their own remedial provisions. Mot. at 13. But the same is true for false advertising and other tortious conduct that can also be anticompetitive. "[T]he existence of a tort remedy does not necessarily obviate an antitrust concern, for the public interest in competition is not necessarily

vindicated by private tort remedies."  Areeda ¶ 782a.  The Court should reject Apple's motion to dismiss Masimo's monopolization and attempted monopolization claims.

## II.      Masimo States False Advertising Claims

### A.      Masimo States a Lanham Act Claim

#### 1.      Masimo Alleges False and Misleading Statements

As Apple acknowledges, a false advertising claim can be based on a statement that is either "(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." Mot. at 14 (citing *Novartis Consumer Health, Inc., v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).  Masimo's counterclaims satisfy this requirement.

##### i.      Apple's Blood Oxygen Advertising Is False And Misleading

Apple argues Masimo relies "entirely on its own study" finding Apple's Blood Oxygen feature is "not suitable for medical or clinical purposes."  Mot. at 9.  That is incorrect.  Masimo alleges other entities also identified deficiencies in Apple's Blood Oxygen feature.  CC ¶¶ 157-59. Regardless, any suggestion that one study is insufficient merely raises a factual dispute.

Apple claims it never said this feature was "suitable for medical or clinical purposes."  Mot. at 9.  But Masimo alleges Apple "falsely and continually associates the Apple Watch's pulse oximetry feature with medical use and reliable measurements."  CC ¶ 143.  Apple's announcement began by discussing Apple Watch's "medical utility," including how "health care providers" and "insurance companies" use it.  *Id.* ¶ 144-45.  Dr. Desai explained that blood oxygen is "like a vital sign" and "medical professionals have used blood oxygen as an important COVID-19 indicator." *Id.* ¶ 1446.  Dr. Desai explained how blood oxygen is important to "respiratory and cardiac health," announced medical research studies, and stated the feature could be used "anywhere and at any time."  *Id.*  Apple closed with the tagline: "The future of health is on your wrist."  *Id.* ¶ 147.

Apple also showed the oxygen saturation feature "in all manner of positions in which the Apple watch cannot measure oxygen saturation." *Id.*; *see also id.* ¶ 148 (promoting watch in "extreme circumstances" where it was not capable of providing any measurement). Apple promotes the watch's "health sensors," including "blood oxygen," and "scientifically validated insights." *Id.* ¶ 149. Dr. Desai "promoted publicly the medical uses of pulse oximetry in the Apple Watch" and Apple's desire to "move healthcare into the home" of willing "patients." *Id.* ¶ 150.

Apple argues its advertisements about measuring "anytime, anywhere" and "background readings, day and night" do "not suggest the feature is hospital-grade." Mot. At 10. But Apple's argument conflates Apple's misrepresentations about "anytime, anywhere" and "background readings" with Apple's misrepresentations about accuracy. Those are separate misrepresentations. *Compare id.* ¶ 154 (accuracy) *with* ¶¶ 155-56 ("anytime, anywhere" and "background readings, day and night"). Moreover, Apple simply declares those statements "are not false…." Mot. at 10. But Apple provides no argument, support, or citation for that assertion. Masimo's contrary factual allegations must be accepted as true. *See id.* ¶¶ 155-56 (study proving both false).

### ii.    IRN and ECG Advertising Is False And Misleading

Apple argues the Court should disregard Masimo's reliance on the Mayo Clinic study regarding Apple's Irregular Rhythm Notification ("IRN") and ECG features. Mot. At 11. But Apple challenges Masimo's interpretation of the study, which merely raises a factual dispute. Regardless, Apple is wrong. Apple argues that including people with existing diagnoses shows Apple's features work 60% of the time. Mot. At 11. But Apple cites nothing to support its assertion that a ***40%*** failure rate is medically acceptable. Apple also argues that only some participants have a "newer-generation" watch with ECG. *Id*. But Masimo's allegations concern

ECG *and* IRN, the latter of which is included on earlier watches.  Again, Apple simply raises factual disputes.

Apple argues it never claimed its product provides alerts "only" for a "clinically actionable cardiovascular diagnosis of interest."  *Id.*  But Masimo alleges Apple has a "healthcare" website that advertises the clinical utility of Apple's IRN and ECG features, encourages users to "seek medical attention" using those features, and "gets help when you need it."  CC ¶¶ 161-62.[4] Masimo also cited a third-party study and third-party commentary about how these features have misled consumers into seeking costly medical care that they do not need.  *Id.* ¶¶ 163-64.  Masimo plausibly alleges these features do not get users help when they need it.  Instead, the "vast majority of users who receive notifications do not need to get medical attention."  *Id.* ¶ 165.

### iii.    Apple's Fine Print Does Not Immunize Apple From Liability

Apple cites *Pernod Ricard USA, LLC v. Bacardi U.S.A.*, 653 F.3d 241, 252-53 (3d Cir. 2011), in arguing its fine print disclaimer "disposes of Masimo's" claim as a matter of law.  But *Pernod* reviewed a district court's decision *after* a bench trial.  653 F.3d at 253.  The court found the false advertising allegation was directly contradicted by "plain and explicit statements of geographic origin on the label."  653 F.3d at 253.  Moreover, *Pernod* observed that "cases like the present one should be rare" and "caution[ed]" courts to carefully consider the facts of each case, including evidence of how consumers reacted to the advertisements.  *Id.*

As courts in the Third Circuit have explained, a disclaimer that is "so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature

---

[4] Apple claims this statement referred to "Apple Watch generally" and, for example, "call[ing] emergency services."  Mot. at 11.  As Apple admits, Cook stated the Apple Watch "***monitors your health*** and gets help when you need it."  *Id*.  Moreover, Apple's own citation shows Cook discussed "letters" he received from customers, including consumers who relied on the IRN and ECG features for medical purposes.  See bit.ly/3DE9zOV at 3:11-4:55.

of the claims." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 464 (D.N.J. 2009) (quotations omitted).  The sufficiency of a disclaimer "depends upon its effect on consumers" and typically "raises factual questions that are not well suited for resolution on a motion to dismiss. *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46 (2d Cir. 2022); *see also Dependable Sales & Serv., Inc. v. Truecar, Inc.*, 2016 WL 79992 (S.D.N.Y. Jan. 6, 2016) ("At [the pleading] stage, the Court cannot conclude whether the disclaimer effectively turns an otherwise false advertising claim into a true one, in such a manner that the consumers are not misled").

Masimo alleges that consumers have actually been misled despite Apple's fine print.  *See* CC ¶¶ 157-60, 163-65.  For example, one commentator highlighted the watch's inaccuracies and explained "[w]hatever the fine print may say, some people are going to treat these as medical devices – and that's a concern." *Id.* ¶ 157.  Another stated Apple says the feature is for "fitness and wellness," "[b]ut Apple did connect the feature back to the COVID-19 pandemic during the product announcement." *Id.* ¶ 158.  Apple's fine print is not enough to defeat Masimo's claims as a matter of law, particularly on the pleadings, when Masimo's allegations must be taken as true.

## 2.    Masimo Alleges Proximate Injury

Apple cites another out-of-circuit case to argue that, because Apple's advertising did not address Masimo's product, Masimo must identify allegations of "actual injury and causation." Mot. at 15 (citing *McNeilab*).  But Apple's cited case from this Circuit explains that Masimo need only show "a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising." *Novartis*, 290 F.3d at 595.[5]  Apple cites *ThermoLife Int'l, LLC v. BPI*

---

[5] *Novartis* explained the "reasonable basis" standard was the "standing requirement and injury element for a Lanham Act claim." 290 F.3d at 595.  The court explained a different standard applies for showing irreparable harm to obtain a preliminary injunction. *Id*.  That preliminary injunction standard is not relevant here.

*Sports, LLC*, 2022 WL 612669 at *2 (9th Cir. Mar. 2, 2022), to suggest Masimo must show a "1:1 relationship between false advertising and lost sales." In addition to being from another circuit, *ThermoLife* looked for a 1:1 relationship as to a plaintiff that "operate[d] at a different level of the supply chain" than the defendant. *Id*. In contrast, a plaintiff that "directly compete[d]," *ThermoLife* needed to show its product was a "substitute" for the defendant's products. *Id*. at *3 (finding plaintiff had not adequately alleged it was a "substitute"); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) ("unique circumstances" in which non-manufacturer was within zone of "interests" to sue for cartridge manufacturer's false advertising). Masimo plausibly alleges the W1 is an economic substitute for the Apple Watch. CC ¶¶ 166-72.

Apple also faults Masimo for relying on statements from before Masimo introduced the W1. Mot. at 12. But Apple cites no authority holding that false advertisements are immune from liability if they were first published before the plaintiff entered the market. Such a rule would be contrary to public policy, including because it would prevent new entrants from disrupting an existing monopoly maintained through false advertising. Apple's cases do not support its position. *See Lexmark*, 572 U.S. at 133 (addressing whether plaintiff in different level of supply chain had standing); *Liqwd, Inc. v. L'Oreal USA*, 2019 WL 10252725 at *12 (D. Del. Apr. 30, 2019) (unlike here, no allegation false statements continued to be circulated after product launch).

### B.  Masimo States False Advertising Claims Under State Law

Apple argues Masimo's state-law false advertising claims rise and fall with Masimo's Federal claims. Apple cites *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *8 (D. Del. May 28, 2021), but that case explained that courts account for the "lower pleading burden" under Delaware law. Under Delaware law, "a complainant need not prove competition between the parties or actual confusion or misunderstanding." 6 Del. C. § 2532. Masimo's allegations are more than sufficient under state law.

### III.     Masimo States California Unfair Competition Claims

Apple argues that Masimo cannot establish "fraudulent" conduct because Masimo has not alleged it relied on any alleged false statement, citing *O'Connor*.  Mot. at 16.  But numerous cases hold that plaintiffs suing competitors for false advertisement need not plead their own reliance.  *See, e.g., SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 6841992, at *6 (C.D. Cal. Oct. 30, 2019) (collecting cases).  Moreover, Apple does not dispute that Masimo alleges valid unfair competition claims if, as demonstrated above, Masimo alleges plausible Federal antitrust claims.  Mot. at 16.  Moreover, even if Masimo's antitrust claims fail, Masimo alleges an incipient violation of the antitrust laws.  *Compare* CC ¶ 284, *with Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1055 (N.D. Cal. 2021) (finding Apple's conduct did not violate the antitrust laws but met the "unfair" prong of California's Unfair Competition statute because it "threaten[ed] an incipient violation of an antitrust law").

### IV.     Masimo States Inequitable Conduct Claims and Affirmative Defenses

#### A.     Masimo Plausibly Alleges Myers Had a Duty of Disclosure

Apple does not dispute Masimo's pleadings satisfy the "what, when, where, and how" of *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009).  Apple challenges only the "who" requirement.  Apple, however, does not dispute that Masimo specifically identified "who": Apple's Chief IP Counsel, Jeffrey Myers.  Mot. at 17.  Apple instead argues that Masimo has not shown Myers had a duty of disclosure to the PTO.  *Id.*  But the duty applies to every "person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application."  37 C.F.R. § 1.56(c); *Exergen*, 575 F.3d at 1329.

Apple cites *EMC Corp. v. Pure Strategies, Inc.*, 2014 WL 5795557 (D. Del. Nov. 5, 2014), to argue that being an "attorney of record" is insufficient to show substantive involvement.  Mot.

at 18.  But the plaintiff in *EMC* did not "offer[] any particularized allegations" beyond two attorneys being listed as having power of attorney.  *Id*. at *2.  Apple also cites *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, 2021 WL 5449073 at *8 (N.D. Cal. Nov. 22, 2021).  But the plaintiff there also failed to allege any decisions relating to the prosecution.  In contrast, here, Masimo alleges Myers (1) is Apple's Chief IP Counsel (2) asserted key references against Masimo and AliveCor during inter partes review ("IPR") and (3) withheld those same references during prosecution of Apple's own related patents.  CC ¶¶ 120, 128-30, 138-39.  Masimo also alleges Myers selected different law firms to "compartmentalize information" so the prosecution firm "would not disclose but-for material information" to the PTO.  *Id*. ¶¶ 129, 139.

Having the power to withhold or disclose prior art constitutes "substantive involvement" under 37 C.F.R. § 1.56(c).  Employees responsible for overseeing IP matters are substantively involved.  *See, e.g.*, *Polara Eng'g, Inc. v. Campbell Co.*, 2014 WL 12584441, at *2 (C.D. Cal. Nov. 4, 2014) (alleging president "supervised the patent application" sufficiently pleaded "who" element of inequitable conduct); *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967 (Fed. Cir. 2010) (president "substantively" involved where he was "involved in all aspects of the company's operation").  Apple claims Masimo's allegation that Myers was an attorney of record for the Utility Patents is "flat-out false."  Mot. at 17.  As support, Apple asks the Court to take judicial notice that Myer's name does not appear in prosecution histories.  *Id.*  But Apple should not be permitted to contradict Masimo's allegations with extrinsic evidence.  Regardless, Apple's argument misunderstands Apple's patent prosecution practice.  Apple uses a "customer number" to "[s]ubmit a list of patent practitioners such that those patent practitioners associated with the Customer Number would have power of attorney."  37 C.F.R. § 1.32.  The PTO's website lists Myers as one of the few Apple in-house counsel having "Power of Attorney" for the Utility

Patents.  *See* Exs. 1-3; *Honeywell Int'l Inc. v. Maltseff*, 2014 WL 3360334 at *2 (W.D. Wash. July 9, 2014) (denying summary judgment because "appearance on a customer number may nonetheless be one indication of substantive involvement.").

      **B.**    **Masimo Plausibly Alleges Myers' Knowledge and Intent**

      Apple also claims that Masimo did not allege Myers knew of material art and had a specific intent to deceive.  Mot. at 19.  Not so.  Masimo alleges Myers intentionally withheld the specific handful of references that Apple asserted against Masimo and AliveCor in IPR proceedings.  CC ¶¶ 129, 138-39.  For example, Apple asserted Kotanagi as the basis for numerous grounds in six different IPRs.  CC ¶ 127.  Masimo alleges Myers was aware of "its applicability as a prior art reference," but still withheld Kotanagi and its family member, Tanagi, during prosecution.  *Id*. ¶¶ 128-29; *see also id*. ¶¶ 130-39 (similar allegations regarding Shmueli).

      Apple ignores Masimo's allegations and instead submits two selected patents and IPR proceedings to argue "Apple has regularly retained these two firms [Fish and Richardson and Brownstein Hyatt] for these separate functions for years before the period at issue and requests that the Court take judicial notice of these facts."  Mot. at 19-20.  However, at best, Apple's cherry-picked extrinsic evidence creates a fact issue.  Indeed, other extrinsic evidence shows Apple *has* employed Fish and Richardson to prosecute monitoring and sensing patents.  Exs. 4-6.  Masimo's allegations are plausible and the Court should reject Apple's request to draw inferences in its favor.

**V.**    **Masimo States Willful and Indirect Infringement Claims**

      **'743, '159, '223, '911 Patents**: Apple argues Masimo's pre-suit knowledge allegations are insufficient because these patents were identified in an  interrogatory response marked Attorneys Eyes Only.  Mot. at 20.  But Apple fails to explain why its attorneys could not share the mere existence of these patents with Apple.  To the extent Apple's attorneys withheld such information, such conduct would at least constitute willful blindness.  Indeed, the disclosed patents are related

to those that Masimo asserted against Apple in the ITC.  Apple has been aware of those patents

for years.  In fact, Apple produced each patent ***multiple*** times in the parties' ITC and California

district court litigations.  Exs. 8-31.  In the ITC, Apple even identified the '743, '159, and '223

patents as "exemplary prior art."  Ex. 7 at 125-126, 220.

**'507 Patent**: Apple argues Masimo's pre-suit knowledge allegations for this patent are

based "solely" on knowledge of the underlying patent publication.  Mot. at 20.  Not so.  For

example, Masimo alleged "Apple knew of the '507 Patent at least based on Dr. O'Reilly's and

Lamego's former positions with Masimo."  *Id.* ¶ 363.  Moreover, Apple extensively monitors

Masimo's patents.  *See* Ex. 7.  And knowledge of a patent publication can support a finding of

willfulness.  *See, e.g.*, *WCM  Indus., Inc. v. IPS Corp.*, 721 Fed. App'x 959, 970 n.4 (Fed. Cir.

2018).  Considering the "totality of the circumstances," Masimo has plausibly alleged Apple's pre-

suit knowledge.  *Id.* at 970.

## VI.     Apple's Request for Dismissal With Prejudice Is Unsupported

Apple asks for dismissal "with prejudice" in its conclusion, but provides no analysis or

support for that request.  Mot. at 20.  "The court should freely give leave [to amend] when justice

so requires."  Fed. R. Civ. P. 15(a)(2).  Accordingly, if necessary, this Court should provide

Masimo leave to amend.  *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-88 (3d Cir. 1990).

**CONCLUSION**

For the reasons above, Defendants respectfully request the Court deny Apple's motion.

Respectfully submitted,

March 28, 2023                                          PHILLIPS MCLAUGHLIN & HALL, P.A.


By: */s/ John C. Phillips, Jr.*

*Of Counsel:*

John C. Phillips, Jr. (No. 110)
Joseph R. Re                                           Megan C. Haney (No. 5016)

-20-

Stephen C. Jensen
Benjamin A. Katzenellenbogen
Stephen W. Larson
Matthew Pham
Jared C. Bunker
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
stephen.larson@knobbe.com
ben.katzenellenbogen@knobbe.com
jared.bunker@knobbe.comBrian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, a true and correct copy of the foregoing document

was served on the following counsel of record at the addresses and in the manner indicated:

*VIA ELECTRONIC MAIL:*

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>Jennifer M. Przybylski<br>Carson Olsheski<br>Desmarais LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com<br>jprzybylski@desmaraisllp.com<br>colsheski@desmaraisllp.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

March 28, 2023

                                        */s/ Megan C. Haney*
                                        Megan C. Haney (#5016)