# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1378-MN-JLH |
| | ) |
| MASIMO CORPORATION and | ) **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| MASIMO CORPORATION and | ) |
| CERCACOR LABORATORIES, INC., | ) |
| | ) |
| Counter-Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| APPLE INC., | ) |
| | ) |
| Counter-Defendant. | ) |

## PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant*
*Apple Inc.*

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  April 18, 2023
10762327 / 12209.00052

**TABLE OF CONTENTS**

**Page**

I. Masimo Fails To State A Monopolization Or Attempted Monopolization Claim ..............1

    A. Masimo Has Not Plausibly Alleged Antitrust Standing .........................................1

    B. Masimo Fails To Plausibly Allege A Product Market Or Market Power................3

    C. Masimo Fails to Plausibly Allege Any Cognizable Exclusionary Conduct ............4

II. Masimo Fails To State Any False Advertising Claim ..........................................................6

III. Masimo Fails To State A Claim Under the California UCL ...............................................8

IV. Masimo Fails To State Inequitable Conduct Claims And Affirmative Defense ................9

    A. Masimo Fails To Plausibly Allege That Myers Had A Duty Of Disclosure ...........9

    B. Masimo Fails To Plausibly Allege Myers's Knowledge Or Intent To Deceive ...............................................................................................................10

V. Masimo Fails To State Pre-Suit Willful And Indirect Infringement Claims.....................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AliveCor, Inc. v. Apple Inc.*,
   592 F. Supp. 3d 904 (N.D. Cal. 2022) ...................................................................................5

*Avid Identification Systems, Inc. v. Crystal Import Corp.*,
   603 F.3d 967 (Fed. Cir. 2010)...............................................................................................9

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962).................................................................................................................2

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977).................................................................................................................2

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993)....................................................................................................7

*Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*,
   973 P.2d 527 (Cal. 1999) ........................................................................................................9

*Certainteed Gypsum, Inc. v. Pacific Coast Building Products, Inc.*,
   2021 WL 5449073 (N.D. Cal. Nov. 22, 2021) ......................................................................9

*City & County of San Francisco v. Philip Morris, Inc.*,
   957 F. Supp. 1130 (N.D. Cal. 1997) ......................................................................................8

*Coronavirus Reporter v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ......................................................................4

*Digital Ally, Inc. v. Taser Int'l, Inc.*,
   2016 WL 3365440 (D. Kan. June 17, 2016)........................................................................10

*Eichorn v. AT & T Corp.*,
   248 F.3d 131 (3d Cir. 2001)....................................................................................................2

*EMC Corp. v. Pure Storage, Inc.*,
   2014 WL 5795557 (D. Del. Nov. 5, 2014) ............................................................................9

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
   2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) ........................................................................3

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ..........................................................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)........................................................................................................8

*Los Angeles Taxi Cooperative, Inc. v. Uber Technologies, Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ..........................................................................8

*MCI Communications Corp. v. American Telephone & Telegraph Co.*,
    708 F.2d 1081 (7th Cir. 1983) ......................................................................................5

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
    2017 WL 3021066 (D. Del. July 14, 2017) ..................................................................8

*Otsuka Pharmaceutical Co. v. Torrent Pharmaceuticals Ltd.*,
    187 F. Supp. 3d 483 (D.N.J. 2016) ...............................................................................2

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
    555 U.S. 438 (2009).......................................................................................................4

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
    2021 WL 2188219 (D. Del. May 28, 2021)...................................................................8

*Polara Engineering, Inc. v. Campbell Co.*,
    2014 WL 1258441 (C.D. Cal. Nov. 4, 2014).................................................................9

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*,
    401 F.3d 123 (3d Cir. 2005)...........................................................................................6

*Stiles v. Wal-Mart Stores, Inc.*,
    2019 WL 1429651 (E.D. Cal. Mar. 29, 2019) ..............................................................6

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
    2022 WL 612669 (9th Cir. Mar. 2, 2022)......................................................................8

*TransWeb, LLC v. 3M Innovative Properties Co.*,
    812 F.3d 1295 (Fed. Cir. 2016)......................................................................................2

*United States v. Line Material Co.*,
    333 U.S. 287 (1948)................................................................................................... 1-2

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)...................................................................................................4, 5

*WCM Industries, Inc. v. IPS Corp.*,
    721 F. App'x 959 (Fed. Cir. 2018) ..............................................................................10

## STATUTES, RULES AND REGULATIONS

6 Del. C. § 2532 ..................................................................................................................8

# OTHER AUTHORITIES

Phillip Areeda & Herbert Hovenkamp, Antitrust Law (5th ed. 2022)........................................5, 6

## ARGUMENT

### I.      Masimo Fails To State A Monopolization Or Attempted Monopolization Claim

#### A.      Masimo Has Not Plausibly Alleged Antitrust Standing

Masimo alleges no facts plausibly showing that any Apple conduct harms *competition*. Most of the allegations it cites allege harm to Masimo alone. *See* D.I. 15 ("CC") ¶ 216 ("time and money"); ¶ 217 ("monetary losses"); ¶ 218 ("direct sales away from Masimo"). One restates the illogical proposition that offering *more* choices is anticompetitive. *Id.* ¶ 208 (Apple "flood[ed] the market"). Others recite antitrust standing elements but allege no facts, *id.* ¶¶ 209, 219-222, and others are just conclusory assertions about injuries that might happen "[*i*]*f* Apple were to succeed in excluding Masimo," *id.* ¶ 210 (emphasis added); *see also id.* ¶ 211 ("[i]f Apple successfully excludes"). But Masimo alleges no facts suggesting any Apple conduct actually threatens to exclude Masimo from the market, much less harm competition. Indeed, Masimo's own pleading disproves the plausibility of any such unmade allegations. *See* D.I. 40 ("Mot.") at 3.

The only basis for antitrust standing that Masimo attempts to defend concerns its *Walker Process* claim. Masimo argues that it pleads antitrust injury because it alleges "anticompetitive effects that would result if [Apple] were to succeed in enforcing" its patents, and because Masimo has incurred litigation costs in defending against Apple's purported "assertion of fraudulent patents." D.I. 68 ("Opp.") at 3. Both theories are irrelevant to the other three purported forms of anticompetitive conduct, which should be dismissed on that basis alone.

As to *Walker Process*, Masimo's antitrust standing theories are nonsensical and contravene bedrock antitrust precedent. Masimo (at 3) argues it will be excluded from the market if Apple prevails on its patent claims. But if that occurs, Masimo necessarily will have failed to prove any fraud—indeed, as shown in Part V, it does not even adequately plead fraud. Masimo's exclusion thus could only result from Apple's *lawful* patent assertion. *See United States v. Line Material*

*Co.*, 333 U.S. 287, 310 (1948) (enforcement of valid patents cannot violate antitrust laws).  It is impossible for Apple's suit to illegally exclude Masimo, so that suit cannot illegally create monopoly power or a dangerous probability thereof.

Masimo cites *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295 (Fed. Cir. 2016), but it addressed whether defense costs "amount to an injury derived from the antitrust wrong" and so are "recoverable antitrust <u>damages</u>."  *Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*, 187 F. Supp. 3d 483, 487 n.6 (D.N.J. 2016).  The relevant discussion did not address the merits of an antitrust claim, much less hold that a lawful patent assertion violates Section 2.  *See* 812 F.3d at 1309.

Masimo (at 3) next relies on its own litigation costs.  But to have antitrust standing, plaintiffs must prove antitrust injury—"injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  "[A]n individual plaintiff personally aggrieved" by alleged anticompetitive conduct "has not suffered an antitrust injury unless the activity has a wider impact on the competitive market."  *Eichorn v. AT & T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001) (collecting cases).  Defense costs, like any other injury, must arise from conduct that harms "competition," not just "competitors" to constitute antitrust injury.  *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962); *see also* Mot. 7-8.  Masimo here again misapprehends *TransWeb*.  *See Otsuka*, 187 F. Supp. 3d at 487 & n.6 (dismissing claim where allegations did not "tether" defense costs "to harm borne by the market-at-large" and distinguishing *TransWeb*).

Masimo (at 7) asserts that *Otsuka* is "inapposite," but never explains why.  As in *Otsuka*, Masimo has alleged injury only to itself.  Masimo has not alleged that litigation costs will exclude it from the market, and such a claim would be implausible.  Among other reasons, Masimo alleges fraud as to only six of Apple's ten asserted patents; any incremental costs from litigating ten patents

2

instead of four cannot plausibly drive Masimo from the market.  *See* Mot. 8.

> **B.      Masimo Fails To Plausibly Allege A Product Market Or Market Power**

Masimo (at 3) fails to defend its nebulous alleged "health watch" market.  It instead repeats the vague distinction between "advanced health tracking parameters" and "basic features," giving a handful of examples and no explanation.  *See* CC ¶ 166.  That is not enough.  *See* Mot. 4-5.

Masimo (at 4-5) also does not defend its exclusion of products that obviously compete with those in the alleged market.  It does not allege that consumers interested in tracking physiological parameters consider *only watches* and not the many other devices specifically designed for that purpose.  Nor does Masimo point to any factual allegations showing that Apple Watch does not compete with non-"health watch" smart watches that offer functions like texting and phone calls.  And nowhere does Masimo distinguish Apple's cases holding that a market cannot be defined by isolating just one aspect of a multifaceted product.  *See* Mot. 4.

Masimo (at 5) instead improperly faults Apple for not addressing its allegations of a "health watch" *sub*market.  But "a complaint alleging a submarket is not excused from grounding its allegations with facts regarding reasonable interchangeability and cross-elasticity of demand." *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922, at *5 n.12 (E.D. Pa. Aug. 9, 2002).

Masimo (at 4) also largely relies on mischaracterizing a declaration from Apple's economic expert in the infringement case.  *See* C.A. No. 22-1377, D.I. 51-4 ("Ex. O").  But that expert was not defining an antitrust market and so had no reason to address "competition from non-watches" or from non-"health watch" smart watches.  Opp. 4.  He opined simply that "sales of W1 as well as other smart watches" would cause Apple to lose sales, Ex. O ¶ 70—not that Apple Watch or W1 compete in a "health watch" market or face no other competitors.  Insofar as the expert "relied on analysis discounting non-physiological features," Opp. 4, that was only to show that Masimo asserted that W1 competes with Apple Watch *despite* lacking those features, *see* Ex. O ¶ 72.

3

Masimo also selectively quotes the expert's reference to Masimo's own assertion that "W1 *and Freedom*," which, unlike W1, has broader smart watch features, "'should command 100%' *of the smartwatch market segment.*" *Id.* ¶ 75 (emphasis added).  The expert said nothing supporting the implausible notions that consumers wanting to track their physiological parameters consider only watches or that non-"health watch" smart watches do not compete with Apple Watch.

Masimo (at 5-6) also cannot dispute that its market power allegations entirely rely on an unsupported inference from a conclusory allegation of monopoly power in the wrong market.  *See* CC ¶ 184; Mot. 6-7.  Masimo cites no cases endorsing that slipshod approach, nor could it.

### C.       Masimo Fails to Plausibly Allege Any Cognizable Exclusionary Conduct

*Walker Process***.**  Masimo incorrectly states (at 7) that "Apple does not challenge Masimo's allegations as to Apple's design patents."  But Apple addressed Masimo's entire "*Walker Process* claim."  *See* Mot. 7 (citing CC ¶ 205, which does not distinguish between design and utility patents).  For the reasons discussed in the opening brief, this brief, and briefing on Apple's design patents, Masimo has not plausibly alleged inequitable conduct and so fails to state a claim.

**Monopoly Leveraging.**  Masimo (at 8-9) does not dispute that a leveraging claim requires independently anticompetitive conduct, and Masimo relies solely on the conditions Apple allegedly placed on Masimo's access to the iOS App Store.  But everyone is free to choose whom they deal with and on what terms, so long as they do not discontinue a pre-existing course of dealing and "forsake short-term profits" to exclude a rival. *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).  Masimo (at 9) asserts that Apple's conduct was "not a mere refusal to deal."  But "if a firm has no antitrust duty to deal with its competitors," then "it certainly has no duty to deal under terms and conditions that … rivals find commercially advantageous," *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450 (2009).  Masimo's cases (at 8) do not say otherwise.  *See Coronavirus Rep. v. Apple Inc.*, 2021 WL

4

5936910, at *15 (N.D. Cal. Nov. 30, 2021) (agreement to "boycott a competing radio station" violated Sherman Act); *AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 919 (N.D. Cal. 2022) (addressing alleged conduct that "made it effectively impossible" for competing apps to function).

Moreover, Masimo's "leveraging" claim turns on Apple supposedly obtaining Masimo's confidential information as a condition of access to the iOS App Store, but Masimo identifies no confidential information it was forced to disclose, and the Masimo Health App is available on the iOS App Store. *See* bit.ly/3GrdPT0.

**False advertising.**   Masimo (at 9-10) urges this Court to reject the "clearly false" and "knowing" standards that courts across the country routinely apply and a leading antitrust treatise endorses. *See* Mot. 9; Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 782b n.29, ¶ 782d n.43 (5th ed. 2022) ("Areeda") (citing cases applying "clearly false" standard); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1129 (7th Cir. 1983); Areeda ¶ 782j (both endorsing knowledge requirement); *Trinko*, 540 U.S. at 407 (monopolization requires "willful" conduct). Masimo offers no reason to reject that precedent. Regardless, the alleged statements are not false or misleading, even under Masimo's erroneous standards. *See infra* Part II.

Further, to state an antitrust claim based on false advertising, Masimo must allege facts showing that it cannot counteract Apple's supposedly false statements through its own advertising campaign, which it has failed to do. *See* Mot. 12.  Masimo's argument (at 9) that "the harm from Apple's false advertising persists despite being exposed" in one *Washington Post* article and two from "theverge.com," *see* CC ¶¶ 157-159, does not plausibly suggest that a focused marketing campaign by a company with massive resources would not counteract Apple's statements.

Finally, Masimo now asserts that its novel "flooding the market" theory of injury is not "based on Apple selling products." Opp. 9.  But the complaint alleges that Apple's "vast sales"

will somehow "destroy the health watch market."  CC ¶ 208.  Producing more goods increases

competition and so is procompetitive.  *See* Mot. 13.  If Masimo's product is truly superior, then

Masimo's remedy is to market it as such and reap the increased sales—not to file an antitrust suit.

*See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 134 (3d Cir. 2005).

        **Alleged Infringement.**  Masimo (at 10-12) again asks the Court to ignore unanimous

precedent holding that patent infringement cannot support an antitrust claim while pointing to no

reason the consensus might be wrong.  Masimo (at 11) cites *Stiles v. Wal-Mart Stores, Inc.*, 2019

WL 1429651 (E.D. Cal. Mar. 29, 2019), but that court emphasized that the alleged infringement

was just one part of a multifaceted "illicit agreement" to push the plaintiff from the market using

other, well-recognized forms of anticompetitive conduct.  *Id.* at \*3.  Masimo (at 11-12) also cites

Areeda to argue that infringement can support an antitrust claim, but that treatise found "no warrant

in either the antitrust laws or the Patent Act for such an approach."  Areeda ¶ 782a3.

## II.      Masimo Fails To State Any False Advertising Claim

        As to the Blood Oxygen feature, Masimo (at 12) continues to rely on a study allegedly

demonstrating that the feature is not "suitable for medical or clinical purposes" because it does not

"track [a] test control hospital monitor."  CC ¶ 154.[1]  But Masimo points to no Apple statement

saying *anything* about the feature's accuracy, much less suggesting it works as well as a hospital

monitor.  Masimo (at 12) cobbles together statements from a 2020 Apple presentation (1) that

describe the Apple Watch generally, but not any specific feature, and (2) in which Dr. Desai

explains the general importance of blood oxygen measurements and discusses future research to

improve the feature.  Masimo ignores that Dr. Desai introduced the Blood Oxygen feature by

---

[1] Masimo (at 12) vaguely asserts that it alleged that "other entities also identified deficiencies" in Apple's Blood Oxygen features.  But the articles in the referenced allegations likewise conclude only that the Blood Oxygen feature is not a "medical function[]."  CC ¶ 157.

stating that it is "for wellness and fitness purposes." *See* Mot. 10. That presentation speaks for itself, is incorporated in the pleadings, and is available online. *See* bit.ly/3HSZksx.

Masimo asserts that its allegations about "measuring 'anytime, anywhere' and 'background readings, day and night'" involve "separate misrepresentations." Opp. 13. But it relies exclusively on the very same internal study about clinical use to purportedly show that these representations are false. *See id.* (citing CC ¶¶ 155-156). Moreover, "an exaggeration or overstatement expressed in broad, vague, and commendatory language" would not mislead a reasonable consumer and so is not actionable. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993).[2]

Masimo's claims as to the irregular rhythm and ECG features also fail. Masimo (at 13) asserts that its "interpretation of the [Mayo Clinic] study … raises a factual dispute," but the study speaks for itself. It found that over 60% of participants alerted to an irregular heartbeat had an underlying diagnosis. *See* Mot. 11. And even Masimo's incorrect 11.4% figure, *see* CC ¶ 163, is perfectly consistent with Apple's statement that alerts "*may be suggestive* of atrial fibrillation," *id.* ¶ 161 (emphasis added). Masimo (at 14 & n.4) complains that Apple advertises this feature on its "healthcare" website and once described it as "monitor[ing] your health and get[ting] help when you need it." But none of that suggests anything resembling a diagnostic guarantee.[3]

Masimo (at 15-16) has also failed to allege that Apple's statements proximately caused Masimo to lose sales, instead offering misstatements of the law. A "reasonable basis" to believe a purportedly false statement will proximately cause lost sales requires "facts in the pleadings that

---

[2] Masimo does not assert that the articles quoted in the Counterclaims render these statements false or misleading. Nor could it. The articles simply found that users must follow the directions to get a reading. *See, e.g.*, CC ¶ 159 ("If you follow the directions to a T, you'll usually get a reading," and lower readings were "because the watch wasn't positioned correctly").

[3] Masimo (at 14) asserts Apple "encourages users to 'seek medical attention,'" but Masimo quotes its own pleading's characterization of Apple's advertisements, not any Apple statement. CC ¶ 161.

serve as links in the chain of inferences" connecting the statement to the losses. *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 2017 WL 3021066, at \*4 (D. Del. July 14, 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 139 (2014)); *see also ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669, at \*2 (9th Cir. Mar. 2, 2022) (holding without limitation that "proximate causation may be adequately alleged when 'there is likely to be something very close to a 1:1 relationship between' a plaintiff's lost sales and the sales diverted to defendant" (quoting *Lexmark*, 572 U.S. at 139)). Masimo offers no such links in the chain.

Masimo (at 16) relies on the fact that the Delaware DTPA does not require competition between the parties or actual confusion. *See* 6 Del. C. § 2532(b). But Masimo's claim fails on other grounds, so the "DTPA's lower pleading standard does not impact the … analysis." *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at \*8 (D. Del. May 28, 2021).

## III. Masimo Fails To State A Claim Under the California UCL

Masimo (at 17) asks this Court to reject the first-party reliance requirement, even though "the majority of courts to have addressed this question" have held that plaintiffs "must allege their own reliance on the alleged misrepresentations, rather than the reliance of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015). The "overriding purpose" of the textual requirement that UCL plaintiffs be injured "as a result of" unfair competition is "to impose limits on private enforcement actions under the UCL." *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009). The first-party reliance requirement ensures that compensable injuries are a direct "result of" the alleged wrongs. *See City & Cnty. of S.F. v. Philip Morris, Inc.,* 957 F. Supp. 1130 (N.D. Cal. 1997) (adopting majority rule).

Masimo also has not plausibly alleged an "incipient" violation of the antitrust laws, which requires conduct that "violate[s] the policy or spirit of" the antitrust laws and has effects "comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

8

competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999).

As shown above, Masimo alleges harm only to itself, not competition.  That is insufficient.

**IV.     Masimo Fails To State Inequitable Conduct Claims And Affirmative Defense**

        **A.     Masimo Fails To Plausibly Allege That Myers Had A Duty Of Disclosure**

Masimo fails to distinguish *EMC Corp. v. Pure Storage, Inc.*, 2014 WL 5795557 (D. Del.

Nov. 5, 2014) and *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, 2021 WL 5449073

(N.D. Cal. Nov. 22, 2021).  As in *EMC*, Masimo alleges Myers had power of attorney, nothing

more.  And as in *Certainteed Gypsum*, Masimo alleges no specific substantive involvement by

Myers in prosecuting the Utility Patents.  Masimo's allegations thus are equally insufficient here.

*First*, Masimo's allegation that "Myers… is Apple's Chief IP Counsel," Opp. 18, does not

show substantive involvement in prosecuting the Utility Patents.  *Second*, Masimo never pled that

"Myers…asserted key references…during inter partes review," *id.*, but rather pled only generically

that "***Apple*** asserted" prior art, *see* CC ¶¶ 120, 126-127, 130, 136-137.  *Third*, Masimo's brief

asserts that "Myers … withheld those same references" and "compartmentalize[d] information,"

Opp. 18, but that mischaracterizes its pleading—which attributed these averments generically to

"***Apple***" or "Myers and ***others at Apple***," CC ¶¶ 129, 139—and is conclusory and speculative.

Masimo's cases only confirm its pleading deficiencies.  Unlike *Polara Eng'g, Inc. v.*

*Campbell Co.*, Masimo does not allege Myers "supervised the patent application."  2014 WL

12584441, at *2 (C.D. Cal. Nov. 4, 2014).  And unlike *Avid Identification Sys., Inc. v. Crystal Imp.*

*Corp.*, which did not concern a motion to dismiss, Masimo does not show Myers was "involved in

all aspects of the company's operation … including its research and development" as to suggest

he was also involved in substantive prosecution.  603 F.3d 967, 974 (Fed. Cir. 2010).

Masimo also does not deny that Myers's name appears nowhere in the Utility Patents'

prosecution histories.  Masimo's extrinsic material regarding "customer numbers" is just a

recitation of counsel with power of attorney to represent Apple before the PTO and does not show any role in prosecution.  *See Digital Ally, Inc. v. Taser Int'l, Inc.*, 2016 WL 3365440, at *3 (D. Kan. June 17, 2016) (a "customer number" listing "all practitioners…licensed to practice before the USPTO…in no way indicates any role or responsibility in prosecution").  And regardless, as explained, merely having power of attorney does not show substantive involvement in prosecution.

### B.       Masimo Fails To Plausibly Allege Myers's Knowledge Or Intent To Deceive

As to purported knowledge, Masimo identifies only a generic allegation that "*Apple* asserted" prior art in IPRs as well as a conclusory allegation that "Myers was aware" of prior art. Opp. 19 (citing CC ¶¶ 127-129) (emphasis added).  Masimo identifies no factual pleadings plausibly showing Myers knew of the art, let alone that any information in it was material.

Masimo also fails to explain how using different law firms for different proceedings plausibly shows specific intent to deceive the PTO.  Masimo identifies no factual pleadings showing Myers withheld anything at all, let alone did so with specific intent to deceive the PTO.

## V.       Masimo Fails To State Pre-Suit Willful And Indirect Infringement Claims

**'743, '159, '223, '911 Patents.**  Masimo identifies no factual pleadings plausibly showing that any Apple employee ever saw Masimo's outside-counsel-eyes-only interrogatory response, let alone any of the 100+ patents listed therein.  Also, Masimo never pled that Apple identified these patents in other litigations and improperly raises this new allegation in its brief.

**'507 Patent.**  Masimo relies solely on a conclusory "information and belief" allegation and pleads no facts plausibly showing that O'Reilly and Lamego knew about the '507 Patent.  Also, Masimo never pled that Apple extensively monitors Masimo's patents and improperly raises this new allegation in its brief.  *WCM Indus., Inc. v. IPS Corp.*, which Masimo cites, neither concerned a motion to dismiss nor decided whether knowledge of a patent application supports willfulness; it found the defendant knew of the patent itself.  721 F. App'x 959, 970 n.4 (Fed. Cir. 2018).

Respectfully submitted,

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
   AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  April 18, 2023
10762327 / 12209.00052

POTTER ANDERSON & CORROON LLP

By:   */s/ Bindu A. Palapura*
         David E. Moore (#3983)
         Bindu A. Palapura (#5370)
         Andrew L. Brown (#6766)
         Hercules Plaza, 6th Floor
         1313 N. Market Street
         Wilmington, DE  19801
         Tel:  (302) 984-6000
         dmoore@potteranderson.com
         bpalapura@potteranderson.com
         abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant
Apple Inc.*

11