# EXHIBIT 1

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| Interrogatory No. 4: "For each Asserted Claim, identify all versions of the Apple Watch, current or past, that fall within the scope of that claim and all versions of the Apple Watch, current or past, that do not fall within the scope of that claim, and describe in detail how such version satisfies each element of the Asserted Claim or how such version does not satisfy each element of the Asserted Claim." Source: Ex. 2 at 5. | N/A | 1377 Case: "Apple incorporates by reference the Declaration of Alan D. Ball In Support Of Plaintiff Apple Inc.'s Motion For An Expedited Trial, signed January 29, 2023. Apple Watch Series 4 and Series 5 fall within the scope of the design protected by United States Patent No. D883,279. Apple Watch Series 4 and Series 5 fall within the scope of the design protected by United States Patent No. D947,842. Apple Watch Series 4, Series 5, Series 6, Series 7, Series 8, and Apple Watch Ultra fall within the scope of the design protected by D962,936. Apple further responds that this interrogatory is premature because it seeks expert discovery. Apple will supplement its response in a reasonable time in accordance with any relevant Scheduling Order entered in Case No. 22-1377. Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule." | "Pursuant to Apple's ongoing investigation, Apple also intends to supplement its response to this interrogatory, which Apple intends to serve next week. However, Masimo has failed to identify any authority for its request for Apple to create claim charts showing an element-by-element analysis of which Apple products practice Apple's asserted claims. Apple is aware of no such authority or obligation. Masimo also has not explained why such analysis and opinion are required before expert discovery. Nor has Masimo identified, and nor is Apple aware of, any authority or obligation for Apple to "explain[]" why products that Masimo has not accused of infringement are not covered products. Accordingly, at least until Masimo identifies any authority for its request, at this time Apple will not serve upon Masimo any claim charts concerning Apple's covered products, and Apple will not provide any explanation in response to Masimo's |

[1] For brevity, the objections in Apple's original responses have been omitted.  The full responses can be found in the source documents, which are also exhibits.

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | | Source: Ex. 3 at 13-14.<br><br>1378 Case: "Apple Watch Series 4 devices, Series 5 devices, Series 6 devices, Series 7 devices, Series 8 devices, and Ultra devices may incorporate one or more aspects of the inventions described in one or more of the Asserted Patents in Case No. 22-1378. Apple further responds that this interrogatory is premature because it seeks expert discovery. Apple will supplement its response in a reasonable time in accordance with any relevant Scheduling Order entered in Case No. 22-1378.<br><br>Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule."<br><br>Source: Ex. 4 at 13-14. | Interrogatory No. 2 [sic] as to why unaccused products do not practice Apple's asserted claims."<br><br>Source: Ex. 11 at 3. |

2

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 10: "All agreements between You and the inventors listed on the Apple Asserted Patents, including employment agreements, assignments, acknowledgements, and severance agreements."<br><br>Source: Ex. 5 at 6. | N/A | 1377 Case: "Apple will produce responsive, relevant, and non-privileged employment agreements and assignments with the inventors listed on the Apple Asserted Patents in Apple's possession, custody, or control located by a reasonably diligent search."<br><br>Source: Ex. 6 at 17.<br><br>1378 Case: "Apple will produce responsive, relevant, and non-privileged employment agreements and assignments with the inventors listed on the Apple Asserted Patents in Apple's possession, custody, or control, located by a reasonably diligent search."<br><br>Source: Ex. 7 at 20. | "Through this Request, Masimo seeks severance agreements between Apple and any named inventors who are no longer Apple employees. Apple maintains that these agreements are not relevant to any claims or defenses in this case. Based on Masimo's failure to articulate any reasons to the contrary during the parties' meet and confers, Apple further maintains that Masimo's request for severance agreements is based on mere speculation and constitutes nothing more than a fishing expedition, rendering the Request improper. However, to potentially minimize the parties' disputes, Apple is investigating the existence of any severance agreements and we will promptly update Masimo regarding Apple's response to this Request after the conclusion of that investigation.<br><br>Source: Ex. 11 at 1-2. |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 15: "All documents, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, each version of the Apple Watch and charger."<br><br>Source: Ex. 5 at 7. | "15. All document, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities each version of the Apple Watch and charger."<br><br>Source: Ex. 10 at 3. | 1377 Case: "Apple is willing to meet and confer with Defendants regarding the scope of this request."<br><br>Source: Ex. 6 at 23.<br><br>1378 Case: ""Apple is willing to meet and confer with Defendants regarding the scope of this request."<br><br>Source: Ex. 7 at 26. | "Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple agrees that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control, sufficient to show the efficacy or performance of the back of the Apple Watch Series 4 (and later versions), to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement. D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378)."<br><br>Source: Ex. 11 at 2. |
| RFP No. 16: "All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch."<br><br>Source: Ex. 5 at 7. | "16. All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, | 1377 Case: "Apple will not search for or produce information responsive to this request in Case No. 22-1377."<br><br>Source: Ex. 6 at 24.<br><br>1378 Case: "Apple will not search for or produce information responsive to this request with regard to Apple's claims in Case No. 22-1378. | "Through this Request, Masimo seeks '[a]ll documents, communications, and things referring or related to contemplated or actual filings and supporting studies' exchanged between Apple and the FDA and the FCC concerning various features of Apple Watch. Masimo's Request is extremely overbroad, especially in view of the broad cross-use previously demanded by Masimo. Further, we understand that Apple has |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | irregular heart rhythm notification, or ECG features/functionalities ~~each version of the Apple Watch~~." Source: Ex. 10 at 3. | To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay such discovery, D.I. 58, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request." Source: Ex. 7 at 27. | already produced FDA-related information related to Apple Watch in the parties' prior litigations. Here, however, Masimo has failed to identify any *specific* FDA-related information that is missing from those productions, explain why Masimo now requires additional information, or explain how such information will not be duplicative of information that Apple has produced or will produce in response to Masimo's other Requests. However, although Apple will not produce "all" submissions and communications related to the FDA, Apple is investigating the scope of documents that are responsive to Masimo's narrowed Request to minimize the parties' potential disputes. We will promptly update Masimo regarding Apple's response after the conclusion of that investigation." Ex. 11 at 2. |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 17: "All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch."<br><br>Source: Ex. 5 at 7. | "17. All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning ~~the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch~~ blood oxygen, irregular heart rhythm notification, or ECG features/functionalities each version of the Apple Watch."<br><br>Source: Ex. 10 at 3. | **1377 Case**: "Apple will not search for or produce information responsive to this request in Case No. 22-1377."<br><br>Source: Ex. 6 at 25.<br><br>**1378 Case**: "Apple will not search for or produce information responsive to this request with regard to Apple's claims in Case No. 22-1378.<br><br>To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay such discovery, D.I. 58, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request."<br><br>Source: Ex. 7 at 28. | "Through this Request, Masimo seeks *"[a]ll communications"* exchanged between Apple and the FDA and the FCC concerning various features of Apple Watch. As with Masimo's Request No. 16, this Request is extremely overbroad, especially in view of the broad cross-use Masimo has been granted and Apple's prior production. Further, Masimo has failed to identify any *specific* information it is seeking through this Request. Nor has Masimo explained why communications exchanged between Apple and the FDA or FCC are relevant to any issue in this case. However, although Apple will not produce "all" communications related to the FDA or FCC, Apple is investigating the scope of documents that are responsive to Masimo's narrowed Request to minimize the parties' potential disputes. We will promptly update Masimo regarding Apple's response after the conclusion of that investigation."<br><br>Ex. 11 at 3. |

6

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 24: "All documents and things You produced, served, or filed in *In the Matter of Certain Wearable Electronic Devices with ECG Functionality and Components Thereof*, No. 337-TA-1266 concerning Masimo or any version of the Apple Watch."<br><br>Source: Ex. 5 at 8. | N/A | 1377 Case: "Apple is willing to meet and confer with Defendants regarding the scope of this request."<br><br>Source: Ex. 6 at 32.<br><br>1378 Case: "Apple is willing to meet and confer with Defendants regarding the scope of this request."<br><br>Source: Ex. 7 at 37. | "Through this Request, Masimo seeks *everything* that Apple produced, served, or filed in a completely separate action (*In the Matter of Certain Wearable Electronic Devices with ECG Functionality and Components Thereof*, No. 337-TA-1266), which involves *different* parties and *different* patents. Masimo's request is, essentially, an improper request for cross-use of discovery materials from a *third*, years-long litigation and a baseless assertion that the Court's current broad cross-use ruling in this case is somehow deficient. Moreover, Masimo has again failed to explain what *specific* and relevant information it is seeking through this Request that is not available through either Apple's prior productions or Apple's impending productions in response to Masimo's other Requests. Accordingly, at least until Masimo provides that information, and in view of the broad cross-use provisions adopted by the Court in this case, Apple will not search for or produce materials in response to this Request." |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| **RFP No. 42:** "All documents, communications, and things describing the operation of the Apple Watch, including, without limitation, product brochures, user manuals, instructional materials, and directions for use." Source: Ex. 5 at 12. | "42. All documents, communications, and things describing the operation of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch blood GUI, or the Apple Watch irregular heart rhythm oxygen, notification, or ECG features/functionalities Apple Watch, including, without limitation, product brochures, user manuals, instructional materials, and directions for use." Source: Ex. 10 at 3. | **1377 Case:** "Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." Source: Ex. 6 at 48. **1378 Case:** "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378. To the extent Defendants contend this request relates to Counter-Claimants' | Ex. 11 at 4. "Subject to Masimo's narrowing amendments to this Request, there is no reason for Apple to supplement the scope of its response. In the 1377 case, Apple has already agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." In the 1378 case, Apple has further agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the operation of the accused features of Apple Watch located by a reasonably diligent search." The scope of those responses covers |

8

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | | Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the operation of the accused features of Apple Watch located by a reasonably diligent search." | relevant information in Masimo's narrowing amendments. If Masimo disagrees, please provide Masimo's availability to meet and confer to identify what *specific* information that Masimo asserts is not covered." |
| | | Source: Ex. 7 at 57. | Ex. 11 at 4-5. |
| RFP No. 43: "All training materials concerning any of the Apple Watch, including, without limitation, training manuals, training videos, presentations, and handouts." <br><br> Source: Ex. 5 at 12. | "43. All training materials ~~referring or relating to the design of the back of the Apple Watch,~~ the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities ~~concerning any of the Apple Watch,~~ including, without limitation, training manuals, training videos, presentations, and handouts." <br><br> Source: Ex. 10 at 3. | 1377 Case: "Apple will produce responsive, relevant, and non-privileged training materials in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." | "Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search." <br><br> Ex. 11 at 5. |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | | Source: Ex. 6 at 49. | |
| | | **1378 Case:** "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378. | |
| | | To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request." | |
| **RFP No. 44:** "All marketing materials concerning any Apple Watch, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product | "44. All marketing materials referring or relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG | Source: Ex. 7 at 58.  **1377 Case:** "Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show marketing materials for the Apple Asserted Patents in Case No. 22-1377 and each Apple Watch product that | "Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| brochures, informational materials, and videos." Source: Ex. 5 at 12. | features/functionalities ~~concerning any Apple Watch~~, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos." Source: Ex. 10 at 3. | practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." Source: Ex. 6 at 50-51. 1378 Case: "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378. To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request." Source: Ex. 7 at 59. | possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search." Ex. 11 at 5. |

11

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 45: "All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any Apple Watch." Source: Ex. 5 at 12. | "45. All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities any Apple Watch." Source: Ex. 10 at 3. | 1377 Case: "Apple is willing to meet and confer with Defendants regarding the scope of this request." Source: Ex. 6 at 51. 1378 Case: "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378. To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request." Source: Ex. 7 at 60. | "Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1377 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control, sufficient to show the efficacy or performance of the back of the Apple Watch Series 4 (and later versions), to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement. D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378). Apple further hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search." Ex. 11 at 5. |

12

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 46: "All videos or DVDs demonstrating or showing the operation of the Apple Watch."<br><br>Source: Ex. 5 at 12. | "46. All videos or DVDs ~~demonstrating or showing~~ sufficient to show the operation of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, and the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities ~~the Apple Watch~~."<br><br>Source: Ex. 10 at 3. | 1377 Case: "Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control videos or DVDs sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search."<br><br>Source: Ex. 6 at 52.<br><br>1378 Case: "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.<br><br>To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the | "Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search."<br><br>Ex. 11 at 6. |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | | Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request." Source: Ex. 7 at 61-62. | |
| RFP No. 47: "All technical documents for the Apple Watch, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes." Source: Ex. 5 at 12. | "47. All ~~technical documents for the Apple Watch, including without limitation, product specifications, diagrams, schematics, memos, conceptual~~ or technical drawings, design requirements documents, ~~design capture documents,~~ technical requirements documents, ~~product briefs, product plans,~~ product requirements, ~~document trees, assembly design documents,~~ design review documents, system design documents, and fabricating documents referring or relating to the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG | 1377 Case: "Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search and responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case | "Subject to Masimo's narrowing amendments to this Request, there is no reason for Apple to supplement the scope of its response. In the 1377 case, Apple has already agreed to search for and produce, among other things, "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." In the 1378 case, Apple |

14

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | features/functionalities, manufacturing documents, and technical meeting minutes" | No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." | has further agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the technical specifications of the accused features of Apple Watch located by a reasonably diligent search." The scope of Apple's responses covers relevant information in Masimo's narrowing amendments. If Masimo disagrees, please provide Masimo's availability to meet and confer to identify what *specific* information that Masimo asserts is not covered." |
| | Source: Ex. 10 at 4. | Source: Ex. 6 at 54. | |
| | | 1378 Case: "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378. | Ex. 11 at 6. |
| | | To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the technical specifications of the accused | |

15

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| RFP No. 49: "All documents and things concerning the research, design, and development of any Apple Watch or any component of any Apple Watch, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, meeting minutes, presentations, and prototypes." <br><br> Source: Ex. 5 at 13. | "49. All documents and things concerning the research, design, and development of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities, any Apple Watch or any component of any Apple Watch, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, meeting minutes, presentations and prototypes." <br><br> Source: Ex. 10 at 4. | features of Apple Watch located by a reasonably diligent search." <br><br> Source: Ex. 7 at 63. <br><br> 1377 Case: "Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search and responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 | "Subject to Masimo's narrowing amendments to this Request, there is no reason for Apple to supplement its response. In the 1377 case, Apple has already agreed to search for and produce, among other things, "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." In the 1378 case, Apple has further agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design and development of the accused features of Apple Watch |

Exhibit 1

| Masimo's Original Request | Masimo's Narrowed Request | Apple's Original Response[1] | Apple's Revised Response |
|---|---|---|---|
| | | located by a reasonably diligent search." <br><br> Source: Ex. 6 at 56-57. <br><br> 1378 Case: "Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378. <br><br> To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design and development of the accused features of Apple Watch located by a reasonably diligent search." <br><br> Source: Ex. 7 at 66. | located by a reasonably diligent search." The scope of Apple's responses covers relevant information in Masimo's narrowing amendments. If Masimo disagrees, please provide Masimo's availability to meet and confer to identify what *specific* information that Masimo asserts is not covered." <br><br> Ex. 11 at 6-7. |

17

# EXHIBIT 2

**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1377 (MN) |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| Defendants. | |
| APPLE INC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1378 (MN) |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| Defendants. | |

**DEFENDANTS MASIMO CORPORATION AND SOUND UNITED, LLC'S FIRST SET OF INTERROGATORIES TO APPLE INC. (1-5)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Masimo Corporation and Sound United, LLC (collectively "Defendants") request that Plaintiff Apple Inc. ("Plaintiff") answer, under oath, the interrogatories set forth herein within thirty (30) days from the date of service. Answers should be produced by electronic means to counsel for Defendants.

To the extent that any answer to any of these interrogatories may at any time be incomplete or incorrect due to information acquired by Plaintiff subsequent to the service of its answers, Plaintiff shall promptly serve supplemental answers reflecting the complete and correct information, pursuant to Rule 26 of the Federal Rules of Civil Procedure.

Defendants have filed motions to consolidate *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.).  Accordingly, the interrogatories contained herein are intended to apply to a consolidated action involving both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.).  Therefore, in responding to these interrogatories, Plaintiff must respond with respect to both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.).

## **DEFINITIONS**

Unless the context indicates otherwise, the following words and phrases are defined and used herein as follows:

1.      "Apple Watch" means the product or products You make, have made, offer to sell, offered to sell, sell, or sold under the designation or tradename "Apple Watch," including but not limited to Apple Watch (first generation), Apple Watch Series 0, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch Series 7, Apple Watch Series 8, Apple Watch Ultra, and Apple Watch SE.

2.      "Asserted Claim" shall mean the claims of the Asserted Patents asserted by Plaintiff against Defendants in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.), including but not limited to claim 1 of the '257 Patent, claim 9 of the '783 Patent, claim 7 of the '491 Patent, claim 9 of the '054 Patent, claim 9 of the '352 Patent, claim 1 of the '483 Patent, the claim of the 'D279 Patent, the claim of the 'D842 Patent, the claim of the 'D936 patent, and the

claim of the 'D131 Patent, and any claim that Plaintiff may include in any infringement contentions.

3.     "Asserted Patents" shall mean U.S. Patent Nos. 10,076,257 (the "'257 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 10,987,054 (the "'054 Patent"), 11,106,352 (the "'352 Patent"), 11,474,483 (the "'483 Patent"), D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), D735,131 (the "'D131 Patent"), any additional patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Defendants.

4.     The terms "in relation to" means concerning, referring to, describing, evidencing, comprising, constituting, supporting, or tending to negate.

5.     The term "document" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

6.     The term "communication" shall mean any transmittal of information regardless of the manner in which the communication(s) took place, including but not limited to, face-to-face conversations, correspondence, electronic or computer mail, telephone calls, facsimile communications, or telegrams.

7.     The term "thing" shall mean all tangible objects of any type, composition, construction, or nature.

8.      "You" and "your" means Apple Inc. and any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Apple, Inc.

9.      The term "including" shall be construed broadly, as "including but not limited to" or "including without limitation."

10.     The term "person" means any natural person or any legal entity, including without limitation any business or governmental entity or association.

11.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa; "any" and "all" mean one or more.

12.     The singular form of any noun or pronoun used herein includes within its meaning the plural form thereof and vice versa; the neuter, masculine or feminine form of any pronoun used herein includes within its meaning the neuter, masculine and feminine forms; and the use herein of any tense of any verb includes within its meaning all other tenses of the verb. In every such instance, the specific request shall be construed in the broadest sense so as to call for the most complete and inclusive answer.

13.     "All" shall be construed as all and each, and "each" shall be construed as all and each.

## I.      INTERROGATORIES

**INTERROGATORY NO. 1:**

For each Asserted Claim, identify and define the relevant field of art and the level of ordinary skill in the relevant art or designer of ordinary skill in the art You contend is applicable.

**INTERROGATORY NO. 2:**

For each inventor named on the Asserted Patents, identify (a) their current address, telephone numbers, employer, and title; (b) if the inventor is no longer employed by You, the circumstances of his/her departure; and (c) whether that inventor is represented by counsel in relation to this case.

**INTERROGATORY NO. 3:**

For each inventor named on the Asserted Patents, describe the named inventor's contribution to each Asserted Claim, including an identification (by Bates number) of all documents, communications, and things that reflect each named inventor's contribution.

**INTERROGATORY NO. 4:**

For each Asserted Claim, identify all versions of the Apple Watch, current or past, that fall within the scope of that claim and all versions of the Apple Watch, current or past, that do not fall within the scope of that claim, and describe in detail how such version satisfies each element of the Asserted Claim or how such version does not satisfy each element of the Asserted Claim.

**INTERROGATORY NO. 5:**

For each Asserted Claim, identify all products or services, other than Apple Watch, whether sold by You or another entity, current or past, that fall within the scope of that claim, and for each such product or service, identify each person or entity that makes, has made, offers for sale, has offered for sale, sells, or has sold the product or service, and identify the first and last dates the product or service was made, offered for sale, and sold.

Respectfully submitted,

March 16, 2023

PHILLIPS MCLAUGHLIN & HALL, P.A.

*Of Counsel:*

By: */s/ John C. Phillips, Jr.*
 John C. Phillips, Jr. (No. 110)
 Megan C. Haney (No. 5016)
 1200 North Broom Street
 Wilmington, DE 19806
 (302) 655-4200 Telephone
 (302) 655-4210 Fax
 jcp@pmhdelaw.com
 mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Perry D. Oldham
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2023, a true and correct copy of Defendants Masimo Corporation and Sound United, LLC's First Set of Interrogatories to Apple Inc. (1-5) was served on the following counsel of record at the addresses and in the manner indicated:

*VIA ELECTRONIC MAIL:*

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

*/s/ Megan C. Haney*
Megan C. Haney (#5016)

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**PLAINTIFF APPLE INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS'
FIRST SET OF INTERROGATORIES (NOS. 1-5)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the District of Delaware, Plaintiff Apple Inc. hereby provides the following Objections and Responses to Defendants Masimo Corporation's ("Masimo") and Sound United, LLC's ("Sound United") (collectively, "Defendants") First Set of Interrogatories to Apple (Nos. 1-5).  Apple's discovery and investigation in connection with this action are continuing.  As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to supplement or amend these objections and responses to the extent allowed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any applicable scheduling orders as discovery and Apple's investigation in the action proceeds.

**GENERAL OBJECTIONS**

Apple makes the following General Objections to Defendants' First Set of Interrogatories, which apply to each interrogatory regardless of whether the General Objections are specifically incorporated into the specific objections and responses below.

1.      Apple objects to Defendants' improper, preamble assertion that "the interrogatories contained herein are intended to apply to a consolidated action involving both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) [("Case No. 22-1377")] and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) [("Case No. 22-1378")].  Apple objects to Defendants' attempt to treat Case No. 22-1377 and Case No. 22-1378 as consolidated.  Defendants' interrogatories served in Case No. 22-1377 apply only to Case No. 1377.  Accordingly, Apple provides these responses solely with regard to Case No. 22-1377 and objects to the use of these responses in Case No. 22-1378.

2.      Apple objects to each interrogatory, definition, and instruction to the extent it calls for information that is protected from discovery by the attorney-client privilege, work product doctrine, joint defense/common interest privilege, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable Orders of this Court, and/or relevant statutory or case law.  Inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity.

3.      Apple objects to each interrogatory, definition, and instruction to the extent it seeks to impose any requirements or obligations in addition to or different from those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable orders of this Court, any stipulation or agreement between the parties, and/or relevant statutory or case law.

4.      Apple objects to each interrogatory, definition, and instruction to the extent it seeks information that: (a) is not proportional to the needs of the case; (b) is not relevant to any party's claims or defenses; (c) is unreasonably cumulative, repetitive, or duplicative; (d) has already been provided to Defendants; (e) creates a burden or expense outweighing any likely benefit; (f) is not restricted to any particular time frame; and/or (g) is overbroad.

5.      Apple objects to each interrogatory, definition, and instruction to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

6.      Apple objects to each interrogatory to the extent it calls for confidential and/or proprietary information of any individual or entity other than Apple, except as allowed by any court orders, including any applicable orders of this Court, and/or relevant statutory or case law governing the disclosure of such information.

7.      Apple objects to each interrogatory, definition, and instruction to the extent they conflict with or purport to require the production of information prohibited from disclosure by protective orders in other litigations or improperly seek to cross-use information from other litigations.

8.      Apple objects to each interrogatory to the extent it calls for legal conclusions, presents questions of pure law, or calls for expert opinion.

9.      Apple objects to each interrogatory to the extent it seeks mental impressions, legal conclusions, legal opinions, or legal theories of Apple.

10.     Apple objects to each interrogatory as premature to the extent it calls for discovery, including discovery concerning initial disclosures, the parties' contentions, claim construction, or expert testimony, in advance of the dates set by the Court for disclosure of such information in the relevant scheduling orders.

11.     Apple objects to each interrogatory to the extent it exceeds the permissible number of interrogatories, including subparts.

12.     Apple objects to each interrogatory as unduly burdensome to the extent the discovery sought could be obtained through less intrusive means or without imposing a disproportional burden on Apple or on Apple's litigation counsel.

13.     Apple objects to each definition and instruction to the extent it purports to alter the plain meaning and/or scope of any specific interrogatory on the ground that such alteration renders the interrogatory vague, ambiguous, overbroad, or uncertain.

14.     Apple objects to each interrogatory, definition, and instruction as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

15.     Apple objects to each interrogatory as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case, to the extent it calls for information beyond the relevant temporal or geographic scope of this matter.

16.     Apple objects to each interrogatory using the term "Apple Watch," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to

4

the needs of the case. For example, Masimo's definition of "Apple Watch" includes versions of Apple Watch that are unrelated to the parties' claims and defenses in this case.

17.    Apple objects to each interrogatory using the term "Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Asserted Patents" to include any patent not asserted by Apple in this case, but asserted by Apple in Case No. 22-1378, including but not limited to United States Patent Nos. 10,076,257 ("the '257 patent"), 10,627,783 ("the '783 patent"), 10,942,491 ("the '491 patent"), 10,987,054 ("the '054 patent"), 11,106,352 ("the '352 patent"), and 11,474,483 ("the '483 patent").  Apple interprets "Asserted Patents" in these responses as one or more of the patents asserted by Apple in this case, Case No. 22-1377, namely United States Patent Nos. D883,279 ("the 'D279 Patent"), D947,842 ("the 'D842 Patent"), D962,936 ("the 'D936 Patent"), and D735,131 ("the 'D131 Patent").

18.    Apple objects to each interrogatory using the term "Asserted Claim," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Asserted Claim" to include any patent claim not asserted by Apple in this case, but asserted by Apple in Case No. 22-1378, including but not limited to "claim 1 of the '257 Patent, claim 9 of the '783 Patent, claim 7 of the '491 Patent, claim 9 of the '054 Patent, claim 9 of the '352 Patent, claim 1 of the '483 Patent."  Apple interprets "Asserted Claim" as one or more claims in patents asserted by Apple in this case, Case No. 22-1377, including the 'D279 Patent, the 'D842 Patent, the 'D936 Patent, and the 'D131 Patent.

5

19.     Apple objects to each interrogatory using the term "relation to," or other derivations thereof as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.

20.     Apple objects to each interrogatory using the terms "document," "communication," and "thing," as well Defendants' definition of those terms, to the extent it seeks materials beyond what is contemplated by Federal Rule of Civil Procedure 34, applicable Local Rules of this Court, or agreements entered into by the parties.  Apple objects to each interrogatory to the extent that it seeks to require Apple to conduct a general search of email or other ESI to identify responsive documents.  Apple does not intend to search and produce emails or ESI based on any such search, absent a showing of good cause by Defendants.  Defendants have not made such a showing with respect to any request.  Apple will not produce tangible things unless specifically designated in the response.

21.     Apple objects to each interrogatory using the term "Your" and "Your," as well as Defendants' definition of those terms, to the extent that those definitions include any persons or entities other than Apple Inc.

22.     Apple objects to each interrogatory, definition, and/or instruction as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense nor proportional to the needs of the case to the extent the interrogatory, definition, and/or instruction seeks identification of "all" facts, documents, persons, evidence, or bases, or that purports to require Apple to marshal "all" evidence concerning any issue in dispute.

23.     Apple objects to each interrogatory using the term "person," as well as Defendants' definition of that term, as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each

use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.  Apple interprets Defendants' definition of "Person" as any natural person or legal entity.

24.     Apple's discovery and investigation in connection with this case are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to amend or supplement these objections and responses as discovery and Apple's investigation in this case proceeds.

## OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

For each Asserted Claim, identify and define the relevant field of art and the level of ordinary skill in the relevant art or designer of ordinary skill in the art You contend is applicable.

### RESPONSE TO INTERROGATORY NO. 1:

Apple incorporates by reference its General Objections.  Apple further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.   Apple further objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information that is not relevant to any  claim or issue in this case.  For example, this interrogatory seeks information about patents asserted in Case No. 22-1378 and seeks information concerning the "relevant field of art" and "level of ordinary skill in the relevant art" for utility patents in this design patent case.  Apple further objects to this interrogatory as vague and ambiguous because it seeks a definition of "the relevant field of art."  Apple further objects to this interrogatory to the extent that it seeks legal conclusions and expert opinions.  Apple further objects to this interrogatory as premature to the extent it calls for contentions and expert discovery in advance of dates set by the Court for

De Iuliis; M. Evans Hankey; Julian Hoenig; Richard Howarth; Jonathan Ive; Duncan Kerr; Marc Newson; Matthew Rohrbach; Peter Russell-Clarke; Benjamin Shaffer; Mikael Silvanto; Christopher Stringer; Eugene Whang; and Rico Zorkendorfer.

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

**INTERROGATORY NO. 4:**

For each Asserted Claim, identify all versions of the Apple Watch, current or past, that fall within the scope of that claim and all versions of the Apple Watch, current or past, that do not fall within the scope of that claim, and describe in detail how such version satisfies each element of the Asserted Claim or how such version does not satisfy each element of the Asserted Claim.

**RESPONSE TO INTERROGATORY NO. 4:**

Apple incorporates by reference its General Objections. Apple further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information that is not relevant to any claim or issue in this case. For example, this interrogatory seeks information about patents asserted in Case No. 22-1378 and about products that do not practice the Asserted Claims. Apple further objects to this interrogatory as vague, ambiguous, unduly burdensome and not proportional to the needs of the case because it seeks information related to "all versions of Apple Watch," versions of Apple Watch that "fall within the scope" of an asserted claim, versions of Apple Watch that "do not fall within the scope" of an asserted claim," "how such version satisfies each element" of an asserted claim, and "how such version does not satisfy each element" of an

asserted claim.  Apple further objects to this interrogatory to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this interrogatory to the extent that it seeks legal conclusions and expert opinions.  Apple further objects to this interrogatory as premature to the extent it calls for contentions and expert discovery in advance of dates set by the Court for disclosure of such information in a scheduling order.  Apple will disclose expert opinions in accordance with the applicable scheduling order of the Court.

Based on its investigation to date, and subject to and without waiver of the foregoing General Objections and specific objections, and to the extent that this interrogatory can be understood, Apple responds as follows with regard to Case No. 22-1377:

Apple incorporates by reference the Declaration of Alan D. Ball In Support Of Plaintiff Apple Inc.'s Motion For An Expedited Trial, signed January 29, 2023.  Apple Watch Series 4 and Series 5 fall within the scope of the design protected by United States Patent No. D883,279.  Apple Watch Series 4 and Series 5 fall within the scope of the design protected by United States Patent No. D947,842.  Apple Watch Series 4, Series 5, Series 6, Series 7, Series 8, and Apple Watch Ultra fall within the scope of the design protected by D962,936.

Apple further responds that this interrogatory is premature because it seeks expert discovery.  Apple will supplement its response in a reasonable time in accordance with any relevant Scheduling Order entered in Case No. 22-1377.

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

14

**INTERROGATORY NO. 5:**

For each Asserted Claim, identify all products or services, other than Apple Watch, whether sold by You or another entity, current or past, that fall within the scope of that claim, and for each such product or service, identify each person or entity that makes, has made, offers for sale, has offered for sale, sells, or has sold the product or service, and identify the first and last dates the product or service was made, offered for sale, and sold.

**RESPONSE TO INTERROGATORY NO. 5:**

Apple incorporates by reference its General Objections. Apple further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information that is not relevant to any claim or issue in this case. For example, this interrogatory seeks information about patents asserted in Case No. 22-1378, products that do not practice the Asserted Claims, and persons who are not parties to this case. Apple further objects to this interrogatory as vague, ambiguous, unduly burdensome and not proportional to the needs of the case because it seeks information related to "all products or services" that "fall within the scope of that claim," and an identification of "each person or entity" that "makes, has made, offers for sale, has offered for sale, sells, or has sold the product or service." Apple further objects to this interrogatory to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available. Apple further objects to this interrogatory

15

to the extent it purports to impose upon Apple the obligation to investigate or discover information from third-parties.  Apple further objects to this interrogatory to the extent that it seeks legal conclusions and expert opinions.  Apple further objects to this interrogatory as premature to the extent it calls for contentions and expert discovery in advance of dates set by the Court for disclosure of such information in a scheduling order.  Apple will disclose expert opinions in accordance with the applicable scheduling order of the Court.

Based on its investigation to date, and subject to and without waiver of the foregoing General Objections and specific objections, and to the extent that this interrogatory can be understood, Apple responds as follows with regard to Case No. 22-1377:

Apple incorporates by reference the Declaration of Alan D. Ball In Support Of Plaintiff Apple Inc.'s Motion For An Expedited Trial, signed January 29, 2023.

Masimo's W1 smartwatch falls within the scope of the designs protected by United States Patent Nos. D883,279, D947,842, and D962,936.  The charger sold with Masimo's W1 smartwatch falls within the scope of the design protected by United States Patent No. D735,131.  W1 and its charger are made, offered for sale, and sold by Masimo and Sound United.  Apple understands that Defendants' first sale of W1 and its charger occurred in or around August 31, 2022, and those sales are ongoing.

Apple Watch's charger falls within the scope of the design protected by United States Patent No. D735,131.

Apple further responds that this interrogatory is premature because it seeks expert discovery.  Apple will supplement its response in a reasonable time in accordance with any relevant Scheduling Order entered in Case No. 22-1377.

16

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  April 17, 2023
10759929 / 12209.00051

By:  */s/ Bindu A. Palapura*
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Andrew L. Brown (#6766)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com
       abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*

17

## CERTIFICATE OF SERVICE

I, Bindu A. Palapura, hereby certify that on April 17, 2023, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

## VIA ELECTRONIC MAIL

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE  19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Jared C. Bunker
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Knobbe.MasimoDE@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park E., Suite 600
Los Angeles, CA  90067
Knobbe.MasimoDE@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Knobbe.MasimoDE@knobbe.com

_/s/ Bindu A. Palapura_
Bindu A. Palapura

10643743/12209.00051

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378-MN-JLH |
| | ) | |
| MASIMO CORPORATION and | ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION and | ) | |
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**PLAINTIFF APPLE INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS'
FIRST SET OF INTERROGATORIES (NOS. 1-5)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules

of the United States District Court for the District of Delaware, Plaintiff Apple Inc. hereby provides

the following Objections and Responses to Defendants Masimo Corporation's ("Masimo") and

Sound United, LLC's ("Sound United") (collectively, "Defendants") First Set of Interrogatories to

Apple (Nos. 1-5).   Apple's discovery and investigation in connection with this action are

continuing.  As a result, Apple's objections and responses are limited to information obtained and

reviewed to date and are given without prejudice to Apple's right to supplement or amend these

objections and responses to the extent allowed by the Federal Rules of Civil Procedure, the Local

Rules of this Court, and any applicable scheduling orders as discovery and Apple's investigation in the action proceeds.

## GENERAL OBJECTIONS

Apple makes the following General Objections to Defendants' First Set of Interrogatories, which apply to each interrogatory regardless of whether the General Objections are specifically incorporated into the specific objections and responses below.

1.     Apple objects to Defendants' improper, preamble assertion that "the interrogatories contained herein are intended to apply to a consolidated action involving both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) [("Case No. 22-1377"]) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) [("Case No. 22-1378")]." Apple objects to Defendants' attempt to treat Case No. 22-1377 and Case No. 22-1378 as consolidated. Defendants' interrogatories served in Case No. 22-1378 apply only to Case No. 22-1378. Accordingly, Apple provides these responses solely with regard to Case No. 22-1378 and objects to the use of these responses in Case No. 22-1377.

2.     Apple objects to each interrogatory, definition, and instruction to the extent it calls for information that is protected from discovery by the attorney-client privilege, work product doctrine, joint defense/common interest privilege, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable Orders of this Court, and/or relevant statutory or case law. Inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity.

3.     Apple objects to each interrogatory, definition, and instruction to the extent it seeks to impose any requirements or obligations in addition to or different from those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court,

any applicable orders of this Court, any stipulation or agreement between the parties, and/or relevant statutory or case law.

4.  Apple objects to each interrogatory, definition, and instruction to the extent it seeks information that: (a) is not proportional to the needs of the case; (b) is not relevant to any party's claims or defenses; (c) is unreasonably cumulative, repetitive, or duplicative; (d) has already been provided to Defendants; (e) creates a burden or expense outweighing any likely benefit; (f) is not restricted to any particular time frame; and/or (g) is overbroad.

5.  Apple objects to each interrogatory, definition, and instruction to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

6.  Apple objects to each interrogatory to the extent it calls for confidential and/or proprietary information of any individual or entity other than Apple, except as allowed by any court orders, including any applicable orders of this Court, and/or relevant statutory or case law governing the disclosure of such information.

7.  Apple objects to each interrogatory, definition, and instruction to the extent they conflict with or purport to require the production of information prohibited from disclosure by protective orders in other litigations or improperly seek to cross-use information from other litigations.

8.  Apple objects to each interrogatory to the extent it calls for legal conclusions, presents questions of pure law, or calls for expert opinion.

9.      Apple objects to each interrogatory to the extent it seeks mental impressions, legal conclusions, legal opinions, or legal theories of Apple.

10.     Apple objects to each interrogatory as premature to the extent it calls for discovery, including discovery concerning initial disclosures, the parties' contentions, claim construction, or expert testimony,  in advance of the dates set by the Court for disclosure of such information in the relevant scheduling orders.

11.     Apple objects to each interrogatory to the extent it exceeds the permissible number of interrogatories, including subparts.

12.     Apple objects to each interrogatory as unduly burdensome to the extent the discovery sought could be obtained through less intrusive means or without imposing a disproportional burden on Apple or on Apple's litigation counsel.

13.     Apple objects to each definition and instruction to the extent it purports to alter the plain meaning and/or scope of any specific interrogatory on the ground that such alteration renders the interrogatory vague, ambiguous, overbroad, or uncertain.

14.     Apple objects to each interrogatory as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

15.     Apple objects to each interrogatory, definition, and instruction as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  Specifically, Apple objects to each request to the extent it seeks discovery (1) not specific to any accused product in Case No. 22-1378 and/or (2) regarding acts (*e.g.*, making, using, selling, and offering for sale, of any accused product) outside of the United States.  To the extent Defendants request discovery not specific to an accused product

and/or outside of the United States, each such request is overbroad, unduly burdensome, and irrelevant as calling for discovery outside the relevant temporal or geographic scope of this matter.

16.     Apple objects to each interrogatory as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case, to the extent it calls for information beyond any temporal limitations of this case.  For example, pursuant to 35 U.S.C. § 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . for infringement in the action."

17.     Apple objects to each interrogatory as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case, to the extent it calls for information beyond the relevant temporal or geographic scope of this matter.

18.     Apple objects to each interrogatory using the term "Apple Watch," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  For example, Masimo's definition of "Apple Watch" includes versions of Apple Watch that are unrelated to the parties' claims and defenses in this case.

19.     Apple objects to each interrogatory using the term "Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Asserted Patents" to include any patent not asserted by Apple in this case, but asserted by Apple in Case No. 22-1377, including but not limited to United States Patent Nos. D883,279 ("the 'D279 Patent"), D947,842 ("the 'D842 Patent"), D962,936 ("the 'D936 Patent"), and D735,131 ("the

'D131 Patent").  Apple interprets "Asserted Patents" in these responses as one or more of the patents asserted by Apple in this case, Case No. 22-1378, namely United States Patent Nos. 10,076,257 ("the '257 patent"), 10,627,783 ("the '783 patent"), 10,942,491 ("the '491 patent"), 10,987,054 ("the '054 patent"), 11,106,352 ("the '352 patent"), and 11,474,483 ("the '483 patent").

20.     Apple objects to each interrogatory using the term "Asserted Claim," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Asserted Claim" to include any patent claim not asserted by Apple in this case, but asserted by Apple in Case No. 22-1377, including but not limited to "the claim of the 'D279 Patent, the claim of the 'D842 Patent, the claim of the 'D936 patent, and the claim of the 'D131 Patent."  Apple interprets "Asserted Claim" as one or more claims in patents asserted by Apple in this case, Case No. 22-1378, including the '257 patent, the '783 patent, the '491 patent, the '054 patent, the '352 patent, and the '483 patent.

21.     Apple objects to each interrogatory using the term "relation to" or other derivations thereof as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.

22.     Apple objects to each interrogatory using the terms "document," "communication," and "thing," as well as Defendants' definition of those terms, to the extent it seeks materials beyond what is contemplated by Federal Rule of Civil Procedure 34, applicable Local Rules of this Court, or agreements entered into by the parties.  Apple objects to each interrogatory to the extent that it seeks to require Apple to conduct a general search of email or other ESI to identify responsive

documents.  Apple does not intend to search and produce emails or ESI based on any such search, absent a showing of good cause by Defendants.  Defendants have not made such a showing with respect to any request.  Apple will not produce tangible things unless specifically designated in the response.

23.     Apple objects to each interrogatory using the term "Your" and "Your," as well as Defendants' definition of those terms, to the extent that those definitions include any persons or entities other than Apple Inc.

24.     Apple objects to each interrogatory, definition, and/or instruction as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense nor proportional to the needs of the case to the extent the interrogatory, definition, and/or instruction seeks identification of "all" facts, documents, persons, evidence, or bases, or that purports to require Apple to marshal "all" evidence concerning any issue in dispute.

25.     Apple objects to each interrogatory using the term "person," as well as Defendants' definition of that term, as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.  Apple interprets Defendants' definition of "Person" as any natural person or legal entity.

26.     Apple's discovery and investigation in connection with this case are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to amend or supplement these objections and responses as discovery and Apple's investigation in this case proceeds.

The following inventors made a substantial and not just superficial or insignificant contribution to the conception of one or more of the claimed inventions in United States Patent No. 11,474,483:  Fletcher Rothkopf; Jonathan Ive; Julian Hoenig; and Rico Zorkendorfer.

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

**INTERROGATORY NO. 4:**

For each Asserted Claim, identify all versions of the Apple Watch, current or past, that fall within the scope of that claim and all versions of the Apple Watch, current or past, that do not fall within the scope of that claim, and describe in detail how such version satisfies each element of the Asserted Claim or how such version does not satisfy each element of the Asserted Claim.

**RESPONSE TO INTERROGATORY NO. 4:**

Apple incorporates by reference its General Objections. Apple further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information that is not relevant to any claim or issue in this case.  For example, this interrogatory seeks information about patents asserted in Case No. 22-1377 and about products that do not practice the Asserted Claims. Apple further objects to this interrogatory as vague, ambiguous, unduly burdensome and not proportional to the needs of the case because it seeks information related to "all versions of Apple Watch," versions of Apple Watch that "fall within the scope" of an asserted claim, versions of Apple Watch that "do not fall within the scope" of an asserted claim, "how such version satisfies each element" of an asserted claim, and "how such version does not satisfy each element" of an

asserted claim.  Apple further objects to this interrogatory to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this interrogatory to the extent that it seeks legal conclusions and expert opinions.  Apple further objects to this interrogatory as premature to the extent it calls for contentions and expert discovery in advance of dates set by the Court for disclosure of such information in a scheduling order.  Apple will disclose expert opinions in accordance with the applicable scheduling order of the Court.

Based on its investigation to date, and subject to and without waiver of the foregoing General Objections and specific objections, and to the extent that this interrogatory can be understood, Apple responds as follows with regard to Case No. 22-1378:

Apple Watch Series 4 devices, Series 5 devices, Series 6 devices, Series 7 devices, Series 8 devices, and Ultra devices may incorporate one or more aspects of the inventions described in one or more of the Asserted Patents in Case No. 22-1378.

Apple further responds that this interrogatory is premature because it seeks expert discovery.  Apple will supplement its response in a reasonable time in accordance with any relevant Scheduling Order entered in Case No. 22-1378.

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

**INTERROGATORY NO. 5:**

For each Asserted Claim, identify all products or services, other than Apple Watch, whether sold by You or another entity, current or past, that fall within the scope of that claim, and for each

such product or service, identify each person or entity that makes, has made, offers for sale, has offered for sale, sells, or has sold the product or service, and identify the first and last dates the product or service was made, offered for sale, and sold.

**RESPONSE TO INTERROGATORY NO. 5:**

Apple incorporates by reference its General Objections. Apple further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information that is not relevant to any claim or issue in this case.  For example, this interrogatory seeks information about patents asserted in Case No. 22-1377, products that do not practice the Asserted Claims, and persons who are not parties to this case.  Apple further objects to this interrogatory as vague, ambiguous, unduly burdensome and not proportional to the needs of the case because it seeks information related to "all products or services" that "fall within the scope of that claim," and an identification of "each person or entity" that "makes, has made, offers for sale, has offered for sale, sells, or has sold the product or service."  Apple further objects to this interrogatory to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this interrogatory to the extent that it seeks legal conclusions and expert opinions.  Apple further objects to this interrogatory to the extent it purports to impose upon Apple the obligation to investigate or discover information from third-parties.  Apple further objects to this interrogatory as premature to the extent

it calls for contentions and expert discovery in advance of dates set by the Court for disclosure of such information in a scheduling order.  Apple will disclose expert opinions in accordance with the applicable scheduling order of the Court.

Based on its investigation to date, and subject to and without waiver of the foregoing General Objections and specific objections, and to the extent that this interrogatory can be understood, Apple responds as follows with regard to Case No. 22-1378:

Apple identifies, for each Asserted Patent in Case No. 22-1378, the following Masimo products presently known to it that fall within the scope of one or more Asserted Patents:

| Patent | Practicing Products (other than Apple Watch) | Dates Available | Manufacturer |
|--------|-----------------------------------------------|-----------------|--------------|
| '783 Patent | Masimo W1 | August 31, 2022 to present | Masimo |
| '491 Patent | Masimo W1 | August 31, 2022 to present | Masimo |
| '483 Patent | Masimo W1 | August 31, 2022 to present | Masimo |
| '257 Patent | Masimo W1 | August 31, 2022 to present | Masimo |
| '054 Patent | Masimo W1 | August 31, 2022 to present | Masimo |
| '352 Patent | Masimo W1 | August 31, 2022 to present | Masimo |

Apple incorporates by reference its response to interrogatory no. 4, which states that Apple Watch Series 4 devices, Series 5 devices, Series 6 devices, Series 7 devices, Series 8 devices, and Ultra devices may incorporate one or more aspects of the inventions described in one or more of the Asserted Patents in Case No. 22-1378.  Additionally, certain iPhone and iPad products released in 2017 and later may incorporate one or more aspects of the inventions described in the '352 Patent.

Apple further responds that this interrogatory is premature because it seeks expert discovery.  Apple will supplement its response in a reasonable time in accordance with any relevant Scheduling Order entered in Case No. 22-1378.

16

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
   AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  April 17, 2023
10759774 / 12209.00052

POTTER ANDERSON & CORROON LLP

By:  _/s/ Bindu A. Palapura_____
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*

17

## CERTIFICATE OF SERVICE

I, Bindu A. Palapura, hereby certify that on April 17, 2023, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

### VIA ELECTRONIC MAIL

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Jared C. Bunker
Benjamin A. Katzenellenbogen
Matthew Pham
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Knobbe.MasimoDE@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park E., Suite 600
Los Angeles, CA 90067
Knobbe.MasimoDE@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Knobbe.MasimoDE@knobbe.com

_/s/ Bindu A. Palapura_
Bindu A. Palapura

10657697/12209.00052

# EXHIBIT 5

**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1377 (MN) |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| Defendants. | |
| APPLE INC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1378 (MN) |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| Defendants. | |

**DEFENDANTS MASIMO CORPORATION AND SOUND UNITED, LLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO APPLE INC. (1-48)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Masimo Corporation and Sound United, LLC (collectively "Defendants") hereby request Plaintiff Apple Inc. ("Plaintiff") respond to the following requests for production of documents and things, separately and fully, in writing, and produce the documents and things identified below for inspection and copying at the offices of Knobbe, Martens, Olson & Bear, LLP, located at 2040 Main Street, Fourteenth Floor, Irvine, California 92614 within thirty (30) days of service thereof. These requests are deemed continuing in nature, requiring amended or supplemental answers as necessary.

Defendants have filed motions to consolidate *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.).   Accordingly, the requests for production contained herein are intended to apply to a consolidated action involving both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.).  Therefore, in responding to these requests for production, Plaintiff must respond with respect to both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.).

## DEFINITIONS

Unless the context indicates otherwise, the following words and phrases are defined and used herein as follows:

1. "Apple Watch" means the product or products You make, have made, offer to sell, offered to sell, sell, or sold, under the designation or tradename "Apple Watch,"  including but not limited to Apple Watch (first generation), Apple Watch Series 0, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch Series 7, Apple Watch Series 8, Apple Watch Ultra, Apple Watch SE and any future such products, including prototypes.

2. "Apple Asserted Patents" shall mean U.S. Patent Nos. 10,076,257 (the "'257 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 10,987,054 (the "'054 Patent"), 11,106,352 (the "'352 Patent"), 11,474,483 (the "'483 Patent"), D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), D735,131 (the "'D131 Patent"), any additional patents that You may assert in *Apple Inc. v. Masimo Corporation and*

*Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Defendants.

3.　　"Masimo Asserted Patents" shall mean U.S. Patent Nos. 10,687,743 (the "'743 Patent"), 10,722,159 (the "'159 Patent"), 8,190,223 (the "'223 Patent"), 10,736,507 (the "'507 Patent"), and 10,984,911 (the "'911 Patent").

1.　　The term "concerning" means evidencing, comprising, constituting, reflecting, respecting, relating to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing or evaluating.

2.　　The terms "relating to," "related to" or "relate to" mean concerning, referring to, describing, evidencing, comprising, constituting, supporting, or tending to negate.

3.　　The term "document" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

4.　　The term "communication" shall mean the transmittal of information regardless of the manner in which the communication(s) took place, including but not limited to, face-to-face conversations, correspondence, electronic or computer mail, telephone calls, facsimile communications, or telegrams.

5.　　The term "thing" shall mean all tangible objects of any type, composition, construction, or nature.

6.　　"Apple," "You" and "your" means Apple Inc. and any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Apple, Inc.

7.      "Masimo" means Masimo Corporation and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

8.      "Sound United" means Sound United, LLC and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

9.      The term "including" shall be construed broadly, as "including but not limited to" or "including without limitation."

10.     The term "prior art" encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103.

11.     The term "person" means any natural person or any legal entity, including without limitation any business or governmental entity or association.

12.     The term "prosecute" means to prosecute the indicated patent or patent application in the United States Patent and Trademark Office or any foreign patent office.

13.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa; "any" and "all" mean one or more.

14.     The singular form of any noun or pronoun used herein includes within its meaning the plural form thereof and vice versa; the neuter, masculine or feminine form of any pronoun used herein includes within its meaning the neuter, masculine and feminine forms; and the use herein of any tense of any verb includes within its meaning all other tenses of the verb. In every such instance, the specific request shall be construed in the broadest sense so as to call for the most complete and inclusive answer.

15.   "All" shall be construed as all and each, and "each" shall be construed as all and each.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents, communications, and things referring or relating to the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 2:**

All documents, communications, and things referring or relating to any prior art that You collected, identified, or are aware of concerning the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 3:**

All documents, communications, and things referring or relating to the decision to prepare, file, and prosecute the Apple Asserted Patents or any applications to which the Apple Asserted Patents claim priority.

**REQUEST FOR PRODUCTION NO. 4:**

All documents, communications, and things referring or relating to any search results, including patentability, validity, prior-art, infringement, or state-of-the-art searches, concerning the Apple Asserted Patents or any applications to which the Apple Asserted Patents claim priority.

**REQUEST FOR PRODUCTION NO. 5:**

All documents, communications, and things referring or relating to any opinion, report, or analysis concerning the invalidity or validity, infringement or non-infringement, enforceability or unenforceability, or patentability or unpatentability of any Asserted Patent.

**REQUEST FOR PRODUCTION NO. 6:**

All documents, communications, and things referring or relating to Masimo.

**REQUEST FOR PRODUCTION NO. 7:**

All documents, communications, and things referring or relating to Sound United.

**REQUEST FOR PRODUCTION NO. 8:**

All documents, communications, and things referring or relating to any Masimo product.

**REQUEST FOR PRODUCTION NO. 9:**

All documents, communications, and things referring or relating to any Sound United product.

**REQUEST FOR PRODUCTION NO. 10:**

All agreements between You and the inventors listed on the Apple Asserted Patents, including employment agreements, assignments, acknowledgements, and severance agreements.

**REQUEST FOR PRODUCTION NO. 11:**

All documents, communications, and things referring or relating to the conception, reduction to practice, development, analysis, or testing of any kind of the subject matter disclosed or claimed in the Apple Asserted Patents, including all invention disclosures, inventor notebooks, workbook entries, calendars, memoranda, files and notes, prototypes, and reports, and documents sufficient to identify all individuals involved in such conception, reduction to practice, development, analysis, or testing.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and things that any inventor who is listed on one or more of the Apple Asserted Patents, or their representative or any person they collaborated with, acting at the direction or under the control of each such inventor, considered in connection with the development of any invention disclosed or claimed in the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 13:**

All documents, communications, and things referring or relating to the date(s) on which the subject matter disclosed and claimed in the Apple Asserted Patents was first offered for sale, first sold, first used in public, first disclosed to someone other than the inventors listed on each Asserted Patent, or first published.

**REQUEST FOR PRODUCTION NO. 14:**

All documents, communications, and things referring or relating to the marking of, or decision not to mark, the Apple Asserted Patents on any product or the packaging thereof.

**REQUEST FOR PRODUCTION NO. 15:**

All documents, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, each version of the Apple Watch and charger.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 17:**

All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show Your distribution channels for each version of the Apple Watch, or any parts thereof, and the recipients of such products or parts.

**REQUEST FOR PRODUCTION NO. 19:**

All documents, communications, and things referring or relating to economic projections or economic analyses concerning each version of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 20:**

All documents, communications, and things referring or relating to business plans, operation plans, marketing, and advertising or promotion plans for all versions of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, communications, and things referring or relating to any comparison between an Apple product and a Masimo product.

**REQUEST FOR PRODUCTION NO. 22:**

All documents, communications, and things You identified in response to an interrogatory or that You reviewed or relied upon in responding to an interrogatory.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things You produced, served, or filed in *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things You produced, served, or filed in *In the Matter of Certain Wearable Electronic Devices with ECG Functionality and Components Thereof.*, No. 337-TA-1266 concerning Masimo or any version of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things You produced, served, or filed in *Masimo Corporation et al., v Apple Inc.*, No. 20-48 (C.D. Cal.).

**REQUEST FOR PRODUCTION NO. 26:**

Three samples of each version of the Apple Watch that You contend is covered by any claim of the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 27:**

All documents, communications, and things You may use at any hearing or any trial in this action.

**REQUEST FOR PRODUCTION NO. 28:**

All documents, communications, and things that support or rebut any of the allegations, defenses, and prayer for relief contained in any pleading that You filed or will file in this action.

**REQUEST FOR PRODUCTION NO. 29:**

All documents, communications, and things that support or rebut Your allegations that Defendants' infringement of the Apple Asserted Patents is willful.

**REQUEST FOR PRODUCTION NO. 30:**

All documents, communications, and things that support or rebut Your contention that You are entitled to a permanent injunction for Defendants' alleged infringement of the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 31:**

All documents, communications, and things that support or rebut Your contention that You are entitled to enhanced damages pursuant to 35 U.S.C. § 284, and pre-judgment interest and post-judgment interest at the maximum rate permitted by law.

**REQUEST FOR PRODUCTION NO. 32:**

All documents, communications, and things that support or rebut Your contention that You are entitled to a declaration that this action is an exceptional case within the meaning of 35

U.S.C. § 285 and that You are entitled to attorneys' fees, costs, and expenses incurred in connection with this action.

**REQUEST FOR PRODUCTION NO. 33:**

All documents, communications, and things that support or rebut Your contention that You are entitled to a disgorgement of profits pursuant to 35 U.S.C. § 289 for Defendants' alleged infringement of the D131, D279, D842, and D936 Patents.

**REQUEST FOR PRODUCTION NO. 34:**

All documents, communications, and things that support or rebut Your contentions as to the relevant market or markets in which Apple, Masimo, and Sound United compete, including the alleged markets referenced in your allegations that "the Apple Watch revolutionized the consumer watch market," Dkt. 1 ¶ 21, "Masimo copied Apple Watch and brought carefully timed lawsuits to try to kick Apple out of the market," Dkt. 1 ¶ 22, and Masimo purportedly embarked on a strategy to "remove Apple Watch from the market and make way for Masimo's own watch," Dkt. 1 ¶ 31 .

**REQUEST FOR PRODUCTION NO. 35:**

All documents, communications, and things that support or rebut Your contentions as to the market shares of Apple, Masimo, Sound United and other competitors you allege are in the relevant markets, including the alleged markets referenced in your allegations that "the Apple Watch revolutionized the consumer watch market," Dkt. 1 ¶ 21, "Masimo copied Apple Watch and brought carefully timed lawsuits to try to kick Apple out of the market," Dkt. 1 ¶ 22, and Masimo purportedly embarked on a strategy to "remove Apple Watch from the market and make way for Masimo's own watch," Dkt. 1 ¶ 31.

**REQUEST FOR PRODUCTION NO. 36:**

All documents, communications, and things that support or rebut Your contentions regarding the performance of the Apple Watch in measuring physiological parameters, including all documents, communications, and things that support or rebut your allegation that the Apple Watch "enable[s] measurement of health and wellness metrics such as heart rate, blood oxygen, and even electrocardiogram (ECG)," Dkt. 1 ¶ 16, and "introduce[d] new capabilities, such as advanced fitness tracking and health metrics including heart health, sleep, women's health, and mobility," Dkt. 1 ¶ 15.

**REQUEST FOR PRODUCTION NO. 37:**

All documents, communications, and things referring or relating to the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 38:**

All documents, communications, and things referring or relating to Apple's first awareness of the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and things that refer or relate to any efforts to design any Apple Watch around the inventions claimed in the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and things concerning, evaluating, discussing, and/or commenting on the existence, infringement, or scope of the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 40:**

Documents sufficient to show the design and operation of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 41:**

All documents, communications, and things describing the operation of the Apple Watch,

including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**REQUEST FOR PRODUCTION NO. 42:**

All training materials concerning any of the Apple Watch, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 43:**

All marketing materials concerning any Apple Watch, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**REQUEST FOR PRODUCTION NO. 44:**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any Apple Watch.

**REQUEST FOR PRODUCTION NO. 45:**

All videos or DVDs demonstrating or showing the operation of the Apple Watch.

**REQUEST FOR PRODUCTION NO. 46:**

All technical documents for the Apple Watch, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 47:**

All documents and things that refer or relate to technical information, specifications, and

research data for any Apple Watch.

**REQUEST FOR PRODUCTION NO. 48:**

All documents and things concerning the research, design, and development of any Apple Watch or any component of any Apple Watch, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.


                                                   Respectfully submitted,

March 16, 2023                                     PHILLIPS MCLAUGHLIN & HALL, P.A.


*Of Counsel:*                                      By: */s/ John C. Phillips, Jr.*
                                                       John C. Phillips, Jr. (No. 110)
Joseph R. Re                                           Megan C. Haney (No. 5016)
Stephen C. Jensen                                      1200 North Broom Street
Stephen W. Larson                                      Wilmington, DE 19806
Perry D. Oldham                                        (302) 655-4200 Telephone
Benjamin A. Katzenellenbogen                           (302) 655-4210 Fax
KNOBBE, MARTENS, OLSON & BEAR, LLP                     jcp@pmhdelaw.com
2040 Main Street, 14th Floor                           mch@pmhdelaw.com
Irvine, CA  92614
(949) 760-0404 Telephone                               *Counsel for Defendants*
(949) 760-9502 Facsimile                               *Masimo Corporation and Sound United, LLC*
joe.re@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2023, a true and correct copy Defendants Masimo

Corporation and Sound United, LLC's First Set of Requests for Production to Apple Inc. (1-48)

was served on the following counsel of record at the addresses and in the manner indicated:

***VIA ELECTRONIC MAIL:***

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

March 16, 2023

*/s/ Megan C. Haney*
Megan C. Haney

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**PLAINTIFF APPLE INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS'
FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-49)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the District of Delaware, Plaintiff Apple Inc. hereby provides the following Objections and Responses to Defendants Masimo Corporation's ("Masimo") and Sound United, LLC's ("Sound United") (collectively, "Defendants") First Set Requests for Production (Nos. 1-49). Apple's discovery and investigation in connection with this action are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to supplement or amend these objections and responses to the extent allowed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any applicable scheduling orders as discovery and Apple's investigation in the action proceeds.

## **GENERAL OBJECTIONS**

Apple makes the following General Objections to Defendants' First Set of Requests For Production, which apply to each request regardless of whether the General Objections are specifically incorporated into the specific objections and responses below.

1.      Apple objects to Defendants' improper, preamble assertion that "the requests for production contained herein are intended to apply to a consolidated action involving both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) [("Case No. 22-1377")] and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) [("Case No. 22-1378")].  Apple objects to Defendants' attempt to treat Case No. 22-1377 and Case No. 22-1378 as consolidated.  Defendants' requests for production served in Case No. 22-1377 apply only to Case No. 1377.  Accordingly, Apple provides these responses solely with regard to Case No. 22-1377 and objects to the use of these responses in Case No. 22-1378.

2.      Apple objects to each request, definition, and instruction to the extent it calls for information that is protected from discovery by the attorney-client privilege, work product doctrine, joint defense/common interest privilege, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable Orders of this Court, and/or relevant statutory or case law.  Inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity.

3.      Apple objects to each request, definition, and instruction to the extent it seeks to impose any requirements or obligations in addition to or different from those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable orders of this Court, any stipulation or agreement between the parties, and/or relevant statutory or case law.

4.      Apple objects to each request, definition, and instruction to the extent it seeks information that: (a) is not proportional to the needs of the case; (b) is not relevant to any party's claims or defenses; (c) is unreasonably cumulative, repetitive, or duplicative; (d) has already been provided to Defendants; (e) creates a burden or expense outweighing any likely benefit; (f) is not restricted to any particular time frame; and/or (g) is overbroad.

5.      Apple objects to each request, definition, and instruction to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

6.      Apple objects to each request to the extent it calls for confidential and/or proprietary information of any individual or entity other than Apple, except as allowed by any court orders, including any applicable orders of this Court, and/or relevant statutory or case law governing the disclosure of such information.

7.      Apple objects to each request, definition, and instruction to the extent they conflict with or purport to require the production of information prohibited from disclosure by protective orders in other litigations or improperly seek to cross-use information from other litigations.

8.      Apple objects to each request to the extent it calls for legal conclusions, presents questions of pure law, or calls for expert opinion.

9.      Apple objects to each request to the extent it seeks mental impressions, legal conclusions, legal opinions, or legal theories of Apple.

10.      Apple objects to each request as premature to the extent it calls for discovery, including discovery concerning initial disclosures, the parties' contentions, claim construction, or

expert testimony, in advance of the dates set by the Court for disclosure of such information in the relevant scheduling orders.

11.     Apple objects to each request to the extent it exceeds the permissible number of requests, including subparts.

12.     Apple objects to each request as unduly burdensome to the extent the discovery sought could be obtained through less intrusive means or without imposing a disproportional burden on Apple or on Apple's litigation counsel.

13.     Apple objects to each definition and instruction to the extent it purports to alter the plain meaning and/or scope of any specific request on the ground that such alteration renders the request vague, ambiguous, overbroad, or uncertain.

14.     Apple objects to each request, definition, and instruction as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

15.     Apple objects to each request as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case, to the extent it calls for information beyond the relevant temporal or geographic scope of this matter.

16.     Apple objects to each request using the term "Apple Watch," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  For example, Masimo's definition of "Apple Watch" includes versions of Apple Watch that are unrelated to the parties' claims and defenses in this case.

17.     Apple objects to each request using the term "Apple Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Apple Asserted Patents" to include any patent not asserted by Apple in this case, but asserted by Apple in Case No. 22-1378, including but not limited to United States Patent Nos. 10,076,257 ("the '257 patent"), 10,627,783 ("the '783 patent"), 10,942,491 ("the '491 patent"), 10,987,054 ("the '054 patent"), 11,106,352 ("the '352 patent"), and 11,474,483 ("the '483 patent").  Apple interprets "Apple Asserted Patents" in these responses as one or more of the patents asserted by Apple in this case, Case No. 22-1377, namely United States Patent Nos. D883,279 ("the 'D279 Patent"), D947,842 ("the 'D842 Patent"), D962,936 ("the 'D936 Patent"), and D735,131 ("the 'D131 Patent").

18.     Apple objects to each request using the term "Masimo Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  For example, Defendants have not asserted any counterclaims of patent infringement in this case, and thus Defendants' reference to "Masimo Asserted Patents" seeks information that is not relevant to this case.

19.     Apple objects to each request using the terms "concerning," "relating to," "related to," and "relate to" or derivations thereof as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of these terms to the extent that it requires subjective judgment and speculation on the part of Apple.

20.     Apple objects to each request using the terms "document," "communication," and "thing," as well as Defendants' definition of those terms, to the extent it seeks materials beyond what is contemplated by Federal Rule of Civil Procedure 34, applicable Local Rules of this Court, or agreements entered into by the parties.  Apple objects to each request to the extent that it seeks to require Apple to conduct a general search of email or other ESI to identify responsive documents.  Apple does not intend to search and produce emails or ESI based on any such search, absent a showing of good cause by Defendants.  Defendants have not made such a showing with respect to any request.  Apple will not produce tangible things unless specifically designated in the response.

21.     Apple objects to each request using the term "Apple," "You" and "Your," as well as Defendants' definition of those terms, to the extent that those definitions include any persons or entities other than Apple Inc.

22.     Apple objects to each request using the term "Masimo," as well as Defendants' definition of that term, to the extent that definition includes any persons or entities other than Masimo Corporation.

23.     Apple objects to each request using the term "Sound United," as well as Defendants' definition of that term, to the extent that definition includes any persons or entities other than Sound United, LLC.

24.     Apple objects to each request using the term "prior art," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

25.     Apple objects to each request using the term "prosecute," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

26.     Apple objects to each request, definition, and/or instruction as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense nor proportional to the needs of the case to the extent the request, definition, and/or instruction seeks identification of "all" facts, documents, persons, evidence, or bases, or that purports to require Apple to marshal "all" evidence concerning any issue in dispute.  Where Apple agrees to undertake a "reasonably diligent search," that search would be in accordance with any applicable ESI stipulation as well as any agreement of the parties concerning custodians, search terms, and other search criteria.

27.     Apple objects to each request using the term "person," as well as Defendants' definition of that term, as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.  Apple interprets Defendants' definition of "person" as any natural person or legal entity.

28.     Apple's discovery and investigation in connection with this case are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to amend or supplement these objections and responses as discovery and Apple's investigation in this case proceeds.

**REQUEST FOR PRODUCTION NO. 9:**

All documents, communications, and things referring or relating to any Sound United product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographical scope, and to the extent it seeks all such materials broadly "relating to any Sound United product" without limitation.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to Sound United's willful infringement of the Apple Asserted Patents in Case No. 22-1377 via Defendants' sale of and offers to sell Defendants' W1 Watch and its charger, Defendants' Freedom Watch, and Defendants' B1 Watch located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 10:**

All agreements between You and the inventors listed on the Apple Asserted Patents, including employment agreements, assignments, acknowledgements, and severance agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case because it seeks information about patents asserted in Case No. 22-1378. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case because it seeks "[a]ll agreements," including "acknowledgements and severance agreements," without limitation, including with respect to a relevant temporal or geographical scope.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged employment agreements and assignments with the inventors listed on the Apple Asserted Patents in Apple's possession, custody, or control located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 11:**

All documents, communications, and things referring or relating to the conception, reduction to practice, development, analysis, or testing of any kind of the subject matter disclosed or claimed in the Apple Asserted Patents, including all invention disclosures, inventor notebooks, workbook entries, calendars, memoranda, files and notes, prototypes, and reports, and documents sufficient to identify all individuals involved in such conception, reduction to practice, development, analysis, or testing.

irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "decision not to mark," and "any product or the packaging" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the marking of each Apple product that practices one or more of the Apple Asserted Patents in Case No. 22-1377, or any product packaging thereof, located by a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 15:

All documents, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, each version of the Apple Watch and charger.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or

geographical scope.  Apple further objects to this request because the phrases and terms "testing or research with respect to the efficacy or performance of, or user response or reaction to" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1377.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected

from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographical scope.   Apple further objects to this request because the phrases and terms "contemplated or actual filings and supporting studies" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1377. Apple further objects on the grounds that discovery into the requested regulatory submissions is neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will not search for or produce information responsive to this request in Case No. 22-1377.

**REQUEST FOR PRODUCTION NO. 17:**

All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected

from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll communications" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1377.  Apple further objects on the grounds that discovery into the requested regulatory submissions is neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will not search for or produce information responsive to this request in Case No. 22-1377.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show Your distribution channels for each version of the Apple Watch, or any parts thereof, and the recipients of such products or parts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Apple incorporates by reference its General Objections.  Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request because the phrases and terms "any parts thereof, and the recipients of such products or parts" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things You produced, served, or filed in *In the Matter of Certain Wearable Electronic Devices with ECG Functionality and Components Thereof.*, No. 337-TA-1266 concerning Masimo or any version of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1377. Apple further objects to this request to the extent it seeks confidential information of third parties and/or information that is otherwise subject to a non-disclosure agreement or protective order.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things You produced, served, or filed in *Masimo Corporation et al., v Apple Inc.*, No. 20-48 (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request to the extent it seeks confidential information of third parties and/or information that is otherwise subject to a non-disclosure agreement or protective order.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 26:**

Three samples of each version of the Apple Watch that You contend is covered by any claim of the Apple Asserted Patents.

discovery of "[d]ocuments sufficient" without limiting the request in temporal or geographical scope.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search and responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 42 (FORMERLY REQUEST NO. 41):**

All documents, communications, and things describing the operation of the Apple Watch, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected

from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms ""instructional materials" and "directions for use" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 43 (FORMERLY REQUEST NO. 42):**

All training materials concerning any of the Apple Watch, including, without limitation, training manuals, training videos, presentations, and handouts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll training materials" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request because the phrases and terms "training manuals, training videos, presentations, and handouts" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged training materials in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 44 (FORMERLY REQUEST NO. 43):**

All marketing materials concerning any Apple Watch, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll marketing materials" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "product catalogs" and "websites" and "informational materials, and videos" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show marketing materials for the Apple Asserted

Patents in Case No. 22-1377 and each Apple Watch product that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 45 (FORMERLY REQUEST NO. 44):**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, irrelevant, and not proportional to the needs of the case because it seeks "[a]ll publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings," without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "abstracts," "papers," "presentations," "seminars," "speeches," "press releases," and "internet postings" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 46 (FORMERLY REQUEST NO. 45):**

All videos or DVDs demonstrating or showing the operation of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46 :**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll videos or DVDs" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request because the phrases and terms "demonstrating or showing the operation" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control videos or DVDs sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 47 (FORMERLY REQUEST NO. 46):**

All technical documents for the Apple Watch, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll technical documents."  Apple further objects to this request because the phrases and terms "product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search and responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 48 (FORMERLY REQUEST NO. 47):**

All documents and things that refer or relate to technical information, specifications, and research data for any Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377. Apple further objects to this request as

vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "technical information, specifications, and research data" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search and responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 49 (FORMERLY REQUEST NO. 48):**

All documents and things concerning the research, design, and development of any Apple Watch or any component of any Apple Watch, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, meeting minutes, presentations, and prototypes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1377.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "component" and "invention disclosures, memoranda, product specifications, meeting minutes, presentations, and prototypes" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1377:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search and responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in

Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices

one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent

search.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  _/s/ Bindu A. Palapura_
　　David E. Moore (#3983)

John M. Desmarais　　　　　　　　Bindu A. Palapura (#5370)
Jordan N. Malz　　　　　　　　　　Andrew L. Brown (#6766)
Cosmin Maier　　　　　　　　　　　Hercules Plaza, 6th Floor
Kerri-Ann Limbeek　　　　　　　　1313 N. Market Street
DESMARAIS LLP　　　　　　　　　Wilmington, DE  19801
230 Park Avenue　　　　　　　　　Tel:  (302) 984-6000
New York, NY 10169　　　　　　　dmoore@potteranderson.com
Tel: 212-351-3400　　　　　　　　bpalapura@potteranderson.com
　　　　　　　　　　　　　　　　abrown@potteranderson.com
Peter C. Magic
DESMARAIS LLP　　　　　　　　　*Attorneys for Plaintiff/Counter-Defendant*
101 California Street　　　　　　　*Apple Inc.*
San Francisco, CA 94111
Tel: 415-573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
　AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
　AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  April 17, 2023
10759927 / 12209.00051

## CERTIFICATE OF SERVICE

I, Bindu A. Palapura, hereby certify that on April 17, 2023, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

### VIA ELECTRONIC MAIL

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE  19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Jared C. Bunker
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Knobbe.MasimoDE@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park E., Suite 600
Los Angeles, CA  90067
Knobbe.MasimoDE@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Knobbe.MasimoDE@knobbe.com


_____/s/ Bindu A. Palapura_____
Bindu A. Palapura

10643743/12209.00051

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378-MN-JLH |
| | ) | |
| MASIMO CORPORATION and | ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| ―――――――――――――――― | ) | |
| MASIMO CORPORATION and | ) | |
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**PLAINTIFF APPLE INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS'
FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-49)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the District of Delaware, Plaintiff Apple Inc. hereby provides the following Objections and Responses to Defendants Masimo Corporation's ("Masimo") and Sound United, LLC's ("Sound United") (collectively, "Defendants") First Set Requests for Production (Nos. 1-49). Apple's discovery and investigation in connection with this action are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to supplement or amend these objections and responses to the extent allowed by the Federal Rules of Civil Procedure, the Local

Rules of this Court, and any applicable scheduling orders as discovery and Apple's investigation in the action proceeds.

## **GENERAL OBJECTIONS**

Apple makes the following General Objections to Defendants' First Set of Requests For Production, which apply to each request regardless of whether the General Objections are specifically incorporated into the specific objections and responses below.

1.    Apple objects to Defendants' improper, preamble assertion that "the requests for production contained herein are intended to apply to a consolidated action involving both *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) [("Case No. 22-1377")] and *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) [("Case No. 22-1378)"]."  Apple objects to Defendants' attempt to treat Case No. 22-1377 and Case No. 22-1378 as consolidated.  Defendants' requests for production served in Case No. 22-1378 apply only to Case No. 22-1378.  Accordingly, Apple provides these responses solely with regard to Case No. 22-1378 and objects to the use of these responses in Case No. 22-1377.  Furthermore, to the extent Masimo contends that any of the requests contained herein seek materials relevant to its Counterclaims I through VI, Apple responds without prejudice to its pending motion to stay discovery on those Counterclaims, D.I. 58, and without waiving any position asserted in support of that motion.  Additionally, to the extent Masimo contends that any of the requests contained herein seek materials relevant to its Counterclaims X, XII, XIV, XV, and XVI, Apple responds without prejudice to its pending motion to stay those Counterclaims, D.I. 34, and without waiving any position asserted in support of that motion.

2.    Apple objects to each request, definition, and/or instruction to the extent it calls for information that is protected from discovery by the attorney-client privilege, work product

2

doctrine, joint defense/common interest privilege, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable Orders of this Court, and/or relevant statutory or case law.  Inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity.

3.     Apple objects to each request, definition, and instruction to the extent it seeks to impose any requirements or obligations in addition to or different from those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable orders of this Court, any stipulation or agreement between the parties, and/or relevant statutory or case law.

4.     Apple objects to each request, definition, and instruction to the extent it seeks information that: (a) is not proportional to the needs of the case; (b) is not relevant to any party's claims or defenses; (c) is unreasonably cumulative, repetitive, or duplicative; (d) has already been provided to Defendants; (e) creates a burden or expense outweighing any likely benefit; (f) is not restricted to any particular time frame; and/or (g) is overbroad.

5.     Apple objects to each request, definition, and instruction to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

6.     Apple objects to each request to the extent it calls for confidential and/or proprietary information of any individual or entity other than Apple, except as allowed by any court orders, including any applicable orders of this Court, and/or relevant statutory or case law governing the disclosure of such information.

7.    Apple objects to each request, definition, and instruction to the extent they conflict with or purport to require the production of information prohibited from disclosure by protective orders in other litigations or improperly seek to cross-use information from other litigations.

8.    Apple objects to each request to the extent it calls for legal conclusions, presents questions of pure law, or calls for expert opinion.

9.    Apple objects to each request to the extent it seeks mental impressions, legal conclusions, legal opinions, or legal theories of Apple.

10.    Apple objects to each request as premature to the extent it calls for discovery, including discovery concerning initial disclosures, the parties' contentions, claim construction, or expert testimony in advance of the dates set by the Court for disclosure of such information in the relevant scheduling orders.

11.    Apple objects to each request to the extent it exceeds the permissible number of requests, including subparts.

12.    Apple objects to each request as unduly burdensome to the extent the discovery sought could be obtained through less intrusive means or without imposing a disproportional burden on Apple or on Apple's litigation counsel.

13.    Apple objects to each definition and instruction to the extent it purports to alter the plain meaning and/or scope of any specific request on the ground that such alteration renders the request vague, ambiguous, overbroad, or uncertain.

14.    Apple objects to each request, definition, and instruction as overbroad, unduly burdensome, and calling for discovery that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  Specifically, Apple objects to each request to the extent it seeks discovery (1) not specific to any accused product in Case No. 22-1378 and/or (2) regarding

acts (*e.g.*, making, using, selling, and offering for sale, of any accused product) outside of the United States.  To the extent Defendants request discovery not specific to an accused product and/or outside of the United States, each such request is overbroad, unduly burdensome, and irrelevant as calling for discovery outside the relevant temporal or geographic scope of Case No. 22-1378.

15.     Apple objects to each request as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case, to the extent it calls for information beyond any temporal limitations of this case.  For example, pursuant to 35 U.S.C. § 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . for infringement in the action."  Counter-Claimants Masimo Corporation and Cercacor Laboratories, Inc. filed their Counterclaims in this action on December 12, 2022, so Counter-Claimants cannot recover for any alleged infringement prior to December 12, 2016.  To the extent Masimo requests discovery prior to December 12, 2016, each such request is overbroad, unduly burdensome, and irrelevant to the extent it calls for discovery outside the relevant temporal scope of this case.  To the extent Masimo contends any request also seeks discovery relevant to its Counterclaims I through VI, Apple objects to any such request to the extent it seeks discovery prior to December 12, 2020, unless otherwise stated.

16.     Apple objects to each request, definition, and/or instruction as overbroad, unduly burdensome, not proportional to the needs of the case, and calling for production of documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent it calls for information beyond the relevant temporal or geographic scope of this matter.

17.     Apple objects to each request using the term "Apple Watch," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  For example, Masimo's definition of "Apple Watch" includes versions of Apple Watch that are unrelated to the parties' claims and defenses in this case.

18.     Apple objects to each request using the term "Apple Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Apple Asserted Patents" to include any patent not asserted by Apple in this case, but asserted by Apple in Case No. 22-1377, including but not limited to United States Patent Nos. D883,279 ("the 'D279 Patent"), D947,842 ("the 'D842 Patent"), D962,936 ("the 'D936 Patent"), and D735,131 ("the 'D131 Patent").  Apple interprets "Apple Asserted Patents" in these responses as one or more of the patents asserted by Apple in this case, Case No. 22-1378, namely United States Patent Nos. 10,076,257 ("the '257 patent"), 10,627,783 ("the '783 patent"), 10,942,491 ("the '491 patent"), 10,987,054 ("the '054 patent"), 11,106,352 ("the '352 patent"), and 11,474,483 ("the '483 patent").

19.     Apple objects to each request using the term "Masimo Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

20.     Apple objects to each request using the terms "concerning," "relating to," "related to," and "relate to," or derivations thereof as overbroad, vague, and ambiguous.  Furthermore,

Apple objects to each use of these terms to the extent that it requires subjective judgment and speculation on the part of Apple.

21.     Apple objects to each request using the terms "document," "communication," and "thing," as well as Defendants' definition of those terms, to the extent it seeks materials beyond what is contemplated by Federal Rule of Civil Procedure 34, applicable Local Rules of this Court, or agreements entered into by the parties.  Apple objects to each request to the extent that it seeks to require Apple to conduct a general search of email or other ESI to identify responsive documents.  Apple does not intend to search and produce emails or ESI based on any such search, absent a showing of good cause by Defendants.  Defendants have not made such a showing with respect to any request.  Apple will not produce tangible things unless specifically designated in the response.

22.     Apple objects to each request using the terms "Apple," "You" and "Your," as well as Defendants' definition of those terms, to the extent that those definitions include any persons or entities other than Apple Inc.

23.     Apple objects to each request using the term "Masimo," as well as Defendants' definition of that term, to the extent that that definition includes any persons or entities other than Masimo Corporation.

24.     Apple objects to each request using the term "Sound United," as well as Defendants' definition of that term, to the extent that that definition includes any persons or entities other than Sound United, LLC.

25.     Apple objects to each request using the term "prior art," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for

information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

26.     Apple objects to each request using the term "prosecute," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

27.     Apple objects to each request, definition, and/or instruction as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense nor proportional to the needs of the case to the extent the request, definition, and/or instruction seeks identification of "all" facts, documents, persons, evidence, or bases, or that purports to require Apple to marshal "all" evidence concerning any issue in dispute.  Where Apple agrees to undertake a "reasonably diligent search," that search would be in accordance with any applicable ESI stipulation as well as any agreement of the parties concerning custodians, search terms, and other search criteria.

28.     Apple objects to each request using the term "person," as well as Defendants' definition of that term, as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.  Apple interprets Defendants' definition of "person" as any natural person or legal entity.

29.     Apple's discovery and investigation in connection with this case are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to amend or supplement these objections and responses as discovery and Apple's investigation in this case proceeds.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to Sound United's willful infringement of the Apple Asserted Patents in Case No. 22-1378 via Defendants' sale of and offers to sell Defendants' W1 Watch and its charger, Defendants' Freedom Watch, and Defendants' B1 Watch located by a reasonably diligent search.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay such discovery, D.I. 58, Apple will produce non-privileged documents within its possession, custody, or control that contain competitive assessments and analysis of Defendants' W1 Watch, Defendants' Freedom Watch, and Defendants' B1 Watch located by a reasonably diligent search. Apple reserves the right to revisit this position following the Court's decision on Apple's motion to dismiss Counterclaims I-VI.  D.I. 39.

**REQUEST FOR PRODUCTION NO. 10:**

All agreements between You and the inventors listed on the Apple Asserted Patents, including employment agreements, assignments, acknowledgements, and severance agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as overbroad, irrelevant, unduly burdensome,

and not proportional to the needs of the case because it seeks information about patents other than the Apple Asserted Patents in Case No. 22-1378. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case because it seeks "[a]ll agreements," including "acknowledgements and severance agreements," without limitation, including with respect to a relevant temporal or geographical scope.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple will produce responsive, relevant, and non-privileged employment agreements and assignments with the inventors listed on the Apple Asserted Patents in Apple's possession, custody, or control, located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 11:**

All documents, communications, and things referring or relating to the conception, reduction to practice, development, analysis, or testing of any kind of the subject matter disclosed or claimed in the Apple Asserted Patents, including all invention disclosures, inventor notebooks, workbook entries, calendars, memoranda, files and notes, prototypes, and reports, and documents sufficient to identify all individuals involved in such conception, reduction to practice, development, analysis, or testing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected

vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the marking of each Apple product that practices one or more of the Apple Asserted Patents in Case No. 22-1378, or any product packaging thereof, located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 15:**

All documents, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, each version of the Apple Watch and charger.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request because the phrases and terms "testing or research with respect to the efficacy or performance of, or user response or reaction to" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the

needs of the case.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1378.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or

geographical scope.  Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.  Apple further objects to this request because the phrases and terms "contemplated or actual filings and supporting studies" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1378.  Apple further objects on the grounds that discovery into the requested regulatory submissions is neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple will not search for or produce information responsive to this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay such discovery, D.I. 58, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request.

**REQUEST FOR PRODUCTION NO. 17:**

All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning each version of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll communications" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1378.  Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.  Apple further objects on the grounds that discovery into the requested regulatory submissions is neither relevant nor proportional to the needs of the case.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple will not search for or produce information responsive to this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay such discovery, D.I. 58, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things You produced, served, or filed in In the Matter of Certain Wearable Electronic Devices with ECG Functionality and Components Thereof., No. 337-TA-1266 concerning Masimo or any version of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant because it calls for discovery concerning each "version" of Apple Watch without limiting the time and subject-matter scope to the Apple Watches relevant to Case No. 22-1378.  Apple further objects to this request to the extent it seeks confidential information of third parties and/or information that is otherwise subject to a non-disclosure agreement or protective order.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things You produced, served, or filed in *Masimo Corporation et al., v Apple Inc.*, No. 20-48 (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request to the extent it seeks confidential information of third parties and/or information that is otherwise subject to a non-disclosure agreement or protective order.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 26:**

Three samples of each version of the Apple Watch that You contend is covered by any claim of the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 42 (Formerly Request No. 41):**

All documents, communications, and things describing the operation of the Apple Watch, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographical scope. Apple further objects to this request because the phrases and terms "instructional materials" and "directions for use" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case. Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the operation of the accused features of Apple Watch located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 43 (Formerly Request No. 42):**

All training materials concerning any of the Apple Watch, including, without limitation, training manuals, training videos, presentations, and handouts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378 Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll training materials" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "training manuals, training videos, presentations, and handouts" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case. Apple further objects to this request as overbroad, not proportional to the needs of this case, and

irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request.

**REQUEST FOR PRODUCTION NO. 44 (Formerly Request No. 43):**

All marketing materials concerning any Apple Watch, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378. Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent

it requests discovery of "[a]ll marketing materials" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "product catalogs" and "websites" and "informational materials, and videos" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request.

**REQUEST FOR PRODUCTION NO. 45 (Formerly Request No. 44):**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected

from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, irrelevant, and not proportional to the needs of the case because it seeks "[a]ll publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings," without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "abstracts," "papers," "presentations," "seminars," "speeches," "press releases," and "internet postings" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request.

**REQUEST FOR PRODUCTION NO. 46 (Formerly Request No. 45):**

All videos or DVDs demonstrating or showing the operation of the Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll videos or DVDs" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "demonstrating or showing the operation" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request.

## REQUEST FOR PRODUCTION NO. 47 (Formerly Request No. 46):

All technical documents for the Apple Watch, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 47:

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll technical documents."  Apple further objects to this request because the phrases and terms "product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees,

assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case. Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the technical specifications of the accused features of Apple Watch located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 48 (Formerly Request No. 47):**

All documents and things that refer or relate to technical information, specifications, and research data for any Apple Watch.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected

from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "technical information, specifications, and research data" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case. Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the technical specifications of the accused features of Apple Watch located by a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 49 (Formerly Request No. 48):**

All documents and things concerning the research, design, and development of any Apple Watch or any component of any Apple Watch, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, meeting minutes, presentations, and prototypes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Apple incorporates by reference its General Objections. Apple further objects to this request to the extent it seeks information that is protected from discovery by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request as vague, ambiguous, overbroad, not proportional to the needs of this case, and irrelevant to the extent it calls for information related to Apple Watches that are not relevant to Case No. 22-1378.  Apple further objects to this request as vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case to the extent it requests discovery of "[a]ll documents and things" without limitation, including with respect to a relevant temporal or geographical scope.  Apple further objects to this request because the phrases and terms "component" and "invention disclosures, memoranda, product specifications, meeting minutes, presentations, and prototypes" are vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request as overbroad, not proportional to the needs of this case, and irrelevant to the extent it seeks information related to Counter-Claimants' Counterclaims, which should be dismissed or severed from this action.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows with regard to Apple's claims in Case No. 22-1378:

Apple is willing to meet and confer to identify the appropriate scope of relevant and proportional discovery sought by this request with regard to Apple's claims in Case No. 22-1378.

To the extent Defendants contend this request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, and unless or until the Court grants Apple's pending motion to stay Counter-Claimants' patent infringement counterclaims, D.I. 34, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design and development of the accused features of Apple Watch located by a reasonably diligent search.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | |
| John M. Desmarais | By:  */s/ Bindu A. Palapura* |
| Jordan N. Malz | David E. Moore (#3983) |
| Cosmin Maier | Bindu A. Palapura (#5370) |
| Kerri-Ann Limbeek | Andrew L. Brown (#6766) |
| DESMARAIS LLP | Hercules Plaza, 6th Floor |
| 230 Park Avenue | 1313 N. Market Street |
| New York, NY 10169 | Wilmington, DE  19801 |
| Tel: 212-351-3400 | Tel:  (302) 984-6000 |
| | dmoore@potteranderson.com |
| | bpalapura@potteranderson.com |
| Peter C. Magic | abrown@potteranderson.com |
| DESMARAIS LLP | |
| 101 California Street | |
| San Francisco, CA 94111 | *Attorneys for Plaintiff/Counter-Defendant* |
| Tel: 415-573-1900 | *Apple Inc.* |
| | |
| Jennifer Milici | |
| Leon B. Greenfield | |
| Dominic Vote | |
| WILMER CUTLER PICKERING HALE | |
|   AND DORR LLP | |
| 2100 Pennsylvania Avenue, NW | |
| Washington DC 20037 | |
| Tel: (202) 663-6000 | |

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  April 17, 2023
10759767 / 12209.00052

## <u>CERTIFICATE OF SERVICE</u>

I, Bindu A. Palapura, hereby certify that on April 17, 2023, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

**<u>VIA ELECTRONIC MAIL</u>**

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Jared C. Bunker
Benjamin A. Katzenellenbogen
Matthew Pham
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Knobbe.MasimoDE@knobbe.com


Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park E., Suite 600
Los Angeles, CA 90067
Knobbe.MasimoDE@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Knobbe.MasimoDE@knobbe.com


                    */s/ Bindu A. Palapura*
                    Bindu A. Palapura

10657697/12209.00052

# EXHIBIT 8

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Jared C. Bunker
Jared.Bunker@knobbe.com

May 8, 2023

**VIA EMAIL**

Benjamin Luehrs
Desmarais LLP
230 Park Avenue
New York, NY 10169

Re:    *Apple v. Masimo*, Civil Action Nos. 22-1377; 22-1378

Dear Ben:

I write regarding deficiencies in Apple's responses to Masimo Corporation and Sound United, LLC's (collectively, "Masimo") First Set of Requests for Production and Interrogatories.  Based on Judge Hall's statement at the Scheduling Conference that the cases are informally consolidated for discovery, we continue to treat Masimo's requests as applying to both Delaware cases. Also, due to a clerical error, Masimo's First Set of Requests for Production should have been numbered 1-49 but were mistakenly numbered 1-48. Masimo will refer to the correct numbers in this letter and going forward.

## Apple's General Objections

### *Definition of "Apple Watch"*

Apple asserts that Masimo's definition of "Apple Watch" includes versions of Apple Watch that are unrelated to the parties' claims and defenses. Please identify which version(s) Apple contends is unrelated to the parties' claims and defenses, and explain Apple's basis for its position.

### *Definition of "Apple," "You," and "Your"*

Masimo defines "Apple," "You," and "Your" to include "former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Apple, Inc."  Apple objects to Masimo's definition to the extent the "definitions include any persons or entities other than Apple Inc."  Masimo's definition, however, is relevant and proportional. Moreover, Apple's definitions of "Defendant," "Defendants," "You," and "Your" include persons or entities other than Masimo.  Please confirm that Apple will withdraw its objection to Masimo's definition.

### *Definition of "Masimo Asserted Patents"*

Apple objects to Masimo's definition of "Masimo Asserted Patents" in the Requests for Production. Please explain Apple's objection to Masimo's definition of this term.

### *Definition of "Prior Art" and "Prosecute"*

Apple objects to Masimo's definition of "prior art" and "prosecute" in the Requests for Production. Please explain Apple's objection to Masimo's definition of these terms.

### *Temporal Limitation*

Apple includes a temporal limitation in its response to Masimo's Requests for Production in the 1378 Case. Apple's refusal to search for and produce responsive documents dated earlier than December 12, 2016, is improper. Such documents are relevant, for example, to the asserted patents, some of which were filed and

**Knobbe Martens**

issued before that date, Apple's development of products allegedly covered by the asserted patents, and damages. *See, e.g., Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-CV-1099, 2013 WL 2419934, at *3 (C.D. Ill. June 3, 2013). Please confirm that Apple will withdraw its objection.

## Apple's Responses to Masimo's Requests for Production

### Request for Production Nos. 3 and 4

Request for Production Nos. 3 and 4 seek materials relating to Apple Asserted Patents and any applications to which the Apple Asserted Patents claim priority, but Apple's responses were limited to documents "related to the Apple Asserted Patents." Please confirm that Apple will search for and produce materials regarding the priority applications that are responsive to these requests.

### Request for Production Nos. 6-9

Requests for Production Nos. 6-9 seek materials referring or relating to Masimo, Sound United, and their products. Apple states, however, that it will produce only documents (1) related to Masimo and Sound United's willful infringement of the Apple Asserted Patents or (2) that "contain competitive assessments and analysis" of W1, Freedom, and B1. Apple's limitations, however, are improper because documents relating to Masimo, Sound United, and their products are relevant to other issues, including Apple's willful infringement of Masimo's patents, Apple's anticompetitive actions against Masimo, objective indicia of nonobviousness such as copying and industry praise, and Apple's request for injunctive relief. Please confirm that Apple will search for and produce materials referring or relating to Masimo, Sound United, and their products.

### Request for Production No. 10

In response to Request for Production No. 10, Apple does not agree to search for or produce severance agreements between Apple and the inventors listed on the Apple Asserted Patents. Such severance agreements, however, are relevant to, among other things, Apple's ownership of the asserted patents, and they are proportional to the needs of the case. Please confirm that Apple will also search for and produce severance agreements between Apple and the inventors listed on the Apple Asserted Patents.

### Requests for Production Nos. 16 and 17

Requests for Production Nos. 16 and 17 seek materials referring or relating to submissions to the FDA and FCC, as well as communications with those agencies. Apple refuses to search for or produce responsive documents. The requested materials, however, are relevant to, among other things, the functionality and performance of the Apple Watch. *See, e.g.,* Summaries for 501(k) Nos. K213971, K212516, K201525. Please confirm that Apple will search for and produce documents responsive to these requests.

### Request for Production No. 18

Request for Production No. 18 seeks materials sufficient to show Apple's distribution channels for each version of the Apple Watch. Apple refusal to produce responsive materials is improper. The requested materials are relevant to, among other things, the parties' requests for injunctive relief and damages. *See, e.g., BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). Please confirm that Apple will search for and produce all documents responsive to this request.

### Requests for Production No. 21

Request for Production No. 21 seeks materials referring or relating to any comparison between an Apple product and a Masimo product, but Apple limits its response to "sales and marketing comparisons . . . between the Apple Watch and any of the Defendants' W1 Watch, Defendants' Freedom Watch, and Defendants' B1 Watch." Apple's limitation to sales and marketing comparisons is improper. Other comparisons, such as engineering and research and development comparisons, are relevant to, among other things, Apple's willful infringement of Masimo's asserted patents and objective indicia of nonobviousness such as copying and industry praise. *See, e.g., WCM*

# Knobbe Martens

*Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 968 (Fed. Cir. 2018).  Moreover, Apple's limitation to comparison between watches is improper. Other comparisons, such as comparisons between the Apple Watch and Masimo's other products capable of non-invasive physiological measurements, are relevant to, among other things, Apple's willful infringement of Masimo's asserted patents and objective indicia of nonobviousness such as copying and industry praise. Please confirm that Apple will search for and produce all documents responsive to this request.

### Request for Production No. 22

Request for Production No. 22 seeks materials relied upon in responding to any interrogatory, but Apple limits its response to materials cited in its interrogatory responses. This limitation is improper. The materials that Apple relies upon are relevant and discoverable regardless of whether they are cited in the responses. Please confirm that Apple will search for and produce materials relied upon in responding to any interrogatory.

### Requests for Production Nos. 28-33

Request for Production Nos. 28-33 seek documents supporting or rebutting Apple's allegations and contentions, but Apple states that it will produce only documents that support its allegations and contentions.  Apple's response is improper because documents rebutting Apple's allegations and contentions are discoverable.  *See, e.g.*, *Pegasystems, Inc. v. Appian Corp.*, No. CV 19-11461-PBS, 2021 WL 9860631, at *3 (D. Mass. Sept. 30, 2021). Please confirm that Apple will search for and produce all responsive documents.

### Request for Production Nos. 15-21, 23-26, 34, 41-49

Apple states that it willing to meet and confer regarding these requests. We request Apple be prepared to discuss its response to these requests at our meet and confer.

## Apple's Responses to Masimo's Interrogatories

### Interrogatory No. 1

Interrogatory No. 1 asks Apple to "identify and define the relevant field of art and the level of ordinary skill in the relevant art or designer of ordinary skill in the art."  In its response, Apple objected to the interrogatory as premature prior to expert discovery. Apple's objection is improper. The Court encourages the parties to respond to contention interrogatories early in the case. Indeed, a party's contention regarding the relevant field of art and the level of ordinary skill are relevant to, and therefore discoverable prior to, claim construction.  *See, e.g., Halverson Wood Prod., Inc. v. Classified Sys. LLC, No. CV 20-801 (JRT/LIB)*, 2021 WL 3036883, at *3 (D. Minn. July 19, 2021). Please promptly supplement Apple's response to this interrogatory.

### Interrogatory No. 3

Interrogatory No. 3 asks Apple to "describe the named inventor's contribution to each Asserted Claim, including an identification (by Bates number) of all documents, communications, and things that reflect each named inventor's contribution." In its response, however, Apple failed to identify or describe any contribution by any inventor. Please promptly supplement Apple's response to this interrogatory.

### Interrogatory No. 4

Interrogatory No. 4 asks Apple to "identify all versions of the Apple Watch, current or past, that fall within the scope of [each Asserted C]laim and all versions of the Apple Watch, current or past, that do not fall within the scope of [each Asserted C]laim."  However, Apple fails to provide, among other things, (1) an identification of the covered Apple Watch versions on a claim-by-claim basis, (2) an identification of the Apple Watch versions that do not fall within the scope of the Asserted Claims, or (3) a description of how any Apple Watch version satisfies or fails to satisfy the elements of such Asserted Claim. The requested information, however, is relevant to, among other things, Apple's requests for damages, Apple's requests for injunctive relief, and the validity of the asserted patents. Apple also objects to this request as premature, but the Court encourages the parties to respond to contention interrogatories early in the case. Please promptly supplement Apple's response to this interrogatory.

# Knobbe Martens

**Meet and Confer**

We would like to meet and confer regarding these deficiencies this week. Please tell us your availability for a call on Wednesday, May 10, and Thursday, May 11.

Sincerely,

Jared Bunker

# EXHIBIT 9
# Filed Under Seal

# DESMARAIS LLP

www.desmaraisllp.com

NEW YORK

SAN FRANCISCO

WASHINGTON, DC

Benjamin N. Luehrs
New York, NY
Direct: 212-808-2952
bluehrs@desmaraisllp.com

May 26, 2023

<u>Via Email</u>

Jared Bunker
Knobbe Martens
2040 Main Street, 14th Floor
Irvine, CA 92614
Jared.bunker@knobbe.com

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO D. DEL LR 26.2**

Re:     *Apple Inc. v. Masimo Corporation, et al.*
         <u>Civil Action Nos: 1:22-cv-01377-MN-JLH; 1:22-cv-01378-MN-JLH</u>

Dear Jared:

We write further to our letter of April 3, the parties' April 19 meet and confer, and our letter of May 9 concerning Masimo's and Sound United's (collectively, "Masimo") Responses and Objections to Apple's First and Second Sets of Interrogatories (served October 20, 2022 and February 15, 2023, respectively) and Apple's First Set of Requests for Production (served February 15, 2023).[1] We also write in response to Masimo's letter of May 8 concerning Apple's Responses and Objections to Masimo's discovery requests.

For at least the reasons below and those previously discussed, please confirm by **May 30** that Masimo will withdraw its improper objections and promptly supplement its discovery responses. Further, we are available to meet and confer regarding each parties' discovery issues on **May 30 or May 31**. Please provide your availability for a meet and confer.

## I.     APPLE'S DISCOVERY REQUESTS

### A.  General Deficiencies In Masimo's Responses To Apple's Interrogatories And Requests For Production.

Apple defined "Accused Products" in its discovery requests to specifically include W1, Freedom, and B1 (what we understand is also called "Freedom Band"). While Masimo agreed in an email dated May 11 to interpret "Accused Products" to include the Masimo W1 currently advertised on Masimo's website (i.e., Masimo's allegedly "redesigned" W1), Masimo's responses remain deficient because they still exclude the Freedom and B1.

Masimo's own employees have admitted during calls with Masimo's investors that the "health sensor for wearables *currently being deployed in the W1* is launching in the premium

---

[1] Apple reserves all rights concerning the other issues addressed in our letter of April 3 and Apple will address those issues via separate correspondence.

DESMARAIS LLP

Jared Bunker
May 26, 2023
Page 2

consumer watch segment format with ***Freedom and B1***." D.I. 51-2 at 107.  Further, a slide shown at Masimo's investor day conference held on December 13, 2022 shows that all of Masimo's watch products will use the same rear design:



Masimo's only asserted basis for refusing to produce discovery concerning the Freedom and B1 is that, before now, Apple had not yet accused the Freedom or B1 in its infringement contentions or an amended complaint.  As of May 25, Apple has accused the Freedom and B1 in its infringement contentions.  *See, e.g.,* Apple Inc.'s Initial Infringement Contentions, Case No. 22-cv-01377 (May 25, 2023).  Accordingly, Masimo's failure to provide discovery on those products in response to each of Apple's discovery requests is improper.  Please confirm that Masimo will supplement each of its responses to cover the Freedom and B1.

**B.  Specific Deficiencies In Masimo's Responses To Apple's Interrogatory Nos. 1-4.**

**Apple's Interrogatory No. 1**: Masimo must continue to supplement its response to this interrogatory with information concerning the Freedom and B1.  Masimo has already provided information in response to this interrogatory related to the Freedom, presumedly because the W1 and Freedom (and B1) will have the same rear design.  For example, while this interrogatory seeks an identification of "all of Masimo's (including Sound United's) actual and planned channels for distribution or sale of ***the W1*** in the United States," Masimo responded that it "currently expects that it will launch the ***Freedom smartwatch*** no earlier than the second half of 2023. At that time,

**DESMARAIS** LLP

Jared Bunker
May 26, 2023
Page 3

Masimo plans to ███████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████ "  *See* Masimo's Responses and
Objections To Apple Inc.'s First Set of Interrogatories, Case No. 22-cv-01377 (January 11, 2023).
Please promptly confirm that Masimo will continue to supplement its response to this interrogatory
to include any additional information related to the Freedom and B1.

      **Apple's Interrogatory No. 2**:   Masimo objected to Apple's request for information
regarding the role of any Apple product in developing the W1 and its charger as overly broad,
unduly burdensome, irrelevant, and not proportional to the needs of the case.  We understand from
the parties' prior correspondence that Masimo's primary objection to that phrase is that it relates
to all Apple products, rather than a specific subset of Apple products.  To resolve a potential
dispute between the parties on this issue, Apple agrees to limit "Apple products" to Apple Watch
and its charger.  Please confirm that, with that limitation, Masimo will withdraw its objection to
providing information regarding the role of any Apple product in developing the W1 and its
charger, including without limitation a description of each and every analysis of, review of,
consideration of, or comparison against Apple Watch or its charger in designing or developing any
Accused Product (as defined by Apple).

      Further, in relation to the other issues identified in our prior letters concerning Masimo's
response to Apple's Interrogatory No. 2, we understand that Masimo intends to timely supplement
its response to this interrogatory.

      **Apple's Interrogatory No. 3**:   Masimo objected to Apple's request for information
regarding Masimo's attempt to modify the Accused Products or design around the Asserted Patents
after obtaining knowledge of the Asserted Patents as overly broad, unduly burdensome, irrelevant,
and not proportional to the needs of the case.  When Apple pressed Masimo for any reason why
Masimo was withholding this information, Masimo could not recall the details of its objection and
agreed to get back to Apple as to Masimo's willingness to withdraw the objection.   For at least
the reasons previously stated, please promptly confirm that Masimo will withdraw its objection.

      **Apple's Interrogatory No. 4**:   According to Masimo's letter of April 14, Masimo has
agreed to supplement its response to this interrogatory to the extent that it intends to rely on an
opinion of counsel.  Please promptly identify a date certain by which Masimo will identify any
such opinion.

    **C. Specific Deficiencies In Masimo's Responses To Apple's Requests For
       Production.**

      **Apple's Request No. 3:** Pursuant to the parties' prior correspondence, we understand that
Masimo's document production will include documents that concern the date and circumstances
concerning Masimo's first awareness of the Asserted Patents and patents or patent applications in
the same patent family of the Asserted Patents.  Please promptly inform us if that is not correct.

DESMARAIS LLP

Jared Bunker
May 26, 2023
Page 4

**Apple's Request No. 9:** Pursuant to the parties' prior correspondence, we understand that Masimo's document production in response to this request will not be limited to policies related to watch designs.  Rather, Masimo will produce documents that apply to Masimo's products more generally but also include policies related to watch designs.  Please promptly inform us if that is not correct.

**Apple's Request No. 15:** Pursuant to the parties' prior correspondence, we understand that Masimo's document production in response to this request will not be limited to the final version(s) of the W1.  Rather, Masimo will also produce documents more generally related to analyses performed by or on behalf of Masimo related to design considerations throughout the development of the W1.  Please promptly inform us if that is not correct.

**Apple's Request No. 16:** Pursuant to the parties' prior correspondence, we understand that Masimo's document production in response to this request will not be limited to opinions of counsel.  Rather, Masimo will also produce documents concerning any opinions by non-attorneys (e.g., Masimo's engineers).  Please promptly inform us if that is not correct.

**Apple's Request No. 19:** The parties appear to have a dispute concerning this request. Apple's request seeks:

> All documents concerning any analyses, advantages, or disadvantages of any characteristics, features, functionality, or mechanisms of the Accused Products, including documents relating to any features that drive demand for the Accused Products or the subject matter of any of the Asserted Patents.

Pursuant to the parties' prior correspondence, Masimo improperly intends to limit its production to "documents relating to any feature that drives demand for the W1 and the W1 charger or the Apple Watch and its charger."  Masimo further objected to Apple's request as vague and ambiguous as it requests documents related to "the subject matter of any of the Asserted Patents."

Analyses, advantages, or disadvantages of the characteristics, features, functionality, or mechanisms of the Accused Products are relevant to Apple's Asserted Patents in both the 1377 case and the 1378 case as well as Masimo's non-patent counterclaims.  Accordingly, to the extent that Masimo does not withdraw its objection to producing that information, Apple will need to seek relief from the Court.  However, to clarify Apple's request regarding Apple's use of the phrase "subject matter of any of the Asserted Patents," and to potentially narrow any dispute that the parties must raise with the Court, Apple agrees to limit that phrase to "the Asserted Patents." Apple's limitation of this request is without prejudice to the scope of other Apple requests.

Please promptly confirm whether Masimo intends to maintain its objections to producing analyses, advantages, or disadvantages of the characteristics, features, functionality, and mechanisms of the Accused Products and whether Masimo agrees to produce responsive documents concerning the Asserted Patents.

**DESMARAIS** LLP

Jared Bunker
May 26, 2023
Page 5

**Apple's Request Nos. 21 and 22:**   We understand that Masimo is not currently withholding any categories of agreements sought by these requests, and that Masimo will inform Apple if that changes.  Please promptly inform us if that is not correct.

**Apple's Request No. 26:**  Apple proposes that the parties exchange three physical samples of each product identified in the parties' infringement contentions.  Specifically, Masimo will produce three physical copies of each of the W1 (original design), the W1 "redesign," the Freedom, and the B1, and Apple will produce three physical copies of each of Apple Watch Series 4-8 and Ultra.  Please promptly confirm whether that proposal is acceptable to Masimo.

**Apple's Request No. 27:** As stated above, Apple has accused the Freedom and B1 devices in its May 25 infringement contentions.  Accordingly, because Masimo's only asserted basis for not producing discovery concerning the Freedom and B1 was that Apple had not yet accused those products in its infringement contentions, please confirm that Masimo will amend its response to this request and produce Apple's requested information.

## II.   MASIMO'S DISCOVERY REQUESTS

### A.   Apple's Responses To Alleged Deficiencies In Apple's General Objections Identified By Masimo.

**Definition of "Apple Watch**."  Masimo seeks further explanation of which version(s) of Apple Watch are not related to the parties' patent claims.  Apple incorporates by reference its responses to Masimo's Interrogatory No. 4.  Further, the only accused products in Masimo and Cercacor's counterclaims are Apple Watch Series 6-8 and Ultra.  Apple maintains its objections. To the extent Masimo contends that any other Apple Watch product is relevant to the patent claims in this case, please explain Masimo's basis for that contention.

**Definition of "Apple," "You," and "Your."**  Apple objects to Masimo's definition of "Apple," "You," and "Your" to the extent those definitions include any persons or entities other than Apple Inc.  In responding to Apple's discovery requests, Masimo likewise objected to defining "Masimo" and "Sound United" as including persons or entities other than those specific entities.  Apple maintains its objections.  During the parties' next meet and confer, please explain Masimo's basis for contending that a broader definition of "Apple," "You," and "Your" is relevant and proportional to the needs of this case.

**Definition of "Masimo Asserted Patents."**  Masimo seeks further explanation regarding Apple's objection to and limitation of Masimo's definition of "Masimo Asserted Patents."  Apple objected to that definition because Masimo did not assert any patents in the 1377 case.  Apple maintains its objection.

**Definition of "Prior Art" and "Prosecute."**  Masimo seeks further explanation regarding Apple's objection to and limitation of "prior art" and "prosecute."  In relation to Masimo's

DESMARAIS LLP

Jared Bunker
May 26, 2023
Page 6

definition of "prior art," Apple asserts that the phrase "encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103," is overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case. For example, it is unclear what Masimo means by "the subject matter" in each statutory subdivision. Further, Masimo has not asserted "each and every [statutory] subdivision" as allegedly invalidating Apple's asserted patents, rendering Masimo's discovery requests overbroad and seeking information that is not relevant to this case. Additionally, it is unclear what "subject matter" beyond that "described in each and every subdivision of 35 U.S.C. §§ 102 and 103" Masimo contends is also prior art. Apple maintains its objection.

In relation to Masimo's definition of "prosecute," Apple asserts that the phrase "to prosecute the indicated patent or patent application in the United States Patent and Trademark Office or any foreign patent office" is overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case. For example, Apple's foreign prosecution is not relevant to this case. Apple maintains its objection.

**Temporal Limitation.**  Masimo requests that Apple withdraw its objection to producing certain patent-related discovery dated earlier than six years prior to the date that Masimo filed its counterclaims in the 1378 case (December 12, 2022). Apple's objection concerns Masimo's request for information related to damages prior to that date as Masimo cannot seek damages beyond six years prior to the filing of its patent counterclaims. Apple maintains its objection.

## B. Apple's Responses To Alleged Deficiencies In Apple's Responses And Objections To Masimo's Requests For Production Identified By Masimo.

**Masimo's Request for Production Nos. 3 and 4.**  These requests seek, among other information, "all documents, communications, and things referring or relating to" patentability not only for Apple's asserted patents but also for any patent application to which any asserted patent claims priority. Masimo's overbroad request is not proportional to the needs of the case.

**Masimo's Request for Production Nos. 6-9.**  These requests seek, among other information, "[a]ll documents, communications, and things" relating to Masimo, Sound United, and their products. These requests are vague, ambiguous, overbroad, irrelevant, and not proportional to the needs of the case. And to the extent any relevant materials fall within this broad scope, those materials are covered by Apple's agreed-upon production in response to more specific requests that Masimo has propounded. Accordingly, subject to Apple's objections and responses, for these requests, Apple has agreed to produce responsive, relevant, and non-privileged documents related to Masimo's willful infringement and competitive assessments and analysis of Masimo's infringing products to help focus Masimo's requests on relevant, discoverable, and

DESMARAIS LLP

Jared Bunker
May 26, 2023
Page 7

proportional information.  Apple maintains its objections.  However, Apple is willing to consider a modified, and appropriately tailored request.

**Masimo's Request for Production No. 10.**  This request seeks, among other things, all agreements between Apple and the inventors listed on the Apple Asserted Patents.  In response to this request, and subject to Apple's objections and responses, Apple agreed to search for and produce employment agreements and assignments between Apple and those inventors.   Any severance agreements with those same inventors are duplicative and/or not relevant to this case.  During the parties' meet and confer, please explain why Masimo also requires severance agreements in view of Apple's agreement to produce employment agreements and assignments.

**Masimo's Request for Production Nos. 16 and 17.**  These requests seek, among other information, all information and correspondence related to Apple's interactions with the United States Food and Drug Administration (FDA) and the Federal Communications Commission (FCC).  These requests are vague, ambiguous, overbroad, not relevant, and not proportional to the needs of the case.  Apple has already made its core technical document production related to Apple Watch.  Any information related to Apple's interactions with the FDA or the FCC is duplicative of the information that Apple has already produced or will produce in this case.  Indeed, Masimo fails to explain why documents related to Apple's interactions with the FDA or the FCC is relevant to any issue in this case.  Accordingly, collecting, reviewing, and producing all such documents, communications, and things—which are duplicative of other discovery Apple has produced and will produce—is not proportional to the needs of the case.  Apple maintains its objections.

**Masimo's Request for Production No. 18.**  This request seeks, among other things, documents sufficient to show Apple's distribution channels for Apple Watch.  Subject to Apple's responses and objections, Apple confirms that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show Apple's distribution of each Apple Watch product that practices one or more of the patents asserted by Apple.

**Masimo's Request for Production No. 21.**  This request seeks, among other things, documents showing any comparison between an Apple product and a Masimo product.  Subject to Apple's responses and objections, Apple is willing to meet and confer regarding this request.

**Masimo's Request for Production No. 22.**  This request seeks, among other things, documents identified in Apple's interrogatory responses.  Subject to Apple's responses and objections, Apple's response to this request is sufficient.  However, Apple is willing to meet and confer with Masimo to attempt to resolve any dispute.

**Masimo's Request for Production Nos. 28-33.**  These requests seek, among other things, documents, communications and things supporting or rebutting Apple's allegations.  Parties regularly disagree about whether a document actually "supports" or "rebuts" (or is relevant at all to) an allegation, and so the request does not provide a clear basis for Apple to know what it is

**DESMARAIS** LLP

Jared Bunker
May 26, 2023
Page 8

agreeing to produce.  Accordingly, as set forth in Apple's objections, Masimo's requests are vague, ambiguous, overbroad, and not proportional to the needs of this case.  Apple expressed its willingness to produce documents upon which it intends to rely, and is also willing (in response to this and other requests) to discuss the categories of documents that Masimo believes would be relevant.  Thus, Apple is willing to meet and confer to understand what documents, communications, and things Masimo seeks through this request.

    **Masimo's Request for Production Nos. 15-21, 23-26, 34, and 41-49.**  In response to these requests, and subject to Apple's responses and objections, Apple reiterates its willingness to meet and confer regarding the relevance and proportionality of these requests.

    **C. Apple's Responses To Alleged Deficiencies In Apple's Responses And Objections To Masimo's Interrogatories Identified By Masimo.**

    **Masimo's Interrogatory No. 1.**  This interrogatory seeks, among other things, Apple's identification of the relevant field of art and the level of ordinary skill in the art.  This interrogatory is premature as it seeks expert discovery.  Apple's objection to the premature production of expert discovery includes an objection to the premature production of such discovery in relation to claim construction.  Apple will produce expert discovery related to claim construction (if any) in accordance with the parties' proposed schedule.  Additionally, Masimo's citation to *Halverson Wood Prod., Inc. v. Classified Sys. LLC*, No. CV 20-801 (JRT/LIB), 2021 WL 3036883, at *3 (D. Minn. July 19, 2021) is not relevant because, in that case, a party was seeking an early summary judgment determination and the party opposing that motion was found to be prejudiced because it did not receive discovery concerning claim construction.  Those circumstances do not exist here. Apple maintains its objections.

    **Masimo's Interrogatory No. 3.**  This interrogatory seeks, among other things, an identification of each inventor's contribution to each claimed invention.  Apple's response to this interrogatory is sufficient.  However, Apple's investigation is ongoing, and it will supplement its response if necessary.

    **Masimo's Interrogatory No. 4.**  This interrogatory seeks, among other things, an identification of Apple Watch versions that fall within the scope of the asserted claims of the Apple Asserted Patents.  This interrogatory prematurely seeks expert discovery and is therefore improper. However, Apple's investigation is ongoing, and it will supplement its response if necessary.

                    Sincerely,

                    /s/ *Benjamin N. Luehrs*

                    Benjamin N. Luehrs

EXHIBIT 10

| | |
|---|---|
| **From:** | Jared Bunker |
| **To:** | Benjamin Luehrs |
| **Cc:** | Knobbe.MasimoDE; Palapura, Bindu A.; Jack Phillips; Greenfield, Leon; Milici, Jennifer; Kerri-Ann Limbeek; Megan C. Haney; Vote, Dominic; Ford, Mark; Jordan Malz; Peter Magic; Megan C. Haney; Apple Masimo Service; Moore, David E. |
| **Subject:** | Apple v. Masimo (C.A. Nos. 1377/1378) - Apple"s Responses to Masimo"s First Set of Written Discovery - Follow Up on Letter and Conferences |
| **Date:** | Tuesday, June 6, 2023 8:34:20 AM |
| **Attachments:** | Requests.DOCX |

Ben,

This email responds to and follows up on your May 26 Letter and our June 2 and June 5 conferences regarding Apple's responses to Masimo's first set of discovery requests.

**RFP 10**. Masimo maintains its request for severance agreements for the reasons discussed during our conference. You indicated that you would get back to us on this.

**RFP 15-17, 19, 21, 42-47, 49**. Masimo offered to narrow these requests. Masimo's proposed narrowing of these requests is outlined in the attached document. Please let us know promptly whether Apple agrees to produce in response to these narrowed requests.

**RFP 22**. As stated during our conference, Masimo believes it is entitled to documents from which Apple derives the content of any interrogatory responses, regardless of whether Apple decides to cite the document in its response.

**RFP 28-33**. As stated during our conference, Masimo believes Apple can reasonably identify documents containing statements that contradict Apple's allegations or contentions and should produce those documents.

**RFP 24**. Masimo maintains that its request seeks relevant information and is proportional. Masimo understands that Apple is refusing to search for and produce in response to this request.

**Rog No 1**. Masimo maintains that it is entitled to Apple's contention regarding the relevant field of art and level of ordinary skill in the relevant art or designer of ordinary skill in the art. *See, e.g., Jenny Yoo Collection, Inc. v. Essence of Australia*, No. 17-2666-JAR-GEB, 2019 WL 3453805, *11 (D. Kan. Jul. 31, 2019). As mentioned previously, the Court encourages the parties to serve and respond to contention interrogatories early in the case. Moreover, Apple has prepared infringement contentions and is preparing invalidity contentions, which involve this very issue. Masimo is entitled to Apple's contention. Masimo understands that Apple is maintaining that its response is sufficient and will not fully respond to this request.

**Rog No. 3**. Masimo indicated that it intends to serve supplemental interrogatory responses by early next week and requested a date by which Apple will supplement its response to this interrogatory. Please promptly provide a date by which Apple will supplement its response.

**Rog No. 4**. Masimo maintains that it is entitled to (a) an identification of the products Apple contends are covered by each Asserted Claim, on a claim-by-claim basis; (b) a claim chart outlining

Apple's basis for its contentions in (a); and (c) an explanation for Apple's position that each Apple
Watch not identified in (a) is not covered by the Asserted Claims.

We look forward to your prompt response to the above.

Sincerely,
Jared

**Jared Bunker**
Partner
**949-721-2957 Direct**
**Knobbe** Martens

---

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Friday, May 26, 2023 2:36 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A.
<bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon
<Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann
Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic
<Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz
<JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney
<mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>;
Moore, David E. <dmoore@potteranderson.com>
**Subject:** Apple v. Masimo (C.A. Nos. 1377/1378) - Letter to Bunker re Discovery Responses

Counsel,

Please see the attached correspondence.

Sincerely,
Ben

**Ben Luehrs** | Dᴇsᴍᴀʀᴀɪs LLP
230 Park Avenue | New York, NY 10169
T: (212) 808-2952| M: (203) 962-6557
E: bluehrs@desmaraisllp.com

This email may contain confidential and privileged material for the use of the intended
recipient. Any review, use, or distribution by anyone other than the addressee is strictly
prohibited. If you are not the intended recipient, please contact the sender by reply email and

delete all copies of this message.

| Request |
|---|
| 15. All document, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~each version of the Apple Watch and charger~~. |
| 16. All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~each version of the Apple Watch~~. |
| 17. All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~each version of the Apple Watch~~. |
| 19. All documents, communications, and things referring or relating to economic projections in the United States ~~or economic analyses~~ concerning ~~each version of~~ the Apple Watch Series 4 and later. |
| 21. All documents, communications, and things referring or relating to any comparison between an Apple ~~product~~ Watch and a Masimo product, including any sales and marketing comparisons and any technical or engineering or performance comparisons. |
| 42. All documents, communications, and things describing the operation of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~Apple Watch~~, including, without limitation, product brochures, user manuals, instructional materials, and directions for use. |
| 43. All training materials referring or relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~concerning any of the Apple Watch~~, including, without limitation, training manuals, training videos, presentations, and handouts. |
| 44. All marketing materials referring or relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~concerning any Apple Watch~~, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos. |
| 45. All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~any Apple Watch~~. |
| 46. All videos or DVDs ~~demonstrating or showing~~sufficient to show the operation of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, and the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities~~the Apple Watch~~. |

| Request |
|---|
| 47. All ~~technical documents for the Apple Watch, including, without limitation,~~ product specifications, ~~diagrams, schematics, memos, conceptual or~~ technical drawings, design requirements documents, ~~design capture documents,~~ technical requirements documents, ~~product briefs, product plans,~~ product requirements, ~~document trees, assembly design documents,~~ design review documents, system design documents, <u>and</u> fabricating drawings <u>referring or relating to the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities.</u>~~, manufacturing documents, and technical meeting minutes~~ |
| 49. All documents and things concerning the research, design, and development of <u>the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities</u>, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, meeting minutes, presentations and prototypes. |

# EXHIBIT 11

**DESMARAIS** LLP

www.desmaraisllp.com

NEW YORK

SAN FRANCISCO

WASHINGTON, DC

Benjamin N. Luehrs
New York, NY
Direct: 212-808-2952
bluehrs@desmaraisllp.com

June 21, 2023

<u>Via Email</u>

Jared Bunker
Knobbe Martens
2040 Main Street, 14th Floor
Irvine, CA 92614
Jared.bunker@knobbe.com

        Re:    *Apple Inc. v. Masimo Corporation, et al.*
             <u>Civil Action Nos: 1:22-cv-01377-MN-JLH; 1:22-cv-01378-MN-JLH</u>

Dear Jared:

We write further to the parties' prior meet and confers and correspondence concerning Masimo's First Set of Interrogatories and First Set of Requests for Production. Apple's responses to the specific discovery identified in Masimo's June 6 email are provided below, subject to Masimo's previous objections.

**Masimo's Allegations Of Deficiencies, Generally:** For purposes of discovery in this action, Masimo requested, and the Court granted, broad cross-use of documents exchanged between Masimo and Apple during two prior, lengthy litigations. In those prior cases, Apple has already produced ***over 360,000 documents*** comprising ***over 5,500,000*** pages of information.

Despite that broad cross-use, Masimo has nevertheless served extremely broad discovery requests on Apple in this case. Apple has agreed to search for and produce relevant discovery in response to those requests. However, with respect to the discovery requests identified below, Masimo has failed to: (1) identify any ***specific*** discovery that Masimo contends is missing from Apple's prior productions; (2) articulate any reason why additional discovery is needed; or (3) explain how such information will not be duplicative of information that Apple has produced or will produce in response to Masimo's other Requests. Masimo's failure to provide this information, following years of prior litigation between the parties, demonstrates the impropriety and overbreadth of its Requests. Accordingly, notwithstanding Apple's responses below, Apple will continue to make itself available to meet and confer to address any ***specific*** information that Masimo seeks to further minimize the number of disputes that must be brought to the Court (if any).

**Masimo's Request For Production No. 10**: Through this Request, Masimo seeks severance agreements between Apple and any named inventors on Apple's asserted patents who are no longer Apple employees. Apple maintains that these agreements are not relevant to any claims or defenses in this case. Based on Masimo's failure to articulate any reasons to the contrary during the parties' meet and confers, Apple further maintains that Masimo's request for severance

**DESMARAIS** LLP

Jared Bunker
June 21, 2023
Page 2

agreements is based on mere speculation and constitutes nothing more than a fishing expedition, rendering the Request improper. However, to potentially minimize the parties' disputes, Apple is investigating the existence of any severance agreements and we will promptly update Masimo regarding Apple's response to this Request after the conclusion of that investigation.

**Masimo's Request For Production No. 15**:  On June 6, 2023, Masimo narrowed this Request to the following:  All documents, communications, and things, including publications and articles, referring or relating to any testing or research with respect to the efficacy or performance of, or user response or reaction to, the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple agrees that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control, sufficient to show the efficacy or performance of the back of the Apple Watch Series 4 (and later versions), to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement. D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**Masimo's Request For Production No. 16**:  On June 6, 2023, Masimo narrowed this Request to the following:  All documents, communications, and things referring or relating to contemplated or actual filings and supporting studies submitted to the United States Food and Drug Administration or the Federal Communications Commission concerning the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities

Through this Request, Masimo seeks ***"[a]ll documents, communications, and things*** referring or related to ***contemplated*** or actual filings and supporting studies" exchanged between Apple and the FDA and the FCC concerning various features of Apple Watch.  Masimo's Request is extremely overbroad, especially in view of the broad cross-use previously demanded by Masimo. Further, we understand that Apple has already produced FDA-related information related to Apple Watch in the parties' prior litigations.  Here, however, Masimo has failed to identify any ***specific*** FDA-related information that is missing from those productions, explain why Masimo now requires additional information, or explain how such information will not be duplicative of information that Apple has produced or will produce in response to Masimo's other Requests. However, although Apple will not produce "all" submissions and communications related to the FDA, Apple is investigating the scope of documents that are responsive to Masimo's narrowed Request to minimize the parties' potential disputes.  We will promptly update Masimo regarding Apple's response after the conclusion of that investigation.

DESMARAIS LLP

Jared Bunker
June 21, 2023
Page 3

**Masimo's Request For Production No. 17**:  On June 6, 2023, Masimo narrowed this Request to the following:  All communications with the United States Food and Drug Administration or the Federal Communications Commission concerning the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities.

Through this Request, Masimo seeks *"[a]ll communications"* exchanged between Apple and the FDA and the FCC concerning various features of Apple Watch.  As with Masimo's Request No. 16, this Request is extremely overbroad, especially in view of the broad cross-use Masimo has been granted and Apple's prior production.  Further, Masimo has failed to identify any *specific* information it is seeking through this Request.  Nor has Masimo explained why communications exchanged between Apple and the FDA or FCC are relevant to any issue in this case.  However, although Apple will not produce "all" communications related to the FDA or FCC, Apple is investigating the scope of documents that are responsive to Masimo's narrowed Request to minimize the parties' potential disputes.  We will promptly update Masimo regarding Apple's response after the conclusion of that investigation.

**Masimo's Request For Production No. 19**:  On June 6, 2023, Masimo narrowed this Request to the following: All documents, communications, and things referring or relating to economic projections in the United States concerning the Apple Watch Series 4 and later.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control, sufficient to show sales forecasts for the Apple Watch Series 4 (and later versions) in the United States, to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**Masimo's Request For Production No. 21**:  On June 6, 2023, Masimo narrowed this Request to the following:  All documents, communications, and things referring or relating to any comparison between an Apple Watch and a Masimo product, including any sales and marketing comparisons and any technical or engineering or performance comparisons.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control, that compare the Apple Watch Series 4 (and later versions) to the Masimo W1 or Masimo Freedom products, to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**Masimo's Request For Production No. 22**:  In response to this Request, Apple hereby supplements its response to state that it will produce responsive, relevant, and non-privileged

**DESMARAIS** LLP

Jared Bunker
June 21, 2023
Page 4

documents in Apple's possession, custody, or control that Apple relied upon in responding to Defendants' interrogatories.

**Masimo's Request For Production No. 24**:  Through this Request, Masimo seeks *everything* that Apple produced, served, or filed in a completely separate action (*In the Matter of Certain Wearable Electronic Devices with ECG Functionality and Components Thereof.*, No. 337-TA-1266), which involves *different* parties and *different* patents.  Masimo's request is, essentially, an improper request for cross-use of discovery materials from a *third*, years-long litigation and a baseless assertion that the Court's current broad cross-use ruling in this case is somehow deficient. Moreover, Masimo has again failed to explain what *specific* and relevant information it is seeking through this Request that is not available through either Apple's prior productions or Apple's impending productions in response to Masimo's other Requests.  Accordingly, at least until Masimo provides that information, and in view of the broad cross-use provisions adopted by the Court in this case, Apple will not search for or produce materials in response to this Request.

**Masimo's Request For Production No. 28-33**:  Apple maintains that it has no obligation to seek out evidence in support of Masimo's contentions absent a request for specific information from Masimo.  If Masimo believes there are documents or types of documents that are beneficial to Masimo, it should specifically request those documents.  Nevertheless, to potentially avoid an additional dispute between the parties, in response to these Requests, Apple supplements its responses to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control located by a reasonably diligent search.

**Masimo's Request For Production No. 42**:  On June 6, 2023, Masimo narrowed this Request to the following:  All documents, communications, and things describing the operation of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

Subject to Masimo's narrowing amendments to this Request, there is no reason for Apple to supplement the scope of its response.  In the 1377 case, Apple has already agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search."  In the 1378 case, Apple has further agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the operation of the accused features of Apple Watch located by a reasonably diligent search."  The scope of those responses covers relevant information in Masimo's narrowing amendments.  If Masimo disagrees, please

**DESMARAIS** LLP

Jared Bunker
June 21, 2023
Page 5

provide Masimo's availability to meet and confer to identify what *specific* information that Masimo asserts is not covered.

**Masimo's Request For Production No. 43**:  On June 6, 2023, Masimo narrowed this Request to the following:  All training materials referring or relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities, including, without limitation, training manuals, training videos, presentations, and handouts.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search.

**Masimo's Request For Production No. 44**:  On June 6, 2023, Masimo narrowed this Request to the following: All marketing materials referring or relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search.

**Masimo's Request For Production No. 45**:  On June 6, 2023, Masimo narrowed this Request to the following:  All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to the design of the back of the Apple Watch, the design of the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1377 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control, sufficient to show the efficacy or performance of the back of the Apple Watch Series 4 (and later versions), to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).  Apple further hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search.

DESMARAIS LLP

Jared Bunker
June 21, 2023
Page 6

**Masimo's Request For Production No. 46**:  On June 6, 2023, Masimo narrowed this Request to the following:  All videos or DVDs sufficient to show the operation of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, and the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities.

Subject to and on the condition of Masimo's narrowing amendments to this Request, Apple hereby supplements its Response in the 1378 case to state that it will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the operation of the accused features of Apple Watch located by a reasonably diligent search.

**Masimo's Request For Production No. 47**:  On June 6, 2023, Masimo narrowed this request to the following:  All product specifications, technical drawings, design requirements documents, technical requirements documents, product requirements, design review documents, system design documents, and fabricating drawings referring or relating to the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the performance of the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities.

Subject to Masimo's narrowing amendments to this Request, there is no reason for Apple to supplement the scope of its response.  In the 1377 case, Apple has already agreed to search for and produce, among other things, "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search."  In the 1378 case, Apple has further agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the technical specifications of the accused features of Apple Watch located by a reasonably diligent search."  The scope of Apple's responses covers relevant information in Masimo's narrowing amendments.  If Masimo disagrees, please provide Masimo's availability to meet and confer to identify what *specific* information that Masimo asserts is not covered.

**Masimo's Request For Production No. 49**:  On June 6, 2023, Masimo narrowed this Request to the following:  All documents and things concerning the research, design, and development of the biosensor module on the back of the Apple Watch, the Apple Watch charger, the Apple Watch GUI, or the Apple Watch blood oxygen, irregular heart rhythm notification, or ECG features/functionalities, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, meeting minutes, presentations, and prototypes.

Subject to Masimo's narrowing amendments to this Request, there is no reason for Apple to supplement its response.  In the 1377 case, Apple has already agreed to search for and produce, among other things, "responsive, relevant, and non-privileged documents in Apple's possession,

DESMARAIS LLP

Jared Bunker
June 21, 2023
Page 7

custody, or control sufficient to show the functionality of the biosensor module on the back of each version of Apple Watch that practices one or more of the Apple Asserted Patents in Case No. 22-1377 and the functionality of each version of Apple Watch's charger that practices one or more of the Apple Asserted Patents in Case No. 22-1377 located by a reasonably diligent search." In the 1378 case, Apple has further agreed to search for and produce "responsive, relevant, and non-privileged documents in Apple's possession, custody, or control related to the design and development of the accused features of Apple Watch located by a reasonably diligent search." The scope of Apple's responses covers relevant information in Masimo's narrowing amendments. If Masimo disagrees, please provide Masimo's availability to meet and confer to identify what *specific* information that Masimo asserts is not covered.

**Masimo's Interrogatory Nos. 1 and 3**: Pursuant to Apple's ongoing investigation, Apple intends to supplement its responses to these interrogatories. Apple intends to serve its supplemental responses next week.

**Masimo's Interrogatory No. 2:** Pursuant to Apple's ongoing investigation, Apple also intends to supplement its response to this interrogatory, which Apple intends to serve next week. However, Masimo has failed to identify any authority for its request for Apple to create claim charts showing an element-by-element analysis of which Apple products practice Apple's asserted claims. Apple is aware of no such authority or obligation. Masimo also has not explained why such analysis and opinion are required before expert discovery. Nor has Masimo identified, and nor is Apple aware of, any authority or obligation for Apple to "explain[]" why products that Masimo has ***not*** accused of infringement are ***not*** covered products. Accordingly, at least until Masimo identifies any authority for its request, at this time Apple will not serve upon Masimo any claim charts concerning Apple's covered products, and Apple will not provide any explanation in response to Masimo's Interrogatory No. 2 as to why unaccused products do not practice Apple's asserted claims.

Sincerely,

/s/ *Benjamin N. Luehrs*

Benjamin N. Luehrs

# EXHIBIT 12
# Filed Under Seal

| | |
|---|---|
| **From:** | Carson Olsheski |
| **To:** | Benjamin Luehrs; Jared Bunker |
| **Cc:** | Knobbe.MasimoDE; Palapura, Bindu A.; Jack Phillips; Greenfield, Leon; Milici, Jennifer; Kerri-Ann Limbeek; Megan C. Haney; Vote, Dominic; Ford, Mark; Jordan Malz; Peter Magic; Megan C. Haney; Apple Masimo Service; Moore, David E. |
| **Subject:** | RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple"s Responses to Masimo"s First Set of Written Discovery - Follow Up on Letter and Conferences |
| **Date:** | Wednesday, June 21, 2023 9:38:40 PM |

Hello Jared,

With respect Masimo's proposal to modify the parties' privilege logging obligations, Apple is amenable to Masimo's proposed carve-outs as modified below (underlined):

Privileged communications dated after January 9, 2020 (i.e., the day the CDCA complaint was filed) need not be logged on a privilege log if the communication (a) is with outside counsel for a party; (b) is with in-house counsel for a party and relates to actual or potential litigations, investigations, or proceedings between Masimo and Apple; or (c) is a redaction in a document and the unredacted portions of the document reasonably provide the privilege basis for the communication (including at least the identity of the author(s) and all recipients).

Apple agrees to these privilege log carve outs without prejudice to its requested discovery concerning Masimo's past and forecasted litigation costs (e.g., RFPs 61-65), and Apple reserves the right to request a log of any documents withheld that are otherwise responsive to those requests notwithstanding the above.

With respect to Masimo's informal request for Apple's production of Radr/Radar items, to the extent specific, responsive Radar documents are identified, Apple will produce those and available metadata in accordance with the ESI Order.

Best,

Carson Olsheski
Desmarais LLP
230 Park Avenue
New York, NY 10169
212-808-2911 | direct

---

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Wednesday, June 21, 2023 4:24 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic

<Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences

Jared,

Thank you for your email.  I just sent you a follow up letter on our prior thread.  We understand that Apple's letter resolves all, or nearly all, of the issues identified in your email of June 6.  To the extent there are any issues remaining on which Masimo intends to seek relief from the Court, please provide your availability to meet and confer to disclose those issues to us.

As to the other two items in your draft letter to the Court, we disagree that those are discovery disputes or that the parties have reached an impasse as to a possible resolution.  In any event, we will provide Apple's position today or tomorrow.

Sincerely,
Ben

**From:** Jared Bunker <Jared.Bunker@knobbe.com>
**Sent:** Tuesday, June 20, 2023 8:24 PM
**To:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** [Ext] RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences

Mimecast Attachment Protection has deemed this file to be safe, but always exercise caution when opening files.

**\*\*EXTERNAL EMAIL\*\*** This email originated from outside the company. Do not click on any link unless you recognize the sender and have confidence the content is safe.

Ben,

It has now been two weeks and we still have not heard from Apple on these disputes. Accordingly, and in view of the schedule, we'd like to move the Court on Thursday for a discovery dispute telephone conference. If we can resolve some of the disputes before the conference, that is great,

and we can leave them out of the letters or inform the Court of the resolution. But given the compressed schedule, we can't keep waiting to move forward toward resolving these disputes.

I'm attaching a draft of the motion for a telephone conference -- please let us know if you have any edits. And please provide three dates over the next two weeks that would work for a telephone conference – I'm sure we can accommodate your team's availability.

Sincerely,
Jared

**Jared Bunker**
Partner
949-721-2957 **Direct**
**Knobbe Martens**

---

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Wednesday, June 14, 2023 6:18 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences


Jared,

Thank you for your email.

We are exhausting all efforts to minimize the number of additional disputes that must be brought to the Court (if any).  We anticipate being able to resolve or narrow the parties' disputes by the end of this week, and we are aiming to provide a response on Masimo's identified issues by then.

Sincerely,
Ben

---

**From:** Jared Bunker <Jared.Bunker@knobbe.com>
**Sent:** Tuesday, June 6, 2023 11:34 AM
**To:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A.

<bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon
<Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann
Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic
<Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz
<JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney
<mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>;
Moore, David E. <dmoore@potteranderson.com>
**Subject:** [Ext] Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of
Written Discovery - Follow Up on Letter and Conferences

**\*\*EXTERNAL EMAIL\*\* This email originated from outside the company. Do not click on any link unless you
recognize the sender and have confidence the content is safe.**

Ben,

This email responds to and follows up on your May 26 Letter and our June 2 and June 5 conferences
regarding Apple's responses to Masimo's first set of discovery requests.

**RFP 10**. Masimo maintains its request for severance agreements for the reasons discussed during
our conference. You indicated that you would get back to us on this.

**RFP 15-17, 19, 21, 42-47, 49**. Masimo offered to narrow these requests. Masimo's proposed
narrowing of these requests is outlined in the attached document. Please let us know promptly
whether Apple agrees to produce in response to these narrowed requests.

**RFP 22**. As stated during our conference, Masimo believes it is entitled to documents from which
Apple derives the content of any interrogatory responses, regardless of whether Apple decides to
cite the document in its response.

**RFP 28-33**. As stated during our conference, Masimo believes Apple can reasonably identify
documents containing statements that contradict Apple's allegations or contentions and should
produce those documents.

**RFP 24**. Masimo maintains that its request seeks relevant information and is proportional. Masimo
understands that Apple is refusing to search for and produce in response to this request.

**Rog No 1**. Masimo maintains that it is entitled to Apple's contention regarding the relevant field of
art and level of ordinary skill in the relevant art or designer of ordinary skill in the art. *See, e.g., Jenny
Yoo Collection, Inc. v. Essence of Australia*, No. 17-2666-JAR-GEB, 2019 WL 3453805, \*11 (D. Kan. Jul.
31, 2019). As mentioned previously, the Court encourages the parties to serve and respond to
contention interrogatories early in the case. Moreover, Apple has prepared infringement
contentions and is preparing invalidity contentions, which involve this very issue. Masimo is entitled
to Apple's contention. Masimo understands that Apple is maintaining that its response is sufficient
and will not fully respond to this request.

**Rog No. 3**. Masimo indicated that it intends to serve supplemental interrogatory responses by early next week and requested a date by which Apple will supplement its response to this interrogatory. Please promptly provide a date by which Apple will supplement its response.

**Rog No. 4**. Masimo maintains that it is entitled to (a) an identification of the products Apple contends are covered by each Asserted Claim, on a claim-by-claim basis; (b) a claim chart outlining Apple's basis for its contentions in (a); and (c) an explanation for Apple's position that each Apple Watch not identified in (a) is not covered by the Asserted Claims.

We look forward to your prompt response to the above.

Sincerely,
Jared

**Jared Bunker**
Partner
949-721-2957 **Direct**

**Knobbe Martens**

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Friday, May 26, 2023 2:36 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A.
<bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon
<Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann
Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic
<Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz
<JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney
<mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>;
Moore, David E. <dmoore@potteranderson.com>
**Subject:** Apple v. Masimo (C.A. Nos. 1377/1378) - Letter to Bunker re Discovery Responses

Counsel,

Please see the attached correspondence.

Sincerely,
Ben

**Ben Luehrs** | DESMARAIS LLP
230 Park Avenue | New York, NY 10169
T:  (212) 808-2952| M:  (203) 962-6557

E: [bluehrs@desmaraisllp.com](mailto:bluehrs@desmaraisllp.com)

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# EXHIBIT 13
# Filed Under Seal

| From: | Jared Bunker |
|---|---|
| To: | Benjamin Luehrs |
| Cc: | Knobbe.MasimoDE; Palapura, Bindu A.; Jack Phillips; Greenfield, Leon; Milici, Jennifer; Kerri-Ann Limbeek; Megan C. Haney; Vote, Dominic; Ford, Mark; Jordan Malz; Peter Magic; Megan C. Haney; Apple Masimo Service; Moore, David E. |
| Subject: | RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple"s Responses to Masimo"s First Set of Written Discovery - Follow Up on Letter and Conferences |
| Date: | Thursday, June 22, 2023 10:24:44 AM |
| Attachments: | 2023-06-22 Motion for Teleconference to Resolve Discovery Disputes.DOCX |

Ben,

Further to the below, we received Carson's email last night about the Apple Radar system. To the extent Apple's position is that Apple's search for responsive materials and production will not include responsive files and metadata from the Apple Radar system, and Masimo must identify "specific" Radar documents for production, we disagree with Apple's position. I'm attaching an updated draft motion for telephone conference.

-Jared

**Jared Bunker**
Partner
**949-721-2957 Direct**
**Knobbe Martens**

---

**From:** Jared Bunker <Jared.Bunker@knobbe.com>
**Sent:** Thursday, June 22, 2023 9:27 AM
**To:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences

Ben,

Thank you for your June 21 letter. I'm glad we were able to resolve some of the issues. We would like to move the Court today for a telephone conference to resolve the remaining issues on RFP Nos. 10, 15-17, 24, 42-47, 49, as well as Interrogatory No. 2. Regarding RFP Nos. 10 and 16-17, Apple's statement that it will "update Masimo" after it concludes its "investigation" is improper -- we are on a compressed schedule, Masimo's requests have been pending for months, and Apple has not identified a date by when its "investigation" will be completed. Regarding RFP No. 24, Masimo's request is not seeking "everything," but is instead seeking documents and things concerning Masimo

or any version of the Apple Watch. Regarding RFP Nos. 42 and 47, Apple is refusing to produce responsive documents, communications, and things regarding the GUI on Apple Watch Series 0-5. As we discussed previously, Series 4 and 5 are relevant because, among other reasons, Apple asserts that those versions are covered by its asserted utility patents, and Series 0 through 3 are relevant to patent damages and patent validity. Regarding RFP No. 49, Apple is refusing to produce documents and things concerning the research, design, and development of (a) the biosensor module on the back of the Apple Watch Series 4 and 5, which are relevant to, among other things, patent unenforceability and patent validity; (b) the Apple Watch charger for all Series, which are relevant to, among other things, patent unenforceability and patent validity; (c) the Apple Watch blood oxygen, irregular heart rhythm notification, and ECG features/functionalities of the Apple Watch Series 4 and 5, which are relevant to, among other things, patent unenforceability, patent validity, and false advertisements.

I'm attaching an updated draft of the motion for a telephone conference -- please let us know if you have any edits. And please provide three dates over the next two weeks that would work for a telephone conference – I'm sure we can accommodate your team's availability.

Sincerely,
Jared

**Jared Bunker**
Partner
949-721-2957 **Direct**
**Knobbe** Martens

---

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Wednesday, June 21, 2023 1:24 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences

Jared,

Thank you for your email.  I just sent you a follow up letter on our prior thread.  We understand that Apple's letter resolves all, or nearly all, of the issues identified in your email of June 6.  To the extent there are any issues remaining on which Masimo intends to seek relief from the Court, please

provide your availability to meet and confer to disclose those issues to us.

As to the other two items in your draft letter to the Court, we disagree that those are discovery disputes or that the parties have reached an impasse as to a possible resolution.  In any event, we will provide Apple's position today or tomorrow.

Sincerely,
Ben

---

**From:** Jared Bunker <Jared.Bunker@knobbe.com>
**Sent:** Tuesday, June 20, 2023 8:24 PM
**To:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** [Ext] RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences

Mimecast Attachment Protection has deemed this file to be safe, but always exercise caution when opening files.

**\*\*EXTERNAL EMAIL\*\* This email originated from outside the company. Do not click on any link unless you recognize the sender and have confidence the content is safe.**

---

Ben,

It has now been two weeks and we still have not heard from Apple on these disputes. Accordingly, and in view of the schedule, we'd like to move the Court on Thursday for a discovery dispute telephone conference. If we can resolve some of the disputes before the conference, that is great, and we can leave them out of the letters or inform the Court of the resolution. But given the compressed schedule, we can't keep waiting to move forward toward resolving these disputes.

I'm attaching a draft of the motion for a telephone conference -- please let us know if you have any edits. And please provide three dates over the next two weeks that would work for a telephone conference – I'm sure we can accommodate your team's availability.

Sincerely,
Jared

**Jared Bunker**

Partner

949-721-2957 Direct

**Knobbe Martens**

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Wednesday, June 14, 2023 6:18 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences


Jared,

Thank you for your email.

We are exhausting all efforts to minimize the number of additional disputes that must be brought to the Court (if any).  We anticipate being able to resolve or narrow the parties' disputes by the end of this week, and we are aiming to provide a response on Masimo's identified issues by then.

Sincerely,
Ben

**From:** Jared Bunker <Jared.Bunker@knobbe.com>
**Sent:** Tuesday, June 6, 2023 11:34 AM
**To:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** [Ext] Apple v. Masimo (C.A. Nos. 1377/1378) - Apple's Responses to Masimo's First Set of Written Discovery - Follow Up on Letter and Conferences

**\*\*EXTERNAL EMAIL\*\*** This email originated from outside the company. Do not click on any link unless you

**recognize the sender and have confidence the content is safe.**

Ben,

This email responds to and follows up on your May 26 Letter and our June 2 and June 5 conferences regarding Apple's responses to Masimo's first set of discovery requests.

**RFP 10**. Masimo maintains its request for severance agreements for the reasons discussed during our conference. You indicated that you would get back to us on this.

**RFP 15-17, 19, 21, 42-47, 49**. Masimo offered to narrow these requests. Masimo's proposed narrowing of these requests is outlined in the attached document. Please let us know promptly whether Apple agrees to produce in response to these narrowed requests.

**RFP 22**. As stated during our conference, Masimo believes it is entitled to documents from which Apple derives the content of any interrogatory responses, regardless of whether Apple decides to cite the document in its response.

**RFP 28-33**. As stated during our conference, Masimo believes Apple can reasonably identify documents containing statements that contradict Apple's allegations or contentions and should produce those documents.

**RFP 24**. Masimo maintains that its request seeks relevant information and is proportional. Masimo understands that Apple is refusing to search for and produce in response to this request.

**Rog No 1**. Masimo maintains that it is entitled to Apple's contention regarding the relevant field of art and level of ordinary skill in the relevant art or designer of ordinary skill in the art. *See, e.g., Jenny Yoo Collection, Inc. v. Essence of Australia*, No. 17-2666-JAR-GEB, 2019 WL 3453805, *11 (D. Kan. Jul. 31, 2019). As mentioned previously, the Court encourages the parties to serve and respond to contention interrogatories early in the case. Moreover, Apple has prepared infringement contentions and is preparing invalidity contentions, which involve this very issue. Masimo is entitled to Apple's contention. Masimo understands that Apple is maintaining that its response is sufficient and will not fully respond to this request.

**Rog No. 3**. Masimo indicated that it intends to serve supplemental interrogatory responses by early next week and requested a date by which Apple will supplement its response to this interrogatory. Please promptly provide a date by which Apple will supplement its response.

**Rog No. 4**. Masimo maintains that it is entitled to (a) an identification of the products Apple contends are covered by each Asserted Claim, on a claim-by-claim basis; (b) a claim chart outlining Apple's basis for its contentions in (a); and (c) an explanation for Apple's position that each Apple Watch not identified in (a) is not covered by the Asserted Claims.

We look forward to your prompt response to the above.

Sincerely,
Jared


**Jared Bunker**
Partner
949-721-2957 **Direct**
**Knobbe** Martens

---

**From:** Benjamin Luehrs <BLuehrs@desmaraisllp.com>
**Sent:** Friday, May 26, 2023 2:36 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Jack Phillips <JCP@PMHDELaw.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Kerri-Ann Limbeek <KLimbeek@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Jordan Malz <JMalz@desmaraisllp.com>; Peter Magic <PMagic@desmaraisllp.com>; Megan C. Haney <mch@PMHDELaw.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** Apple v. Masimo (C.A. Nos. 1377/1378) - Letter to Bunker re Discovery Responses



Counsel,

Please see the attached correspondence.

Sincerely,
Ben


**Ben Luehrs** | Desmarais LLP
230 Park Avenue | New York, NY 10169
T:  (212) 808-2952| M:  (203) 962-6557
E:  bluehrs@desmaraisllp.com



This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and

privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>*Defendants.* | C.A. No. 22-1377-MN-JLH |
| MASIMO CORPORATION,<br><br>*Counter-Claimant,*<br><br>v.<br><br>APPLE INC.<br><br>*Counter-Defendant.* | |
| APPLE INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>*Defendants.* | C.A. No. 22-1378-MN-JLH |
| MASIMO CORPORATION and<br>CERCACOR LABORATORIES, INC.,<br><br>*Counter-Claimants,*<br><br>v.<br><br>APPLE INC.<br><br>*Counter-Defendant.* | |

**MOTION FOR TELECONFERENCE TO RESOLVE**
**DISCOVERY DISPUTES**

Defendants Masimo Corporation and Sound United, LLC respectfully move this Court

to schedule a teleconference to address outstanding disputes regarding the following discovery

8

matters:

- Apple's responses to several requests in Defendants' First Set of Requests for Production and Apple's response to one interrogatory in Defendants' First Set of Interrogatories; and

- Whether Apple must search for and produce responsive files and metadata from the Apple Radar system.

The following attorneys, including at least one Delaware Counsel and at least one Lead Counsel per party, participated in a verbal meet-and-confer by telephone on the following dates: June 2, 2023, and June 5, 2023.

Delaware Counsel:
For Masimo: John C. Phillips, Jr.
For Apple: David E. Moore

Lead Counsel:
For Masimo: Jared Bunker, Kendall Loebbaka, David Kim
For Apple: Benjamin Luehrs, Carson Olsheski, Mark Ford

The parties are available for a teleconference on the following dates: **[LIST THREE DATES]**.

Dated:  June 22, 2023

POTTER ANDEERSON & CORROON LLP            PHILLIPS MCLAUGHLIN & HALL, P.A.


/s/_____                      /s/_____
David E. Moore (#3983)                    John C. Phillips, Jr. (#110)
Bindu A. Palapura (#5370)                 Megan C. Haney (#5016)
Hercules Plaza, 6th Floor                 1200 North Broom Street
1313 N. Market Street                     Wilmington, Delaware  19806
Wilmington, DE 19801                      (302) 655-4200
(302) 984-6000                            jcp@pmhdelaw.com
dmoore@potteranderson.com                 mch@pmhdelaw.com
bpalapura@potteranderson.com

                                          *Attorneys for Defendants*

*Attorneys for Plaintiff*

57810940

# EXHIBIT 14
# Filed Under Seal

Page 201

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

_____

MASIMO CORPORATION, a          )
Delaware Corporation; and      )
CERCACOR LABORATORIES, INC.,   )
a Delaware Corporation,        )
                               )
                  Plaintiffs,) Case No.
                               )  8:20-cv-00048-JVS-JDE
          vs.                  )
                               )
APPLE INC., a California       )
Corporation,                   )
                               )
                  Defendant. )
_____)


** HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY **

VIDEOTAPED DEPOSITION OF

MARCELO LAMEGO, PH.D.

VOLUME II

WEDNESDAY, JULY 13, 2022, 9:14 A.M.

IRVINE, CALIFORNIA


STENOGRAPHICALLY REPORTED BY:

CHERYL M. HAAB, RDR, CRR, CCRR

CA CSR No. 13600

WA CCR No. 3499


_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 202

1            VIDEOTAPED DEPOSITION OF MARCELO LAMEGO, PH.D.,

2      VOLUME II, taken at 3161 Michelson Drive, Irvine,

3      California, on Wednesday, July 13, 2022, at 9:14 a.m.,

4      before Cheryl M. Haab, RDR, CRR, CCRR, Certified

5      Shorthand Reporter No. 13600 in and for the State of

6      California, and Certified Court Reporter No. 3499 in and

7      for the State of Washington.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 203

```
 1                A P P E A R A N C E S
 2                    --oOo--
 3
 4      For the Witness:
            MERCHANT & GOULD
 5          BY:  SCOTT SHAW, ESQ.
            611 Wilshire Boulevard, Suite 808
 6          Los Angeles, California 90017
            213.510.3100
 7          sshaw@merchantgould.com
 8
 9      For Plaintiffs Masimo Corporation and Cercacor
        Laboratories, Inc:
10          KNOBBE MARTENS
            BY:  ADAM POWELL, ESQ.
11               BRIAN CLAASSEN, ESQ.
                 STEVEN FRIEDLAND, ESQ.
12          12790 Camino Real, Suite 100
            San Diego, California 92130
13          858.707.4000
            adam.powell@knobbe.com
14          brian.claassen@knobbe.com
            steven.friedland@knobbe.com
15
16      For Defendant Apple, Inc.:
            GIBSON, DUNN & CRUTCHER LLP
17          BY:  BRIAN A. ROSENTHAL, ESQ.
            200 Park Avenue
18          New York, New York 10166
            212.351.4000
19          barosenthal@gibsondunn.com
20
21
22
```

Page 204

```
 1              A P P E A R A N C E S, CON'T

 2                     --oOo--

 3

 4    For Defendant Apple, Inc., con't:
         GIBSON, DUNN & CRUTCHER LLP
 5       BY:  DAVID BRZOZOWSKI, ESQ.
         1050 Connecticut Avenue, N.W.
 6       Washington, District of Columbia 20036
         202.887.3614
 7       dbrzozowski@gibsondunn.com
 8   -and-
 9       WILMER CUTLER PICKERING HALE AND DORR LLP
         BY:  NORA Q.E. PASSAMANECK, ESQ.
10       1225 17th Street, Suite 2600
         Denver, Colorado 80202
11       720.274.3152
12       nora.passamaneck@wilmerhale.com
13   -and-
14       HAYNES AND BOONE, LLP
         BY:  KENNETH G. PARKER, ESQ.
15       600 Anton Boulevard, Suite 700
         Costa Mesa, California 92626
16       949.202.3000
17       ken.parker@haynesboone.com
18
19    Also Present:
20       KEITH FARRIS, VIDEOGRAPHER
21
22
```

Page 210

```
 1                 WEDNESDAY, JULY 13, 2022, 9:14 A.M.

 2                      IRVINE, CALIFORNIA

 3                         --oOo--

 4          THE VIDEOGRAPHER:  Good morning.  This

 5     begins Media No. 1 in the video-recorded deposition

 6     of Mr. Marcelo Lamego, Volume II, taken by the

 7     plaintiff in the matter of Masimo Corporation versus

 8     Apple, Incorporated, Case No. 8:20-cv-00048-JVS-JDE.

 9          This deposition is being held at 3161

10     Michelson Drive in Irvine, California, at the law

11     firm, Gibson, Dunn & Crutcher.

12          Today's date is July 13, 2022.  The time is

13     9:14 a.m.

14          My name is Keith Farris, the legal

15     videographer and notary with Digital Evidence Group.

16     The certified court reporter today is Ms. Cheryl

17     Haab in association with Digital Evidence Group.

18          Will all counsel please introduce themselves

19     for the record.

20          MR. POWELL:  This is Adam Powell from Knobbe

21     Martens for plaintiffs Masimo Corporation and

22     Cercacor.
```

7/13/2022          Masimo Corporation, et al. v. Apple, Inc.     Marcelo Lamego, Ph.D. Vol II
Highly Confidential - Attorneys' Eyes Only

Page 211

     1          MR. CLAASSEN:  Brian Claassen from Knobbe

     2     Martens, also for plaintiffs.

     3          MR. FRIEDLAND:  Steven Friedland from Knobbe

     4     Martens, also for plaintiffs.

     5          MR. ROSENTHAL:  This is Brian Rosenthal from

     6     Gibson Dunn on behalf of defendant Apple.

     7          MR. BRZOZOWSKI:  This is David Brzozowski

     8     from the law firm Gibson Dunn on behalf of defendant

     9     Apple.

    10          MS. PASSAMANECK:  Nora Passamaneck with the

    11     law firm of Wilmer Hale on behalf of defendant

    12     Apple.

    13          MR. SHAW:  Scott Shaw from the law firm of

    14     Merchant & Gould defending the witness.

    15          THE VIDEOGRAPHER:  Thank you.

    16          Will the court reporter now please swear in

    17     the witness.

    18                    Whereupon,

    19               MARCELO LAMEGO, PH.D.,

    20          having been called as a witness,

    21          was duly sworn by the court reporter

    22               and testified as follows:

Page 212

1                          --oOo--

2                       EXAMINATION

3

4     BY MR. POWELL:

5          Q    Good morning, Dr. Lamego.

6          A    Good morning.

7          Q    We're continuing your deposition from

8     yesterday.

9               So do you understand you're under oath?

10         A    I do.

11         Q    And is there any reason why you'll be unable

12    to give truthful and accurate testimony today?

13         A    I don't believe so.

14         Q    Are you on any medications that would impact

15    your ability to provide truthful and accurate

16    testimony?

17         A    No, I'm not.

18         Q    Are you ill in any way that would impact

19    your ability to provide truthful and accurate

20    testimony?

21         A    No, I'm not.

22         Q    Yesterday, Mr. Rosenthal asked you a few

Page 213

1      questions about how you prepared for your

2      deposition.  I'm just going to ask a few more

3      additional questions.

4              Other than your lawyer, did you talk to

5      anyone else about your deposition in preparing for

6      it?

7        A    No.

8        Q    Did you talk to Apple's lawyers?

9        A    No.

10       Q    Did you talk to anyone at Apple?

11       A    No.

12       Q    Did you talk to a -- family members or

13     friends?

14       A    Well, I mentioned to my wife that I was

15     going to be deposed.

16       Q    Anything beyond scheduling?

17       A    Just the scheduling.  I did not show her

18     anything or discuss with her anything.

19       Q    You didn't discuss the substance of the

20     case --

21       A    No.

22       Q    -- or anything like that?

Page 214

1        A      No.   She doesn't have any relevant

2     information.

3        Q      Do you have any understanding of whether

4     your lawyer spoke to Apple's lawyers in preparing

5     for this deposition?

6        A      I'm not aware of it.

7        Q      And do you have any understanding of whether

8     your lawyer spoke to Apple -- anyone at Apple about

9     the deposition?

10       A      I'm not aware of any of it.

11       Q      After the deposition yesterday, did you do

12    anything to prepare for today?

13       A      No.   I slept.

14       Q      Did you speak to anyone about the

15    deposition?

16       A      No, I have not.

Page 215





Page 216

Page 217



7/13/2022                    Masimo Corporation, et al. v. Apple, Inc.        Marcelo Lamego, Ph.D. Vol II
                            Highly Confidential - Attorneys' Eyes Only



Page 505



Page 506



Page 507



Page 508



Page 509





Page 510

7/13/2022                    Masimo Corporation, et al. v. Apple, Inc.      Marcelo Lamego, Ph.D. Vol II
                          Highly Confidential - Attorneys' Eyes Only



Page 511

Page 690

```
 1          CERTIFICATE OF CERTIFIED SHORTHAND REPORTER
 2              The undersigned Certified Shorthand Reporter and
        Deposition Notary Public of the States of California and
 3      Washington does hereby certify:
                That the foregoing deposition was taken before me
 4      at the time and place therein set forth, at which time the
        witness was duly sworn by me;
 5              That the testimony of the witness and all
        objections made at the time of the deposition were
 6      recorded stenographically by me and were thereafter
        transcribed, said transcript being a true and correct copy
 7      of the proceedings thereof.
                I further certify that I am neither counsel for
 8      nor related to any party to said action, nor in any way
        interested in the outcome thereof.
 9              Further, that if the foregoing pertains to the
        original transcript of a deposition in a federal case,
10      before completion of the proceedings, review of the
        transcript was not requested/offered on the record.
11              In witness whereof, I have subscribed my name,
        this date:  July 19, 2022
12
13
14
15
16
17
18
19              _____
20               Cheryl M. Haab, RDR, CRR, CCRR
21               CSR No. 13600/WA CSR No. 3499
22
```

Page  691

1     Marcelo Lamego, Ph.D. Vol II, c/o

      MERCHANT & GOULD

2     611 Wilshire Boulevard, Suite 808

      Los Angeles, California 90017

3

      Case: Masimo Corporation, et al. v. Apple, Inc.

4     Date of deposition: July 13, 2022

      Deponent: Marcelo Lamego, Ph.D. Vol II

5

6     Please be advised that the transcript in the above

      referenced matter is now complete and ready for signature.

7     The deponent may come to this office to sign the transcript,

8     a copy may be purchased for the witness to review and sign,

9     or the deponent and/or counsel may waive the option of

10    signing. Please advise us of the option selected.

11    Please forward the errata sheet and the original signed

12    signature page to counsel noticing the deposition, noting the

13    applicable time period allowed for such by the governing

14    Rules of Procedure. If you have any questions, please do

15    not hesitate to call our office at (202)-232-0646.

16

17

18    Sincerely,

19    Digital Evidence Group

20    Copyright 2022 Digital Evidence Group

21    Copying is forbidden, including electronically, absent

22    express written consent.

Page 692

1      Digital Evidence Group, L.L.C.
       1730 M Street, NW, Suite 812
2      Washington, D.C. 20036
       (202) 232-0646

3

4      SIGNATURE PAGE
       Case: Masimo Corporation, et al. v. Apple, Inc.
5      Witness Name: Marcelo Lamego, Ph.D. Vol II
       Deposition Date: July 13, 2022

6

       I do hereby acknowledge that I have read
7      and examined the foregoing pages
       of the transcript of my deposition and that:

8

9      (Check appropriate box):
       (  ) The same is a true, correct and
10     complete transcription of the answers given by
       me to the questions therein recorded.
11     (  ) Except for the changes noted in the
       attached Errata Sheet, the same is a true,
12     correct and complete transcription of the
13     answers given by me to the questions therein
14     recorded.

15

16     _____          _____
17      DATE                      WITNESS SIGNATURE
18

19

20

21     _____          _____
22      DATE                            NOTARY

Page 693

1      Digital Evidence Group, LLC

2      1730 M Street, NW, Suite 812

3      Washington, D.C.  20036

4      (202)232-0646

5

6                      ERRATA SHEET

7

8      Case: Masimo Corporation, et al. v. Apple, Inc.

9      Witness Name: Marcelo Lamego, Ph.D. Vol II

10     Deposition Date: July 13, 2022

11     Page No.    Line No.     Change

12

13

14

15

16

17

18

19

20

21     _____      _____

22      Signature                            Date

EXHIBIT 15
Filed Under Seal

6/16/2022                  Masimo Corporation, et al. v. Apple, Inc.                  Louis Bokma
                           Highly Confidential - Attorneys' Eyes Only

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF NEW YORK

_____

MASIMO CORPORATION, a Delaware  )
corporation; and CERCACOR       )
LABORATORIES, INC., a Delaware  )
corporation,                    ) Case No.
                                ) 8:20-cv-00048-JVS-JDE
              Plaintiffs,        )
         -against-              )
APPLE INC., a California        )
corporation,                    )
              Defendant.         )
_____)


*** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **

VIDEO-RECORDED REMOTE DEPOSITION OF

LOUIS BOKMA

Zoom Recorded Videoconference

06/16/2022

10:00 a.m. (PDT)


REPORTED BY:  AMANDA GORRONO, CLR

CLR NO. 052005-01


_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

1                    06/16/2022

2                    10:00 a.m. (PDT)

3

4       VIDEO-RECORDED REMOTE DEPOSITION OF LOUIS

5    BOKMA, held virtually via Zoom Videoconferencing,

6    before Amanda Gorrono, Certified Live Note

7    Reporter, and Notary Public of the State of New

8    York.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 3

1   A P P E A R A N C E S

2   (Via Zoom Videoconferencing):

3

4   ON BEHALF OF PLAINTIFF MASIMO CORPORATION, a

    Delaware corporation; and CERCACOR LABORATORIES,

5   INC., A DELAWARE CORPORATION:

    Adam Powell, Esq.

6   Knobble Martens

    3579 Valley Centre Drive

7   San Diego, California 92130

    PHONE:  858-707-1400

8   E-MAIL: Adam.powell@knobbe.com

9            - AND -

10  Steven N. Friedland, Esq.

    Knobbe Martens

11  2040 Main Street

    Suite 14

12  Irvine, California 92614

    PHONE:  949-760-0404

13  E-MAIL: Steven.friedland@knobbe.com

14

15

16

17

18

19

20

21

22

```
                                                           Page 4
   1    A P P E A R A N C E S, CON'T
   2    (Via Zoom Videoconferencing):
   3
   4    ON BEHALF OF DEFENDANT APPLE INC., A CALIFORNIA
        CORPORATION:
   5      Brian M. Buroker, Esq.
         Gibson Dunn
   6      1050 Connecticut Avenue N.W.
         Washington, D.C., 20036
   7      PHONE:  +1 202-955-8541
         E-MAIL: Bburoker@gibsondunn.com
   8            - AND -
   9      Raymond A. LaMagna, Esq.
         Gibson Dunn
  10      333 South Grand Avenue
         Los Angeles, California 90071
  11      PHONE: +1 213-229-7101
         E-MAIL: Rlamagna@gibsondunn.com
  12
  13    ON BEHALF OF APPLE INC., a California
        corporation:
  14      Nora Q.E. Passamaneck, Esq.
         WilmerHale
  15      17th Street Plaza
         1225 17th Street Unit 2600
  16      Denver, Colorado 80202
         PHONE: +1 720-274-3152
  17      E-MAIL: Nora.passamaneck@wilmerhale.com
  18
  19    ALSO PRESENT:
  20    Natalie Pous, Esq., Apple, Inc., In-house counsel
  21    Billy Fahnert, Legal Videographer/  Exhibit
  22    technician
```

Page 7

1                    AUTOMATED MESSAGE:  Recording in

2          progress.

3                    THE TECH:  We are on the record.

4          This is the remote video deposition of Louis

5          Bokma in the matter of Masimo Corporation, et

6          al. versus Apple Inc. in the United States

7          District Court for the Central District of

8          California Southern Division.

9                    My name is Billy Fahnert.  I am the

10         video technician today.

11                   The court reporter is Amanda

12         Gorrono.  We are here on behalf of Digital

13         Evidence Group.

14                   Today's date is June 16, 2022.  The

15         time is 10:00 a.m. Pacific Daylight Time.

16                   All parties have stipulated to the

17         witness being sworn in remotely.

18                   Will counsel please identify

19         yourselves for the record and then the

20         witness will be sworn in.

21                   MR. POWELL:  This is Adam Powell for

22         plaintiffs Masimo Corporation and Cercacor

Page 8

1        Laboratories, Inc.  With me is my associate

2        Steven Friedland.

3               MR. BUROKER:  And this is Brian

4        Buroker from Gibson Dunn on behalf of Apple.

5        I also have Raymond LaMagna from Gibson Dunn

6        for Apple, Nora Passamaneck from WilmerHale,

7        and in-house counsel Natalie Pous from Apple.

8               And just for the record, the

9        witness's last name is pronounced Bokma so we

10       get that clear.  Thank you.

11              MR. POWELL:  That was going to be

12       one of my first questions.  Thanks, Brian.

13    LOUIS BOKMA, called as a witness, having been

14    first duly sworn/affirmed by a Notary Public of

15    the State of New York, was examined and testified

16    as follows:

17              THE WITNESS:  Yes.

18              THE COURT REPORTER:  Thank you very

19       much.  Can please state your name and address

20       for the record.

21              THE WITNESS:  My name is Louis

22       Bokma.  I live in Eagle, Idaho.  My address

Page 9

███ ████████████████████████████████████████

███  ██████████████

3                MR. POWELL:  Great.

4     EXAMINATION

5     BY MR. POWELL:

6          Q.    Good morning, Mr. Bokma.

7          A.    Good morning.

8          Q.    So where are you currently located

9     right now?

10         A.    I'm in my home.

11         Q.    Okay.  And is there anyone in the

12    room with you?

13         A.    No.

14         Q.    Is anyone home with you right now?

15         A.    Yes, there are some people here in

16    my home.

17         Q.    Okay.  To your knowledge, can any of

18    them hear you or hear what's happening today at

19    this deposition?

20         A.    No, I'm in a room that has all the,

21    the doors closed, and it has windows and blinds

22    shut.

Page 24

1          for this one, but for other documents that

2          are more lengthy that they would be moved

3          into the box folder so he can open them on

4          his computer.  If that can take place, that

5          would be great.

6                    THE TECH:  It's in the folder.  You

7          have to hit refresh on the browser.

8                    MR. BUROKER:  Hit refresh?  Okay,

9          thank you.

10                    I hit refresh.  Thank you.

11                    Go ahead, Mr. Bokma.

█████        █████        ████████████████████

█████        █████        █████

█████        █████        ███████████████████

█████    ████████

█████        █████    █████    ████████████████████

█████    ███████████████████████████

█████    ██████

█████        █████    ██████████████████    █████████

█████    ██████████████████████    ██████████

█████    █████

█████        █████    █████    █████████████████████

6/16/2022        Masimo Corporation, et al. v. Apple, Inc.        Louis Bokma
Highly Confidential - Attorneys' Eyes Only

Page 25



Page 48



Page 49





Page 51







Page 53

Page 54





Page 55



Page 56

```
                                                  Page 192
   1      CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

   2            I, Amanda Gorrono, the officer

          before whom the foregoing deposition was

   3      taken, do hereby certify that the foregoing

          transcript is a true and correct record of

   4      the testimony given; that said testimony was

          taken by me stenographically and thereafter

   5      reduced to typewriting under my direction;

          and that I am neither counsel for, related

   6      to, nor employed by any of the parties to

          this case and have no interest, financial or

   7      otherwise, in its outcome.

   8            IN WITNESS WHEREOF, I have hereunto

   9      set my hand this 16th day of June, 2022.

  10

  11

  12

  13

  14

  15

  16      _____

  17      AMANDA GORRONO, CLR

  18      CLR NO:  052005 - 01

  19      Notary Public in and for the State of New York

  20      County of Suffolk

  21      My Commission No.  01G06041701

  22
```

Page 193

1      Louis Bokma, c/o

       Gibson Dunn

2      1050 Connecticut Avenue N.W.

       Washington, D.C., 20036

3

       Case: Masimo Corporation, et al. v. Apple, Inc.

4      Date of deposition: June 16, 2022

       Deponent: Louis Bokma

5

6      Please be advised that the transcript in the above

       referenced matter is now complete and ready for signature.

7      The deponent may come to this office to sign the transcript,

8      a copy may be purchased for the witness to review and sign,

9      or the deponent and/or counsel may waive the option of

10     signing. Please advise us of the option selected.

11     Please forward the errata sheet and the original signed

12     signature page to counsel noticing the deposition, noting the

13     applicable time period allowed for such by the governing

14     Rules of Procedure. If you have any questions, please do

15     not hesitate to call our office at (202)-232-0646.

16

17

18     Sincerely,

19     Digital Evidence Group

20     Copyright 2022 Digital Evidence Group

21     Copying is forbidden, including electronically, absent

22     express written consent.

Page 194

1       Digital Evidence Group, L.L.C.
        1730 M Street, NW, Suite 812
2       Washington, D.C. 20036
        (202) 232-0646

3

4       SIGNATURE PAGE
        Case: Masimo Corporation, et al. v. Apple, Inc.
5       Witness Name: Louis Bokma
        Deposition Date: June 16, 2022

6

        I do hereby acknowledge that I have read
7       and examined the foregoing pages
        of the transcript of my deposition and that:

8

9       (Check appropriate box):
        (  ) The same is a true, correct and
10      complete transcription of the answers given by
        me to the questions therein recorded.
11      (  ) Except for the changes noted in the
        attached Errata Sheet, the same is a true,
12      correct and complete transcription of the
13      answers given by me to the questions therein
14      recorded.

15

16      _____              _____
17       DATE                        WITNESS SIGNATURE
18

19

20

21      _____              _____
22       DATE                           NOTARY

Page 195

1        Digital Evidence Group, LLC

2        1730 M Street, NW, Suite 812

3        Washington, D.C.  20036

4        (202)232-0646

5

6                          ERRATA SHEET

7

8        Case: Masimo Corporation, et al. v. Apple, Inc.

9        Witness Name: Louis Bokma

10       Deposition Date: June 16, 2022

11       Page No.    Line No.     Change

12

13

14

15

16

17

18

19

20

21       _____        _____

22              Signature                              Date

# EXHIBIT 16
# Filed Under Seal

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

--------------------------------x

MASIMO CORPORATION, a Delaware   :

Corporation; and CERCACOR        :

LABORATORIES, INC., a Delaware   :

Corporation,                     :

                                 :

              Plaintiffs,         :    Case No.

                                 :

       vs.                        :  8:20-cv-00048-

                                 :    JVS-JDE

APPLE INC.,  a California         :

corporation,                     :

                                 :

              Defendant.          :

--------------------------------x


     ** CONFIDENTIAL - ATTORNEYS' EYES ONLY **

        VIRTUAL VIDEOTAPED DEPOSITION OF

              JACK I-CHIEH CHANG FU

             Tuesday, June 14, 2022

          9:05 a.m. Pacific Daylight Time


     REPORTER:  Dawn A. Jaques, CSR, CLR


_____

              DIGITAL EVIDENCE GROUP

          1730 M Street, NW, Suite 812

              Washington, D.C. 20036

                (202) 232-0646

6/14/2022                Masimo Corporation, et al. v. Apple, Inc.        Jack I-Chieh Chang Fu
                         Confidential - Attorneys' Eyes Only

Page 2

1   APPEARANCES:

2   On behalf of the Plaintiffs:

        KNOBBE MARTENS OLSON & BEAR

3       By:  Baraa Kahf, Esq.

        2040 Main Street

4       14th Floor

        Irvine, California  92614

5       PHONE:  (949) 760-0404

6       EMAIL:  baraa.kahf@knobbe.com

7

8   On behalf of the Defendant:

        GIBSON DUNN & CRUTCHER, LLP

9       By:  Jason Lo, Esq.

            Raymond LaMagna, Esq.

10      333 South Grand Avenue

        Los Angeles, California  90071

11      PHONE:  (213) 229-7153   (Mr. Lo)

12              (213) 229-7191   (Mr. LaMagna)

13      EMAIL:  jlo@gibsondunn.com

14              rlamagna@gibsondunn.com

15

16  ALSO PRESENT:

17      Ryan Moran, In-house counsel, Apple

18

19  VIDEOGRAPHER AND EXHIBIT TECHNICIAN:

20      Henry Marte, Digital Evidence Group

21

22

6/14/2022                Masimo Corporation, et al. v. Apple, Inc.      Jack I-Chieh Chang Fu
Confidential - Attorneys' Eyes Only

Page 6

1              P R O C E E D I N G S

2              THE VIDEOGRAPHER:  Okay, we are now

3       on the record.  My name is Henry Marte.  I'm a

4       videographer on behalf of Digital Evidence

5       Group.  Today's date is June 14th, 2021 --

6       '22, excuse me, and the time is 9:05 a.m.

7              This deposition is being held in the

8       matter of Masimo Corporation versus Apple Inc.

9       The deponent today is Mr. Jack Chang Fu.

10             All parties to this deposition are

11      appearing remotely and have agreed to the

12      witness being sworn in remotely.

13             I will ask counsel to please

14      identify themselves for the record, after

15      which the court reporter will administer the

16      oath to the witness.

17             MR. KAHF:  My name is Baraa Kahf

18      with Knobbe, Martens, Olson & Bear, for the

19      Plaintiffs.

20             MR. LO:  Jason Lo from Gibson Dunn &

21      Crutcher on behalf of Apple.  With me today is

22      Raymond LaMagna, also from Gibson Dunn.

Page 7

1              And then participating from Apple is

2     Ryan Moran, M-O-R-A-N.

3              THE REPORTER:  Mr. Fu, if you'll

4     raise your right hand to be sworn, sir.

5        (The witness was administered the oath.)

6    Whereupon,

7              JACK I-CHIEH CHANG FU,

8            was called as a witness, after having

9            been first duly sworn by the Notary

10           Public, was examined and testified as

11           follows:

12     EXAMINATION BY COUNSEL FOR THE PLAINTIFFS

13             BY MR. KAHF:

14        Q    Good morning, Mr. Fu.  How are you?

15        A    Good morning.  I'm doing well.

16        Q    My name is Baraa Kahf, as you heard,

17     and I represent the Plaintiffs in this case,

18     Masimo Corporation and Cercacor Labs.

19             Can you please state your full name

20     and spell your last name for the record?

21        A    My name is Jack I-Chieh Chang Fu.

22     My last name is spelled F-U.

Page 8

1          Q    Thank you.  Where are you currently

2     located, the city and state?

3          A    Cupertino, California.

4          Q    Thank you.  And are you at your home

5     or your office?

6          A    I'm at the office.

7          Q    Do you understand that you're under

8     oath today?

9          A    Yes.

10         Q    And you understand that this oath is

11    just the same as if you were testifying in

12    court?

13         A    Yes.

14         Q    Do you understand that the oath

15    obligates you to testify truthfully,

16    accurately, and completely?

17         A    Yes.

18         Q    Is there anything that may interfere

19    with your ability to testify truthfully today?

20         A    No.

21         Q    Are you on any medication that may

22    affect your ability to provide truthful and

6/14/2022            Masimo Corporation, et al. v. Apple, Inc.       Jack I-Chieh Chang Fu
                        Confidential - Attorneys' Eyes Only

Page 16

1       you not to answer.

2                   BY MR. KAHF:

3           Q       Can you answer?

4           A       I will not answer, no.

5           Q       Okay.  What's your current position

6       at Apple?

7           A       I'm the Senior Director of Human

8       Interface Devices Software.

9           Q       How long have you been in that

10      position?

11          A       In that particular role -- I've been

12      in the group for 23 years.

13          Q       In that particular role, how long

14      have you been?

15          A       Eight years.

16          Q       What are your responsibilities as

17      Senior Director?

18          A       I oversee a group that delivers

19      software and algorithms for sensors.

20          Q       Who do you report to?

21          A       Myra Haggerty.

22          Q       And who does she report to?

Page 147

1              BY MR. KAHF:



Page 148





Page 150





Page 151

6/14/2022                    Masimo Corporation, et al. v. Apple, Inc.        Jack I-Chieh Chang Fu
                              Confidential - Attorneys' Eyes Only



6/14/2022                Masimo Corporation, et al. v. Apple, Inc.        Jack I-Chieh Chang Fu
                         Confidential - Attorneys' Eyes Only



Page 153

6/14/2022                   Masimo Corporation, et al. v. Apple, Inc.          Jack I-Chieh Chang Fu
                            Confidential - Attorneys' Eyes Only

Page 154



Page 201

```
 1              CERTIFICATE OF NOTARY PUBLIC
 2         I, DAWN A. JAQUES, a Notary Public in and for
        the Commonwealth of Virginia, before whom the
 3      foregoing deposition was taken, do hereby certify
        that witness whose testimony appears in the
 4      foregoing pages was duly sworn by me; that the
        testimony of said witness was taken by me in
 5      shorthand at the time and place mentioned in the
        caption hereof and thereafter reduced to typewriting
 6      under my supervision; that said deposition is a true
        record of the testimony given by said witness; that
 7      I am neither counsel for, related to, nor employed
        by any of the parties to the action in which this
 8      deposition is taken; and, further, that I am not a
        relative or employee of any attorney or counsel
 9      employed by the parties thereto, nor financially or
10      otherwise interested in the outcome of the actions.
11
12
13
14
15
16                            _____
17                            Dawn A. Jaques, CSR, CLR
18                            Notary Public in and for
19                            Commonwealth of Virginia
20      My commission expires:
21      August 31, 2023
22      Registration No. 132328
```

6/14/2022          Masimo Corporation, et al. v. Apple, Inc.      Jack I-Chieh Chang Fu
Confidential - Attorneys' Eyes Only

```
                                                           Page 202
 1        Jack I-Chieh Chang Fu, c/o

          GIBSON DUNN & CRUTCHER, LLP

 2        333 South Grand Avenue

          Los Angeles, California 90071

 3

          Case: Masimo Corporation, et al. v. Apple, Inc.

 4        Date of deposition: June 14, 2022

          Deponent: Jack I-Chieh Chang Fu

 5

 6        Please be advised that the transcript in the above

          referenced matter is now complete and ready for signature.

 7        The deponent may come to this office to sign the transcript,

 8        a copy may be purchased for the witness to review and sign,

 9        or the deponent and/or counsel may waive the option of

10        signing. Please advise us of the option selected.

11        Please forward the errata sheet and the original signed

12        signature page to counsel noticing the deposition, noting the

13        applicable time period allowed for such by the governing

14        Rules of Procedure. If you have any questions, please do

15        not hesitate to call our office at (202)-232-0646.

16

17

18        Sincerely,

19        Digital Evidence Group

20        Copyright 2022 Digital Evidence Group

21        Copying is forbidden, including electronically, absent

22        express written consent.
```

6/14/2022          Masimo Corporation, et al. v. Apple, Inc.          Jack I-Chieh Chang Fu
Confidential - Attorneys' Eyes Only

Page 203

1       Digital Evidence Group, L.L.C.
         1730 M Street, NW, Suite 812
2       Washington, D.C. 20036
         (202) 232-0646

3

4       SIGNATURE PAGE
         Case: Masimo Corporation, et al. v. Apple, Inc.
5       Witness Name: Jack I-Chieh Chang Fu
         Deposition Date: June 14, 2022

6

         I do hereby acknowledge that I have read
7       and examined the foregoing pages
         of the transcript of my deposition and that:

8

9       (Check appropriate box):
         (  ) The same is a true, correct and
10      complete transcription of the answers given by
         me to the questions therein recorded.
11      (  ) Except for the changes noted in the
         attached Errata Sheet, the same is a true,
12      correct and complete transcription of the
13      answers given by me to the questions therein
14      recorded.

15

16      _____              _____

17       DATE                         WITNESS SIGNATURE

18

19

20

21      _____              _____

22       DATE                               NOTARY

Page 204

1       Digital Evidence Group, LLC

2       1730 M Street, NW, Suite 812

3       Washington, D.C.  20036

4       (202)232-0646

5

6                          ERRATA SHEET

7

8       Case: Masimo Corporation, et al. v. Apple, Inc.

9       Witness Name: Jack I-Chieh Chang Fu

10      Deposition Date: June 14, 2022

11      Page No.    Line No.     Change

12

13

14

15

16

17

18

19

20

21      _____     _____

22          Signature                          Date

EXHIBIT 17
Filed Under Seal

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

_____

MASIMO CORPORATION, a          )
Delaware corporation; and      )
CERCACOR LABORATORIES, INC.,   )
a Delaware corporation,        )
                               )
          Plaintiffs,          )
                               )  Case No.
v.                             )  8:20-cv-00048-JVS-JDE
                               )
                               )
APPLE INC., a California       )
corporation,                   )
                               )
          Defendant.           )
_____)


** HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY **

Videotaped Deposition of STEVEN HOTELLING

Via Videoconference

Tuesday, August 2, 2022



Reported Stenographically by

Michael P. Hensley, RDR - CA CSR No. 14114


_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

1        Videotaped Deposition of STEVEN HOTELLING,

2   commencing at the hour of 9:06 A.M. PT and concluding at

3   the hour of 3:31 P.M. PT on Tuesday, August 9, 2022, via

4   videoconference, before Michael P. Hensley, Registered

5   Diplomate Reporter, Certified Shorthand Reporter

6   No. 14114, in and for the State of California.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 3

```
 1   APPEARANCES:
 2   (ALL PARTIES APPEARED VIA VIDEOCONFERENCE)
 3
 4   For the Plaintiffs:
             KNOBBE, MARTENS, OLSON & BEAR, LLP
 5           By:  BRIAN C. CLAASSEN, ESQ.
                  BEN SHIROMA, ESQ.
 6                MATTHEW PHAM, ESQ.
             2040 Main Street, 14th Floor
 7           Irvine, California 92614
             (949) 760-0404
 8           brian.claassen@knobbe.com
             ben.shiroma@knobbe.com
 9           matthew.pham@knobbe.com
10
11   For the Defendant:
             WILMERHALE LLP
12           By:  JOSHUA H. LERNER, ESQ.
                  RAVI DEOL, ESQ.
13           1 Front Street, Suite 3500
             San Francisco, California 94111
14           (628) 265-1000
             joshua.lerner@wilmerhale.com
15          -and-
16           APPLE INC
             By:  RYAN MORAN, ESQ.
17           1 Apple Park Way,
             Cupertino, California 95014
18
19   ALSO PRESENT:
20           BILLY FAHNERT, Videographer
21
22
```

Page 8

1                      Via Videoconference

2                   Tuesday, August 2, 2022

3                    9:06 A.M. - 3:31 P.M.

4                           -o0o-

5          THE VIDEOGRAPHER:  We are on the record.  This

6     is the remote video deposition of Steve Hotelling in the

7     matter of Masimo Corporation, et al., versus Apple Inc.

8     in the United States District Court for the Central

9     District of California, Southern Division.

10         My name is Billy Fahnert.  I am the video

11    technician today.  The court reporter is Mike Hensley.

12    We are here on behalf of Digital Evidence Group.

13         Today's date is August 2nd, 2022.  The time is

14    9:07 A.M. Pacific Daylight Time.

15         All parties have stipulated to the witness

16    being sworn in remotely.

17         Will counsel please identify yourselves for

18    the record, and then the witness will be sworn in.

19         MR. CLAASSEN:  This is Brian Claassen for

20    plaintiffs Masimo and Cercacor, and with me today are

21    Ben Shiroma and Matthew Pham.

22         MR. LERNER:  Josh Lerner of WilmerHale on

Page 9

1    behalf of Apple, and with me today is Ravi Deol and Ryan

2    Moran of Apple.

3                        STEVEN HOTELLING,

4         having been first duly sworn, was examined and

5         testified as follows:

6                          EXAMINATION

7    BY MR. CLAASSEN:

8         Q.   Good morning.  My name is Brian Claassen, and

9    I represent Masimo and Cercacor in this litigation.

10             How are you this morning?

11        A.   Hello.  I'm just fine.

12        Q.   Can you please state your full name for the

13   record.

14        A.   Yes.  My name is Steven Porter Hotelling.

15        Q.   And how do you spell Hotelling?

16        A.   H-o-t-e-l-l-i-n-g.

17        Q.   Is there any reason why you would be unable to

18   give truthful and accurate testimony today?

19        A.   No, there is not.

20        Q.   Are you taking any medications that would

21   impact your ability to give truthful and accurate

22   testimony today?

Page 10

1          A.    No, I am not.

2          Q.    Have you had your deposition taken before?

3          A.    Not at this matter, but I have had depositions

4     taken in other matters.

5          Q.    So you're familiar with depositions generally?

6          A.    Yes.  This is my first time to do one

7     remotely, but I am familiar with depositions generally.

8          Q.    Okay.  Since this is your first remote

9     deposition, there are going to be a few things that are

10    slightly different, and the main thing that's going to

11    be different is the use of exhibits today.  They're

12    going to be shown on your screen, and I understand

13    you've also been provided a link to download the

14    exhibits.

15              Do you understand that?

16         A.    Yes, I do.  I have a link in -- open in

17    another window.

18         Q.    Okay.  So we'll get to that once we get to

19    exhibits, but right now we'll keep on moving with the

20    questions.

21              What is your address?

Page  11

2        Q.   You understand that you are under oath --

3   excuse me -- as if you were in a courtroom today; right?

4        A.   That is correct.  I understand.

5        Q.   And your lawyer may object to some of my

6   questions.  Unless he instructs you not to answer,

7   please answer my question.

8             Do you understand that?

9        A.   Yes, I understand.

10       Q.   If you need to take a break at any time today,

11  let me know, and we can go off the record.  I just ask

12  that you finish responding to whatever question is

13  pending before we take a break.

14            Do you understand that?

15       A.   Yes, I understand.

16       Q.   Do you understand that Apple designated you to

17  speak on certain topics today?

18       A.   Yes, I understand that.

19       Q.   When did you learn that you would be

20  testifying on these topics?

21       A.   Probably -- I learned I would be a designated

22  witness sometime in the last several weeks, and then

Page 12

1    last -- last Friday, the -- like, five days ago or four

2    days ago was when I, in preparation, looked at those

3    topics.

4         Q.   Did you prepare to testify on those topics?

5         A.   Yes.

6         Q.   And are you prepared to testify on those

7    topics?

8         A.   Yes, I am prepared to testify on those topics.

9         Q.   How did you prepare for the deposition?

10        A.   I prepared for the deposition --

11             MR. LERNER:  Sorry, just quick objection.

12             You can talk about when you had meetings, but

13   don't disclose communications with counsel.

14   BY MR. CLAASSEN:

15        Q.   So let me -- let me ask you a slightly

16   different question.

17             Did you do anything to prepare for this

18   deposition outside of meeting with counsel?

19        A.   Yes.

20        Q.   What did you do?

21        A.   Well, I talked to several Apple colleagues to

22   get more information about the subjects to which I am to

Page 13

1    be witness.

2          Q.    Who did you speak with?

3          A.    I spoke with Bill Athas and Guru from our

4    operations team.  I can't remember his last name.  And I

5    spoke with Erno Klaassen.

6          Q.    Did you speak with anyone else at Apple?

7          A.    No.

8          Q.    How much time did you spend preparing for the

9    deposition?

10         A.    Total amount was 12 hours.

11         Q.    Other than the -- your attorneys and the

12   people you just mentioned, have you discussed this case

13   with anyone else?

14         A.    No, I have not.

15         Q.    You work at Apple; right?

16         A.    Yes, I work at Apple.

17         Q.    When did you join Apple?

18         A.    I joined Apple on September 30th of 2002.

19         Q.    What is your job at Apple?

20         A.    My job currently is vice president in the

21   hardware technologies group.

22         Q.    Do you work on any particular aspect of

Page 14

1   hardware?

2       A.   Yes, I do.











Page 117

Page 118



Page 119





Page 120



Page 121

Page 122



8/2/2022          Masimo Corporation, et al. v. Apple, Inc.          Steven Hotelling
Highly Confidential - Attorneys' Eyes Only

Page 226

1              CERTIFICATE OF SHORTHAND REPORTER

2

3        I, Michael P. Hensley, Registered Diplomate

Reporter for the State of California, CSR No. 14114, the

4    officer before whom the foregoing deposition was taken,

do hereby certify that the foregoing transcript is a

5    true and correct record of the testimony given; that

said testimony was taken by me stenographically and

6    thereafter reduced to typewriting under my direction;

that reading and signing was not requested; and that I

7    am neither counsel for, related to, nor employed by any

of the parties to this case and have no interest,

8    financial or otherwise, in its outcome.

9

10

11

12

13

14

15

16

17

18

19

20

21                          Michael P. Hensley, CSR, RDR

22

Page 227

1      Steven Hotelling, c/o

       WILMERHALE LLP

2      1 Front Street, Suite 3500

       San Francisco, California 94111

3

       Case: Masimo Corporation, et al. v. Apple, Inc.

4      Date of deposition: August 2, 2022

       Deponent: Steven Hotelling

5

6      Please be advised that the transcript in the above

       referenced matter is now complete and ready for signature.

7      The deponent may come to this office to sign the transcript,

8      a copy may be purchased for the witness to review and sign,

9      or the deponent and/or counsel may waive the option of

10     signing. Please advise us of the option selected.

11     Please forward the errata sheet and the original signed

12     signature page to counsel noticing the deposition, noting the

13     applicable time period allowed for such by the governing

14     Rules of Procedure. If you have any questions, please do

15     not hesitate to call our office at (202)-232-0646.

16

17

18     Sincerely,

19     Digital Evidence Group

20     Copyright 2022 Digital Evidence Group

21     Copying is forbidden, including electronically, absent

22     express written consent.

Page 228

1      Digital Evidence Group, L.L.C.
       1730 M Street, NW, Suite 812
2      Washington, D.C. 20036
       (202) 232-0646

3

4      SIGNATURE PAGE
       Case: Masimo Corporation, et al. v. Apple, Inc.
5      Witness Name: Steven Hotelling
       Deposition Date: August 2, 2022

6

       I do hereby acknowledge that I have read
7      and examined the foregoing pages
       of the transcript of my deposition and that:

8

9      (Check appropriate box):
       (  ) The same is a true, correct and
10     complete transcription of the answers given by
       me to the questions therein recorded.
11     (  ) Except for the changes noted in the
       attached Errata Sheet, the same is a true,
12     correct and complete transcription of the
13     answers given by me to the questions therein
14     recorded.

15

16     _____          _____
17      DATE                      WITNESS SIGNATURE
18

19

20

21     _____          _____
22      DATE                            NOTARY

Page 229

1       Digital Evidence Group, LLC

2       1730 M Street, NW, Suite 812

3       Washington, D.C.  20036

4       (202)232-0646

5

6                           ERRATA SHEET

7

8       Case: Masimo Corporation, et al. v. Apple, Inc.

9       Witness Name: Steven Hotelling

10      Deposition Date: August 2, 2022

11      Page No.    Line No.     Change

12

13

14

15

16

17

18

19

20

21      _____        _____

22         Signature                              Date

# EXHIBIT 18
# Filed Under Seal

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

IN RE MATTER OF:                    )
                                    )
MASIMO CORPORATION, a Delaware)
corporation; and CERCACOR     )
LABORATORIES, INC., a Delaware)
corporation,                  )
                              )
          Plaintiffs,         ) Case No.
                              ) 8:20-cv-00048-
     vs.                      ) JVS-JDE
                              )
APPLE INC., a California      )
corporation,                  )
                              )
          Defendant.          )
_____)


- H I G H L Y   C O N F I D E N T I A L -
A T T O R N E Y S'   E Y E S   O N L Y


VIDEOTAPED DEPOSITION OF UEYN BLOCK, Ph.D.


Date and Time:   Thursday, July 21, 2022
                 9: 06 a.m. - 3:49 p.m.

Location:        2600 El Camino Real, Suite 400
                 Palo Alto, California

Reported By:     Heather J. Bautista, CSR, CRR, RPR, CLR
                 California CSR License No. 11600

Job No. 24375

1

1           VIDEOTAPED DEPOSITION of UEYN BLOCK, Ph.D.,
2    taken before Heather J. Bautista, CSR No. 11600, a
3    Certified Shorthand Reporter for the state of California,
4    with principal office in the county of Santa Clara,
5    commencing on Thursday, July 21, 2022, 9:06 a.m.,
6    at 2600 El Camino Real, Suite 400, Palo Alto,
7    California, 94306.

8

9    APPEARANCES OF COUNSEL:

10

11       For Plaintiffs:
12           KNOBBE MARTENS OLSON & BEAR, LLP
             BY:  BRIAN CLAASSEN, ESQ.
13           BY:  STEVEN FRIEDLAND, ESQ.
             2040 Main Street
14           Fourteenth Floor
             Irvine, California 92614
15           Phone:  (949) 760-0404 / Fax:  (949) 760-9502
             brian.claassen@knobbe.com
16           steven.friedland@knobbe.com

17

18       For Defendant:
             WILMER HALE
19           BY:  SARAH FRAZIER, ESQ.
             60 State Street
20           Boston, Massachusetts 02109
             Phone:  (617) 526-6000
21           sarah.frazier@wilmerhale.com

22

23   ALSO PRESENT:  Miguel Concepcion, Videographer
                    Natalie Pous, ESQ., Apple In-house Counsel

24

25

                                                              2

```
 1                    Thursday, July 21, 2022

 2                         9:06 a.m.

 3                         --oOo--

 4            THE VIDEOGRAPHER:  Good morning.  Today's

09:05  5  videotaped deposition of Ueyn Block is taken on July

 6  21st, 2022, at Wilmer Hale in Palo Alto, California, in

 7  the matter of Masimo Corporation, et al., and Cercacor

 8  Laboratories, Inc., versus Apple, Inc., Case No.

 9  8:20-CV-00048-JVS-JDE in the United States District

09:06 10  Court for the Central District of California, Southern

11  Division.

12            My name is Miguel Concepcion with Elite Court

13  Reporting located in Mission Viejo, California.  We are

14  now commencing at 9:06 a.m.  Will all present please

09:06 15  identify themselves, beginning with the witness.

16            THE WITNESS:  My name is Ueyn Block.

17            MR. CLAASSEN:  This is Brian Claassen from

18  Knobbe Martens representing Masimo Corporation and

19  Cercacor Labs; and with me today is Steven Friedland.

09:06 20            MS. FRAZIER:  Sarah Frazier from Wilmer Hale on

21  behalf of Apple and the witness.  And with me is Natalie

22  Pous, in-house counsel for Apple.

23            THE VIDEOGRAPHER:  Thank you.

24            Will the court reporter please swear in the

09:06 25  witness.
```

7

         1              THE STENOGRAPHER:  Good morning.

         2              My name is Heather Bautista, and I am a

         3    certified stenographer licensed by the State of

         4    California.  My license number is 11600.

09:07    5              This deposition and any transcript produced

         6    therefrom will be handled pursuant to Federal Rule of

         7    Civil Procedure Section 30.

         8              As the deposition officer, I will be retaining

         9    my duties and responsibilities under the Code.

09:07   10                        UEYN BLOCK, Ph.D.,

        11    having been first duly sworn, was examined and testified

        12                        as follows:

        13              THE WITNESS:  Yes.

        14              THE STENOGRAPHER:  Thank you.

09:07   15              Please state your full name for the record.

        16              THE WITNESS:  My name is Ueyn Lent Block.

        17              THE STENOGRAPHER:  Thank you.

        18              Counsel, you can begin.

        19                        DIRECT EXAMINATION

09:07   20    BY MR. CLAASSEN:

        21        Q.   Good morning.

        22        A.   Good morning.

        23        Q.   How are you this morning?

        24        A.   Good.

09:07   25        Q.   Good.  Dr. Block, have you been deposed before?

                                                                      8

1      A.   Yes.

2      Q.   Are you familiar with the general rules for a

3  deposition?  You understand that I'm going to be asking

4  you questions, and you're going to be responding to

09:07 5  those questions?

6      A.   Yes.

7      Q.   Would you like to review any of those rules?

8      A.   No.

9      Q.   Is there any reason why you would be unable to

09:07 10  give truthful and accurate testimony today?

11      A.   No.

12      Q.   Are you on any medications?

13      A.   No.  There's Nystatin.

14      Q.   Okay.

09:08 15           Let me rephrase.  Are you on any medications

16  relevant to your ability to give truthful testimony?

17      A.   No.

18      Q.   What is your address?

19      A.   1148 Marcussen Drive in Menlo Park, California.

09:08 20      Q.   You understand that you're under oath today as

21  if you were in a courtroom?

22      A.   Yes.

23      Q.   Your lawyer, Ms. Frazier, may object to some of

24  my questions today.  Unless she instructs you not to

09:08 25  answer, I'd like you to give me a response.  Do you

9

1  understand that?

2      A.   Yes.

3      Q.   If you need to take a break at any point, let

4  me know.  We can go off the record.  I just ask that you

09:08  5  finish whatever question or response is pending before

6  we take a break.  Do you understand that?

7      A.   Yes.

8      Q.   How many times have you been deposed before?

9      A.   I recall at least three times, maybe a fourth.

09:09 10      Q.   So I know that you were deposed at least once

11  before in an ITC case that's related to this matter.

12  What other cases have you been deposed in?

13      A.   There were at least two cases several years

14  before that.  I don't remember all the details of what

09:09 15  they were.  They did not go to trial.

16      Q.   What did you do to prepare for the deposition

17  today?

18      A.   I had two meetings with our lawyers.

19      Q.   Other than the meetings with lawyers, what did

09:09 20  you do to prepare?

21      A.   I reviewed a few documents, but there wasn't

22  much to do.  This is my day job.

23      Q.   What documents did you review?

24      MS. FRAZIER:  Objection.  I'm going to instruct

09:09 25  the witness not to answer on privilege grounds.

10

1          Q.   (By Mr. Claassen)   Did you review documents

2     without the assistance of your counsel?

3          A.   No.

4          Q.   Did any of the documents that you reviewed

09:10  5     refresh your recollection of anything that happened

6     years ago?

7          A.   That's not a term I totally understand, but not

8     really.   This is just seeing things --

9               (Stenographer clarification.)

09:10 10               THE WITNESS:   -- from the past that I've worked

11    on.

12          Q.   (By Mr. Claassen)   Did you talk to anyone other

13    than a lawyer in preparing for the deposition?

14          A.   No.

09:10 15          Q.   Have you ever discussed this case with anyone

16    outside of Apple?

17          A.   Not beyond saying that I'm going in to be

18    deposed, but not the details.

19          Q.   So for scheduling or -- I imagine you've

09:10 20    testified at a hearing and had a deposition.   So other

21    than for scheduling, have you talked about the substance

22    of the case with anyone?

23          A.   No.

24          Q.   What is your educational background?

09:10 25          A.   Excuse me.   I have a bachelor's degree in

**11**

1    physics and mathematics and master's and Ph.D. degrees

2    in applied physics from Stanford University.

3         Q.   All those degrees are from Stanford?

4         A.   No.  The masters and Ph.D. are from Stanford.

09:11  5    The undergraduate degrees are from New Mexico Institute

6    of Technology.

7         Q.   When did you join Apple?

8         A.   March 2013.

**12**

13

14

15

16

90

91

92

93



94

95

24      Q.    What does that mean?

11:45 25        MS. FRAZIER:  And same foundation objection

**96**

DECLARATION OF WITNESS

I hereby declare I am the deponent in the within matter; that I have read the foregoing deposition and know the contents thereof, and I declare that the same is true of my knowledge except as to the matters which are therein stated upon my information or belief, and as to those matters, I believe them to be true.

I declare under the penalties of perjury of the State of California that the foregoing is true and correct.

Executed this _____ day of _____,

20___, at _____, _____.
      (City)                    (State)

_____
UEYN BLOCK, Ph.D.

**212**

1        I, HEATHER J. BAUTISTA, CSR No. 11600, Certified

2   Shorthand Reporter, certify:

3        That the foregoing  proceedings were taken before

4   me at the time and place therein set forth, at which

5   time the witness declared under penalty of perjury; that

6   the testimony of the witness and all objections made at

7   the time of the examination were recorded

8   stenographically by me and were thereafter transcribed

9   under my direction and supervision;

10       That the foregoing is a full, true, and correct

11  transcript of my shorthand notes so taken and of the

12  testimony so given;

13       (  ) Reading and signing was requested/offered.

14       (XX) Reading and signing was not requested/offered.

15       (  ) Reading and signing was waived.

16       I further certify that I am not financially

17  interested in the action, and I am not a relative or

18  employee of any attorney of the parties, nor of any of

19  the parties.

20       I declare under penalty of perjury under the laws

21  of California that the foregoing is true and correct.

22

23       Dated:   July 27, 2022

24

         _____

25       HEATHER J. BAUTISTA, CSR, CRR, RPR, CLR

                                                    **213**

# EXHIBIT 19
# Filed Under Seal

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, pro hac vice
  bburoker@gibsondunn.com
BRIAN K. ANDREA, pro hac vice
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, pro hac vice
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> (JW Reference No.: A279845) <br><br> *HIGHLY CONFIDENTIAL* **DECLARATION OF ROBIN GOLDBERG IN RESPONSE TO ORDER NO. 2 OF SPECIAL MASTER ON DISCOVERY MOTIONS** <br><br> [Submitted to Special Master; not filed; required to be filed under seal] |



HIGHLY CONFIDENTIAL DECLARATION OF ROBIN GOLDBERG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL DECLARATION OF ROBIN GOLDBERG

1  █████████████████████████████████████

2  ██████████████████████████████████████

3  ██████████████████████████████████████

4  ██████████████████████████████████████

5  ██████████████████████████

6  █████████████████████████████████████

7  ██████████████████████████████████████

8  ██████████████████████████████████████

9  █████████████████████████████████

10  █████████████████████████████████████

11  ██████████████████████████████████████

12  ██████████████████████████████████████

13  ██████████████████████████████████████

14  ██████████████████████████████████████

15  ██████████████████████████████████████

16  ██████████████████████████████████████

17  ██████████████████████████████████████

18  ██████████████████████████████████████

19  ██████████████████████████████████████

20  ████████████████████████████████████

21  █████████████████████████████████████

22  ████████████████████  ██████████████████

23  ██████████████████████████████████████

24  ██████████████████████████████████████

25  ██████████████████████████████████████

26  ██████████████████████████████████████

27  ██████████████████████████

28

HIGHLY CONFIDENTIAL DECLARATION OF ROBIN GOLDBERG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL DECLARATION OF ROBIN GOLDBERG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27 ///
28 ///

5



1    Executed this 27th day of December, 2021.

2

3                                              By:   _____

4                                                    Robin Goldberg

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL DECLARATION OF ROBIN GOLDBERG

# EXHIBIT 20

US010638941B2

(12) **United States Patent**

Albert et al.

(10) Patent No.: **US 10,638,941 B2**

(45) Date of Patent: ***May 5, 2020**

(54) **DISCORDANCE MONITORING**

(71) Applicant: **AliveCor, Inc.**

(72) Inventors: **David E. Albert**, Oklahoma City, OK (US); **Omar Dawood**, San Francisco, CA (US); **Ravi Gopalakrishnan**, San Francisco, CA (US)

(73) Assignee: **AliveCor, Inc.**, Mountain View, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/158,112**

(22) Filed: **Oct. 11, 2018**

(65) **Prior Publication Data**

US 2019/0104948 A1      Apr. 11, 2019

**Related U.S. Application Data**

(63) Continuation of application No. 15/656,745, filed on Jul. 21, 2017, now Pat. No. 10,537,250, which is a continuation of application No. 15/154,849, filed on May 13, 2016, now Pat. No. 9,839,363.

(60) Provisional application No. 62/161,092, filed on May 13, 2015.

(51) **Int. Cl.**
| | |
|---|---|
| *A61B 5/02* | (2006.01) |
| *A61B 5/0205* | (2006.01) |
| *A61B 5/00* | (2006.01) |
| *A61B 5/024* | (2006.01) |
| *A61B 5/11* | (2006.01) |
| *A61B 5/046* | (2006.01) |
| *A61B 5/0464* | (2006.01) |
| *A61B 5/0408* | (2006.01) |

(52) **U.S. Cl.**
CPC ............ ***A61B 5/0205*** (2013.01); ***A61B 5/681*** (2013.01); ***A61B 5/7267*** (2013.01); *A61B 5/02405* (2013.01); *A61B 5/02438* (2013.01); *A61B 5/046* (2013.01); *A61B 5/0464* (2013.01); *A61B 5/04085* (2013.01); *A61B 5/1118* (2013.01); *A61B 2562/0219* (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 7,846,106 | B2 | 12/2010 | Andrews et al. | |
| 9,839,363 | B2 * | 12/2017 | Albert | A61B 5/0205 |
| 10,537,250 | B2 * | 1/2020 | Albert | A61B 5/681 |
| 2007/0213624 | A1 | 9/2007 | Reisfeld et al. | |
| 2012/0109675 | A1 | 5/2012 | Ziegler et al. | |
| 2012/0197148 | A1 | 8/2012 | Levitan et al. | |
| 2012/0289790 | A1 | 11/2012 | Jain et al. | |
| 2014/0125619 | A1 | 5/2014 | Panther et al. | |
| 2014/0163393 | A1 | 6/2014 | McCombie et al. | |

(Continued)

*Primary Examiner* — Ankit D Tejani

(74) *Attorney, Agent, or Firm* — Womble Bond Dickinson (US) LLP; William D. Jacobs, Jr.

(57) **ABSTRACT**

Described herein are systems, devices, and methods for cardiac monitoring. In particular, the systems, devices, and methods described herein may be used to conveniently sense the presence of an intermittent arrhythmia in an individual. The systems, devices, and methods described herein may be further configured to sense an electrocardiogram.

**23 Claims, 7 Drawing Sheets**

400 ~







**US 10,638,941 B2**

Page 2

(56)         **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2014/0276154 A1* | 9/2014 | Katra | A61B 5/04012 |
| | | | 600/509 |
| 2015/0057512 A1 | 2/2015 | Kapoor | |
| 2015/0122018 A1* | 5/2015 | Yuen | G01B 21/16 |
| | | | 73/384 |
| 2015/0305684 A1 | 10/2015 | Gross | |

* cited by examiner

U.S. Patent          May 5, 2020          Sheet 1 of 7          US 10,638,941 B2



FIG. 1



FIG. 2

**U.S. Patent**        May 5, 2020        Sheet 3 of 7        US 10,638,941 B2



FIG. 3

**U.S. Patent**   May 5, 2020   Sheet 4 of 7   US 10,638,941 B2






FIG. 4

400



*FIG. 5*



*FIG. 6*



*FIG. 7*

US 10,638,941 B2

1

## DISCORDANCE MONITORING

### CROSS-REFERENCE

This application is a continuation of U.S. patent application Ser. No. 15/656,745, filed Jul. 21, 2017, entitled "DISCORDANCE MONITORING", which is a continuation of U.S. patent application Ser. No. 15/154,849, filed May 13, 2016, entitled "DISCORDANCE MONITORING", now issued as U.S. Pat. No. 9,839,363 on Dec. 12, 2017, which claims the benefit of U.S. Provisional Application No. 62/161,092, filed May 13, 2015, both of which are incorporated herein by reference in its entirety.

### BACKGROUND

Irregular heartbeats and arrhythmias are associated with significant morbidity and mortality in patients. Arrhythmias may occur continuously or may occur intermittently. Types of arrhythmia include atrial fibrillation and supraventricular tachycardia. Non-invasive cardiac monitoring is useful in diagnosing cardiac arrhythmia.

### SUMMARY

Described herein are systems, devices, and methods for cardiac monitoring. The systems, devices, and methods described herein for cardiac monitoring may comprise portable computing devices such as smartphones, smartwatches, laptops, and tablet computers. Cardiac monitoring using the systems, devices, and methods described herein may be used to predict or identify the occurrence of arrhythmias.

Arrhythmias may occur continuously or may occur intermittently. Continuously occurring arrhythmias may be diagnosed using a number of different techniques including, for example, palpating a radial pulse of an individual, auscultating heart sounds of an individual, recording a heart rate of an individual, and recording an electrocardiogram of an individual. Because a continuous or essentially continuous arrhythmia is always present or essentially always present in the patient, any of the aforementioned diagnosis techniques may be applied at any time in order to make a diagnosis. For intermittent arrhythmia diagnosis any of the aforementioned diagnosis techniques may also be used, however, because intermittent arrhythmias do not always present, the diagnostic technique cannot be applied at any time, but must be applied at the time when the individual is experiencing the arrhythmia. Thus, diagnosing intermittent arrhythmias may be difficult, because, for example, it is not practical to be prepared to apply one of the aforementioned diagnostic modalities at the exact time that an individual experiences an intermittent arrhythmia. This particular difficulty may also be compounded when an individual is not aware that they are experiencing an intermittent arrhythmia so that they would not, for example, seek out a health care provider during the intermittent arrhythmia.

However, certain parameter values may be conveniently sensed continuously such as, for example, heart rate and activity level, and analyzed to predict or determine the presence of an arrhythmia. One or more conveniently continuously sensed parameter values such as, for example, heart rate and activity level may be analyzed to determine the future onset of or the presence of an arrhythmia by identifying discordance between these two parameter values. For example, discordance between two sensed values may indicate the future onset of or the presence of an

2

arrhythmia. In response to the identification of the future onset of or presence of an arrhythmia an electrocardiogram may be caused to be sensed.

Additional sensed parameters may also be used in an analysis as part of the cardiac monitoring systems, devices, and methods described herein. For example, a determined heart rate variability may be compared to a sensed heart rate and activity level to determine the presence of, for example, atrial fibrillation or supraventricular tachycardia.

Described herein is a method for cardiac monitoring, comprising: sensing an activity level value of an individual with a first sensor of a wearable device worn by said individual; sensing a heart rate value of said individual with a second sensor of said wearable device; determining a heart rate variability value with a processor of said wearable device; determining if a discordance is present between two or more of said activity level value, said heart rate value, and said heart rate variability value with said processor; and indicating to said individual with said wearable device to record an electrocardiogram when said discordance is determined to be present. In some embodiments, said first sensor comprises an accelerometer. In some embodiments, said first sensor comprises a gyroscope. In some embodiments, said second sensor comprises a photosensor. In some embodiments, said discordance is determined to be present when said activity level value is normal and said heart rate value is elevated. In some embodiments, said discordance is determined to be present when said activity level value is normal, said heart rate value is elevated, and said heart rate variability value is increased. In some embodiments, said method comprises indicating a presence of atrial fibrillation. In some embodiments, said discordance is determined to be present when said activity level value is normal, said heart rate value is elevated, and said heart rate variability value is decreased. In some embodiments, said method comprises indicating a presence of a supraventricular tachycardia. In some embodiments, setting one or more threshold values based on said activity level value, said heart rate value, and said heart rate variability value. In some embodiments, said one or more threshold values is determined using a machine learning algorithm.

Described herein is wearable device for cardiac monitoring, comprising: a processor; a first sensor configured to sense an activity level value of an individual, wherein said first sensor is coupled to said processor; a second sensor configured to sense a heart rate value of an individual, wherein said second sensor is coupled to said processor; a first electrode and a second electrode configured to sense an electrocardiogram; a non-transitory computer readable storage medium encoded with a computer program including instructions executable by said processor to cause said processor to: determine if a discordance is present between said activity level value of said individual and said heart rate value of said individual; and indicate that said electrocardiogram be recorded when said discordance is determined to be present. In some embodiments, said first sensor comprises an accelerometer. In some embodiments, said first sensor comprises a gyroscope. In some embodiments, said second sensor comprises a photosensor. In some embodiments, said discordance is determined to be present when said activity level value is normal and said heart rate value is elevated. In some embodiments, said computer program includes instructions that cause said processor to determine a heart rate variability value. In some embodiments, said discordance is determined to be present when said activity level value is normal, said heart rate value is elevated, and said heart rate variability value is increased. In some

US 10,638,941 B2

3

embodiments, said computer program includes instructions that cause said processor to indicate a presence of atrial fibrillation. In some embodiments, said discordance is determined to be present when said activity level value is normal, said heart rate value is elevated, and said heart rate variability value is elevated. In some embodiments, said computer program includes instructions that cause said processor to indicate a presence of a supraventricular tachycardia. In some embodiments, said computer program includes instructions that cause said processor to set one or more threshold values based on said activity level value, and said heart rate value.

In some embodiments, said one or more threshold values is determined using a machine learning algorithm.

Described herein is a method for cardiac monitoring, comprising: sensing an activity level value of an individual with a first sensor of a wearable device worn by said individual; sensing a heart rate value of said individual with a second sensor of said wearable device; determining if a discordance is present between two or more of said activity level value and said heart rate value by using an activity level threshold and a heart rate threshold with a processor of said wearable device; and adjusting said activity level threshold and said heart rate level threshold using a machine learning algorithm executed by said processor.

BRIEF DESCRIPTION OF THE DRAWINGS

The novel features of the individual matter described herein are set forth with particularity in the appended claims. A better understanding of the features and advantages of the present individual matter described herein will be obtained by reference to the following detailed description that sets forth illustrative embodiments, in which the principles of the individual matter described herein are utilized, and the accompanying drawings of which:

FIG. **1** shows a heart rate tracing with a corresponding electrocardiogram (ECG) tracing both sensed from the same individual over the same period.

FIG. **2** shows a graphic showing both heart rate and rhythm analysis over a period of time in an individual who experienced different arrhythmias.

FIG. **3** shows a close up of a heart rate tracing sensed over a period of paroxysmal atrial fibrillation.

FIG. **4** shows available technologies for continuously sensing a heart rate or an activity level.

FIG. **5** shows a photosensor commonly used to measure heart rates integrated with a smartwatch.

FIG. **6** exemplifies a computer system that is programmed or otherwise configured to sense one or more physiologic parameters of an individual.

FIG. **7** shows a schematic of an algorithm for discordance monitoring.

DETAILED DESCRIPTION

Cardiac Monitoring

Described herein are systems, devices, and methods for use in cardiac monitoring. Cardiac monitoring typically comprises monitoring of the heart function of an individual for changes in, for example, heart rate or heart rhythm.

Heart rate may vary between, for example, bradycardia which typically is defined as a heart rate of less than 60 beats per minute, normal resting heart rate which typically is defined as a heart rate of between 60-100 beats per minute, and tachycardia which typically is defined as a heart rate of

4

greater than 100 beats per minute. Variance of heart rate over a period of time may be referred to as Heart Rate Variability (HRV).

Heart function is also measured in terms of regularity of rhythm. A normal heart rhythm comprises of a systole (ejection phase) and diastole (filling phase). During the phases of systole and diastole, the ventricles of the heart act in concert in a regular manner that is repeated with every single heartbeat. When there is an abnormality of rhythm, the condition is typically referred to as an arrhythmia. Examples of arrhythmias include atrial fibrillation, WPW syndrome, prolonged QT syndrome, and premature ventricular contractions.

Many arrhythmias occur intermittently and relatively infrequently. Thus, in order to monitor and capture an intermittent arrhythmia, continuous monitoring is typically required. ECGs can be measured continuously in the ambulatory patient using holter monitoring, but this type of monitoring is cumbersome for the patient and is thus not widely used. A device or system configured to take an intermittent ECG is much more convenient for users. Such devices or systems comprise a mobile computing device that includes one or more electrodes that sense an ECG when contacted by a skin surface of the patient. Such devices are light and portable and don't necessarily require the user to be in continuous physical contact with one or more electrodes as they would with a holter type monitor. Intermittent arrhythmias can be recorded with these devices and systems when a user is given an indication that an intermittent arrhythmia is occurring. HRV sensing is used in combination with these devices or systems to indicate to a user when to contact one or more electrodes in order to sense an ECG.

FIG. **1** shows a heart rate tracing **100** with a corresponding electrocardiogram (ECG) tracing **104** both sensed from the same individual over the same period. As is shown in the ECG tracing **104**, the individual experienced a period of intermittent atrial fibrillation **106** during the time that the ECG was sensed. As is also shown in the heart rate tracing **100**, the heart rate of the individual rapidly increased **102** during the period of intermittent atrial fibrillation. As such, the HRV of the individual increased during the period of intermittent atrial fibrillation as the heart rate of the individual increased from a resting heart rate to an increased heart rate **102**. HRV changes are therefore associated with atrial fibrillation, wherein increased HRV is found during periods of intermittent atrial fibrillation.

FIG. **2** shows a graphic showing both heart rate **202** and rhythm analysis **200** over a period of time in an individual who experienced different arrhythmias. As shown, the measured heart rate **202** tended to increase above 100 beats per minute during the periods of sensed atrial fibrillation **200**. Thus, elevated heart rate above resting heart rate occurred in this individual during the period of arrhythmia.

FIG. **3** shows a close up of a heart rate tracing sensed over a period of paroxysmal atrial fibrillation. As shown, there was a substantial step increase from a normal heart of between 60-100 beats per minute to above 100 beats per minute **302** during the period of atrial fibrillation.

FIG. **4** shows available technologies **400** for continuously sensing a heart rate or an activity level. Shown are smartwatches made available by manufactures such as, for example, Apple. A wearer of one of the shown smartwatch technologies **400** may conveniently and continuously wear one or more sensors that are either coupled to or integrated with the watch throughout the day, thus, effectively continuously monitoring one or more parameter values via the one or more sensors that are either coupled to or integrated with

US 10,638,941 B2

5

the smartwatch. Thus, one of the smartwatch technologies **400** are an example of a type of device in the form of a wearable that conveniently provides continuous monitoring of one or more parameters of a user. Non-limiting examples of wearable devices that may have one or more sensors either coupled to them or integrated with them include watches (e.g. smartwatches), eyeglasses, wristbands, necklaces, and clothing. The one or more continuously sensed parameters of the user of such a technology as, for example, shown in FIG. **4**, are then used to indicate to the user to use a device or system to sense an ECG. For example, a user wearing a smartwatch having a heart rate sensor is alerted by the smartwatch to record an ECG when the HRV of the user increases.

FIG. **5** shows a photosensor **500** commonly used to measure heart rates integrated with a smartwatch **502**.

Activity level is correlated with arrhythmia in many individuals who have a predisposition to develop arrhythmia wherein increased activity level is associated with onset of arrhythmia. In other individuals an increased activity level that is detected by one or more activity sensors in the presence of increased HRV is likely normal and is not associated with arrhythmia. Thus, as described herein, the addition of continuous heart rate monitoring along with continuous activity level monitoring may achieve the same results, in terms of arrhythmia monitoring, as continuous electrocardiogram monitoring. Using one or more sensors associated with the devices or systems described herein two parameter values of heart rate and activity level may be conveniently and accurately continuously and simultaneously sensed.

Devices and Systems

FIG. **6** exemplifies a computer system **601** that is programmed or otherwise configured to sense one or more physiologic parameters of an individual. Non-limiting examples of physiologic parameters include heart rate, blood pressure, temperature, oxygen saturation, ECG, HRV, and activity level. The computer system **601** comprises an electronic device of a user **635**, or comprises a computer system that is remotely located with respect to the electronic device **635**. Electronic devices suitable for use with the system **601** include mobile electronic devices such as smartphones, smartwatches, tablets, and laptops. The electronic device **601** comprises one or more sensors configured to sense a physiologic parameter. Numerous sensors are known for measuring heart rate. Non-limiting examples of suitable sensors include light based sensors such as, for example, infrared sensor/emitter, ultrasound sensors, and tactile sensors. Sensors for measuring rhythm include electrodes for measuring electrocardiograms (ECG) and light based sensors for measuring photoplethysmograms.

The computer system **601** includes a central processing unit (CPU, also "processor" and "computer processor" herein) **605**, which can be a single core or multi core processor, or a plurality of processors for parallel processing. The computer system **601** also includes memory or memory location **610** (e.g., random-access memory, readonly memory, flash memory), electronic storage unit **615** (e.g., hard disk), communication interface **602** (e.g., network adapter) for communicating with one or more other systems, and peripheral devices **625**, such as cache, other memory, data storage and/or electronic display adapters. The memory **610**, storage unit **615**, interface **602** and peripheral devices **625** are in communication with the CPU **605** through a communication bus (solid lines), such as a motherboard. The storage unit **615** can be a data storage unit (or data repository) for storing data. The computer system **601** can be

6

operatively coupled to a computer network ("network") **603** with the aid of the communication interface **602**. The network **603** can be the Internet, an internet and/or extranet, or an intranet and/or extranet that is in communication with the Internet. The network **603** in some cases is a telecommunication and/or data network. The network **603** can include one or more computer servers, which can enable distributed computing, such as cloud computing. The network **603**, in some cases with the aid of the computer system **601**, can implement a peer-to-peer network, which may enable devices coupled to the computer system **601** to behave as a client or a server.

The CPU **605** can execute a sequence of machine-readable instructions, which can be embodied in a program or software. The instructions may be stored in a memory location, such as the memory **610**. The instructions can be directed to the CPU **605**, which can subsequently program or otherwise configure the CPU **605** to implement methods of the present disclosure. Examples of operations performed by the CPU **605** can include fetch, decode, execute, and writeback.

The CPU **605** can be part of a circuit, such as an integrated circuit. One or more other components of the system **601** can be included in the circuit. In some cases, the circuit is an application specific integrated circuit (ASIC).

The storage unit **615** can store files, such as drivers, libraries and saved programs. The storage unit **615** can store user data, e.g., user preferences and user programs. The computer system **601** in some cases can include one or more additional data storage units that are external to the computer system **601**, such as located on a remote server that is in communication with the computer system **601** through an intranet or the Internet.

The computer system **601** can communicate with one or more remote computer systems through the network **603**. For instance, the computer system **601** can communicate with a remote computer system of a user (e.g., mobile device, server, etc.). Examples of remote computer systems include personal computers (e.g., portable PC), slate or tablet PC's (e.g., Apple® iPad, Samsung® Galaxy Tab), telephones, Smart phones (e.g., Apple® iPhone, Androidenabled device, Blackberry®), or personal digital assistants. The user can access the computer system **601** via the network **603**.

Methods as described herein can be implemented by way of machine (e.g., computer processor) executable code stored on an electronic storage location of the computer system **601**, such as, for example, on the memory **610** or electronic storage unit **615**. The machine executable or machine readable code can be provided in the form of software. During use, the code can be executed by the processor **605**. In some cases, the code can be retrieved from the storage unit **615** and stored on the memory **610** for ready access by the processor **605**. In some situations, the electronic storage unit **615** can be precluded, and machineexecutable instructions are stored on memory **610**.

The code can be pre-compiled and configured for use with a machine have a processor adapted to execute the code, or can be compiled during runtime. The code can be supplied in a programming language that can be selected to enable the code to execute in a pre-compiled or as-compiled fashion.

Aspects of the systems and methods provided herein, such as the computer system **601**, can be embodied in programming. Various aspects of the technology may be thought of as "products" or "articles of manufacture" typically in the form of machine (or processor) executable code and/or associated data that is carried on or embodied in a type of

US 10,638,941 B2

7

machine readable medium. Machine-executable code can be stored on an electronic storage unit, such memory (e.g., read-only memory, random-access memory, flash memory) or a hard disk. "Storage" type media can include any or all of the tangible memory of the computers, processors or the like, or associated modules thereof, such as various semiconductor memories, tape drives, disk drives and the like, which may provide non-transitory storage at any time for the software programming. All or portions of the software may at times be communicated through the Internet or various other telecommunication networks. Such communications, for example, may enable loading of the software from one computer or processor into another, for example, from a management server or host computer into the computer platform of an application server. Thus, another type of media that may bear the software elements includes optical, electrical and electromagnetic waves, such as used across physical interfaces between local devices, through wired and optical landline networks and over various air-links. The physical elements that carry such waves, such as wired or wireless links, optical links or the like, also may be considered as media bearing the software. As used herein, unless restricted to non-transitory, tangible "storage" media, terms such as computer or machine "readable medium" refer to any medium that participates in providing instructions to a processor for execution.

Hence, a machine readable medium, such as computer-executable code, may take many forms, including but not limited to, a tangible storage medium, a carrier wave medium or physical transmission medium. Non-volatile storage media include, for example, optical or magnetic disks, such as any of the storage devices in any computer(s) or the like, such as may be used to implement the databases, etc. shown in the drawings. Volatile storage media include dynamic memory, such as main memory of such a computer platform. Tangible transmission media include coaxial cables; copper wire and fiber optics, including the wires that comprise a bus within a computer system. Carrier-wave transmission media may take the form of electric or electromagnetic signals, or acoustic or light waves such as those generated during radio frequency (RF) and infrared (IR) data communications. Common forms of computer-readable media therefore include for example: a floppy disk, a flexible disk, hard disk, magnetic tape, any other magnetic medium, a CD-ROM, DVD or DVD-ROM, any other optical medium, punch cards paper tape, any other physical storage medium with patterns of holes, a RAM, a ROM, a PROM and EPROM, a FLASH-EPROM, any other memory chip or cartridge, a carrier wave transporting data or instructions, cables or links transporting such a carrier wave, or any other medium from which a computer may read programming code and/or data. Many of these forms of computer readable media may be involved in carrying one or more sequences of one or more instructions to a processor for execution

The computer system 601 can include or be in communication with an electronic display 535 that comprises a user interface (UI) 640 for providing, for example, distributions of magnetic fields, distributions of electrical currents, distributions of local myocardial activities, etc. Examples of UI's include, without limitation, a graphical user interface (GUI) and web-based user interface.

Methods and systems of the present disclosure can be implemented by way of one or more algorithms. An algorithm can be implemented by way of software upon execution by the central processing unit 605. The algorithm, for example, is used to analyze a sensed physiologic parameter.

8

A device as described herein is in some embodiments configured to sense two or more physiologic parameters. For example, a device configured to measure the heart rate of an individual as described herein is also in some embodiments configured to sense the electrocardiogram of said individual. In these embodiments, a device as described herein includes one or more electrodes configured to sense an electrocardiogram of an individual. In some embodiments, a device as described herein comprises two electrodes. In some embodiments, a device as described herein comprises three electrodes. In some embodiments, a device as described herein comprises four electrodes. In some embodiments, a device as described herein comprises five electrodes. In some embodiments, a device as described herein comprises six electrodes. In some embodiments, a device as described herein comprises seven electrodes. In some embodiments, a device as described herein comprises eight electrodes. In some embodiments, a device as described herein comprises nine electrodes. In some embodiments, a device as described herein comprises ten electrodes. Electrodes of the device described herein are configured to sense an electrocardiogram of an individual and transmit the sensed electrocardiogram data to a processor integrated with the device or part of the system described herein. In some embodiments, the processor is configured to display the electrocardiogram on a display of the device described herein. In some embodiments, the device is configured to sense and/or display a single lead electrocardiogram. In some embodiments, the single lead comprises any of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display two leads comprising any two of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display two leads comprising any three of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display three leads comprising any three of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display four leads comprising any four of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display five leads comprising any five of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device or system is configured to sense and/or display six leads comprising any six of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display seven leads comprising any seven of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display eight leads comprising any eight of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display nine leads comprising any nine of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display ten leads comprising any ten of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2,

US 10,638,941 B2

9

10

Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display eleven leads comprising any eleven of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device is configured to sense and/or display twelve leads comprising any twelve of Lead I, Lead II, Lead aVR, Lead aVL, Lead aVF, Lead V1, Lead V2, Lead V3, Lead V4, Lead V5, and Lead V6. In some embodiments, the device includes software configured to cause a processor of said device to analyze the sensed electrocardiogram. An analysis of a sensed electrocardiogram performed by the processor of the device identifies the presence of an abnormal heart condition. For example, an analysis performed by a processor of a device, in some embodiments, identifies arrhythmias by, for example, analysis of the PQRST waveform and/or comparing multiple PQRST waveforms within an electrocardiogram. In some embodiments, the processor carries out an analysis of an electrocardiogram by comparing one or more PQRST waveforms of an individual against a one or more PQRST waveforms of other individuals from a database containing electrocardiograms of other individuals. In some embodiments of the devices described herein, an individual is alerted to sense an electrocardiogram by, for example, engaging one or more electrodes when the device senses one or more physiologic parameters. For example, in some embodiments, a device as described herein is configured to sense a blood pressure of an individual, and in some of these embodiments, the device is configured to sense a second physiologic parameter of the individual such as for example a heart rate. An accelerated heart rate of an individual sensed by the device in addition to, for example, a low blood pressure of the individual concurrently sensed by the device, triggers the processor of the device to indicate to the individual to engage with the electrodes of the device in order to sense an electrocardiogram.

The combination of a sensed accelerated heart rate and low blood pressure typically indicate an abnormality, however, other physiologic conditions may also produce an elevated heart rate accompanied by low blood pressure including, for example, dehydration. Thus, in some embodiments, accuracy is enhanced when physiologic parameters such as, for example, heart rate, blood pressure, oxygen saturation, and temperature are compared to baseline values of the individual or to a data from a database containing the physiological parameters of other individuals. Some elite athletes, for example, have physiologic parameter values that would be abnormal in another individual such as, for example, very low heart rates or increased heart rate variability (e.g. during a period of exercise).

A device as described herein is in some embodiments configured to sense a photophletysmogram of an individual. A photopletysmogram, for example, provides cardiac cycle information and may, for example, be analyzed by a processor of a device described herein to determine a presence of a premature ventricular contraction.

In some embodiments, a device as described herein is configured to sense a pulse oxygenation of an individual. A device as described herein is configured to sense a pulse oxygenation of an individual in some embodiments.

Analysis

In some embodiments, a device as described herein is configured to sense and/or analyze a number of additional physiologic parameters. Non-limiting examples of parameter values sensed and/or analyzed by the devices and systems described herein include heart rate, activity level, blood pressure, temperature, pulse oxygen, and heart rate variability. Analysis includes in some embodiments the comparison of a first sensed physiologic parameter to a second sensed physiologic and determining if a discordance exists between the first and second sensed parameter values.

In some embodiments, a device as described herein is configured to monitor for arrhythmia in an individual, wherein monitoring may comprise the identification of onset of an arrhythmia. In some embodiments, cardiac monitoring carried out by the devices described herein comprises, for example, monitoring for the presence or onset of arrhythmia in an individual who has not previously been identified to have an arrhythmia. In some embodiments, cardiac monitoring carried out by the devices described herein comprises the identification of onset of a known or suspected intermittent arrhythmia. In some embodiments, the devices described herein are configured to predict an onset of an arrhythmia in an individual. The onset of an arrhythmia is, for example, predicted due to a sudden and significant shift in the value of a sensed physiologic parameter such as heart rate. A prediction of arrhythmia is more accurate when two or more physiologic parameters are concurrently sensed and analyzed with respect to one another. For example, sensing of heart rate changes with respect to a sensed activity level provides contextual information for the sensed heart rate.

A subset of arrhythmias are sometimes termed tachyarrhythmias. Tachyarrhythmias typically comprise a tachycardic heart rate which may comprise a heart rate above 100 beats per minute. Tachyarrhythmias may comprise, for example, certain types of atrial fibrillation and supraventricular tachycardia. In some embodiments, the devices as described herein are configured to identify the presence or onset of a tachyarrhythmia, such as, for example, atrial fibrillation or supraventricular tachycardia. In some embodiments, the devices as described herein are configured to identify the presence or onset of a tachyarrhythmia. In some embodiments, the devices as described herein are configured to predict the onset of a tachyarrhythmia.

In some embodiments, the devices as described herein are configured to provide continuous cardiac monitoring. In some embodiments, the devices as described herein are configured to provide continuous cardiac monitoring for a period of up to one year. In some embodiments, the devices as described herein are configured to provide continuous cardiac monitoring for a period of up to 12 months. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 6 months. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 3 months. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 1 month. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 2 weeks. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 1 weak. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 72 hours. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 48 hours. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 24 hours. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 12 hours. In some embodiments, the devices

US 10,638,941 B2

11

described herein are configured to provide continuous cardiac monitoring for a period of up to 8 hours. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 4 hours. In some embodiments, the devices described herein are configured to provide continuous cardiac monitoring for a period of up to 2 months.

In some embodiments, the devices described herein are configured to provide intermittent cardiac monitoring. In some embodiments, intermittent cardiac monitoring is initiated in response to one or more sensed parameter values. Non-limiting examples of the one or more sensed parameter value that may cause initiation of intermittent cardiac monitoring may comprise, for example, a heart rate of an individual, a blood pressure of an individual, an activity level an individual, a temperature of an individual, a pulse oximetry of an individual, or any other sensed biometric parameter of an individual. In some embodiments, an electrocardiogram of an individual may be sensed in response to one or more sensed parameters. For example, an electrocardiogram may be caused to be sensed in response to a heart rate value.

In some embodiments, one or more continuous sensors may sense one or more parameters that cause the initiation of intermittent cardiac monitoring by one or more sensors. In some embodiments, a heart rate of an individual is sensed continuously. In some embodiments, an activity level of an individual is sensed continuously. In some embodiments, a heart rate variability of an individual is sensed continuously. In some embodiments, an electrocardiogram of an individual is sensed intermittently. In some embodiments, an intermittently sensed electrocardiogram is caused to be sensed in response to a continuously measured heart rate of an individual. In some embodiments, an intermittently sensed electrocardiogram is caused to be sensed in response to an activity level of an individual. In some embodiments, an intermittently sensed electrocardiogram is caused to be sensed in response to both a continuously measured heart rate and a continuously measured activity level. In some embodiments, an intermittently sensed electrocardiogram is caused to be sensed in response to a continuously sensed heart rate, a continuously sensed activity level, and a continuously sensed heart rate variability.

In some embodiments, a device or system as described herein comprises one or more sensors configured for continuous cardiac monitoring. In some embodiments, a device or system as described herein comprises one or more sensors configured for intermittent cardiac monitoring. In some embodiments, a device or system as described herein comprises one or more heart rate sensors, which may, for example, comprise a photosensor. In some embodiments, a device or system as described herein comprises one or more activity level sensors, which may, for example, comprise an accelerometer or a gyroscope. In some embodiments, a device or system as described herein comprises one or more electrocardiogram sensors, which may, for example, comprise one or more electrodes. Non-limiting examples of other sensors suitable for use with the devices, systems, and methods described herein further comprise blood pressure sensors, temperature sensors, and pulse oximetry sensors.

In some embodiments, a device or system as described herein comprises a processor. In some embodiments, a process is coupled with one or more sensors that are configured to sense continuously and one or more sensors that are configured to sense intermittently. In some embodiments, a processor is configured to receive parameter values from one or more sensors. In some embodiments, a processor is configured to activate one or more sensors or to initiate

12

the sensing of a parameter value. In some embodiments, a processor is configured to analyze a parameter value. In some embodiments, a processor is configured to compare a first parameter value with a second parameter value. In some embodiments, a first and a second parameter value to be compared are simultaneously or essentially simultaneously sensed.

In some embodiments, a device or system as described herein further comprises software in the form of a program or application. In some embodiments, the program or application may be configured to cause a processor to carry out one or more functions. In some embodiments, the program or application may be configured to cause a processor to receive parameter values from one or more sensors. In some embodiments, the program or application may be configured to cause a processor to activate one or more sensors or to initiate the sensing of a parameter value. In some embodiments, the program or application may be configured to cause a processor to analyze a parameter value. In some embodiments, the program or application may be configured to cause a processor to compare a first parameter value with a second parameter value. In some embodiments, a first and a second parameter value to be compared are simultaneously or essentially simultaneously sensed.

In some embodiments, the devices described herein are configured to carry out an analysis, wherein the analysis is performed by a processor. In some embodiments, an analysis of one or more parameter values carried out by the devices described herein comprises a comparison of a sensed parameter value to a threshold or range. For example, an analysis may comprise determining whether a sensed heart rate value falls within one or more ranges. For example, in some embodiments, a sensed heart rate may be determined to be within a heart rate range comprising a range between 60-100 beats per minute. For example, in some embodiments, a sensed heart rate may be determined to be in a heart rate range comprising a range of values less than 60 beats per minute. For example, in some embodiments, a sensed heart rate may be determined to be within a heart rate range comprising a range of values above 100 beats for minute.

In some embodiments, an analysis of one or more parameter values carried out by the devices described herein comprises a comparison of a first sensed parameter to a second sensed parameter. For example, in some embodiments, a heart rate value is compared to a sensed activity level of an individual.

In some embodiments, a first sensed value is compared to a second sensed value, and it is determine whether a discordance exists between the two values. For example, in some embodiments, an elevated heart rate value would be expected to be present during a period of elevated activity, thus an elevated heart rate and an elevated activity level that are simultaneously sensed would not be found to be in discordance with one another.

A discordance may be identified when a first sensed parameter value would not be expected to coincide with a second sensed parameter value. For example, an elevated heart rate value would not be expected to be present with a normal or resting activity level and thus the two values are in discordance with one another. For example, in some embodiments, when a heart rate sensor senses a heart rate above 100 beats per minute and a simultaneously sensed activity level is determined to be a resting activity level, an analysis of the two sensed values determines that they are in discordance with one another.

In some embodiments, an analysis carried out by the devices and systems described herein comprises the deter-

US 10,638,941 B2

13

mination of an increase in a heart rate variability. In some embodiments, an analysis carried out by the devices and systems described herein comprises comparing a heart rate variability with one or more sensed parameter values. For example, in some embodiments, a heart rate variability is compared to concurrently or essentially concurrently sensed heart rate and activity level values.

In some embodiments, an analysis carried out by the devices and systems described herein comprises the prediction of or the identification of the initiation of an arrhythmia using an identified discordance as described herein. In some embodiments, a discordance comprising a simultaneously or essentially simultaneously sensed elevated heart rate and resting or normal activity level is determined to indicate the imminent initiation of an arrhythmia or the presence of an arrhythmia. In particular, because the heart rate is elevated, the arrhythmia with this type of discordance typically comprises a tachyarrhythmia.

In some embodiments, a simultaneously sensed increase in heart rate variability, an elevated heart rate, and a resting or normal activity rate is determined to indicate the future onset or presence of atrial fibrillation. In some embodiments, a sensed increased heart rate variability, normal resting heart rate, and resting or normal activity rate may also be determined to indicate the future onset of or the presence of atrial fibrillation. In some embodiments, a simultaneously sensed decrease in heart rate variability, an elevated heart rate, and a resting or normal activity rate is determined to indicate the future onset or presence of supraventricular tachycardia. In some embodiments, when an arrhythmia is determined to be imminent or present, an electrocardiogram is recorded. In some embodiments, an individual is instructed or signaled by a cardiac monitoring device or system described herein to engage one or more electrodes in order to sense an electrocardiogram. In some embodiments, one or more electrodes may be positioned on a surface of a cardiac monitoring device so that the individual may, for example, comfortably engage a first electrode with a skin surface of a first extremity while simultaneously engaging a second electrode with a skin surface of a second extremity. In some embodiments, one or more electrodes may be affixed to an individual's body and are automatically engaged to sense an electrocardiogram by a cardiac monitoring device or system when an arrhythmia is determined to be imminent or present in the individual. For example, a first electrode may be positioned on smartwatch worn by the individual on a first extremity and a second electrode may be positioned on a wristlet worn by the individual on a second extremity. In this example, the first electrode on the smartwatch and the second electrode on the wristlet are both in communication with and controlled by the cardiac monitoring device.

In some embodiments, the devices described herein are configured to carry out machine learning. In some embodiments, the devices, systems, and methods described herein comprise machine learning algorithms which analyze parameter values sensed from an individual over period of time. In some embodiments, the devices, systems, and methods described herein comprise machine learning algorithms which analyze parameter values sensed from a plurality of individuals. In some embodiments, a machine learning algorithm causes the devices, systems, and methods described herein to more accurately identify or predict the presence of an arrhythmia in a given individual. For example, in some embodiments, sensed electrocardiogram data may be compared back to parameter values such as, for example, sensed heart rates and activity levels that triggered the sensing of said electrocardiograms. When, for example,

14

sensed electrocardiograms confirm the presence of an arrhythmia, the presence of which was indicated by, for example, a discordance between other parameter values, the machine algorithm causes the device or system described herein to learn from that data. Similarly, when, for example, sensed electrocardiograms do not confirm the presence of an arrhythmia, the presence of which was indicated by, for example, a discordance between other parameter values, the machine algorithm causes the device or system described herein to learn from that data as well. That is, in some embodiments, the machine learning algorithm correlates the sensed electrocardiogram with the discordance between parameter values that caused it (i.e. the electrocardiogram) to be sensed. The presence or absence of an arrhythmia on the electrocardiogram either respectively reinforces the correlation of an arrhythmia with the discordance that caused the electrocardiogram to be sensed or contradicts the presence of a correlation of an arrhythmia with the discordance. For example, when a heart rate of 110 is sensed and simultaneously a resting activity is sensed, an electrocardiogram is caused to be sensed, and when the sensed electrocardiogram does not indicate a presence of an arrhythmia the machine learning algorithm causes the device or system as described herein to learn that for that individual a heart rate of 110 at rest does not necessarily indicate a presence of an arrhythmia. In some embodiments, the machine learning algorithm continues to cause the storing of parameter value data, such as, for example, heart rate, activity level, and heart rate variability, and compare the parameter values to the associated electrocardiogram data over time. Thus, in some embodiments, with multiple parameter values sensed over time and compared to associated electrocardiogram data, a cardiac monitoring device or system improves its ability to predict or identify the onset of arrhythmia based on a discordance between parameter values for a specific individual. In some embodiments, a machine learning algorithm may obviate the need to sense an electrocardiogram when a particular discordance is present between parameter values of a specific individual, because of an extremely high likelihood of a presence or absence of an arrhythmia based on the parameter values as determined by the machine learning algorithm.

Any of the devices, systems, and methods for cardiac monitoring described herein may comprise one or more of a smartphone, a laptop or desktop computer, a smartwatch, or a tablet computer.

Discordance Monitoring

FIG. 7 shows a schematic of an algorithm for discordance monitoring. In a step **700**, a heart rate and an activity level are sensed by, for example, a device or system as described herein. In some embodiments, an activity level is sensed with a gyroscope or an accelerometer that is. Heart rate is sensed with a light based or other commonly used heart rate sensors. The device that measures the heart rate and the activity level may be the same device or more than one device. For example, a smartwatch or other wearable device may be configured to include a heart rate sensor as well as an activity level sensor.

If, as shown in a step **702**, an increased heart rate is sensed together with a normal or resting activity level, the two values are determined to be in discordance by the device or system processor. That is, the elevated heart rate does no match the sensed stable activity level. Determination of the presence of the discordance is done by a processor of either the device or system as described herein. The identified discordance may indicate the presence of an arrhythmia. As such, an ECG is caused to be sensed in a step **712**A. The step

US 10,638,941 B2

15

712A, may, for example, comprise indicating to the user through the device or system that sensed the heart rate and activity level to contact one or more electrodes of an ECG sensing device and thus sense the ECG. The ECG sensing device may be the device or part of the system used to sense the heart rate and activity level or may be a separate device. For example, a user wearing a smartwatch with heart rate and activity level monitoring receives an audible and/or visual indication from the smartwatch to sense an ECG when a discordance is present between a sensed heart rate value and a sensed activity level value. In some embodiments, the smartwatch comprises one or more electrodes and a user contacts one electrode with the left side of their body and one electrode with the right side of their body when an indication is received to do so from the smartwatch because a discordance is present thus sensing an ECG. In some embodiments, a smartphone comprises one or more electrodes and a user contacts one electrode with the left side of their body and one electrode with the right side of their body when an indication is received to do so from the smartwatch because a discordance is present thus sensing an ECG.

If, as shown in step 704, an increased heart rate is sensed together with an increased heart rate variability, and a normal or resting activity level is sensed. The increased heart rate and HRV are in discordance with the normal or resting activity level, and a presence of a discordance is determined by the device or system processor. Once the discordance is determined, an ECG is caused to be sensed in a step 712B as, for example, described herein with respect to step 712A. As shown, in step 716, this particular discordance may be indicative of the presence of atrial fibrillation and it should be confirmed with the ECG 712B.

If, as shown in step 706, an increased heart rate is sensed together with a decreased heart rate variability and a normal or resting activity level is sensed. The increased heart rate, decreased heart rate variability, and normal or resting activity level are in discordance with each other, and a presence of a discordance is determined by the device or system processor. Once the discordance is determined, an ECG is caused to be sensed in a step 712C as, for example, described herein with respected to step 712C. As shown, in a step 718, supraventricular tachycardia may be present and it should be confirmed with the ECG of 712C.

If, as shown in a step 708, an increased heart rate is sensed together with an increased activity level, the device or system processor determines that no discordance is present, and an ECG is not recorded as the individual is probably exercising 714.

If, as shown in step 710, a regular heart rate is sensed (e.g. 60-100 beats per minute) and an increased heart rate variability is sensed together with a normal or resting activity level. The normal heart rate, increased heart rate variability, and normal or resting activity level are in discordance with each other, and a presence of a discordance is determined by the device or system processor. Once the discordance is determined, an ECG is caused to be sensed in a step 712D as, for example, described herein with respect to step 712A. As shown, in a step 720, atrial fibrillation may be present and it should be confirmed with the ECG of 712D.

In some embodiments, a determination of the presence of a discordance is based on a comparison of two or more sensed physiologic parameters with each other. That is, for example, an elevated heart rate of 110 is compared to a resting activity level as sensed by an accelerometer which measures that the individual is traveling at 0 miles/hr. The 110 heart rate is elevated whereas the activity level of 0 miles/hr is a resting level, which indicates a discordance

16

between the sensed heart rate and activity level. In some embodiments, a processor determines that the value of a sensed physiologic parameter is either above or below a threshold value or range of values. In some embodiments, the threshold value or range of values are deemed to be normal or resting values in the population. In some embodiments, the thresholds are specific to the biometric data of the user so that the user is, for example, age-matched or gender matched to the appropriate threshold from the general population. For example, an activity level is determined to be increased in a 70 year old user but would not be increased in a 7 year old user. Thus, a discordance is determined by qualifying if a sensed physiologic parameter is elevated, decreased, or normal (or resting) and then comparing that qualified value to a qualified value of another sensed physiologic parameter. That is, for example, a value that is qualified as either increased, decreased, or normal (or resting) is compared to a value that is also qualified as increased, decreased, or normal (or resting).

In some embodiments, there is the added step (not shown in FIG. 7) of the devices and systems described herein running machine learning algorithms so that the threshold values and ranges used to determine whether a sensed physiologic parameter is increased, decreased, normal (or resting) are adjusted to more accurately fit the user. That is, for example, a user who was determined, through ECG, to have an arrhythmia at a heart rate of 80 will have their heart rate threshold lowered so that a heart of 85 (which is normal in some) would be determined to be an increased rate. The machine learning algorithm more accurately sets the thresholds over time so that discordances are more accurately determined resulting in more accurate (and efficient) recording of ECGs in response to the determination of the presence of the discordance.

Table 1 below presents some of the information found in FIG. 7 in table form.

TABLE 1

| HR Data | Activity Level Data | HRV Data | Action |
|---|---|---|---|
| HR increases | Activity level stable | | Take an ECG, possible arrhythmia |
| HR increases | Activity level stable | HRV increases | Take an ECG, possible atrial fibrillation |
| HR increases | Activity level stable | HRV decreases | Take an ECG, possible supraventricular tachycardia or ventricular tachycardia |
| HR increases | Activity level increases | | Don't take an ECG, probable exercise |
| HR stable | Activity level stable | HRV increases | Take an ECG, possible atrial fibrillation |

While preferred embodiments of the present individual matter described herein have been shown and described herein, it will be obvious to those skilled in the art that such embodiments are provided by way of example only. Numerous variations, changes, and substitutions will now occur to those skilled in the art without departing from the individual matter described herein. It should be understood that various alternatives to the embodiments of the individual matter described herein described herein may be employed in practicing the individual matter described herein. It is intended that the following claims define the scope of the individual matter described herein and that methods and structures within the scope of these claims and their equivalents be covered thereby.

US 10,638,941 B2

**17**

What is claimed is:

**1**. A method of cardiac monitoring, comprising:

sensing an activity level of a user with a first sensor on a smartwatch worn by the user;

when the activity level is resting, sensing a heart rate parameter of the user with a second sensor on the smartwatch;

determining, by a processing device, that a discordance is present between the activity level value and the heart rate parameter;

based on the presence of the discordance, indicating to the user, using the smartwatch, a possibility of an arrhythmia being present; and

receiving electric signals of the user from an electrocardiogram sensor ("ECG") on the smartwatch to confirm a presence of the arrhythmia, wherein the ECG sensor comprises a first electrode and a second electrode.

**2**. The method according to claim **1**, wherein the heart rate parameter comprises an indication of a heart rate variability, and wherein the arrhythmia is atrial fibrillation.

**3**. The method according to claim **1**, wherein the heart rate parameter comprises an indication of a heart rate variability and a heart rate value, and wherein the arrhythmia is atrial fibrillation.

**4**. The method according to claim **1**, wherein the heart rate parameter comprises an indication a heart rate value, and wherein the arrhythmia is atrial fibrillation.

**5**. The method according to claim **1**, wherein indicating to the user further comprises: instructing the user to record an ECG using the smartwatch.

**6**. The method according to claim **1**, wherein the arrhythmia is selected from a group consisting of atrial fibrillation, supraventricular tachycardia, and ventricular tachycardia.

**7**. The method according to claim **1**, wherein the heartrate parameter is a PPG signal.

**8**. The method according to claim **7**, wherein the heart rate parameter is a heartrate variability ("HRV") value, wherein the HRV value is derived from the PPG signal.

**9**. The method according to claim **7**, wherein the heart rate parameter is a heartrate, wherein the heartrate is derived from the PPG signal.

**10**. The method according to claim **1** further comprising: displaying an ECG rhythm strip from the electric signals on the smartwatch.

**11**. The method according to claim **1**, wherein the first electrode is located on the smartwatch in a location where the first electrode contacts a first side of the user's body while the user wears the smartwatch, and the second electrode is located on the smartwatch in a location where the user must actively contact the second electrode with a second side of the user's body opposite from the first side.

**12**. A smartwatch, comprising:

a processor;

a first sensor configured to sense an activity level value of a user, wherein the first sensor is coupled to the processor;

a photoplethysmogram ("PPG") sensor configured to sense a heart rate parameter of the user when the

**18**

activity level value is resting, wherein the PPG sensor is coupled to the processor;

an electrocardiogram ("ECG") sensor configured to sense electrical signals of a heart, wherein the ECG sensor comprises a first electrode and a second electrode, and wherein the ECG sensor is coupled to the processor; and

a non-transitory computer readable storage medium encoded with a computer program including instructions executable by the processor to cause the processor to:

determine if a discordance is present between the activity level value of the user and the heart rate parameter of the user;

based on the presence of the discordance, indicate to the user a possibility of an arrhythmia being present; and

receive electric signals of the user from the ECG sensor to confirm the presence of the arrhythmia.

**13**. The smartwatch or wristlet according to claim **12**, wherein the heart rate parameter comprises an indication of a heart rate variability, and wherein the arrhythmia is atrial fibrillation.

**14**. The smartwatch or wristlet according to claim **12**, wherein the heart rate parameter comprises an indication of a heart rate variability and a heart rate value, and wherein the arrhythmia is atrial fibrillation.

**15**. The smartwatch or wristlet according to claim **12**, wherein the heart rate parameter comprises an indication of a heart rate value, and wherein the arrhythmia is atrial fibrillation.

**16**. The smartwatch or wristlet according to claim **12**, wherein indicating to the user further comprises: instructing the user to record an ECG using the ECG sensor.

**17**. The smartwatch or wristlet according to claim **12**, wherein the arrhythmia is selected from a group consisting of atrial fibrillation, supraventricular tachycardia, and ventricular tachycardia.

**18**. The smartwatch according to claim **12**, wherein the heart rate parameter is a PPG signal.

**19**. The smartwatch according to claim **18**, wherein the heart rate parameter is a heartrate variability ("HRV") value, wherein the HRV value is derived from the PPG signal.

**20**. The smartwatch according to claim **18**, wherein the heart rate parameter is a heartrate, wherein the heartrate is derived from the PPG signal.

**21**. The smartwatch according to claim **12**, the processor further to: display an ECG rhythm strip from the electric signals.

**22**. The smartwatch according to claim **12**, wherein the PPG sensor is located on a back of the smartwatch.

**23**. The smartwatch according to claim **12**, wherein the first electrode is located on the smartwatch where the first electrode contacts a first side of the user's body while the user wears the smartwatch, and the second electrode is located on the smartwatch where the user must actively contact the second electrode with a second side of the user's body opposite from the first side.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO.        : 10,638,941 B2                                     Page 1 of 1
APPLICATION NO.  : 16/158112
DATED              : May 5, 2020
INVENTOR(S)      : David E. Albert et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Under item (72), please add the inventors as shown below:

(72) Inventors: Fei WANG, San Francisco, CA (US)
           Euan THOMSON, Los Gatos, CA (US)
           Iman ABUZEID, San Francisco, CA (US)

Signed and Sealed this
Thirteenth Day of April, 2021

Drew Hirshfeld
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

# EXHIBIT 21

US00D883279S

(12) **United States Design Patent**       (10) Patent No.:      **US D883,279 S**
Akana et al.                               (45) Date of Patent:   **       ** May 5, 2020

(54) **ELECTRONIC DEVICE**

(71) Applicant: **Apple Inc.**, Cupertino, CA (US)

(72) Inventors: **Jody Akana**, San Francisco, CA (US); **Molly Anderson**, San Francisco, CA (US); **Bartley K. Andre**, Palo Alto, CA (US); **Shota Aoyagi**, San Francisco, CA (US); **Anthony Michael Ashcroft**, San Francisco, CA (US); **Marine C. Bataille**, San Francisco, CA (US); **Jeremy Bataillou**, San Francisco, CA (US); **Markus Diebel**, San Francisco, CA (US); **M. Evans Hankey**, San Francisco, CA (US); **Julian Hoenig**, San Francisco, CA (US); **Richard P. Howarth**, San Francisco, CA (US); **Jonathan P. Ive**, San Francisco, CA (US); **Julian Jaede**, San Francisco, CA (US); **Duncan Robert Kerr**, San Francisco, CA (US); **Peter Russell-Clarke**, San Francisco, CA (US); **Benjamin Andrew Shaffer**, San Jose, CA (US); **Mikael Silvano**, San Francisco, CA (US); **Sung-Ho Tan**, San Francisco, CA (US); **Clement Tissandier**, San Francisco, CA (US); **Eugene Antony Whang**, San Francisco, CA (US); **Rico Zörkendörfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **15 Years**

(21) Appl. No.: 29/684,822

(22) Filed: **Mar. 25, 2019**

**Related U.S. Application Data**

(63) Continuation of application No. 29/654,754, filed on Jun. 27, 2018.

(51) **LOC (12) Cl.** ............................................. **14-02**

(52) **U.S. Cl.**
USPC ........................................................ **D14/344**

(58) **Field of Classification Search**
USPC ... D14/138 R, 144, 341, 344, 358, 388, 218, D14/485–495; D10/30–39, 70, 98; D11/3, 4, 26, 93–94, 78.1, 79, 86; D24/167, 169, 186–187, 164
CPC ...... A41D 1/002; A41D 19/0034; G06F 1/04; G06F 1/08; G06F 1/10; G06F 1/14; G06F 1/1626; G06F 1/1628; G06F 1/163; G06F 1/1635; G06F 1/3203; G06Q 20/10; G06Q 20/12; G06Q 20/108; G06Q 20/145; H04B 1/3833; H04B 1/385; H04B 1/3888; H04M 1/02; H04M 1/03; H04M 1/04; H04M 1/05; H04M 1/667; H04M 1/6058; Y02B 60/1217
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,640,065 | A | 2/1972 | Lederrey et al. |
| D287,471 | S | 12/1986 | Sato et al. |
| 5,386,933 | A | 2/1995 | Greene et al. |
| D394,815 | S * | 6/1998 | Jorss ............................ D10/33 |
| D439,172 | S | 3/2001 | Brzezinski |
| 6,655,831 | B1 | 12/2003 | Ruffieux |
| D496,589 | S | 9/2004 | Perrenoud |
| 6,970,157 | B2 | 11/2005 | Siddeeq |
| D513,195 | S | 12/2005 | Gruosi |
| 7,004,469 | B2 | 2/2006 | Von Goeben |
| D528,439 | S | 9/2006 | Burton |
| D528,928 | S | 9/2006 | Burton |
| 7,106,197 | B2 | 9/2006 | Gaiotto et al. |
| D558,227 | S | 12/2007 | Cho et al. |
| D572,266 | S | 7/2008 | Anderson et al. |
| D574,735 | S | 8/2008 | Landman et al. |
| D578,922 | S | 10/2008 | Hoshino |
| D584,170 | S | 1/2009 | Morrison |
| D586,823 | S | 2/2009 | Anderson et al. |
| D589,375 | S | 3/2009 | Tang |
| D596,610 | S | 7/2009 | Hou |
| D616,417 | S | 5/2010 | Liao |
| 7,708,457 | B2 | 5/2010 | Girardin et al. |
| D637,094 | S | 5/2011 | Cobbett et al. |
| D637,918 | S | 5/2011 | Cobbett et al. |
| D649,069 | S * | 11/2011 | Galli ............................ D10/30 |
| D650,706 | S | 12/2011 | Zanella et al. |



**US D883,279 S**

Page 2

<table>
<tr><td>D666,503 S</td><td></td><td>9/2012</td><td>Bulgari</td><td></td></tr>
<tr><td>D672,256 S</td><td>*</td><td>12/2012</td><td>Behar</td><td>D10/39</td></tr>
<tr><td>D681,483 S</td><td></td><td>5/2013</td><td>Biegert et al.</td><td></td></tr>
<tr><td>D699,701 S</td><td></td><td>2/2014</td><td>Kim</td><td></td></tr>
<tr><td>8,996,064 B2</td><td>*</td><td>3/2015</td><td>Heil-Brice</td><td>H04M 1/15<br>455/515</td></tr>
<tr><td>D728,624 S</td><td></td><td>5/2015</td><td>Akana et al.</td><td></td></tr>
<tr><td>9,065,921 B2</td><td>*</td><td>6/2015</td><td>Merenda</td><td>B65H 75/48</td></tr>
<tr><td>D741,726 S</td><td></td><td>10/2015</td><td>Akana et al.</td><td></td></tr>
<tr><td>D769,869 S</td><td></td><td>10/2016</td><td>Zhou et al.</td><td></td></tr>
<tr><td>D789,545 S</td><td>*</td><td>6/2017</td><td>Pippel</td><td>D24/186</td></tr>
<tr><td>D816,667 S</td><td>*</td><td>5/2018</td><td>Hardi</td><td>D14/344</td></tr>
<tr><td>10,120,109 B2</td><td>*</td><td>11/2018</td><td>Ni</td><td>G02B 5/001</td></tr>
<tr><td>D835,521 S</td><td>*</td><td>12/2018</td><td>Berthier</td><td>D10/32</td></tr>
<tr><td>D847,664 S</td><td>*</td><td>5/2019</td><td>Mutsch</td><td>D10/39</td></tr>
<tr><td>10,396,252 B2</td><td>*</td><td>8/2019</td><td>Lee</td><td>H01L 25/0753</td></tr>
<tr><td>D861,020 S</td><td>*</td><td>9/2019</td><td>Chaudhri</td><td>D14/486</td></tr>
<tr><td>D863,295 S</td><td>*</td><td>10/2019</td><td>Hardi</td><td>D14/344</td></tr>
<tr><td>D865,760 S</td><td>*</td><td>11/2019</td><td>Beristain</td><td>D14/344</td></tr>
<tr><td>10,474,192 B2</td><td>*</td><td>11/2019</td><td>Song</td><td>H01R 13/6273</td></tr>
<tr><td>D870,103 S</td><td>*</td><td>12/2019</td><td>Akana</td><td>D14/341</td></tr>
<tr><td>2010/0061191 A1</td><td></td><td>3/2010</td><td>Chen</td><td></td></tr>
<tr><td>2015/0296903 A1</td><td>*</td><td>10/2015</td><td>Byun</td><td>A45F 5/02<br>224/191</td></tr>
<tr><td>2017/0046451 A1</td><td>*</td><td>2/2017</td><td>Akana</td><td>G06F 17/50</td></tr>
</table>

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 10229050 C1 | 6/2003 |
| EP | 1098231 A1 | 5/2001 |
| WO | WO-DM/066491-004 | 3/2005 |
| WO | WO-DM072215 | 9/2009 |
| WO | WO-DM/077452-004 | 6/2011 |
| WO | WO-2014135709 A2 | 9/2014 |

### OTHER PUBLICATIONS

Apple Watch Series 5, Apple's latest Apple Watch, with always-on display and built-in compass, posted Dec. 19, 2019, [retrieved Dec. 19, 2019]. Retrieved from Internet, <URL: https://www.macrumors.com/roundup/apple-watch/ >.*

Apple Watch Series 5 Release Date, Specs: Glucose Sensor Is One of the New Health Features?, posted Feb. 22, 2019, [retrieved Dec. 19, 2019]. Retrieved from Internet, <URL: https://www.econotimes.com/Apple-Watch-Series-5-Release-Date-Specs-Glucose-Sensor-Is-One-of-the-New-Health-Features-1501562 >.*

Concept: an Apple Watch Series 5 neither round nor square, deep black or 18 carat gold, posted May 30, 2019, [retrieved Dec. 19, 2019]. Retrieved from Internet, <URL: https://www.mac4ever.com/actu/143936_concept-une-apple-watch-series-5-ni-ronde-ni-carree-noir-profond-ou-or-18-carats >.*

Alvarez, Edgar, "Basis Peak to get its smartwatch-like features in December," engadget.com,< http://www.engadget.com/2014/11/20/basis-peak-new-features/>, dated Nov. 20, 2014, accessed Dec. 15, 2014.

Cool Material, "Braun Square Digital Watch,"< http://web.archive.org/web/20111125033014/http://coolmaterial.com/style/braun-square-digital-watch/>, dated Nov. 25, 2011, accessed Dec. 18, 2014.

Emily, "Nixon—The Newton Digital,"< http://www.freshnessmag.com/2009/09/08/nixon-the-newton-digital/>, freshnessmag.com dated Sep. 8, 2009, accessed Oct. 9, 2014.

Fitbit, "Fitbit Surge™ Fitness Super Watch"< https://www.fitbit.com/surge>, accessed Dec. 15, 2014.

geekbuying.com, "Makibes unisex red led digital wrist watch with square case silicone watchband—white,"< http://www.geekbuying.com/item/Unisex-Red-LED-Digital-Wrist-Watch-with-Square-Case-Silicone-Watchband---White-326443.html>, accessed Oct. 9, 2014.

Hodinkee.com, "Apple iPod Nano Now Available With Mickey Mouse Dial, Also Cheesy, Mechanically Inaccurate Open-Worked Dial,"< http://web.archive.org/web/20111006043916/http://www.hodinkee.com/blog/2011/10/5/apple-ipod-nano-now-available-with-mickey-mouse-dial-also-ch.html>, dated Oct. 6, 2011, accessed Dec. 18, 2014.

Homego, "M6 Silver Smart Watch Cell Phone 1.54 inch Bluetooth 3.0 Dialer Outdoor Sports Pedometer," amazon.com,< http://www.amazon.com/Silver-Bluetooth-Dialer-Outdoor- Pedometer/dp/B00MQTBGK6>, accessed Dec. 15, 2014.

Ikepod, "Original Ikepod Watch With GMT—Marc Newson Design," Watchbox.be,< http://www.watchbox.be/prod/Others-Watches/Marc%20Newson%20Design/item7165.htm#.VJI.m2fAo5D8>, accessed Dec. 17, 2014.

LG Life's Good, "LG G Watch (W100),"< http://www.lg.com/us/smart-watches/lg-W100-g-watch>, accessed Dec. 18, 2014.

Metawatch, "Frame—Black (MW3005),"< http://meta.watch/collections/smartwatch-all/products/frame-ss-black-leather>, accessed Dec. 15, 2014.

Omate, "Omate TrueSmart: Water-resistant standalone Smartwatch 2.0,"< http://www.kickstarter.com/projects/omate/omate-truesmart-water-resistant-standalone-smartwa>, dated Aug. 21, 2013, accessed Oct. 8, 2014.

Omate, "The TrueSmart™ is the world's first standalone smartwatch 2.0 running on top of Android and OUI 2.0,"< http://www.omate.com/product.html>, accessed Dec. 15, 2014.

Pebble, "Pebble Smartwatch," getpebble.com,< https://getpebble.com/checkout>, accessed Dec. 15, 2014.

Samsung, "Samsung Gear™ 2 Charcoal Black SM-R3800VSAXAR," < http://www.samsung.com/us/mobile/wearable-tech/SM-R3800VSAXAR>, accessed Dec. 15, 2014.

Samsung, "Samsung Gear S™, (Sprint), Black SM-R750PZKASPR," < http://www.samsung.com/us/mobile/wearable-tech/SM-R750PZKASPR>, accessed Dec. 15, 2014.

Samsung, "Galaxy Gear™ Live, Black SM-R3820ZKAXAR," < http://www.samsung.com/us/mobile/wearable-tech/SM-R3820ZKAXAR>, accessed Dec. 15, 2014.

Sony, "SmartWatch 3 SWR50,"< http://www.sonymobile.com/us/products/smartwear/smartwatch-3-swr50/>, accessed Dec. 15, 2014.

Sony, "SmartWatch,"< http://www.sonymobile.com/us/products/accessories/smartwatch/>, accessed Dec. 15, 2014.

Stables, James, "Clevercare smartwatch aims to help Alzheimer's suffers and carers: Revamped Sony SmartWatch 2 designed for users that need care," Wearable News,< http://www.wareable.com/wearable-tech/clevercare-smartwatch-aims-to-help-alzheimers-suffers-and-carers-585>, dated Dec. 15, 2014.

Team Luxe, "Collector's Edition: Hermes Carre H Watch," Luxpresso, < http://luxpresso.com/news-couture/collectors-edition-hermes-carre-h-watch/2814>, dated Jan. 10, 2011, accessed Dec. 18, 2014.

Ted Baker, "Ted Baker Men's TE1054 Time Flies Contemporary Square Digital Case Watch,"< http://www.amazon.com/Ted-Baker-TE1054-Contemporary-Digital/dp/B0045CRTYO%3FSubscriptionId%3DAKIAJ3U4YRIBWCGGKZ2A%26tag%3Dfrases365-20%26linkCode%3Dsp1%26camp%3D2025%26creative%3D165953%26creativeASIN%3DB0045CRTYO>, accessed Oct. 9, 2014.

Velazco, Chris, "ASUS ZenWatch review: subtle and stylish, with a few shortcomings," Engadget.com,< http://www.engadget.com/2014/12/11/asus-zenwatch-review/>, dated Dec. 11, 2014, accessed Dec. 15, 2014.

Watches Infoniac.com, "Hermes Carre H Watch—Extremely Contemporary Design,"< http://watches.infoniac.com/carre-h-watch-hermes.html>, dated Aug. 13, 2010, accessed Dec. 18, 2014.

Watchismo, "Braun BN0042 Black Date Leather,"< http://web.archive.org/web/20130815073830/http://www.watchismo.com/braun-bn0042bkbk.aspx>, dated Aug. 15, 2013, accessed Dec. 18, 2014.

* cited by examiner

*Primary Examiner* — Karen E Kearney
*Assistant Examiner* — Kristin E Reed
(74) *Attorney, Agent, or Firm* — Sterne, Kessler, Goldstein & Fox P.L.L.C.

### (57)      CLAIM

The ornamental design for an electronic device, as shown and described.

### DESCRIPTION

FIG. **1** is a bottom front perspective view of an electronic device showing the claimed design;

FIG. **2** is a bottom rear perspective view thereof;
FIG. **3** is a front view thereof;
FIG. **4** is a rear view thereof;
FIG. **5** is a left side view thereof;
FIG. **6** is a right side view thereof;
FIG. **7** is a top view thereof;
FIG. **8** is a bottom view thereof; and,
FIG. **9** is a bottom front perspective reference view thereof showing the electronic device in an environment in which it may be used.
The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design.

**1 Claim, 7 Drawing Sheets**



*FIG. 1*



*FIG. 2*



*FIG. 3*

**U.S. Patent**     May 5, 2020     Sheet 4 of 7     **US D883,279 S**



*FIG. 4*




*FIG. 5*



*FIG. 6*



*FIG. 7*



*FIG. 8*



**FIG. 9**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APPLE INC,

                      Plaintiff,

           v.

MASIMO CORPORATION and SOUND
UNITED, LLC,

                  Defendants.

Civil Action No. 22-1377 (MN-JLH)

APPLE INC,

                      Plaintiff,

           v.

MASIMO CORPORATION and SOUND
UNITED, LLC,

                  Defendants.

Civil Action No. 22-1378 (MN-JLH)

## [PROPOSED] ORDER

At Wilmington, this _____ day of _____, 2023, having considered the parties' Joint Motion for Teleconference to Resolve Discovery Disputes (D.I. 140, C.A. No. 22-1377; D.I. 134, C.A. No. 22-1378) and the papers submitted in connection therewith;

IT IS HEREBY ORDERED that Defendants' Motion is GRANTED:  Plaintiff Apple, Inc. ("Apple") (1) shall produce documents in response to Masimo's RFP Nos. 10, 15-17, 24, 42-47, and 49; (2) shall respond to Masimo's Interrogatory No. 4; and (3) must search for and produce responsive files and metadata from the Apple Radar system.

_____

The Honorable Jennifer L. Hall
United States Magistrate Judge