# EXHIBIT 5

```
             IN THE UNITED STATES DISTRICT COURT

            IN AND FOR THE DISTRICT OF DELAWARE


APPLE INC.,                     )
                                )
-------------------Plaintiff,   )
                                )Case No.
        vs.                     )22-CV-1377-MN-
                                )JLH
                                )
MASIMO CORP, et al.,            )22-CV-1378-MN-
                                )JLH
                                )
------------------Defendants.   )

              TRANSCRIPT OF MOTION HEARING


       MOTION HEARING had before the Honorable

Jennifer L. Hall, U.S.M.J., in Courtroom 2B on

the 15th of June, 2023.



                      APPEARANCES

     POTTER ANDERSON & CORROON LLP
           BY:  DAVID MOORE, ESQ.
                BINDU PALAPURA, ESQ.

                      -and-

     DESMARAIS LLP
           BY:  KERRI-ANN LIMBECK, ESQ.
                JORDAN MALZ, ESQ.
                JAMIE KRINGSTEIN, ESQ.

                      -and-

     WILMERHALE
           BY:  JENNIFER MILICI, ESQ.
                MARK FORD, ESQ.

                              Counsel for Plaintiff
```

```
 1           (Appearances continued.)

 2
             PHILLIPS MCLAUGHLIN & HALL P.A.
 3                BY:  JOHN PHILLIPS, ESQ.

 4                       -and-

 5           KNOBBE MARTENS
                  BY:  ADAM POWELL, ESQ.
 6                     STEVE LARSON, EQ.
                       BRIAN HORNE, ESQ.
 7
                                 Counsel for Defendants
 8
```

1    THE COURT:  So we're here today to
2    hear motions in two cases.  One is *Apple versus
3    Masimo and Sound United*, and that's
4    22-CV-1377-JLH.  And the other is also *Apple
5    versus Masimo and Sound United.*  That's
6    22-1378.
7         Let's have appearances starting with
8    Plaintiff.
9             MR. MOORE:  Good morning, Your Honor.
10   David Moore from Potter Anderson on behalf of
11   Apple.  I'm joined by my partner Bindu
12   Palapura.  We're joined by our co-counsel from
13   Desmarais Kerri-Ann Limbeck, Jordan Malz, and
14   Jamie Kringstein.  And from WilmerHale we're
15   joined by Jannifer Milici and Mark Ford.  And
16   from Apple, Natalie Poe and Megan
17   Thomas-Kennedy.
18            THE COURT:  Hello.  Good morning,
19   everyone.
20            MR. PHILLIPS:  Good morning, Your
21   Honor.  Jack Phillips of Phillips, McLaughlin,
22   and Hall.  With me in the courtroom are Steve
23   Larson, Brian Horne, and Adam Powell from
24   Knobbe Martens.
25            THE COURT:  Good morning, everyone.

1      claims about unilateral refusals to deal would
2      be -- would have to go to discovery and would
3      be the subject of litigation and *Trinko* and
4      other case law explains why that shouldn't be.
5      This is unilateral conduct we're talking about,
6      and as you recognize in *Simon* and other cases,
7      there's a chilling effect if we allow claims
8      that don't have a plausible antitrust theory to
9      go forward because they happen to be thrown it.
10     And it encourages plaintiffs to throw in
11     everything they think of no matter how
12     plausible so that they can impose incredible
13     discovery allegations on the defendant.
14              THE COURT:  Understood.  And again,
15     I'm thinking out loud here.  I think what's
16     challenging for the Court in this particular
17     case given these particular parties and their
18     history of litigation against each other,
19     arguments about burdens of discovery are maybe
20     taken with a degree of skepticism, and I
21     don't -- but I get it.  I get what you're
22     saying.
23              MS. MILICI:  If I could just respond
24     to that point because I think we've been
25     engaging in discovery.  They served discovery

1   requests.  Some of the requests are asking for
2   things like, basically, every app store review
3   that Apple has ever done based on the thinnest
4   of allegations.  That hasn't been the subject
5   of discovery in any litigation between the
6   parties.  That's brand new litigation, brand
7   new discovery and not suggested by any of the
8   allegations in the complaint.
9          I will also say that counsel got up here
10  and talked about this supposed theory they
11  steal trade secrets.  That's being litigated in
12  the Central District of California.  That
13  cannot be relitigated here.  The Central
14  District of California case, when it has a
15  decision, it will be res ajudicata.  It's not
16  an antitrust injury anyway, but certainly they
17  don't get a second bite of the apple.  Judgment
18  as a matter of law was granted against them in
19  some of the claims by Judge Tilghman, and
20  jurors voted six to one among them on the
21  others until a mistrial was declared.  Those
22  issues are going to be decided there.  They're
23  not antitrust issues to begin with, but they
24  certainly don't get to come here and repackage
25  then them as antitrust violations and get a

1   own invalidity contentions to then argue that
2   someone specific actually committed some sort
3   of misconduct that would rise to the heightened
4   pleading standard for inequitable conduct here.
5           THE COURT:  All right.  Thank you
6   very much.
7           If you feel like you need to respond, you
8   can because we did give them some extra time,
9   but there's no requirement.
10          MR. LARSON:  First of all, I really
11  disagree with how you characterize our
12  discovery.  We didn't serve any requests
13  remotely like that that I recall.  And as Your
14  Honor pointed out, that can be handled on
15  discovery to the extent the requests are too
16  broad.
17          Second, on particular theories of
18  antitrust, I don't think this is a good forum
19  to decide the economics of our theories because
20  Apple primarily argues bright-line rules.  We
21  argued about the bright-line rules.  We think
22  to the extent particular theories are going to
23  be addressed, they should be addressed with
24  expert testimony on the economics, if anything
25  in summary judgment, and you should look at the

|   |   |
|---|---|
| 1 | conduct as a whole, which will be developed at |
| 2 | that time. |
| 3 | And third, Apple mentioned that it |
| 4 | approved our health app, but that was after we |
| 5 | filed a lawsuit, and we mentioned and show in |
| 6 | our complaint a repeated pattern, and certainly |
| 7 | the fact the Apple eventually allowed the app |
| 8 | doesn't undo the harm at the critical moment of |
| 9 | our launch, and certainly doesn't undo the harm |
| 10 | to competition as a whole. |
| 11 | THE COURT:  Just to make sure I |
| 12 | understand, sorry, there was a delay in Apple |
| 13 | approving on the App Store, but the app is |
| 14 | approved now? |
| 15 | MR. LARSON:  The app is approved now, |
| 16 | but the only thing I would say in our complaint |
| 17 | is not just that there was a delay or they |
| 18 | refused to approve it, it's a pattern we see |
| 19 | where they're seeking confidential information |
| 20 | from it, and they use Section 9.3 of the |
| 21 | agreement that we discussed in our complaint, |
| 22 | which says they can use whatever confidential |
| 23 | information they get for whatever purpose.  And |
| 24 | you see a pattern of trying to get the |
| 25 | confidential information.  They're directly |

```
 1           competing with the Health Watch product.
 2                     THE COURT:  I understand we're going
 3           outside the pleadings now, but I'm trying to
 4           understand what's going on here.  You didn't
 5           give them the confidential information?
 6                     MR. LARSON:  We did.  We resisted
 7           giving them confidential information.
 8                     THE COURT:  They had it from the
 9           other case; right?
10                     MR. LARSON:  Depending on what
11           confidential information -- we were very
12           careful about making sure Apple itself did not
13           have it.  And like I said, this is not just us.
14           It's also Alive Core.  In that case, Alive
15           Core -- Apple was not allowed at all, so
16           there's a pattern here.  We think, certainly,
17           it's a part of the overall scheme and part of
18           the overall conduct that we think would be
19           relevant here in providing analysis of.
20                     THE COURT:  You all reminded me that
21           I've written a lot about antitrust cases, but
22           I'm still newer to this than I know a lot of
23           you are.  Because this is an attempted
24           monopolization claim, is it relevant to intent
25           even though it didn't cause any harm?
```

1          MR. LARSON:  First of all, it would
2     be relevant to intent, absolutely.  Intent is
3     also shown by conduct in antitrust cases, but
4     certainly actual intent, evidence taken during
5     discovery, the actions they engaged in to try
6     to block us would absolutely be relevant.
7          To clarify, we are also asserting
8     monopolization.  Both monopolization and
9     alternative attempt at monopolization, the
10    theory being that even if they don't have
11    market share now for us to assert that they're
12    trying to maintain or bolster the monopoly
13    power, the conduct is such that there's a
14    dangerous probability that if the scheme were
15    successful, they would attain that monopoly
16    power, that market share.
17         THE COURT:  Right.  But for the
18    Walker process, that can only be attempted.
19         MR. LARSON:  In the *Garden* case it
20    was both monopolization and attempted
21    monopolization.  And in *TransWeb*, it was
22    attempted monopolization, which may be what
23    Your Honor is thinking of.  And certainly the
24    theory the harm that will result if the scheme
25    is successful is particularly powerful in the

## **C E R T I F I C A T E**

STATE OF DELAWARE        )
                         ) ss:
COUNTY OF NEW CASTLE     )

       I, Deanna L. Warner, a Certified Shorthand Reporter, do hereby certify that as such Certified Shorthand Reporter, I was present at and reported in Stenotype shorthand the above and foregoing proceedings in Case Number 22-CV-1377-MN-JLH, *APPLE INC. Vs. MASIMO CORP, et al.*, heard on June 15, 2023.

       I further certify that a transcript of my shorthand notes was typed and that the foregoing transcript, consisting of 56 typewritten pages, is a true copy of said **MOTION HEARING**.

       **SIGNED**, **OFFICIALLY SEALED**, and **FILED** with the Clerk of the District Court, NEW CASTLE County, Delaware, this 16th day of June, 2023.

_____
Deanna L. Warner, CSR, #1687
Speedbudget Enterprises, LLC