# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

MASIMO CORPORATION
Petitioner,

v.

APPLE INC.,
Patent Owner

————————

Case IPR2023-00831
U.S. Patent D735,131

————————

**PATENT OWNER'S PRELIMINARY RESPONSE**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND .........................................................................................2

III.   LEVEL OF ORDINARY SKILL ...............................................................3

IV.    MASIMO CANNOT PREVAIL ON ANY CHALLENGED CLAIM...........3

    A.   Masimo's Proposed Claim Construction Ignores Features of the
        Claimed Design and Relies on General Design Concepts ....................3

        1.   Circular Concave Recess ...........................................................6

        2.   Compact Puck Shape ..................................................................8

        3.   Non-Orthogonal Transitional Edges..........................................9

        4.   Continuous Sidewall and Flat Bottom Face .............................10

    B.   Masimo's Proposed Construction Erroneously "Factored Out"
        Purportedly Functional Aspects of the Design...................................10

        1.   Even if Particular Features are Associated with a Functional
            Purpose, They Contribute to the Overall Appearance of the
            Design and Cannot be "Factored Out" .....................................11

        2.   Masimo's Focus on Functionalities of the Commercial
            Embodiment of the '131 Patent Constitutes Legal Error .........13

        3.   A Multitude of Alternative Designs Highlight the Ornamental
            Contributions of Features of the Claimed Design ....................15

    C.   Ground 1: Masimo Fails to Demonstrate that the Claimed Design is
        Obvious in View of Lee-616 Alone ....................................................20

        1.   Lee-616 is Not a Proper *Rosen* Reference ...............................21

        2.   Masimo's Proposed Series of Modifications Beyond the Design
            Depicted in Lee-616 are Improper.............................................38

D.    Ground 2: Masimo Fails to Demonstrate that the Claimed Design is Obvious in view of Lee-616 in Combination with Chiang ................42

    1.    Lee-616 is Not a Proper *Rosen* Reference ................................42

    2.    Masimo Fails to Demonstrate that it Would Have Been Obvious to a DOSA to Modify Lee-616 in view of Chiang to Create the Claimed Design ........................................................................42

    3.    Chiang is Nonanalogous art and Does Not Qualify as Invalidating Prior Art Against the '131 Patent ........................47

E.    Ground 3: Masimo Fails to Demonstrate that the Claimed Design is Obvious in View of CN-470 Alone ....................................................48

    1.    CN-470 is Not a Proper *Rosen* Reference ................................49

    2.    Masimo's Proposed Series of Modifications Beyond the Design Depicted in CN-470 are Improper ...............................................59

F.    Ground 4: Masimo Fails to Demonstrate that the Claimed Design is Obvious in view of CN-470 in Combination With Chiang ...............60

    1.    CN-470 is Not a Proper *Rosen* Reference ................................60

    2.    Masimo Fails to Demonstrate that it Would Have Been Obvious to a DOSA to Modify CN-470 in view of Chiang to Create the Claimed Design ........................................................................61

    3.    Chiang is Nonanalogous art and Does Not Qualify as Invalidating Prior Art Against the '131 Patent ........................64

G.    Ground 5: Masimo Fails to Demonstrate that the Claimed Design is Obvious in View of Murray Alone ....................................................65

    1.    Murray is Not a Proper *Rosen* Reference ................................65

    2.    Masimo's Proposed Series of Modifications Beyond the Design Depicted in Murray are Improper ...............................................74

H.    Ground 6: Masimo Fails to Demonstrate that the Claimed Design is Obvious in view of Murray in Combination with Chiang ................77

1.      Murray is Not a Proper *Rosen* Reference ................................77

2.      Masimo Fails to Demonstrate that it Would Have Been Obvious
        to a DOSA to Modify Murray in view of Chiang to Create the
        Claimed Design.........................................................................77

3.      Chiang is Nonanalogous art and Does Not Qualify as
        Invalidating Prior Art Against the '131 Patent........................80

I.      Ground 7: Masimo Fails to Demonstrate that the Claimed Design is
        Obvious in view of Chiang Alone......................................................80

1.      Chiang is Nonanalogous art and Does Not Qualify as
        Invalidating Prior Art Against the '131 Patent........................81

2.      Chiang is Not a Proper *Rosen* Reference..................................81

3.      Masimo's Proposed Series of Modifications Beyond the Design
        Depicted in Chiang are Improper................................................85

4.      Masimo Fails to Demonstrate that Modified Chiang Creates the
        Same Overall Visual Appearance as the Claimed Design........86

V.      CONCLUSION.................................................................................87

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

## LIST OF EXHIBITS

| Exhibit Number | Description |
|---|---|
| 2001 | Declaration of Prof. Lance Gordon Rake |
| 2002 | Vivomove® HR Owner's Manual, https://www8.garmin.com/manuals/webhelp/vivomovehr/EN-US/GUID-27288C32-004F-44AE-A536-1CB90005ADE4.html |
| 2003 | Power Sports Watch, *Quick Start Manual*, https://fccid.io/2AKPH-P1/User-Manual/user-manual-4128157.pdf |

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

## I.    INTRODUCTION

Masimo's Petition challenging U.S. Patent No. D735,131 ("the '131 Patent")

is deficient in multiple ways.  The Petition fails to identify any reference with an

appearance "basically the same" as the claimed design's compact puck shape

(blue), which has two major faces that are different—a top face with a circular

concave recess (green), and a bottom face having a flat plane, and that evokes an

elegant nest or cradle appearance.



*EX1001, Fig. 1 (top, annotated)*

None of Grounds 1-7 include a proper primary reference.  Lee-616, CN-470,

Murray, and Chiang each lack the '131 design patent's distinctive circular concave

recess formed on the top major surface of the charger, and its compact puck shape.

These prominent features, and resulting overall appearance, are simply not present

in any of the applied references.  Accordingly, none of these references have an appearance that is "basically the same" as the claimed design.



| Lee-616 (EX1006, 1 (rotated)) | CN-470 (EX1007, FIG. 4) | Murray (EX1008, FIG. 1) | Chiang (EX1009, FIG. 3) |

Furthermore, Masimo's claim construction fails to accurately portray the actual claimed design, and improperly "factors out" multiple ornamental features significant to the design's cohesive overall appearance.  For at least the reasons explained below, Masimo fails to demonstrate a reasonable likelihood that the design claim is unpatentable.  Accordingly, the Petition should be denied.

## II.    BACKGROUND

Apple is known as an innovator in consumer products and a leader in industrial design.  Each Apple product is meticulously created to be appealing and sleek, with numerous iterations to perfect the design of each product and to incorporate specific aesthetic themes.

The Apple Watch Charger is no exception.  It has been a best-seller and consumer favorite in part due to its innovative, stylish, and distinctive style.  The design claimed in the '131 Patent is the result of tremendous design efforts to

produce a charger for a consumer-wearable product incorporating signature Apple design qualities such as elegant and simple designs that echo themes in other Apple products.  As discussed below, the claimed design would not have been obvious to a Designer of Ordinary Skill ("DOSA").

## III.   LEVEL OF ORDINARY SKILL

A DOSA would have a degree in Industrial Design or Mechanical Engineering, and at least two years of professional experience creating Industrial Designs of consumer products. EX2001, ¶19.

## IV.   MASIMO CANNOT PREVAIL ON ANY CHALLENGED CLAIM

### A.   Masimo's Proposed Claim Construction Ignores Features of the Claimed Design and Relies on General Design Concepts

Masimo largely ignores prominent observable features in its claim construction. *See* Pet., 12.  For example, Masimo describes the '131 Patent's design as "a charger having (1) a cylindrical shape with a flat bottom surface (gray); (2) a short, flat ring [] on the cylinder's top surface that is smaller in diameter than the cylindrical charger; and (3) a recessed center portion [] that is surrounded by the top surface's ring." *Id.*  But this construction ignores the prominent features of the claimed design—the **circular *concave* recess** and the **compact puck shape** having proportions that have substantially the same width to height ratio as shown in the figures—and other notable features, such as its non-orthogonal transitions and the

continuous claimed bottom surface and sidewall.  Each of these features contribute to the claimed design's unique and overall visual appearance, and each are significant to the ordinary designer.  EX2001, ¶31.

Masimo's proposed claim construction is deficient because it fails to address prominent features of the claimed design and, critically, the contributions of those features to the overall appearance.  *See Skechers U.S.A., Inc. v. Nike, Inc.*, IPR 2017-00617, Paper 13 at 7-8 (PTAB July 6, 2017).  Although detailed written claim constructions are not necessary, when verbal descriptions are offered, they must be accurate in identifying readily observable features of the claimed design that impact its overall appearance.  *See Egyptian Goddess v. Swisa, Inc*., 543 F.3d 665, 680 (Fed. Cir. 2008); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010); *Deckers Outdoor Corp. v. Rue Servs. Corp.*, 2014 WL 12588481, at *3 (C.D. Cal. Aug. 29, 2014); *see also Skechers*, IPR2017-00617, Paper 13 at 8; *Vitro Packaging, LLC v. SaverGlass, Inc.,* IPR2015-00947, Paper 13 at 5 (PTAB Sept. 29, 2015).

The '131 Patent claims a unique, elegant design for a "Charger" that has an overall appearance of a compact puck shape having a top face with a circular concave recess that evokes an elegant nest or cradle appearance.  EX2001, ¶¶20-24; EX1001, Figs. 1-11.  As illustrated below, the claimed design includes an overall cylindrical shape, with a circular shape that is visible in plan and bottom views (blue).  EX1001, FIGS. 1, 2, 7.  A top major face is dominated by a prominent

circular concave recess (green) that is inset relative to a flat ring (blue). *Id.* As shown, the compact puck shape has a distinctive ratio of width (e.g., diameter) to height. The claimed design includes non-orthogonal transitions (e.g., curved or beveled edges) between the major faces and the sidewall (blue). *Id.* Both the claimed sidewall and bottom major face of the design patent are continuous and lack features such as a protrusions, breaks, openings, or recesses. Each of these aspects are readily observable features that contribute to the overall appearance of the claimed design. EX2001, ¶22.



*EX2001, ¶¶20-24 (EX1001, Figs. 1, 2, and 7 (annotated)).*

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### 1.   Circular Concave Recess

In Figures 1 and 3 (reproduced below), the claimed design includes a top major face dominated by a concentric center portion having a circular concave recess (green) that is disposed interior to the surrounding ring.  EX2001, ¶23.  As explained by Prof. Lance Rake[1], the circular concave recess is ornamental, and is one of the prominent features of the charger's overall visual appearance.  *Id*. Notably, the claimed design shows that the contour lines of the circular concave recess are spaced apart from the inner wall of the ring (best illustrated in FIG. 3); thus, conveying that concavity is in the center portion rather than the ring.  *Id*.

---

[1] Prof. Rake, a Professor of Design in the School of Architecture & Design at the University of Kansas, is qualified to be a DOSA for the '131 Patent.  EX2001, ¶¶1-18.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶23 (EX1001, Figs. 1 (left), 3 (right)).*

Figures 10 and 11 show the shape of a curved bottom surface of an environmental device.  Figure 10 shows the environmental device positioned above the charger, and Figure 11 shows the environmental device positioned on the charger.  Thus, viewing Figures 10 and 11 together with Figure 3, one of ordinary skill in the art would have understood that the contour lines of the central portion of the charger's top major face depicts a circular concave recess that accommodates the contour of the curved surface of the environmental device.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶24 (EX1001, FIGS. 3, 10, 11 (annotated)).*

———

### 2.    Compact Puck Shape

The overall body shape of the claimed design (blue) resembles a compact puck.  EX2001, ¶25.  Proportions that are substantially the same ratio of width to height, as shown in the figures of the claimed design, evoke an overall appearance of a compact puck shape.  As explained by Prof. Rake, the width-to-height ratio is a prominent ornamental feature of the charger's overall visual appearance.  EX2001, ¶¶25, 28.

8



*FIG. 7*

*EX2001, ¶25 (EX1001, Fig. 7 (annotated)).*

### 3.  **Non-Orthogonal Transitional Edges**

An overall cylindrical shape, with a circular shape viewed from above and below, with non-orthogonal transitional edges (e.g., beveled or curved edges) between the sidewall and the top and bottom faces, contributes to the charger's overall compact puck appearance.  EX2001, ¶26.



*EX2001, ¶26 (EX1001, Figs. 1, 2 and 6 (annotated)).*

9

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### 4.    **Continuous Sidewall and Flat Bottom Face**

Generally featureless flat bottom surface and sidewall, *i.e.*, the claimed surfaces are shown as continuous, unbroken, and uninterrupted by features that distract from the continuity of the design, also contribute to the charger's overall compact puck appearance.  EX2001, ¶¶27-29.



*EX2001, ¶27 (EX1001, FIGS. 1, 2, and 6 (annotated)).*

### B.    **Masimo's Proposed Construction Erroneously "Factored Out" Purportedly Functional Aspects of the Design**

Masimo erroneously relies on a construction that improperly "factored out" meaningful aspects of the design.  *See* Pet., 14-30.  Even if particular aspects of the

10

design are associated with a functional purpose, they have ornamental contributions that cannot be excluded from the claimed design.  Masimo's proposal is based on legal error.  Additionally, Masimo improperly imports purported functionality from a commercial embodiment, ignoring that such functionality is not required or mentioned by the '131 Patent, and ignoring the numerous alternative designs that can achieve a charging functionality.  *See* Pet., 13-14, 15-18, 23-24.

### 1.     Even if Particular Features are Associated with a Functional Purpose, They Contribute to the Overall Appearance of the Design and Cannot be "Factored Out"

As the Federal Circuit explained in *Sport Dimension*, "[w]hile we agreed that certain elements of the device were functional, their functionality did not preclude those elements from having protectable ornamentation."  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose").  Masimo's "construction in this case conflicts with that principle of design patent claim construction because it eliminates whole aspects of the claimed design."  *Sport Dimension*, 820 F.3d 1316, 1321 (Fed. Cir. 2016); Pet., 41 ("should be disregarded"); 46 ("should be disregarded"); 60 ("should be disregarded"); 65 ("should be disregarded"); 76; 81; 95.  Even if particular aspects of the claimed

design can have a functional purpose (which Masimo fails to demonstrate), they are still significant to the overall ornamental appearance of the '131 Patent. Masimo's assertions that multiple features should be "factored out" is based on legal error and must be rejected. *See* Pet., 14-30.

The Petition conspicuously omits discussion of *Sport Dimension* and subsequent decisions highlighting that "in no case did [the Federal Circuit] entirely eliminate a structural element from the claimed ornamental design," even if the ornamental element also served a functional purpose. *Sport Dimension*, 820 F.3d at 1321. Masimo engages in the same prohibited practice as the *Ethicon* District Court, relying on a construction that "factored out" features from the claimed design. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 796 F.3d 1312, 1328 (Fed. Cir. 2015) (reversing district court that "found that because each of the designs of the trigger, torque knob, and button must be 'factored out' under *Richardson v. Stanley Works,* . . . the Design Patents had no scope."). It would be reversible error for the Board to do the same.

"[T]he claim construction in *Richardson* did not exclude those components in their entirety. Rather, the claim construction included the ornamental aspects of those components," and "[a]s such, the language 'dictated by their functional purpose' in *Richardson* was only a description of the facts there; it did not establish a rule to eliminate entire elements from the claim scope." *Apple Inc. v. Samsung*

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

*Elecs. Co*., 786 F.3d 983, 998 (Fed. Cir. 2015).  Masimo's legal error taints the entirety of its analysis, providing a reason that its construction is unsupportable.

Masimo's claim construction is premised on a further legal error by asking the Board to consider each aspect of the claimed design separately.  Contrary to Masimo's assertions that particular aspects be "factored out," the Federal Circuit has repeatedly explained that "design patents protect the ***overall*** ornamentation of a design, not an aggregation of separable elements."  *Sport Dimension*, 820 F.3d at 1322.  The features depicted by the '131 Patent's claimed design must be considered together in view of the overall appearance achieved by the claimed features—notably here, including a puck body shape with a top major face having a shallow circular concave recess that forms an image reminiscent of a nest or cradle.  EX2001, ¶¶30-32.  By "factoring out" structural elements from the claim, Masimo "improperly converted the claim scope of the design patent from one that covers the overall ornamentation to one that covers individual elements."  *Sport Dimension*, 820 F.3d at 1322.  This is improper.

### 2. Masimo's Focus on Functionalities of the Commercial Embodiment of the '131 Patent Constitutes Legal Error

Masimo's functionality discussion is based on yet another independent error. Masimo's attempt to "factor out" aspects of the design is premised on purported functionality that is not required, or even mentioned, by the '131 Patent.  Instead,

13

Masimo's functionality arguments improperly incorporate uses of an underlying commercial product into the design of the '131 Patent. Pet., 13-19.  For example, Masimo's functionality arguments are premised on the presence of inductive charging components located in the watch that "must align" with the corresponding coil of the charger for efficient wireless charging.  Pet., 20 ("for efficient wireless charging, the Watch's charging coil (orange) must align with the corresponding coil (green) of its charger"); 25 (referring to "wireless charging" of a commercial product).

But nothing in the '131 Patent tethers the claimed ornamental shapes to inductive charging components, or any other particular charging component—the '131 Patent is directed to a "charger" without any requirement of inductive charging at all.  *See Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452, 1455 (Fed. Cir. 1997) (vacating summary judgment of invalidity on functionality because district court erred in considering functional limitations of commercial embodiment rather than the claimed design).  Indeed, "the court cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent." *Id.*  Masimo's functionality arguments are premised on features extraneous to the claimed design, rather than the actual features shown and described by the '131 Patent. *See id.*  This is yet a further reason that Masimo's claim construction is erroneous and cannot be adopted.

14

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### 3.    A Multitude of Alternative Designs Highlight the Ornamental Contributions of Features of the Claimed Design

There is no dispute that "[w]hether suitable alternative designs are available is 'an important – if not dispositive – factor in evaluating the legal functionality of a claimed design.'" *Ethicon*, 796 F.3d at 1329-30; Pet., 11.  Here, multiple suitable alternative designs exist as described below that provide the same or similar charging functionality.  EX2001, ¶¶32-39.  The prominent features, such as the central concave recess and the compact puck shape, of the '131 Patent contribute to its overall appearance, and cannot be "factored out."

For example, the Vivomove HR is a smartwatch that includes a heart rate sensor and wellness features, such as stress tracking functionality.  The Vivomove HR has a convex protrusion on a back face and a charger that functions to receive and align with a surface of the smartwatch, but the charger is clip-shaped and clearly does not include a circular concave recess or a compact puck shape.  *See* EX2002, 1.



Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

*EX2002, 1 (annotated).*

In another example, the P1 Watch has a heart rate sensor for ECG and fatigue testing in addition to other fitness related features.  The P1 Watch has a strip-shaped charger that functions to receive and align with a back surface of the watch, but clearly has no circular concave recess or compact puck shape.  *See* EX2003, 1-2.



*EX2003, 1-2 (annotated).*

Indeed, as shown below, numerous alternative designs can be seen in Masimo's own submitted references, that do not include a circular concave recess and/or a compact puck shape.  *See* Pet., 27; EX2001, ¶36.  For example, the EX1028 design has a coin-shaped body and a flat major face with no concavity.

16

   

EX1028, FIG. 1       EX1029, FIG. 1       EX1034, FIG. 1       EX1026, FIG. 1

Simply put, there are alternative designs that accomplish the same or similar charging functions relied on by Masimo, while having a fundamentally different ornamental appearance.  EX2001, ¶37.  The Petition is silent as to these alternative designs.

As discussed in further detail below, references cited by the Petition itself also confirm the existence of alternative designs as to each of the features identified by Masimo as purportedly functional, and confirm the features identified by Masimo contribute to the ornamental appearance of the claimed design.  As discussed in further detail below, alternative designs were known and available as to prominent features of the '131 Patent's design that Masimo contends should be factored out.

### a)      The Circular Concave Recess is Ornamental and Contributes to the Unique Overall Appearance

The multitude of alternative designs confirms that the '131 patent's circular concave recess inset from a ring contributes ornamentally to its overall visual appearance.  EX2001, ¶¶40-43.  In addition to the above discussed references, Masimo provides additional alternative designs in references cited in its own petition.

For example, Masimo points to the '846 Patent (US Pat. No. 9,460,846) to explain that the inductive power receiver (i.e., the Apple Watch) includes a lower surface that interfaces with, aligns, or otherwise contacts an interface surface of the inductive power transmitter (e.g., the Watch's charger) that use "complementary designs for charger's top center portion and the mating surface of the Apple Watch." Pet., 22 (citing EX1024, 7:9-12; 7:14-18). The '846 patent itself, however, discloses multiple shapes and sizes of design features to achieve the stated purpose while having different appearances, including other examples in which the interface surface is "substantially **flat**," and/or use "alignment features, such as **protrusions and corresponding indentations** in the housings of the transmitter and receiver devices." *See* EX1024, 7:22-23, 7:24-39; EX2001, ¶40.

Furthermore, Masimo also refers to the '783 Patent (US Pat. No. 10,627,783), which similarly discloses multiple arrangements, shapes, and sizes of design features for interfacing and aligning inductive power transmitters and receivers. *See* EX1025; EX2001, ¶¶41-42. For example, the '783 Patent explains that a "charging device may be proximate the electronic device but **not necessarily touching or physically coupled**." *See* EX1025, 42:19-34 (emphasis added); EX2001, ¶41. One example of a charging device has an interfacing surface that is "substantially **flat**." *See* EX1025, 43:22-25 (emphasis added); EX2001, ¶41. The '783 Patent also discloses the use of "one or more additional housing features to assist with effecting

18

mutual alignment," like "such as ***protrusions and corresponding indentations***" in the charging device. *See* EX1025, 43:22-35 (emphasis added); EX2001, ¶41.

> **b)** **The Compact Puck Design is Ornamental and Contributes to the Unique Overall Appearance**

A multitude of alternative designs confirms that the '131 patent's particular appearance, including features (e.g., width-to-height ratio) that form the compact puck shape, contributes ornamentally to the overall appearance. EX2001, ¶¶44-47. In addition to the references discussed above, Masimo relies on the '783 Patent, which discloses multiple shapes and sizes of charger designs having suitable inductive functionality.  For example, the '783 Patent describes various embodiments in which "the dock [] ***may be larger*** than the device 100," the dock and mating device are "substantially the same size and shape," and "the dock 1802 and device 100 may take ***separate shapes***."  *See* EX1025, 44:15-19; EX2001, ¶44.

Ultimately, the circular concave recess and the compact puck shape of the '131 Patent are each one of many design choices that contributes ornamentally to its overall visual appearance.  EX2001, ¶45.  Masimo's theory that these features be 'factored out' as purportedly representative of electronic components that serve a function in a device must be rejected.  When properly considered against the actual

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

overall appearance of the claimed design, the prior art of Grounds 1-7 are plainly different and fail to render the design claim obvious.

### C.     Ground 1: Masimo Fails to Demonstrate that the Claimed Design is Obvious in View of Lee-616 Alone

Ground 1 is deficient because the Petition fails to demonstrate that Lee-616 is a proper primary reference in view of major aspects of the patented design that are entirely absent.  EX2001, ¶¶48-51.  The '131 Patent depicts an elegant design with an overall appearance of a compact puck shape having a distinctive ***circular concave recess*** formed on a top major surface that resembles an elegant nest or cradle.  Yet, these aspects are absent from Lee-616 (*infra*, IV.C.1).  EX2001, ¶49.  Accordingly, Masimo fails to demonstrate a reasonable likelihood of unpatentability in Grounds 1-2.



| D'131 Patent | Lee-616 (EX1006) |
|---|---|

Circular concave recess

Contour line representing recessed contour

*FIG. 1*

Flat center portion extending to inner wall of ring

Top surface (black) interior to inner wall of ring is flat—not concave and no recessed contour

FIG. 3 (rotated)

*EX2001, ¶49 (EX1001, FIG. 1; EX2004, FIG. 3 (rotated)).*

### 1.    Lee-616 is Not a Proper *Rosen* Reference

Lee-616 is not a proper primary reference.  *See* EX2001, ¶¶49-87.   Notably, Lee-616 lacks the claimed design's distinctive circular *concave* recess that contributes to its nest or cradle visual appearance and its compact puck shape, which are each central to the claimed design's overall visual appearance. *Id.*  As previously discussed, EX2001, ¶49.  Masimo's obviousness theory is erroneously based on the premise these features of the claimed design are merely functional.  *See* IV.B, *supra.* Also, as discussed in previous and subsequent sections, a DOSA would have understood that defining features that contribute to the claimed design's overall visual appearance are simply not addressed in Masimo's petition.

### a)    *Masimo's Reliance on Artificially Created "Composite" Views Disqualifies Lee-616 is a Proper Rosen Reference*

Masimo's fabricated composite side views (shown below) of Lee-616 necessitates disqualification of Lee-616 as a primary reference.   Lee-616's deficiencies as a *Rosen* reference are confirmed by Masimo's apparent need to create artificial composite views to indicate purported details that are entirely absent from Lee-616's published drawings.  The Petition asserts that "Lee-616 is a primary reference because it is a single prior art reference with basically the same design characteristics as the claimed design."  Pet., 39.  In making this assertion, however,

21

the Petition cites to multiple sources—**1)** Figs. 2-4 of Lee-616 and **2)** artificially

created "composite" side views not depicted by Lee-616:



*Pet., 40 (annotated).*

Masimo's composite views of Lee-616 appear to be produced from pure

speculation about design details that are not depicted in Lee-616's actual drawings.

EX1003, fns. 2-3. Petitioner's reliance on fabricated composite views is legally

insufficient to demonstrate Lee-616 is "a ***single reference***, a something in existence,

the design characteristics of which are basically the same as the claimed design."

*High Point Design*, 730 F.3d at 1311 (emphasis added); *Macsports, Inc., v. Idea*

*Nuevo, Inc.*, IPR2018-01006, Paper 6 at 18 (PTAB Nov. 13, 2018) (denying

institution) ("Standing alone, that failure to address the rear portion of the [prior art],

which is undisputedly a feature of the claimed design, justifies denial of this ground.").



Lee-616's published drawings are wholly insufficient for a proper assessment of an obviousness inquiry against a purported *Rosen* reference. Masimo asserts that "***any differences*** between the ***precise dimensions or proportions***" of the claimed design and Lee-616 "would have been a routine change that was ***suggested by the prior art***." Pet., 48. This assertion is conclusory and baseless. Lee-616's published drawings are missing critical details, leading to Petitioner's reliance on its impermissible composite views. Apple objects to these fabricated images, and requests that Board <u>not</u> consider them.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX1001, FIG. 7, FIG. 8, Petitioner's Composites FIGS. 2-4.*

The Petition's obviousness theories based on Lee-616 in Ground 1 (as well as Ground 2, *infra* Section IV.D) fail because the Petition relies on artificially created "composite" views that are not depicted by Lee-616.   No appreciable assessment of the "differences" between the claimed design and Lee-616 can be determined without speculating on design details not depicted in Lee-616's published drawings. *See* Pet., 39-44.   For example, the available published drawings do not allow for a proper evaluation of Lee-616's design and the major features—claimed sidewall, nonorthogonal transitions, and bottom surface of the '131 Patent—that contribute to the claimed design's overall appearance.   Lee-616's published design would <u>not</u>

have enabled a DOSA to appreciably determine if its overall appearance is "basically the same as the claimed design." *See* Pet., 39.

Furthermore, while improper to consider the composite images at all, the composite images also suffer from multiple problems. First, Petitioner's artificially created "composite" views introduce multiple features that are unsupported or directly contradicted by the actual depictions of Lee-616. For example, Petitioner's composite images include 1) a green indicator having different shape/proportions compared to Lee-616's indicator; and 2) a port that includes a metallic component and shape not depicted by Lee-616.

|          **Petitioner's "composite"**          |          **Lee-616**          |



*EX1006, FIG. 3 (rotated) top right, FIG. 4 bottom right, Petitioner's Composites top and bottom left, FIGS. 2-4.*

25

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

Second, Petitioner's "composite" assumes an appearance of the protruding rings (yellow) at the top and bottom that are not depicted in Lee-616.  In Lee-616, the rings protrude from the top and bottom surfaces without a clearly discernable difference as to one protruding meaningfully more prominently than the other.  EX1006, Fig. 3, 4; Pet., 40.  But in Petitioner's "composite," the top ring is barely perceptible while the bottom ring protrudes noticeably further.

**Lee-616**



Rings (yellow) protrude
similarly from top and bottom

26

**Petitioner's "composite"**



Top ring (yellow) barely visible, while bottom ring (yellow) protrudes prominently

*EX1006, FIG. 1(annotated)).*

Petitioner's "composite" views thus present an appearance that is simply not discernable from the figures of Lee-616. EX1003, ¶61. This is insufficient to meet its burden of demonstrating a proper primary reference. *LKQ Corp. v. GM Global Tech. Ops. LLC*, PGR2020-00055 (PTAB, Oct. 8, 2021) ("Although LKQ's experts project what is likely to be in these evidentiary voids, we do not find estimations of design features on par with an actual showing.").

Petitioner and its declarant do not clearly address how the "composite" views were determined, or why certain features were depicted in the manner shown despite not being depicted by Lee-616. *See,* Pet., 39-40; EX1003, ¶¶54-57, 61. To be clear, this shortcoming in Petitioner's evidence is not remedied by citation to a YouTube video (Exhibit 1019) that purportedly depicts a product covered by Lee-616—Exhibit 1019 is yet another distinct reference. Moreover, the Petition lacks any obvious explanation of Lee-616 and Exhibit 1019 to arrive at the proposed "composite" images.

**b)** *Masimo Fails to Properly Analyze the Circular Concave Recess in Comparison to Lee-616*

Lee-616 lacks the claimed design's distinctive circular *concave* recess inset from a ring that contributes to the claimed design's resulting nest or cradle overall appearance. *See* EX2001, ¶¶57-68.  This prominent feature of the top of the claimed design is one fundamental aspect of the '131 patent's design that meaningfully contributes to its overall appearance. *Id.*



*EX2001, ¶58 (EX1001, FIG. 1(annotated)).*

Lee-616 lacks this critical feature and lacks the overall appearance of the claimed design.  EX2001, ¶58.  Unlike the claimed design's circular concave recess, Lee-616 has a ***flat*** top surface that lacks any appearance of the ***concave*** recess of the '131 patent, and is not shown to be contoured at all. *Id.*

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶¶58-59 (EX1006, Fig. 3 (annotated).*

Indeed, Masimo does not identify any recessed contour present in the center portion of Lee-616's design.  EX2001, ¶¶59, 61.  As discussed previously (§IV.B, *supra*), Masimo argues incorrectly that the recessed center portion of the '131 Patent "should be disregarded" as "a functional element" of the claimed design and that even if it is considered, "the recessed center portion of Lee-616 (surrounded by the yellow ring) and the claimed design [] provide the same overall visual impression." Pet., 45.  But unlike the patented design, Lee-616 does ***not*** have a top major face with a circular ***concave*** recess—or any recessed contour—in a center portion of the top surface.  EX2001, ¶61.

As Prof. Rake explains, this difference meaningfully impacts the overall impression of the design. *Id*., ¶¶59-61.  Unlike the elegant nest appearance conveyed in part by the circular concave recess of the claimed charger's top major face, Lee-

29

616's ring is simply disposed on top of the flat center surface.  Consistent with Lee-616's stacked or stepped overall appearance, the inner wall of Lee-616's ring creates a stepped transition, as illustrated below.  *Id.*, ¶61.



*EX2001, ¶¶61-62 (EX1006, Fig. 3 (rotated) (annotated)).*

Moreover, Masimo's characterization of the circular concave recess as merely a "*recessed* center portion" is inconsistent with the claimed design.  *See* Pet., 34. Petitioner erroneously asserts that the claimed circular concave recess would be satisfied by the stepped transition between the ring (yellow) and flat surface (black) that is created by the ring's inner wall.  EX2001, ¶62.  But Lee-616 lacks any indications of a recessed concave contour in the surface of its center portion (black), as required by the claimed design.  *Id.*

The Petition's failure to address the circular concave recess of the claimed design is not remedied by the bare assertion that "the recessed center portion of Lee-616 (surrounded by the yellow ring) and the claimed design [] *provide the same overall visual impression*." Pet., 46. This assumption never addresses the circular concave recess at all, and thus ignores this readily apparent difference between the claimed design and Lee-616. *Levitation Arts, Inc. v. Flyte LLC*, PGR2018-00073, Paper 14, 16-22 (PTAB, Jan. 17, 2019); *Dorman Products Inc. v. PACCAR Inc.*, IPR2014-00542, Paper 10 at 5 (PTAB Sept. 5, 2014) (denying institution).

To be clear, Masimo fails to address that Lee-616 lacks any contour in its central surface at all. Even assuming that the center portion of the claimed design was simply recessed without a concavity (it is not), Lee-616 does not have any recessed features *in* its center (black) portion. EX2001, ¶65. As Prof. Rake explains, Lee-616's central surface (black) is entirely flat and does not have any recess feature at all. *Id.*

31



*EX2001, ¶65 (EX1006, Fig. 3 (annotated)).*

There is no dispute that Lee-616 lacks a ***concave*** recessed portion, which is never even asserted by the Petition.  EX2001, ¶67.  This feature meaningfully contributes to the claimed design's overall visual appearance. The circular concave recess is not *de minimis*, nor has Petitioner asserted such.  Petitioner ignores it, and Lee-616 lacks it.  *Id.*  Consequently, Lee-616 lacks an overall appearance that is "basically the same" as the claimed design, and is not a proper primary reference. *Id.*  Grounds 1 and 2 fail for this reason.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### c) *Masimo Fails to Properly Analyze the Compact Puck Design with Proportions that are Substantially the Same Ratio of Width-to-Height of the Claimed Design in Comparison to Lee-616*

In contrast to the patented design, Lee-616 does <u>not</u> have an overall visual appearance of a compact puck. *See* EX2001, ¶¶69-74. For example, Lee-616 does <u>not</u> have proportions with substantially the same ratio of width-to-height as shown in the figures of the '131 Patent. In contrast to the patented compact, concave puck design, Lee-616's design has an overall appearance that is substantially wider and flatter. EX2001, ¶69. Lee-616's design noticeably suggests the appearance of a plate or a coaster. *Id.*



| D'131 Patent | Lee-616 (EX1006) |
|---|---|

*EX2001, ¶69 (EX1001, FIG. 7; EX1006, FIG. 3 (annotated)).*

There is no dispute that Lee-616 lacks the noticeably distinct width-to-height ratio that contributes to the charger design's overall cylindrical shape.  Petitioner acknowledges that "[t]he Lee-616 cylinder *has a slightly larger width-to-height ratio than the claimed design*," but erroneously concludes that the "difference, or any difference in the dimensions or proportions of the cylindrical shapes of Lee-616 and the claimed design, *does not alter the overall visual similarity of these designs*." Pet., 43.  In making this assumption, Petitioner never addresses the readily visible dissimilarity of Lee-616. Unlike the claimed design that evokes a compact puck appearance, Lee-616's design is substantially wider and flatter, suggesting an overall appearance of a coaster or dinner plate.  EX2001, ¶72.  The Petition ignores this readily apparent difference, never offering any credible explanation for why a DOSA would consider Lee-616 to have "the same overall visual impression as the claimed design."  Pet., 39, 40; EX2001, ¶72.  This is insufficient to meet its burden.

Furthermore, even assuming Petitioner's unauthenticated composite sideview was permissible (which it is not), Masimo's theory fails to address the distinctive proportionality of the patented design relative to the stepped and disproportionate appearance depicted by Lee-616's width-to-height ratio—i.e., a substantially wider and flatter design.  EX1006, FIG. 2, FIG. 3; EX2001, ¶¶71-74. Even in Petitioner's unauthenticated composite figure, Lee-616 has a width-to-height ratio that differs

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

significantly from the noticeably distinct width-to-height ratio of the patented design.



| D'131 Patent | Lee-616 (EX1006) |
|---|---|

*EX2001, ¶¶70-71 (EX1001, FIG. 7; Petitioner's Composites (annotated)).*

Petitioner makes no attempt to explain why the width-to-height ratio is, for example, a *de minimis* difference that does not impact the overall impression of the charger's design. EX2001, ¶74. Quite the contrary, this feature is central to the claimed design's overall appearance, and is therefore not trivial. *Id*. No evidence or analysis supports that the  width-to-height ratio are *de minimis* elements. *Id*. Thus, Masimo fails to demonstrate that the distinct width-to-height ratio is *de minimis*.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### d)  *Masimo Fails to Properly Analyze the Compact Puck Shape Formed by the Non-Orthogonal Edges Between the Sidewall and the Top and Bottom Surfaces of the Claimed Design in Comparison to Lee-616*

Unlike the patented design, Lee-616 fails to show an overall compact puck shape.  *See* EX2001, ¶¶75-81.  In particular, Lee-616 does <u>not</u> clearly show that it has non-orthogonal edges between a sidewall and the top and bottom surfaces that contribute to the overall compact puck appearance of the claimed design.  *Id.*, *See* EX1006, FIGS. 1-4.  According to Lee-616's available figures, the edges are unascertainable or appear to have orthogonal edges between the sidewall and its major surface.



*EX2001, ¶75 (EX1006, Fig. 3 (annotated).*

36

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

Even assuming Petitioner's unauthenticated composite sideview was permissible (which it is not), the created figure allegedly shows that Lee-616 includes stacked, concentric cylinders of different diameters creating a stepped sidewall design that is entirely distinct from the compact puck appearance of the patented design. EX2001, ¶76. Thus, Lee-616's appearance is starkly different than the claimed design. *Id.*



| D'131 Patent | Lee-616 (EX1006) |
|---|---|

*EX2001, ¶¶76-77 (EX1001, FIG. 7; EX1006, Petitioner's Composites (annotated)).*

Additionally, Lee-616's sidewall has a cutout that is visible on the bottom surface. When viewed from below, Lee-616's cutout gives the appearance of a broken bottom section, and lacks the appearance of a complete circle. EX2001, ¶78.



*EX2001, ¶¶78,79 (EX1006, FIG. 4 (rotated), Petitioner's Composites*

*(annotated)).*

Lee-616's inclusion of design elements dissimilar to the elements of the patented design, such as its stepped surfaces, contributes to an overall more complex design having a stacked appearance that contrasts with the simple and elegant design provided by the '131 Patent.   EX2001, ¶¶79, 80.   Lee-616 fails to show the distinctive visual impression of the claimed design's compact, concave puck design. *Id*.   Thus, Masimo's Ground 1 fails to demonstrate that Lee-616 is a proper *Rosen* reference.

### 2.    Masimo's Proposed Series of Modifications Beyond the Design Depicted in Lee-616 are Improper

Masimo's obviousness theory is further based on the flawed premise that "any differences between Lee-616 and the claimed design are changes that were

suggested by the prior art." Pet., 48; *See* EX2001, ¶¶82-87. In making this assumption, Masimo fails to identify a specific prior art reference from various "cylindrical chargers of various sizes and proportions…in the prior art" (Pet., 48), nor addresses why a DOSA would have arrived at the specific height-to-width ratio of the claimed design based on the "ubiquitous" chargers found in the prior art. *See* EX2001, ¶¶82-87.

Indeed, Masimo acknowledges multiple additional modifications are necessary to achieve the design of the '131 Patent based on the design depicted by Lee-616, and, thus, tacitly acknowledges that Lee-616 on its own is not basically the same as the claimed design. *See, e.g.*, Pet., 48 ("any difference between the precise dimensions or proportions of the cylindrical chargers of Lee-616 and the claimed design would have been a routine change"), *id.* ("removing Lee-616's step transition and bottom ring (Ground 1)"); 50 ("use a continuous sidewall between the top and bottom surfaces of the Lee-616 charger"); 51 ("remove the flat ring from…flat bottom surface of Lee-616's charger"). But these additional modifications are directed to features that are not taught by Lee-616 and are not *de minimis*. EX2001, ¶83.

For example, Masimo's assertion that "any difference between the precise dimensions or proportions of the cylindrical chargers of Lee-616 and the claimed design would have been a routine change" because "cylindrical chargers of various

sizes and proportions were ubiquitous in the prior art" fails to demonstrate that such a change would have been considered obvious by a DOSA. Pet., 48. Masimo's also fails to demonstrate that a DOSA would have modified the Lee-616 design to achieve the claimed design's overall appearance.

First, the Petition's Ground 1 theory is based on Lee-616, yet cites to multiple references (Pet., 49) without the requisite analysis of why the designs are so related to Lee-616 that their modification of Lee-616 would have been obvious. EX2001, ¶85.

Second, even if "precise dimensions or proportions of the cylindrical chargers" or "us[ing] a continuous sidewall between the top and bottom surfaces of the Lee-616 charger" was a "change known in the art" (which Masimo fails to demonstrate, and which are not shown by its assortment of references at p. 49), the Federal Circuit has made clear that mere knowledge of a shape is insufficient:

> If we adopted the logic of the Board and concluded that the substitution of the Carder shapes for those in the Harvey prior art case would render the '904 and '906 design applications obvious *just because the Carder shapes were well-known and frequently used in vase designs*, each and every prior art bowl or vase shape ever publicly disclosed would render obvious any generally similar vase shape. Clearly, *this cannot be the case*.

*In re Harvey*, 12 F.3d 1061, 1065 (Fed. Cir. 1993) (emphasis added).

Third, Masimo's assertions that a DOSA would "remove the flat ring from the already flat bottom surface of Lee-616's charger to provide a completely flat

surface" to "achieve a design, as shown above, that was simpler and more visually appealing" ignores that Lee-616 includes stacked, concentric cylinders of different diameters creating a stepped sidewall design that is entirely distinct from the visual appearance of the patented design. EX2001, ¶86. Indeed, Lee-616's rings are part of an overarching appearance that includes a ring on its top surface that is visually complementary to the ring on this bottom surface, as shown by FIGS. 2 and 4 (below). Pet., 51.



*EX2001, ¶86 (***EX1006, Figs. 2 and 4 (as shown in Pet.** *at 40 with annotations)).*

The purported reason for modifying Lee-616's bottom flat ring—to create a "simpler and more visually appealing" design—ignores that Lee-616 includes visual symmetry through its complementary top and bottom rings in combination with stepped portions along its body. EX2001, ¶87. Masimo never addresses that its

proposed modifications would fundamentally alter the visual theme of Lee-616's stepped, complex design. *See Termax*, IPR2022-00106, Paper 7 at 30 ("the notably consistent symmetrical nature of both designs would not suggest that a skilled designer would destroy that symmetry by using a rounded platform with a rectangular platform." (citing *Apple*, 678 F.3d at 1331)). Masimo's proposed modification and motivation to do so are unsupported and are fatally deficient. EX2001, ¶87.

### D.   Ground 2: Masimo Fails to Demonstrate that the Claimed Design is Obvious in view of Lee-616 in Combination with Chiang

#### 1.   Lee-616 is Not a Proper *Rosen* Reference

As discussed above, Lee-616 is not a proper *Rosen* reference. *See* §IV.C.1, *supra*; EX2001, ¶88.

#### 2.   Masimo Fails to Demonstrate that it Would Have Been Obvious to a DOSA to Modify Lee-616 in view of Chiang to Create the Claimed Design

As discussed below, the Petition erroneously relies on modifications that significantly change Lee-616's appearance that fails to demonstrate the unpatentability of the design claim based on its evidence. EX2001, ¶¶89-98.

### a)   *Chiang Is Not a Proper Secondary Reference for Combination with Lee-616*

For the multiple reasons discussed below, the Petition fails to demonstrate that Chiang's power bank designs are "so related" to Lee-616 that "the appearance" of certain ornamental features in Chiang would suggest the application of those features to Lee-616.  Pet., 54; EX2001, ¶¶90-96; *In re Glavas*, 230 F.2d 447, 450 (C.C.P.A. 1956).

First, Masimo selects two features from Chiang's power bank for incorporation with Lee-616— the purported "flat bottom surface" and "continuous sidewall"—ignoring the remaining features of Chiang that are not shared with Lee-616.  EX2001, ¶91; *see* Pet., 55-56.  Even if Chiang's power bank were a proper secondary reference for combination with Lee-616 (it is not), Masimo offers no rationale for why a DOSA would have used Chiang to modify Lee-616's charging pad by selectively incorporating only those two features.  *Id.*  For example, Chiang had a flat top surface, yet Masimo ignores this prominent feature and, in its proposed combination, selects only the flat bottom surface for incorporation.  EX1009, FIG. 2.

Furthermore, Masimo fails to explain why it applies two isolated features of Chiang to the exclusion of other apparent features of Chiang that contribute to its appearance.  *Id.*  For example, Lee-616 includes one distinctive cutout that intersects

the stepped edge of its sidewall, whereas Chiang includes two cutouts that do not intersect its sidewall edges.  EX2001, ¶92; s*ee* Pet., 35; *also compare* EX1006, 4 to EX1009, FIG. 1.  As the Board has previously held, "[t]his selective use of the design characteristics of the prior art suggests that it is driven by a hindsight reconstruction of the invention rather than the objective teachings of the references."  *Premier Gem Corp. v. Wing Yee Gems & Jewelry Limited*, IPR2016-00434, Paper 9, at 16 (PTAB, 2016); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) ("Not only the individual elements, but the ornamental quality of the combination must be suggested in the prior art. . . . A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design.").

Masimo's selective modifications are also undermined by its own rationale to "achieve a design that was smoother."  EX2001, ¶93; Pet., 50, 56-57.  Chiang also includes a smooth, flat top surface.  EX1009, FIGS. 1-2, 6.  Yet, Masimo selectively incorporates isolated features of Chiang, to the exclusion of other "smooth" surfaces of Chiang, highlighting Masimo's reliance on impermissible hindsight to reconstruct the claimed design from disparate elements.  *Premier Gem*, IPR2016-00434, Paper 9 at 16; *L.A. Gear*, 988 F.2d at 1124.

Second, the Petition never addresses visibly prominent differences of Chiang in comparison to Lee-616.  EX2001, ¶94.  These differences result in distinct visual

appearances such that Lee-616 and Chiang are not so related that the appearance of ornamental features in Chiang would suggest the application of those features to Lee-616, or vice versa. *Id.* Lee-616's complex design has prominent, irregular step transitions and protruding rings on both top and bottom surfaces that evoke a complex, stepped design. EX2001, ¶94; s*ee* Pet., 35; *also compare* EX1006, 3-4. Masimo's assumption that a DOSA would have incorporated vastly dissimilar features from Chiang's simplistic and plain design, such as a smooth sidewall, ignores this overall appearance of Lee-616's complex design. EX2001, ¶94. Masimo fails to explain why a DOSA would have modified Lee-616 with such vastly different features from Chiang and propose modifications that deviate substantially from the complex overall visual appearance provided by Lee-616. *Id.*

Third, Masimo's proposed combination fundamentally alters Lee-616 and results in a design that is dissimilar from both Lee-616 and Chiang. EX2001, ¶¶95-96. Masimo's proposal to selectively combine "Chiang's cylinder sidewall and flat bottom surface with Lee-616" (Pet., 56), ignores the complementary top and bottom surfaces of Lee-616, which have visual similar protruding rings, and the complementary top and bottom surfaces of Chiang, which are each relatively planar. EX2001, ¶¶95, 96. The complementary top and bottom surfaces in each of these designs are dismissed in favor of Masimo's proposal to have a protruding ring on a top surface only, eliminating Lee-616's bottom ring and series of steps. *Berry*

*Sterling Corp. v. Pescor Plastics, Inc.,* 1999 U.S. App. LEXIS 20789, *9 (C.A.F.C. 1999) ("The modifications to the primary reference cannot be such that they change the fundamental characteristics of the design."); *Termax*, IPR2022-00106, Paper 7 at 30.

For the reasons above, Ground 2 fails.

> **b)** ***Masimo Fails to Demonstrate that Lee-616, as modified in view of Chiang, Creates the Same Overall Visual Appearance as the Claimed Design***

Additionally, even if the combination were proper (which it is not for reasons noted above), Petitioner's proposed modifications of Lee-616 based on Chiang do <u>not</u> result in a design that is "the same" as the claimed design. EX2001, ¶97; *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993). In particular, the combination of Lee-616 modified by Chiang does <u>not</u> convey the distinctive visual impression of a unique design for a "charger" with an overall appearance of a compact puck having a distinctive circular concave recess on the top major face that evokes an elegant nest or cradle appearance. EX2001, ¶¶97-98.

The combination lacks the distinctive circular concave recess, and, thus, lacks the overall appearance resulting from this feature. EX2001, ¶97. Likewise, Masimo's proposed modified design lacks the distinctive width-to-height ratio that contributes to the claimed design's compact puck design. *Id.* As shown below, because neither Lee-616 nor Chiang have a circular concave recess or a compact

puck shape, the alleged combination would also lack these key features.  EX2001,

¶97; EX1007, FIG. 4; EX1009, FIG. 1.  Each of these differences alone results in an

overall appearance that is distinct from the claimed design's overall appearance.  *Id.*

Ground 2 fails for at least these reasons.  EX2001, ¶97.



*EX2001, ¶¶97-98 (EX1001, FIG. 1 (annotated); EX1007, FIG. 4 (annotated);*

*EX1009, FIG. 1 (annotated)).*

### 3.   Chiang is Nonanalogous art and Does Not Qualify as Invalidating Prior Art Against the '131 Patent

Unlike the claimed design, Chiang provides an aesthetic design for a design

titled "Power bank"—not a "Charger" as titled in the '131 Patent.  A power bank

design is nonanalogous art to a charger because a power bank is a portable device

that serves as an external battery and does not have a charging surface.  In contrast

to Chiang's "power bank," a charging device design such as the claimed design

would be associated with an ornamental appearance that highlights a charging surface designed to interface with other devices needing to be charged.   EX2001, ¶99; *In re SurgiSil*, 14 F.4th 1380, 1383 (Fed. Cir. 2021) ("A design claim is limited to the article of manufacture identified in the claim; it does not broadly cover a design in the abstract").  Accordingly, Chiang does not provide art that is analogous to the claimed design and, thus, cannot be applied as invalidating prior art against the '131 Patent.

### E.     Ground 3: Masimo Fails to Demonstrate that the Claimed Design is Obvious in View of CN-470 Alone

The Petition fails to demonstrate that CN-470 is a proper primary reference. *See* EX2001, ¶¶100-130.  Indeed, major aspects of the claimed design—the circular concave recess and the compact puck shape with its noticeably distinct width-to-height ratio—are entirely absent from CN-470, underscoring the substantial differences and overall lack of visual similarity between the '131 Patent and CN-470.  *Id.*, ¶100.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶¶100-101 (EX1001, FIG. 1 (annotated), EX1007, FIG. 4 (annotated)).*

### 1.    CN-470 is Not a Proper *Rosen* Reference

CN-470 is not a proper primary reference.  *See* EX2001, ¶¶104-127; Pet., 60.

The Petition ignores multiple prominent differences between the claimed design and

CN-470 that result in meaningfully different appearances making them not

"basically the same."  EX2001, ¶104; *Levitation Arts, Inc.*, PGR2018-00073, Paper

14, 16-22.  Notably, CN-470 lacks the claimed design's distinctive circular *concave*

recess that contributes to its nest or cradle visual appearance and claimed design's

compact puck shape.  EX2001, ¶104.  These features are central to the claimed

design's overall visual appearance and fail to be addressed in Masimo's petition.  *Id.*,

¶104.

49

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### a) *Masimo's assertion that CN-470 is a Rosen reference is impermissibly based on artificially created "composite" views—not a "a single reference, a something in existence"*

As discussed with regard to Lee-616 (§IV.C.1.a, *supra*), Masimo's fabricated composite views of CN-470 necessitates its disqualification as a primary reference. CN-470's deficiencies as a *Rosen* reference are confirmed by Masimo's need to create artificial composite views to indicate purported details that are entirely absent from its published drawings. Apple objects to these fabricated images, and the Board should not consider them.

Furthermore, the Petition's obviousness theories based on CN-470 in Ground 3 (as well as Ground 4, *infra* IV.F) are legally deficient because CN-470 is not "a *single reference*, a something in existence, the design characteristics of which are basically the same as the claimed design," and instead relies on artificially created "composite" views that are not depicted by CN-470. *High Point Design*, 730 F.3d at 1311; *Macsports*, IPR2018-01006, Paper 6 at 18 (PTAB Nov. 13, 2018).

The Petition asserts that "CN-470 is a primary reference because it is a single prior art reference with basically the same design characteristics as the claimed design." Pet., 58. But the Petition cites to multiple sources—**1)** FIGs. 4, 6, and 7 of CN-470 and **2)** an *artificially created* "[c]omposite" perspective view *not depicted by CN-470*:

50

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*Petitoner's figures shown at Pet., 59 (annotated).*

Petitioner provides no clear explanation for the appearance of the "[c]omposite" view, or how it determined the features of the "[c]omposite" view. Yet, Petitioner's artificially created "[c]omposite" view introduces multiple features that are unsupported or directly contradicted by the actual depictions of CN-470. For example, Petitioner's composite image includes: 1) a port with an overall shape, interior profile, and general placement not depicted by CN-470; 2) a bottom section not depicted by CN-470; and 3) top and bottom sections that give the appearance of

a single body, which differs from the distinct top (blue) and bottom (green) sections depicted by the CN-470.

**Petitioner's "[c]omposite" of CN-470**          **CN-470**



*Petitioner's Composite Figure (left) at Pet., 61 (annotated); EX1007, FIGS. 8 (top, right, annotated) and 5 (bottom, right, annotated).*

Petitioner fails to meet its burden of demonstrating CN-470 as a proper primary reference because its "composite" view presents an appearance that is simply not discernable from the figures of CN-470. *LKQ Corp*, PGR2020-00055 (PTAB, Oct. 8, 2021). Moreover, Petitioner and its declarant do not clearly address how the "composite" views were determined, or why certain features were depicted

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

in the manner inconsistent with depictions by CN-470.  *See,* Pet., 58-68; EX1003, ¶¶84-92, 105,131.  Thus, CN-470 is not a proper *Rosen* reference.

> **b)** ***Masimo Fails to Properly Analyze the Circular Concave Recess in Comparison to CN-470***

CN-470 lacks the claimed design's distinctive circular *concave* recess inset from a ring that contributes to the claimed design's resulting nest or cradle overall appearance, which meaningfully impacts the overall impression of the design. EX2001, ¶106.



*EX2001, ¶¶106, 107 (EX1006, FIG. 1 (annotated)).*

Unlike the claimed design, CN-470 has a ***flat*** top surface that lacks any appearance of the ***concave*** recess of the '131 patent, and is not shown to be contoured at all.  EX2001, ¶107.  Furthermore, Masimo does not identify any

53

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

recessed contour present in a center portion in CN-470's design.  Unlike the claimed

design, CN-470's ring simply sits on top of a center flat portion.  *Id*.



*EX2001, ¶¶107-108 (EX1007, FIG. 4 (annotated))*

Like in Ground 1, Masimo improperly ignores the circular concave recess as

being a readily apparent difference between the claimed design and CN-470.

EX2001, ¶108, 112; Pet., 65.  *Levitation Arts, Inc. v. Flyte LLC*, PGR2018-00073,

Paper 14, 16-22 (PTAB, Jan. 17, 2019); *Dorman Products Inc. v. PACCAR Inc*.,

IPR2014-00542, Paper 10 at 5 (PTAB Sept. 5, 2014).

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

Furthermore, Masimo fails to address that CN-470 lacks any contour in its central surface at all. EX2001, ¶¶108, 110-112. Even assuming that the center portion of the claimed design was simply recessed without a concavity (it is not), CN-470 does not have any recessed features ***in*** its center (blue) portion. *Id*. As Prof. Rake explains, CN-470's central surface (blue) is entirely flat and does not have any recess feature at all. *Id.*



FIG. 3

*EX2001, ¶¶114, 115 (EX1001, FIG. 3; EX1007, FIG. 4 (annotated)).*

There is no dispute that CN-470 lacks a ***concave*** recessed portion, which is never asserted in the Petition. Conspicuous features such as the *circular concave recess* are not *de minimis* and, instead, provide a prominent difference between the claimed design and CN-470. EX2001, ¶¶110-117. But Petitioner ignores it, and CN-470 lacks it. Consequently, CN-470 lacks an overall appearance that is

55

"basically the same" as the claimed design, and is not a proper primary reference. *Id*.

### c)     *Masimo Fails to Properly Analyze the Compact Puck Design with Proportions that are Substantially the Same Ratio of Width-to-Height of the Claimed Design in Comparison to CN-470*

In contrast to the patented design, CN-470 does *not* have an overall visual appearance of a compact puck.  EX2001, ¶¶118-122.  For example, CN-470 does *not* have proportions with substantially the same ratio of width-to-height as shown in the figures of the '131 Patent.  EX1001, FIG. 7; EX1007, FIG. 6, FIG. 7; EX2001, ¶118.   CN-470's design has an overall appearance that is substantially wider and flatter than the compact puck appearance of the claimed design.  *Id.*   Indeed, CN-470's design noticeably suggests the appearance of a plate or a coaster.  *Id.*



*EX2001, ¶¶118, 119 (EX1001, FIG. 7 (annotated); EX1006, FIG. 6 (annotated)).*

There is no dispute that CN-470 lacks the noticeably distinct width-to-height ratio that contributes to the charger design's overall cylindrical shape.  EX2001, ¶¶112-119.  The Petition ignores this readily apparent difference, never offering any credible explanation for why a DOSA would consider CN-470 to have "the same overall visual impression as the claimed design."  Pet., 62-63, 65-67.  Furthermore, Petitioner fails to explains why the width-to-height ratio is, for example, a *de minimis* difference that does not impact the overall impression of the charger's design.  This is insufficient to meet its burden.

### d)   *Masimo Fails to Properly Analyze the Compact Puck Shape Formed by the Non-Orthogonal Edges Between the Sidewall and the Top and Bottom Surfaces of the Claimed Design in Comparison to CN-470*

Unlike the patented design, CN-470 does <u>not</u> have an overall compact puck design having non-orthogonal edges between the sidewall and the top/bottom surfaces.  EX2001, ¶123; FIG. 7; EX1007, FIG. 7.  In particular, CN-470 does <u>not</u> have such non-orthogonal edges.  EX2001, ¶123.  Instead, CN-470 includes stacked, concentric cylinders of different diameters creating a stepped sidewall design that is entirely distinct from the visual appearance of the patented design.  EX2001, ¶123; EX1007, FIG. 7.  Even if an ordinary designer would have understood CN-470 as including the claimed non-orthogonal edges of the '131 Patent (which CN-470 never

mentions and Masimo fails to demonstrate), CN-470's appearance is starkly different than the claimed design. *Id*.



*EX2001, ¶¶123, 124 (EX1001, FIG. 7 (annotated); EX1007, FIG. 7 (rotated, annotated)).*

CN-470's inclusion of design elements dissimilar to the elements of the patented design, such as its stepped surfaces, contributes to an overall more complex design having a stacked appearance that contrasts with the simple and elegant design provided by the '131 Patent.  EX2001, ¶¶124-126.  For example, CN-470 includes stacked, concentric discs of different diameters creating an overall stepped appearance and a sidewall that includes a cutout (visible on the bottom surface).  The CN-470's cutout gives the appearance of a broken bottom section and lacks the appearance of a complete circle.  *Id.*.



*EX2001, ¶¶124-126 (EX1007, FIGs. 7 (top) and 8 (bottom, rotated) (annotated)).*

For the above reasons, CN-470 does <u>*not*</u> convey the distinctive visual impression of the claimed design's compact, concave puck design.  EX2001, ¶126. Thus, Ground 3 fails.

### 2.    Masimo's Proposed Series of Modifications Beyond the Design Depicted in CN-470 are Improper

Masimo's obviousness theory is further based on the flawed premise that "any differences between CN-470 and the claimed design would have been changes that were suggested by the prior art … for the same reasons explained above with respect to the ground based on Lee-616 alone."  Pet., 67; EX2001, ¶128.  In making this assumption, Masimo fails to identify a specific prior art reference from various "cylindrical chargers of various sizes and proportions…in the prior art." (Pet., 48 – referring to Lee-616).  Masimo also fails to address why a DOSA would have arrived

at the specific height-to-width ratio of the claimed design based on the "ubiquitous" chargers found in the prior art.  *See* Pet., 26, 48; EX2001, ¶128.

Like in Ground 1, Masimo acknowledges multiple additional modifications are necessary to provide features of the '131 Patent beyond that depicted by CN-470, and, thus, tacitly acknowledges that CN-470 on its own is not basically the same as the claimed design.  *See, e.g.*, Pet., 62 ("removing CN-470's step transition and bottom ring"), 66.  But these additional modifications are directed to features that are not depicted by CN-470 and are not *de minimis*.  EX2001, ¶129.

Masimo also asserts that "[a]ny differences between the design of CN-470 and the claimed design would not prevent CN-470's use as a primary reference" "because it discloses basically the same visual impression as the claimed design." Pet., 65-66.  But Petitioner fails to demonstrate that such a change would have been considered obvious by a DOSA, and that a DOSA would have modified the CN-470 design to achieve the claimed design's overall appearance.  EX2001, ¶130.

### F.    Ground 4: Masimo Fails to Demonstrate that the Claimed Design is Obvious in view of CN-470 in Combination With Chiang

#### 1.    CN-470 is Not a Proper *Rosen* Reference

As discussed above, CN-470 is not a proper *Rosen* reference.  *See* §IV.E.1, *supra*; EX2001, ¶¶104-127, 131.

### 2. Masimo Fails to Demonstrate that it Would Have Been Obvious to a DOSA to Modify CN-470 in view of Chiang to Create the Claimed Design

As discussed below, the Petition erroneously relies on modifications that significantly change CN-470's appearance that fails to demonstrate the unpatentability of the design claim based on its evidence. *See* EX2001, ¶¶132-140.

### a) *Chiang Is Not a Proper Secondary Reference for Combination with CN-470*

For reasons similar to those discussed in Ground 2 (§IV.D.2, *supra*) with respect to Lee-616, the Petition fails to demonstrate that Chiang's power bank designs are "so related" to CN-470's charging pad that "the appearance" of certain ornamental features in Chiang would suggest the application of those features to CN-470. EX2001, ¶133; *In re Glavas*, 230 F.2d 447, 450 (C.C.P.A. 1956).

Here again, Masimo selects two features from Chiang's design for incorporation with CN-470—the purported "flat bottom surface" and "continuous sidewall"—ignoring the remaining features of Chiang that are not shared with CN-470. Pet., 71; EX2001, ¶134. Chiang has a flat top surface, yet Masimo ignores this prominent feature and, in its proposed combination, incorporates only the flat bottom surface. EX2001, ¶134; EX1009, FIG. 2.

Masimo also fails to explain why Chiang suggests the application of two isolated features to the exclusion of other apparent features of Chiang that contribute

to its appearance.  For example, Masimo fails to consider the cutout differences between the two designs—CN-470 includes one distinctive cutout that intersects the stepped edge of its sidewall, whereas Chiang includes two cutouts that do not intersect its sidewall edges.  EX2001, ¶135.  Such "selective use of the design characteristics of the prior art" is improper.  *Premier Gem Corp*, IPR2016-00434, Paper 9, at 16 (PTAB, 2016); *L.A. Gear*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).

Masimo's selective modifications are undermined by its own rationale to "achieve a design that was smoother."  Petition, 50, 72; EX2001, ¶136.  Masimo selectively incorporates isolated features of Chiang, to the exclusion of its other "smooth" surfaces—notably, its smooth, flat top surface—highlighting Masimo's reliance on impermissible hindsight to reconstruct the claimed design from disparate elements.  *Premier Gem*, IPR2016-00434, Paper 9 at 16; *L.A. Gear*, 988 F.2d at 1124.

Second, the Petition ignores visibly prominent differences of Chiang in comparison to CN-470.  EX2001, ¶137.  Masimo's assumption that a DOSA would have incorporated vastly dissimilar features from Chiang's simplistic and plain design, such as a smooth sidewall, ignores the overall appearance of CN-470's complex, stepped design.  *Id.*  Masimo also fails to explain why a DOSA would have modified CN-470 with such vastly different features from Chiang and propose

modifications that deviate substantially from CN-470's complicated overall visual appearance. *Id.*

Third, Masimo's proposed combination results in a design that is dissimilar from both CN-470 and Chiang. EX2001, ¶138. Masimo's proposal to selectively combine "Chiang's cylinder sidewall and flat bottom surface with CN-470" (Pet., 71), improperly ignores the complementary top and bottom surfaces of CN-470, which have visual similar protruding rings, and the complementary top and bottom surfaces of Chiang. *Berry Sterling,* 1999 U.S. App. LEXIS 20789, *9 (C.A.F.C. 1999); *Termax*, IPR2022-00106, Paper 7 at 30.

For the reasons above, Ground 4 fails.

### b) *Masimo Fails to Demonstrate that CN-470, as modified in view of Chiang, Creates the Same Overall Visual Appearance as the Claimed Design*

Even if proper (*arguendo*), Petitioner's proposed combination of CN-470 and Chiang fails to create the same overall visual appearance as the compact puck design of the '131 Patent. EX2001, ¶140. The combination of CN-470 modified by Chiang does <u>*not*</u> convey the distinctive visual impression of a unique design for a "charger" with an overall appearance of a compact puck having a distinctive circular concave recess on the top major face that evokes an elegant nest or cradle appearance. *Id.* The alleged combination lacks the claimed design's prominent features—namely,

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

the circular concave recess and a substantially similar width-to-height ratio—and, thus, fails to provide the claimed design's overall visual appearance. *Id.*

As shown below, because neither CN-470 nor Chiang have a circular concave recess or a compact puck shape, the alleged combination would also lack these key features. EX1007, FIG. 4; EX1009, FIG. 1. These differences result in an overall appearance that is distinct from the overall appearance provided by the patented design. Thus, Ground 4 fails for at least these reasons. EX2001, ¶140.



*EX2001, ¶140 (EX1001, FIG. 1 (annotated); EX1007, FIG. 4 (annotated); EX1009, FIG. 1 (annotated)).*

### 3.   Chiang is Nonanalogous art and Does Not Qualify as Invalidating Prior Art Against the '131 Patent

*See* §IV.D.3, *supra*. EX2001, ¶141.

64

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### G.    Ground 5: Masimo Fails to Demonstrate that the Claimed Design is Obvious in View of Murray Alone

The claimed design is not rendered obvious for reasons discussed below.

EX2001, ¶¶142-175.  Notably, like Lee-616 and CN-470, Murray is not a proper

primary reference because major aspects of the claimed design—the circular

concave recess and the compact puck shape with its noticeably distinct width-to-

height ratio—are entirely absent.



*EX2001, ¶¶142, 143 (EX1001, FIG. 1 (annotated); EX1008, FIG. 1 at Pet., 76 (annotated)).*

### 1.  Murray is Not a Proper *Rosen* Reference

Murray is not a proper primary reference.  *See* EX2001, ¶¶146-169.  The

Petition ignores multiple prominent differences between the claimed design and

65

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

Murray that result in meaningfully different appearances making them not "basically the same." EX2001, ¶¶146, 147; *Levitation Arts, Inc.*, PGR2018-00073, Paper 14, 16-22. Notably, Murray lacks the claimed design's distinctive circular *concave* recess that contributes to its nest or cradle visual appearance and its compact puck shape. EX2001, ¶148. Masimo fails to address these prominent features, which are central to the claimed design's overall visual appearance. *Id.*

### a)     *Masimo Fails to Properly Analyze the Circular concave recess in Comparison to Murray*

Murray lacks the claimed design's distinctive circular *concave* recess inset from a ring that contributes to the claimed design's resulting nest or cradle overall appearance. EX2001, ¶¶148-160. Because Murray lacks these prominent features, it lacks the overall appearance of the claimed design. *Id.*



FIG. 1

66

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

*EX2001, ¶¶148, 149 (EX1001, FIG. 1 (annotated)).*

Unlike the claimed design's circular concave recess, Murray has a ***flat*** top surface that lacks any appearance of the ***concave*** recess of the '131 patent, and is not shown to be contoured at all.  EX2001, ¶149.



*EX2001, ¶¶149, 150 (EX1008, FIG. 1 at Pet., 76 (annotated)).*

Indeed, Masimo does not identify any recessed contour present in a center portion in Murray's design.  EX2001, ¶150.  Instead, Masimo argues incorrectly that the recessed center portion of the '131 Patent "should be disregarded as a functional element of the claimed design" and that "even if the recessed center portion is considered […] the recessed center portion of Murray and the claimed design provide the same overall visual impression."  Pet., 82.  But unlike the patented design, Murray does ***not*** have a top major face with a circular ***concave*** recess—or any recessed contour—in its center portion.  EX2001, ¶150.

Moreover, Masimo's characterization of the circular concave recess as merely a "recessed center portion" is inconsistent with the claimed design as well as insufficient to render the claimed design obvious. *See* Pet., 38.  Although Petitioner argues that Murray has a "recessed center portion," Murray's figures do not support this. *Id.*  As Prof. Rake explains, Murray's central (green) surface is entirely flat and does not have any recess feature at all.  EX2001, ¶¶152-154; EX1008, FIG. 1.  Murray's design merely has a ring that is adjacent to the planar central surface. *Id.*  Moreover, the figures appear to suggest that the ring's top surface is flush with the center portion. *Id.*

The Petition's failure to address the circular concave recess ignores a readily apparent difference between the claimed design and Murray.  EX2001, ¶¶156, 157; *Levitation Arts, Inc. v. Flyte LLC*, PGR2018-00073, Paper 14, 16-22 (PTAB, Jan. 17, 2019); *Dorman Products Inc. v. PACCAR Inc.*, IPR2014-00542, Paper 10 at 5 (PTAB Sept. 5, 2014) (denying institution).

As illustrated below, the claimed design plainly includes a concave recess, whereas Murray has a completely flat center portion.  EX2001, ¶157; EX1001, FIG. 3; EX1008, FIG. 6.  Even assuming that the center portion of the claimed design was simply recessed without a concavity (it is not), Murray does not have any recessed features ***in*** its center (green) portion. *Id.*

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶¶157, 158 (EX1001, FIG. 3 (annotated); EX1008, FIG. 6 at Pet., 77 (annotated)).*

Indeed, Murray does <u>*not*</u> show any step or recess between the inner wall of its ring (blue) and the flat surface (green) surrounded by Murray's ring, as illustrated below.



*EX2001, ¶¶158, 159 (EX1008, FIG. 1 at Pet., 76 (annotated)).*

There is no dispute that Murray lacks both a "recessed center portion" and a *concave* recessed portion, and the latter is never even asserted by the Petition. The *concave* recessed portion feature meaningfully contributes to the charger design's overall visual appearance. EX2001, ¶¶159-160. Furthermore, the circular concave recess is not *de minimis*, nor has Petitioner asserted such. Consequently, Murray lacks an overall appearance that is "basically the same" as the claimed design, and is not a proper primary reference. *Id.* Thus, Ground 5 fails.

> **b)** ***Masimo Fails to Properly Analyze the Compact Puck Design with Proportions that are Substantially the Same Ratio of Width-to-Height of the Claimed Design in Comparison to Murray***

In contrast to the patented design, Murray does *not* have an overall visual appearance of a compact puck. *See* EX2001, ¶¶161-165. For example, Murray does *not* have proportions with substantially the same ratio of width-to-height as shown in the figures of the '131 Patent. *Id.*, ¶161. In stark contrast to the patented design, Murray's design has an overall appearance that is substantially wider and flatter. *Id.* For example, Murray's design noticeably suggests the appearance of a plate or a coaster, even more so than the similarly deficient designs of Lee-616 and CN-470. *Id.*

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶¶161, 162 (EX1001, FIG. 7; EX1008, FIG. 3 (rotated) (annotated)).*

Masimo's theory fails to address the distinctive proportionality of the patented design relative to the disproportionate appearance depicted by Murray's width-to-height ratio—i.e., a substantially wider and flatter design. EX1008, FIG. 3, FIG. 4; EX2001, ¶162. Murray has a width-to-height ratio that differs significantly from the noticeably distinct width-to-height ratio of the patented design. EX2001, ¶162.

Murray lacks the noticeably distinct width-to-height ratio that contributes to the charger design's overall cylindrical shape. EX2001, ¶163. Indeed, Petitioner acknowledges that "[t]he Murray cylinder *has a slightly larger width-to-height ratio than the claimed design*," but erroneously concludes that the "difference, or any difference in the dimensions or proportions of the cylindrical shapes of Murray and the claimed design, *does not alter the overall visual similarity of these designs*." Pet., 78. In making this assumption, Petitioner never addresses the readily-visible dissimilarity of Murray. Unlike the claimed design that evokes a compact puck

appearance, Murray's design is substantially wider and flatter. EX2001, ¶164. The Petition ignores this readily apparent difference, never offering any credible explanation for why a DOSA would consider Murray to have "the same overall visual impression as the claimed design." Pet., 83; EX2001, ¶164. This is insufficient to meet its burden. Petitioner also makes no attempt to explain why the width-to-height ratio is, for example, a *de minimis* difference that does not impact the overall impression of the charger's design. Quite the contrary, this feature is important to the claimed design's overall appearance, and is therefore not trivial. EX2001, ¶165. Thus, Ground 5 fails.

### c)    *Masimo Fails to Properly Analyze the Compact Puck Shape Formed by the Non-Orthogonal Edges Between the Sidewall and the Top and Bottom Surfaces of the Claimed Design in Comparison to Murray*

Unlike the patented design, Murray does <u>not</u> have an overall compact puck design. *See* EX2001, ¶¶166-169. In particular, Murray does <u>not</u> have non-orthogonal edges between a sidewall and the top and bottom surfaces that contribute to the overall compact puck appearance of the claimed design. *Id.*, ¶166. Instead, Murray includes thin stacked, concentric discs, with chamfered upper edges at a transition between its middle and upper discs, creating the appearance of a different diameter between the middle and upper discs. EX2001, ¶166; EX1008, FIG. 3. This is entirely distinct from the visual appearance of the patented design. EX2001, ¶166.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

Even if an ordinary designer would have understood Murray as including the claimed non-orthogonal edges of the '131 Patent (which Murray never mentions and Masimo fails to demonstrate), Murray's appearance is starkly different than the claimed design. *Id*.



*EX2001, ¶¶166, 167 (EX1001, FIG. 7; EX1008, FIG. 3 (rotated)).*

Murray includes stacked, concentric discs of at least two different respective diameters from its chamfered upper edge creating an overall tapered (or slightly domed) appearance of the top surface, rather than the compact puck appearance conveyed by the claimed design. EX2001, ¶167; EX1008, FIG. 3. Additionally, Murray's sidewall includes a distinct cutout that is visible in Murray's front view. EX1008, FIG. 3. Importantly, irrespective of the viewing angle, Murray's top surface is completely flat. EX2001, ¶167. Here again, these features of Murray contribute to its substantially wider and flatter proportions that provide an overall

appearance of a coaster or dinner plate, and that contrasts with the claimed design. *Id.* (citing EX1008, FIG. 3).

Further, Murray's inclusion of design elements dissimilar to the elements of the patented design, such as its elongated width, compressed height, and tapered top surface, contributes to an overall more complex design having a stacked appearance that contrasts with the simple and elegant design provided by the '131 Patent. EX2001, ¶168.  Murray simply does *not* convey the distinctive visual impression of the claimed design's compact, concave puck design.  *Id.*

For at least these reasons, Masimo's Ground 5 fails.

### 2. Masimo's Proposed Series of Modifications Beyond the Design Depicted in Murray are Improper

Masimo's obviousness theory is further based on the flawed premise that "differences between Murray and the claimed design would have been modifications that were suggested by the prior art." Pet., 86; EX2001, ¶¶170.  In making this assumption, Masimo fails to identify a specific prior art reference from various "cylindrical chargers of various sizes and proportions…in the prior art."  Pet., 48. Masimo also fails to address why a DOSA would have arrived at the specific height-to-width ratio of the claimed design based on the "ubiquitous" chargers found in the prior art.  *See* Pet., 26, 48; *See* EX2001, ¶¶170-175.

Masimo acknowledges multiple additional modifications are necessary to provide features of the '131 Patent beyond that depicted by Murray, and, thus, tacitly acknowledges that Murray on its own is not basically the same as the claimed design. *See, e.g.*, Pet., 78 ("any difference in the dimensions or proportions of the cylindrical shapes of Murray and the claimed design, does not alter the overall visual similarity of these designs").  Indeed, Murray requires substantial modifications to address its various deficiencies identified in the Petition, such as its "slightly larger width-to-height ratio than the claimed design" (Pet., 78), "chamfered instead of rounded top edges" (*Id*., 79), "ring [that] is slightly farther from the outermost cylinder sidewall … than the claimed design" (*Id*., 80), "ring [that] is … slightly narrower (less thick) than the claimed design" (*Id*.), and short "cylinder sidewall" (*Id*., 83).  But this extensive list of modifications are directed to features that are not depicted by Murray and are not *de minimis*.  EX2001, ¶¶171-172.

For example, Masimo erroneously asserts that "any difference in the dimensions or proportions of the cylindrical shapes of Murray and the claimed design, does not alter the overall visual similarity of these designs" (Pet., 78) and that "[a]ny differences between the design of Murray and the claimed design would not prevent Murray's use as a primary reference."  Pet., 79.  But Masimo fails to demonstrate that such a change would have been considered obvious by a DOSA,

and that a DOSA would have modified the Murray design to achieve the claimed design's overall appearance.  EX2001, ¶173.

Masimo's obviousness theory and proposed modifications fail for at least two reasons.  First, the Petition's Ground 5 theory is based on Murray, yet cites to multiple references (Pet., 49) without the requisite analysis of why their designs are so related that their modification of Murray would have been obvious.  EX2001, ¶174.  The purported reason for "[m]odifying Murray's charger to use a continuous cylinder sidewall between the cylinder's top surface and bottom surface"—to achieve a "smoother, simpler, and more visually appealing" design—ignores that Murray includes visually symmetry through its compressed sidewall height in combination with its stacked discs and wide body.  Pet., 83; EX2001, ¶174.

Indeed, Murray's shortened sidewalls and tapered upper edges are part of an overarching appearance, which includes its flat top surface, that is visually complementary to its flattened, wider design profile.  EX2001, ¶175; EX1008, FIG. 3.  Masimo never addresses that its proposed modifications would fundamentally alter the visual theme of Murray's complex, low-profile design.  EX2001, ¶175; *see Termax*, IPR2022-00106, Paper 7 at 30.  Masimo's proposed modification and motivation to do so are unsupported and are fatally deficient.

**H.    Ground 6: Masimo Fails to Demonstrate that the Claimed Design
is Obvious in view of Murray in Combination with Chiang**

### 1.    Murray is Not a Proper *Rosen* Reference

Murray is not a proper *Rosen* reference.  *See* §IV.G.1, *supra*; EX2001, ¶¶146-

169, 176.

### 2.    Masimo Fails to Demonstrate that it Would Have Been Obvious to a DOSA to Modify Murray in view of Chiang to Create the Claimed Design

For the reasons provided below, the Petition fails to demonstrate the

unpatentability of the design claim based on its evidence.  EX2001, ¶¶177-183.

#### a)    *Chiang Is Not a Proper Secondary Reference for Combination with Murray*

As described below, the Petition fails to demonstrate that Chiang's power

bank designs are "so related" to Murray that "the appearance" of certain ornamental

features in Chiang would suggest the application of those features to Murray. *See*

EX2001, ¶¶178-182; *In re Glavas*, 230 F.2d 447, 450 (C.C.P.A. 1956).

First, Masimo selects only one feature from Chiang's power bank for

incorporation with Murray— the purported "a continuous cylinder sidewall between

the cylinder's top surface and bottom surface"—ignoring the remaining features of

Chiang that are not shared with Murray.  Pet., 90-91; EX2001, ¶179.  Even if

Chiang's power bank were a proper secondary reference for combination with

Murray (which it is not), Masimo offers no rationale for why a DOSA would have

77

used Chiang to modify Murray's charger by selectively incorporating that one feature and not its other features. EX2001, ¶179. For example, Masimo fails to consider and explain why Chiang's flat top surface and its distinct cutout design were not incorporated. Such "selective use of the design characteristics of the prior art" is improper. *Premier Gem Corp*, IPR2016-00434, Paper 9, at 16 (PTAB, 2016); *L.A. Gear*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).

Second, Masimo never addresses visibly prominent differences of Chiang in comparison to Murray. EX2001, ¶180. Masimo's assumption that a DOSA would have incorporated vastly dissimilar features from Chiang's simplistic and plain design, such as a smooth sidewall, ignores this overall appearance of Murray's complex and asymmetrical design. *Id.* Maismo also fails to explain why a DOSA would have modified Murray with such vastly different features from Chiang and propose modifications that deviate substantially from the complex overall visual appearance provided by Murray. *Id*.

Masimo's proposed modifications of Murray based on Chiang are unsupported by any sufficient explanation and are fatally deficient. EX2001, ¶181. Petitioner asserts that "a DOSA would have been motivated to combine Chiang's cylinder sidewall with Murray's charger for the same reasons explained above ***with respect to modifying Lee-616 alone***." Pet., 91. But Petitioner fails to explain why

modification of Lee-616 is relevant to an analysis of Murray—a prior art reference having a design having an overall appearance distinct from Lee-616's.

For the reasons above, Ground 6 fails.

> **b)** ***Masimo Fails to Demonstrate that Murray, as modified in view of Chiang, Creates the Same Overall Visual Appearance as the Claimed Design***

Even if proper (*arguendo*), Petitioner's proposed combination of Murray and Chiang does *not* disclose or render obvious the patented design at least because the combination fails to create the same overall visual appearance as the compact puck design of the '131 Patent.  EX2001, ¶182.  The alleged combination does *not* convey the distinctive visual impression of a unique design for a "charger" with an overall appearance of a compact puck having a distinctive circular concave recess on the top major face that evokes an elegant nest or cradle appearance.   The alleged combination lacks the claimed design's prominent features—a circular concave recess and a substantially similar width-to-height ratio—thus failing to provide the claimed design's overall visual appearance.  *Id*.  As shown below, because neither Murray nor Chiang have a circular concave recess or a compact puck shape, the alleged combination would also lack these key features.  These differences result in an overall appearance that is distinct from the overall appearance provided by the patented design.  Ground 6 fails for at least these reasons.  *Id*.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶182 (EX1001, FIG. 1 (annotated);EX1008, FIG. 1 as shown in Pet., 37 (annotated); EX1009, FIG. 1 (annotated)).*

### 3. Chiang is Nonanalogous art and Does Not Qualify as Invalidating Prior Art Against the '131 Patent

*See* §IV.D.3, *supra*; EX2001, ¶183.

## I. Ground 7: Masimo Fails to Demonstrate that the Claimed Design is Obvious in view of Chiang Alone

Ground 7 is deficient at least because  Chiang is not a proper primary reference for multiple reasons.  *See* EX2001, ¶¶184-192.  As discussed previously (§IV.D.3, *supra*), Chiang is not analogous art to the claimed design and therefore is not a valid prior art reference.  Second, like Lee-616, CN-470, and Murray, Chiang lacks the claimed design's prominent features—the circular *concave* recess that contributes to a nest or cradle appearance and the compact body shape that resembles a compact puck—thus, underscoring the substantial differences and overall lack of visual

similarity between the '131 Patent and Chiang.  EX2001, ¶184.  Thus, Ground 7 fails.



*EX2001, ¶184 (EX1001, FIG. 1 (annotated), EX1009, FIG. 1).*

### 1.    Chiang is Nonanalogous art and Does Not Qualify as Invalidating Prior Art Against the '131 Patent

*See* §IV.D.3, *supra*; EX2001, ¶185.

### 2.    Chiang is Not a Proper *Rosen* Reference

Chiang is not a proper primary reference, as discussed below.  *See* EX2001, ¶¶186-192.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

### a) Masimo Fails to Properly Analyze the Circular Concave Recess in Comparison to Chiang

Chiang lacks the distinctive circular *concave* recess inset from a ring that contributes to the claimed design's resulting nest or cradle overall appearance and its compact puck shape.  EX2001, ¶187; EX1009, FIG. 1.  Like Lee-616 and CN-470, Chiang lacks these critical features, and therefore lacks the overall appearance of the claimed design.  EX2001, ¶187.  Given at least this prominent difference, Masimo fails to demonstrate that Chiang has an appearance that is "basically the same" as the patented design.  *See* Pet., 94-95; EX2001, ¶187. Furthermore, as previously discussed, Masimo's attempt to "factor out" the circular concave recess as a functional aspect fails because it is not a purely functional feature that can be "factored out."  *See* Sections IV.B, *supra*; Pet., 100, 102-103; *see also* EX2001, ¶¶23, 24, 30-43.

82

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶¶187, 188 (EX1001, FIG. 1 (annotated); EX1009, FIG. 1 (annotated))*

**b)      Masimo Fails to Properly Analyze the Compact Puck Design with Proportions that are Substantially the Same Ratio of Width-to-Height of the Claimed Design in Comparison to Chiang**

Chiang lacks a compact puck shape with proportions that are substantially the same ratio of width to height of the claimed design.  EX2001, ¶¶187-188.  Instead, Chiang has a substantially wider and flatter, and suggests the appearance of a plate or a coaster.  *Id*.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1



*EX2001, ¶¶189, 190 (EX1001, FIG. 7 (annotated); EX1009, FIG. 3 (annotated))*

Masimo fails to address this substantial difference other than to allege that it "does not alter the overall visual similarity."  Pet., 97.  The width-to-height ratio meaningfully contributes to the overall compact puck appearance of the '131 patent's design.  EX2001, ¶190.  Without this feature, Chiang lacks an overall appearance that is "basically the same" as the claimed design.  *Id*.

### c)  Masimo Fails to Demonstrate that Chiang Teaches a Ring Disposed at the Top Surface

Chiang lacks a ring on its top surface and therefore fails to provide an overall appearance that is "basically the same" as the claimed design.  EX2001, ¶191.  The ring meaningfully contributes to the overall appearance of the '131 patent's design, and without this feature, Chiang lacks an overall appearance that is "basically the same" as the claimed design.  *Id*.

**d)      Masimo Fails to Properly Analyze the Compact Puck Design Formed by the Continuous Sidewall of the Claimed Design in Comparison to Chiang**

Chiang lacks a sidewall that is continuous, unbroken, and uninterrupted by features that distract from its continuity.  EX2001, ¶192.  Instead, Chiang includes cutouts and a series of circular features spaced along the sidewall.  EX1009, FIG. 1.  The continuous wall meaningfully contributes to the overall appearance of the '131 patent's design, and without this feature, Chiang lacks an overall appearance that is "basically the same" as the claimed design.  EX2001, ¶192.

**3.      Masimo's Proposed Series of Modifications Beyond the Design Depicted in Chiang are Improper**

Masimo acknowledges additional modifications are necessary to provide features of the '131 Patent beyond that depicted by Chiang, and, thus, tacitly acknowledges that Chiang on its own is not basically the same as the claimed design. *See, e.g.*, Pet., 103 ("modifying Chiang's top surface into a short, flat ring surrounding a recessed center portion").   But these additional modifications are directed to features that are not depicted by Chiang and are not *de minimis*.  EX2001, ¶193.

Masimo's assertion that "modifying Chiang's top surface into a short, flat ring surrounding a recessed center portion…would have been a routine modification that was taught by the prior art," because "Chiang is closely related to numerous prior

art cylindrical chargers" (Pet., 103) fails to demonstrate that such a change would have been considered obvious by a DOSA, and that a DOSA would have modified the Chiang design to achieve the claimed design's overall appearance.  EX2001, ¶194.  But Petition does not rely on any specific references for this modification.  *Id.* Even if flat rings were used on "numerous prior art cylindrical chargers," (Petition, 103), the mere knowledge of a shape is insufficient for an obviousness finding.  *In re Harvey*, 12 F.3d 1061, 1065 (Fed. Cir. 1993).

### 4.    Masimo Fails to Demonstrate that Modified Chiang Creates the Same Overall Visual Appearance as the Claimed Design

Additionally, even if proper (*arguendo*), Petitioner's proposed modification of Chiang does <u>not</u> disclose or render obvious the patented design at least because the combination fails to create the same overall visual appearance as the '131 Patent. EX2001, ¶195.   The proposed modified Chiang does <u>not</u> convey the distinctive visual impression of a unique design for a "charger" with an overall appearance of a compact puck having a distinctive circular concave recess on the top major face that evokes an elegant nest or cradle appearance.  EX2001, ¶¶195, 196.  Modified Chiang lacks the claimed design's prominent features—a circular concave recess in its center portion and a width-to-height ratio that forms a compact puck design—thus, failing to provide the '131 Patent's overall visual appearance.  *Id*.  Furthermore, modified Chiang lacks other distinctive features of the claimed design that affect its

overall appearance. *Id.* For example, in contrast to the claimed continuous sidewall of the '131 Patent, Chaing's sidewall is interrupted by two cutouts and a series of four circular features. EX1009, FIG. 1. But these differences are not addressed by the Petition even though they result in an overall appearance that is distinct from the claimed design's overall appearance. Pet., 105-106 (alleged modified Chiang shows sidewall cutouts). Thus, Ground 7 fails. EX2001, ¶¶195, 196.



*EX2001, ¶¶195, 196 (EX1001, FIG. 1 (annotated); EX1009, FIG. 1 (annotated)).*

## V.   CONCLUSION

For the foregoing reasons, Patent Owner requests that the Board deny institution, and thus decline to institute *inter partes* review of the '131 Patent.

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

Respectfully submitted,

Date: 8/24/2023

/Grace J. Kim/
W. Karl Renner, Reg. No. 41,265
Roberto J. Devoto, Reg. No. 55,108
Craig A. Deutsch, Reg. No. 69,264
Grace Kim, Reg. No. 71,977
Andrew Patrick, Reg. No. 63,471
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
T: 202-783-5070
F: 877-769-7945

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

## CERTIFICATION UNDER 37 CFR § 42.24(d)

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies

that the word count for the foregoing Patent Owner's Preliminary Response totals

13,934, which is less than the 14,000 allowed under 37 CFR § 42.24(b)(1).


Respectfully submitted,


Date: 8/24/2023                    /Grace J. Kim/
                                   W. Karl Renner, Reg. No. 41,265
                                   Roberto J. Devoto, Reg. No. 55,108
                                   Craig A. Deutsch, Reg. No. 69,264
                                   Grace Kim, Reg. No. 71,977
                                   Andrew Patrick, Reg. No. 63,471
                                   Fish & Richardson P.C.
                                   60 South Sixth Street, Suite 3200
                                   Minneapolis, MN 55402
                                   T: 202-783-5070
                                   F: 877-769-7945

Case No. IPR2023-00831
Attorney Docket No: 50095-0153IP1

## CERTIFICATE OF SERVICE

Pursuant to 37 C.F.R. § 42.6(e)(4), the undersigned certifies that on August

24, 2023, a complete and entire copy of this Patent Owner's Preliminary Response

and its supporting exhibits were provided via email, to the Petitioner by serving the

email correspondence addresses of record as follows:

Douglas B. Wentzel (Reg. No. 74,897)
Jarom D. Kesler (Reg. No. 57,046)
Brian C. Claassen (Reg. No. 63,051)

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

E-mail: MasimoIPR131@knobbe.com

/Crena Pacheco/
Crena Pacheco
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
pacheco@fr.com