**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-1377-MN-JLH |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MASIMO CORPORATION and | ) | **PUBLIC VERSION** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, and | ) | |
| SOUND UNITED, LLC | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-1378-MN-JLH |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MASIMO CORPORATION and | ) | **PUBLIC VERSION** |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| CERCACOR LABORATORIES, INC., and | ) | |
| SOUND UNITED, LLC | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM DAVID E. MOORE**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

| | |
|---|---|
| OF COUNSEL: | David E. Moore (#3983) |
| | Bindu A. Palapura (#5370) |
| John M. Desmarais | Andrew L. Brown (#6766) |
| Jordan N. Malz | POTTER ANDERSON & CURRON LLP |
| Cosmin Maier | Hercules Plaza, 6th Floor |
| Kerri-Ann Limbeek | 1313 N. Market Street |
| Jeffrey Scott Seddon, II | Wilmington, DE  19801 |
| DESMARAIS LLP | Tel: (302) 984-6000 |
| 230 Park Avenue | dmoore@potteranderson.com |
| New York, NY 10169 | bpalapura@potteranderson.com |
| Tel: (212) 351-3400 | abrown@potteranderson.com |
| | |
| Peter C. Magic | *Attorneys for Plaintiff/Counter-Defendant* |
| DESMARAIS LLP | *Apple Inc.* |
| 101 California Street | |
| San Francisco, CA 94111 | |
| Tel: (415) 573-1900 | |

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  September 7, 2023
11042419/12209.00051

 Public Version Dated: September 14, 2023

Re:     Apple Inc.'s Letter Brief Concerning Discovery Disputes

Dear Judge Hall:

Plaintiff and Counter-Defendant Apple submits this Response to Masimo's September 1, 2023 Letter to the Court (1377 C.A. No., D.I. 285;[1] 1378 C.A. No., D.I. 308).

**Issue 1: The Court should reject Masimo's demand for financial information on apps and services with no nexus to its infringement allegations (RFPs 132–134, 136–137).**

Masimo's demands—that Apple produce financial information not even conceivably related to the Apple Watch product—far exceed the scope of Masimo's infringement allegations or permissible discovery and should be denied in their entirety. Masimo's infringement allegations are narrow: Masimo targets two health and wellness features—blood-oxygen and heart rate measurement (in connection with blood oxygen measurement)—in the accused Apple Watch products. *See* Ex. A (excerpting Masimo infringement contentions). Apple has produced the relevant financial information on the accused products (revenues, costs, and ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇), *see, e.g.*, Exs. B-E, and discovery on the relevant apps and frameworks (Blood Oxygen, Health, and Healthkit, *see, e.g.*, Ex. F (Apple Resp. to Masimo Interrogatory No. 31) at 3. Apple has thus provided substantial discovery on both the accused products and the accused features.

Masimo nonetheless argues that Apple must provide discovery on all "follow-on revenue from each accused Apple Watch sale," including all "revenue from the Apple App Store" (D.I. 285 at 1) but does not show the requisite nexus between the accused blood oxygen and heart rate features and the demanded revenue. *See, e.g.*, *TV Interactive Data Corp. v. Sony Corp.*, 2012 U.S. Dist. LEXIS 61004, at *11–12 (N.D. Cal. May 1, 2012) (denying a request for sales information where patentee failed to show nexus between the alleged invention and sales of non-patented products); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) (rejecting damages analysis, *inter alia*, that relied on revenues with "no demonstrated correlation to the value of the patented feature alone"). Nor could it—the "Analysis Group study" Masimo relies on to argue relevance of the App Store does not even mention blood oxygen or heart rate, despite identifying other health and wellness apps (e.g., for running, fitness, sleep, mediation, hearing, nutrition, medication tracking, blood pressure, and weight management) (D.I. 285, Ex. 3 at 17), as well as other (larger) app categories (e.g., games, business, and education). *Id.* at 15. Similarly, Masimo cannot show the accused features drive Apple's "subscription revenue," which covers wholly irrelevant services—AppleTV+ subscriptions, for instance, are driven by TV shows like "Ted Lasso," not Apple Watch blood oxygen and heart rate measurement features. D.I. 285, Ex. 4 at 7. Masimo does not and cannot argue that all apps and subscription services are relevant to its infringement claims. Indeed, in the meet and confer, Masimo could not identify *any* apps or subscriptions related to blood oxygen or heart rate measurements besides Blood Oxygen, Health, and Healthkit. *See* D.I. 285, Ex. 11 (8/22 email from David Cho).

In an effort to circumvent its inability to show any "follow-on revenue" tied to the accused features, Masimo argues Apple should produce revenue supposedly related to Apple Watch sales because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 285 at 1) but that assertion ignores the law. "Convoyed" sales must be tied to "[t]he effect of selling **the patented specialty**," not just sales of the accused product generally. *See Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)

---

[1] Docket citations are to C.A. No. 22-1377 unless otherwise noted.

The Honorable Jennifer L. Hall  Page 2
September 7, 2023

(emphasis added); *see also Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) ("Our precedent has not extended liability to include items that have essentially no functional relationship to the patented invention . . . .") (citation omitted). Moreover, Masimo does not even show that the requested revenue is connected to Apple Watch sales—Apple App Store apps and subscriptions are not sold together with an Apple Watch. *See* Ex. G. Indeed, many apps and subscriptions, e.g., AppleTV+ subscriptions, are completely unrelated.

Masimo also argues that "follow-on revenue" is relevant to its lost profits theory, but that justification is also contrary to law—lost profits analyses similarly require a nexus between the non-patented and patented features. *See Am. Seating Co.*, 514 F.3d at 1268–69 (rejecting lost profits claim to non-patented features (passenger seats) without an "interrelated or functional relationship" to the accused feature (tie-down restraint system) in a passenger bus). Moreover, Masimo's asserted relevance (D.I. 285 at 1 ("Apple's follow-on revenue is relevant to the amount it would have been willing to pay for Masimo's module")) is both unsupported attorney argument and contradicted by the evidence. *See* Ex. F (Apple Resp. to Masimo Interrogatory No. 31) at 3 ████████████████████████████████████████████████████████████████████.

Moreover, Masimo's request—which it claims to cover all revenue and financial information related to Apple's App Store and other so-called follow-on revenue—is unduly burdensome on its face. Apple's App Store has nearly 1.8 million apps (*see* Ex. H at 5; D.I. 285, Ex. 3 at 14) available on multiple devices, including the non-accused iPhone and iPad. *See* D.I. 285, Ex. 3 at 16. Apple's "subscription" services, e.g., AppleTV+, are available even more broadly, including on non-Apple devices. *See* Exs. I, J. Collecting (much less analyzing) that massive set of irrelevant data—in addition to the discovery already provided on Apple Watch itself and the Blood Oxygen, Health, and Healthkit apps and framework—would be disproportionate and unduly burdensome, thus the Court should deny Masimo's requests for that additional reason. *See* Fed. R. Civ. P. 26(b)(1).

<u>Masimo's Specific Requests:</u>

**RFP 133 and 136**: Masimo's requests for "App Store revenue"—including "Apple's revenue from *all* apps and subscriptions sold through the app store," "Apple's corresponding profits," and "████████████████████████████████████████████████████████████████████" (D.I. 285 at 2) should be denied for all the reasons described above.

Furthermore, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[2] Apple's Services business segment is not limited to the App Store, but includes a host of wholly unrelated services, including advertising, cloud services, payment services (e.g., Apple Card), AppleCare, and digital content such as Apple Arcade, Music, and TV+. *See* Ex. K at 2. And ████████████████████████████████████████████ sheds no light on financial performance of the App Store (even if it were relevant, which it is not), thus Masimo's fishing expedition should be denied for that additional reason.

**RFP 137**: Masimo's request for "information on how Apple Watch sales affect Apple's revenue, cost, or profits from the App Store" (D.I. 285 at 2) is irrelevant and should be denied for the above reasons—and is also moot. As Apple informed Masimo in its response to Masimo's Interrogatory No. 31, ████████████████████████████████████████████████████

---

[2] ████████████████████████████████████████████████████████████████████.

The Honorable Jennifer L. Hall  Page 3
September 7, 2023

███████████████████████████████████████████████
█████████████████████████████████████" *See* Ex. F at 3.

**RFP 132 and 134**: Masimo's requests for "Apple's analyses concerning how including a blood-oxygen feature on its watches impacts Apple's [alleged] follow-on revenue" and "documents sufficient to show Apple's finances concerning App services specifically related to the blood-oxygen feature" (D.I. 285 at 3) should similarly be denied as moot. Apple has provided discovery on the only software identified by Masimo as relevant to blood oxygen measurement—the Blood Oxygen and Health apps and the Healthkit framework—which "are available for no additional cost with purchase of an Apple Watch" and for which "Apple does not receive additional revenue." *See* Ex. F at 4. And, despite having access to the App Store, Masimo has yet to identify *any* additional app or service, third-party or otherwise, connected to this request in its infringement contentions (Ex. A) or in its letter (D.I. 285), thus presents no live dispute for the Court to resolve.

**Issue 2: Masimo's request for documents supposedly related to "physiological-monitoring technology" and intellectual property valuations should be denied as moot (RFPs 163–164).**

Masimo's premature demand for documents responsive to its Request for Production Nos. 163 and 164 should be denied because there is no live dispute between the parties—Apple never refused to produce documents responsive to these requests. To the contrary, Apple agreed to produce responsive documents in its initial responses (*see* D.I. 285, Ex. 2 at 151-53), agreed to conduct a further investigation after Masimo clarified its requests during a meet and confer (*see* D.I. 285, Ex. 10 (7/28/23 email from Jeff Seddon); Ex. 11 (8/22/23 email from David Cho)), and, now that it has concluded its investigation, will produce responsive non-privileged documents to the extent that they exist.

In particular, during the parties' conferrals, Masimo clarified that it sought "documents related to license agreements produced in the C.D. Cal. case, as well as documents related to opportunities that Apple passed up and did not seek a license" in connection with these requests. *See* D.I. 285, Ex. 10 (7/13/23 email from Jeff Seddon). And, following its investigation, Apple will produce responsive, non-privileged documents, i.e., negotiations and documents exchanged with third parties, from ████████████ regarding the agreements produced in the C.D. Cal. case. Moreover, despite conducting a reasonable search, Apple has not found any additional documents—beyond those already produced in the C.D. Cal. case and thus available through the parties' cross-use agreement—regarding opportunities ████████████████████████ ████████ that Apple passed on. Thus there is no dispute for the Court to resolve here.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:nmt/11042419/12209.00051

Enclosures
cc:    Clerk of Court (via hand delivery)
       Counsel of Record (via electronic mail)