IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC, <br><br> Plaintiff, <br><br> v. <br><br> MASIMO CORPORATION and SOUND UNITED, LLC, <br><br> Defendants. | Civil Action No. 22-1377 (MN) (JLH) <br><br> **REDACTED - PUBLIC VERSION** |
| APPLE INC, <br><br> Plaintiff, <br><br> v. <br><br> MASIMO CORPORATION and SOUND UNITED, LLC, <br><br> Defendants. | Civil Action No. 22-1378 (MN) (JLH) <br><br> **REDACTED - PUBLIC VERSION** |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM JOHN C. PHILLIPS, JR.**

Dated: September 11, 2023

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
Telephone: (302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Defendants*

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

Dear Judge Hall:

Masimo responds to Apple's September 6, 2023 Letter Brief. *See* 1377 Case, D.I. 296; 1378 Case, D.I. 319 ("Letter Br.").[1]

**Issue 1: Limiting the parties to 600,000 emails and attachments is appropriate**

Reviewing approximately 600,000 emails and attachments is proportional to the needs of these cases. *See* Fed. R. Civ. P. 26(b)(1). The parties previously produced hundreds of thousands of documents and emails in their co-pending proceedings, which the parties are using in these cases under a cross-use arrangement. Moreover, the parties have already exchanged tens of thousands of additional documents in these cases, including thousands of sensitive CAD files and source code files, totaling over 2 million pages. And the parties are working under a compressed case schedule, which Apple requested. D.I. 44. Reviewing and producing another 600,000 emails and attachments is robust and appropriate under the circumstances and in view of the issues in these cases.

Apple's Email Requests hit over 1.4 million emails and attachments. Letter Br., Ex. 11 at 10 (August 15, 2023 Email from Bunker to Seddon). Assuming a reviewer spends an average of 30 seconds reviewing each email and attachment (which are often multi-page), 1.4 million hits would require more than 11,600 hours to review. This is not proportional under the circumstances, including the application of cross-use and the compressed schedule. These circumstances also distinguish the present cases from those Apple cites in its Letter Brief. *See* Letter Br. 1.

Contrary to Apple's allegation, Apple did not narrow its Requests several times to resolve this dispute. *See* Letter Br. 1. On August 15, 2023, five days after Apple served its Requests, Masimo told Apple that its Requests were unreasonable because they hit over 1.4 million emails and attachments. Letter Br., Ex. 11 at 10 (August 15, 2023 Email from Bunker to Seddon). Apple then stalled revising its requests until September 5, 2023—three weeks after Masimo objected and the night before Apple filed its Letter Brief. Letter Br., Ex. 1 at 1 ("2023-09-05").[2]

Apple asserts that Masimo's Requests result in more than 600,000 hits. Letter Br. 1 n.2. But three days after Apple provided a hit count to Masimo, Masimo narrowed its Requests. Letter Br., Ex. 11 at 2 (August 28, 2023 Email from Bunker to Seddon). Masimo has asked Apple to provide an updated hit count, but Apple has not yet provided that information. *See id*. If necessary, Masimo would further revise its Requests to reduce the number of emails and attachments hit to approximately 600,000.

Apple asserts that Masimo must identify the ways Apple should revise its Requests. Letter Br. 2. But it is not reasonable to require Masimo to review 1.4 million emails and attachments to catalogue all the ways Apple's Requests are overbroad or disproportionate. Moreover, Apple's requests are unreasonable on their face. Apple's September 5 revised Requests still seek emails from 2005 to the present, more than 18 years. Letter Br. 1, Ex. 1 at 2 ("Time Frame: January 1, 2005-Present"). Such facially overbroad Requests undermine Apple's assertion that any

---

[1] Unless otherwise noted, "D.I." citations refer to Case No. 22-1377.
[2] Shortly after receiving the revised Requests, Masimo began running searches using them. Hours before filing this brief, Masimo received initial hit count results based on the revised Requests. Masimo is in the process of reviewing the initial results and will update Apple and the Court as soon as possible.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall  2
September 11, 2023

imbalance in hit count between the parties is due to Masimo discussing Apple more than Apple discusses Masimo.  *See* Letter Br. 1 n.2.

Apple asserts that Masimo has not produced any emails.  However, in view of the case schedule, while Masimo objected to Apple's Requests, Masimo began reviewing hits resulting from some of Apple's Requests.  Masimo plans to produce emails and attachments this week.

Accordingly, Masimo respectfully requests the Court order the parties to limit their Email Requests to result in no more than approximately 600,000 emails and attachments.[3]

### Issue 2: Apple's RFPs are overly broad and disproportionate

Apple's requests are overly broad and disproportionate for the reasons explained below. Masimo has organized its arguments and grouped Apple's RFPs to follow Apple's organization. For the Court's convenience, Masimo includes the relevant RFPs and definition of terms in the attached Appendices.

### *Issue 2(a): Apple RFP Nos. 178-180, 183-198, 266-269, and 278*

**Issue 2(a)(i): Apple RFP Nos. 178, 180, 183, 185, 188, 192, 194-198, 266-269, 278 (the "Masimo Products Requests") (Appendix A)**.  The Masimo Products Requests are overly broad and disproportionate for three reasons.  ***First***, the only two Masimo products that Apple includes in its Final Invalidity Contentions ("FIC") are the Masimo Radical and Masimo SET Sensor. Letter Br., Ex. 19 at 9.  Apple served separate requests (not at issue here) seeking documents relating to the structure, function, and operation of these products, and Masimo has already agreed to produce documents in response to those requests.  The Masimo Products Requests, however, go well beyond these two and broadly seek discovery on nearly all of Masimo's oximetry products. Appendix A.  Through Apple's use of its defined terms "Masimo Pulse Oximeters" and "Masimo Prior Art Product," these requests seek documents relating to many other products, such as the Masimo MX-5 and MS-2040 boards, which are incorporated into monitors or displays.  Discovery on products excluded from Apple's contentions is thus make-work.  ***Second***, the Masimo Products Requests seek documents regarding all products up to 2018 or 2020, Appendix A.  But Apple has only charted the two Masimo products for Masimo patents having a priority date of 2005.  Letter Br., Ex. 19 at 41, 87; *see also* 1378 Case, D.I. 15, Exs. 8, 10.  Apple's requests are thus directed to products dated years after the relevant priority date.  ***Third***, regarding RFP No. 192, Apple seeks discovery on "any use" of the products, which is disproportionate for the reasons explained below in Issue 2(a)(ii).

**Issue 2(a)(ii): Apple RFP Nos. 190-191 (the "Any Use Requests") (Appendix B).**  The Any Use Requests seek documents describing any use of the Masimo Radical or Masimo SET Sensor before 2018 or 2020, Appendix B, and are overly broad and disproportionate for two reasons.  ***First***, because the priority date of the relevant Masimo asserted patents is 2005, discovery regarding use of these alleged prior-art products years after the priority date is unhelpful.  ***Second***, "any use" is so broad that it includes, for example, any use by any patient.  Masimo's products are

---

[3] Masimo is objecting to Apple's use of a "responsiveness" filter to withhold emails that hit on Masimo's Email Requests.  *See* D.I. 295.  Masimo submits that the parties' emails should be reviewed for privilege only.  *Id*.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 3
September 11, 2023

used by over 200 million patients worldwide a year—Apple cannot show that discovery on "any use" is reasonably directed to the issues here.

**Issue 2(a)(iii): Apple RFP Nos. 179, 184, 189, 193 (the "LIFEPAK Requests") (Appendix C)**. The LIFEPAK Requests seek documents on "all Masimo sensors" that are capable of measuring blood oxygen and are compatible with a third-party product referred to as LIFEPAK 15. Appendix C. These requests are disproportionate for two reasons. *First*, Apple does not identify these Masimo sensors as relevant prior art in its FIC. Instead, Apple identifies only the third-party LIFEPAK 15 product. Letter Br., Ex. 19 at 8, 70. Apple fails to explain why discovery on these sensors, which are not asserted prior art, are relevant and proportional to the patent validity issues here. *Second*, the relevant Masimo patent has a 2012 priority date, while the LIFEPAK Requests seek documents up to 2018, more than five years post-priority.

**Issue 2(a)(iv): Apple RFP Nos. 186 and 187 (the "Source Code Requests") (Appendix D)**. The Source Code Requests seek sensitive source code sufficient to show the functionality of the Masimo Radical and the Masimo SET before 2018 and 2020, respectively. Appendix D. Again, 2018 and 2020 are many years after the priority date of the relevant patents. Nevertheless, Masimo offered to search for responsive source code reflecting these two products before March 1, 2006. Letter Br., Ex. 21 at 1. Masimo submits that these requests are overly broad and not proportional but is still willing to produce according to its offer.

*Issue 2(b): Apple RFP Nos. 199 and 270-276 (the "Third-Party Products Requests")*

The Third-Party Products Requests, along with relevant definitions, are listed in Appendix E. These requests are overbroad and not proportional for three reasons. *First*, these requests seek technical documents regarding products that are not made or sold by Masimo. There is no indication that Masimo is in a unique position to provide such technical discovery on these third-party products. Moreover, because these are not Masimo products, Masimo does not have an effective, central method to search for such documents. And Apple has already served many subpoenas seeking these materials directly from these third parties. *Second*, while Apple includes a few third-party products in its invalidity contentions, Apple's defined terms go well beyond those products and broadly seek discovery on all oximeter products and all watch products from those third parties. Appendix E. *Third*, RFP Nos. 199 and 276 seek documents regarding contentions in separate lawsuits between Masimo and competitors regarding patents not at issue in this case. Moreover, those requests go well beyond the specific products Apple includes in its FIC.

*Issue 2(c): Apple RFP Nos. 257-259 (the "All Prior Art Requests")*

The All Prior Art Requests are listed in Appendix F. These requests are overbroad and not proportional. RFP Nos. 257 and 258 seek *all* documents referring or relating to *any* prior art that *anybody* has ever identified as potentially relevant to any of the Masimo Asserted Patents or *any* applications in the priority chain. RFP No. 259 seeks *all* documents referring or relating to *any* of the dozens of references Apple included in its Invalidity Contentions. *Id*. Apple's assertion of inequitable conduct is not only unpled but is directed at only a few specific individuals and a few specific references. Letter Br., Ex. 20. Apple's assertions do not justify these facially overbroad requests.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 4
September 11, 2023

Respectfully submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (#110)

cc: All counsel of record (via Email & CM/ECF

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall  5
September 11, 2023

# Appendix A – The "Masimo Products Requests"[4]

Issue 2(a)(i)

(RFP Nos. 178, 180, 183, 185, 188, 192, 194-198, 266-269, 278)

## Relevant Definitions

"**Masimo Radical**" = "The Masimo Radical Signal Extraction Pulse Oximeter, as described in the Masimo Radical Signal Extraction Pulse Oximeter Operator's Manual."

"**Masimo SET**" = "The Masimo pulse oximetry system relying on a SET sensor, as described in APL_DEL00037755, APL_DEL00037757, and/or APL_DEL00037764."

"**LIFEPAK 15-Compatible Masimo Sensors**" = "All Masimo sensors that are capable of measure SpO2 and are compatible with the Physio-Control LIFEPAK 15 monitor, as described in the LIFEPAK 15 Monitor/Defibrillator Operating Instructions."

"**Masimo Pulse Oximeters**" = "The Masimo 'portable and other oximeters' that are 'incorporated by reference' into the '507 patent from U.S. Patent Nos. 6,770,028, 6,658,276, 6,157,850, 6,002,952, and 5,769,785, including at least the Masimo SET MS-3L, the Masimo SET MS-5 board, the MS-2040 OEM board, and the MX-5 board."

"**Masimo Prior Art Product**" = "The **Masimo Radical**, the **Masimo SET**, the **Masimo Pulse Oximeters**, and the **LIFEPAK 15-Compatible Masimo Sensors**."

## Requests

178. All documents describing the functionality, features, and operation of the **Masimo Pulse Oximeters** prior to **January 25, 2018**, including, without limitation, user manuals, brochures, presentations, user guides, engineering specifications, technical manuals, product specifications, data sheets, research papers, service manuals, operator's manuals, implementation guides, white papers, product tutorials, and non-public documentation.

180. Documents sufficient to show the earliest dates that each **Masimo Prior Art Product** was reduced to practice, made, used, sold, licensed, offered for sale, in public use, and otherwise available to the public in the United States, including but not limited to documents relating to any conference, seminar, exhibition, convention, or trade show at which such **Masimo Prior Art Product** is or was discussed, referred to, advertised, displayed, demonstrated, or shown, such as, without limitation, product specifications, catalogs, announcements, advertisements, brochures, articles, pamphlets, price lists, invoices, purchase orders, sales records, or other promotional, marketing, or sales materials.

---

[4] Unless otherwise noted, the definitions and requests included in Appendices A-F are quoted from Letter Br., Exs. 2-3.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall  6
September 11, 2023

183. All publications related to the **Masimo Pulse Oximeters** that were made available to the public before **January 25, 2018**.

185. Three samples of each **Masimo Prior Art Product**.

188. Source Code sufficient to show the functionality of the **Masimo Pulse Oximeters** before **January 25, 2018**.

192. Documents describing **any use** (including use by third parties such as end users) of the **Masimo Pulse Oximeters** in the United States before **January 25, 2018**.

194. All documents sufficient to show the first date each **Masimo Prior Art Product** was made, used, sold, licensed, offered for sale, and otherwise made publicly available in the United States.

195. For each of the **Masimo Prior Art Products**, documents sufficient to identify the persons and entities involved in the conception, design, research, development, testing, use, operation, maintenance, marketing, modifying, sale, offer for sale, and supply of the **Masimo Prior Art Products**.

196. All documents referring or relating to Counterclaimants' design, development, testing, production, or manufacture of the **Masimo Prior Art Products**, including laboratory or engineering workbooks, laboratory or engineering reports, invention disclosures, inventor files, presentations, internal memoranda, test reports, instructions, written procedures or protocols, test protocols, test data and results, flowcharts, design requirements, articles, specifications, manuals, schematics, drawings, guides, or other publications.

197. All documents identifying and describing the circuitry, layout, composition, and architecture of each of the **Masimo Prior Art Products** and all components, modules, hardware, and software contained therein, including circuit schematics, structural teardowns, product literature, printable circuit board layout specifications, circuit simulation testing files, block diagrams, layout files, GDS files, scanning electron microscopy imaging, transmission electron microscopy imaging, and electron energy loss spectroscopy analysis.

198. All documents referring or relating to the usage of the **Masimo Prior Art Products**, including models, instructions, written procedures or protocols, directions, user guides, course materials, videos, demonstration videos, manuals, training manuals and other training material, pamphlets, booklets, fliers, and presentations.

266. All documents referring or relating to measuring, displaying, viewing, and storing information about blood oxygen and heart rate on the **Masimo Prior Art Products** or any other products that Counterclaimants contend are covered or embodied by any claim of any Masimo Asserted Patent.

267. All documents referring or relating to heart rate notifications on the **Masimo Prior Art Products** or any other products that Counterclaimants contend are covered or embodied by any claim of any Masimo Asserted Patent, including without limitation displays and notifications relating to low heart rate alerts and high heart rate alerts.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 7
September 11, 2023

268. All documents relating to receiving and/or processing signals from optical sensors or photodiodes in the **Masimo Prior Art Products** or any other products that Counterclaimants contend are covered or embodied by any claim of any Masimo Asserted Patent.

269. All documents relating to processing signals from optical sensors or photodiodes in the **Masimo Prior Art Products** or any other products that Counterclaimants contend are covered or embodied by any claim of any Masimo Asserted Patent, including without limitation calculating blood oxygen and heart rate from optical sensors or photodiodes.

278. All documents referring or relating to each version of the **Masimo Pulse Oximetry Sensors** prior to March 1, 2004, including the structure, function, and technical operation thereof as well as their dates of public availability.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 8
September 11, 2023

## Appendix B – The "Any Use Requests"

Issue 2(a)(ii)

(RFP Nos. 190-191)

### Relevant Definitions

"**Masimo Radical**" = "The Masimo Radical Signal Extraction Pulse Oximeter, as described in the Masimo Radical Signal Extraction Pulse Oximeter Operator's Manual."

"**Masimo SET**" = "The Masimo pulse oximetry system relying on a SET sensor, as described in APL_DEL00037755, APL_DEL00037757, and/or APL_DEL00037764."

### Requests

190. Documents describing **any use** (including use by third parties such as end users) of the **Masimo Radical** in the United States before **January 25, 2018**.

191. Documents describing **any use** (including use by third parties such as end users) of the **Masimo SET** in the United States before **September 22, 2020**.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 9
September 11, 2023

## Appendix C – The "LIFEPAK Requests"

Issue 2(a)(iii)

(RFP Nos. 179, 184, 189, 193)

### Relevant Definitions

"**LIFEPAK 15-Compatible Masimo Sensors**" = "All Masimo sensors that are capable of measuring SpO2 and are compatible with the Physio-Control LIFEPAK 15 monitor, as described in the LIFEPAK 15 Monitor/Defibrillator Operating Instructions."

### Requests

179. All documents describing the functionality, features, and operation of the **LIFEPAK 15-Compatible Masimo Sensors** prior to **January 25, 2018**, including, without limitation, user manuals, brochures, presentations, user guides, engineering specifications, technical manuals, product specifications, data sheets, research papers, service manuals, operator's manuals, implementation guides, white papers, product tutorials, and non-public documentation

184. All publications related to the **LIFEPAK 15-Compatible Masimo Sensors**, that were made available to the public before **January 25, 2018**.

189. Source Code sufficient to show the functionality of **the LIFEPAK 15-Compatible Masimo Sensors** before **January 25, 2018**.

193. Documents describing **any use** (including use by third parties such as end users) of the features of the **LIFEPAK 15-Compatible Masimo Sensors** in the United States before **January 25, 2018.**

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 10
September 11, 2023

## Appendix D – The "Source Code Requests"

Issue 2(a)(iv)

(RFP Nos. 186-187)

### Relevant Definitions

"**Masimo Radical**" = "The Masimo Radical Signal Extraction Pulse Oximeter, as described in the Masimo Radical Signal Extraction Pulse Oximeter Operator's Manual."

"**Masimo SET**" = "The Masimo pulse oximetry system relying on a SET sensor, as described in APL_DEL00037755, APL_DEL00037757, and/or APL_DEL00037764."

### Requests

186. Source Code sufficient to show the functionality of the **Masimo Radical** before **January 25, 2018**.

187. Source Code sufficient to show the functionality of the **Masimo SET** before **September 22, 2020**.

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall                                                                                                    11
September 11, 2023

## Appendix E – The "Third-Party Products Requests"

Issue 2(b)

(RFP Nos. 199, 270-276)

### Relevant Definitions

"**Nellcor Prior Art Products**" = "All pulse oximeter and/or watch products made or sold by Medtronic before September 20, 2012. By way of example and not limitation, "Nellcor Prior Art Products" includes (1) all versions of Nellcor OxiMax pulse oximetry sensors, including without limitation all versions of the Nellcor OxiMax sensors such as those described in APL_DEL00031597, APL_DEL00037792, APL_DEL00031781, and APL_DEL00037976, such as the Nellcor DS-100A; (2) the Nellcor N-595 Pulse Oximeter (*see*, *e.g.*, APL_DEL00031597, APL_DEL00037792); (3) the Nellcor N-395 Pulse Oximeter, including without limitation the Nellcor N-395 Pulse Oximeter Masimo accused of infringement in at least *Masimo Corp. v. Mallinckrodt Inc., et al*, 8:99-cv-01245 (CDCA) (*see also Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 164 (Fed. Cir. 2005)); (4) the Nellcor NPB-195 Pulse Oximeter (*see*, *e.g.*, APL_DEL00032074); (4) the Nellcor N-3000 (*see*, *e.g.*, APL_DEL00034470); (5) the Nellcor Oxinet II Monitoring System (*see*, *e.g.*, APL_DEL00031789); (6) the Nellcor Oxinet III Monitoring System (*see*, *e.g.*, APL_DEL00031535); and (7) the Nellcor NPB-295 Monitor.

"**Fitbit Prior Art Products**" = "All pulse oximeter and/or watch products made or sold by Fitbit before July 2, 2015. By way of example and not limitation, "Fitbit Prior Art Products" includes the Fitbit Surge Fitness Watch."

"**Nonin Prior Art Products**" = "All pulse oximeter and/or watch products made or sold by Nonin before September 20, 2012. By way of example and not limitation, "Nonin Prior Art Products" includes (1) the Nonin Onyx II Model 9560 (*see*, *e.g.*, APL_DEL00035014); (2) the Nonin WristOx2 Model 3150 (*see*, *e.g.*, APL_DEL00035012); (3) the Nonin 4100 (*see*, *e.g.*, APL_DEL00035929); (4) the Nonin OEM II Module (*see*, *e.g.*, APL_DEL00035115); (5) the Nonin 8500M; (6) Nonin nVision (*see*, *e.g.*, APL_DEL00035018); and (7) Microsoft Health Vault (*see*, *e.g.*, APL_DEL00034580)."

"**Philips Prior Art Products**" = "All pulse oximeter and/or watch products made or sold by Philips before September 20, 2012. By way of example and not limitation, "Philips Prior Art Products" includes (1) the Philips IntelliVue MX40 (*see*, *e.g.*, APL_DEL00036821); (2) the LifeWatch V (*see*, *e.g.*, APL_DEL00038208); (3) the Novametrix 7300 (*see*, *e.g.*, APL_DEL00031974); (4) the HP Medical M-Series pulse oximetry sensors including, for example, the HP M1191A, M1192A, M1193A, and M1194A) (*see*, *e.g.*, APL_DEL00037653); and (5) Philips IntelliVue Information Center iX software (*see*, *e.g.*, APL_DEL00036850)."

"**Sotera Prior Art Products**" = "All pulse oximeter and/or watch products made or sold by Sotera before September 20, 2012. By way of example and not limitation, "Sotera Prior Art Products" includes (1) the Sotera ViSi Mobile Monitoring System, (2) the ViSi Mobile Monitor,

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall                                                                                                  12
September 11, 2023

(3) the ViSi Mobile Thumb Sensor, (4) the ViSi Mobile Cuff Module, (5) the ViSi Mobile Chest Sensor Cable, (6) the ViSi Mobile Wrist Strap (7) the ViSi Mobile Wrist Cradle (*see, e.g.*, APL_DEL00037135); (8) any Sotera ViSi Mobile Software (*see, e.g.*, APL_DEL00037109); and (9) any ViSi Mobile Remote Viewer software (*see, e.g.*, APL_DEL00037307)."

"**Stryker Prior Art Products**" = "All pulse oximeter and/or watch products made or sold by Stryker before September 20, 2012. By way of example and not limitation, "Stryker Prior Art Products" includes (1) the Physio-Control LIFEPAK 15 monitor/defibrillator (*see, e.g.*, APL_DEL00032631); (2) Physio-Control CODE-STAT Data Review Software (*see, e.g.*, APL_DEL00032565); and (3) Physio-Control DT EXPRESS Data Transfer Software (*see, e.g.*, APL_DEL00032631).

## Requests

199. All documents related to any contention that the **Sotera ViSi Mobile Monitoring System, ViSi Mobile Monitor, ViSi Mobile Thumb Sensor, ViSi Mobile Cuff Module, ViSi Mobile Chest Sensor Cable, ViSi Mobile Wrist Strap, and/or ViSi Mobile Wrist Cradle** meet any claim of any Masimo patent, including but not limited to all Masimo's infringement contentions for U.S. Patent Nos. 9,788,735, 9,795,300, 9,872,623, 10,213,108, and 10,255,994 in Masimo Corporation v. Sotera Wireless, Inc. et al., No. 19-cv-01100-BAS-NLS (S.D. Cal. 2020).

270. All documents referring or relating to any **Nellcor Prior Art Products**, including without limitation their structure, function, and technical operation thereof as well as their dates of public availability.

271. All documents referring or relating to any **Fitbit Prior Art Products**, including without limitation their structure, function, and technical operation thereof as well as their dates of public availability.

272. All documents referring or relating to any **Nonin Prior Art Products**, including without limitation their structure, function, and technical operation thereof as well as their dates of public availability.

273. All documents referring or relating to any **Philips Prior Art Products** including without limitation their structure, function, and technical operation thereof as well as their dates of public availability.

274. All documents referring or relating to any **Sotera Prior Art Products**, including without limitation their structure, function, and technical operation thereof as well as their dates of public availability.

275. All documents referring or relating to any **Stryker Prior Art Products**, including without limitation their structure, function, and technical operation thereof as well as their dates of public availability.

276. All documents relating to whether any **Nellcor Products** infringe any Masimo, Cercacor, or Sound United patent, including without limitation all infringement contentions in the following

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 13
September 11, 2023

litigations: Nellcor Puritan, et al v. Masimo Corporation, 2:03-cv-00603 (CDCA), Nellcor Puritan, et al v. Masimo Corporation, 8:02-cv-01133 (CDCA), Masimo Corp. v. Mallinckrodt Inc., et al, 8:01-cv-00638 (CDCA), Mallinckrodt Inc., et al v. Masimo Corporation, et al, 2:00-cvc-06506 (CDCA), and Masimo Corp. v. Mallinckrodt Inc., et al, 8:99-cv-01245 (CDCA).

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

The Honorable Jennifer L. Hall 14
September 11, 2023

## Appendix F – The "All Prior Art Requests"

Issue 2(c)

(RFP Nos. 257-259)

### Requests

257. All documents that constitute, refer to, or relate to prior art that **any** person or entity **has ever** identified or asserted as potentially material, relevant, or related to **any** Masimo Asserted Patents or **any** patents or applications to which **any** Masimo Asserted Patents claim priority, including without limitation prior art that was disclosed during prosecution of any Masimo Asserted Patents.

258. All documents referring or relating to the circumstances in which Counterclaimants became aware of prior art that **any** person or entity **has ever** identified or asserted as potentially material, relevant, or related to **any** Masimo Asserted Patents or **any** patents or applications to which any Masimo Asserted Patents claim priority, including without limitation prior art that was disclosed during prosecution of any Masimo Asserted Patent.

259. All documents referring or relating to **each** prior art reference identified in Apple's Invalidity Contentions, including **any** awareness by Counterclaimants of **each** such reference.

58223161

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**