# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>*Defendants.* | C.A. No. 22-1377-MN-JLH<br>C.A. No. 22-1378-MN-JLH<br><br>**JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and<br>CERCACOR LABORATORIES, INC.,<br><br>*Counter-Claimants*,<br><br>v.<br><br>APPLE INC.<br><br>*Counter-Defendant.* | |

**PLAINTIFF APPLE INC.'S FIRST SUPPLEMENTAL OBJECTIONS AND
RESPONSES TO DEFENDANTS' AND COUNTERCLAIMANTS'
THIRD SET OF INTERROGATORIES (NO. 23)**

Pursuant to Rules 26 and 33 of the of the Federal Rules of Civil Procedure, Plaintiff Apple Inc. ("Apple") hereby supplements its response to Defendant and Counterclaimant Masimo Corporation's ("Masimo"), Defendant Sound United, LLC's ("Sound United"), and Counterclaimant Cercacor Laboratories, Inc.'s ("Cercacor") (jointly, "Defendants and Counterclaimants") Third Set of Interrogatories to Apple (No. 23).  Apple's discovery and investigation in connection with this action are continuing.  As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice

1

to Apple's right to supplement or amend these objections and responses to the extent allowed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any applicable scheduling orders as discovery and Apple's investigation in the action proceeds.  Apple hereby incorporates the general objections set forth in Apple's Response to Defendants' Third Set of Interrogatories (Nos. 19-23), which Apple served on July 5, 2023.

## GENERAL OBJECTIONS

Apple makes the following General Objections to Defendants' and Counterclaimants' Third Set of Interrogatories, which apply to each interrogatory regardless of whether the General Objections are specifically incorporated into the specific objections and responses below.  Apple incorporates by reference the General Objections set forth in its Objections and Responses to Defendants' Second Set of Interrogatories, which apply to each request regardless of whether the General Objections are specifically incorporated into the specific objections and responses below. Apple further objects as follows:

1.      Apple objects to each interrogatory, definition, and instruction as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  Specifically, Apple objects to each request to the extent it seeks discovery (1) not specific to any product relevant to this matter and/or (2) regarding acts (*e.g.*, making, using, selling, and offering for sale, of any product) outside of the United States.  To the extent Defendants and Counterclaimants request discovery not specific to a relevant product and/or outside of the United States, each such request is overbroad, unduly burdensome, and irrelevant as calling for discovery outside the relevant temporal or geographic scope of this matter.

2.      Apple objects to each interrogatory as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the

needs of the case, to the extent it calls for information beyond any other temporal limitations of this case.  To the extent Masimo requests discovery for purposes of its patent infringement counterclaims, pursuant to 35 U.S.C. § 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . for infringement in the action." Counterclaimants filed their counterclaims in this action on December 12, 2022, so Counterclaimants cannot recover for any alleged infringement prior to December 12, 2016.  To the extent Masimo requests discovery prior to December 12, 2016, each such request is overbroad, unduly burdensome, and irrelevant to the extent it calls for discovery outside the relevant temporal scope of this case.  Furthermore, to the extent Masimo requests discovery for purposes of its antitrust, false advertising, and/or unfair competition counterclaims (Counterclaims I through VI), Apple objects to any request for discovery prior to December 12, 2020, on the grounds that such request is overbroad, unduly burdensome, and irrelevant to the extent it calls for discovery outside the relevant temporal scope of this case.

3.      Apple's willingness to provide any document or information in response to an interrogatory shall not be interpreted as an admission that such document or information exists, that it is relevant to a claim or defense in this action, or that it is admissible for any purpose.  Apple does not waive its right to object to the admissibility of any document or information produced by any party on any ground.

## OBJECTIONS AND RESPONSES

## INTERROGATORY NO. 23:

To the extent not already identified in Your response to Masimo's Interrogatory Nos. 17-19, identify all of Your defenses to Masimo's claims in its Counterclaims at the same level of detail that will be required when you file your Answer to Masimo's Counterclaims.

**RESPONSE TO INTERROGATORY NO. 23:**

Apple incorporates by reference its General Objections.  In addition, Apple further objects to this interrogatory as premature to the extent it calls for a recitation of affirmative defenses before Apple's answer to the Counterclaims is due, and before any final ruling on Apple's pending motions to dismiss.  To the extent the interrogatory seeks identification of "defenses" beside the affirmative defenses that would be listed in Apple's answer to the Counterclaims, Apple objects on the grounds that the request is unduly burdensome and overly broad.  In addition, the request would be vague in that Apple is not in a position to rebut arguments and evidence Counterclaimants have not yet advanced.  Such a request is premature before the completion of fact and expert discovery.  Apple further objects to this interrogatory as premature to the extent it calls for information in advance of the disclosure timeline required by the Federal Rules.

Based on its investigation to date, and subject to and without waiver of the forgoing general and specific objections, and to the extent that this interrogatory can be understood, Apple responds as follows:

Apple incorporates by reference its responses to Interrogatories Nos. 17-22 as if fully set forth herein.

Each counterclaim fails to state a claim upon which relief can be granted.

Each counterclaim fails because Counterclaimants cannot meet their burden of proof with respect to one or more essential elements, either because of failure of proof, or estoppel, or both.

Counterclaimants lack standing to assert each counterclaim due to lack of injury-in-fact.

Masimo lacks standing to assert its counterclaims under the Sherman Act (Counterclaims I and II) for lack of antitrust injury.

To the extent they arise from Apple's assertion of patent claims against Masimo, Masimo's claims under the Sherman Act and California UCL (Counterclaim VI) are barred by the Noerr-Pennington doctrine and all other immunities provided by the First Amendment and by the United States patent laws.

To the extent they arise from Apple's review of and approval of any app for the Apple App Store, Masimo's claims under the Sherman Act and California UCL are barred because Apple does not have an antitrust duty to deal, and in any event, would fail because Apple's alleged conduct is supported by valid business justifications, including without limitation Apple's interest in ensuring that apps meet quality, reliability, and consumer protection standards. Furthermore, Masimo cannot establish any of Apple's conduct harmed Masimo or Cercacor, given that the Masimo and Cercacor apps are currently available on the app store, and during a hearing on June 15, 2023, Masimo admitted that it never provided any confidential information to Apple as part of the App Store review.

To the extent they arise from any alleged misappropriation of Masimo's alleged trade secrets or alleged infringement or theft of any Masimo intellectual property or technology, Masimo's claims under the Sherman Act and California UCL are barred (1) because such conduct does not have the requisite exclusionary effect, and (2) by the doctrines of res judicata and claim splitting.

To the extent they arise from alleged false or misleading advertising, Masimo's claims under the Sherman Act and California UCL fail because the challenged advertising is supported by valid business justifications.

Masimo's counterclaim under the California UCL fails because it cannot show entitlement to any form of relief available under that law.

The counterclaims for patent infringement fail for the additional reason that Apple has not infringed and does not infringe any claim of the Masimo Asserted Patents, either directly or indirectly, literally or under the doctrine of equivalents.

The counterclaims for patent infringement fail for the additional reason that the claims of the Masimo Asserted Patents are invalid for failing to comply with one or more of the conditions for patentability as set forth in Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

The counterclaims for patent infringement fail for the additional reason that Apple has not willfully infringed any of the Masimo Asserted Patents.

The counterclaims for patent infringement fail for the additional reason that the counterclaims are barred in whole or in part by the doctrine of waiver, acquiescence, estoppel, implied license, patent misuse, and/or unclean hands.

The counterclaims for patent infringement fail for the additional reason that Masimo's counterclaims are barred in whole or in part by the doctrine of prosecution laches.

The counterclaims for patent infringement fail for the additional reason that the Masimo Asserted Patents are unenforceable.

The counterclaims for patent infringement fail for the additional reason that the counterclaims are barred by 28 U.S.C. § 1498 to the extent that they relate to use or manufacture of the invention of the Masimo Asserted Patents by or for the United States.

The counterclaims for patent infringement fail for the additional reason that Counterclaimants are precluded from recovering any damages for any alleged infringement that occurred more than six years prior to the commencement of this counterclaim action.

The counterclaims for patent infringement fail for the additional reason that Counterclaimants are precluded from recovering damages, in whole or in part, by 35 U.S.C. § 287, due to a failure to mark by Counterclaimants and/or any predecessors in interest or any licensees to the Masimo Asserted Patents or failure to give proper notice that Apple's actions allegedly infringe the Asserted Patents.  Counterclaimants' claims for relief are further barred, in whole or in part, under 35 U.S.C. § 288.

The counterclaims for patent infringement fail for the additional reason that the claims for injunctive relief are barred because Counterclaimants fail to meet the requirements for obtaining injunctive relief and by the doctrine of laches.

The counterclaims and Defendants' inequitable conduct defenses fail for at least the reasons set forth in Apple's briefing in support of its motions to dismiss (No. 22-1377, D.I. 54, 55, 88; No. 22-1378, D.I. 39, 40, 76).

Apple reserves the right to assert any additional defenses as they become known during the course of this action.

Apple will further respond to this interrogatory after it provides its answer to the Counterclaims in accordance with Rule 12(a) of the Federal Rules of Civil Procedure at which point Apple will plead its defenses to the counterclaims for patent infringement.

In addition to the foregoing, Apple reserves all affirmative defenses under Fed. R. Civ. P. 8(c) and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation.

The foregoing list shall not be construed as an admission by Apple that it bears the burden of proof on any aspect of these or any other defenses.

Apple reserves its right to supplement or amend its response to this interrogatory as discovery and its investigations in this action proceed in accordance with the Court's schedule.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23 (AUGUST 2, 2023):**

Apple hereby incorporates its July 5, 2023 objections and responses as if fully set forth herein.  Based on its investigation to date, and subject to and without waiver of its general and specific objections, Apple further responds as follows:

The counterclaims for patent infringement fail for the additional reason that the Masimo Asserted Patents are unenforceable for inequitable conduct, as explained below:

**Factual Background Regarding Individuals Who Committed Inequitable Conduct on Behalf of Masimo and Cercacor**

Masimo is a litigious company that has inequitably obtained patents and attempted to sue its way to the top.  Founded in 1989, Masimo has prosecuted scores of patents for assertion against competitors.  As discussed in detail below and pertinent to this case, Masimo named inventors, such as Joe Kiani, and Masimo attorneys of record for prosecuting patents, such as Stephen Jensen, Harnik Shukla, and Jarom Kesler, committed inequitable conduct to deceive the USPTO into issuing the '223, '507, '743, '159, and '911 patents that Masimo now asserts against Apple in this case.  These individuals committed inequitable conduct by, among other things, intentionally withholding material references and/or intentionally "burying" material references in voluminous information disclosure statements that contained hundreds of irrelevant citations.  Indeed, Mr. Jensen—the same lawyer involved in the prosecution of and this litigation regarding the '223, '507, '743, '159, and '911—has been found by the Federal Circuit to have engaged in inequitable conduct in connection with a prior patent prosecution for Masimo.  *See Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158 (Fed. Cir. 2005).

Masimo has repeatedly relied on patent litigation to expand its technological and economic footprint.  For example, in the early 2000s, Masimo sued Nellcor Puritan Bennet, Inc. ("Nellcor") for patent infringement with respect to Nellcor's pulse oximeter products and used that lawsuit as leverage for a settlement that enabled Masimo to go public.  Masimo subsequently sued Philips Electronics North America Corporation ("Philips") for patent infringement and then used that lawsuit to leverage a settlement that forced Phillips to combine its products with those of Masimo.  Overall, Masimo has commenced or otherwise been a party to over 15 patent infringement cases since 2000, including this instant case against Apple.

Masimo was founded by one of the named inventors of the '223 patent, Joe Kiani.  Since founding Masimo, Kiani has continuously served as its president, Chief Executive Officer, and Chairman of the Board—positions he holds to this day.  Mr. Kiani also is president, CEO, and sits on the Board of Directors of Cercacor.  As a putative inventor, CEO, and director of both Masimo and Cercacor, Kiani has actively monitored both the specific activities of its many competitors, including Nellcor, as well as broader technical advancements by others in the field of pulse oximetry.  Mr. Kiani thus has deep knowledge of prior art as discussed further herein—knowledge that Masimo has nefariously exploited in prosecuting and litigating patents, including the patents asserted against Apple here.

Knobbe Martens is an intellectual property law firm that engages in both patent prosecution and patent litigation as part of its mantra of providing "complete patent services" in one law firm (https://www.knobbe.com/services/practice-areas/patents, last accessed August 2, 2023).  For at least the past 25 years, Knobbe Martens has provided both patent prosecution and patent litigation services to Masimo.  Since 1994, Knobbe Martens has prosecuted on Masimo's behalf over 800 patent applications and litigated on Masimo's behalf over 15 patent infringement cases, including

against Nellcor and Phillips.  In many instances, the same Knobbe Martens attorneys that have been substantively involved in Masimo's patent litigations have also been substantively involved in Masimo's patent prosecutions, and vice versa.

Stephen Jensen is a partner at Knobbe Martens.  Mr. Jensen has been a lawyer at Knobbe Martens since 1990 and a partner since 1994.  Since 1994, Mr. Jensen has been Masimo's primary outside patent attorney, has continuously represented Masimo, and has served as Masimo's client liaison.  Over the course of this period, Mr. Jensen has represented Masimo in both patent prosecutions and patent litigations.  As Masimo's client liaison, Mr. Jensen has ultimate responsibility for and control over Knobbe Martens' legal work for Masimo.

Mr. Jensen has prosecuted numerous patent applications on Masimo's behalf.  Mr. Jensen began prosecuting patents for Masimo starting around 1994.  Today, the USPTO affirmatively lists Mr. Jensen as an attorney of record for prosecuting numerous Masimo patents, ***including each of the patents that Masimo has asserted against Apple in this case***.

Mr. Jensen also has litigated numerous patents on Masimo's behalf and typically leads Masimo's litigation teams.  Since Masimo's first patent litigation in 1999, Mr. Jensen has represented Masimo in at least the following patent litigations:

- *Mallinckrodt, Inc. v. Masimo Corp.*, Case No. 2-000cv06506 (C.D. Cal.)

- *Masimo Corp. v. Mallinckrodt Inc.*, Case Nos. 8-01-cv-00638 & 2-01- cv-07292 (C.D. Cal.);

- *Nellcor Puritan, et al. v. Masimo Corp.*, Case Nos. 8-02-cv-01133 & 2-03-cv-00603 (C.D. Cal.);

- *Masimo Corp. v. Jay*, Case No. 8-07-cv-01163 (C.D. Cal.);

- *Masimo Corp. v. Philips Electronics Northern America Corp.*, Case Nos. 1-09-cv-00080, 1-11-cv-00742, and 1-16-cv-00137 (D. Del.);

- *Hygia Health Services, Inc. v. Masimo Corp.*, Case No. 2-09-cv-00885 (N.D. Al.);

- *Essential Medical Devices, Inc. v. Masimo Corp.*, Case No. 1-11-cv-00734 (D. Del.);

- *Dominion Assets LLC v. Masimo Corp.*, Case Nos. 5-12-cv-02773, 5-14-cv-3002 (N.D. Cal.);

- *Masimo Corp. v. Mindray DS USA, Inc.*, Case Nos. 8-12-cv-02206 (C.D. Cal.), 2-15-cv-00457 (D.N.J.) and 2-15-cv-06900 (D.N.J.);

- *Masimo Corp. v. Shenzhen Mindray Bio-Medical Tech. Co.*, 12-cv-02206 (C.D. Cal.);

- *Masimo Corp. v. Nova Biomedical Corp.*, Jams International Arbitration, Reference No. 1220045324;

- *Christian Lewis v. Sheila D. Moore*, No. 15-13979 (11th Cir.), appeal from District Court No. 2:13-cv-00733-KOB;

- *Shandong Lihong Technology Limited Corp. v. Masimo Corp.*, Superior Court of the State of California, County of Orange, Case No. 30-2018-01002779-CU-BT-CJC;

- *Silkeen LLC v. Masimo Corp.*, C.A. No. 1:17-cv-01030-RGA (D. Del);

- *U.S. Ex. Rel Ruhe, Serwitz, and Catala v. Masimo Corp.*, 2:10-cv-08169-CJC-VBK (C.D. Cal);

- *Physicians Healthsource, Inc. et al. v. Masimo Corp.*, Case No. 8:14-cv-00001 JVS (ADSx) (C.D. Cal);

- *Masimo Corp. v. James Welch*, Case No. 30-2013-00659172 (Superior Ct. of Cal., Orange County);

- *Masimo Corp. v. Sotera Wireless, Inc.*, Case No. 3-19-cv-01100 (S.D. Cal.);

- *Masimo Corp. v. True Wearables, Inc.*, Case No. 8:18-cv-02001 (C.D. Cal.);

- *Masimo Corp. v. Apple, Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.); and

- *Certain Light-Based Physiological Measurement Devices and Components Thereof*, Case No. 337-TA-1276 (ITC).

Many of Masimo's patent infringement cases have included claims by and against
Masimo's direct competitors concerning products that are material prior art to the patents that
Masimo now asserted against Apple in this case.  For example, one of Masimo's longstanding
direct competitors has been Nellcor, which has sold prior art pulse oximeter products, including
Nellcor NPB-195, N-395, and OxiMax N-595 products.  Indeed, Mr. Jensen was Masimo's lead
counsel in the litigation that Masimo filed against Nellcor as well as in the *inter partes review*
proceedings that Masimo filed against Nellcor's patents.

Mr. Jensen is one of several Knobbe Martens attorneys who has litigated the same Masimo
patents for which he has been an attorney of record for prosecution.  As discussed further herein,
Mr. Jensen has been listed by the USPTO as an attorney of record for at least the '223, '507, '743,
'159, and '911 patents—the same patents that Masimo now asserts through Mr. Jensen and other
Knobbe Martens lawyers against Apple in this case.

Mr. Jensen has publicly declared that "[n]o other lawyer at my firm has the same history
and breadth of understanding of Masimo's and Cercacor's technology, their legal strategies, their
principles and their legal goals."  Knobbe Martens publicizes that it and Masimo "have grown up
together," with Mr. Jensen playing significant roles in Masimo's development over time.
(https://www.law.com/therecorder/almID/1202724129923/, last accessed August 2, 2023).

Masimo and Knobbe Martens' 30-year relationship, however, goes well beyond legal
representation—it also extends to a series of intertwined business relationships in which
commingling between Massimo and Knobbe Martens personnel has been the norm.  For example,
Mr. Jensen has personally worked in numerous in-house positions at Masimo itself, including as
Masimo's Senior Vice President of OEM Business, Business Development, and General Counsel.
In that capacity, Mr. Jensen has "directly managed Masimo's OEM business."

(https://www.knobbe.com/attorneys/steve-jensen, last accessed August 2, 2023).  Mr. Jensen is also one of four members of the Board of Directors of the Masimo Foundation for Ethics, Innovation and Competition in Healthcare.

Mr. Jensen also has intertwined, commingled relationships with Cercacor.  Since 2013, Mr. Jensen has served (along with Joe Kiani) as one of the six directors on Cercacor's Board of Directors.  In that capacity, Mr. Jensen has been deeply involved in Cercacor's highest levels of governance and owed an affirmative fiduciary duty to Cercacor.  Indeed, Mr. Jensen's intertwined, commingled relationships with Masimo have been so extensive that the United States International Trade Commission recently required Mr. Jensen to resign his position as a member of Cercacor's Board of Directors as a condition for him to have access to Apple's confidential information in the parties' pending ITC case.

Through his work as a patent prosecutor and litigator on behalf of Masimo and Cercacor, as well as his senior in-house positions at Masimo and Cercacor themselves, Mr. Jensen has obtained deep knowledge of prior art, as discussed further herein.  Mr. Jensen, however, has repeatedly elevated his loyalties to Masimo and Cercacor over his duties of disclosure to the USPTO through the commission of inequitable conduct.  Indeed, Mr. Jensen has previously been found to have committed inequitable conduct at the Federal Circuit.  *See, e.g., Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158 (Fed. Cir. 2005).

Harom Shukla and Jarom Kesler are partners of Mr. Jensen at Knobbe Martens who also are attorneys of record for prosecuting one or more of the patents that Masimo has asserted against Apple in this case.  Like Mr. Jensen, both Mr. Shukla and Mr. Kesler had knowledge of prior art based on their work at Knobbe Martens doing patent prosecution and litigation work for Masimo.

As Masimo's primary outside patent attorney and client liaison, Mr. Jensen had ultimate responsibility for and control over Knobbe Martens' legal work for Masimo.

Masimo and Cercacor's claims of infringement for the '223 patent and the '507 patent are unenforceable due to inequitable conduct because the specific individuals identified above and below withheld from the USPTO prior art references that it knew were material to patentability with the specific intent to deceive the USPTO.  Those individuals had extensive knowledge of these withheld references because they cited them in other parallel patent proceedings while withholding them from the USPTO in connection with the prosecutions of the '223 and '507 patents.  This misconduct evidenced an intent to mislead and deceive the USPTO in order to improperly procure the '223 and '507 patents.

Masimo and Cercacor's claims of infringement for the '743 patent, the '159 patent, and the '911 patent are also unenforceable due to inequitable conduct because the specific individuals identified above and below repeatedly engaged in a pattern of burying highly material prior art among voluminous submissions of irrelevant and marginally relevant prior art with the specific intent to deceive the USPTO.  Indeed, those individuals repeatedly buried material prior art references in Information Disclosure Statements that included over a thousand other references, including numerous clearly irrelevant references.  This repeated pattern of misconduct evidenced an intent to mislead and deceive the USPTO in order to improperly procure the '743, '159 and '911 patents.  *See, e.g., Pact XPP Schweiz AG v. Intel Corp.*, Case No. 1:19-cv-01006-JDW, 2023 WL 2631503 (D. Del. Mar. 23, 2023).

### '223 Patent — Withholding of Material Prior Art

The '223 patent is unenforceable due to inequitable conduct occurring during its prosecution, including, among other misconduct, Joe Kiani and Stephen Jensen's withholding

from the USPTO of key prior art that each of those individuals knew was material to patentability. Kiani and Jensen had extensive knowledge of this prior art at the relevant time, as confirmed by the public record, including testimony, litigations, and publicly available documents. These actions constitute fraud through omission because they violated the duty of disclosure owed by each of those individuals to the USPTO. These actions were all done with a specific intent to deceive the USPTO, which would not have issued the '223 patent if it had been made properly aware of the withheld prior art.

As discussed below, Joe Kiani and Stephen Jensen are among the individuals who owed a duty of disclosure to the USPTO during the prosecution of the '223 patent and committed inequitable conduct by breaching that duty of disclosure.

Furthermore, Masimo and Knobbe Martens have an extensive 30-year relationship with overlapping members. For example, Jensen not only is a partner at Knobbe Martens, the law firm that prosecuted these patents, but also has served as Masimo's General Counsel and Senior Vice President of Original Equipment Manufacture (OEM) Business and Business Development and Jensen promotes himself as serving on the Board of Directors of Masimo affiliate Cercacor Corporation. (*See* https://www.knobbe.com/attorneys/steve-jensen, last accessed August 2, 2023). As another example, Jensen has been reported saying "I've represented [Masimo] since 1993 when they were a small group of engineers out of a very small office . . . I've represented them since almost the beginning." (*See* https://www.ocbj.com/manufacturing/knobbe-partners-prep-for-masimo-case/, last accessed August 2, 2023). Furthermore, Jensen and Knobbe Martens have been prosecuting Kiani and Masimo's patent applications since 1993 such that Masimo has "changed [Jensen's] personal and professional life immensely." (*See* https://www.investors.com/news/management/leaders-and-success/masimo-ceo-four-guiding-

principles-turn-startup-success/, last accessed August 2, 2023).  On information and belief, Kiani and others at Masimo selected the law firm Knobbe Martens to prosecute the '223 patent and other Masimo patents to exploit the 30-year commingled relationship that Masimo has with Knobbe Martens, which ensured total control over the prosecution process, including which material prior art to intentionally withhold from the USPTO to improperly obtain patents including the '223 patent.

Joe Kiani

Kiani is a named inventor on the '223 patent, a founder and Chief Executive Officer and Chairman of the Board of Masimo, and Chief Executive Officer and Chairman of the Board of Directors of Cercacor.  Kiani had a duty to disclose information material to the patentability of the '223 patent to the USPTO during prosecution of the '223 patent at least because he is a named inventor on the '223 patent.

---

(12) **United States Patent**     (10) **Patent No.:**     **US 8,190,223 B2**

    Al-Ali et al.     (45) **Date of Patent:**     **May 29, 2012**

(54) **NONINVASIVE MULTI-PARAMETER PATIENT MONITOR**

(75) Inventors: **Ammar Al-Ali**, Tustin, CA (US); **Joe Kiani**, Laguna Niguel, CA (US); **Mohamed Diab**, Mission Viejo, CA (US); **Greg Olsen**, Irvine, CA (US); **Roger Wu**, Irvine, CA (US); **Rick Fishel**, Orange, CA (US)

| | | |
|---|---|---|
| 4,157,708 A | 6/1979 | Imura |
| 4,167,331 A | 9/1979 | Nielsen |
| 4,266,554 A | 5/1981 | Hamaguri |
| 4,267,844 A | 5/1981 | Yamanishi |
| 4,446,871 A | 5/1984 | Imura |
| 4,531,527 A | 7/1985 | Reinhold, Jr. et al. |
| 4,586,513 A | 5/1986 | Hamaguri |
| 4,621,643 A | 11/1986 | Newe et al. |

(Continued)

('223 patent, cover page)

| UTILITY APPLICATION | Attorney Docket No.: MLR.012A |
| | First Named Inventor: Ammar Al-Ali |
| | Title: NONINVASIVE MULTI-PARAMETER PATIENT MONITOR |
| | Express Mail Label No.: EV 307965144 US |

**Direct all correspondence to Customer No.: 20995**

Date: March 1, 2006
Page 1

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450



The following enclosures are transmitted herewith to be filed in the patent application of:

**INVENTORS LIST:**

1.  Ammar Al-Ali
2.  Joe E. Kiani
3.  Mohamed Diab
4.  Greg Olsen
5.  Roger Wu
6.  Rick Fishel

('223 Patent Prosecution, March 1, 2006 Application).

Indeed, Kiani submitted a signed declaration of inventorship under oath and subject to a penalty of perjury in which he "acknowledge[d] the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56":

**DECLARATION - USA PATENT APPLICATION**

s a below named inventor, I hereby declare that:

My residence, mailing address and citizenship are as stated below next to my name;

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled NONINVASIVE MULTI-PARAMETER PATIENT MONITOR; the specification of which was filed on March 1, 2006 as Application Serial No. 11/367,033.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above;

I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56;

17

*      *      *

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful, false statements may jeopardize the validity of the application or any patent issued thereon.

*      *      *

Full name of second inventor: Joe Kiani

Inventor's signature _____

Date _____ 5/22/06 _____

Residence: 35 Brindisi, Laguna Niguel, CA 92677

Citizenship:  United States

Mailing Address:  Same as above

('223 Patent Prosecution, June 15, 2006 Oath).

<u>Stephen Jensen</u>

Stephen Jensen had a duty to disclose information material to the patentability of the '223 patent to the USPTO during prosecution of the '223 patent.  As a partner at the law firm of Knobbe Martens, Mr. Jensen was Masimo's primary outside counsel and an attorney of record for prosecution of the '223 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '223 patent.

For example, the USPTO expressly lists Mr. Jensen as an attorney of record for prosecution of the '223 patent.

In addition to his own role as an attorney of record for prosecuting the '223 patent, Mr. Jensen—as Masimo's primary outside patent attorney and client liaison—was the Knobbe Martens partner who had ultimate responsibility for and control over Knobbe Martens' legal work for Masimo, including prosecution of the '223 patent.  As such, Mr. Jensen had the incentive to, and

18

as discussed below did in fact, prioritize his longstanding loyalties to Masimo over his duties of disclosure to the PTO to facilitate issuance of the '223 patent by committing inequitable conduct.

During prosecution of the '223 patent, Masimo, including named inventor Kiani and its prosecution attorney of record and client liaison Jensen, as well as other Masimo agents substantively involved in the prosecution of the '223 patent, withheld from the USPTO known prior art that is material to the patentability of the '223 patent—including material information regarding the Nellcor NPB-195, N-395, and OxiMax N-595 patient monitors—with specific intent to deceive the USPTO.

The Nellcor NPB-195, N-395, and OxiMax N-595 are related products in Nellcor's line of patient monitors.  For each patient monitor, Nellcor publicly released detailed documents describing the products' operation and functionality, such as Operator's Manuals.  (*See* NPB-195 Operator's Manual, N-395 Operator's Manual, OxiMax N-595 Operator's Manual).

Each of the technical documents describing the Nellcor NPB-195, N-395, and OxiMax N-595 products is material prior art to the '223 patent and anticipates under 35 U.S.C. § 102 and/or renders obvious under 35 U.S.C. § 103, standing alone or combined with a person of ordinary skill in the art, at least claims 15, 21, 27, and 28 of the '223 patent, and otherwise contains disclosure material to the invalidity of the asserted claims of the '223 patent.

Particularly, the NPB-195 Operator's Manual describing the Nellcor NPB-195 is material prior art to the '223 patent, anticipates under 35 U.S.C. § 102 and/or renders obvious under 35 U.S.C. § 103, standing alone or combined with a person of ordinary skill in the art, at least claims 15, 21, 27, and 28 of the '223 patent, and otherwise contains disclosures material to the invalidity of the asserted claims of the '223 patent.

For example, claim 27 of the '223 patent requires "a user input button, the activation of which replaces the display of the measured value of the first blood parameter with the measured value of the second blood parameter," where an amendment in this limitation led at least in part to the allowance of claim 27 of the '223 patent during reexamination.   Under the apparent constructions advanced in Masimo's infringement contentions, the NPB-195 Operator's Manual teaches replacing the display of a pulse rate with a blood oxygen measurement value when a user input, such as a "softkey" button, is pressed.  (*See* NPB-195 Operator's Manual at 24, 29-30, 87-89).  Moreover, the NPB-195 Operator's Manual alone, under the apparent constructions advanced in Masimo's infringement contentions, teaches every limitation of at least claims 15, 21, 27, and 28 of the '223 patent, and otherwise contains disclosures material to the invalidity of the asserted claims of the '223 patent.

Additionally, the OxiMax N-595 Operator's Manual describing the Nellcor OxiMax N-595 is material prior art to the '223 patent, anticipate under 35 U.S.C. § 102 and/or render obvious under 35 U.S.C. § 103, standing alone or combined with a person of ordinary skill in the art, at least claims 15, 21, 27, and 28 of the '223 patent, and otherwise contains disclosures material to the invalidity of the asserted claims of the '223 patent.

For example, claim 27 of the '223 patent requires "a user input button, the activation of which replaces the display of the measured value of the first blood parameter with the measured value of the second blood parameter."  Under the apparent constructions advanced in Masimo's infringement contentions, the OxiMax N-595 Operator's Manual teaches replacing the display of a blood oxygen measurement value with a pulse rate when a user input, such as a "softkey" button, is pressed.  (*See* OxiMax N-595 Operator's Manual at 10-11, 32, 34-36, 80-86).  Moreover, the OxiMax N-595 Operator's Manual alone, under the apparent constructions advanced in Masimo's

infringement contentions, teaches every limitation of at least claims 15, 21, 27, and 28 of the '223 patent, and otherwise contains disclosures material to the invalidity of the asserted claims of the '223 patent.

Additionally, the N-395 Operator's Manual describing the Nellcor N-395 is material prior art to the '223 patent and anticipates under 35 U.S.C. § 102 and/or renders obvious under 35 U.S.C. § 103, standing alone or combined with a person of ordinary skill in the art, at least claims 15, 21, 27, and 28 of the '223 patent, and otherwise contains disclosure material to the invalidity of the asserted claims of the '223 patent.

For example, claim 27 of the '223 patent requires "a user input button, the activation of which replaces the display of the measured value of the first blood parameter with the measured value of the second blood parameter." Under the apparent constructions advanced in Masimo's infringement contentions, and for the same reasons as those described above with respect to the NPB-195 Operator's Manual and the OxiMax N-595 Operator's Manual, the N-395 Operator's Manual teaches replacing the display of a blood oxygen measurement value with a pulse rate when a user input, such as a "softkey" button, is pressed. (*See* N-395 Operator's Manual at 30 (as seen with the NPB-195 and OxiMax N-595 Operator's Manuals, showing a Pleth View and a Blip View, where as an example under the apparent constructions advanced in Masimo's infringement contentions, the display of a blood oxygen measurement value in the Pleth View is replaced with a pulse rate in the Blip View), 31 (as seen with the NPB-195 and OxiMax N-595 Operator's Manuals, explaining that a user can select between the Pleth View and Blip View by pressing a softkey), 41, 44-45).

As such, the examiners for the '223 patent would not have allowed the '223 patent's claims if Kiani and Jensen did not withhold the documentation describing any of the Nellcor NPB-195, N-395, and OxiMax N-595 products from the USPTO.

During prosecution, Masimo, including named inventor Kiani and its prosecution attorney of record and client liaison Jensen, as well as other Masimo agents substantively involved in the prosecution of the '223 patent, knowingly withheld material documentation describing the Nellcor NPB-195, N-395, and OxiMax N-595 products from the USPTO.   These were not merely peripheral references of which Kiani and Jensen merely had incidental awareness.   Instead, at the same time that Kiani and Jensen withheld documentation describing the Nellcor NPB-195, OxiMax N-395, and N-595 products, Kiani and Jensen actively knew from multiple sources about material documentation describing the Nellcor NPB-195, N-395, and OxiMax N-595 products.

For example, in the time directly leading up to the prosecution of the '223 patent, Masimo and Nellcor were adverse parties in numerous litigations regarding Nellcor's pulse oximeter products.   On October 8, 1999, Masimo sued Mallinckrodt Inc. and Nellcor Puritan Bennett, Inc. for patent infringement in the United States District Court for the Central District of California in Civil Action No. 8:99-cv-01245-AHS-AJW.   In that litigation, Masimo was represented by Stephen Jensen, among other attorneys from Knobbe Martens.   In that case, Masimo alleged that Nellcor's "N-395 stand-alone pulse oximeter" infringed Masimo's patent.   *Masimo Corp. v. Mallinckrodt Inc.*, 18 F. App'x 852, 853–54 (Fed. Cir. 2001); *see also Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 164 (Fed. Cir. 2005) ("In 2000, Masimo sued Nellcor for infringement of claims 16 and 28 of U.S. Patent No. 6,036,642, asserting that Nellcor's N–395 and MP–404 pulse oximeters met all of the asserted claim limitations.").

Given Kiani's role as CEO of Masimo and Jensen's role as attorney of record in a litigation concerning the N-395 product, which went up on appeal to the Federal Circuit, on information and belief, at least Kiani and Jensen knew about documentation describing at least the Nellcor N-395 product.

Additionally, on November 17, 1999, Mallinckrodt Inc. and Nellcor Puritan Bennett, Inc. sued Masimo, and on December 8, 1999, Masimo counter-sued Mallinckrodt and Nellcor, for patent infringement in the United States District Court for the Central District of California in Civil Action No. 2:00-cv-06506-MRP-AJW.   In that litigation, Masimo was represented by Stephen Jensen, among other attorneys from Knobbe Martens.   Masimo's CEO Joe Kiani was directly involved in that litigation having signed multiple declarations on behalf of Masimo.   *See, e.g.*, *Mallinckrodt, Inc. v. Masimo Corp.*, No. 2:00-cv-06506-MRP-AJW, D.I. 265 (June 30, 2003 Declaration of Joe Kiani) & D.I. 389 (Jan. 20, 2004 Declaration of Joe Kiani).   On August 4, 2004, the court entered Final Judgment where the court adjudged and decreed that Nellcor's manufacture, sale, offer to sell, use or importation of products including the N-395 and OxiMax N-595 monitors infringed several of Masimo's asserted patents.   *See Mallinckrodt, Inc. v. Masimo Corp.*, No. 2:00-cv-06506-MRP-AJW, D.I. 632 (Aug. 4, 2004) (Final Judgment).   Masimo then appealed aspects of the Court's decision in *Mallinckrodt, Inc. v. Masimo Corp.*, No. 2:00-cv-06506-MRP-AJW, after which the Federal Circuit ruled in Masimo's favor on multiple issues.   *See Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 162 (Fed. Cir. 2005).   In a press release regarding the Federal Circuit's decision, Masimo reported that "[t]he products found to infringe are Nellcor's O4 (Oxismart XL), O5 and O5ci (Oximax) technologies.   **Oxismart XL and Oximax technology are found in certain Nellcor pulse oximetry products, such as the N-595, N-395**, N-550 and NPB40 pulse oximeters."   (*See* https://www.masimo.com/company/news/news-media/2005/#news-

1bcc85f5-3a5a-401d-8e4d-2a3c09fbade3, last accessed August 2, 2023) (emphasis added).  That press release quoted Founder and CEO of Masimo Joe Kiani who provided comments about the case and, thus, knew about the Nellcor products accused in that case, including the N-395 and OxiMax N-595.  Given Kiani and Jensen's involvement in that litigation, as well as the stage of that case proceeding through trial, on information and belief, Kiani and Jensen knew about the material documentation describing the Nellcor NPB-195, N-395, and OxiMax N-595 products.

Additionally, Nellcor Puritan Bennett, Inc. and Mallinckrodt Inc. became involved in another litigation with Masimo on December 10, 2002, when Nellcor and Mallinckrodt sued Masimo for patent infringement in United States District Court for the Central District of California in Civil Action No. 2:03-cv-00603-MR-AJ.  That litigation ended—along with still pending claims that were remanded in the *Mallinckrodt, Inc. v. Masimo Corp.*, No. 2:00-cv-06506-MRP-AJW litigation following the Federal Circuit's ruling—on January 17, 2006, when Masimo and Nellcor entered into a settlement agreement that was signed by Joe Kiani on behalf of Masimo, further evidencing his awareness and knowledge of the Nellcor products and the material documents describing them.                                        (*See* https://www.sec.gov/Archives/edgar/data/937556/000119312507082880/dex1030.htm,          last accessed August 2, 2023).

At all relevant times, including during the prosecution of the '223 patent, Masimo, including Kiani and Jensen regarded Nellcor as Masimo's leading competitor in the pulse oximetry market.  Indeed, on April 30, 2002, Kiani provided extensive testimony before the United States Senate regarding Nellcor.  Among other things, Kiani testified that "our primary competitor, Tyco-Nellcor, [is] one of the largest companies in the world and already ha[s] 90% of the pulse oximetry market"         and         was         "Masimo's         leading         and         large[st]         competitor."

24

(https://www.judiciary.senate.gov/imo/media/doc/kiani_testimony_04_30_02.pdf, last accessed August 2, 2023).  Thus, on information and belief, Masimo, including Kiani and Jensen, were well aware of the Nellcor pulse oximetry products and at least their publicly available substantive supporting documentation, such as the Operator's Manuals, including, for example, the Operator's Manuals for the NPB-195, N-395, and OxiMax N-595.

Unsurprisingly, Masimo, including named inventor Kiani, actively monitored the competing pulse oximeter product offerings of its primary and leading competitor Nellcor.  Indeed, during his April 30, 2002 testimony before the United States Senate, Kiani repeatedly testified about Nellcor and its products, including Nellcor's N-395 product, which evidences his awareness of the Nellcor N-395 product and the Nellcor broader family of pulse oximetry products, including the closely related NPB-195 and OxiMax N-595.  (*See* https://www.judiciary.senate.gov/imo/media/doc/kiani_testimony_04_30_02.pdf, last accessed August 2, 2023 (Kiani testifying regarding clear similarities between a Masimo pulse oximeter and Nellcor N-395, stating "[Nellcor] also told us that they would not let Masimo start the 'breakthrough technology' process until Tyco-Nellcor introduced its N-395, which Tyco-Nellcor had assured Premier would be equivalent to Masimo SET")).  Moreover, Masimo and Kiani recognized and followed product comparisons between the Masimo pulse oximeters and the Nellcor N-395 and N-595.  (*See* https://www.masimo.com/company/news/news-media/2002/#news-234b74e6-4b58-4964-96c1-b39eafcb4ee6, last accessed August 2, 2023 (10/18/2002 article on which Kiani commented that provides a product comparison between the "clinical performance of Masimo SET pulse oximetry compared to the Tyco-Nellcor N-395 and N-595")).  Further, Masimo testified that Kiani conducted detailed tests of another competitor's product, thereby corroborating the fact that Kiani must have also tested and been well-aware of

the competing products of Masimo's primary competitor, Nellcor. *See Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. CV 09-80-LPS, 2015 WL 2379485, at *20 (D. Del. May 18, 2015) ("Masimo presented evidence that its engineering team and Mr. Kiani tested PureSAT and confirmed it does not measure through motion (Tr. at 522–25, 635–36).").  Thus, on information and belief, Masimo and Kiani were themselves also studying and comparing the Nellcor pulse oximetry products, including the NPB-195, and N-395, and OxiMax N-595 products and their supporting documentation such as Operator's Manuals, when developing their own pulse oximetry products, and were well-aware of the materiality of each of these products and documents.

As discussed herein, on information and belief, Kiani, Jensen, and others at Masimo knew about Nellcor's pulse oximeters, including the Nellcor NPB-195, N-395, and OxiMax N-595 products, and the documentation describing those products, and knew of their materiality, yet specifically intended to, and did, withhold those material references from the USPTO during prosecution of the '223 patent.  On information and belief, Kiani, Jensen, and other Masimo agents substantively involved in the prosecution of the '223 patent specifically intended to, and did, allow the examiners of the '223 patent to issue claims they would not have if Kiani, Jensen, and others at Masimo had disclosed any of the documentation describing the Nellcor NPB-195, N-395, or OxiMax N-595 products.  Masimo is now asserting at least one of these claims against Apple.

None of the information disclosure statements submitted to the USPTO during prosecution of the '223 patent from March 2006 to April 2013 disclosed material technical features of the Nellcor NPB-195, N-395, or OxiMax N-595 products or Nellcor's material technical documentation describing the Nellcor NPB-195, N-395, or OxiMax N-595.

Named inventor Kiani and attorneys of record for the prosecution of the '223 patent including Jensen, however, had extensive knowledge of Nellcor and the withheld documentation

26

describing the Nellcor NPB-195, N-395, and OxiMax N-595 products during the prosecution of the '223 patent. Kiani founded Masimo in 1989. At all relevant times, including during the prosecution of the '223 patent, Kiani was the Chief Executive Officer and Chairman of the Board of Masimo. And as discussed above, Jensen was an attorney of record for Masimo in patent infringement litigation against Nellcor that concerned Nellcor products including the N-395 and OxiMax N-595.

On information and belief, Kiani, Jensen, and others at Masimo thus had deep knowledge of the materiality of each of the NPB-195, N-395, and OxiMax N-595 products and each of the material supporting documents publicly released for these products, particularly the Operator's Manuals, and their applicability as material prior art references. Despite this knowledge, Kiani, Jensen, and others at Masimo concealed those material prior art products and documents from the USPTO during prosecution of the '223 patent. On information and belief, they did so because they knew that identifying this information to the USPTO would have resulted in the USPTO rejecting the claims and not issuing the '223 patent—i.e., they each specifically intended to deceive the USPTO into issuing the '223 patent. The single most reasonable inference from this conduct is that they intended to deceive the USPTO into improperly allowing the '223 patent.

Accordingly, the '223 patent is unenforceable due to inequitable conduct.

The effect of this misconduct by Kiani, Jensen, and others at Masimo is not limited to the '223 patent. All subsequent "child" or other related patents that are based on the same specification or relevant portions thereof are tainted by Masimo's inequitable conduct and, therefore, are also unenforceable under the doctrine of infectious unenforceability.

## '507 Patent — Withholding of Material Prior Art

The '507 patent is unenforceable due to inequitable conduct occurring during its prosecution, including, among other misconduct, Harnik Shukla, Jarom Kesler, and Stephen Jensen's withholding from the USPTO of key prior art that each of those individuals knew was material to patentability.  Harnik Shukla, Jarom Kesler, and Stephen Jensen had extensive knowledge of this prior art at the relevant time and had disclosed it in another patent prosecution that took place in parallel with the prosecution of the '507 patent.  These actions constitute fraud through omission because they violated the duty of disclosure owed by each of those individuals to the USPTO.  These actions were all done with a specific intent to deceive the USPTO, which would not have issued the '507 patent if it had been made properly aware of the withheld prior art.

As discussed below, Harnik Shukla, Jarom Kesler, and Stephen Jensen are among the individuals who owed a duty of disclosure to the USPTO during the prosecution of the '507 patent and committed inequitable conduct by breaching that duty of disclosure.  Each of these individuals was an attorney of record for prosecuting the application that resulted in the '507 patent.

Furthermore, Masimo and Knobbe Martens have an extensive 30-year relationship with overlapping members.  For example, Jensen not only is a partner at Knobbe Martens, the law firm that prosecuted these patents, but also has served as Masimo's General Counsel and Senior Vice President of Original Equipment Manufacture (OEM) Business and Business Development and Jensen promotes himself as serving on the Board of Directors of Masimo affiliate Cercacor Corporation.  (*See* https://www.knobbe.com/attorneys/steve-jensen, last accessed August 2, 2023).  As another example, Jensen has been reported saying "I've represented [Masimo] since 1993 when they were a small group of engineers out of a very small office. . . I've represented them since almost the beginning."   (*See*  https://www.ocbj.com/manufacturing/knobbe-partners-prep-for-

masimo-case/, last accessed August 2, 2023).  Furthermore, Jensen and Knobbe Martens have been prosecuting Kiani and Masimo's patent applications since 1993 such that Masimo has "changed [Jensen's] personal and professional life immensely." (*See* https://www.investors.com/news/management/leaders-and-success/masimo-ceo-four-guiding-principles-turn-startup-success/, last accessed August 2, 2023).  On information and belief, Kiani and others at Masimo selected the law firm Knobbe Martens to prosecute the '507 patent, the '745 patent, and other Masimo patents to exploit the 30-year commingled relationship that Masimo had with Knobbe Martens, which ensured total control over the prosecution process, including which material prior art to intentionally withhold from the USPTO to improperly obtain patents including the '507 patent.

Harnik Shukla

Harnik Shukla had a duty to disclose information material to the patentability of the '507 patent to the USPTO during prosecution of the '507 patent.  Mr. Shukla is a partner at the law firm of Knobbe Martens and an attorney of record for prosecution of the '507 patent who prepared and prosecuted the application that resulted in the '507 patent.

For example, Mr. Shukla prepared, signed, and filed Masimo's September 30, 2019 Information Disclosure Statement that failed to disclose known material prior art during the prosecution of the '507 patent:

Docket No.: MAS.925C1                                    **Customer No. 64735**

**INFORMATION DISCLOSURE STATEMENT**

| | | |
|---|---|---|
| First Inventor | : | Bilal Muhsin |
| App. No. | : | 15/880071 |
| Filed | : | January 25, 2018 |
| For | : | PHYSIOLOGICAL MONITOR WITH MOBILE COMPUTING DEVICE CONNECTIVITY |
| Examiner | : | Fardanesh, Marjan |
| Art Unit | : | 3791 |
| Conf. No. | : | 4417 |

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith.  Copies of any listed foreign and non-patent literature references are being submitted.

**No Disclaimers**

To the extent that anything in the Information Disclosure Statement or the listed references could be construed as a disclaimer of any subject matter supported by the present application, Applicant hereby rescinds and retracts such disclaimer.

**Timing of Disclosure**

This Information Disclosure Statement is being filed after receipt of a First Office Action, but before the mailing date of a Final Action and before the mailing date of a Notice of Allowance.

This Statement is accompanied by the fees set forth in 37 CFR 1.17(p).  The Commissioner is hereby authorized to charge any additional fees which may be required or to credit any overpayment to Account No. 11-1410.

**Application No.: 15/880071**
**Filing Date:       January 25, 2018**

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>September 30, 2019</u>        By:/Harnik Shukla/_____
                                  Harnik Shukla
                                  Registration No. 73,097
                                  Registered Practitioner
                                  Customer No. 64735
                                  (949) 721-5278

31422815

('507 Prosecution, September 30, 2019 Information Disclosure Statement transmitted September 30, 2019).

In addition, the USPTO expressly lists Mr. Shukla as an attorney of record for prosecution of the '507 patent.

<u>Jarom Kesler</u>

Jarom Kesler had a duty to disclose information material to the patentability of the '507 patent to the USPTO during prosecution of the '507 patent.  Mr. Kesler is a partner at the law firm of Knobbe Martens and an attorney of record for prosecution of the '507 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '507 patent.

For example, the USPTO expressly lists Mr. Kesler as an attorney of record for prosecution of the '507 patent.

<u>Stephen Jensen</u>

Stephen Jensen had a duty to disclose information material to the patentability of the '507 patent to the USPTO during prosecution of the '507 patent.  As a partner at the law firm of Knobbe Martens, Mr. Jensen was Masimo's primary outside counsel and an attorney of record for prosecution of the '507 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '507 patent.

For example, the USPTO expressly lists Mr. Jensen as an attorney of record for prosecution of the '507 patent.

In addition to his own role as an attorney of record for prosecuting the '507 patent, Mr. Jensen—as Masimo's primary outside patent attorney and client liaison—was the Knobbe Martens partner who had ultimate responsibility for and control over Knobbe Martens' legal work for

31

Masimo, including prosecution of the '507 patent.  As such, Mr. Jensen had the incentive to, and as discussed below, did in fact prioritize his longstanding loyalties to Masimo over his duties of disclosure to the PTO to facilitate issuance of the '507 patent by committing inequitable conduct.

Mr. Kiani and others at Masimo selected the law firm of Knobbe Martens to prosecute the '507 patent to ensure that the firm with which Masimo had a 30-year commingled relationship would control the prosecution process, including which material prior art to withhold from the USPTO.

During prosecution of the '507 patent, Masimo, including through its prosecution attorneys of record Shukla, Kesler, and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '507 patent, withheld from the USPTO known prior art material to the patentability of the '507 patent—including Mendelson et al., "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Proceedings of the 28th IEEE EM BS Annual International Conference, August 30-September 3, 2006 ("Mendelson IEEE")—with specific intent to deceive the USPTO.

Mendelson IEEE is prior art to the '507 patent and anticipates under 35 U.S.C. § 102 and/or renders obvious under 35 U.S.C. § 103, standing alone or combined with a person of ordinary skill in the art, at least claims 13, 14, 17, and 19 of the '507 patent.  As shown in the attached exemplary claim chart, Mendelson IEEE discloses every element of at least claims 13, 14, 17, and 19 of the '507 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '507 patent.

For example, the '507 patent claims "[a] computer-implemented method of informing a user of mobile measurement of oxygen saturation" utilizing an "optical sensor," a "processing board," and "an application." '507 patent at claim 13.

32

Mendelson IEEE similarly discloses "a wireless wearable pulse oximeter developed based on a small forehead mounted sensor" that includes a processor and "wireless communication capabilities to transfer arterial oxygen saturation (SpO2), heart rate (HR), body acceleration, and posture information to a PDA" and "[a] dedicated National Instruments LabVIEW program [which] was developed to control all interactions between the PDA and the wearable unit via a graphical user interface (GUI)." Mendelson IEEE at 1-3.

The '507 patent also claims "generating a graphical user interface having a plurality of display portions" and "displaying, in at least one portion of the plurality of display portions, a representation of a physiological parameter of a plurality of physiological parameters comprising at least the SpO2 measurement values" and "displaying, in a different portion of the plurality of portions, a plurality of user inputs configured to allow the user to interact with at least one of the plurality of display portions or the application." '507 patent at claim 13.

Mendelson IEEE similarly discloses that "[t]he stream of data received from the wearable unit is distributed to various locations on the PDA's graphical display. The most prominent portion of the GUI display is the scrolling PPG waveform, shown in Fig. 3. Numerical SpO2 and HR values are displayed is separate indicator windows" and similarly that "[t]he user interacts with the wearable system using a simple GUI . . . [which] allows easy activation of various functions." Mendelson IEEE at 3.

As such, the examiners for the '507 patent would not have allowed the '507 patent's claims if Shukla, Kesler, and Jensen did not withhold Mendelson IEEE from the USPTO.

During prosecution, Masimo, including through its prosecution attorneys of record Shukla, Kesler, Jensen, as well as other Masimo agents substantively involved in the prosecution of the '507 patent, knowingly withheld Mendelson IEEE from the USPTO. This was not merely a

peripheral reference for which those individuals merely had incidental awareness.  Instead, at the same time that Shukla, Kesler, and Jensen withheld Mendelson IEEE, those individuals knew about and indeed affirmatively cited Mendelson IEEE in the parallel prosecution of U.S. Patent No. 10,687,745 ("the '745 patent").  As discussed further below, Shukla, Kesler, and Jensen and as well as other Masimo agents substantively involved in the prosecution of the '507 patent, also prepared, prosecuted, and otherwise were substantively involved in preparing and prosecuting the '745 patent, which was prosecuted on an expedited basis from filing to issuance all while the prosecution of the '507 patent was ongoing.  Indeed, Shukla, Kesler, and Jensen were responsible for prosecuting both the '507 patent and the '745 patent.  Shukla, Kesler, Jensen and others at Masimo thus knew about Mendelson IEEE and its materiality yet specifically intended to, and did, withhold this material reference from the USPTO examiners of the '507 patent.  Shukla, Kesler, Jensen, and others at Masimo specifically intended to, and did, allow the examiners of the '507 patent to issue claims they would not have if these individuals and others at Masimo had disclosed Mendelson IEEE to them.  Masimo is now asserting at least one of these claims against Apple.

From January 2018 to August 2020, Masimo submitted two information disclosure statements to the USPTO when prosecuting the '507 patent that identified only 12 references.  Those information disclosure statements did not disclose or even mention Mendelson IEEE.

On April 23, 2020, however, Masimo cited Mendelson IEEE in an Information Disclosure Statement in its parallel prosecution of the '745 patent.  Shukla, Kesler, and Jensen thus were aware of Mendelson IEEE during the time that they were prosecuting the '507 patent.

Shukla was aware of Mendelson IEEE during the prosecution of the '507 patent.  Shukla was an attorney of record for prosecution of the '745 patent who was substantively involved in the preparation and prosecution of the application resulting in the '745 patent.

Kesler was aware of Mendelson IEEE during the prosecution of the '507 patent. Kesler was an attorney of record for prosecution of the '745 patent who prepared and prosecuted the application resulting in the '745 patent.

Among other things, Kesler signed and filed documents submitted by Masimo during the prosecution of the '745 patent, including the April 23, 2020 Information Disclosure Statement that affirmatively cited Mendelson IEEE:

---

**INFORMATION DISCLOSURE STATEMENT
AND NOTICE OF CONCURRENT LITIGATION**

| Inventor | : | Ammar Al-Ali |
| App. No. | : | 16/835,772 |
| Filed | : | March 31, 2020 |
| For | : | PHYSIOLOGICAL MONITORING DEVICES, SYSTEMS, AND METHODS |
| Examiner | : | FARDANESH, MARJAN |
| Art Unit | : | 3791 |
| Conf. No. | : | 2365 |

\*        \*        \*

**Timing of Disclosure**

This Information Disclosure Statement is being filed before the receipt of a First Office Action on the merits, and presumably no fee is required. If a First Office Action on the merits was mailed before the mailing date of this Statement, the Commissioner is authorized to charge the fee set forth in 37 CFR 1.17(p) to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 23, 2020                    By: ____/Jarom Kesler/_____
                                         Jarom D. Kesler
                                         Registration No. 57,046
                                         Registered Practitioner
                                         (949) 760-0404

\*        \*        \*

35

| | 1303 | Mendelson et al., "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Proceedings of the 28th IEEE EMBS Annual International Conference, August 30-September 3, 2006, pp. 912-915. |
|---|---|---|

('745 Prosecution, April 23, 2020 Information Disclosure Statement).

Jensen was aware of Mendelson IEEE during the prosecution of the '507 patent. From January 2018 to August 2020, Jensen also was an attorney of record for prosecution of the '745 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '745 patent.

As Masimo's primary outside patent attorney and client liaison, Mr. Jensen also had ultimate responsibility for and control over this prosecution.

At least Shukla, Kesler, and Jensen thus had deep knowledge of Mendelson IEEE and its applicability as a prior art reference. Despite this knowledge, Shukla, Kesler, Jensen, and others at Masimo concealed Mendelson IEEE from the USPTO during prosecution of the '507 patent. On information and belief, they did so because they knew that identifying this information to the USPTO would have resulted in the USPTO rejecting the claims and not issuing the '507 patent— i.e., they each specifically intended to deceive the USPTO into issuing the '507 patent. The single most reasonable inference from this conduct is that they intended to deceive the USPTO into improperly allowing the '507 patent.

Accordingly, the '507 patent is unenforceable due to inequitable conduct.

The effect of Shukla, Kesler, and Jensen's conduct is not limited to the '507 patent. All subsequent "child" or other related patents that are based on the same specification or relevant portions thereof are tainted by Masimo's inequitable conduct and, therefore, are also unenforceable under the doctrine of infectious unenforceability.

36

## '743 Patent — Burying of Material Prior Art

The '743 patent is unenforceable due to inequitable conduct occurring during its prosecution, including, among other misconduct, Jarom Kesler and Stephen Jensen burying key prior art references that each of those individuals knew were material to patentability.  Specifically, during prosecution of the '743 patent, Jarom Kesler and Stephen Jensen intentionally buried known, highly material prior art among voluminous submissions of less relevant and even clearly irrelevant prior art.  Jarom Kesler and Stephen Jensen's pattern of misconduct evidenced specific intent to deceive the USPTO, which would not have issued the '743 patent if it had been made properly aware of the buried references.

As discussed below, Jarom Kesler and Stephen Jensen are among the individuals who owed a duty of disclosure to the USPTO during the prosecution of the '743 patent and committed inequitable conduct by breaching that duty of disclosure.  Each of these individuals was an attorney of record for prosecuting the application that resulted in the '743 patent.

Jarom Kesler

Jarom Kesler had a duty to disclose information material to the patentability of the '743 patent to the USPTO during prosecution of the '743 patent.  Mr. Kesler is a partner at the law firm of Knobbe Martens and an attorney of record for prosecution of the '743 who prepared and prosecuted the application resulting in the '743 patent.  Among other things, Mr. Kesler signed and filed documents submitted by Masimo during prosecution of the '743 patent, including Masimo's February 14, 2020 Patent Application; February 14, 2020 Request for Prioritized Examination; March 11, 2020 Rescission of any Prior Disclaimers and Request to Revisit Art, March 11, 2020 Amendments, March 11, 2020 Information Disclosure Statement; March 30, 2020 Interview; April 8, 2020 Information Disclosure Statement and Notice of Concurrent Litigation;

April 15, 2020 Comments on Statement of Reasons for Allowance; and August 10, 2020 Certificate of Correction.

Among other things, Mr. Kesler prepared, signed, and filed Masimo's March 11, 2020 Information Disclosure Statement, which cited no fewer than *1,339* prior art references. This March 11, 2020 Information Disclosure Statement included all of the same 1,339 references that were included in the Information Disclosure Statement submitted for a different patent, the '159 patent, on the same date.

**INFORMATION DISCLOSURE STATEMENT**

| | | |
|---|---|---|
| First Inventor | : | Ammar Al-Ali |
| App. No. | : | 16/791955 |
| Filed | : | February 14, 2020 |
| For | : | PHYSIOLOGICAL MEASUREMENT DEVICES, SYSTEMS, AND METHODS |
| Examiner | : | Unassigned |
| Art Unit | : | 2875 |
| Conf. No. | : | 3106 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**References and Listing**

   Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith. References numbered 1-1219 and 1221-1339 are of record in U.S. patent application No. 16/532061, filed August 5, 2019, which is relied upon for an earlier filing date under 35 USC 120. Accordingly, copies of references 1-1219 and 1221-1339 are not submitted pursuant to 37 CFR 1.98(d).

**No Disclaimers**

   To the extent that anything in the Information Disclosure Statement or the listed references could be construed as a disclaimer of any subject matter supported by the present application, Applicant hereby rescinds and retracts such disclaimer.

**Timing of Disclosure**

   This Information Disclosure Statement is being filed within three months of the filing date or date of national phase entry, with an RCE or before receipt of a First Office Action after an RCE, and no fee is believed to be required.

   The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

           Respectfully submitted,

           KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 11, 2020      By:_____ /Jarom Kesler/_____
           Jarom D. Kesler
           Registration No. 57,046
           Registered Practitioner
           Customer No. 64735
           (949) 760-0404

('743 Prosecution, March 11, 2020 Information Disclosure Statement).

   Among other things, Mr. Kesler also prepared, signed, and filed Masimo's February 14, 2020 Request for Prioritized Examination, which was granted on March 5, 2020.

**CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION**
**UNDER 37 CFR 1.102(e)** (Page 1 of 1)

| First Named Inventor: | Ammar Al-Ali | Nonprovisional Application Number (if known): | Unassigned |
|---|---|---|---|
| Title of Invention: | PHYSIOLOGICAL MEASUREMENT DEVICES, SYSTEMS, AND METHODS | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1. The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request. The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0. The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid. I understand that any required excess claims fees or application size fee must be paid for the application.

2. I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3. The applicable box is checked below:

   I.   ☑ **Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

   i.   (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
   ---OR---
   (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

   ii.  An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, <u>or</u> the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

   II.  ☐ **Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

   i.   A request for continued examination has been filed with, or prior to, this form.
   ii.  If the application is a utility application, this certification and request is being filed via EFS-Web.
   iii. The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
   iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
   v.   No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature /Jarom Kesler/ | | Date 2020-02-14 |
|---|---|---|
| Name (Print/Typed) Jarom D. Kesler | | Practitioner Registration Number 57046 |

<u>Note:</u> This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required.*

☑ *Total of 1 _____ forms are submitted.

('743 Prosecution, February 14, 2020 Certification and Request for Prioritized Examination).

| Decision Granting Request for Prioritized Examination (Track I) | Application No.<br>16/791,955 | Applicant(s)<br>Al-Ali, Ammar | |
|---|---|---|---|
| | Examiner<br>BRIAN W BROWN | Art Unit<br>OPET | AIA (FITF) Status<br>Yes |

1.  THE REQUEST FILED <u>14 February 2020</u> IS **GRANTED** .

    The above-identified application has met the requirements for prioritized examination
    
    A.    ☑ for an original nonprovisional application (Track I).
    
    B.    ☐ for an application undergoing continued examination (RCE).

2.  **The above-identified application will undergo prioritized examination**. The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

    A.    filing a **petition for extension of time** to extend the time period for filing a reply;

    B.    filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims** , or a multiple dependent claim;

    C.    filing a **request for continued examination** ;

    D.    filing a notice of appeal;

    E.    filing a request for suspension of action;

    F.    mailing of a notice of allowance;

    G.    mailing of a final Office action;

    H.    completion of examination as defined in 37 CFR 41.102; or

    I.    abandonment of the application.

    Telephone inquiries with regard to this decision should be directed to BRIAN BROWN at (571)272-5338. In his/her absence, calls may be directed to Petition Help Desk at (571) 272-3282.

| /BRIAN W BROWN/<br>Petitions Examiner, OPET | |
|---|---|

('743 Prosecution, March 5, 2020 Decision Granting Request for Prioritized Examination).

<u>Stephen Jensen</u>

Stephen Jensen had a duty to disclose information material to the patentability of the '743 patent to the USPTO during prosecution of the '743 patent.  As a partner at the law firm of Knobbe Martens, Mr. Jensen was Masimo's primary outside counsel and an attorney of record for

prosecution of the '743 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '743 patent.

For example, the USPTO expressly lists Mr. Jensen as an attorney of record for prosecution of the '743 patent.

In addition to his own role as an attorney of record for prosecuting the '743 patent, Mr. Jensen—as Masimo's primary outside patent attorney and client liaison—was the Knobbe Martens partner who had ultimate responsibility for and control over Knobbe Martens' legal work for Masimo, including prosecution of the '743 patent.  As such, Mr. Jensen had the incentive to, and as discussed below, did in fact prioritize his longstanding loyalties to Masimo over his duties of disclosure to the PTO to facilitate issuance of the '743 patent by committing inequitable conduct.

Mr. Kiani and others at Masimo selected the law firm of Knobbe Martens to prosecute the '743 patent to ensure that the firm with which Masimo had a 30-year commingled relationship would control the prosecution process, including which material prior art to withhold from the USPTO or otherwise bury under voluminous disclosures of irrelevant prior art, as discussed further below.

During prosecution of the '743 patent, Masimo, through its prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, submitted unreasonably voluminous prior art disclosures to obscure five of the most important prior art references, namely U.S. Pub. No. US2011/0004106 to Iwamiya et al. ("Iwamiya"),  U.S. Patent No. 6,801,799 to Mendelson ("Mendelson 799"), U.S. Patent No. 6,343,223 to Chin et al. ("Chin"), U.S. Patent No. 5,099,842 to Mannheimer et al. ("Mannheimer 842"), and U.S. Patent No. 6,580,086 to Schulz et al. ("Schulz").  Masimo's prosecution attorneys cited no fewer than 1,339 references in an Information Disclosure Statement submitted during

prosecution.  Masimo's March 11, 2020 Information Disclosure Statement, which essentially comprised a document dump of these 1,339 references, included numerous clearly irrelevant and (at best) marginally relevant references.  Because these references were buried amongst 1,339 disclosed references, the patent examiner could not have considered each of them and, in fact, did not cite them in any office action.

Among the 1,339 cited references was Iwamiya.  Iwamiya concerns an optical biological information detecting apparatus and teaches "a light emitting unit which emits observation light of a specific wavelength band to optically observe a desired portion of a tissue; an annular light guide unit which guides the observation light to a desired area of a surface of the skin…; and a light receiving unit which is disposed at a position surrounded by the annular light guide unit…" Iwamiya at claim 1.  Iwamiya is prior art to the '743 patent, and at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent are invalid as anticipated by Iwamiya under 35 U.S.C. § 102 or as obvious under § 103 in view of Iwamiya standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Iwamiya (charted as U.S. Patent No. 8,670,819) discloses every element of at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '743 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, knew during the prosecution of the '743 patent that Iwamiya existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '743 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Iwamiya was material to patentability of the '743 patent.

Also among the 1,339 cited references was Chin.  Chin concerns oximeter sensors with a heating element to improve blood perfusion, and the patent teaches "[a]n oximeter sensor comprising . . . a light emitter mounted on a first side of a tissue region of a patient . . . [and] a light detector mounted on a second side of said tissue region of said patient[.]" Chin at 10:25-30. Chin is prior art to the '743 patent, and at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent are invalid as anticipated by Chin under 35 U.S.C. § 102 or as obvious under § 103 in view of Chin standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Chin discloses every element of at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '743 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, knew during the prosecution of the '743 patent that Chin existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '743 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Chin was material to patentability of the '743 patent.

Among the 1,339 cited references was Mendelson 799.  Mendelson 799 concerns non-invasive blood parameter measurements and teaches "[a] sensor for use in an optical measurement device and a method for non-invasive measurement of a blood parameter." Mendelson 799 at Abstract.  Mendelson 799 is prior art to the '743 patent, and at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent are invalid as obvious under § 103 in view of Mendelson 799 standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached

exemplary claim chart, Mendelson 799 contains disclosures material to the invalidity of the asserted claims of the '743 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, knew during the prosecution of the '743 patent that Mendelson 799 existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '743 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Mendelson 799 was material to patentability of the '743 patent.

Also among the 1,339 cited references was Mannheimer 842.  Mannheimer 842 concerns a fetal pulse oximetry probe and teaches "[a] transflectance-type pulse oximetry probe comprising . . . a light source and a light detector mounted within a probe . . . ." Mannheimer 842 at 4:35-38. Mannheimer 842 is prior art to the '743 patent, and at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent are invalid as obvious under § 103 in view of Mannheimer 842 standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Mannheimer 842 contains disclosures material to the invalidity of the asserted claims of the '743 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, knew during the prosecution of the '743 patent that Mannheimer 842 existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '743 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Mannheimer 842 was material to patentability of the '743 patent.

Also among the 1,339 cited references was Schulz.  Schulz concerns an optical probe for use in measurements on tissue material of a patient, including for blood oximetry.  Schulz teaches an "optical probe for use in non-invasive energy absorption or reflection measurements, as well as a method of using the same."  Schulz at 3:46-48.  Schulz is prior art to the '743 patent, and at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 of the '743 patent are invalid as obvious under § 103 in view of Schulz standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Schulz contains disclosures material to the invalidity of the asserted claims of the '743 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, knew during the prosecution of the '743 patent that Schulz existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '743 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Schulz was material to patentability of the '743 patent.

Accordingly, the buried Iwamiya reference, Mendelson 799 reference, Chin reference, Mannheimer 842 reference, and Schulz reference were, at the very least, highly material to patentability of the alleged inventions claimed in what would become the '743 patent.

Masimo, through its prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, submitted two Information Disclosure Statements during prosecution of the patent application that led to the '743 patent on the following dates: March 11, 2020 and April 8, 2020.  These Information Disclosure Statements listed 1,339 prior art references, a substantial number of which were clearly irrelevant

or at most minimally relevant to the alleged inventions covered by the pending claims at any point during prosecution.

One example of an irrelevant (or at most minimally relevant) reference submitted to the USPTO is U.S. Patent No. Des. 359,546 to Savage et al. ("Savage"), titled "Housing for a dental unit disinfecting device." Whereas the '743 patent concerns a non-invasive, optical-based physiological monitoring sensor, Savage, a design-patent reference, concerns very different subject matter—the ornamental design for a housing for a dental unit disinfecting device. Shown in Figure 1 below is a perspective view of the housing for a dental unit disinfecting device.



This subject matter is far afield from that of the '743 patent and had the effect of obscuring and thereby burying the most material references, including at least Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.

Another example of an irrelevant (or at most minimally relevant) reference submitted to the USPTO is U.S. Patent No. 6,595,316 to Cybulski et al. ("Cybulski"), titled "Tension-adjustable mechanism for stethoscope earpieces." Whereas the '743 patent concerns a non-invasive, optical-

based physiological monitoring sensor, this reference concerns very different subject matter—stethoscope earpieces.  For example, the patent discloses a "tension-adjustable headset for [an] electronic stethoscope." Cybulski at 3:42-43.  Figure 1 below shows said headset.



This subject matter is far afield from that of the '743 patent and had the effect of obscuring and thereby burying the most pertinent references, including Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.

During prosecution of the '743 patent, Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent submitted the March 11, 2020 and April 8, 2020 Information Disclosure Statements, burying the USPTO with at least 1,339 references.  Buried in these unreasonably voluminous submissions were the material Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.  Out of the 1,339 references cited in the March 11, 2020 Information Disclosure Statement, the Iwamiya reference was document 769, the Mendelson 799 reference was document 158, the Chin reference

was document 101, the Mannheimer 842 reference was document 5, and the Schulz reference was document 123.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, were aware of the relevance and high materiality of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.  They knew that Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz existed because they included them in Information Disclosure Statements, and by submitting them in Information Disclosure Statements, thereby acknowledged their relevance to the prosecution of the application leading to the '743 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, therefore had knowledge of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz as well as their materiality to patentability, at least giving rise to an inference of intentional breach of their duties of disclosure.

Although Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz were submitted into the file history in the patent application that matured into the '743 patent via citations in the Information Disclosure Statement, these references were buried within a large number of other less relevant or irrelevant documents and were never brought to the examiner's attention.

Notably, despite their knowledge of the contents and materiality of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz, Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, failed to highlight these references or otherwise distinguish them in any way from the other 1,000-plus cited references at any point during the prosecution of what would become the '743

patent.  And Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz are not cumulative of other prior art relied on by the examiner.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '743 patent, thus buried Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz and failed to bring those references to the examiner's attention to intentionally mislead the examiner in order to improperly procure the '743 patent, notwithstanding that Masimo was not entitled to such patent based on Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz under 35 U.S.C. §§ 102, 103.

Masimo's prosecution attorneys of record Kesler and Jensen sought expedited review, which was granted on March 5, 2020.  Only six days later, on March 11, 2020, Masimo's prosecution attorneys of record Kesler and Jensen submitted 1,339 prior art references for the patent examiner's review.  Bound by USPTO's agreement to review the prosecution on an expedited basis, the patent examiner signed that March 11, 2020 Information Disclosure Statement on March 19, 2020, only eight days after receiving it, stating that the patent examiner has considered the 1,339 prior art references.  It defies reality that the patent examiner could have actually obtained, read, and considered 1,339 prior art references in just eight days.  On April 9, 2020, only a few weeks later, the patent examiner issued its Notice of Allowance.  Accordingly, by requesting expedited review and then submitting 1,339 prior art references for review on a compressed schedule, Masimo's prosecution attorneys of record Kesler and Jensen compounded the USPTO's inability to review the 1,339 prior art references with appropriate scrutiny. Therefore, the patent examiner could not possibly have read each reference that Masimo's prosecution attorneys of record had identified.  The single most reasonable inference that can be drawn from the evidence is that Masimo's prosecution attorneys of record intended to deceive the

USPTO by burying the patent examiner with prior art and leaving the patent examiner with no practical way to review everything that was disclosed or figure out what was pertinent among the 1,339 listed references.

But for this misleading conduct, the examiner would have cited either or all of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz alone or in combination with other cited references to reject the claims of the '743 patent, including at least claims 1, 4-8, 11-12, 14, 16, 18-19, and 21 as invalid.

Accordingly, the '743 patent is unenforceable due to inequitable conduct.

The effect of Kesler and Jensen's conduct is not limited to the '743 patent. All subsequent "child" or other related patents that are based on the same specification or relevant portions thereof are tainted by Masimo's inequitable conduct and, therefore, are also unenforceable under the doctrine of infectious unenforceability.

### '159 Patent — Burying of Material Prior Art

The '159 patent is unenforceable due to inequitable conduct occurring during its prosecution, including, among other misconduct, Jarom Kesler and Stephen Jensen's burying key prior art references that each of those individuals knew were material to patentability. Specifically, during prosecution of the '159 patent, Jarom Kesler and Stephen Jensen intentionally buried known, highly material prior art among voluminous submissions of less relevant and even clearly irrelevant prior art. Jarom Kesler and Stephen Jensen's pattern of misconduct evidenced specific intent to deceive the USPTO, which would not have issued the '159 patent if it had been made properly aware of the buried references.

As discussed below, Jarom Kesler and Stephen Jensen are among the individuals who owed a duty of disclosure to the USPTO during the prosecution of the '159 patent and committed

inequitable conduct by breaching that duty of disclosure.  Each of these individuals was an attorney of record for prosecuting the application that resulted in the '159 patent.

Jarom Kesler

Jarom Kesler had a duty to disclose information material to the patentability of the '159 patent to the USPTO during prosecution of the '159 patent.  Mr. Kesler is a partner at the law firm of Knobbe Martens and an attorney of record for prosecution of the '159 who prepared and prosecuted the application resulting in the '159 patent.  Among other things, Mr. Kesler signed and filed documents submitted by Masimo during prosecution of the '159 patent, including Masimo's February 14, 2020 Patent Application; February 24, 2020 Request for Prioritized Examination; March 11, 2020 Rescission of any Prior Disclaimers and Request to Revisit Art, March 11, 2020 Amendments, March 11, 2020 Information Disclosure Statement; April 8, 2020 Information Disclosure Statement and Notice of Concurrent Litigation; April 21, 2020 Comments on Statement of Reasons for Allowance; and August 10, 2020 Certificate of Correction.

Among other things, Mr. Kesler prepared, signed, and filed Masimo's March 11, 2020 Information Disclosure Statement, which cited no fewer than *1,339* prior art references.  This March 11, 2020 Information Disclosure Statement included all of the same 1,339 references that were included in the Information Disclosure Statement submitted for a different patent, the '743 patent, on the same date.

**INFORMATION DISCLOSURE STATEMENT**

| | | |
|---|---|---|
| First Inventor | : | Ammar Al-Ali |
| App. No. | : | 16/791963 |
| Filed | : | February 14, 2020 |
| For | : | PHYSIOLOGICAL MONITORING DEVICES, SYSTEMS, AND METHODS |
| Examiner | : | Unassigned |
| Art Unit | : | 3791 |
| Conf. No. | : | 4439 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**References and Listing**

     Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith. References numbered 1-1219 and 1221-1339 are of record in U.S. patent application No. 16/532065, filed August 5, 2019, which is relied upon for an earlier filing date under 35 USC 120. Accordingly, copies of references 1-1219 and 1221-1339 are not submitted pursuant to 37 CFR 1.98(d).

**No Disclaimers**

     To the extent that anything in the Information Disclosure Statement or the listed references could be construed as a disclaimer of any subject matter supported by the present application, Applicant hereby rescinds and retracts such disclaimer.

**Timing of Disclosure**

     This Information Disclosure Statement is being filed within three months of the filing date or date of national phase entry, with an RCE or before receipt of a First Office Action after an RCE, and no fee is believed to be required.

     The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

                              Respectfully submitted,

                              KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 11, 2020             By:       /Jarom Kesler/
                                   Jarom D. Kesler
                                   Registration No. 57,046
                                   Registered Practitioner
                                   Customer No. 64735
                                   (949) 760-0404

('159 Prosecution, March 11, 2020 Information Disclosure Statement).

     Among other things, Mr. Kesler also prepared, signed, and filed Masimo's February 24, 2020 Request for Prioritized Examination, which was granted on March 5, 2020.

**CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION**
**UNDER 37 CFR 1.102(e) (Page 1 of 1)**

| First Named Inventor: | Ammar Al-Ali | Nonprovisional Application Number (if known): | Unassigned |
|---|---|---|---|
| Title of Invention: | PHYSIOLOGICAL MONITORING DEVICES, SYSTEMS, AND METHODS | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1. The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request. The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0. The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid. I understand that any required excess claims fees or application size fee must be paid for the application.

2. I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3. The applicable box is checked below:

   **I.**    ☑ **Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

   i.   (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
   ---OR---
   (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

   ii.  An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, **or** the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

   **II.**    ☐ **Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

   i.    A request for continued examination has been filed with, or prior to, this form.
   ii.   If the application is a utility application, this certification and request is being filed via EFS-Web.
   iii.  The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
   iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
   v.   No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature /Jarom Kesler/ | Date 2020-02-24 |
|---|---|
| Name (Print/Typed) Jarom D. Kesler | Practitioner Registration Number 57046 |

**Note:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required.*

☑   *Total of 1 _____ forms are submitted.

('159 Prosecution, February 24, 2020 Certification and Request for Prioritized Examination).

| **Decision Granting Request for Prioritized Examination (Track I)** | **Application No.** 16/791,963 | **Applicant(s)** Al-Ali, Ammar | |
|---|---|---|---|
| | **Examiner** CHERYL P GIBSON BAYLOR | **Art Unit** OPET | **AIA (FITF) Status** Yes |

1.  THE REQUEST FILED <u>14 February 2020</u> IS <u>**GRANTED**</u>.

   The above-identified application has met the requirements for prioritized examination
   A.   ☑ for an original nonprovisional application (Track I).
   B.   ☐ for an application undergoing continued examination (RCE).

2.  **The above-identified application will undergo prioritized examination**. The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

   A.   filing a <u>**petition for extension of time**</u> to extend the time period for filing a reply;

   B.   filing an <u>**amendment to amend the application to contain more than four independent claims, more than thirty total claims**</u>, or a multiple dependent claim;

   C.   filing a <u>**request for continued examination**</u> ;

   D.   filing a notice of appeal;

   E.   filing a request for suspension of action;

   F.   mailing of a notice of allowance;

   G.   mailing of a final Office action;

   H.   completion of examination as defined in 37 CFR 41.102; or

   I.   abandonment of the application.

   Telephone inquiries with regard to this decision should be directed to CHERYL GIBSON BAYLOR at (571)272-3213. In his/her absence, calls may be directed to Petition Help Desk at (571) 272-3282.

| /CHERYL GIBSON BAYLOR/ Paralegal Specialist, OPET | |
|---|---|

('159 Prosecution, March 5, 2020 Decision Granting Request for Prioritized Examination).

<u>Stephen Jensen</u>

Stephen Jensen had a duty to disclose information material to the patentability of the '159 patent to the USPTO during prosecution of the '159 patent.  As a partner at the law firm of Knobbe Martens, Mr. Jensen was Masimo's primary outside counsel and an attorney of record for

prosecution of the '159 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '159 patent.

For example, the USPTO expressly lists Mr. Jensen as an attorney of record for prosecution of the '159 patent.

In addition to his own role as an attorney of record for prosecuting the '159 patent, Mr. Jensen—as Masimo's primary outside patent attorney and client liaison—was the Knobbe Martens partner who had ultimate responsibility for and control over Knobbe Martens' legal work for Masimo, including prosecution of the '159 patent.  As such, Mr. Jensen had the incentive to, and as discussed below, did in fact prioritize his longstanding loyalties to Masimo over his duties of disclosure to the PTO to facilitate issuance of the '159 patent by committing inequitable conduct.

Mr. Kiani and others at Masimo selected the law firm of Knobbe Martens to prosecute the '159 patent to ensure that the firm with which Masimo had a 30-year commingled relationship would control the prosecution process, including which material prior art to withhold from the USPTO or otherwise bury under voluminous disclosures of irrelevant prior art, as discussed further below.

During prosecution of the '159 patent, Masimo, through its prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, submitted unreasonably voluminous prior art disclosures to obscure five of the most important prior art references, namely U.S. Pub. No. US2011/0004106 to Iwamiya et al. ("Iwamiya"),  U.S. Patent No. 6,801,799 to Mendelson ("Mendelson 799"), U.S. Patent No. 6,343,223 to Chin et al. ("Chin"), U.S. Patent No. 5,099,842 to Mannheimer et al. ("Mannheimer 842"), and U.S. Patent No. 6,580,086 to Schulz et al. ("Schulz").  Masimo's prosecution attorneys cited no fewer than 1,339 references in Information Disclosure Statements submitted during

prosecution.  Masimo's March 11, 2020 Information Disclosure Statement, which essentially comprised a document dump of these 1,339 references, included numerous clearly irrelevant and (at best) marginally relevant references.  Because these references were buried amongst 1,339 disclosed references, the patent examiner could not have considered each of them and, in fact, did not cite them in any office action.

Among the 1,339 cited references was Iwamiya.  Iwamiya concerns an optical biological information detecting apparatus and teaches "a light emitting unit which emits observation light of a specific wavelength band to optically observe a desired portion of a tissue; an annular light guide unit which guides the observation light to a desired area of a surface of the skin . . . ; and a light receiving unit which is disposed at a position surrounded by the annular light guide unit . . . ." Iwamiya at claim 1.  Iwamiya is prior art to the '159 patent, and at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent are invalid as anticipated by Iwamiya under 35 U.S.C. § 102 or as obvious under § 103 in view of Iwamiya standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Iwamiya (charted as U.S. Patent No. 8,670,819) discloses every element of at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '159 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, knew during the prosecution of the '159 patent that Iwamiya existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '159 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Iwamiya was material to patentability of the '159 patent.

Also among the 1,339 cited references was Chin.  Chin concerns oximeter sensors with a heating element to improve blood perfusion, and the patent teaches "[a]n oximeter sensor comprising . . . a light emitter mounted on a first side of a tissue region of a patient . . . [and] a light detector mounted on a second side of said tissue region of said patient[.]" Chin at 10:25-30. Chin is prior art to the '159 patent, and at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent are invalid as anticipated by Chin under 35 U.S.C. § 102 or as obvious under § 103 in view of Chin standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Chin discloses every element of at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '159 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, knew during the prosecution of the '159 patent that Chin existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '159 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Chin was material to patentability of the '159 patent.

Among the 1,339 cited references was Mendelson 799.  Mendelson 799 concerns non-invasive blood parameter measurements and teaches "[a] sensor for use in an optical measurement device and a method for non-invasive measurement of a blood parameter." Mendelson 799 at Abstract.  Mendelson 799 is prior art to the '159 patent, and at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent are invalid as obvious under § 103 in view of Mendelson 799 standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim

chart, Mendelson 799 contains disclosures material to the invalidity of the asserted claims of the '159 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, knew during the prosecution of the '159 patent that Mendelson 799 existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '159 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Mendelson 799 was material to patentability of the '159 patent.

Also among the 1,339 cited references was Mannheimer 842.  Mannheimer 842 concerns a fetal pulse oximetry probe and teaches "[a] transflectance-type pulse oximetry probe comprising . . . a light source and a light detector mounted within a probe . . . ." Mannheimer 842 at 4:35-38. Mannheimer 842 is prior art to the '159 patent, and at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent are invalid as obvious under § 103 in view of Mannheimer 842 standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Mannheimer 842 contains disclosures material to the invalidity of the asserted claims of the '159 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, knew during the prosecution of the '159 patent that Mannheimer 842 existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '159 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Mannheimer 842 was material to patentability of the '159 patent.

59

Also among the 1,339 cited references was Schulz.  Schulz concerns an optical probe for use in measurements on tissue material of a patient, including for blood oximetry.  Schulz teaches an "optical probe for use in non-invasive energy absorption or reflection measurements, as well as a method of using the same."  Schulz at 3:46-48.  Schulz is prior art to the '159 patent, and at least claims 1-5, 7-9, 13, 19-23, and 25 of the '159 patent are invalid as obvious under § 103 in view of Schulz standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Schulz contains disclosures material to the invalidity of the asserted claims of the '159 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, knew during the prosecution of the '159 patent that Schulz existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '159 patent, as evidenced by the submission of Masimo's March 11, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Schulz was material to patentability of the '159 patent.

Accordingly, the buried Iwamiya, Mendelson 799 reference, Chin reference, Mannheimer 842 reference, and Schulz reference were, at the very least, highly material to patentability of the alleged inventions claimed in what would become the '159 patent.

Masimo, through its prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, submitted two Information Disclosure Statements during prosecution of the patent application that led to the '159 patent on the following dates: March 11, 2020 and April 8, 2020.  These Information Disclosure Statements listed 1,339 prior art references, a substantial number of which were clearly irrelevant

or at most minimally relevant to the alleged inventions covered by the pending claims at any point during prosecution.

One example of an irrelevant (or at most minimally relevant) reference submitted to the USPTO is U.S. Patent No. Des. 359,546 to Savage et al. ("Savage"), titled "Housing for a dental unit disinfecting device."  Whereas the '159 patent concerns a non-invasive, optical-based physiological monitoring sensor, Savage, a design-patent reference, concerns very different subject matter—the ornamental design for a housing for a dental unit disinfecting device.  Shown in Figure 1 below is a perspective view of the housing for a dental unit disinfecting device.



This subject matter is far afield from that of the '159 patent and had the effect of obscuring and thereby burying the most material references, including at least Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.

Another example of an irrelevant or at most minimally relevant reference submitted to the USPTO is U.S. Patent No. 6,595,316 to Cybulski et al. ("Cybulski"), titled "Tension-adjustable mechanism for stethoscope earpieces."  Whereas the '159 patent concerns a non-invasive, optical-

61

based physiological monitoring sensor, this reference concerns very different subject matter—stethoscope earpieces.  For example, the patent discloses a "tension-adjustable headset for [an] electronic stethoscope." Cybulski at 3:42-43.  Figure 1 below shows said headset.



This subject matter is far afield from that of the '159 patent and had the effect of obscuring and thereby burying the most pertinent references, including Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.

During prosecution of the '159 patent, Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent submitted the March 11, 2020 and April 8, 2020 Information Disclosure Statements above, burying the USPTO with at least 1,339 references.  Buried in these unreasonably voluminous submissions were the material Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.  Out of the 1,339 references cited in the March 11, 2020 Information Disclosure Statement, the Iwamiya reference was document 769, the Mendelson 799 reference was document 157, the Chin reference

was document 100, the Mannheimer 842 reference was document 5, and the Schulz reference was document 122.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, were aware of the relevance and high materiality of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz.  They knew that Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz existed because they included them in an Information Disclosure Statement, and by submitting them in an Information Disclosure Statement, thereby acknowledged their relevance to the prosecution of the application leading to the '159 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, therefore had knowledge of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz as well as their materiality to patentability, at least giving rise to an inference of intentional breach of their duties of disclosure.

Although Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz were submitted into the file history in the patent application that matured into the '159 patent via citations in an Information Disclosure Statement, these references were buried within a large number of other less relevant or irrelevant documents and were never brought to the examiner's attention.

Notably, despite their knowledge of the contents and materiality of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz, Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, failed to highlight these references or otherwise distinguish them in any way from the other 1,000-plus cited references at any point during the prosecution of what would become the '159

patent.  And Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz are not cumulative of other prior art relied on by the examiner.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '159 patent, thus buried Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz and failed to bring those references to the examiner's attention to intentionally mislead the examiner in order to improperly procure the '159 patent, notwithstanding that Masimo was not entitled to such patent based on Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz under 35 U.S.C. §§ 102, 103.

Masimo's prosecution attorneys of record Kesler and Jensen sought expedited review, which was granted on March 5, 2020.  Only six days later, on March 11, 2020, Masimo's prosecution attorneys of record Kesler and Jensen submitted 1,339 prior art references for the patent examiner's review.  Bound by USPTO's agreement to review the prosecution on an expedited basis, the patent examiner signed that March 11, 2020 Information Disclosure Statement on March 19, 2020, only eight days after receiving it, stating that the patent examiner has considered the 1,339 prior art references.  It defies reality that the patent examiner could have actually obtained, read, and considered 1,339 prior art references in just eight days.  On April 9, 2020, only a few weeks later, the patent examiner issued its Notice of Allowance.  Accordingly, by requesting expedited review and then submitting 1,339 prior art references for review on a compressed schedule, Masimo's prosecution attorneys of record Kesler and Jensen compounded the USPTO's inability to review the 1,339 prior art references with appropriate scrutiny.  On information and belief, this conduct was specifically intended to, and did, obscure material references from the examiner among many minimally relevant references.  Therefore, the patent examiner could not possibly have read each reference that Masimo's prosecution attorneys of

record had identified.  The single most reasonable inference that can be drawn from the evidence is that Masimo's prosecution attorneys of record intended to deceive the USPTO by burying the patent examiner with prior art and leaving the patent examiner with no practical way to review everything that was disclosed or figure out what was pertinent among the 1,339 listed references.

But for this misleading conduct, the examiner would have cited either or all of Iwamiya, Mendelson 799, Chin, Mannheimer 842, and Schulz alone or in combination with other cited references to reject the claims of the '159 patent, including at least claims 1-5, 7-9, 13, 19-23, and 25, as invalid.

Accordingly, the '159 patent is unenforceable due to inequitable conduct.

The effect of Kesler and Jensen's conduct is not limited to the '159 patent.  All subsequent "child" or other related patents that are based on the same specification or relevant portions thereof are tainted by Masimo's inequitable conduct and, therefore, are also unenforceable under the doctrine of infectious unenforceability.

### '911 Patent — Burying of Material Prior Art

The '911 patent is unenforceable due to inequitable conduct occurring during its prosecution, including, among other misconduct, Jarom Kesler and Stephen Jensen's burying key prior art references that each of those individuals knew were material to patentability.  Specifically, during prosecution of the '911 patent, Jarom Kesler and Stephen Jensen intentionally buried known highly material prior art among voluminous submissions of less relevant and even clearly irrelevant prior art.  Jarom Kesler and Stephen Jensen's pattern of misconduct evidenced specific intent to deceive the USPTO, which would not have issued the '911 patent if it had been made properly aware of the buried references.

As discussed below, Jarom Kesler and Stephen Jensen are among the individuals who owed a duty of disclosure to the USPTO during the prosecution of the '911 patent and committed inequitable conduct by breaching that duty of disclosure.  Each of these individuals was an attorney of record for prosecuting the application that resulted in the '911 patent.

Jarom Kesler

Jarom Kesler had a duty to disclose information material to the patentability of the '911 patent to the USPTO during prosecution of the '911 patent.  Mr. Kesler is a partner at the law firm of Knobbe Martens and an attorney of record for prosecution of the '911 patent who prepared and prosecuted the application resulting in the '911 patent.  Among other things, Mr. Kesler signed and filed documents submitted by Masimo during prosecution of the '911 patent, including Masimo's September 22, 2020 Patent Application; September 22, 2020 Certification and Request for Prioritized Examination; September 22, 2020 Information Disclosure Statement; September 22, 2020 Transmittal for Power of Attorney; October 22, 2020 Preliminary Amendment; March 4, 2021 Amendment After Allowance; March 4, 2021 Comments on Reasons for Allowance; and May 25, 2021 Request for Certificate of Correction.

Among other things, Mr. Kesler prepared, signed, and filed Masimo's September 22, 2020 Information Disclosure Statement, which cited no fewer than **1,725** prior art references.

Docket No.:  MLR.002C6                                         Page 1 of 1

**INFORMATION DISCLOSURE STATEMENT**

| | | |
|---|---|---|
| First Inventor | : | Robert A. Smith |
| App. No. | : | Herewith |
| Filed | : | Herewith |
| For | : | MULTIPLE WAVELENGTH SENSOR EMITTERS |
| Examiner | : | To Be Assigned |
| Art Unit | : | To Be Assigned |
| Conf. No. | : | To Be Assigned |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

        Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith.  Listed references are of record in U.S. patent application No. 16/437611, filed June 11, 2019, which is relied upon for an earlier filing date under 35 USC 120.  Copies of the references are not submitted pursuant to 37 CFR 1.98(d).

**No Disclaimers**

        To the extent that anything in the Information Disclosure Statement or the listed references could be construed as a disclaimer of any subject matter supported by the present application, Applicant hereby rescinds and retracts such disclaimer.

**Timing of Disclosure**

        This Information Disclosure Statement is being filed within three months of the filing date or date of national phase entry, with an RCE or before receipt of a First Office Action after an RCE, and no fee is believed to be required.

        The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

                        Respectfully submitted,

                        KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  September 22, 2020          By:   /Jarom Kesler/
                              Jarom D. Kesler
                              Registration No. 57,046
                              Registered Practitioner
                              (949) 760-0404

3355273

('911 Prosecution, September 22, 2020 Information Disclosure Statement).

        Among other things, Mr. Kesler also prepared, signed, and filed Masimo's February 14, 2020 Request for Prioritized Examination.

---

**CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
UNDER 37 CFR 1.102(e)** (Page 1 of 1)

| First Named Inventor: | Robert A. Smith | Nonprovisional Application Number (if known): | |
|---|---|---|---|
| Title of Invention: | MULTIPLE WAVELENGTH SENSOR EMITTERS | | |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.

1.  The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request. The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0. The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid. I understand that any required excess claims fees or application size fee must be paid for the application.

2.  I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3.  The applicable box is checked below:

    I.   ☑  Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)

    i.   (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
         ---OR---
         (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

    ii.  An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, **or** the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

    II.  ☐  Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)

    i.   A request for continued examination has been filed with, or prior to, this form.
    ii.  If the application is a utility application, this certification and request is being filed via EFS-Web.
    iii. The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
    iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
    v.   No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature | /Jarom Kesler/ | Date | 2020-09-22 |
|---|---|---|---|
| Name (Print/Typed) | Jarom D. Kesler | Practitioner Registration Number | 57046 |

**Note:**   This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required."

☑  *Total of   1   forms are submitted.*

---

('911 Prosecution, September 22, 2020 Certification and Request for Prioritized Examination).

<u>Stephen Jensen</u>

Stephen Jensen had a duty to disclose information material to the patentability of the '911 patent to the USPTO during prosecution of the '911 patent. As a partner at the law firm of Knobbe Martens, Mr. Jensen was Masimo's primary outside counsel and an attorney of record for

prosecution of the '911 patent who was substantively involved in the preparation and prosecution of the application that resulted in the '911 patent.

For example, the USPTO expressly lists Mr. Jensen as an attorney of record for prosecution of the '911 patent.

In addition to his own role as an attorney of record for prosecuting the '911 patent, Mr. Jensen—as Masimo's primary outside patent attorney and client liaison—was the Knobbe Martens partner who had ultimate responsibility for and control over Knobbe Martens' legal work for Masimo, including prosecution of the '911 patent.  As such, Mr. Jensen had the incentive to, and as discussed below, did in fact prioritize his longstanding loyalties to Masimo over his duties of disclosure to the PTO to facilitate issuance of the '911 patent by committing inequitable conduct.

During prosecution of the '911 patent, Masimo, through its prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, submitted unreasonably voluminous prior art disclosures to obscure four of the most important prior art references, namely U.S. Patent No. 6,816,241 to Grubisic ("Grubisic"), U.S. Patent No. 5,782,756 to Mannheimer ("Mannheimer 756"), U.S. Patent No. 5,638,816 to Kiani et al. ("Kiani 816"), and U.S. Patent No. 5,203,329 to Takatani et al. ("Takatani").  Masimo's prosecution attorneys cited no fewer than 1,748 cited references spanning approximately 65 pages via two information disclosure statements submitted during prosecution.  Masimo's September 22, 2020 Information Disclosure Statement, which essentially comprised a document dump of 1,725 references, included numerous clearly irrelevant and (at best) marginally relevant references. Because these references were buried amongst 1,725 disclosed references, the patent examiner could not have considered each of them and, in fact, did not cite them in any office action.

69

Among the 1,725 cited references was Grubisic.  Grubisic relates to the use of LEDs to measure blood parameters and teaches "[a] compact, lightweight instrument for non-invasive blood analyte determination."  Grubisic at Abstract.  Grubisic is prior art to the '911 patent, and at least claim 19 of the '911 patent is invalid as anticipated by Grubisic under 35 U.S.C. § 102 and as obvious under § 103 in view of Grubisic standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Grubisic discloses every element of at least claim 19 of the '911 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '911 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, knew during the prosecution of the '911 patent that Grubisic existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '911 patent, as evidenced by the submission of Masimo's September 22, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Grubisic was material to patentability of the '911 patent.

Also among the 1,725 cited references was Mannheimer 756.  Mannheimer 756 relates to the measurement of blood parameters, and the patent teaches the use of "at least three wavelengths of electromagnetic radiation for determining a blood constituent, such as arterial oxygen saturation, in a patient."  Mannheimer 756 at Abstract.  Mannheimer 756 is prior art to the '911 patent, and at least claim 19 of the '911 patent is invalid as anticipated by Mannheimer 756 under 35 U.S.C. § 102 and as obvious under § 103 in view of Mannheimer 756 standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Mannheimer 756 discloses every element of at least claim 19 of the '911 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '911 patent.

70

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, knew during the prosecution of the '911 patent that Mannheimer 756 existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '911 patent, as evidenced by the submission of Masimo's September 22, 2020 Information Disclosure Statement.  At least Kesler and Jensen knew that Mannheimer 756 was material to patentability of the '911 patent.

Also among the 1,725 cited references was Kiani 816.  Kiani 816 relates to pulse monitoring and teaches "[a] blood glucose monitoring system . . . which provides for inducing an active pulse in the blood volume of a patient."  Kiani 816 at Abstract.  Kiani 816 is prior art to the '911 patent, and at least claim 19 of the '911 patent is invalid as anticipated by Kiani 816 under 35 U.S.C. § 102 and as obvious under § 103 in view of Kiani 816 standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Kiani 816 discloses every element of at least claim 19 of the '911 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '911 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, knew during the prosecution of the '911 patent that Kiani 816 existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '911 patent, as evidenced by the submission of Masimo's September 22, 2020 Information Disclosure Statement. At least Kesler and Jensen knew that Kiani 816 was material to patentability of the '911 patent.

Also among the 1,725 cited references was Takatani.  Takatani relates to a pulse oximetry sensor, and Takatani teaches "[a] noninvasive oximeter sensor for controlling and optimizing the

minimum detection depth in the tissue of a patient." Takatani at Abstract.  Takatani is prior art to the '911 patent, and at least claim 19 of the '911 patent is invalid as anticipated by Takatani under 35 U.S.C. § 102 and as obvious under § 103 in view of Takatani standing alone, or combined with a person of ordinary skill in the art.  As shown in the attached exemplary claim chart, Takatani discloses every element of at least claim 19 of the '911 patent and otherwise contains disclosures material to the invalidity of the asserted claims of the '911 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, knew during the prosecution of the '911 patent that Takatani existed and that its subject matter and disclosure was closely related and material to the subject matter of the alleged inventions claimed in the '911 patent, as evidenced by the submission of Masimo's September 22, 2020 Information Disclosure Statement. At least Kesler and Jensen knew that Takatani was material to patentability of the '911 patent.

Accordingly, the buried Grubisic reference, Mannheimer 756 reference, Kiani 816 reference, and Takatani reference were, at the very least, highly material to patentability of the alleged inventions claimed in what would become the '911 patent.

Masimo, through its prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, submitted two Information Disclosure Statements during prosecution of the patent application that led to the '911 patent on the following dates: September 22, 2020 and February 9, 2021.  These Information Disclosure Statements listed 1,748 prior art references, a substantial number of which were clearly irrelevant or at most minimally relevant to the alleged inventions covered by the pending claims at any point during prosecution.

One example of an irrelevant (or at most minimally relevant) submitted reference is U.S. Patent No. Des. 359,546 to Savage et al. ("Savage"), titled "Housing for a dental unit disinfecting device." Whereas the '911 patent concerns a physiological monitoring optical sensor, this reference concerns very different subject matter—the ornamental design of a housing for a dental unit disinfecting device. Shown in Figure 1 below is a perspective view of the housing for a dental unit disinfecting device.



This subject matter is far afield from that of the '911 patent and had the effect of obscuring and thereby burying the most material references, including at least Grubisic, Mannheimer 756, Kiani 816, and Takatani.

Another example of an irrelevant (or at most minimally relevant) submitted reference is U.S. Patent No. 4,305,059 to Benton ("Benton"), titled "Modular funds transfer system." Whereas the '911 patent concerns a physiological monitoring optical sensor, this reference concerns very different subject matter—a system for transferring funds in lieu of cash. For example, the patent discloses that the "invention relates generally to electronic off-line data transfer and more

particularly toward a funds transfer system comprising a plurality of identical hand-held funds data storage and transfer modules for performing cashless transactions without any intervening local or centralized computer." Benton at 1:5-10. Figure 1 below shows two funds transaction modules.



FIG.1

This subject matter is far afield from that of the '911 patent and had the effect of obscuring and thereby burying the most material references, including at least Grubisic, Mannheimer 756, Kiani 816, and Takatani.

Another example of an irrelevant (or at most minimally relevant) submitted reference is U.S. Patent No. 6,595,316 to Cybulski et al. ("Cybulski"), titled "Tension-adjustable mechanism for stethoscope earpieces." Whereas the '911 patent concerns a physiological monitoring optical sensor, this reference concerns very different subject matter—stethoscope earpieces. For example, the patent discloses a "tension-adjustable headset for [an] electronic stethoscope . . . ." Cybulski at 3:42-43. Figure 1 below shows said headset.

74



This subject matter is far afield from that of the '911 patent and had the effect of obscuring and thereby burying the most material references, including at least Grubisic, Mannheimer 756, Kiani 816, and Takatani.

Another example of an irrelevant (or at most minimally relevant) submitted reference is U.S. Patent Pub. No. 2004/0034898 to Bruegl ("Bruegl"), titled "Self-Tinting Helmet Visor and Method of Making Same."  Whereas the '911 patent concerns a physiological monitoring optical sensor, this reference concerns a "Helmet visor with a solar cell device that is arranged directly on the helmet visor, wherein the helmet visor can be darkened or tinted through voltage that is generated by a solar cell device . . . ."  Bruegl at Abstract.  This helmet visor with a solar cell device is shown in Figure 1:



Fig. 1

This subject matter is far afield from that of the '911 patent and had the effect of obscuring and thereby burying the most material references, including at least Grubisic, Mannheimer 756, Kiani 816, and Takatani.

During prosecution of the '911 patent, Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent submitted the Information Disclosure Statements, burying the USPTO with at least 1,748 references. Buried in these unreasonably voluminous submissions were the material Grubisic, Mannheimer 756, Kiani 816, and Takatani references. Out of the 1,725 references cited in the September 22, 2020 Information Disclosure Statement, the Grubisic reference was document 1,380, the Mannheimer 756 reference was document 205, the Kiani 816 reference was document 167, and the Takatani reference was document 81.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, were aware of the relevance

and high materiality of Grubisic, Mannheimer 756, Kiani 816, and Takatani.  They knew that Grubisic, Mannheimer 756, Kiani 816, and Takatani existed because they included them in an Information Disclosure Statement, and by submitting them in an Information Disclosure Statement, thereby acknowledged their relevance to the prosecution of the application leading to the '911 patent.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, therefore had knowledge of Grubisic, Mannheimer 756, Kiani 816, and Takatani as well as their materiality to patentability, at least giving rise to an inference of intentional breach of their duties of disclosure.

Although Grubisic, Mannheimer 756, Kiani 816, and Takatani were submitted into the file history in the patent application that matured into the '911 patent via citations in the Information Disclosure Statements, these references were buried within a large number of other less relevant or irrelevant documents and were never brought to the examiner's attention.

Notably, despite their knowledge of the contents and materiality of Grubisic, Mannheimer 756, Kiani 816, and Takatani, Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, failed to highlight these references or otherwise distinguish them in any way from the other 1,000-plus cited references at any point during the prosecution of what would become the '911 patent.  And Grubisic, Mannheimer 756, Kiani 816, and Takatani are not cumulative of other prior art relied on by the examiner.

Masimo's prosecution attorneys of record Kesler and Jensen, as well as other Masimo agents substantively involved in the prosecution of the '911 patent, thus buried Grubisic, Mannheimer 756, Kiani 816, and Takatani and failed to bring those references to the examiner's

attention to intentionally mislead the examiner in order to improperly procure the '911 patent, notwithstanding that Masimo was not entitled to such patent under 35 U.S.C. §§ 102 and 103.

Masimo's prosecution attorneys of record Kesler and Jensen sought expedited review of the prosecution of the '911 patent while submitting 1,725 prior art references for consideration to the USPTO.  By requesting expedited review and submitting 1,725 prior art references for review on a compressed schedule, Masimo's prosecution attorneys of record Kesler and Jensen compounded the USPTO's inability to review the 1,725 prior art references with appropriate scrutiny.  On information and belief, this conduct was specifically intended to, and did, obscure material references from the examiner among many minimally relevant references.  Therefore, the patent examiner could not possibly have read each reference that Masimo's prosecution attorneys of record had identified.  The single most reasonable inference that can be drawn from the evidence is that Masimo's prosecution attorneys of record intended to deceive the USPTO by burying the patent examiner with prior art and leaving the patent examiner with no practical way to review everything that was disclosed or figure out what was pertinent among the 1,725 listed references.

But for this misleading conduct, the examiner would have cited either or all of Grubisic, Mannheimer 756, Kiani 816, and Takatani alone or in combination with other cited references to reject the claims of the '911 patent, including at least claims 1-5, 8, 10-14, 17, 19-25, and 28, as invalid.

Accordingly, the '911 patent is unenforceable due to inequitable conduct.

The effect of Kesler and Jensen's conduct is not limited to the '911 patent.  All subsequent "child" or other related patents that are based on the same specification or relevant portions thereof are tainted by Masimo's inequitable conduct and, therefore, are also unenforceable under the doctrine of infectious unenforceability.

Dated: August 2, 2023

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
Jamie L. Kringstein
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
Thad Eagles
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6423

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:

/s/ Bindu A. Palapura
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff, Apple Inc.*

79

## <u>CERTIFICATE OF SERVICE</u>

I, Jamie L. Kringstein, hereby certify that on August 2, 2023, a copy of the foregoing document was served on all counsel of record via email as follows:

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

Stephen C. Jensen
Stephen W. Larson
Jared C. Bunker
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
joe.re@knobbe.com
steve.jensen@knobbe.com
stephen.larson@knobbe.com
jared.bunker@knobbe.com
ben.katzenellenbogen@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park E., Suite 600
Los Angeles, CA 90067
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
adam.powell@knobbe.com

*/s/ Jamie L. Kringstein*