# EXHIBIT 4

1 | Joseph R. Re (Bar No. 134479)
2 | joseph.re@knobbe.com
  | Stephen C. Jensen (Bar No. 149894)
3 | steve.jensen@knobbe.com
  | Perry D. Oldham (Bar No. 216016)
4 | perry.oldham@knobbe.com
  | Stephen W. Larson (Bar No. 240844)
5 | stephen.larson@knobbe.com
  | **KNOBBE, MARTENS, OLSON & BEAR, LLP**
6 | 2040 Main Street, Fourteenth Floor
7 | Irvine, CA 92614
  | Telephone: (949)-760-0404; Facsimile: (949)-760-9502
8 |
9 | Adam B. Powell (Bar. No. 272725)
  | adam.powell@knobbe.com
10 | **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   | 12790 El Camino Real
11 | San Diego, CA 92130
   | Telephone: (858) 707-4000; Facsimile: (858) 707-4001
12 |
13 | Attorneys for Plaintiffs,
   | Masimo Corporation and Cercacor Laboratories, Inc.
14 |
   | *Counsel for Defendants listed on next page.*
15 |
   | **IN THE UNITED STATES DISTRICT COURT**
16 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
   | **SOUTHERN DIVISION**
17 |

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date: July 23, 2020<br>Time: 10:00 a.m.<br>Ctrm: 6A<br><br>Discovery Cut-Off: 7/5/2021<br>Pre-Trial Conference: 3/21/2022<br>Trial: 4/5/2022<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

<u>behalf of a Party or a competitor of a Party and such proposed Outside Counsel did not, at the time the lawsuit was filed or within the previous two (2) years from the date the lawsuit was filed, have a business or ownership interest in a Party (i.e., was not a Board member, Director, officer, employee, or hold a title with a Party). Additionally, whether Plaintiffs' trade secret disclosure under California Code of Civil Procedure Section 2019.210 is designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY," access to said disclosure shall be permitted for three (3) Apple House Counsel.</u>

### 1. **Plaintiffs' Position**

Plaintiffs again propose language similar to the language this Court adopted in *True Wearables*. *Compare* Powell Decl., Ex. 2 (Plaintiffs' proposal) at 16 *with* Ex. 13 (*True Wearables*) at 8. Apple replaced that language with a proposal that (a) seeks to prevent certain of Plaintiffs' ***outside*** counsel from accessing "Highly Confidential" information, yet (b) seeks to allow three of Apple's ***in-house*** counsel access to Plaintiffs' "Highly Confidential" trade secret information in Plaintiffs' Section 2019.210 statement. *Id.*, Ex. 4 at 17. The Court should adopt Plaintiffs' proposal on both issues.

### a. **The Court Should Reject Apple's "Relationship" Restriction**

Apple proposes language that is nearly identical to the language this Court previously rejected in *True Wearables*. In that case, the defendant asked this Court to allow access only to individuals who, within two years prior to filing suit, did "not have a business or ownership interest in a Party (*i.e.*, not competitive decision makers, Board members, Directors, employees, owners, shareholders, or affiliates of a Party)." Powell Decl., Ex. 12 at 9. The defendants were trying to prevent Stephen Jensen from participating in the case.

-30-

After extensive briefing, this Court rejected the defendants' proposal and adopted language similar to the language Plaintiffs propose in this case, which bars only "competitive decisionmakers." *Id.*, Ex. 13 at 8. This Court then rejected the defendants' direct challenge to Jensen and concluded he was **not** a "competitive decisionmaker." *Id.*, Ex. 14 at 5-6.

Here, Apple proposes language that is nearly identical to the language this Court previously rejected. In particular, Apple seeks to allow access only to individuals who, within two years prior to filing suit, did not "have a business or ownership interest in a Party (i.e., was not a Board member, Director, officer, employee, or hold a title with a Party)." Powell Decl., Ex. 4 at 17. Apple has not explained why this provision is necessary or provided any factual or legal basis, whatsoever, for this provision. Indeed, Apple recently stipulated to a protective order without such language. *See Pinn* (Powell Decl., Ex. 17) at 8. It appears Apple is proposing this unusual language to exclude Jensen because Apple added the language to its proposal as the parties in *True Wearables* were litigating the same issue. Moreover, it does not appear that any of Plaintiffs' other outside counsel could be impacted by this provision. Thus, while Plaintiffs are in the dark as to Apple's reason or basis for this provision, Plaintiffs will direct their arguments towards Jensen in particular.

To restrict access to highly confidential information, Apple has the burden of showing an unacceptably high risk of inadvertent disclosure. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Apple also bears "the burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003)). The district court must balance the risk of the disclosure against the risk to the receiving party that the denial of access would

impair prosecution of its claims. *Brown Bag*, 960 F.2d at 1470; *see also In re Deutsche Bank,* 605 F.3d 1373, 1380 (Fed Cir. 2010). Apple cannot satisfy any of those requirements here.

### i. Apple Cannot Show Jensen Will Inadvertently Disclose Protected Material

To evaluate the risk of inadvertent disclosure, the Court should examine "the factual circumstances surrounding [Jensen's] activities, association, and relationship with a party." *U.S. Steel*, 730 F.2d at 1468. A "crucial factor" is whether Jensen is "involved in 'competitive decisionmaking'; that is advising on pricing or design 'made in light of similar or corresponding information about a competitor.'" *Brown Bag*, 960 F.2d at 1470 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3). Here, this Court recently determined Jensen is not involved in "competitive decisionmaking" for Plaintiffs. Powell Decl., Ex. 14 at 5-6; *see also* Jensen Decl. ¶ 10; Kiani Decl. ¶ 6.

A protective order also mitigates risk because courts presume attorneys will abide by protective orders and not expose themselves to contempt sanctions. *Coventry First LLC v. 21st Servs.*, No. 05CV2179-IEG (NLS), 2005 WL 8173350, at *5 (S.D. Cal. Dec. 22, 2005) ("[I]n the absence of any actual evidence of bad faith, the Court declines to presume [the attorneys] will disclose [the] confidential information, thereby breaching the protective order and exposing themselves to contempt sanctions.") (citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987)). Not only have the parties agreed to a protective order, they even agree on barring Jensen and the rest of Plaintiffs' litigation team from engaging in patent prosecution.

At most, Apple may show Jensen is in contact with corporate officers who make competitive decisions. But that is not enough. *See Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (finding "largely irrelevant" regular contact with corporate officials who make policy or

-32-

competitive decisions). Rather, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party . . . must govern any concern for inadvertent or accidental disclosure." *U.S. Steel*, 730 F.2d at 1468 ("Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined, as above indicated, by the facts on a counsel-by-counsel basis").

Interaction with decision makers is insufficient because the issue does not turn on the functions of the people a lawyer meets with, but on the functions of the lawyer. As the Federal Circuit observed, "the standard is not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'" *Id.* at 1580. Lead litigation lawyers regularly report to boards and corporate officers about ongoing litigation, despite the lawyers having access to highly confidential information and the boards and officers engaging in competitive decision-making. The point is that the people who have access to the highly confidential information are not the people making the competitive decisions. If the standard were physical proximity to, or regular interaction with, competitive decision makers, no lead litigation counsel would ever see confidential information.

Apple cannot meet its burden of showing Jensen, or any other lawyer at Knobbe Martens, poses an unacceptably high risk of inadvertent disclosure.

### ii. Apple Cannot Show It Will Suffer Harm

Apple also has not even attempted to meet its "burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect." *Nutratech*, 242 F.R.D. at 554. Apple's proposed language does not specify any particular information Jensen should be excluded from viewing. Apple also failed to explain any particular harm that Apple would suffer from Jensen viewing such information.

-33-

          iii.      **Apple's Restriction Would Prejudice Plaintiffs**

Exclusion of Jensen would also prejudice Plaintiffs. *See In re Deutsche Bank,* 605 F.3d 1373, 1380 (Fed. Cir. 2010) ("[T]he district court must balance [the risk of disclosure] against the potential harm to the opposing party from restrictions on that party's right to have the benefit of counsel of its choice"). Jensen has served as Masimo's outside counsel for over twenty-five years. *See* Kiani Decl. ¶ 4; Jensen Decl. ¶ 2. During that time, Jensen has represented Plaintiffs in numerous cases involving Masimo's direct competitors and the exchange of highly confidential information. Jensen Decl. ¶ 3. Plaintiffs rely heavily on Jensen to evaluate and manage all of their intellectual property litigation and other litigation concerning the companies' technologies. *Id.* ¶¶ 6-7; Kiani Decl. ¶¶ 4-5. Over the years, Jensen has gained extensive knowledge of Plaintiffs' technology. This has given him a unique ability to readily discern when others are using that technology, assuming, of course, he can see the relevant evidence. No other lawyer has Jensen's breadth of understanding of Plaintiffs' technology and trade secrets. Kiani Decl. ¶¶ 5, 9; Jensen Decl. ¶ 5-6, 9-10.

Although numerous opponents have tried to deprive Masimo of Jensen's leadership in litigation, they have never succeeded. Every court to address this issue has allowed Jensen access to highly confidential materials or information. Jensen Decl. ¶ 4. Indeed, this Court twice rejected the *True Wearables* defendants' attempts to bar Jensen from accessing highly confidential information. Powell Decl., Exs. 22 and 23. Additionally, Apple's outside counsel in this case unsuccessfully attempted to exclude Jensen on behalf of another client in another case. *Id.*, Ex. 18 at 24-25. This recurrence suggests that Plaintiffs' adversaries, including Apple, are well aware that depriving Plaintiffs of their experienced choice of counsel would severely prejudice Plaintiffs.

-34-

Jensen is accustomed to abiding by protective orders, appropriately handling and maintaining designated materials, and ensuring that he never reveals those materials, or the confidential information they contain, to his clients. Jensen Decl. ¶¶ 5 and 9; Kiani Decl. ¶ 10. Moreover, when appropriate, Jensen uses the best safeguard possible—he refrains from engaging in any discussion that could arguably implicate any information revealed to him under a protective order—as should any other outside lawyer. Jensen Decl. ¶ 5; Kiani Decl. ¶ 10. Because the actual prejudice to Plaintiffs outweighs any alleged—although unexplained—harm to Apple, this Court should reject Apple's proposed restriction.

### b. The Court Should Reject Apple's Attempt to Provide Plaintiffs' Trade Secrets To Its In-House Counsel

Apple argued Plaintiffs' Section 2019.210 disclosure must be detailed and that this particular case requires a "more exacting level of particularity" than standard trade secret cases. Powell Decl., Ex. 25 at 21 n.1. Despite advocating for such a high standard, Apple insists that three of its **in-house** lawyers should have access to the highly confidential trade secrets set forth in Plaintiffs' Section 2019.210 disclosure. *Id.*, Ex. 4 at 17. Apple provides no support or justification for requiring Plaintiffs to disclose **trade secrets** to Apple employees. Apple's proposal thus creates a significant risk of further misappropriation of Plaintiffs' trade secrets.

"Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden'" *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (rejecting Intel's request to allow its in-house counsel access to highly confidential material because Intel was represented by competent outside counsel); *see also CytoSport, Inc. v. Vital Pharm., Inc.*, 2010 WL 1904840, at *2 (E.D. Cal. May 10, 2010) (rejecting request for outside counsel to view confidential material because forcing

-35-

defendant to "rely on competent outside counsel does not create an 'undue and unnecessary burden,' sufficient to demonstrate actual prejudice"). Here, Apple is represented by Gibson Dunn, which claims it has 20 offices, 1300+ lawyers, and "129 years of excellence." *See* https://www.gibsondunn.com (accessed June 19, 2020). Apple will suffer no prejudice from denying Apple's in-house counsel access to Plaintiffs' trade secrets.

Apple's proposal also highlights its continued lopsided approach to litigating this case. Apple is simultaneously seeking to prevent one of Plaintiffs' **outside** counsel from accessing all highly confidential information while providing three of Apple's **in-house** counsel access to Plaintiffs **trade secrets**. *See* Powell Decl., Ex. 4 at 17. Nothing supports such a one-sided and inequitable proposal. The Court should adopt Plaintiffs' proposal.

### 2. Defendant's Position

The parties have two disputes over which individuals should receive access to another party's highly confidential information. *First,* Apple seeks entry of a protective order that denies access of its highly confidential and sensitive "attorneys' eyes only" documents to a party's outside counsel who are competitive decision-makers or have served on a party's Board of Directors within the last two years. This request is a reasonable and necessary measure to protect Apple's valuable technical information from inadvertent disclosure or misuse. *Second*, to the extent Plaintiffs replead their trade secret claim, Apple seeks to have a limited number of its in-house counsel receive access to Plaintiffs' alleged trade secrets, given the integral role in-house counsel is playing in the defense of this matter.

### a. This Court Should Bar Those Who are Either Competitive Decision-Makers Or Are Present Board Members Or Were Board Members Within The Last Two Years From Accessing Confidential Materials

The parties agree that this action will involve disclosure of trade secret and other confidential and proprietary information; the parties disagree as to whether outside counsel who are competitive decision-makers or serve on a party's Board of Directors should be permitted access to highly confidential documents designated by Apple as "Attorneys' Eyes Only." In support of their argument that such persons should have access, Plaintiffs rely on their briefing in the *True Wearables* case. However, Apple was not a party to that briefing and Plaintiffs' attempts to liken this case to *True Wearables* fails in any event. In *True Wearables*, Plaintiffs asserted trade secret and infringement claims against the six-year old medical device start-up True Wearables, Inc. This is an inapposite comparison to the present case with Apple, one of the largest technology companies in the world. The accused products in this case, the Apple Watch Series 4 and 5, are extremely successful and valuable products already in the wearables space—far different than the fledgling startup in *True Wearables*.

Ninth Circuit precedent is clear that district courts may preclude access to a party's confidential and proprietary information from those involved in an opposing party's competitive decision-making. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The Federal Circuit has defined what "competitive decision-making" means,[8] and, to avoid any doubt as

---

[8] Competitive decision-making is "[s]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." *See U.S. Steel*

-37-

to its meaning, Apple's proposal explicitly incorporates that definition. Mr. Jensen, is a long-time contributor to Plaintiffs' competitive decision-making. Mr. Jensen's extensive participation in Plaintiffs' business enterprises creates an untenable risk that his access to Apple's confidential information will lead to the inadvertent disclosure to those most capable of misusing Apple's information. But excluding competitive decision makers alone is not enough to resolve the dispute, because Plaintiffs argue that one of their outside counsel, Mr. Jensen, should not meet the Court's definition of a competitive decision maker, a position that Apple strongly disputes. Rather than defer that issue to a later discovery dispute, Apple's proposed protective order also explicitly excludes current Board Members and those that have served in that role within the last two years, which would exclude Mr. Jensen since he is a current member of the Board of Directors of Plaintiff Cercacor. Restricting access from Board members has been consistently upheld in cases in which courts have been asked to impose those restrictions because participation at Board meetings "present[s] an unacceptable opportunity for the inadvertent disclosure of confidential information" because of the conflicting duty of disclosure inherent in Board service and an individual's consent to abide by a protective order. *See, e.g.*, *Meridian Enters. Corp. v. Bank of Am. Corp.*, 2008 WL 474326, at *4 (E.D. Mo. Feb. 15, 2008); *Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co.*, 2003 WL 1956214 (N.D.N.Y. April 24, 2003).

Here, good cause exists for granting Apple's protective order. *First*, the nature and pervasive scope of Mr. Jensen's involvement with Plaintiffs' business enterprises cannot be adequately separated from his concurrent role in Plaintiffs' wider litigation licensing business in a way that will otherwise ensure the confidentiality of Apple's information. *Second*, Mr. Jensen's service on

---

*Corp. v. United States*, 730 F.2d 1465, 1468 & n.3 (Fed. Cir. 1984).

-38-

Plaintiff Cercacor's Board of Directors and its attendant fiduciary duty to that Board evince the conflict of interests inherent in allowing him access to Apple's confidential trade secret information. *Third*, the balance of hardships clearly favors Mr. Jensen's exclusion in this case. The harm to Apple of inadvertent disclosure of its most confidential information to Plaintiffs is substantial, given that this information is its "crown jewel," disclosure to other companies of which would create substantial harm to Apple. *See* Corp. Couns. Gd. To Software Trans. § 8:2; *see also, e.g.*, *buySAFE, Inc. v. Google, Inc.*, No. 3:13-CV-781, 2014 WL 2468553, at *2 (E.D. Va. June 2, 2014). By contrast, Mr. Jensen's exclusion would pose little harm to Plaintiffs, who employ a variety of highly competent counsel (over fifteen partners and associates have appeared on filings and meet and confers in this case) to represent them in this and other cases. Accordingly, an order preventing Mr. Jensen and others similarly situated from viewing Apple's confidential information will not meaningfully impair Plaintiffs' ability to conduct this litigation; it will simply prevent the inadvertent misuse or disclosure in other existing or potential litigation of confidential information obtained from this litigation.

### i. The Relationship Between Mr. Jensen And Plaintiffs Presents An Unacceptable Risk Of Inadvertent Disclosure Of Confidential Information In This Case

The decision to exclude counsel from discovery requires an assessment in each case of "the risk of inadvertent disclosure." *In re Matsushita Electric Industrial Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1994) (quoting *U.S. Steel Corp.*, 730 F.2d at 1468). That risk, in turn, "must be determined . . . by the facts on a counsel-by-counsel basis." *Id*. Although the Federal Circuit has stated that the key inquiry in evaluating that risk involves determining whether the lawyer is involved in his client's "competitive decision making," it

has also made clear that that term is simply "shorthand" for broader considerations relevant to assessing the risk of inadvertent disclosure, such as "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions." *U.S. Steel Corp*. 730 F.2d at 1468 n.3.  As one court has noted, "involvement in competitive decisionmaking, while an important consideration [under *U.S. Steel Corp*.], is not necessarily the exclusive one," and proper analysis under *U.S. Steel* involves a "careful and comprehensive inquiry" into the lawyer's "role in the affairs of [his client's] company, his association and relationship with those in the corporate hierarchy who are competitive decisionmakers, and any other factor that enhances the risk of inadvertent disclosure." *Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc*., 237 F.R.D. 405, 408 (N.D. Ill. 2006).

Therefore, the determination of whether Mr. Jensen may be excluded from access to confidential information involves a factual inquiry into whether his "activities, association, and relationship" with Plaintiffs "are such as to involve counsel's advice and participation in any or all" of Plaintiffs' decisions in operating their licensing business. *U.S. Steel Corp.*, 730 F.2d at 1468 n.3.

Over the course of Mr. Jensen's longstanding representation of Plaintiffs, Mr. Jensen has served as both a day-to-day and long-term strategy advisor.  He has evaluated the companies' intellectual property portfolios and overseen legal due diligence, and he also served as Masimo's acting Senior Vice President of OEM Business, Business Development and General Counsel.  *See* Biography of Steve Jensen, *accessible at* https://www.knobbe.com/attorneys/steve-jensen.  It was in this capacity that Mr. Jensen made business decisions relating to the manufacture of Masimo's equipment and components.

In a 2020 declaration describing Mr. Jensen's role as Plaintiffs' attorney, the former Chief Technology Officer at Masimo Corporation stated Mr. Jensen "would advise Masimo about when to file patent applications, where to file

-40-

patent applications, whether to pursue continuations, and other decisions related to creating patent portfolio value." *Masimo Corp. v. True Wearables*, No. 3:18-CV-02001-JVS-JDE, Dkt. 82-6, Ex. 6 at ¶ 4 (Mar. 16, 2020). Indeed, Mr. Jensen is listed as an attorney of record before the USPTO on each of the patents-in-suit and thus, may become a witness in this litigation, as the prosecuting patent attorney may sometimes be deposed regarding the statements made to the Patent and Trademark Office.

Taken together, these facts create a situation in which Mr. Jensen's experience as a business decision-maker is impossible to separate from his role as Plaintiffs' outside counsel. Given the depth of his involvement and investment in Plaintiffs' business, Mr. Jensen should not be permitted to access Apple's highly confidential information.

### ii. The Nature of Mr. Jensen's Service on Cercacor's Board of Directors Conflicts With The Obligation To Remain Silent Under A Protective Order

Directors are fiduciaries of a corporation and, as such, occupy positions of trust and confidence on which corporate officials must rely. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 180 (3d Cir. 1992). A significant part of a director's duty of loyalty is to disclose to other decision-makers all information in his possession germane to a transaction at issue. *Id.*

A Board member's duty of disclosure arises from a director's general duties of care, good faith, and loyalty to the corporation, and the duty of disclosure requires that directors "disclose fully and fairly all material information within the board's control." *Skeen v. Jo-Ann Stores*, 750 A.2d 1170 (Del. 2000). The American Bar Association's Corporate Director's Guidebook states that corporate directors have the following duty of disclosure:

> As fiduciaries, directors have an obligation to take reasonable steps to ensure that shareholders are

> furnished with all relevant material information known to the directors … . Likewise, directors also have the duty to information their fellow directors and management about information known to the director that is relevant to corporate decisions.

ABA Section of Business Law, Corporate Director's Guidebook Fifth Edition, § 3(C)(4) (2007) (Exhibit A).

Apple's proposal seeks to exclude outside counsel with service on a Party's or a competitor of a Party's Board of Directors. The reason for this is because such counsel bear fiduciary duties of disclosure to their Board of Directors, yet must also abide by their ethical obligations as attorneys to the protective order. To permit these oft-conflicting commitments unnecessarily jeopardizes the security of Apple's most sensitive information.

Plaintiffs seek to invite these very risks by requesting that Mr. Jensen, member of both Cercacor's Board of Directors and Masimo's Board of Directors of the Masimo Foundation for Ethics, Innovation and Competition in Healthcare, receive access to Apple's highly confidential information. Plaintiffs' contentions that Mr. Jensen does not make business decisions would mean that he does not fulfill his obligations to either Board as a director and thus, cannot mean what they said. Directors are required to make decisions related to the business of the corporation in order to fulfill their fiduciary obligations. Mr. Jensen's duties of disclosure inherent in his service on the Boards of both Plaintiffs directly fan the flames of the risks created in granting Mr. Jensen access to Apple's protected information. The confidential technical information about Apple's business which Mr. Jensen learns through an "attorneys' eyes only" disclosure constitutes information that would be relevant to a variety of Plaintiffs' corporate decisions. As such, Mr. Jensen's fiduciary duty to disclose such information would obligate Mr. Jensen to inform the other directors of Cercacor about any confidential "attorneys' eyes only" information

of Apple's that was also relevant to Cercacor's corporate decisions. Accordingly, Courts have recognized that there is direct conflict between outside counsel's obligations to abide by a protective order and his simultaneous fiduciary duty to the corporation as a Board member and have uniformly refused to allow access by individuals such as Mr. Jensen to the highly confidential/trade secret information of another party. *See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co*. 2003 WL1956214, at *5 (N.D.N.Y. Apr. 24, 2003) ("While the court does not doubt [outside counsel and Board member] Mr. Heath's assurances that he will abide by the protective order, it cannot endorse a situation that places Mr. Heath's ethical obligations as an attorney in direct competition with his fiduciary duty to Hanford); *see also Meridian Enters. Corp. v. Bank of Am. Corp.*, 2008 WL474326, at *3 (E.D. Mo. Feb. 15, 2008) (finding "that the risk of inadvertent disclosure is great because Mr. McMullin is both a shareholder of [Plaintiff] and a member of its Board of Directors, and therefore has a fiduciary duty to [Plaintiff] to disclose all information in his possession germane to issues discussed").

To the extent Plaintiffs may argue that they have no interest in Apple's underlying technology, that is false. Plaintiffs' contention is belied by the fact that Cercacor sells a device that "measures hemoglobin" and "are synced via Bluetooth to an app which can display trends over time." *See Medgadget @ CES 2016: Cercacor's Ember Non-Invasive Hemoglobin Sensor*, Scott Jung, Medgadget (Jan. 8, 2016), https://www.medgadget.com/2016/01/medgadget-ces-2016-cercacors-ember-non-invasive-hemoglobin-sensor.html; *see also Athletes can know their hemoglobin instantly with Ember* (Jan. 18, 2016), https://www.sportswearable.net/athletes-can-know-their-hemoglobin-instantly-with-ember/ ("Cercacor has produced a wearable which will provide you with real-time data."). Plaintiffs' product is designed to interact with Apple's iPhone and the accused Apple Watch also interacts with the iPhone. The likelihood of

-43-

future overlap between the technology that the accused products practice and those of the products that Plaintiffs sell is increasing. Indeed, Cercacor's product and the Apple Watch are both wearables and are targeted to the consumer market. The wearable market is growing, especially as it relates to health-related applications. It is incredibly unfair and prejudicial for Cercacor to have a member of its Board of Directors with a fiduciary duty to steer that company in the right direction to have had access to Apple's highly confidential technical, financial, and source code information.

Assume, for example, that Cercacor is considering introducing a new feature that technical documentation from Apple shows to have been rejected as unsuccessful. By virtue of his access to Apple's highly confidential financial, technical, and source code information, Mr. Jensen knows that Apple has already rejected that feature as being unworkable. As a result, Mr. Jensen, sitting in the Board meeting considering the issue, knows that Cercacor will be wasting million dollars if it proceeds. Does he tell the Board and the shareholders? Mr. Jensen has a fiduciary duty to advise the company and at the same time, a prohibition from disclosing that information under the protective order in this case. That is why the concern is so acute for Board members. As explained in *Norbrook Labs*, Board members and those with competitive decision-making should be denied access to Apple's "attorneys' eyes only" highly confidential technical, financial, and source code information. 2003 WL1956214, at *5.

And where source code is involved, the risk is even greater. Indeed, Plaintiffs cite no cases in this court or the Federal Circuit where Board members of a reviewing party are subsequently allowed to view a competitor's guarded technical information.

-44-

### iii. The Risk Of Inadvertent Disclosure of Apple's Confidential Information Outweighs Harm To Plaintiffs, If Any

This litigation involves sensitive and highly confidential technology present in the Accused Products (the Apple Watch Series 4 and 5). Thus, the confidential technical documents at issue is information that Apple must be careful not to allow to fall into the hands of those that may be interested in developing products that may compete with or otherwise exploit the technology in the Accused Products or drafting patent claims to read on those products. Any disclosure or improper use of Apple's confidential information by Mr. Jensen or any outside counsel, even if inadvertent, would severely harm Apple by revealing its proprietary technology. Indeed, Apple could lose the entire competitive advantage offered by its proprietary features if its source code were disclosed.

We emphasize, of course, that our concern is inadvertent disclosure. We do not question Mr. Jensen's integrity as an officer of the court. But as the Federal Circuit has stated, "[i]nadvertence, like the thief-in-the-night, is no respecter of its victims." *U.S. Steel Corp.*, 730 F.2d at 1468. Where counsel is, like Mr. Jensen, an integral part of his client's litigation licensing enterprise, and is exposed to confidential information that may aid in advancing that enterprise, "compartmentalization of protected information is . . . 'a feat beyond the compass of ordinary minds.'" *Autotech*, 237 F.R.D. at 408 (quoting *Shepard v. United States*, 290 U.S. 96 (1933)). Or, to put it more bluntly: "once knowledge has been gained, a person cannot perform a prefrontal lobotomy on himself." *Id*. at 408 n.3.

The issue of inadvertent disclosure can take on additional significance in cases involving patents and trade secrets when the firm representing a party in litigation matters also represents the party in patent prosecution and other

intellectual property matters related to patent prosecution. *See In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373 (Fed. Cir. 2010). While Mr. Jensen says that he no longer is involved in patent prosecution for Plaintiffs, his partners and associates are. He works regularly with those colleagues in patent litigation matters and the risk of inadvertent disclosure within his firm is thus a significant concern. For attorneys involved in "making strategic decisions on the type and scope of patent protection that might be available or worth pursuing, . . . competitive decisionmaking may be a regular party of their representation." *Id.* at 1380. In such instances, "the risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater." Even where an attorney is not directly involved in patent prosecution, these attorneys may have "the opportunity to influence the direction of prosecution," and the risk of inadvertent disclosure may nonetheless arise. *Id.*

In short, granting Mr. Jensen unrestricted access to confidential information about Apple's methods and systems would expose Apple to endless litigation, even if Mr. Jensen conducts himself entirely in good faith.

By contrast, denying Mr. Jensen access to confidential information would impose no significant harm on Plaintiffs. Plaintiffs retain highly competent outside counsel to conduct their litigation, and have more than adequate resources to retain additional counsel if they deem it necessary. Plaintiffs have other highly competent counsel that have been involved in this case since its beginning (and even in previous cases). Indeed, Mr. Jensen is not designated as lead counsel—that is the role of Mr. Joseph Re. The availability of competent outside counsel is typically sufficient to defeat any claim that exclusion of in-house counsel would unduly prejudice the nonmoving party. *See, e.g., A. Hirsch Inc. v. United States*, 657 F. Supp. 1297, 1305 (Ct. Int'l Trade 1987) ("in view of retained counsel's competence, it is not clear how plaintiffs' position will be prejudiced by excluding [in-house] counsel from access"); *Brown Bag*

*Software*, 960 F.2d at 1471 (finding no prejudice where outside counsel had sufficient time and resources to review confidential materials and was competent). The balance of hardships, therefore, strongly favors denying Mr. Jensen access to Apple's confidential information.

### b. Apple's Provision Providing Trade Secrets to its In-House Counsel

Plaintiffs argue that Apple's proposal would result in a one-sided approach whereby its in-house counsel would receive access to Plaintiffs' alleged trade secrets and Plaintiffs' in-house counsel would not receive the same. But by nature of their trade secret misappropriation claim, Plaintiffs have alleged that Apple already has possession of their trade secrets.[9] If Plaintiffs' trade secret information is already in Apple's possession, as Plaintiffs contend, then Plaintiffs should have no qualms about sharing that information with the persons at Apple directly involved in the defense of this lawsuit. And as Apple has explained repeatedly, a very limited number of Apple's in-house counsel need access to this information in a case where Plaintiffs have asserted a serious, high exposure claim of trade secret misappropriation against the company. Contrary to Plaintiffs' assertions, the competence of Apple's outside counsel does not absolve in-house counsel's need for access to this information.

Apple's in-house counsel is integrally involved in the defense of this lawsuit. They need to know the purported trade secrets that Plaintiffs contend were misappropriated (to the extent Plaintiffs replead that any purported trade secrets were in fact misappropriated by Apple) in order to advise on strategy—and, more importantly, to guide document collection and production, which

---

[9] Of course, Apple recognizes that the trade secret claim has been dismissed from this case. However, because the claim was dismissed with leave to replead, Apple wants to make sure that this protective order adequately serves its interests and needs in the event the claim is repleaded.

-47-