# EXHIBIT 26

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ADVANCED CLUSTER        )
SYSTEMS, INC.,          )
                        )
         Plaintiff,     )   C.A. No. 19-2032-MN-CJB
                        )
    v.                  )
                        )
NVIDIA CORPORATION,     )
                        )
         Defendant.     )

Tuesday, October 11, 2022
2:00 p.m.

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States District Court Judge

APPEARANCES:

    SHAW KELLER, LLP
    BY:  NATHAN R. HOESCHEN, ESQ.

         -and-

    KNOBBE MARTENS
    BY:  CHERYL BURGESS, ESQ.

                    Counsel for the Plaintiff

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

**Page 2**

APPEARANCES CONTINUED:

DLA PIPER
BY:  STEPHANIE O'BYRNE, ESQ.
BY:  CARRIE WILLIAMSON, ESQ.
BY:  PETER NELSON, ESQ.

         Counsel for the Defendant

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

**Page 3**

1  THE COURT:  Good afternoon,
2  everyone.  It's Judge Burke here.  Why don't we
3  go on the record and let me just say for the
4  record that we're here this afternoon in the
5  matter of Advanced Cluster Systems, Inc., versus
6  Nvidia Corporation, et al.  This is civil action
7  number 19-2032-MN-CJB here in our court and
8  we're here today with regard to a discovery
9  dispute that's been raised by the defendants and
10 by third-party Knobbe, Martens, Olsen & Bear,
11 LLP for today.  Before we go further, let's have
12 counsel for each side identify themselves for
13 the record.  We'll start first with counsel for
14 the plaintiff, who I believe is also going to be
15 counsel for our third party and we'll begin
16 there with Delaware counsel.
17 MR. HOESCHEN:  Good morning, Your
18 Honor.  Nate Hoeschen here from Shaw Keller on
19 behalf of plaintiffs and third party contact
20 Knobbe Martens.  With me on the line is Cheryl
21 Burgess from Knobbe Martens.
22 THE COURT:  All right.  Good to be
23 with you all again.  And we'll do the same for
24 counsel for defendant's side, again beginning

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

**Page 4**

1  with Delaware counsel.
2  MS. O'BYRNE:  Good afternoon, Your
3  Honor.  Stephanie O'Byrne with DLA Piper for
4  Nvidia.  I'm joined by my co-counsel, Carrie
5  Williamson and Peter Nelson from DLA Piper.
6  Also on the line is Sara Moore who is senior
7  litigation counsel for Nvidia.  With Your
8  Honor's permission, Mr. Nelson will argue the
9  remaining pieces of today's motion.
10 THE COURT:  Okay.  Thank you,
11 counsel.  And as was noted, parties raised a
12 number of different disputes with regard to
13 proposed rule 30(b)(6) deposition topics that
14 have been put forward by defendants for Knobbe
15 to testify about.  And the Court resolved a
16 couple of those disputes prior to our call
17 today, but a number of the topics with regard to
18 Knobbe still are at issue, so we'll take up
19 those kind of in order.  And I think the topics
20 that are still at issue are topics 2, 3, 8A, 9,
21 10 and 13, I think.  So we'll touch base on
22 those and get the parties involved and I'll try
23 to make a decision.
24 Let me -- I'll turn first to

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

5

1  Knobbe's counsel and Ms. Burgess are you going
2  to be taking this for your side?
3           MS. BURGESS:  Yes, Your Honor.
4           THE COURT:  Okay.  And I think the
5  way the parties kind of argued about the topics
6  they kind of put together topics 2, 9, 10 and
7  13, because there was some arguments about those
8  that were kind of similar, although each of the
9  topics are a little different.  Maybe we can
10 kind of start with that group and deal with
11 them.  And I guess maybe to start, I know
12 through your letter a theme is, look, you know,
13 okay, these topics, maybe some are relevant,
14 maybe we think some are overbroad, but beyond
15 that, they're seeking this information from a
16 law firm, you know, and that's kind of like
17 that's a little bit beyond the pale.  And I
18 gather too, you're saying that because it's not
19 disputed that two attorneys from Knobbe who I'm
20 assuming did a fair amount of prosecution
21 related work on the U.S. family, including the
22 asserted patents, are going to testify.  But I
23 guess just as to the threshold issue of is it
24 okay for a defendant to seek information that is

6

1  in some way related to say the asserted patent
2  in the case from the firm that prosecuted that
3  patent and/or others that are related?  How come
4  it's not potentially okay?  I mean, my guess is
5  probably, is it unusual outside the inequitable
6  conduct context to be looking to the prosecution
7  firm for relevant evidence, but if lawyers there
8  have relevant evidence, isn't it okay to seek it
9  from a firm?
10          MS. BURGESS:  Your Honor, in the
11 context of the topics that they've actually
12 served, it's not -- it's not just in the
13 abstract can you get relevant information from a
14 firm.  I don't know that there's any law that
15 says no, you cannot in any event get relevant
16 information from a prosecuting law firm.  But I
17 think you have to look at the topics as written
18 and consider whether they're relevant and
19 proportional under rule 26(b)(1) and whether
20 they're reasonably particular under rule
21 30(b)(6).  And so Knobbe's issue with the topics
22 that are still in dispute are the relevant
23 proportionality and particularity with which the
24 topics have been drafted.

7

1           THE COURT:  Okay.  Fair enough.
2  Then let's go into the topics.  And I guess
3  maybe actually just stepping back once more, Ms.
4  Burgess, the other subpoenas were to the two
5  individual attorneys who I guess are Mr. Smemoe
6  and Mr. Cannon.  From what I can read from the
7  briefs, it's hard to tell for sure, but I'm just
8  guessing like maybe those two folks did a good
9  amount of the prosecution work, but defendants
10 are saying that like a bunch of other lawyers at
11 Knobbe also did prosecution related work on
12 these patents and the defendants are suggesting
13 so this would be easier to just do a 30(b)(6)
14 depo of the firm to try to capture the rest of
15 the lawyers' knowledge instead of having to
16 depose everybody.  Is that what's going on here
17 is that the two lawyers are going to testify
18 individually, they did a lot of the work, but
19 other lawyers did some too?
20          MS. BURGESS:  Yes, Your Honor.  So
21 you're correct.  It's two attorneys that they've
22 individually noticed are individuals who did
23 the, you know, the bulk of the prosecution work.
24 And to clarify, there's one of the topics

8

1  relates to what they call the MGT patent and so
2  one of the attorneys was primarily in the
3  prosecution of the MGT patent and then the other
4  attorney was primarily involved in the
5  prosecution of the patent in suit and some of
6  the related family members.  And I think it's
7  worth noting, though, that the topics as written
8  are not limited to Knobbe attorneys involved in
9  the prosecution of the patent in suit or even
10 the related patents.  You know, to an extent
11 that there's any boundaries on what is a related
12 patent, I think Nvidia's definition of related
13 is really broad and broad in a lot of irrelevant
14 patents.  But even assuming that you can
15 understand what the boundaries were around the
16 relevant patents, it's not limited to attorneys
17 who are involved in prosecution of those
18 particular patents.
19          THE COURT:  Understood.  But
20 unless, Ms. Burgess -- we'll hear from the
21 defendant's side in a little bit and they'll be
22 able to jump in then and tell me if anything I'm
23 about to say is wrong.  But here's what I
24 understood them to be suggesting or hinting in

## 9

1  their letter, which is, sure, we said related
2  patents, but actually we're happy to narrow and
3  all we're talking about here, what we're calling
4  the U.S. family, which is basically the asserted
5  patent, the three other patents that were
6  previously asserted and then three listed patent
7  applications, so we're talking about 7 patents
8  and/or applications.  And I think on the other
9  point you raised, I think they were saying
10 something like, no, of course, no, we're not
11 talking about having to prepare a witness to
12 testify about all 300 lawyers' knowledge about
13 subject X.  We were just really talking about
14 the other grouping of Knobbe lawyers who are not
15 Mr. Smemoe and Mr. Cannon, like their collective
16 knowledge.  If they were meaning to frame the
17 patents that way and, you know, kind of who
18 counts in terms of knowledge that way, would
19 that be a little better for you?
20         MS. BURGESS:  Your Honor, that
21 would certainly help.  That's not something that
22 has ever been expressed directly to us, that
23 they would be willing to narrow in that manner,
24 but it doesn't get a hundred percent of the way

## 10

1  there and I just wanted to give a couple
2  examples of why the topics are still
3  problematic, even if you can identify a smaller
4  subset of patents, but the topics themselves are
5  still overbroad.  For example, topic 9 still
6  talks about prior art known to you related to
7  the asserted patent and related patents.  So
8  known to you means known to Knobbe and we're
9  talking about things related to those patents.
10 And the definition of related is extremely broad
11 and would include anything that references or
12 has any relevance to.  So for example, for topic
13 9, that would mean any prior art known to any of
14 the attorneys at Knobbe Martens related to the
15 asserted patents and related patents, which
16 could mean investigating every patent out there
17 that makes reference to or includes within an
18 IDF any of the patents and then determining
19 whether any of the 300 attorneys at Knobbe
20 Martens has knowledge of those and the dates
21 that they became knowledgeable.
22         THE COURT:  Right.  And again, Ms.
23 Burgess, for our hypo, let's assume that they're
24 going to say, when I talk to defendant's side,

## 11

1  we're not talking about 300 attorneys at Knobbe.
2  We really mean, like as far as we understand,
3  there were seven other Knobbe lawyers who worked
4  on prosecution, we're talking about them.  I'm
5  just making seven up, but whatever the number
6  is, like the people beyond Mr. Smemoe and Cannon
7  that worked on prosecution.  Assume it's that,
8  not the 300.  And assume it's not the broad
9  definition of related patents in the subpoenas.
10 Assume it's just the U.S. family as is described
11 on page 2 of defendant's letter.  Even still,
12 though, what you're saying is, look, so take
13 like, you know, any piece of prior art in some
14 way related, I don't know, one of the
15 provisional applications or one of the now
16 non-asserted patents that are at issue.  That
17 could be anything and, you know, I think you're
18 saying absent a much clearer articulation of how
19 it is that certain prior art is relevant to the
20 asserted patent that's at issue in the case,
21 that's just too broad.  Is that a fair kind of
22 summary of what you're saying as to topic 9?
23         MS. BURGESS:  Yes, Your Honor.
24 That's a fair characterization for topic 9 and I

## 12

1  could go through some other examples, but I
2  think that's a good example of why the topics
3  are still overbroad, even if you redefine you to
4  refer to the Knobbe attorneys involved in
5  prosecution of the asserted patents and direct
6  families.  So even if we rewrote you to include
7  just those individuals, I think the topic's
8  still overbroad.
9         THE COURT:  And I gather with
10 regard to topic 2, you would say the same about
11 the word prosecution of, pretty broad?
12         MS. BURGESS:  Yes, Your Honor.  We
13 think prosecution of is very broad and doesn't
14 state with reasonable particularity what about
15 the prosecution is relevant to any claim or
16 defense in the case and what in particular are
17 the topics that Nvidia wants us to investigate
18 and prepare a witness on.
19         THE COURT:  And then, you know,
20 when defendants had to explain why are these
21 other, you know, why are the other patents at
22 issue here or patent applications at issue other
23 than the asserted patent relevant, they try to
24 do so on pages 1 and 2 of their initial letter

13

1  and they pointed to a couple of things.  Now,
2  one thing they pointed to was the fact that, in
3  your willfulness allegations against them you
4  cite to certain of the provisional applications
5  by way of explanation of how they might have had
6  knowledge of the asserted patent.  I'm not sure
7  I understand how your allegations about the
8  defendant's willfulness makes testimony of
9  Knobbe attorneys who were prosecuting the
10 patents for the plaintiff particularly relevant
11 here, but otherwise they did reference a dispute
12 about at least the filing date of the asserted
13 patent and they noted that you have, as evidence
14 about the filing date, cited to certain of the
15 other U.S. family members.  So like, so that was
16 one piece and then the other thing they noted
17 was that in your supplemental initial
18 disclosures you made reference to other of the
19 U.S. family patents.  I don't know if you did
20 that at a point in which those patents were
21 actually still asserted in the case, but how
22 about at least with regard to the filing date,
23 what's the right filing date here?  Haven't they
24 shown how at least some testimony about some of

14

1  the U.S. family members other than the asserted
2  patent could be relevant to that issue?
3           MS. BURGESS:  Well, Your Honor, it
4  is not clear to me and Nvidia hasn't explained
5  how claiming priority to an earlier family
6  member makes the prosecution of that earlier
7  family member relevant.  I don't see the
8  connection there.  I don't think Nvidia's brief
9  does that, but they are correct in that the
10 asserted patent is a later filed continuation.
11 Actually it's a continuation of I believe a
12 continuation in part of the earlier filed
13 utility application.  But the prosecution of
14 those earlier applications in the chain of
15 family members is not relevant to whether the
16 later filed patent is entitled to priority.  The
17 legal analysis for priority -- I guess I'm not
18 clear what in the prosecution would be relevant
19 to that legal analysis of priority and what
20 priority --
21          THE COURT:  I take your point
22 there is about again back to the use of the
23 words prosecution of, again, and the breadth of
24 those words in the topic.  I'm just trying to

15

1  figure out like can it be said that any of these
2  other U.S. family members, including these
3  provisional applications could be relevant at
4  all, you know, to the claims and defenses at
5  issue with regard to the asserted patent?  And I
6  guess I was thinking to myself, well, I don't
7  know, maybe like if instead of saying the
8  prosecution of the asserted patent and related
9  patents they had said like, information about
10 facts relating to the priority date of the
11 asserted patent vis-a-vis the other U.S. family
12 members, think there might be certain factual
13 information, you know, like, I don't know, like
14 similarities and differences between what's
15 described in those provisional applications and
16 what's described in the asserted patent, it
17 could be relevant to at least an issue in the
18 case.  Is that potentially fair?
19          MS. BURGESS:  Your Honor, that's
20 fair.  Again, I don't think we can categorically
21 say that there's not going to be some more
22 particularized topics that could have some
23 relevance to an issue in the case.  The problem
24 is we don't know what that specific topic is

16

1  and, you know, I think the burden is on Nvidia
2  to serve requests that are reasonably
3  particular, that are understandable, where we
4  can understand what these actual matters are for
5  examination, so we can prepare somebody.  And it
6  seems like that policy to let them serve this
7  overbroad, vague, you know, kind of like throw
8  the spaghetti at the wall and see what sticks
9  and then let them resort to the court trimming
10 it back to something that everybody can
11 ultimately agree has some level of relevance.
12          THE COURT:  Got it.  And just to
13 finish out these four topics that were kind of
14 grouped together in the briefing, topic 10 has
15 to do with Knobbe's policies relating to patent
16 prosecution.  Sitting here I can't figure out
17 how that's relevant to the asserted claims or
18 defenses at issue in the case related to the
19 asserted patent.  I'm assuming you cannot as
20 well.  Topic 13 has to do with assessments of
21 the value of dot, dot, dot.  It does say the
22 value, strength and benefit of the asserted
23 patent.  I could see like maybe if Knobbe
24 attorneys did have information about facts

## Page 17

1 relating to the asserted patent and its asserted
2 value, that could be relevant to damages it
3 seems like. I don't know if you'd be able to
4 get that info through privilege objections, but
5 at least as to the asserted patent I could see
6 how topic 13 might be relevant to the claims or
7 defenses at issue in this case relating to the
8 asserted patent. Do you disagree there?
9      MS. BURGESS: No, Your Honor.
10 Again, I think we can come up with some more
11 refined examples that could fall within the
12 broad umbrella of this topic for something that
13 could potentially be relevant. Again, I think,
14 you know, it could have to be significantly
15 paler. For example, the reference to you refers
16 to every Knobbe attorney and so analyzing
17 whether any Knobbe attorney has some kind of,
18 you know, has made any assessment of the value,
19 strength or benefit of any related patents,
20 right? I think limiting to the asserted patent
21 might be helpful. When you're talking about
22 related patents, again, that's fairly broad so
23 where's the line for related patents and how do
24 you determine what attorneys of the 300

## Page 18

1 attorneys assigned at the firm have knowledge of
2 related patents or have done assessments of the
3 value, strength and benefits of those patents.
4      THE COURT: Ms. Burgess, anything
5 more you want to say about these four topics 2,
6 9, 10 and 13, knowing we'll come back to the
7 others that we haven't discussed.
8      MS. BURGESS: So I think I just
9 wanted to touch on, you know, a couple of the
10 relevance arguments made in the sur reply that I
11 don't think we have talked about yet in terms of
12 Nvidia has indicated that have an inequitable
13 conduct defense and I think ACS would dispute
14 that. It looks like Nvidia has tried to
15 shoehorn inequitable conduct somehow into their
16 interrogatory response related to unclean hands.
17 We're not in agreement that this is properly
18 pleaded. Let's set that aside for now. That's
19 not the issue before us.
20      THE COURT: Ms. Burgess, is there
21 a -- I'm assuming there is not currently in the
22 case an answer in which the defendants actually
23 plead facts about the defense of inequitable
24 conduct. I took that as a given from your

## Page 19

1 letters, but is that correct?
2      MS. BURGESS: That is correct,
3 Your Honor.
4      THE COURT: Okay. Go ahead.
5 Please continue.
6      MS. BURGESS: So even assuming
7 that it was somehow pled as a defense, we don't
8 think it is, but let's just set that aside,
9 there's no explanation as to how the topics that
10 are at issue now are relevant even if you take
11 those defenses as expressed in this unclean
12 hands interrogatory response. The interrogatory
13 response identifies certain acts or failures by
14 one of the named inventors to disclose certain
15 prior art. That doesn't have anything relating
16 to the actions or failures by the prosecuting
17 attorneys or Knobbe Martens generally, so
18 there's nothing tying their topics to the
19 defense as expressed in their interrogatory
20 response.
21      And then the same thing goes with
22 respect to inventorship. That's another defense
23 that they've claimed somehow makes these topics
24 relevant. But again, there's the inventorship

## Page 20

1 issue has to do with, you know, of course the
2 inventorship on the asserted patent, but what
3 they're seeking is inventorship or they're
4 seeking to explore the prosecution of the MGT
5 patents. This is a different patent family that
6 may share some inventors, but they don't ever
7 explain how the inventorship of the asserted
8 patent relates to prosecution of this, the other
9 unrelated patents, how the prosecution of these
10 unrelated patents somehow relates to their
11 inventorship defense and why inventorship of the
12 asserted patent is allegedly incorrect.
13      THE COURT: Okay.
14      MS. BURGESS: So I wanted to touch
15 on those two topics that we had not yet
16 discussed.
17      THE COURT: All right. Thank you,
18 Ms. Burgess. Let me turn to defendant's side
19 and I think -- is it Mr. Nelson who is going to
20 be taking these for defendant's side?
21      MR. NELSON: Yes your honor.
22      THE COURT: Okay. Mr. Nelson,
23 maybe you could start -- obviously I think the
24 plaintiff and to some extent me have had

21

1 questions about the facial breadth of the topics
2 at issue, everything from what patents are they
3 meant to cover, is it really meant to cover the
4 combined knowledge of 300 attorneys at Knobbe
5 Martens, some broad sounding words like prior
6 art and prosecution, et cetera, et cetera.  It
7 might make sense for you to start, as it relates
8 to these four topics, to do whatever you want to
9 do or were prepared to do to say no, look, yes,
10 facially the subpoena as issued may have covered
11 X, but I'm here today to tell you that, Judge,
12 what we're really focused on is more narrow and
13 that relates to A, B, C and D.  Is there
14 anything you want to say to start things off in
15 that regard?
16          MR. NELSON:  Sure thing.  Your
17 Honor, to start, we made it very clear to Knobbe
18 from the start that while their concerns related
19 to the words related patents may be justified in
20 the abstract, we've explained specifically, I
21 could point you to the e-mail correspondence,
22 which you may have reviewed, we expressly
23 stated, as I believe you commented earlier, we
24 are seeking information related to the asserted

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

22

1 patent and all of its parents and the
2 provisional applications beforehand.  We are
3 also seeking information related to the patents
4 filed on a piece of technology that was the
5 precursor to the supposed technology related to
6 the asserted patent.  And that is covered -- we
7 specifically stated exactly what patents were
8 covered in that.  So the concern related to the
9 so called breadth of the word related patent is
10 frankly not justified.  And the -- the
11 continuing to harp on that issue is a bit
12 disingenuous given that we have expressly stated
13 what patents fall within the definition of
14 related patents.
15          THE COURT:  So Mr. Nelson, just to
16 summarize, you're really focused on the 7
17 patents and/or patent applications that you have
18 collectively defined as U.S. family on pages 1
19 and 2 of your letter which includes the asserted
20 patents, three other patents that were formerly
21 asserted and then three provisional patent
22 applications, am I right?
23          MR. NELSON:  Yes, Your Honor.  And
24 if it would help, we expressly stated that in

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

23

1 exhibit 5 to Knobbe's opening letter.  I can
2 point you to that page if it would help.
3          THE COURT:  Okay.  What about, you
4 know, the 30(b)(6) depo of the entire firm?
5 Plaintiff's -- Knobbe's counsel keeps saying got
6 to prepare for the collective knowledge of 300
7 people.  Is that right or do you have something
8 else in mind?
9          MR. NELSON:  Your Honor, I
10 couldn't even sarcastically ask them to do that.
11 And that's something we explained during the
12 meet and confer.  At least I thought we did.
13 Again, this seems like an issue that is being
14 brought up mostly to kind of blow the proportion
15 of this out of scope to try and -- maybe to
16 shine a better light for Knobbe on this issue.
17 That was not something that we stated.  We
18 stated that the main reason we asked for the
19 firm was, as Your Honor pointed out, the two
20 attorneys we subpoenaed individually as
21 30(b)(1), those were the two that signed off on
22 the prosecution.  That does not necessarily mean
23 that they did all the work and frankly it's
24 unlikely they did all the work.  There are some

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

24

1 other attorneys that were involved and so our
2 request is that those -- we're presuming that
3 those two attorneys are going to be the ones who
4 are going to be designated 30(b)(6) and we ask
5 that they prepare -- they basically just go
6 through the files of those patent applications,
7 the families and be prepared to testify about
8 that, because it's -- I suspect that the
9 internal files they have are going to be for
10 those families and it's going to be some of the
11 information collected by those signing attorneys
12 and anybody who worked with them.  So we're
13 certainly not asking for 300 attorneys,
14 collective knowledge of 300 attorneys.  That
15 would be insane.
16          THE COURT:  Any idea how many
17 Knobbe attorneys other than the two who are
18 going to be individually deposed in this case
19 worked on the prosecution of these seven patents
20 or patent applications?
21          MR. NELSON:  That has not been
22 told to us, Your Honor.
23          THE COURT:  Okay.  But whatever
24 the number is, is what you're thinking of?

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

25

1    MR. NELSON:  Yeah.  Again,
2  whenever this issue was brought up, the response
3  was immediately that this request involves 300
4  attorneys and that's unreasonable.  We were
5  never told how many attorneys would actually
6  need to be talked to or how many attorneys
7  potentially would be involved with this, but
8  it's certainly not 300.
9    THE COURT:  Okay.  From there,
10 we're looking at the particular topics that
11 we've been discussing, 2, 9, 10 and 13.  Maybe
12 we can start with 2.  As I was suggesting, I
13 could maybe see how you've demonstrated that,
14 via your letter, some factual information about
15 the '908 provisional and/or maybe the '573
16 provisional could be relevant to the issue at
17 play in this case of what's the appropriate
18 filing date that the asserted patent is entitled
19 to.  If that was one issue I could say, okay,
20 the asserted patent is the patent that's left in
21 this case, the defendants have, I think,
22 explained to me why if you had information about
23 facts relating to these provisional
24 applications, that could be relevant to an issue

26

1  at play in the case regarding the filing date.
2  But beyond that, though, you're asking for just
3  all the information about the prosecution of
4  these seven patents or applications.  What
5  beyond, you know, the right filing date for the
6  asserted patent have you demonstrated is
7  relevant with regard to these other patents and
8  patent applications regarding this case?
9    MR. NELSON:  Of course.  So Your
10 Honor, to begin with, the prosecution history of
11 the asserted patent technically consists of the
12 prosecution history of the '768 Patent and all
13 of its parents.  By definition it does consist
14 of all of its parents and parent applications.
15 So at the end of the day, even if we either
16 technically just say the '768 Patent, the
17 asserted patent, the prosecution history of that
18 '768 Patent technically encompasses all of the
19 parent applications including these provisional
20 applications.
21   Secondly, Your Honor, this is
22 something we explained on the meet and confer.
23 There were a lot of examiner interviews,
24 throughout the history of the examination of all

27

1  the parents and the asserted patent.  There were
2  other potential issues related to the responses
3  and what the prosecution attorney said in
4  certain responses that would have implications
5  on the construction of the '768 Patent, as I
6  said, because the asserted patent prosecution
7  history consists of both the direct prosecution
8  history for the '768 Patent and all of its
9  parents' applications.
10   THE COURT:  I mean, I guess maybe
11 what I'm asking, though, is, you know, like in
12 this litigation there's one asserted patent and
13 that's the '768, am I right?
14   MR. NELSON:  There is one asserted
15 patent, to which -- through which -- which is
16 claiming priority to numerous other patents
17 which were previously asserted but are no longer
18 asserted in this litigation.
19   THE COURT:  And I guess I'm just
20 trying to, you know -- if the plaintiff says or
21 Knobbe says, look, is every single fact about
22 the prosecution of U.S. provisional patent
23 application numbers dot, dot, dot, ending in
24 '738 relevant to what's going on in this

28

1  litigation about the '768 patent?  We say no, it
2  can't be, it's just got to be too broad.  And if
3  the defendant responds and says, you know, no,
4  we can ask any question about any fact that has
5  anything to do with the prosecution of
6  provisional application number '738 or U.S.
7  patent number '289 or the provisional ending in
8  '573, yeah, any single fact that we want to ask
9  about about any one of those six other patents
10 or patent applications is automatically relevant
11 to what's going on in this case which is about
12 the '768.  Is that your position?
13   MR. NELSON:  Not necessarily, Your
14 Honor.  We believe that the facts -- so from our
15 perspective, we are concerned about two things.
16 One, the prosecution history is long.  So if one
17 of those 30(b)(6) witnesses would get up again,
18 there's a good chance that they're not going to
19 remember what happened for the provisional or
20 for the first patent application that was filed.
21 What we're asking for is for them to go back and
22 go through what we're assuming is the file for
23 that prosecution.  We're not asking them to go
24 out to the firm and find everything for every

29

1   other attorney. We're asking them to go through
2   the files associated with that family, with the
3   prosecution of that family and be prepared to
4   testify about that, because there is a concern
5   that they would either not remember or --
6   especially considering that the prosecution
7   attorneys are partners of the law firm that have
8   contingency interest in this case, they will
9   not -- they will not be willing to speculate if
10  they're not sure of something and we just want
11  to make sure that okay, go back and review the
12  history so that you're not speculating, you
13  know, everything, you can answer the question.
14          THE COURT: But there must be
15  aspects of the prosecution of these other
16  patents or applications -- you know, in other
17  words, if the plaintiff was asserting or Knobbe
18  was asserting, and if I was inclined to agree,
19  yeah, the way it's written is just too broad,
20  the burden it would place on a firm, even if
21  we're not talking about the whole firm, just a
22  number of other attorneys to be prepared for
23  every fact that in any way was relevant to the
24  prosecution of each of these six other

30

1   applications or patents, if I was concerned that
2   was too broad, I'm sure it must be that in your
3   minds the defendants have some topics that they
4   think they're particularly interested in asking
5   about and there's probably -- there's got to be
6   some happy medium where you don't have to give
7   away everything about the nature of the
8   questions you're going to ask. And then on the
9   other hand, you probably could, I'm guessing,
10  narrow things down a bit by saying, look, you
11  should be prepared on these aspects of the
12  prosecution of these six other patents or
13  applications. Couldn't defendants do that? I'm
14  assuming you could, right?
15          MR. NELSON: Yeah, Your Honor. If
16  we need to narrow it, I think we would be -- and
17  I thought we made this clear, that we're talking
18  about the prosecution history. So if we were to
19  narrow it, a fair narrowing is typically
20  everything related to the prosecution history.
21  In other words, the things that were filed, the
22  things that were received, the examiner
23  interviews and I think some of the other issues
24  were, again, ignoring the 300 attorney aspect,

31

1   the prior art known, related to the asserted
2   patents as in topic number 9, we're not -- the
3   general idea with this one, I think again, I
4   thought we made this clear during the meet and
5   confer, was we're mainly interested in the
6   specific pieces of prior art that we have been
7   discussing in this litigation. And then that
8   was kind of the reason why we mentioned some of
9   those in separate topics.
10          THE COURT: Do you have those
11  pieces of prior art in your mind? Like, are we
12  talking about seven pieces of prior art or 27 or
13  100. Like, what more can you tell me, when you
14  say the piece of prior art we've been talking
15  about in this litigation, how broad is that?
16          MR. NELSON: We're talking about
17  the pieces of prior art that were mentioned in
18  our final invalidity contentions. I mean, I'm
19  trying to see if -- I mean, for example, Your
20  Honor --
21          THE COURT: I'm not trying to put
22  you on the spot for an exact number. General
23  sense, are we talking about, you know, talking
24  about a lot or a little or something in between?

32

1           MR. NELSON: We're not talking
2   about many. I think we're talking about 10 to
3   15 specific pieces of prior art generally. I
4   mean, some of those pieces of prior art are, I
5   mean, are large, but at the end of the day,
6   we're not talking about a massive number of
7   things. We're talking about, again, going
8   through the file history or the internal Knobbe
9   file history, going through them and saying,
10  okay, we -- were we aware of this, was this
11  disclosed, why was this not disclosed, do we
12  believe it was relevant, if we didn't believe it
13  was relevant, why didn't we. That kind of
14  stuff.
15          THE COURT: With regard to topic
16  10, what does Knobbe prosecution policies or
17  practices have to do with claims and defenses at
18  issue in this case as to the asserted patent?
19          MR. NELSON: Well, for one it has
20  to do with -- kind of going back to the
21  disclosure aspect of what was known and/or --
22  what was known, disclosed and/or not disclosed.
23  It has to do with the -- I think you could give
24  a broad aspect. If we were to ask them, did you

## Page 33

tell -- if we were to ask a prosecuting attorney, did you tell either of the inventors X, Y or Z, they would have -- they would have a perfectly valid privilege objection. However, if we were to ask them about what their general practices were regarding what they generally told clients, that would not be subject to a privilege objection. So it has to do with the kinds of things that were submitted to the patent office, how things were approached, how clients were generally handled. Those were the kinds of things that were in mind. Those relate to mostly to the invalidity contentions and the potential inequitable conduct that was brought up earlier.

THE COURT: And inequitable conduct, is that pleaded?

MR. NELSON: It has not been asserted as a defense in an answer, but it has been fully disclosed.

THE COURT: Okay. I think unless -- just to tell you, I can't think of a scenario, unless there's something you think I'm missing, where -- if an inequitable conduct

## Page 34

defense wasn't pleaded in an operative pleading, it would be in the case in a way that you could tell another party to provide discovery about it. I mean, we have whole satellite litigations about whether allegations of inequitable conduct are successfully pleaded in pleadings. I mean, are you asserting by way of this discovery dispute motion that you should be able to get discovery to inequitable conduct even though it's a currently unpleaded defense?

MR. NELSON: Well, at the end of the day my understanding was -- to answer your question generally, yes, Your Honor. Maybe not necessarily --

THE COURT: I mean, I say defense. I mean really it's a claim. Right? You're making a claim of inequitable conduct, a counterclaim, I suppose, right? Isn't that how it would come up here?

MR. NELSON: Potentially, yes.

THE COURT: You'd be asserting that inequitable conduct occurred for which you'd have a burden to prove certain elements, so yeah, it would have to show up as a

## Page 35

counterclaim in your answer and counterclaims, I would think. But, okay. Well, putting it aside for now, though, maybe last question would be about topic 13. I gather that's asking for information that Knobbe might have about the value in part of at least the asserted patent and/or the other patents at issue. How is that topic relevant to the claims or defenses at issue in the case?

MR. NELSON: At the end of the day, Your Honor, this one has two issues. One, this was one of the ones where we said if Knobbe, if they agreed Knobbe was not going to testify about this, we would withdraw. They didn't agree. So at end of the day we have to assume that someone from Knobbe will testify regarding this. Second, Your Honor, this has to do with whether or not there were any internal thoughts regarding value and strength, what aspects of the claims made sense or did not make sense, what did they believe was previously known in the art. That's kind of where this is going.

THE COURT: Okay.

## Page 36

MR. NELSON: Again, this would also potentially relate to any communications with third parties.

THE COURT: So it's not meant to get to like are you aware of a document that says that, you know, the claims of the asserted patent are worth a million dollars. I could see if there was such a document that might be relevant to certain damages issues. That's not what you're getting at here?

MR. NELSON: If such a document existed and was given to a third party and discussed with a third party, that would be potentially relevant, but otherwise it's anything regarding the internal thoughts of the attorneys of the strength or weaknesses of the patent.

THE COURT: Okay. All right. Mr. Nelson, anything further about these four topics before we move on to the other two?

MR. NELSON: Just a quick note, Your Honor. I got the impression you were not terribly fond of the inequitable conduct related argument. My only request is should you decide

### Page 37

1  to deny that or deny it in part, my only request
2  is that it's without prejudice should we later
3  decide to come back, should we plead and
4  potentially bring such a claim because we would
5  then need to depose the prosecuting attorney.
6         THE COURT: Sure. Yeah. I mean,
7  nothing that I'll say today with regard to the
8  discovery dispute is meant to preclude from, if
9  I wish to, to add an inequitable conduct claim
10 into the case by way of amendment to your
11 pleadings if that's what you choose to do. I
12 mean, you know, I have no idea. But my only --
13 the only thing I was trying to get across is the
14 way I'm thinking of it is I can't understand
15 how, as a way of establishing why certain of
16 these topics will provide relevant evidence to
17 the claims or defenses at issue in the case, it
18 could be claimed that the topics would do so
19 because they provide evidence of inequitable
20 conduct if that is a claim that the defendants
21 are currently not making. And I was inviting
22 you, if there's something I'm missing about that
23 thought process, feel free to let me know, but
24 otherwise that was my thought process. But

### Page 38

1  nothing I'm saying here today is meant to
2  preclude you from attempting to plead a
3  counterclaim of inequitable conduct in the case
4  at all. So I'm happy to put that on the record.
5         Okay. Ms. Burgess, let me turn
6  back to you and I would like to speak briefly
7  about the other two topics at issue, but is
8  there anything you want to add by way of
9  response to what you heard about the topics
10 we've just been discussing.
11        MS. BURGESS: Yes, Your Honor. A
12 couple quick points on those and thank you for
13 letting me go back to address those. So there
14 was some discussion with respect to I believe
15 topic 2 on what Nvidia is truly seeking with
16 respect to prosecution of the asserted patent
17 and the related patents. And a couple points
18 they raised was first, it sounds like they don't
19 think the individuals who have been noticed
20 would necessarily be prepared to address the
21 file history if they don't review it for the
22 deposition. And so the 30(b)(6) I guess is
23 intended to ensure that those individuals do, in
24 fact, go back and review and try to refresh

### Page 39

1  their recollection on what happened. And my
2  thought to that is, again, I think the
3  prosecution of the asserted patent, the way it's
4  worded is still overly broad, right? I mean, if
5  all Nvidia wants is for the attorneys to go back
6  through and read the file history, you know,
7  that's one thing. But if they actually want
8  them to be prepared to discuss the prosecution
9  of the asserted patent, that would require more
10 preparation than just going back and reviewing
11 the file history. And I think we would need to
12 know what particular topics those individuals
13 need to be prepared on, because --
14        THE COURT: I'm sorry, Ms.
15 Burgess. Do you know how many other Knobbe
16 attorneys other than the two individuals who are
17 going to be deposed were involved in prosecution
18 of the U.S. family?
19        MS. BURGESS: Your Honor, I don't
20 have the exact number of how many attorneys have
21 billed to that matter, but I will say it's not
22 going to be large. We're not approaching
23 anywhere near the 300 attorneys. So the firm is
24 going to be probably under 10 individuals that

### Page 40

1  were substantively involved, but again, I can't
2  tell you for sure because I haven't checked
3  billing records and I apologize for that.
4         THE COURT: And when are Mr.
5  Smemoe and Mr. Cannon's deposition scheduled or
6  have they be scheduled?
7         MS. BURGESS: Your Honor, we
8  haven't scheduled them. And we haven't
9  scheduled them because we have already indicated
10 to Nvidia that they would, in fact, be the
11 30(b)(6) designess, one or more of them would be
12 the 30(b)(6) designees depending on the topic,
13 so we would like to just do it once and so
14 Nvidia agreed -- we agreed that they could take
15 those, you know, outside the time frame for fact
16 discovery so that we could resolve the dispute
17 on the 30(b)(6) topics before we have those
18 depositions.
19        THE COURT: Okay. All right. Let
20 me let you finish out with regard topics 2, 9,
21 10 and 13.
22        MS. BURGESS: Okay. So with
23 respect to topic 2, in addition to
24 understanding, you know, kind of what particular

41

aspects of the prosecution Nvidia wants the individuals involved in prosecuting to refresh on and be ready to address, Mr. Nelson also mentioned, you know, the prior art in the final invalidity contentions. And so not all of that prior art in those invalidity contentions is necessarily reflected in the prosecution of the patents, of the patent in suit or the family, so again, it's not clear. You know, it sounds like during this conversation he's expanded it beyond just the prosecution now to their knowledge about specific pieces of prior art that may or may not have been contemplated during prosecution. So I -- I wanted to note that on topic 2.

On topic 10, Mr. Nelson mentioned that they really want to understand, again, what was known and disclosed or not disclosed and kind of the general practice of the attorneys involved in prosecution. And again, I think the topic itself, topic 10, does go beyond that. Right? Topic 10 is all practices of all attorneys regarding prosecutions and that could involve policies or practices involving when to

42

interview or whether they do an in-person or not in-person. There's a lot of policies or practices that individual attorneys may have and the topic again is not limited to what Mr. Nelson was stating during the argument as to what, what types of things Nvidia might want to ask about. And so again, in order to prepare any witnesses, we would need to know what practices and policies in particular for those attorneys involved in the prosecution of the asserted patent are at issue and the topic simply doesn't provide that level of specificity.

And then the last one I wanted to make with respect to topic 13, Nvidia has indicated that they have to assume that Knobbe is going to testify because Knobbe does not want to stipulate that they would not testify. And I think that's backwards. I think Nvidia has the burden of providing topics that are proportional to the needs of the case, that are relevant, that are proportional and that are stated with reasonable particularity. And if they haven't done so, you know, Knobbe does not have to

43

respond to those topics and also Knobbe does not have to agree not to testify at trial. We have noted on the record that we don't intend to present testimony at trial, but there's a lot of hypotheticals as to what could happen at trial that we can't necessarily anticipate at this point and so we're very hesitant to stipulate to something when Nvidia, particularly during the negotiations on these topics, was reluctant to provide any level of specificity on the particular allegations and I think still is lacking some particularity in terms of what they're really looking for. So I think it's improper to have Knobbe stipulate, make some kind of broad stipulation on something they won't do in the context of a hypothetical trial when Nvidia has been kind of hiding the ball on what they think ultimately may happen at trial and what their allegations may actually be. Plans to testify at trial, I don't think that's a fair assumption. Because we won't stipulate that we won't. I just don't think that's an appropriate approach to the topic.

I think Nvidia should be required

44

to serve topics with reasonable particularity, that are proper topics that can be responded to and they haven't done that.

THE COURT: Okay. And let's just talk briefly about the other two topics which are topics 3 and topic 8A. With regard to topic 3, I think I understand from the defendant's letter that's on the attachments why it is that MGT generally, the toolkit and the patents that describe it can be relevant and are relevant to the asserted patent and the origin of the inventions described therein. So my guess is on topic 3 it's just the word prosecution that -- my guess is you're not going to say MGT as a topic area is necessarily irrelevant, it's just the breadth of the word prosecution. Is that what you're saying?

MS. BURGESS: Your Honor, that's correct. And so in the underlying litigation the plaintiff, ACS, has provided discovery regarding the MGT product or I guess product development, and you know, produced the patent, but the prosecution of those patents, we simply don't understand and I don't think Nvidia has

45

1 really ever explained how the prosecution of
2 those patents relates to any issue in the case.
3 So Nvidia's justification is that there's a
4 statement by one of the named inventors that the
5 technology in the asserted patent is an
6 improvement to MGT, the MGT technology, but we
7 don't see how that justifies broad, undefined
8 discovery regarding the entirety of the
9 prosecution of the MGT patents.  I mean, there
10 certainly are other technologies out there that
11 the claimed inventions may improve upon, but I
12 don't think that makes the prosecution of any
13 patents related to any technology that the
14 invention may improve upon relevant and
15 proportional to this case.
16         THE COURT:  Okay.  And then with
17 regard to 8A, it looks like that -- and your
18 objection, it looks like that in another
19 proceeding, the plaintiff did say look, here are
20 certain facts that we think are actually
21 relevant to objective indicia or secondary
22 consideration.  Those facts we're putting out
23 there into the world, we think they're important
24 to that issue, they're known, so what if, if the

46

1 request was focused on the facts that plaintiff
2 had previously noted that it itself believed
3 were relevant to secondary consideration,
4 wouldn't that be a way of avoiding the concern
5 you raise in your letters about you having to
6 guess about, you know, making legal conclusions
7 about secondary considerations of what might be
8 relevant?
9         MS. BURGESS:  So Your Honor, I
10 don't disagree that some information regarding
11 the factual underpinning or secondary
12 considerations could be relevant, but if we're
13 talking about facts, number one, it's not clear
14 why these wouldn't be topics for the parties to
15 the litigation versus the attorneys representing
16 ACS.  You know, Knobbe Martens as the attorneys
17 representing ACS of course submit factual
18 information and legal arguments on behalf of
19 clients, but it's not clear how Knobbe, why
20 Knobbe as a law firm would be the appropriate
21 party to provide testimony regarding those
22 secondary considerations.  And it does appear to
23 require a level of legal analysis, even to
24 prepare somebody to respond, because it's

47

1 talking about any secondary considerations of
2 the asserted patent and any related patents.  So
3 we would have to then consider, okay, what other
4 possible secondary considerations information
5 would Knobbe have that is perhaps not in the IPR
6 information that we submitted and prepare
7 somebody on that.
8         THE COURT:  Ms. Burgess --
9         MS. BURGESS:  Because the topic is
10 not limited to just -- I'm sorry, go ahead.
11         THE COURT:  Ms. Burgess, at least
12 in your experience, have you seen a patent case
13 where outside of the inequitable conduct context
14 a party has sought deposition testimony from a
15 law firm who is in some way kind of related to
16 the patents in suit?  Like how rare do you think
17 this is?
18         MS. BURGESS:  Your Honor, I have
19 not been involved in any cases -- and I've been
20 involved in several -- responding to various
21 subpoenas of Knobbe because Knobbe does a lot of
22 patent prosecution, and I can't recall ever
23 being involved in a subpoena where they wanted
24 to, to get testimony from Knobbe essentially

48

1 regarding, regarding validity of the patents,
2 not just the prosecution of the patents.  And
3 I've never had a case where as litigation
4 counsel Knobbe has been subpoenaed to provide
5 testimony in a case based on their role as
6 litigation counsel in that case.  But I would
7 say it's rare from my personal experience.  I'm
8 not saying it doesn't happen, but I'm not aware
9 of it happening ever or frequently.
10         THE COURT:  Right.  I mean, again,
11 to me it seems like is it theoretically possible
12 that an attorney for, you know, who prosecuted
13 certain patents might have relevant information
14 about say a fact relating to secondary
15 considerations?  Seems like it's very possible.
16 Just don't know -- it does often seem like there
17 are other ways to get that info and I don't know
18 how often parties seek it through these means
19 and I guess that's what you're saying.  All
20 right.  Ms. Burgess, I want to try to conclude
21 so is there anything further on these two topics
22 before I turn back to Mr. Nelson?
23         MS. BURGESS:  Yeah.  So Your
24 Honor, your commentary did make me think of one

*Page 49*

thing. I have seen instances where during prosecution the prosecuting attorney has provided some secondary considerations type of information to the patent office to overcome a rejection. So, for example, I've seen, you know more statements by the invent -- sworn statements by the inventor to counsel in favor of permitting the claim. So I guess I can see a context where a prosecution attorney might have some information regarding secondary considerations of nonobviousness, but it doesn't sound like that's what Nvidia is looking for in this case. And so -- but I just wanted to amend, because I just thought of that.

THE COURT: Okay. Thank you. All right. Mr. Nelson, back to you. Just focusing on, again, to topic 3 and 8A, maybe starting with 3, is there more you can tell me about what in particular you're really likely to be focused on with these questions?

MR. NELSON: Yes, Your Honor. At the end of the day, the reason we are focused on this is to put it in perspective is, as you pointed out, the named inventor stated that this

*Page 50*

one specific piece of technology was a precursor to the technology claimed in the asserted patent. That's why we're so interested in this one particular piece of technology. And again, we're interested in -- there were numerous discussions had with the examiner during the prosecution. We're interested in several statements that were made in the patents and when they were added and whether or not they relate back to -- and when they relate back to some things. At the end of the day, there are several different aspects to the MGT patents that we're interested in.

THE COURT: Okay. And with regard to the secondary considerations, you have to try to convince me that, Judge, look, this is not an overly broad topic that requires Knobbe to draw some kind of legal conclusions about what might be relevant secondary considerations and what facts might possibly be asked about, but there's some more limited subset of information that you think the topic kind of more fairly calls for that they should be able to provide.

MR. NELSON: The things -- we're

*Page 51*

interested in -- yeah, to put it in perspective, we know that the two attorneys who were the prosecuting attorneys were also kind of like outside counsel in terms of their work related to licensing and other sorts of activities. We are interested in kind of whether or not the claims were -- I mean, in addition to being improvements upon it, were they improvements upon any other technology or allegedly improvements upon any other technology? Was there any skepticism? Were there people who were not skeptical. It's hard to say. I think one -- one theme that's kind of been throughout this conversation today is -- I think one of the main themes that have been going on, kind of the fear that Knobbe will not be prepared for the deposition. I think that is kind of the overarching theme that we've been having today. And the theoretical theme has been that they will not be prepared and that we will then seek to compel an additional deposition. And I think that theme has kind of permeated the conversation to the point that the concern is we want to narrow everything down to the point that

*Page 52*

they can specifically prepare Knobbe witnesses to answer exact questions, in other words, give Knobbe the road map of things that Nvidia wants to ask and then have them prepare on those specific individual items so that there's no chance of us moving to compel an additional deposition. I think that's a little unfair, given that, again, we have some thoughts, but it's hard for us to be able to fully explain everything without knowing what they're going to say.

Also, just -- I also just want to make clear that we are not seeking information from litigation counsel. We are seeking information solely from prosecution counsel. That seems to be a divide that has not been as clearly articulated as I hoped it would be.

THE COURT: Okay. All right. Thank you, Mr. Nelson. Counsel, I think I have enough. We've been going for a little over an hour. So let me go ahead and just give you a decision and also try to give you some guidance more broadly on this issue. And so because I'm going to provide a decision here, the transcript

53

of today's teleconference will serve as the substance of the Court's order.

And that is that with the caveat that I'll give give in just a second, I'm going to grant Knobbe's request for a protective order and to quash and deny the defendant's cross motion to compel the information contained in the rest of the disputed topics. Because, as they are currently written, I believe that the topics are overbroad and that they're breadth, in light of the burden that it would put on Knobbe to prepare witnesses to testify about them, would outweigh any prospect for obtaining relevant evidence that the topics might provide. And so I'm going to grant Knobbe's request and deny defendants.

That said, I believe for reasons I'll explain in just a moment, I think it's probably the case that were defendants to edit their rule 30(b)(6) subpoena and narrow it considerably, that they probably could make a case that some 30(b)(6) testimony with regard to a narrower group of topics could be both relevant to the claims and defenses at issue in

54

the case and proportional.

And so having said that, let me try to provide some additional guidance based on what I've heard from the parties. The first thing I'd say, as we noted in the letters, a theme of plaintiffs was that it's unusual for a party in defendant's shoes to be seeking the kind of information that's being sought in this subpoena and by the subpoena, by the way, I'm talking about the subpoena, rule 30(b)(6) subpoena found at exhibit 3 of plaintiff's initial letter, unusual for that type of information to be sought from a firm, a law firm that happened to be prosecution counsel in a case where as here, a claim of inequitable conduct, for example, is not currently pleaded and to me it seems unusual. I can't remember having dealt with it, especially so if two of the individual attorneys who spent the most time prosecuting the U.S. family at issue are going to testify anyway. It does seem unusual. I don't know that I've come across this kind of request. And I think it does create real burdens for Knobbe. There are some number of

55

other lawyers, sounds like less than 10, but more than just a few who may have worked on prosecution here and there's efforts that have to be undertaken to make sure that the collective knowledge of all those people, even if the subpoena is narrowed to just those people, which I think it would be, it's fairly provided. And the broader that the topics are, the greater that burden. Even though it's unusual and as written would be burdensome, I can't say it's improper or impossible that rule 30(b)(6) subpoena of the prosecuting firm in a case like this couldn't be appropriate if it was narrowly tailored to get to relevant evidence. It does strike me that prosecuting attorneys, other than the two that spent the most time on prosecution, could have knowledge of relevant facts relating to claims or defenses at issue in the case, particularly as to the asserted patent. And it's possible that, you know, the questions about those facts may not necessarily be, been withheld via privilege assertion. And so I think it's possible to reframe the subpoena. It's just that as it currently

56

stands, I think it's an unusual subpoena that is too overbroad.

In terms of the particular topics we discussed, just a few notes. Topic 2, I agree with plaintiff that reference to the prosecution writ large of these seven patents or patent applications seems overbroad. In discussion today it sounds as if the defendant's side is interested in particular aspects, quote unquote, of that prosecution history, perhaps including having the deponents be knowledgeable about the file history. There may be ways to narrow that topic that renders it non-objectionable.

When we went to topic 9, which again, as plaintiff I think rightly notes, I say plaintiff, but I mean Knobbe rightly notes, calls for the witnesses to be prepared about all prior art in any way related to any of these seven patents or patent applications, that is very broad. In discussion here today it sounds like the defendant's side may be particularly focused on 10 to 15 pieces of prior art or asserted prior art that they think are relevant

57

1  to the claims or defends at issue in the case.
2  That could be a different story.
3         Topic 10, I'm not sure how
4  Knobbe's practices or policies regarding
5  prosecution are relevant to what's in the case
6  right now. I'm not sure that I heard a great
7  explanation on today's call. It could be that
8  they are, but hard for me to say.
9         And with regard to topic 13, there
10 I don't think what I've heard today suggests
11 that topic is relevant. In fact, when I asked
12 about relevance, defendant's side simply said
13 well, we're asking about it simply because the
14 plaintiffs haven't told us they won't testify
15 about it. That's really not a good assertion as
16 to relevance.
17        With regard to topic 3, as I've
18 suggested on the call, from what I understand I
19 do think there are facts related to MGT and
20 probably related to the patents that incorporate
21 MGT and its technology. That could be relevant
22 to the inventions related to the asserted patent
23 and/or claims and -- claims or defenses at issue
24 in this case. I'm not sure that every fact

58

1  relating to the prosecution of the MGT patents
2  writ large is still relevant. And again, I
3  think there may be subcategories of this
4  information that on our call today the defense
5  has said they're really after that might be a
6  way to really narrow this request that could
7  make the subpoena make sense.
8         Similarly as to secondly
9  considerations, I think again, it may be
10 possible that as to particular facts that have
11 been cited in the past by plaintiffs as being
12 assertedly relevant to that subject matter, if
13 the topic was narrowed to focus on those
14 particular facts, again, there may be a way to
15 frame this topic in a way that can survive
16 objection.
17        So it's all to say that for now
18 I'm granting Knobbe's motion and denying
19 plaintiff's. I'm sorry, denying defendant's
20 motion. I'm suggesting that defendants may want
21 to think about significantly narrowing the
22 topics at issue and providing a revised proposed
23 subpoena and I would really suggest that the
24 parties maybe do some meeting and conferring

59

1  before that happens so that they can try to work
2  out a sufficiently narrowed set of topics that
3  could make sense here.
4         Lastly, I'll just say, I agree
5  with defendants that, you know, it's not right
6  to make one side give up an absolute detailed
7  road map of all the questions they're going to
8  ask during a rule 30(b)(6) deposition, but
9  there's also a happy medium between the breadth
10 of the subpoena here and something that is
11 actually appropriately tailored to get to
12 relevant information in a non-burdensome way.
13 And I think in order to hit that middle ground,
14 defendants are going to have to provide at least
15 some more specific information about the topics
16 they're interested in, even if it doesn't amount
17 to a detailed road map of all the questions
18 they're going to have.
19        With all that said, we've been
20 going for about an hour and 20 minutes and we
21 need to end our call. I think I've resolved the
22 motions for now, provided as much guidance as I
23 can to the parties about what will happen in the
24 future.

60

1         The only other thing I would add
2  to the parties' benefit as the parties have
3  seen, I recently issued an order resolving a
4  number of disputes that have cropped up in the
5  case in the last couple of months. Going
6  forward if there are further disputes that can't
7  be resolved, I'll hear argument about those in
8  court. I do that because in cases like this
9  where there is now quite a large number of
10 disputes that have been presented, it does raise
11 concerns with the Court about whether the
12 parties really are sufficiently meeting and
13 conferring before bringing issues to the Court.
14 That said, I'll also tell you that I'm doing
15 that for your benefit as well, because in cases
16 in which Judge Noreika is involved and this one
17 in which I've worked on in the past, if the
18 parties don't do a better job of kind of
19 appropriately focusing on what issues you really
20 need to be brought and what don't, I have seen
21 instances where the parties continue to abuse
22 the discovery dispute process and that results
23 reducing the parties' trial time if they were to
24 put forward discovery disputes at that stage and

61

1 lose.  So I'm trying to kind of gently give you
2 the hint that something is starting to seem a
3 bit out of whack in terms of the shear number of
4 discovery disputes that I'm seeing and to try to
5 help you make sure that on the one hand the
6 Court can be here to resolve the disputes that
7 really need resolving, but on the other hand
8 that things don't get so out of control that
9 ultimately it hurts your ability to present your
10 case going forward.  So do with that information
11 what you will.
12          All right, counsel, with all that
13 said, unless there's anything further and maybe
14 I'll pause just to ask is there anything I need
15 to clarify procedurally before we end our call
16 today on plaintiff's side, Ms. Burgess?
17          MS. BURGESS:  No, Your Honor.
18 Thank you.
19          THE COURT:  Okay.  On defendant's
20 side, Mr. Nelson?
21          MR. NELSON:  Two quick points of
22 clarification, if I could, Your Honor.  Firstly,
23 just -- I just want to ask, I understand you're
24 saying you're basically saying please re-serve

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

62

1 the subpoena with more specific topics.  Is that
2 kind of what you're basically ordering or you're
3 suggesting?  I just wanted to clarify that.
4          THE COURT:  Sure.  I mean, what
5 I've ordered is that the subpoena has been
6 quashed.  A protective order has been issued.
7 This subpoena that's in exhibit 3 before me,
8 it's a nullity.  It will not be utilized to
9 obtain testimony.  It is significantly
10 overbroad.  It should have never been issued in
11 the way it was issued.  And it has --
12 unfortunately that overbreadth has created a lot
13 of litigation that ultimately has involved the
14 Court's time.  So where we currently stand is
15 that that subpoena is a nullity, but what I'm
16 suggesting is that the defendant might be able
17 to submit another subpoena to Knobbe that
18 revises the proposed topics here to make it much
19 more sensible, in a way that even if Knobbe did
20 object, what might ultimately permit testimony
21 on a 30(b)(6) basis.  And I'm trying to give you
22 some, some hints as to how it is that you might
23 do that in a way that could both ultimately
24 allow the defendant to obtain some of this

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

63

1 testimony and ideally to do so in a way that
2 doesn't involve the Court any further.  So I
3 mean, that was my intent.  Is there anything
4 about that that is unclear?
5          MR. NELSON:  No.  I just wanted to
6 clarify that?  Did that make sense, Your Honor?
7 The only concern I have, Your Honor, is I
8 understand what Your Honor was saying regarding
9 specific pieces of prior art.  My only concern
10 is topic 12 calls out one of those specific
11 pieces of prior art and Your Honor granted the
12 request to quash number 12.  Is there a way we
13 could ask about prior art that Your Honor would
14 think would be more suited, because I'm
15 concerned if we were to specifically list out
16 the prior art under topic 9, we would run into
17 the same problem that we ran into with topic 12?
18          THE COURT:  Well, what I would
19 offer you is that topic 12, at least the way it
20 was -- the way it was phrased and in conjunction
21 with topic 11, appeared to the Court to be
22 written in a way that it could broadly ask for
23 information about a general subject matter area
24 that in some way relates to computing, as

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

64

1 opposed to some much more particularized issue
2 that may have relevance to the claims or
3 defenses at issue in the case.  If there is a
4 piece of prior art that in some way is related
5 to SSTW that is asserted, you know, to be
6 relevant to the invalidity case here and that
7 defendants could demonstrate that, it's possible
8 that that could be a more particularized subject
9 matter that could be appropriate.  So the point
10 of the Courts's order as to the way topics 11
11 and 12 appeared to be framed, they appeared to
12 be broad references to broad categories of
13 general information about computer related
14 topics.  Which is, seems unusual and not
15 particularly helpful.  So that's what I was
16 intending to signal with my prior order.
17          MR. NELSON:  Understood, Your
18 Honor.  Thank you for the clarification.
19          THE COURT:  Okay.  All right.
20 Thanks, counsel.  Wish everybody continued
21 health and safety and we'll go off the record
22 and end our teleconference today.  Take care.
23          (End at 3:26 p.m.)
24

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

```
 1   State of Delaware)
                     )
 2   New Castle County)

 3
 4
 5           CERTIFICATE OF REPORTER
 6
 7         I, Stacy M. Ingram, Certified Court Reporter
 8   and Notary Public, do hereby certify that the
 9   foregoing record, Pages 1 to 65 inclusive, is a true
10   and accurate transcript of my stenographic notes
11   taken on October 11, 2022, in the above-captioned
12   matter.
13
14         IN WITNESS WHEREOF, I have hereunto set my
15   hand and seal this 11th day of October 2022, at
16   Wilmington.
17
18
19          /s/ Stacy M. Ingram
20           Stacy M. Ingram, CCR

21
22
23
24
                  Hawkins Reporting Service
         855 Arthursville Road   Hartly, Delaware  19953
               (302) 658-6697  FAX (302) 658-8418
```