## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| APPLE INC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1377 (MN) (JLH) |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **REDACTED - PUBLIC VERSION** |
| Defendants. | |
| APPLE INC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1378 (MN) (JLH) |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| Defendants. | |

### LETTER TO THE HONORABLE JENNIFER L. HALL FROM JOHN C. PHILLIPS, JR.

Dated:  October 25, 2023

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
Telephone: (302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Defendants*

Dear Judge Hall:

Masimo is pursuing narrowly tailored discovery from Apple's outside Patent and Trademark Office counsel directly relevant to Masimo's pleaded inequitable-conduct theories. Masimo seeks facts concerning individuals' awareness of prior art not disclosed to the PTO and the process by which Apple and its PTO counsel gathered materials to disclose to the PTO. This information is not privileged. *See In re Minebea Co.*, 143 F.R.D. 494, 502–03 (S.D.N.Y. 1992). Yet Apple's PTO counsel refuse to provide *any* discovery and ask the Court to quash Masimo's subpoenas in their entirety. The Court should deny PTO counsel's motion to quash.

> ### A.     Apple's PTO counsel predicate their motion on the false premise that discovery on inequitable conduct can be requested only from those accused of committing the misconduct.

PTO counsel make great effort to emphasize that Masimo has not accused them of inequitable conduct. That is not in dispute, but it does not decide the issue.

Masimo contends Apple's in-house counsel and named inventors committed fraud before the PTO. For example, Masimo contends that, when prosecuting Apple's own patents, Apple's in-house counsel withheld material prior art from the PTO. Why does Masimo think Apple was aware of this prior art? Because Apple previously cited the same prior art in *inter partes* review (IPR) proceedings challenging Masimo's patents. Fish & Richardson, one of the movants here, handled those IPR proceedings for Apple. Masimo now seeks discovery from Fish & Richardson narrowly tailored to questions such as (1) which Apple in-house counsel were aware of the IPRs and (2) what, if anything, did Fish & Richardson do to assist Apple in gathering information relating to the IPRs for disclosure to the PTO during prosecution of Apple's patents. *See* Ex. A at 2–3. That information from outside counsel is fundamentally probative of whether Apple's in-house counsel knowingly withheld the IPR prior art when prosecuting Apple's own patents.

The relevance of that information does not depend on whether Fish & Richardson attorneys stand accused of inequitable conduct themselves. Apple implausibly asserts its in-house counsel were unaware of the key prior art cited in the IPRs. Masimo is entitled to test that assertion by taking targeted discovery of those who worked on the IPRs.

Similarly, movants Brownstein Hyatt and Sterne Kessler prosecuted the asserted Apple patents. Masimo seeks discovery from them tailored to questions such as (1) which Apple in-house counsel were involved in or otherwise aware of the prosecution of those patents and (2) the process for collecting and identifying materials to disclose to the PTO. *See* Ex. A at 1–2. This information is directly relevant to whether Apple's in-house counsel committed inequitable conduct. For example, it will shed light on the role Apple's Chief IP Counsel played in prosecution. Likewise, discovery relating to outside PTO counsel's process for collecting materials to disclose to the PTO is relevant to show whether Apple withheld information from its outside counsel so that they in turn would not disclose it to the PTO. Once again, whether Brownstein Hyatt or Sterne Kessler attorneys are themselves accused of inequitable conduct does not change the relevance of this discovery.

PTO counsel rest their motion on the false premise that it is improper to take inequitable-conduct discovery from anyone but those accused of misconduct. Their motion fails on this ground.

The Honorable Jennifer L. Hall                                                                    2
October 25, 2023

      **B.**     **Masimo does not seek privileged information; and to the extent any responsive information is arguably privileged, that is no reason to quash the subpoenas.**

As the parties seeking to quash, Apple and its PTO counsel bear the burden of demonstrating that the subpoenas require disclosure of privileged materials.[1] *Robocast, Inc. v. Microsoft Corp.*, No. 1:13-MC-00104-RGA, 2013 WL 1498666, at *1 (D. Del. Apr. 12, 2013).

Apple and its PTO counsel have not met their burden. They identify only two requests as supposedly seeking privileged information. They characterize the first as a request for "'determinations relating to what to disclose and not disclose' to the PTO (RFP 3 [sic: 2])." Opening Ltr. Br. 2. Movants misidentify the first request: it is RFP 2, not 3. And they omit the leading phrase: "Documents relating to . . . ." Masimo does not seek privileged communications in which counsel analyze and decide what to disclose. Masimo seeks documents relating to those determinations, such as documents evidencing what prior art Apple's counsel possessed or was aware of and what they chose to disclose. Movants focus on just one part of a request, when the request overall seeks information about Apple's "efforts to comply with the duty to disclose." That information is not inherently privileged. *E.g.*, *In re Minebea*, 143 F.R.D. at 502 (attorney–client privilege does not necessarily protect attorney–client communications of information intended to be disclosed to the PTO).

Apple's objections ring hollow considering Apple subpoenaed Knobbe Martens with an even broader request. Apple requested "all documents relating to [Knobbe's] efforts to comply with the duty to disclose information material to the patentability under 37 C.F.R. § 1.56 during the prosecution of each Masimo Asserted Patent and Related Masimo Publications, including without limitation your *determinations relating to what to disclose and not disclose to the Patent Office during these prosecutions*." Ex. B Sched. A at 7 (RFP 2, cleaned up). Not only does Apple use the same language it now objects to, Apple drafted its request to apply to all Masimo Asserted Patents *plus* unasserted patent applications. Knobbe Martens agreed to provide discovery responsive to Apple's request, yet Apple is directing its counsel to resist a narrower reciprocal request.

The second request movants challenge is deposition topic 3. That topic applies only to Brownstein Hyatt and Sterne Kessler and covers the reasons prior art or other material information was or was not disclosed to the PTO. Ex. A at 3 (dropping topic 3 for Fish & Richardson and Smith). If materials were not disclosed to the PTO because Apple did not make its PTO counsel aware of them, that fact is not privileged and Masimo is entitled to know it.

And again, Apple's objections ring hollow considering Apple subpoenaed Knobbe Martens for testimony on topics like "[Knobbe's] determinations relating to what to disclose and not disclose to the Patent Office during prosecution of each of the Masimo Asserted Patents and Related Masimo Publications" (topic 3) and the "reasons why [references] were not disclosed to the Patent Office during prosecution of [a Masimo patent]" (topics 6 and 7). Ex. B Sched. A at 9. Once again, Knobbe Martens agreed to provide discovery responsive to Apple's request, yet Apple's PTO counsel refuses to provide *any* discovery responsive to Masimo's request.

---

[1] Apple has standing to challenge the subpoenas only on the ground of privilege. *See Green v. Cosby*, 314 F.R.D. 164, 173 (E.D. Pa. 2016).

The Honorable Jennifer L. Hall                                                    3
October 25, 2023

Movants identify no other requests calling for privileged information.  And even if they had identified any valid privilege concerns, quashing would not be the answer.  Given the narrowed subpoenas' tight focus on nonprivileged information, any privilege concerns can be raised "at the time of the deposition and the production of the documents."  *Robocast*, 2013 WL 1498666, at *2.

**C.      Apple has failed to cooperate in discovery, and even if it had cooperated, that would not be grounds for quashing the subpoenas.**

For their final argument, Apple's PTO counsel suggest the Court should quash the subpoenas because Masimo has sought the same discovery from Apple and Apple is supposedly cooperating.  But Apple has failed to provide complete and meaningful responses to Masimo's discovery.  For example, even after the Court ordered Apple to respond to Masimo's interrogatory 25 and identify persons who were aware of the references that were not disclosed to the PTO, Sept. 1, 2023 Tr. 10:25–11:2, Apple ████████████████████████████████████████ ██████████████████████████████████████  Ex. C.  Moreover, interrogatory 25 asks Apple to explain how those persons became aware of the references, but Apple has failed to do so.  *Id.* Similarly, Masimo's interrogatory 26 asked Apple to explain in detail the processes used to identify references and information to disclose to the PTO, including how information is shared between different law firms and different proceedings (such as IPRs) and why those processes did not result in the disclosure of the relevant references and information during prosecution of the patents Apple asserts against Masimo.  Ex. D at 7.  Apple provided a paltry response with no details and no explanation of why the relevant materials were not disclosed to the PTO.  Ex. E at 30–31.

Even if Apple were fully cooperating in discovery, Masimo would still be entitled to test Apple's assertions and explanations with discovery from Apple's PTO counsel.  Apple's PTO counsel have identified no undue burden.  And although they are third parties, they are not independent third parties with no connection to this action.  They are Apple's counsel, coordinating with Apple and using Apple's counsel of record to represent them.  Under these circumstances, their status as third parties is unavailing.

**D.      Movants' refusal to provide any discovery is at odds with Apple's subpoena to Knobbe Martens.**

Apple subpoenaed Knobbe Martens and Masimo's trial counsel Steve Jensen with a broader set of document requests and deposition topics.  Though it objected to the breadth of Apple's subpoenas, Knobbe offered to provide much of the requested discovery.  (See Knobbe's October 23 letter brief on its motion to quash.)  Meanwhile, Apple has directed its PTO counsel to refuse *any* discovery on Masimo's subpoenas, which were narrower to begin with and which Masimo has since narrowed even further.  Ex. A.  The Court should reject Apple's double standard.

Respectfully submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (#110)

cc:      All counsel of record (via Email & CM/ECF)

The Honorable Jennifer L. Hall                                                                    4
October 25, 2023

**Table of Exhibits**

| Ex. | Description |
|-----|-------------|
| A | September 20, 2023 letter from Masimo to Apple's PTO Counsel |
| B | Apple's subpoena to Knobbe Martens |
| C | Apple's supplemental response to Masimo's interrogatory 25 |
| D | Masimo's fourth set of interrogatories to Apple (24–28) |
| E | Apple's response to Masimo's interrogatory 26 |

# EXHIBIT A

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Mark Lezama
mark.lezama@knobbe.com

September 20, 2023

VIA EMAIL

Jordan Malz
Desmarais LLP
230 Park Avenue, 26th Floor
New York, NY 10169

Re:     *Apple Inc. v. Masimo Corp.*, Nos. 22-1377, -1378

Dear Jordan:

Thank you for conferring Friday regarding Apple's subpoenas to Knobbe Martens and Masimo's subpoenas to Brownstein Hyatt, Sterne Kessler, Kilpatrick Townsend, Fish & Richardson, and former Fish attorney Dan Smith.

As an attempt to narrow the parties' issues and avoid a dispute, we are narrowing the subpoenas to Brownstein, Sterne Kessler, Fish, and Mr. Smith as follows:

**Brownstein**     We are narrowing RFPs 1–3 and 7 and deposition topics 1–5 (1) by narrowing "Undisclosed References" to Kotanagi (WO 2005/092182), Tanagi (JP Pub. No. 2005-270543), and Shmueli (WO 2012/140559), whether or not identified by the listed publication numbers (thus including, e.g., national phase applications), and (2) by narrowing "Relevant Apple Patents" to the Accused Apple Patents that Brownstein worked on, including the Accused Apple Utility Patents.

We are further narrowing RFP 3 to documents sufficient to identify which Relevant Apple Lawyers were aware of the preparation, filing, or prosecution of any Relevant Apple Patent.

We are further narrowing RFP 7 to documents showing any Relevant Apple Lawyer was aware of any Undisclosed Reference.

We are dropping RFPs 4–6 and 8–10.

We are narrowing deposition topic 2 to the Relevant Apple Patents (as narrowed above). To be clear, deposition topic 2 and RFP 2 include the process for collecting and identifying information to disclose.

We are further narrowing deposition topic 3 to the reasons the Undisclosed References were or were not disclosed to the PTO during the prosecution of each Relevant Apple Patent.

We are further narrowing deposition topic 4 to Jeffrey Myers's awareness of the preparation, filing, or prosecution of any Relevant Apple Patent.

We are further narrowing deposition topic 5 to the identities of all persons working at Apple or working at Brownstein on any Relevant Apple Patent who were aware of any Undisclosed Reference or Relevant IPR during the prosecution of any Relevant Apple Patent and how they became aware.

# Knobbe Martens

We are narrowing deposition topic 8 to authentication.

We are dropping deposition topics 6 and 7.

**Sterne Kessler**   We are narrowing RFPs 1–3 and 7 and deposition topics 1–5 (1) by narrowing "Undisclosed References" to the Apple Utility References, whether or not identified by the listed application, publication, or patent numbers, and (2) by narrowing "Relevant Apple Patents" to the Accused Apple Patents that Sterne Kessler worked on, including the Accused Apple Design Patents.

We are further narrowing RFP 3 to documents sufficient to identify which Relevant Apple Lawyers were aware of the preparation, filing, or prosecution of any Relevant Apple Patent.

We are further narrowing RFP 7 to documents showing any Relevant Apple Lawyer was aware of any Undisclosed Reference.

We are dropping RFPs 4–6 and 8–10.

We are narrowing deposition topic 2 to the Relevant Apple Patents (as narrowed above). To be clear, deposition topic 2 and RFP 2 include the process for collecting and identifying information to disclose.

We are further narrowing deposition topic 3 to the reasons the Undisclosed References and Undisclosed Information were or were not disclosed to the PTO during the prosecution of each Relevant Apple Patent.

We are further narrowing deposition topic 4 to Jeffrey Myers's awareness of the preparation, filing, or prosecution of any Relevant Apple Patent.

We are further narrowing deposition topic 5 to the identities of all persons working at Apple or working at Sterne Kessler on any Relevant Apple Patent who were aware of any Undisclosed Reference or Undisclosed Information during the prosecution of any Relevant Apple Patent and how they became aware.

We are narrowing deposition topic 8 to authentication.

We are dropping deposition topics 6 and 7.

**Fish & Richardson and Mr. Smith**   We are narrowing RFPs 2 and 7 and Fish & Richardson deposition topics 2 and 5 (1) by narrowing "Undisclosed References" to Kotanagi (WO 2005/092182), Tanagi (JP Pub. No. 2005-270543), and Shmueli (WO 2012/140559), whether or not identified by the listed publication numbers (thus including, e.g., national phase applications), and (2) by narrowing "Relevant Apple Patents" to the Accused Apple Utility Patents.

We are further narrowing RFP 2 to documents relating to assisting Apple (including its other outside counsel) in its efforts to comply with the duty to disclose information material to the patentability under 37 C.F.R. § 1.56 during the prosecution of each Relevant Apple Patent, including the process for collecting and identifying information relating to the Relevant IPRs to disclose.

# Knobbe Martens

We are further narrowing RFP 3 to documents sufficient to identify which Relevant Apple Lawyers were aware of any Relevant IPR.

We are further narrowing RFP 7 to documents showing any Relevant Apple Lawyer was aware of any Undisclosed Reference.

We are dropping RFPs 1, 4–6, and 8–9. For Mr. Smith, we are also dropping RFP 10.

For Fish & Richardson: We are further narrowing deposition topic 2 to assistance to Apple (including its other outside counsel) in its efforts to comply with the duty to disclose information material to the patentability under 37 C.F.R. § 1.56 during the prosecution of each Relevant Apple Patent, including the process for collecting and identifying information relating to the Relevant IPRs to disclose.

We are narrowing deposition topic 4 to Jeffrey Myers's awareness of or involvement in the preparation, filing, or prosecution of any Relevant IPR.

We are narrowing deposition topic 5 to identities of all persons working at Apple who—in connection with Fish & Richardson's work on the Relevant IPRs—were aware of any Undisclosed Reference or Relevant IPR during the prosecution of any Accused Apple Patent and how they became aware.

We are narrowing deposition topic 8 to authentication.

We are dropping deposition topics 1, 3, and 6–7.

If those firms and Mr. Smith provide the requested discovery, we would be willing to drop the Kilpatrick subpoena. Please let us know when you are available to further confer, if necessary, on Masimo's subpoenas, as well as Apple's subpoenas to Knobbe Martens.

Sincerely,

Mark Lezama

# EXHIBIT B

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Delaware

| | | |
|---|---|---|
| APPLE INC., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-1378-MN-JLH |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Knobbe, Martens, Olson & Bear, LLP
          c/o Jared Bunker, Esq., 2040 Main Street, 14th Floor, Irvine, California 92614
          *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A attached hereto.

| Place: Regus Conference Center<br>445 S. Figueroa Street, Suite 2600 & 2700<br>Los Angeles, CA  90071 | Date and Time:<br>09/18/2023 10:00 am |
|---|---|
| The deposition will be recorded by this method:   Stenographically, audiotaped, and videotaped | |

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule A attached hereto. Documents to be produced on or before September 6, 2023, to:
          Jordan N. Malz, Desmarais LLP, 230 Park Avenue, New York, NY 10169
          jmalz@desmaraisllp.com

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          08/18/2023

CLERK OF COURT
                                                                    OR
                                                                    /s/ Jordan N. Malz
_____                    _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiff Apple Inc.
_____, who issues or requests this subpoena, are:
Jordan N. Malz | Desmarais LLP | 230 Park Ave., New York, NY 10169 | 212-351-5497 | jmalz@desmaraisllp.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   22-1378-MN-JLH

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any Definition, Instruction, Request for Production, or Deposition Topic.

1.　As used herein, the terms "Knobbe," "You," or "Your" means Knobbe, Martens, Olson & Bear, LLP and all of their predecessors (merged, acquired, or otherwise), successors, subsidiaries, divisions, departments, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

2.　As used herein, "Apple" means Apple Inc., all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, divisions, departments, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

3.　As used herein, "Masimo" means Masimo Corporation and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

4.　As used herein, "Sound United" means Sound United, LLC (a/k/a Masimo Consumer) and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

5.　As used herein, "Cercacor" means Cercacor Laboratories Inc. and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

6.      As used herein, "Masimo Asserted Patents" means U.S. Patent No. 10,687,743 ("the '743 Patent"), U.S. Patent No. 10,722,159 ("the '159 Patent"), U.S. Patent No. 8,190,223 ("the '223 Patent"), U.S. Patent No. 10,736,507 ("the '507 Patent"), and U.S. Patent No. 10,984,911 ("the '911 Patent").

7.      As used herein, "Related Masimo Publications" means any patent, patent application, or patent application publication in the same patent family as any of the Masimo Asserted Patents, including any patent in the priority chain of the Masimo Asserted Patents, and all patent applications related to the Masimo Asserted Patents and any patents in the same family as any of the Masimo Asserted Patents, including any patent application in the priority chain of the Masimo Asserted Patents.

8.      As used herein, "Patent Office" means the United States Patent and Trademark Office.

9.      As used herein, "Inequitable Conduct References" means all references that are the subject of Apple's inequitable conduct allegations in this case, including without limitation (1) U.S. Pub. No. US2011/0004106 to Iwamiya et al.; (2) U.S. Patent No. 6,801,799 to Mendelson; (3) U.S. Patent No. 6,343,223 to Chin et al.; (4) U.S. Patent No. 5,099,842 to Mannheimer et al.; (5) U.S. Patent No. 6,580,086 to Schulz et al.; (6) U.S. Patent No. 6,816,241 to Grubisic; (7) U.S. Patent No. 5,782,756 to Mannheimer; (8) U.S. Patent No. 5,638,816 to Kiani et al.; (9) U.S. Patent No. 5,203,329 to Takatani et al.; (10) Nellcor pulse oximeter products, including the NPB-195, N-395, and OxiMax N-595 products; (11) Mendelson et al., "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Proceedings of the 28th IEEE EM BS Annual International Conference, August 30-September 3, 2006 ("Mendelson IEEE"); and (12) any other

references that Apple contends were withheld or the subject of "burying" in its response to Your Interrogatory No. 23 (*see* Ex. 1).

10.      As used herein, "Medtronic" means Medtronic PLC, Covidien, Nellcor Puritan Bennett Inc., Mallinckrodt Inc., and all of their predecessors (merged, acquired, or otherwise), successors, subsidiaries, divisions, departments, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

11.      As used herein, "Nellcor Prior Art Products" refers to all pulse oximeter and/or watch products made or sold by Medtronic before September 22, 2020. By way of example and not limitation, "Nellcor Prior Art Products" includes (1) all versions of Nellcor OxiMax pulse oximetry sensors, including without limitation all versions of the Nellcor OxiMax sensors such as those described in Exhibits 2 and 3, such as the Nellcor DS-100A; (2) the Nellcor N-595 Pulse Oximeter (*see, e.g.*, Ex. 2); (3) the Nellcor N-395 Pulse Oximeter, including without limitation the Nellcor N-395 Pulse Oximeter Masimo accused of infringement in at least *Masimo Corp. v. Mallinckrodt Inc., et al*, 8:99-cv-01245 (CDCA) (*see also Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 164 (Fed. Cir. 2005)); (4) the Nellcor NPB-195 Pulse Oximeter (*see, e.g.*, Ex. 4); (4) the Nellcor N-3000 (*see, e.g.*, Ex. 5); (5) the Nellcor Oxinet II Monitoring System (*see, e.g.*, Ex. 6); (6) the Nellcor Oxinet III Monitoring System (*see, e.g.*, Ex. 7); and (7) the Nellcor NPB-295 Monitor.

12.      As used herein, the term "document" shall have the full meaning ascribed to it by the Federal Rules of Civil Procedure and includes the original and every non-identical copy or reproduction in Your possession, custody, or control, and further is used in a broad sense to refer to any electronically stored information ("ESI") or any tangible object or thing that contains, conveys, or records information.

13.     As used herein, the singular of any word shall include the plural, and the plural shall include the singular.

14.     As used herein, "person" means any natural person or any business, legal, or governmental entity or association.

15.     As used herein, "include" and "including" shall be construed to mean "without limitation," so as to give the broadest possible meaning to interrogatories and definitions containing those words.

16.     As used herein, "and" and "or" shall be construed conjunctively and disjunctively so as to acquire the broadest meaning possible.

17.     As used herein, "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest meaning possible.

18.     As used herein, the singular of any word shall include the plural, and the plural shall include the singular.

19.     As used herein, "related" or "relating" to any given subject means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to, in any way, the particular subject matter identified.

20.     As used herein, "identify" as applied to a document shall mean to specify: (a) the type of the document (i.e., whether it is a letter, memorandum, e-mail, etc.); (b) the document's title and general subject matter; (c) the number of pages of the document; (d) the date the document was prepared; (e) the name of each and every author, addressee, distributor, and recipient of the document; (f) the date each distributor distributed the document and the date each recipient

received the document; and (g) the name of each person that has or had possession, custody, or control of the document.

21.     Any term not specifically defined herein shall be defined in accordance with normal usage as well as with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware.

## <u>INSTRUCTIONS FOR REQUESTS FOR PRODUCTION</u>

1.      Apple's Requests for Production seek responsive documents and information sufficient to answer each of the Requests that are known or available You or in Your possession, custody, or control. If, after exercising due diligence to secure the documents or information requested, You cannot fully respond to a Request for Production, state that such is the case and answer to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, why the documents or information are unavailable, and what efforts were made to obtain the unavailable documents or information. If documents or information responsive to a Request in this subpoena are in Your control, but not in Your possession or custody, promptly identify the entity with possession or custody.

2.      Regardless of whether a production is in electronic or paper format, documents that were maintained together before production should be produced in the same form, sequence, organization, or other order or layout as they were maintained, including any labels, file folders, file jackets, covers, or containers in which such documents are located or with which such documents are associated. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

3.      These Requests for Production shall be deemed continuing. Documents located, and information learned or acquired, at any time after Your response is due must be promptly supplemented at the place specified in this subpoena.

4.      A copy of the Protective Order entered in this Action for the protection of any requested proprietary, confidential, or commercially sensitive information is attached hereto.

## REQUESTS FOR PRODUCTION

1.      All documents referring or relating to the preparation, filing, and/or prosecution of each of the Masimo Asserted Patents, U.S. Patent No. 10,687,745, and the other Related Masimo Publications.

2.      All documents relating to Your efforts to comply with the duty to disclose information material to the patentability under 37 C.F.R. § 1.56 during the prosecution of each Masimo Asserted Patent and Related Masimo Publications, including without limitation your determinations relating to what to disclose and not disclose to the Patent Office during these prosecutions.

3.      All documents referring, relating to, or showing any awareness or involvement in the preparation, filing, and/or prosecution of each of the Masimo Asserted Patents, U.S. Patent No. 10,687,745, and the other Related Masimo Publications by Joe Kiani, Stephen Jensen, Harnik Shukla, and/or Jarom Kesler.

4.      All documents referring or relating to each Inequitable Conduct Reference, including without limitation all documents referring to, relating to, or showing any awareness of the Inequitable Conduct References by Joe Kiani, Stephen Jensen, Harnik Shukla, and/or Jarom Kesler.

5.      All documents referring or relating to any involvement in *Mallinckrodt, Inc. v. Masimo Corp.*, No. 2:00cv-06506 (C.D. Cal.); *Masimo Corp. v. Mallinckrodt Inc.*, Nos. 8:01-cv-00638 & 2:01-cv-07292 (C.D. Cal.); *Nellcor Puritan, et al. v. Masimo Corp.*, Nos. 8:02-cv-01133 & 2:03-cv-00603 (C.D. Cal.) by Joe Kiani and Stephen Jensen, including without limitation all declarations, affidavits, transcripts of testimony, and other submissions provided by or referring to Mr. Kiani or Mr. Jensen.

6.      All documents relating to whether any Nellcor Prior Art Products infringe any Masimo, Cercacor, or Sound United Patent, including without limitation all infringement contentions in the following litigations: *Mallinckrodt, Inc. v. Masimo Corp.*, No. 2:00cv-06506 (C.D. Cal.); *Masimo Corp. v. Mallinckrodt Inc.*, Nos. 8:01-cv-00638 & 2:01-cv-07292 (C.D. Cal.); and *Nellcor Puritan, et al. v. Masimo Corp.*, Nos. 8:02-cv-01133 & 2:03-cv-00603 (C.D. Cal.).

7.      All communications with Masimo, Cercacor, and/or Sound United regarding the Masimo Asserted Patents and Related Masimo Publications.

8.      All documents referring or relating to any search results, including patentability, validity, prior-art, infringement, or state-of-the-art searches, concerning the Masimo Asserted Patents and Related Masimo Publications.

9.      All agreements between You (including Stephen Jensen) and Masimo, Cercacor, and/or Sound United.

**DEPOSITION TOPICS**

1.     The preparation, filing and prosecution of each of the Masimo Asserted Patents, U.S. Patent No. 10,687,745, and the other Related Masimo Publications, including without limitation the identity of all individuals involved in these prosecutions.

2.     Your efforts to comply with the duty to disclose information material to the patentability under 37 C.F.R. § 1.56 during the prosecution of each Masimo Asserted Patent and Related Masimo Publications, including without limitation your determinations relating to what to disclose and not disclose to the Patent Office during these prosecutions.

3.     Your determinations relating to what to disclose and not disclose to the Patent Office during prosecution of each of the Masimo Asserted Patents and Related Masimo Publications.

4.     Any awareness or involvement in the preparation, filing, and/or prosecution of each of the Masimo Asserted Patents, U.S. Patent No. 10,687,745, and the other Related Masimo Publications by Joe Kiani, Stephen Jensen, Harnik Shukla, and/or Jarom Kesler.

5.     Your knowledge and awareness of the Inequitable Conduct References during prosecution of the Masimo Asserted Patents, including without limitation the identity of all individuals having awareness of the Inequitable Conduct References as well as any awareness of the Inequitable Conduct Refences by Joe Kiani, Stephen Jensen, Harnik Shukla, and/or Jarom Kesler.

6.     The reasons why the Nellcor NPB-195, N-395, and OxiMax N-595 were not disclosed to the Patent Office during prosecution of the '223 patent.

7.     The reasons why Mendelson IEEE was not disclosed to the Patent Office during prosecution of the '507 patent.

8.      The reasons You disclosed over 1,000 references to the Patent Office during each of the prosecutions of the '743 patent, the '159 patent, and the '911 patent, respectively.

9.      Communications with Masimo, Cercacor, or Sound United regarding the Masimo Asserted Patents and Related Masimo Publications.

10.     Your search results, including patentability, validity, prior-art, infringement, or state-of-the-art searches, concerning the Masimo Asserted Patents or Related Masimo Publications.

11.     Executed agreements between You (including Stephen Jensen) and Masimo, Cercacor, or Sound United.

12.     The subject matter contained within the documents produced in response to the Requests For Production herein, including the authentication thereof.

# EXHIBIT C REDACTED IN ITS ENTIRETY

# EXHIBIT D

**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>*Defendants.* | C.A. No. 22-1377-MN-JLH<br><br>**JURY TRIAL DEMANDED** |
| MASIMO CORPORATION,<br><br>*Counter-Claimant,*<br><br>v.<br><br>APPLE INC.<br><br>*Counter-Defendant.* | |
| APPLE INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>*Defendants.* | C.A. No. 22-1378-MN-JLH<br><br>**JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and<br>CERCACOR LABORATORIES, INC.,<br><br>*Counter-Claimants,*<br><br>v.<br><br>APPLE INC.<br><br>*Counter-Defendant.* | |

**DEFENDANTS MASIMO CORPORATION AND SOUND UNITED, LLC'S AND COUNTERCLAIMANTS MASIMO CORPORATION AND CERCACOR LABS., INC.'S FOURTH SET OF INTERROGATORIES TO APPLE INC. (24–28)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Masimo Corporation and Sound United, LLC and Counterclaimant Cercacor Laboratories, Inc. (collectively, "Masimo") direct the following interrogatories to Plaintiff Apple Inc.

-1-

These interrogatories are to be answered in writing and under oath, based upon all information and knowledge reasonably available to Apple, its attorneys, its agents, and all others acting on their behalf in accordance with the Definitions and Instructions below within thirty (30) days of service of these Interrogatories.

## **DEFINITIONS**

Notwithstanding any definition set forth below, each word, term, or phrase used in these interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in these interrogatories, the following terms are to be interpreted in accordance with these definitions:

1.      "You," "Your," or "Apple" refers to Apple Inc., including any divisions, departments, parents, subsidiaries, affiliates or predecessors, and any present or former officer, director, employee, consultant, expert or agent of Apple, and all other persons acting or purporting to act on behalf of Apple, its subsidiaries, affiliates, divisions, or predecessors.

2.      "Apple Asserted Patents" shall mean U.S. Patent Nos. 10,076,257 (the "'257 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 10,987,054 (the "'054 Patent"), 11,106,352 (the "'352 Patent"), 11,474,483 (the "'483 Patent"), D883,279 (the "D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), D735,131 (the "'D131 Patent"), any additional patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Masimo.

3.      "Masimo Asserted Patents" shall mean U.S. Patent Nos. 10,687,743 (the "'743 Patent"), 10,722,159 (the "'159 Patent"), 8,190,223 (the "'223 Patent"), 10,736,507 (the "'507 Patent"), and 10,984,911 (the "'911 Patent").

4.      "Apple Watch" means the product or products You make, have made, offer to sell, offered to sell, sell, or sold, under the designation or tradename "Apple Watch,"  including but not limited to Apple Watch (first generation), Apple Watch Series 0, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch Series 7, Apple Watch Series 8, Apple Watch Ultra, and Apple Watch SE.

5.      "Accused Apple Design Patents" shall mean U.S. Patent Nos. D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), D735,131 (the "'D131 Patent"), and any additional design patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Masimo and that Masimo may allege were fraudulently procured.

6.      "Accused Apple Utility Patents" shall mean U.S. Patent Nos. 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 11,474,483 (the "'483 Patent"), and any additional utility patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Masimo and that Masimo may allege were fraudulently procured.

7.      "Accused Apple Patents" shall mean the Accused Apple Design Patents and the Accused Apple Utility Patents.

8.      The "Named Design Inventors" are all persons listed as inventors on the Accused Apple Design Patents.

9.      The "Apple Utility References" shall mean U.S. Patent Application 16/118,282, U.S. Patent Publication 2019/0072912, U.S. Patent No. 11,432,766, U.S. Patent No. 10,610,157, and U.S. Patent No. 10,987,054, U.S. Patent Application 14/310,694, U.S. Patent Publication

US2015/0371768, and U.S. Patent No. 9,460,846.

10.    The "Named Apple Utility References Inventors" are all persons listed as inventors on any of the Apple Utility References.

11.    The "Asserted References and Information" are: the Apple Utility References; Kotanagi (WO 2005/092182); Tanagi (JP Pub. No. 2005-270543); Shmueli (WO 2012/140559); that the Accused Apple Design Patents claim designs that are functional in nature; that the Accused Apple Design Patents claim designs that resulted from development of functional features of the Apple Watch; the true inventorship of the Accused Apple Design Patents; the inventorship of the Apple Utility References; that any of the Named Apple Utility References Inventors should have been named as an inventor on any of the Accused Apple Design Patents; that any of the Named Design Inventors should not have been named as an inventor on any of the Accused Apple Design Patents; and any other reference or information that Masimo alleges was withheld from or misrepresented to the Patent and Trademark Office during the prosecution of any of the Accused Apple Patents.

12.    A person is "Aware" of information (including a reference) if the person knows, learns, generates, collects, receives, or otherwise is in possession of the information (including materials consisting of, comprising, mentioning, or otherwise evidencing the information), regardless of whether the person was actively conscious of the information, registered the information, understood the significance of the information, or subsequently forgot the information. "Awareness" is the quality or state of being Aware.

13.    "Day" or "date" means the exact day, month and year if ascertainable, or if not, the best available approximation (including relationship to other events).

14.    The term "document" shall be construed to include all writings and graphics of any

sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

15.     The terms "person," "individual," and "entity" means any natural person or any legal entity, including without limitation any business or governmental entity or association.

16.     "Representative," when used to refer to the representative of a corporation or other legal or governmental entity, means and includes its present and former officers, directors, employees, agents, attorneys, and consultants, and/or anyone acting or purporting to act on its behalf.

17.     "Representative," when used to refer to the representative of a natural person, means and includes that person's present and former employees, agents, attorneys, and consultants, and/or anyone acting or purporting to act on said person's behalf.

18.     The term "communication" shall mean any transmittal of information regardless of the manner in which the communication(s) took place, including but not limited to, face-to-face conversations, correspondence, electronic or computer mail, telephone calls, facsimile communications, or telegrams.

19.     The terms "concerning," "referring to," or "relating to" any given subject matter mean (in addition to their usual meanings) any document, communication or thing pertaining to, mentioning, commenting on, connected with, discussing, analyzing, explaining, showing, setting forth, dealing with, comprising, consisting of, containing, constituting, resulting from, recording, involving, defining, covering, describing, evidencing, reflecting, referring directly or indirectly to, relating to, embodying, identifying, or having any logical or factual connection with the matter

discussed.

20.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise be construed to be outside of its scope.

21.     The term "all" shall be construed as all and each, and the term "each" shall be construed as all and each.

22.     The term "including" shall be construed broadly, as "including but not limited to" or "including without limitation."

23.     The plural of any term shall be construed as the singular, and vice versa, as necessary and in order to bring within the scope of these interrogatories any information, documents, or things that might otherwise be construed to be outside their scope.

## **INTERROGATORIES**

**INTERROGATORY NO. 24:**

Identify and describe in detail all factual and legal bases for Your contention, if any, that the Accused Apple Patents were not obtained fraudulently or are not unenforceable due to inequitable conduct, including describing and explaining your response to, and any basis for disagreeing with, the allegations of inequitable conduct and fraudulent conduct before the Patent and Trademark Office set forth in Masimo's answers and counterclaims in cases 22-1377 and 22-1378.

**INTERROGATORY NO. 25:**

Identify every person associated with Apple (including employees, counsel, and any others acting on Apple's behalf) who was Aware of any of the Asserted References and Information at any point during the prosecution of any of the Accused Apple Patents and describe in detail the

circumstances under which the person became Aware of the reference or information, the person's role at Apple and in the prosecution of the Accused Apple Patents, and the documents that evidence such Awareness.

**INTERROGATORY NO. 26:**

Explain in detail the processes used (including those used by Your attorneys) to identify references and information to disclose to the Patent and Trademark Office during prosecution of Your patents, including specifically identifying all persons involved in designing and implementing those processes, and including how those processes were applied during the prosecution of the Accused Apple Patents. Your answer should explain how those processes govern the sharing of information (directly or indirectly) between different outside law firms and different proceedings (including PTAB proceedings challenging others' patents) and who is involved, including why those processes did not result in the disclosure of the Asserted References and Information during prosecution of the Accused Apple Patents.

**INTERROGATORY NO. 27:**

For each Apple Asserted Patent, describe in detail the facts and circumstances relating to the conception and reduction to practice of the claimed subject matter, including identifying the date of conception and reduction to practice, the persons involved, how each person contributed to the subject matter of the patent and its claims, and why and how You decided to list or not list each such person as an inventor.

**INTERROGATORY NO. 28:**

Separately for each Accused Apple Patent and Apple Utility Reference, identify each person involved in the prosecution of the patent or application—including each person involved in the preparation of any documents and images used in such prosecution, each person involved in

any prior-art searches in connection with such prosecution, each person involved in determining inventorship for the patent or application, and each person involved in selecting the law firm(s) and/or attorney(s) who would represent Apple in the prosecution—and explain the person's role in connection with Apple, the person's role in such prosecution, and the circumstances that led the person to become involved in such prosecution.

Respectfully submitted,

June 16, 2023

PHILLIPS MCLAUGHLIN & HALL, P.A.

By: */s/ John C. Phillips, Jr.*

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Perry D. Oldham
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC and*
*Counterclaimant Cercacor Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, a true and correct copy of the foregoing document

was served on the following counsel of record at the addresses and in the manner indicated:

***VIA ELECTRONIC MAIL:***

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>Jennifer M. Przybylski<br>Carson Olsheski<br>Desmarais LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com<br>jprzybylski@desmaraisllp.com<br>colsheski@desmaraisllp.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

June 16, 2023

_/s/ Megan C. Haney_
Megan C. Haney

# EXHIBIT E
# REDACTED IN
# ITS ENTIRETY