# EXHIBIT 2

**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
APPLE, INC.,            )
        Plaintiff,      ) C.A. No. 22-1377-MN-JLH
                        )          22-1378-MN-JLH
    v.                  )
                        )
MASIMO CORPORATION,     )
et al.,                 )
                        )
        Defendant.      )
```

Friday, October 27, 2023
3:30 p.m.

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE JENNIFER L. HALL
         United States District Court Judge

APPEARANCES:

    POTTER, ANDERSON & CORROON, LLP
    BY:  DAVID E. MOORE, ESQ.

       -and-

    DESMARAIS LLP
    BY:  BENJAMIN N. LUEHRS, ESQ.
    BY:  PETER C. MAGIC, ESQ.

       -and-

**2**

APPEARANCES CONTINUED:

    APPLE IN-HOUSE COUNSEL
    BY:  TUCKER N. TERHUFEN, ESQ.

       Counsel for the Plaintiff

    PHILLIPS, McLAUGHLIN & HALL, P.A.
    BY:  JOHN C. PHILLIPS, JR., ESQ.

       -and-

    KNOBBE MARTENS
    BY:  STEPHEN W. LARSON, ESQ.
    BY:  MARK LEZAMA, ESQ.
    BY:  STEVE JENSEN, ESQ.

       Counsel for the Defendant

**3**

       THE COURT:  Good afternoon, everyone.  This is Jennifer Hall.  We are here on the line for a discovery dispute teleconference.  This is Apple versus Masimo.  It's civil action numbers 22-1377 and 22-1378.

       Do we have somebody on the line from Apple?

       MR. MOORE:  Yes, we do, Your Honor.  David Moore from Potter Anderson on behalf of the plaintiff.  I'm joined by my co-counsel, Peter Magic and Ben Luehrs from the Desmarais firm and we are joined by Tucker Terhufen from Apple.

       THE COURT:  Great.  Good afternoon to all of you and welcome.  Do we have somebody on the line for Masimo?

       MR. PHILLIPS:  Yes, Your Honor.  This is Jack Phillips.  And with me on the line are Steve Larson, Mark Lezama and Steve Jensen of the Knobbe firm.

       THE COURT:  Great.  Good afternoon and welcome to all of you.  I can tell you all that I have reviewed the letters.  We'll give you a chance to add whatever you want to add to

**4**

your papers, but I'll remind everybody that we are on the clock and the Court will be deducting from trial time for this teleconference.

       All right.  Unless you all have agreed on a different order, we'll have Apple go first as plaintiff on Apple's disputes.

       MR. MAGIC:  Okay.  Thank you, Your Honor.  This is Peter Magic with Desmarais LLP for Apple.  Your Honor, we are open to covering the issue of the subpoena to Mr. Jensen first.  That's our subpoena to Jensen.  It's Masimo's motion to quash that subpoena, but we're open to covering that first if that's acceptable to Your Honor.

       THE COURT:  And thank you for clarifying.  That's fine.  Go ahead.

       MR. MAGIC:  Okay.  Very good.  All right.  Your Honor, Mr. Steve Jensen is a percipient fact witness on matters of willful infringement, copying and inequitable conduct based largely on his actions from before this case began and before he was litigation counsel in this case.

       Over the past several years Mr.

5



Now all the while he has had access to Apple watch confidential information from representing Masimo against Apple in various ongoing lawsuits.

In 2021 the ITC required him to leave the board of circuit court if he wished to continue to have access to Apple confidential information. He did resign so the ITC would allow him to continue to have access, but in reality it was kind of an elusory resignation. ████████████████████████████ And that fact is not in dispute.

Now, his actions were his own choice and were outside of his role as litigation counsel. And to be clear, Apple does not seek discovery regarding his role as litigation counsel.

Apple pointed out in its

6

complaints in this case that a Cercacor board member had access to Apple EDI for a number of years before Masimo released its watch product. And it was only after that Apple filed its complaints and Masimo saw those allegations that Masimo elected to hire Mr. Jensen as litigation counsel for this case along with a dozen of his partners.

Now, Masimo hired Mr. Jensen despite knowing that he was factually entangled in Apple's willfulness and copying allegations. And so they should not be able to now use that sequence of events to argue that by hiring Mr. Jensen he's now immunized from a clear basis for discovery.

And so Apple's request for focused email discovery and a limited deposition on these facts is appropriate, because it's directed to relevant non-privileged information about actions Mr. Jensen took mostly before this case and outside of his role as litigation counsel.

That's the connection on willfulness and copying. And I'd just like to

7

briefly turn to inequitable conduct and the connection there and make a few points before I pause.

Mr. Jensen is highly relevant, as well, to inequitable conduct. Apple did name him in its inequitable conduct allegations. Apple served Masimo with extensive detail, many pages of detail on the basis for those allegations. Mr. Jensen has what's called a customer number at the patent office for Masimo for the asserted patents in this case, Masimo's asserted patents.

The allegations we've put forth are that he knew of relevant prior art because he litigated a case of patent infringement for Masimo years ago against the company that made the prior art products. He and his law firm partners didn't disclose the art when prosecuting Masimo's patents in that case. And Masimo's response to our interrogatory about what it has to say in its defense on inequitable conduct actually doesn't deny any of those facts. And that's exhibits 18 and 19 to Apple's briefing.

8

So again, focused discovery of emails and a limited deposition is crucial in our view to establishing knowledge and intent.

And so this is -- to sum up, I mean this is a situation where Mr. Jensen's actions, largely before this lawsuit existed and before he became litigation counsel, are at the heart of why he is a percipient fact witness and so that's why we seek the discovery that we seek.

THE COURT: All right. Thank you very much. Let's turn it over to the other side on the issue of Mr. Jensen.

MR. LARSON: Thank you, Your Honor. This is Steve Larson of Knobbe Martens. I'll be arguing this issue and my colleague Mark Lezama will be arguing Apple's subpoena. We alos have Mr. Jensen on the line in case Your Honor has any questions for him.

So I want to start with Apple's letter which has many accusations against Mr. Jensen. But if you look at the evidence that Apple cites in the supporting exhibits, there's no evidence of any misconduct, no evidence of

9

any improper use of information, no evidence of copying.



So there's really no connection between these allegations and issues in this case.

And in fact, if you look -- and ITC's decision with regard to Mr. Jensen's role on the board of directors really had to do with the conflict with him having a decision-making role as a member of the board of directors.



In fact, Cercacor is a part of this lawsuit, so

10

And Apple doesn't appear to dispute that the Shelton standard here applies, which require that Apple show that Apple has no other means to obtain the discovery, that the discovery is not privileged and that it's crucial to Apple's case. And many of the individuals on these emails Apple has already deposed and Apple is going to depose. For example, Mr. Tiani is on these emails. He'll be deposed next week. So we don't think Apple has shown or even tried to show that its met the high burden to depose opposing counsel much less one of Masimo's lead counsel in this case.

So turning to inequitable conduct, we believe it's also in dispute on this record that Mr. Jensen transitioned, not prosecutioned, to a different group nearly 20 years ago and

11

before the earliest filing of any of the patents in this case, testified to that in the Phillips case. Apple's counsel participated in that case, Apple's counsel in California. And Judge Stark found him to be credible on all his testimony. You have that testimony on the record that Apple has nothing in the record to dispute and you look at Apple's allegations and there's really nothing connecting Mr. Jensen to the prosecution of these particular patents. All Apple points to is that Mr. Jensen's associated with a customer number from Masimo, but if you look at Apple's exhibits, you'll see that essentially every attorney at Knobbe Martens that has a patent number is associated with every customer number. And that's simply, as I understand, what Knobbe Martens does. You'll see I'm on there. Jared Bunker was in before me, so he's on there. Lots of attorneys that have no involvement with Masimo at all are on that list.

THE COURT: Can I just ask you, counsel, so in Apple's inequitable conduct contentions where they say for each of the

12

asserted patents that the, quote, the US PTO expressly lists Mr. Jensen as an attorney of record for prosecution of the patent and it goes through each of the patents, what they're talking about there is the customer number thing?

MR. LARSON: Yes. They're referring to the customer number and we believe that's very different from our allegations against Apple's in-house counsel, Jeff Meyers, where we specifically said that he was one of very few in-house counsel that was included as having power of attorney. And we also pointed to his connection between an IPR proceeding where Apple asserted key prior art and then Apple's prosecution of its own patent, where it withheld that prior art. So we think that's a distinction.

But we also told Apple, look, depose -- we're making available our patent prosecutors, the ones who actually prosecuted the patents. We're providing very broad document discovery, including as to Mr. Jensen to the extent there's anything there. Depose

13

the patent prosecutors, which will further show Mr. Jensen's lack of involvement. And again, this goes to the Shelton standard that Apple doesn't dispute whether Apple can show that it has no other means to obtain the testimony it needs from deposing opposing counsel.

So I'll move on briefly to Apple's request for ESI search terms. So Apple, in its argument, told you that it was seeking narrow, focused discovery, but just to be clear, you know, our understanding was the document discovery that related inequitable conduct had been resolved. Our issue was Apple then came and said no, we also want you to run all of these ESI search terms on Mr. Jensen's Knobbe emails. Now, first of all, if you look at Apple's actual subpoenas, you'll see those subpoenas are entirely directed to inequitable conduct. There's no document requests that support this demand that we run these ESI search terms and even all the exemplary topics were about inequitable conduct. And so Apple shifted, I think, a bit after it was clear, you know, from our perspective, that Jensen had no

14

involvement to now demand this broad ESI searching. And you know, rule 45 requires that Apple actually identify the documents it's seeking in its subpoena and we don't think that Apple's request for broad ESI searching is supported by Apple's actual subpoenas.

In addition to that, as we argue in our letter, the ESI search terms are directed to the issues in this case. So, for example, all the patent numbers. So if we're talking about searching Mr. Jensen's Knobbe emails for the patent numbers, you're talking about emails regarding preparing for markman or claim construction, preparing the case. It's really going after emails that are going to be his litigation of this dispute, which we don't think is reasonable or proportional.

Now, Apple argued in its letter that we agreed to treat Mr. Jensen as a custodian, but that was -- we were very clear that was as to his Masimo.com emails from many years ago when for a few years he was the vice president of OEM and Masimo, I believe in the late 2000's. We were very clear that wouldn't

15

apply to his Knobbe.com emails. Apple also argues that Mr. Jensen used his Knobbe.com emails for non-legal work for Masimo. That's not supported. Apple simply points to the same meetings and the same documents we've discussed and the undisputed testimony of record here from

Apple also makes an argument that Mr. Jensen's partners used their personal accounts for product development. It doesn't seem to have much relevance in dispute, but just wanted to point out the document they point to appears to be a document that simply tracks the W1 being provided to various individuals, including as gifts. There's no showing that's connected to product development.

So with that, unless Your Honor has questions, I'll stop there.

THE COURT: All right. No questions. But you would agree if Apple deposed Mr. Kessler and Mr. Shuqua and found out from them that Mr. Jensen had some substantive involvement in patent prosecution that at that

16

point the Court could revisit the issue of Apple subpoenaing Mr. Jensen, right?

MR. LARSON: Yes. We would agree with that.

THE COURT: All right. Thank you. All right. Let's turn it back over to Apple for the last word on this particular dispute.

MR. MAGIC: That you, Your Honor. A few points. One, regarding the point that we just left off on about deposing the other prosecutors first. Just two points to make about that. One, that would of course only relate to the inequitable conduct side of Mr. Jensen's relevance and not the involvement in engineering meetings and product development willfulness, copying side of things. But we did propose a bilateral approach to Masimo whereby because they have allegations against Mr. Meyers, who, you know, likewise, wasn't the person involved in prosecution, that they also, you know, depose our people who are prosecuting the patents directly and then revisit whether they needed to depose Mr. Meyers. We proposed that was a bilateral approach relating to Mr.

17

Jensen and Mr. Meyers and Masimo rejected it. So that's where we stand currently on that.

But getting outside of just the inequitable conduct issue, I guess Masimo's counsel said that the CFO said  He likely doesn't really know, you know, everything in play that the ITC had required Mr. Jensen to remove himself from the board So anyway, the CFO really couldn't -- couldn't really close this issue for us is Apple's view, Your Honor. Just because we

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

18

have a snippet of the CFO's testimony saying

Outside of that, Masimo's counsel touched on case law. The only case with facts like this where litigation counsel had been involved in factual matters before the litigation is the Ricoh case that we cited and there the Court found that a deposition was warranted. It's just that the service of the subpoena was faulty and so on that basis the Court actually didn't order the deposition to go forward, but the Court found good grounds for having a deposition of litigation counsel in that case based on presuit factual involvement.

So with that, I'll pause and see if Your Honor has any questions.

THE COURT: I don't have any questions. Thank you very much. All right. Let's hear about the other dispute. Did Masimo want to --

MR. JENSEN: Your Honor, this is Steve Jensen. I just wanted to make sure you had no questions for me. I'd be happy to rebut the speculation if the Court would like that

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

19

from me. That's why I'm on the phone. I just want to make sure you had no questions for me before we moved on.

THE COURT: No questions. Thank you, sir.

All right. Let's turn it over to the other dispute, Masimo.

MR. LARSON: Your Honor, this is Masimo. There is one more -- a motion to quash was also filed as to Apple's 30(b)(6) subpoena to Knobbe and so I don't know if you also want Apple to go first on that issue before we switch to our motion to quash Apple's subpoena.

THE COURT: If anybody had anything they wanted to say, I'm happy to hear it. But I read the papers on that.

MR. LUEHRS: Your Honor, this is Ben Luehrs from Desmarais LLP. I think we covered it.

THE COURT: All right. Thank you. Did anybody from Masimo want to say something about the 30(b)(6)?

MR. LARSON: I guess I would briefly say in response, I don't think that

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

20

Apple covered it. We had specific arguments as to particular requests and we cited case law and we argued that the topics are too broad and not particularly proportional and I didn't see much of a response to that. But I'll leave it at that.

THE COURT: All right. Thanks very much. All right. Now let's turn to the other disputes. We'll hear from Masimo.

MR. LEZAMA: Thank you, Your Honor. This is Mark Lezama of Knobbe Martens. And so we're talking about Masimo's subpoena to Apple's prosecution counsel. And understanding that the Court has read the papers, I think I'd like to just start by making clear that we're talking about a very narrow scope of discovery. You know, we have the original subpoena, but we substantially narrowed those and I apologize if that didn't come across as clearly as it might have in the papers. It's in exhibit A. And so for each subpoena we're down to no more than four requests for production. In some cases it's just three requests. And I think it's no more than six deposition topics and again some

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

21

cases it's only four topics, which one of those topics I think is authentication of document. And the discovery we seek essentially falls into two buckets. The first bucket is fact probative of in-house counsel's awareness and I'm talking about awareness of prior art or awareness of proceedings like IPRs and the second bucket is facts about Apple's process for gathering materials to disclose to the PTO. So two very straightforward topics on facts, not privileged communications. And that discovery is directly relevant to our inequitable conduct case.

Let me give a brief example. So going at least back to 2020, Apple has been challenging Masimo's patents in IPRs and in multiple IPRs they allow the same key references that they claim invalidate Masimo's patents. And then Apple files the applications leading to the patents that they're now asserting against Masimo in this case, but they don't disclose to the PTO the key prior art that they relied on in those IPRs. And now in this case in discovery they claim their in-house counsel was unaware of that key prior art, so at a minimum we're

22

entitled to test that assertion with some very targeted discovery of the IPR counsel regarding whether in-house counsel was aware of the IPRs and that key prior art that was relied on in those IPRs. And the relevance of that discovery is not dependent in any way upon whether Apple's outside counsel also stands accused of inequitable conduct. The discovery we seek is probative of whether Apple's in-house counsel and named inventors committed inequitable conduct. That's what matters. The discovery we're seeking is narrowly tailored to facts, not privileged materials.

The movants don't identify anything burdensome and we think that they have come nowhere close to carrying their burden on their motion to quash. I'll pause there and be happy to address any questions the Court might have.

THE COURT: So we did locate the exhibit A, so it looked to us like the topics were these three prior art references, but I also just heard you say the IPRs. So you pointed to other references beyond these three

23

that were at issue in the IPRs that you want discovery on.

MR. LEZAMA: Yeah. There are kind of two categories here of references. So we have -- Apple has asserted utility patents against us in the 1378 case and design patents against us in the 1377 case and so on the utility patents those are the ones where our theories of inequitable conduct involve disclosing from the PTO the records that were cited in the IPRs. On the design patents case, you know, there are different sets of materials that we claim were withheld from the PTO and those include some of Apple's own patent applications. So those wouldn't be the IPRs. Does that answer the question?

THE COURT: I think so. I guess I was just trying to see what the difference was between you listed these Kotanagi, Tanagi and Shmueli. So that's one set?

MR. LEZAMA: Yeah, those are the -- I apologize for interrupting. Those three you just mentioned, those are the references from the IPRs that we claim are

24

relevant to the utility patent.

THE COURT: Okay. That's for the utility patent. And then you said -- okay. I understand. All right.

Let's hear from Apple.

MR. LUEHRS: Thank you, Your Honor. This is Ben Luehrs again from Desmarais LLP. This subpoena to these outside counsel law firms, they're directed to entities that Masimo admits they've never accused of inequitable conduct. And the purpose of their subpoenas, in Masimo's own words, is to get discovery from Apple. Counsel just referenced two categories of information that it wants. It wants information on Apple's in-house counsel's awareness and it wants information about Apple's process. Masimo needs to get that information from Apple, not to serve five subpoenas on outside counsel law firms who they agree did not commit inequitable conduct simply to fish for some document or something to show some awareness that they're not getting from Apple.

As Your Honor may recall, Your Honor ordered Apple and Masimo to negotiate the

25

review that started at around 50,000 emails from Jeff Meyers. We're negotiating that down, but they do not need any further discovery outside of Apple on their allegations, all of which are directed toward Apple employees. So this is the perfect example of a useless and harassing motion or subpoena to these third parties who have no basis being involved in this lawsuit based on Masimo's own allegations.

Second, these subpoenas directed to outside law firms will obviously cover privileged information, so we need to contest all of the attempts to get that privileged information by Masimo. That's the second basis for our motion to quash.

And third, if they're looking at the prosecution record and they want more information about that, that's obviously publicly available.

So we think that these subpoenas to the outside counsel based on Masimo's specific allegations in this case are totally unfounded and should be quashed.

THE COURT: Can I ask you --

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

26

they've made the point that -- and I'm not saying I agree with it, but I'd like to hear your response to their point that it seems like you've said to them that none of the Apple employees, except for the inventors, have had substantive involvement in the prosecution and therefore have no connection to the PTO, but you're saying that their subpoenas to the outside law firms should be rejected because the Apple employees are the ones that have the responsive documents.

MR. LUEHRS: Thank you for that question, Your Honor.

THE COURT: Yeah.

MR. LUEHRS: Yes. We're putting up Apple's in-house prosecutors for a deposition. They've already done one. They did one, I think it was this week. There's been a lot of depositions happening. And the second -- so we put up a witness on utility prosecution, an in-house prosecutor. We're going to put up a witness on in-house design patent prosecution and we're designating these witnesses under 30(b)(6). And these are -- this is where

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

27

Masimo's allegations are directed toward and so that's where we're certainly not fighting discovery on those witnesses. And that's Cameron Tilling and Quin Hoellwarth. So we're providing depositions for those individuals.

THE COURT: Okay. Thank you very much. All right. Let me turn it back over to Masimo for the last word.

MR. LEZAMA: Thank you, Your Honor. Mark Lezama again. So just a couple points. First of all, I just wanted to clear, you know, there's no admission from -- on Masimo's side about anyone not committing inequitable conduct. You know, there's a difference between what's been alleged and what we concede.

But, you know, turning back to the point about, you know, we can just take this discovery from Apple. I mean, they don't get to decide who we take discovery from. They've made assertions about what their in-house counsel knew and didn't know, what they were and weren't involved in. And we're, we think, entitled to test those assertions with some very targeted

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

28

discovery from their outside prosecution counsel. It's not a fishing expedition and it's really very quite limited. Again, we're talking about just a handful of requests for production and a handful of deposition topics. And by the way, you know, Apple has, you know, even broader RFPs in their subpoenas to Knobbe as well as the same kind of deposition topics they've propounded on Knobbe and that used the same language that they're now complaining about as supposedly calling privileged information. They can't have them both.

THE COURT: All right. Thank you very much. All right. We will take these disputes under consideration and we hope to get you a decision soon. Thanks everybody. We'll be in recess.

(End at 4:05 p.m.)

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

29

State of Delaware)
)
New Castle County)

### CERTIFICATE OF REPORTER

I, Stacy M. Ingram, Certified Court Reporter and Notary Public, do hereby certify that the foregoing record, Pages 1 to 29 inclusive, is a true and accurate transcript of my stenographic notes taken on October 27, 2023, in the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 27th day of October 2023, at Wilmington.

 _/s/ Stacy M. Ingram_
 Stacy M. Ingram, CCR

Hawkins Reporting Service
855 Arthursville Road   Hartly, Delaware  19953
(302) 658-6697  FAX (302) 658-8418

## /

- /s [1] - 29:19

## 1

- 1 [1] - 29:9
- 10 [1] - 10:6
- 11 [1] - 10:5
- 1377 [1] - 23:7
- 1378 [1] - 23:6
- 18 [1] - 7:23
- 19 [1] - 7:23

## 2

- 20 [2] - 10:7, 10:24
- 2000's [1] - 14:24
- 2020 [1] - 21:14
- 2021 [1] - 5:10
- 2023 [3] - 1:10, 29:11, 29:15
- 22-1377 [1] - 3:5
- 22-1377-MN-JLH [1] - 1:4
- 22-1378 [1] - 3:5
- 22-1378-MN-JLH [1] - 1:5
- 27 [2] - 1:10, 29:11
- 27th [1] - 29:15
- 29 [1] - 29:9

## 3

- 30(b)(6 [2] - 19:10, 19:22
- 30(b)(6) [1] - 26:24
- 3:30 [1] - 1:11

## 4

- 45 [1] - 14:2
- 4:05 [1] - 28:18

## 5

- 50,000 [1] - 25:1

## 8

- 8 [1] - 10:5
- 844 [1] - 1:12

## A

- able [2] - 6:12, 9:20
- above-captioned [1] - 29:11
- acceptable [1] - 4:13
- access [4] - 5:6, 5:12, 5:14, 6:2
- according [1] - 17:21
- accounts [1] - 15:11
- accurate [1] - 29:10
- accusations [1] - 8:21
- accused [2] - 22:7, 24:10
- acted [1] - 15:7
- action [1] - 3:5
- actions [4] - 4:21, 5:19, 6:20, 8:6
- actual [2] - 13:17, 14:6
- add [2] - 3:24
- addition [1] - 14:7
- address [1] - 22:18
- admission [1] - 27:12
- admits [1] - 24:10
- advice [1] - 9:23
- afternoon [3] - 3:1, 3:14, 3:21
- ago [3] - 7:16, 10:24, 14:22
- agree [4] - 15:21, 16:3, 24:19, 26:2
- agreed [2] - 4:5, 14:19
- ahead [1] - 4:16
- al [1] - 1:7
- allegations [13] - 6:5, 6:11, 7:6, 7:9, 7:13, 9:13, 11:8, 12:9, 16:18, 25:4, 25:9, 25:22, 27:1
- alleged [1] - 27:15
- allow [2] - 5:14, 21:16
- alos [1] - 8:18
- Anderson [1] - 3:9
- ANDERSON [1] - 1:19
- answer [1] - 23:16
- anyway [1] - 17:22
- apologize [2] - 20:18, 23:22
- appear [1] - 10:8
- APPEARANCES [2] - 1:18, 2:1
- Apple [57] - 3:4, 3:7, 3:13, 4:5, 4:9, 5:6, 5:8, 5:12, 5:21, 5:24, 6:2, 6:4, 7:5, 7:7, 8:23, 9:3, 9:5, 9:10, 10:8, 10:10, 10:14, 10:15, 10:17, 11:7, 11:11, 12:15, 12:19, 13:3, 13:4, 13:8, 13:13, 13:22, 14:3, 14:18, 15:1, 15:4, 15:9, 15:21, 16:1, 16:6, 19:12, 20:1, 21:14, 21:18, 23:5, 24:5, 24:13, 24:18, 24:22, 24:24, 25:4, 25:5, 26:4, 26:10, 27:19, 28:6
- APPLE [2] - 1:3, 2:2
- Apple's [30] - 4:6, 6:11, 6:16, 7:23, 8:17, 8:20, 10:5, 10:13, 11:3, 11:4, 11:8, 11:13, 11:23, 12:10, 12:16, 13:7, 13:17, 14:5, 14:6, 17:24, 19:10, 19:13, 20:13, 21:8, 22:6, 22:9, 23:14, 24:15, 24:16, 26:16
- applications [2] - 21:18, 23:15
- applies [1] - 10:9
- apply [1] - 15:1
- approach [2] - 16:17, 16:24
- appropriate [1] - 6:18
- argue [2] - 6:13, 14:7
- argued [2] - 14:18, 20:3
- argues [1] - 15:2
- arguing [2] - 8:16, 8:17
- argument [2] - 13:9, 15:9
- arguments [1] - 20:1
- art [10] - 7:14, 7:17, 7:18, 12:15, 12:17, 21:6, 21:21, 21:24, 22:4, 22:22
- asserted [5] - 7:11, 7:12, 12:1, 12:15, 23:5
- asserting [1] - 21:19
- assertion [1] - 22:1
- assertions [2] - 27:21, 27:24
- associated [2] - 11:12, 11:15
- attempts [1] - 25:13
- attend [3] - 5:16, 9:20, 10:1
- attended [2] - 5:1, 5:3
- attending [1] - 17:17
- attorney [3] - 11:14, 12:2, 12:13
- attorneys [1] - 11:19
- authentication [1] - 21:2
- available [2] - 12:20, 25:19
- aware [1] - 22:3
- awareness [5] - 21:5, 21:6, 24:16, 24:22

## B

- based [4] - 4:21, 18:14, 25:9, 25:21
- basis [5] - 6:14, 7:8, 18:10, 25:8, 25:14
- became [1] - 8:7
- BEFORE [1] - 1:15
- began [1] - 4:22
- behalf [1] - 3:10
- Ben [3] - 3:11, 19:18, 24:7
- BENJAMIN [1] - 1:22
- between [4] - 9:13, 12:14, 23:19, 27:15
- beyond [1] - 22:24
- bilateral [2] - 16:17, 16:24
- bit [1] - 13:23
- board [13] - 5:1, 5:11, 5:16, 6:1, 9:4, 9:17, 9:19, 9:21, 10:3, 17:6, 17:9, 17:16, 17:21
- brief [1] - 21:13
- briefing [1] - 7:24
- briefly [3] - 7:1, 13:7, 19:24
- broad [4] - 12:22, 14:1, 14:5, 20:3
- broader [1] - 28:6
- bucket [3] - 17:20, 21:4, 21:7
- buckets [1] - 21:4
- Bunker [1] - 11:18
- burden [2] - 10:19, 22:16
- burdensome [1] - 22:15
- BY [7] - 1:19, 1:22, 1:22, 2:3, 2:6, 2:8, 2:9

## C

- C.A [1] - 1:4
- California [1] - 11:4
- Cameron [1] - 27:4
- capacity [1] - 15:8
- captioned [1] - 29:11
- carrying [1] - 22:16
- case [29] - 4:22, 4:23, 6:1, 6:7, 6:21, 7:11, 7:15, 7:19, 8:18, 9:14, 10:13, 10:20, 11:2, 11:3, 11:4, 14:9, 14:14, 18:4, 18:7, 18:14, 20:2, 21:12, 21:20, 21:22, 23:6, 23:7, 23:11, 25:22
- cases [2] - 20:22, 21:1
- Castle [1] - 29:2
- categories [2] - 23:4, 24:13
- CCR [1] - 29:20
- Cercacor [5] - 6:1, 9:5, 9:11, 9:24, 10:3
- certainly [1] - 27:2
- CERTIFICATE [1] - 29:5
- Certified [1] - 29:7
- certify [1] - 29:8
- CFO [3] - 17:5, 17:7, 17:22
- CFO's [2] - 17:12, 18:1
- challenging [1] - 21:15
- chance [1] - 3:24
- characterization [1] - 17:12
- choice [1] - 5:20
- circuit [1] - 5:11
- cited [3] - 18:7, 20:2, 23:11
- cites [1] - 8:23
- civil [1] - 3:5
- claim [5] - 14:13, 21:17, 21:23, 23:13, 23:24
- clarifying [1] - 4:16
- clear [8] - 5:21, 6:14, 13:10, 13:23, 14:20, 14:24, 20:15, 27:11
- clearly [1] - 20:19
- clients [1] - 9:23
- clock [1] - 4:2
- close [2] - 17:23, 22:16
- co [1] - 3:11
- co-counsel [1] - 3:11
- colleague [1] - 8:16
- commit [1] - 24:20

Hawkins Reporting Service
855 Arthursville Road    Hartly, Delaware   19953
(302) 658-6697    FAX (302) 658-8418

**committed** [1] - 22:10
**committing** [1] - 27:13
**common** [1] - 9:21
**communications** [1] - 21:11
**company** [2] - 5:2, 7:16
**complaining** [1] - 28:10
**complaints** [2] - 6:1, 6:5
**completely** [1] - 17:10
**concede** [1] - 27:16
**conduct** [19] - 4:20, 7:1, 7:5, 7:6, 7:22, 10:21, 11:23, 13:12, 13:19, 13:22, 16:13, 17:4, 21:12, 22:8, 22:11, 23:9, 24:11, 24:20, 27:14
**confidential** [2] - 5:7, 5:12
**conflict** [1] - 9:18
**connected** [1] - 15:17
**connecting** [1] - 11:9
**connection** [5] - 6:23, 7:2, 9:13, 12:14, 26:7
**consideration** [1] - 28:15
**construction** [1] - 14:14
**contentions** [1] - 11:24
**contest** [1] - 25:12
**continue** [2] - 5:12, 5:14
**CONTINUED** [1] - 2:1
**continued** [1] - 5:16
**copying** [5] - 4:20, 6:11, 6:24, 9:2, 16:16
**CORPORATION** [1] - 1:6
**CORROON** [1] - 1:19
**counsel** [34] - 3:11, 4:22, 5:21, 5:23, 6:7, 6:22, 8:7, 9:8, 10:19, 10:20, 11:3, 11:4, 11:23, 12:10, 12:12, 13:6, 17:5, 17:19, 17:20, 18:3, 18:5, 18:13, 20:13, 21:23, 22:2, 22:3, 22:7, 22:9, 24:8, 24:13, 24:19, 25:21, 27:21, 28:2
**COUNSEL** [1] - 2:2

**Counsel** [2] - 2:4, 2:11
**counsel's** [2] - 21:5, 24:15
**County** [1] - 29:2
**couple** [1] - 27:10
**course** [1] - 16:12
**court** [1] - 5:11
**COURT** [21] - 1:1, 3:1, 3:14, 3:21, 4:15, 8:11, 11:22, 15:20, 16:5, 18:17, 19:4, 19:14, 19:20, 20:7, 22:20, 23:17, 24:2, 25:24, 26:14, 27:6, 28:13
**Court** [10] - 1:16, 4:2, 16:1, 18:8, 18:11, 18:12, 18:24, 20:14, 22:18, 29:7
**cover** [1] - 25:11
**covered** [3] - 5:2, 19:19, 20:1
**covering** [2] - 4:9, 4:13
**credible** [1] - 11:5
**crucial** [2] - 8:2, 10:13
**custodian** [1] - 14:20
**customer** [5] - 7:10, 11:12, 11:16, 12:5, 12:8

**D**

**david** [1] - 3:9
**DAVID** [1] - 1:19
**decide** [1] - 27:20
**decision** [3] - 9:16, 9:18, 28:16
**decision-making** [1] - 9:18
**deducting** [1] - 4:2
**Defendant** [2] - 1:8, 2:11
**defense** [1] - 7:21
**DELAWARE** [1] - 1:1
**Delaware** [2] - 1:12, 29:1
**demand** [2] - 13:20, 14:1
**deny** [1] - 7:22
**dependent** [1] - 22:6
**depose** [6] - 10:15, 10:19, 12:20, 12:24, 16:21, 16:23
**deposed** [3] - 10:15, 10:17, 15:21
**deposing** [2] - 13:6,

16:10
**deposition** [9] - 6:17, 8:2, 18:8, 18:11, 18:13, 20:24, 26:17, 28:5, 28:8
**depositions** [2] - 26:19, 27:5
**design** [3] - 23:6, 23:11, 26:22
**designating** [1] - 26:23
**Desmarais** [4] - 3:12, 4:8, 19:18, 24:7
**DESMARAIS** [1] - 1:21
**despite** [1] - 6:10
**detail** [2] - 7:7, 7:8
**develop** [1] - 9:12
**development** [5] - 5:2, 15:11, 15:17, 16:15, 17:9
**difference** [2] - 23:18, 27:15
**different** [7] - 4:5, 5:17, 9:23, 10:7, 10:24, 12:9, 23:12
**directed** [7] - 6:19, 13:18, 14:8, 24:9, 25:5, 25:10, 27:1
**directly** [2] - 16:22, 21:11
**director** [2] - 9:4, 10:4
**directors** [2] - 9:17, 9:19
**disclose** [3] - 7:18, 21:9, 21:20
**disclosing** [1] - 23:10
**discovery** [26] - 3:3, 5:22, 6:15, 6:17, 8:1, 8:9, 10:11, 10:12, 12:23, 13:10, 13:12, 20:16, 21:3, 21:11, 21:22, 22:2, 22:5, 22:8, 22:11, 23:2, 24:12, 25:3, 27:3, 27:19, 27:20, 28:1
**discussed** [3] - 9:10, 9:11, 15:5
**dispute** [11] - 3:3, 5:18, 10:9, 10:22, 11:8, 13:4, 14:16, 15:12, 16:7, 18:19, 19:7
**disputes** [3] - 4:6, 20:9, 28:15
**distinction** [1] - 12:18
**DISTRICT** [2] - 1:1, 1:1

**District** [1] - 1:16
**document** [7] - 12:23, 13:11, 13:19, 15:13, 15:14, 21:2, 24:21
**documents** [3] - 14:3, 15:5, 26:11
**done** [1] - 26:17
**down** [2] - 20:21, 25:2
**dozen** [1] - 6:7

**E**

**earliest** [1] - 11:1
**EDI** [1] - 6:2
**elected** [1] - 6:6
**elicited** [1] - 9:5
**elusory** [1] - 5:15
**email** [1] - 6:17
**emails** [11] - 8:2, 10:14, 10:16, 13:16, 14:11, 14:12, 14:15, 14:21, 15:1, 15:3, 25:1
**employees** [3] - 25:5, 26:5, 26:10
**encompassed** [1] - 5:5
**End** [1] - 28:18
**engineering** [3] - 5:3, 16:15, 17:8
**entangled** [1] - 6:10
**entirely** [1] - 13:18
**entities** [1] - 24:9
**entitled** [2] - 22:1, 27:23
**ESI** [6] - 13:8, 13:15, 13:20, 14:1, 14:5, 14:8
**ESQ** [8] - 1:19, 1:22, 1:22, 2:3, 2:6, 2:8, 2:9, 2:9
**essentially** [2] - 11:14, 21:3
**establishing** [1] - 8:3
**et** [1] - 1:7
**events** [1] - 6:13
**evidence** [4] - 8:22, 8:24, 9:1
**example** [5] - 9:4, 10:16, 14:9, 21:13, 25:6
**except** [1] - 26:5
**exemplary** [1] - 13:21
**exhibit** [2] - 20:20, 22:21
**exhibits** [4] - 7:23, 8:23, 10:5, 11:13
**existed** [1] - 8:6

**expedition** [1] - 28:2
**expressly** [1] - 12:2
**extensive** [1] - 7:7
**extent** [1] - 12:24

**F**

**fact** [7] - 4:19, 5:17, 8:8, 9:9, 9:15, 9:24, 21:4
**facts** [6] - 6:18, 7:23, 18:4, 21:8, 21:10, 22:12
**factual** [2] - 18:6, 18:14
**factually** [1] - 6:10
**falls** [1] - 21:3
**faulty** [1] - 18:10
**few** [4] - 7:2, 12:12, 14:22, 16:9
**fighting** [1] - 27:2
**filed** [2] - 6:4, 19:10
**files** [1] - 21:18
**filing** [1] - 11:1
**fine** [1] - 4:16
**firm** [3] - 3:12, 3:20, 7:17
**firms** [4] - 24:9, 24:19, 25:11, 26:9
**first** [8] - 4:6, 4:10, 4:13, 13:16, 16:11, 19:12, 21:4, 27:11
**fish** [1] - 24:20
**fishing** [1] - 28:2
**five** [1] - 24:18
**focused** [3] - 6:16, 8:1, 13:10
**FOR** [1] - 1:1
**foregoing** [1] - 29:9
**forth** [1] - 7:13
**forward** [1] - 18:12
**four** [2] - 20:22, 21:1
**Friday** [1] - 1:10

**G**

**gathering** [1] - 21:8
**gifts** [1] - 15:16
**great** [2] - 3:14, 3:21
**grounds** [1] - 18:12
**group** [1] - 10:24
**guess** [3] - 17:4, 19:23, 23:17

## H

**HALL** [2] - 1:15, 2:5
**Hall** [1] - 3:2
**Hammarth** [2] - 9:6, 15:7
**hand** [1] - 29:15
**handful** [2] - 28:4, 28:5
**happy** [3] - 18:23, 19:15, 22:18
**harassing** [1] - 25:6
**hear** [5] - 18:19, 19:15, 20:9, 24:5, 26:2
**heard** [1] - 22:23
**heart** [1] - 8:8
**hereby** [1] - 29:8
**hereunto** [1] - 29:14
**high** [1] - 10:19
**highly** [1] - 7:4
**himself** [1] - 17:16
**hire** [1] - 6:6
**hired** [1] - 6:9
**hiring** [1] - 6:13
**Hoellwarth** [1] - 27:4
**Honor** [21] - 3:9, 3:17, 4:8, 4:9, 4:14, 4:18, 8:15, 8:19, 15:18, 16:8, 17:24, 18:16, 18:21, 19:8, 19:17, 20:11, 24:7, 24:23, 24:24, 26:13, 27:10
**HONORABLE** [1] - 1:15
**hope** [1] - 28:15
**house** [11] - 12:10, 12:12, 21:5, 21:23, 22:3, 22:9, 24:15, 26:16, 26:21, 26:22, 27:21
**HOUSE** [1] - 2:2

## I

**identify** [2] - 14:3, 22:14
**imagine** [1] - 9:22
**immunized** [1] - 6:14
**improper** [1] - 9:1
**IN** [3] - 1:1, 2:2, 29:14
**in-house** [11] - 12:10, 12:12, 21:5, 21:23, 22:3, 22:9, 24:15, 26:16, 26:21, 26:22, 27:21
**IN-HOUSE** [1] - 2:2

**INC** [1] - 1:3
**include** [1] - 23:14
**included** [1] - 12:12
**including** [3] - 12:23, 15:16, 17:19
**inclusive** [1] - 29:9
**individuals** [5] - 10:6, 10:7, 10:14, 15:15, 27:5
**inequitable** [19] - 4:20, 7:1, 7:5, 7:6, 7:21, 10:21, 11:23, 13:12, 13:18, 13:22, 16:13, 17:4, 21:12, 22:8, 22:10, 23:9, 24:10, 24:20, 27:14
**information** [12] - 5:7, 5:13, 6:19, 9:1, 24:14, 24:15, 24:16, 24:17, 25:12, 25:14, 25:18, 28:11
**infringement** [2] - 4:20, 7:15
**Ingram** [3] - 29:7, 29:19, 29:20
**intent** [1] - 8:3
**interrogatory** [1] - 7:20
**interrupting** [1] - 23:22
**invalidate** [1] - 21:17
**inventors** [2] - 22:10, 26:5
**involve** [1] - 23:9
**involved** [4] - 16:20, 18:6, 25:8, 27:23
**involvement** [7] - 11:20, 13:2, 14:1, 15:24, 16:14, 18:14, 26:6
**IPR** [2] - 12:14, 22:2
**IPRs** [11] - 21:7, 21:15, 21:16, 21:22, 22:3, 22:5, 22:23, 23:1, 23:11, 23:15, 23:24
**issue** [9] - 4:10, 8:13, 8:16, 13:13, 16:1, 17:4, 17:23, 19:12, 23:1
**issues** [2] - 9:13, 14:9
**ITC** [3] - 5:10, 5:13, 17:15
**ITC's** [1] - 9:16

## J

**Jack** [1] - 3:18

**jared** [1] - 11:18
**Jeff** [2] - 12:10, 25:2
**JENNIFER** [1] - 1:15
**Jennifer** [1] - 3:2
**jensen** [3] - 6:9, 7:4, 17:15
**JENSEN** [2] - 2:9, 18:21
**Jensen** [25] - 3:19, 4:10, 4:11, 4:18, 5:1, 6:6, 6:14, 6:20, 7:9, 8:13, 8:18, 8:22, 9:22, 10:23, 11:9, 12:2, 12:23, 13:24, 14:19, 15:2, 15:23, 16:2, 17:1, 17:13, 18:22
**Jensen's** [11] - 8:5, 9:9, 9:16, 11:11, 13:2, 13:15, 14:11, 15:10, 16:14, 17:5, 18:2
**jensen's** [1] - 9:7
**JOHN** [1] - 2:6
**joined** [2] - 3:10, 3:12
**JR** [1] - 2:6
**Judge** [2] - 1:16, 11:4

## K

**kept** [1] - 17:17
**Kessler** [1] - 15:22
**key** [5] - 12:15, 21:16, 21:21, 21:24, 22:4
**kind** [3] - 5:15, 23:3, 28:8
**King** [1] - 1:12
**KNOBBE** [1] - 2:8
**Knobbe** [10] - 3:20, 8:15, 11:14, 11:17, 13:15, 14:11, 19:11, 20:11, 28:7, 28:9
**Knobbe.com** [2] - 15:1, 15:2
**knowing** [1] - 6:10
**knowledge** [1] - 8:3
**Kotanagi** [1] - 23:19

## L

**label** [1] - 5:17
**lack** [1] - 13:2
**language** [1] - 28:10
**largely** [2] - 4:21, 8:6
**LARSON** [6] - 2:8, 8:14, 12:7, 16:3, 19:8, 19:23

**Larson** [2] - 3:19, 8:15
**last** [2] - 16:7, 27:8
**late** [1] - 14:24
**law** [7] - 7:17, 18:4, 20:2, 24:8, 24:19, 25:11, 26:9
**lawsuit** [3] - 8:6, 9:24, 25:8
**lawsuits** [1] - 5:9
**lead** [1] - 10:20
**leading** [1] - 21:18
**least** [1] - 21:14
**leave** [2] - 5:11, 20:5
**left** [1] - 16:10
**legal** [6] - 9:8, 9:23, 15:3, 15:8, 17:6, 18:2
**less** [1] - 10:19
**letter** [4] - 8:21, 10:5, 14:8, 14:18
**letters** [1] - 3:23
**LEZAMA** [5] - 2:9, 20:10, 23:3, 23:21, 27:9
**Lezama** [4] - 3:19, 8:17, 20:11, 27:10
**likely** [1] - 17:13
**likewise** [1] - 16:19
**limit** [1] - 9:20
**limited** [3] - 6:17, 8:2, 28:3
**line** [5] - 3:3, 3:6, 3:16, 3:18, 8:18
**list** [1] - 11:21
**listed** [2] - 17:18, 23:19
**lists** [1] - 12:2
**litigated** [1] - 7:15
**litigation** [10] - 4:22, 5:21, 5:23, 6:6, 6:21, 8:7, 14:16, 18:5, 18:7, 18:13
**LLP** [5] - 1:19, 1:21, 4:8, 19:18, 24:8
**locate** [1] - 22:20
**look** [8] - 8:22, 9:15, 10:2, 10:5, 11:8, 11:13, 12:19, 13:16
**looked** [1] - 22:21
**looking** [1] - 25:16
**Luehrs** [3] - 3:11, 19:18, 24:7
**LUEHRS** [5] - 1:22, 19:17, 24:6, 26:12, 26:15

## M

**Magic** [2] - 3:11, 4:8
**MAGIC** [4] - 1:22, 4:7, 4:17, 16:8
**management** [3] - 5:3, 5:17, 17:18
**mark** [1] - 27:10
**MARK** [1] - 2:9
**Mark** [3] - 3:19, 8:16, 20:11
**markman** [1] - 14:13
**MARTENS** [1] - 2:8
**Martens** [4] - 8:15, 11:15, 11:17, 20:11
**MASIMO** [1] - 1:6
**Masimo** [31] - 3:4, 3:16, 5:8, 6:3, 6:5, 6:6, 6:9, 7:7, 7:10, 7:16, 9:10, 10:4, 11:12, 11:20, 14:23, 15:3, 16:17, 17:1, 17:19, 17:21, 18:19, 19:7, 19:9, 19:21, 20:9, 21:20, 24:9, 24:17, 24:24, 25:14, 27:8
**Masimo's** [16] - 4:11, 5:5, 7:11, 7:19, 7:20, 10:20, 17:4, 18:3, 20:12, 21:15, 21:17, 24:12, 25:9, 25:21, 27:1, 27:13
**Masimo.com** [1] - 14:21
**materials** [3] - 21:9, 22:13, 23:12
**matter** [1] - 29:12
**matters** [3] - 4:19, 18:6, 22:11
**McLAUGHLIN** [1] - 2:5
**mean** [2] - 8:5, 27:19
**means** [2] - 10:11, 13:5
**meeting** [1] - 17:22
**meetings** [22] - 5:1, 5:3, 5:4, 5:5, 5:16, 9:3, 9:4, 9:7, 9:21, 10:2, 10:3, 10:4, 10:6, 15:5, 15:7, 16:15, 17:6, 17:8, 17:9, 17:10
**member** [3] - 5:2, 6:2, 9:19
**mentioned** [1] - 23:23
**met** [1] - 10:18
**Meyers** [5] - 12:10,

16:19, 16:23, 17:1, 25:2
**might** [2] - 20:19, 22:18
**minimum** [1] - 21:24
**minutes** [1] - 17:22
**misconduct** [1] - 8:24
**Moore** [1] - 3:9
**MOORE** [2] - 1:19, 3:8
**mostly** [1] - 6:20
**motion** [6] - 4:12, 19:9, 19:13, 22:17, 25:7, 25:15
**movants** [1] - 22:14
**move** [1] - 13:7
**moved** [1] - 19:3
**MR** [19] - 3:8, 3:17, 4:7, 4:17, 8:14, 12:7, 16:3, 16:8, 18:21, 19:8, 19:17, 19:23, 20:10, 23:3, 23:21, 24:6, 26:12, 26:15, 27:9
**multiple** [1] - 21:16

### N

**name** [1] - 7:5
**named** [1] - 22:10
**narrow** [2] - 13:9, 20:16
**narrowed** [1] - 20:18
**narrowly** [1] - 22:12
**nearly** [1] - 10:24
**need** [2] - 25:3, 25:12
**needed** [1] - 16:23
**needs** [2] - 13:6, 24:17
**negotiate** [1] - 24:24
**negotiating** [1] - 25:2
**never** [1] - 24:10
**New** [1] - 29:2
**next** [1] - 10:17
**non** [2] - 6:19, 15:3
**non-legal** [1] - 15:3
**non-privileged** [1] - 6:19
**none** [1] - 26:4
**Notary** [1] - 29:8
**notes** [1] - 29:10
**nothing** [2] - 11:7, 11:9
**nowhere** [1] - 22:16
**number** [8] - 6:2, 7:10, 9:22, 11:12, 11:15, 11:16, 12:5, 12:8
**numbers** [3] - 3:5, 14:10, 14:12

### O

**obtain** [2] - 10:11, 13:5
**obviously** [2] - 25:11, 25:18
**October** [3] - 1:10, 29:11, 29:15
**OEM** [1] - 14:23
**OF** [2] - 1:1, 29:5
**office** [1] - 7:10
**one** [9] - 10:20, 12:11, 16:9, 16:12, 19:9, 21:1, 23:20, 26:17, 26:18
**ones** [3] - 12:21, 23:8, 26:10
**ongoing** [1] - 5:8
**open** [2] - 4:9, 4:12
**opposing** [2] - 10:19, 13:6
**order** [2] - 4:5, 18:11
**ordered** [1] - 24:24
**original** [1] - 20:17
**ostensibly** [1] - 17:16
**outside** [15] - 5:20, 6:21, 17:3, 17:10, 17:18, 17:20, 18:3, 22:7, 24:8, 24:19, 25:3, 25:11, 25:21, 26:9, 28:1
**own** [5] - 5:19, 12:16, 23:14, 24:12, 25:9

### P

**P.A** [1] - 2:5
**p.m** [2] - 1:11, 28:18
**pages** [1] - 7:8
**Pages** [1] - 29:9
**papers** [4] - 4:1, 19:16, 20:14, 20:20
**part** [1] - 9:24
**participated** [1] - 11:3
**particular** [3] - 11:10, 16:7, 20:2
**particularly** [1] - 20:4
**parties** [1] - 25:7
**partners** [3] - 6:8, 7:18, 15:10
**past** [1] - 4:24
**patent** [14] - 7:10, 7:15, 11:15, 12:3, 12:16, 12:20, 13:1, 14:10, 14:12, 15:24, 23:14, 24:1, 24:3, 26:22
**patents** [16] - 7:11, 7:12, 7:19, 11:1, 11:10, 12:1, 12:4, 12:22, 16:22, 21:15, 21:17, 21:19, 23:5, 23:6, 23:8, 23:11
**pause** [3] - 7:3, 18:15, 22:17
**people** [1] - 16:21
**percipient** [2] - 4:19, 8:8
**perfect** [1] - 25:6
**person** [1] - 16:20
**personal** [1] - 15:10
**perspective** [1] - 13:24
**PETER** [1] - 1:22
**Peter** [2] - 3:11, 4:8
**PHILLIPS** [3] - 2:5, 2:6, 3:17
**Phillips** [2] - 3:18, 11:2
**phone** [1] - 19:1
**plaintiff** [2] - 3:10, 4:6
**Plaintiff** [2] - 1:4, 2:4
**play** [1] - 17:14
**point** [8] - 15:13, 16:1, 16:9, 17:21, 26:1, 26:3, 27:18
**pointed** [3] - 5:24, 12:13, 22:24
**points** [7] - 7:2, 9:3, 11:11, 15:4, 16:9, 16:11, 27:11
**POTTER** [1] - 1:19
**Potter** [1] - 3:9
**power** [1] - 12:13
**preparing** [2] - 14:13, 14:14
**president** [1] - 14:23
**presuit** [1] - 18:14
**priming** [1] - 5:4
**privileged** [7] - 6:19, 10:12, 21:10, 22:13, 25:12, 25:13, 28:11
**probative** [2] - 21:4, 22:9
**proceeding** [1] - 12:14
**proceedings** [1] - 21:7
**process** [2] - 21:8, 24:17
**product** [7] - 5:1, 5:4, 6:3, 15:11, 15:17, 16:15, 17:9
**production** [2] - 20:22, 28:4
**products** [2] - 5:5, 7:17
**proportional** [2] - 14:17, 20:4
**propose** [1] - 16:17
**proposed** [1] - 16:23
**propounded** [1] - 28:9
**prosecuted** [1] - 12:21
**prosecuting** [2] - 7:19, 16:21
**prosecution** [11] - 11:10, 12:3, 12:16, 15:24, 16:20, 20:13, 25:17, 26:6, 26:20, 26:22, 28:1
**prosecutioned** [1] - 10:23
**prosecutor** [1] - 26:21
**prosecutors** [4] - 12:21, 13:1, 16:11, 26:16
**provide** [1] - 9:23
**provided** [1] - 15:15
**providing** [2] - 12:22, 27:5
**PTO** [6] - 12:1, 21:9, 21:21, 23:10, 23:13, 26:7
**Public** [1] - 29:8
**publicly** [1] - 25:19
**purely** [1] - 17:6
**purpose** [1] - 24:11
**put** [3] - 7:13, 26:20, 26:21
**putting** [1] - 26:15

### Q

**quash** [5] - 4:12, 19:9, 19:13, 22:17, 25:15
**quashed** [1] - 25:23
**questions** [9] - 8:19, 15:19, 15:21, 18:16, 18:18, 18:23, 19:2, 19:4, 22:18
**Quin** [1] - 27:4
**quite** [1] - 28:3
**quote** [1] - 12:1

### R

**read** [2] - 19:16, 20:14
**reality** [1] - 5:15
**really** [9] - 9:12, 9:17, 10:1, 11:9, 14:14, 17:14, 17:22, 17:23, 28:3
**reasonable** [1] - 14:17
**rebut** [1] - 18:23
**recess** [1] - 28:17
**record** [7] - 10:22, 11:7, 12:3, 15:6, 25:17, 29:9
**records** [1] - 23:10
**referenced** [1] - 24:13
**references** [5] - 21:16, 22:22, 22:24, 23:4, 23:24
**referring** [1] - 12:8
**regard** [1] - 9:16
**regarding** [4] - 5:22, 14:13, 16:9, 22:2
**rejected** [2] - 17:1, 26:9
**relate** [1] - 16:13
**related** [1] - 13:12
**relating** [1] - 16:24
**released** [1] - 6:3
**relevance** [3] - 15:12, 16:14, 22:5
**relevant** [5] - 6:19, 7:4, 7:14, 21:12, 24:1
**relied** [2] - 21:21, 22:4
**remind** [1] - 4:1
**remove** [1] - 17:15
**REPORTER** [1] - 29:5
**Reporter** [1] - 29:7
**representing** [1] - 5:7
**request** [3] - 6:16, 13:8, 14:5
**requests** [5] - 13:19, 20:2, 20:22, 20:23, 28:4
**require** [1] - 10:10
**required** [2] - 5:10, 17:15
**requires** [1] - 14:2
**resign** [1] - 5:13
**resignation** [1] - 5:15
**resolved** [1] - 13:13
**response** [4] - 7:20, 19:24, 20:5, 26:3
**responsive** [1] - 26:11
**review** [1] - 25:1
**reviewed** [1] - 3:23
**revisit** [2] - 16:1, 16:22
**RFPs** [1] - 28:7
**Ricoh** [1] - 18:7
**role** [9] - 5:20, 5:22, 6:21, 9:7, 9:9, 9:16,

9:19, 17:5, 18:2
**rubric** [1] - 17:17
**rule** [1] - 14:2
**run** [2] - 13:14, 13:20

### S

**saw** [1] - 6:5
**scope** [1] - 20:16
**seal** [1] - 29:15
**search** [4] - 13:8, 13:15, 13:20, 14:8
**searching** [3] - 14:2, 14:5, 14:11
**second** [5] - 17:11, 21:7, 25:10, 25:14, 26:19
**see** [8] - 10:3, 10:6, 11:13, 11:18, 13:17, 18:15, 20:4, 23:18
**seek** [5] - 5:22, 8:9, 8:10, 21:3, 22:8
**seeking** [3] - 13:9, 14:4, 22:12
**seem** [1] - 15:12
**separately** [1] - 17:18
**sequence** [1] - 6:13
**serve** [1] - 24:18
**served** [1] - 7:7
**service** [1] - 18:9
**set** [2] - 23:20, 29:14
**sets** [1] - 23:12
**several** [1] - 4:24
**Shelton** [2] - 10:9, 13:3
**shifted** [1] - 13:23
**Shmueli** [1] - 23:20
**show** [5] - 10:10, 10:18, 13:1, 13:4, 24:21
**showing** [1] - 15:16
**shown** [1] - 10:18
**Shuqua** [1] - 15:22
**side** [4] - 8:12, 16:13, 16:16, 27:13
**simply** [4] - 11:16, 15:4, 15:14, 24:20
**situation** [1] - 8:5
**six** [1] - 20:24
**snippet** [1] - 18:1
**soon** [1] - 28:16
**specific** [2] - 20:1, 25:22
**specifically** [1] - 12:11
**speculation** [1] - 18:24
**Stacy** [3] - 29:7,

29:19, 29:20
**stand** [1] - 17:2
**standard** [2] - 10:9, 13:3
**stands** [1] - 22:7
**Stark** [1] - 11:5
**start** [2] - 8:20, 20:15
**started** [1] - 25:1
**State** [1] - 29:1
**STATES** [1] - 1:1
**States** [1] - 1:16
**stenographic** [1] - 29:10
**STEPHEN** [1] - 2:8
**STEVE** [1] - 2:9
**Steve** [5] - 3:19, 4:18, 8:15, 18:22
**stop** [1] - 15:19
**straightforward** [1] - 21:10
**Street** [1] - 1:12
**subpoena** [13] - 4:10, 4:11, 4:12, 8:17, 14:4, 18:10, 19:10, 19:13, 20:12, 20:17, 20:21, 24:8, 25:7
**subpoenaing** [1] - 16:2
**subpoenas** [9] - 13:17, 13:18, 14:6, 24:11, 24:18, 25:10, 25:20, 26:8, 28:7
**substantially** [1] - 20:18
**substantive** [2] - 15:23, 26:6
**sum** [1] - 8:4
**support** [1] - 13:20
**supported** [2] - 14:6, 15:4
**supporting** [1] - 8:23
**supposedly** [1] - 28:11
**surprising** [1] - 10:1
**switch** [1] - 19:12

### T

**tailored** [1] - 22:12
**Tanagi** [1] - 23:19
**targeted** [2] - 22:2, 27:24
**teleconference** [2] - 3:4, 4:3
**TERHUFEN** [1] - 2:3
**Terhufen** [1] - 3:13
**terms** [4] - 13:8, 13:15, 13:21, 14:8

**test** [2] - 22:1, 27:24
**testified** [2] - 9:8, 11:2
**testimony** [6] - 9:5, 11:6, 13:5, 15:6, 18:1
**THE** [23] - 1:1, 1:1, 1:15, 3:1, 3:14, 3:21, 4:15, 8:11, 11:22, 15:20, 16:5, 18:17, 19:4, 19:14, 19:20, 20:7, 22:20, 23:17, 24:2, 25:24, 26:14, 27:6, 28:13
**theories** [1] - 23:9
**therefore** [1] - 26:7
**they've** [5] - 24:10, 26:1, 26:17, 27:20, 28:8
**third** [2] - 25:7, 25:16
**three** [4] - 20:23, 22:22, 22:24, 23:23
**Tiani** [1] - 10:16
**Tilling** [1] - 27:4
**took** [1] - 6:20
**topics** [9] - 13:21, 20:3, 20:24, 21:1, 21:2, 21:10, 22:21, 28:5, 28:8
**totally** [1] - 25:22
**touched** [1] - 18:4
**toward** [2] - 25:5, 27:1
**tracks** [1] - 15:14
**transcript** [1] - 29:10
**transitioned** [1] - 10:23
**treat** [1] - 14:19
**trial** [1] - 4:3
**tried** [1] - 10:18
**true** [1] - 29:9
**trying** [1] - 23:18
**TUCKER** [1] - 2:3
**Tucker** [1] - 3:12
**turn** [6] - 7:1, 8:12, 16:6, 19:6, 20:8, 27:7
**turning** [2] - 10:21, 27:17
**two** [6] - 16:11, 17:6, 21:4, 21:9, 23:4, 24:13

### U

**unaware** [1] - 21:23
**under** [4] - 5:16, 17:17, 26:23, 28:15
**undisputed** [2] - 9:6, 15:6

**unfounded** [1] - 25:23
**UNITED** [1] - 1:1
**United** [1] - 1:16
**unless** [2] - 4:4, 15:18
**up** [4] - 8:4, 26:16, 26:20, 26:21
**US** [1] - 12:1
**useless** [1] - 25:6
**utility** [5] - 23:5, 23:8, 24:1, 24:3, 26:20

### V

**various** [2] - 5:8, 15:15
**versus** [1] - 3:4
**vice** [1] - 14:22
**view** [2] - 8:3, 17:24
**views** [1] - 17:13

### W

**W1** [3] - 9:10, 9:12, 15:15
**wants** [3] - 24:14, 24:16
**warranted** [1] - 18:9
**watch** [6] - 5:5, 5:7, 6:3, 9:10, 9:11, 9:12
**week** [2] - 10:17, 26:18
**welcome** [2] - 3:15, 3:22
**whereby** [1] - 16:17
**WHEREOF** [1] - 29:14
**willful** [1] - 4:19
**willfulness** [3] - 6:11, 6:24, 16:16
**Wilmington** [2] - 1:12, 29:16
**wished** [1] - 5:11
**withheld** [2] - 12:17, 23:13
**witness** [4] - 4:19, 8:8, 26:20, 26:22
**WITNESS** [1] - 29:14
**witnesses** [2] - 26:23, 27:3
**word** [2] - 16:7, 27:8
**words** [1] - 24:12

### Y

**years** [6] - 4:24, 6:3, 7:16, 10:24, 14:22