# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | C.A. No. 22-1378-MN-JLH |
| v. | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | |
| *Counter-Claimants*, | |
| v. | |
| APPLE INC. | |
| *Counter-Defendant*. | |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF MOTION FOR STAY PENDING *INTER PARTES* REVIEW

December 20, 2023

Of Counsel:

Joseph R. Re
Stephen C. Jensen
Irfan A. Lateef
Stephen W. Larson
Benjamin A. Katzenellenbogen
Edward M. Cannon
Brian C. Claassen
Jared C. Bunker
Mark Lezama
Kendall M. Loebbaka
Douglas B. Wentzel
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

PHILLIPS MCLAUGHLIN & HALL, P.A.

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
irfan@knobbe.com
stephen.larson@knobbe.com
ben.katzenellenbogen@knobbe.com
ted.cannon@knobbe.com
brian.claassen@knobbe.com
jared.bunker@knobbe.com
mark.lezama@knobbe.com
kendall.loebbaka@knobbe.com
douglas.wentzel@knobbe.com

Brian Horne
Knobbe, Martens, Olson & Bear, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
Daniel P. Hughes
Knobbe, Martens, Olson & Bear, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com
Daniel.hughes@knobbe.com

Carol M. Pitzel Cruz
Knobbe, Martens, Olson & Bear, LLP
925 4th Ave., #2500
Seattle, WA 98104
206-405-2000 Telephone
206-405-2001 Facsimile
carol.pitzelcruz@knobbe.com

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ........................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

III.   STATEMENT OF FACTS ............................................................................. 2

IV.   SUMMARY OF ARGUMENT ...................................................................... 2

V.    LEGAL STANDARDS .................................................................................. 3

VI.   ARGUMENT .................................................................................................. 3

    A.    Factor 1:  A Stay Would Simplify The Case ........................................ 3

         1.    The IPRs Would Likely Eliminate The Need For Trial Of
             Many Asserted Claims ................................................................ 4

         2.    The Court Would Benefit From The USPTO's Guidance On
             Any Surviving Claims ................................................................ 4

         3.    IPR Claim Amendments Would Affect Liability ...................... 5

         4.    The Claims of The Non-Instituted Patents Overlap
             Substantially With The Claims of The Instituted Patents ......... 6

    B.    Factor 2:  Expert Discovery Is Ongoing And A Trial Date Has Not
        Been Set ............................................................................................. 10

    C.    Factor 3:  A Stay Would Not Unduly Prejudice Or Tactically
        Disadvantage Apple ........................................................................... 10

         1.    Masimo Promptly Petitioned For IPR ..................................... 11

         2.    Masimo Promptly Moved For a Stay ....................................... 11

         3.    The Status Of The Four Instituted IPRs Favors A Stay .......... 11

         4.    The Relationship Of The Parties Warrants A Stay .................. 12

    D.    Factor 4:  A Stay Would Greatly Reduce the Burden Of Litigation ... 13

## TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

E.      Apple Routinely Asks and Receives Stays Pending IPR ..................................... 13

VII.    CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page No(s).**

*ACQUIS, LLC v. EMC Corp.*,
  109 F. Supp. 3d 352 (D. Mass. 2015) ..........................................................................6

*AIP Acquisition LLC v. Level 3 Commc'ns, LLC*,
  No. CV 12-1688-GMS, 2014 WL 12642000 (D. Del. Jan. 9, 2014).........................4

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017)..................................................................................5

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
  No. 12-CV-1107 (GMS), 2014 WL 1369721 (D. Del. Apr. 7, 2014) ....................10

*British Telecomms. PLC v. IAC/InterActiveCorp*,
  No. CV 18-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27, 2019).......................4

*In the Matter of Certain Light-Based Physiological Measurement Devices*
*& Components Thereof Comm'n Opinion*,
   USITC Inv. No. 337-TA-1276, 2023 WL 7213308 (Nov. 14, 2023) ...................13

*Contour IP Holding, LLC v. GoPro, Inc.*,
  No. CV 15-1108-LPS-CJB, 2016 WL 4474340 (D. Del. July 14, 2016) ................6

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  No. CV 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) .......................10

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983)..................................................................................4

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) .................... *passim*

*PACT XPP Schweiz AG v. Intel Corp.*,
  No. 1:19-cv-01006-JDW, 2020 WL 13119705 (D. Del. Nov. 5, 2020) ...................6

*Princeton Digit. Image Corp. v. Konami Digit. Ent., Inc.*,
  No. 12-cv-1461, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ....................10, 11, 12

*RideShare Displays, Inc. v. Lyft, Inc.*,
  No. CV 20-1629-RGA-JLH, 2021 WL 7286931 (D. Del. Dec. 17, 2021)...............3

*Signal IP v. Am. Honda Motor Co.*,
  No. LA CV 14-02454-JAK, 2016 WL 4870346 (C.D. Cal. Mar. 4, 2016) ..............4

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page No(s).**

*SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc.*,
  No. 21-721-CFC, 2021 WL 7628181 (D. Del. Dec. 20, 2021) ..........................................3, 10

*Smart Mobile Techs. LLC v. Apple Inc.*,
  No. 6:21-CV-00603-ADA, 2023 WL 5051374 (W.D. Tex. Aug. 8, 2023).............................14

*Software Rights Archive LLC v. Facebook, Inc.*,
  No. C-12-3970-72, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013)..........................................6

*Speir Techs. Ltd. v. Apple, Inc.*,
  No. 5:23-CV-00095-EJD, 2023 WL 2714931 (N.D. Cal. Mar. 30, 2023) ..............................14

*Studer Pro. Audio GmbH v. Calrec Audio Ltd.*,
  No. 2:12–CV–02278, 2012 WL 3061495 (D.N.J. July 25, 2012) ..........................................12

*Uniloc 2017 LLC v. Hulu, Inc.*,
  966 F.3d 1295 (Fed. Cir. 2020)...............................................................................................5

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014)..............................................................................................12

**OTHER AUTHORITIES**

§101....................................................................................................................................5

§ 102...................................................................................................................................5

§ 103...................................................................................................................................5

35 U.S.C. § 315..................................................................................................................11

35 U.S.C. § 316.............................................................................................................11, 13

35 U.S.C. § 318....................................................................................................................6

37 CFR § 42.100...........................................................................................................2, 11, 13

## I.       INTRODUCTION

The USPTO has instituted *inter partes* review ("IPR") on Apple's '257, '352, '491, and '783 utility patents.  Because these IPRs will simplify or eliminate the issues for trial, the Court should stay the case, pending final disposition of these IPRs, with respect to all of Apple's utility patent claims (Apple's '054, '257, '352, '483, '491, and '783 patents).[1]

## II.       NATURE AND STAGE OF THE PROCEEDINGS

On October 20, 2022, Apple filed two cases against Masimo and Sound United.  Civil Action No. 22-1377-MN-JLH (the "-1377 Case"); Civil Action No. 22-1378-MN-JLH (the "-1378 Case").  In the -1377 Case, Apple alleges infringement of four design patents.  -1377 Case, D.I. 1. In the -1378 Case, Apple alleges infringement of six utility patents (Counts I-VI).  Masimo answered on December 12, 2022.  In the -1378 case, Masimo asserted antitrust, false advertising, unfair competition, and patent infringement counterclaims of ten utility patents.  -1378  Case, D.I. 15.  The Court stayed Masimo's claims on five patents pending an International Trade Commission investigation against Apple involving those patents.  -1378 Case, D.I. 25.

The Court issued a scheduling order on May 25, 2023.  -1378 Case, D.I. 92. Under that schedule, the Court conducted a claim construction hearing on September 14, 2023.  Shortly after that, on September 21, 2023, the Court amended the schedule.  -1378 Case, D.I. 359.  Under the current schedule: (1) fact discovery closed on November 9, 2023; (2) the parties served opening expert reports on November 22, 2023 (including infringement and invalidity); (3) the parties served rebuttal expert reports on December 15, 2023; (4) reply expert reports are due January 5,

---

[1] U.S. Patent No. 10,076,257 ("the '257 patent"), U.S. Patent No. 10,627,783 ("the '783 patent"), U.S. Patent No. 10,942,491 ("the '491 patent"), U.S. Patent No. 10,987,054 ("the '054 patent"), U.S. Patent No. 11,106,352 ("the '352 patent"), and U.S. Patent No. 11,474,483 ("the '483 patent").  -1378 Case, D.I. 1.

2024; (5) expert discovery closes January 30, 2024; (6) dispositive and *Daubert* motions are due February 5, 2024; and (7) the Court will conduct a Case Management Conference on March 20, 2024. *Id*. The Court has not construed the claims, scheduled a Pretrial Conference, or set a trial date. *Id*.

## III.   STATEMENT OF FACTS

Between February 27, 2023, and April 4, 2023, Masimo filed IPR petitions for each of the six utility patents Apple asserted in this case. Cannon Decl. ¶¶ 3-9. Between September 18, 2023, and October 16, 2023, the USPTO instituted IPRs on all asserted claims of the '783, '352, '491, and '257 patents. Cannon Exs. 1, 3, 5, 6. The USPTO denied institution for the '054 and '483 patents. Cannon Exs. 2, 8. The USPTO issued the last IPR institution decision, on November 21, 2023. Cannon Ex. 8.

Because the latest USPTO IPR institution occurred on October 16, 2023, the USPTO should issue final written decisions in all four instituted IPRs by October 16, 2024. *See* 37 CFR § 42.100(c) ("An inter partes review proceeding shall be administered such that pendency before the USPTO after institution is normally no more than one year.").

## IV.   SUMMARY OF ARGUMENT

The Court should stay all of Apple's utility-patent-infringement claims until final disposition of Masimo's instituted IPR petitions. The USPTO will likely find at least some claims unpatentable. Even if the USPTO were to find other claims patentable, any such finding would likely be based on narrowing claim constructions. Those constructions would be relevant to Apple's infringement claims in this Court. The IPR decisions, and Apple's arguments during those proceedings, could also affect the scope of the non-instituted '054 and '483 patents, which share overlapping claimed subject matter with patents in instituted IPRs. Moreover, the '483 patent

shares the same specification as the '491 and '783 patents.  The Court has not set a trial date or issued a claim construction order, and the parties have not filed dispositive motions.  Accordingly, a stay pending final disposition in the four pending IPRs would benefit the Court and the parties by simplifying the issues and saving the Court's and parties' resources.

## V.   LEGAL STANDARDS

In determining whether to issue a stay pending IPR, district courts consider several factors: (1) whether a stay would simplify issues and trial of the case; (2) whether discovery is complete and a trial date has been set; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc.*, No. 21-721-CFC, 2021 WL 7628181, at *1 (D. Del. Dec. 20, 2021).  Courts may also consider whether a stay would reduce the burden of litigation on the parties and the court.  *Id.*

Courts have recognized a "liberal policy" in favor of granting motions to stay cases pending the outcome of Patent Office proceedings such as IPRs.  *See*, *e.g.*, *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *4 (D. Del. Aug. 21, 2019) (collecting cases).

## VI.   ARGUMENT

### A.   Factor 1:  A Stay Would Simplify The Case

This Court has recognized "there are several ways in which a stay pending [USPTO] review may simplify the issues for trial" and that "courts in this district and others often grant stays once an IPR is instituted."  *RideShare Displays, Inc. v. Lyft, Inc.*, No. CV 20-1629-RGA-JLH, 2021 WL 7286931, at *1 (D. Del. Dec. 17, 2021).  Here, a stay would simplify the case because (1) the IPRs would likely eliminate the need for trial of many asserted claims, (2) the Court would benefit from the USPTO's guidance on any claims that survive; (3) any IPR claim amendments

would affect liability and damages; and (4) the non-instituted claims have substantial overlap with the instituted claims.  Moreover, Apple routinely requests and obtains such stays where it is a defendant.  Indeed, Apple has filed over 100 such requests for a stay.

1.  **The IPRs Would Likely Eliminate The Need For Trial Of Many Asserted Claims**

Masimo's instituted IPRs challenge every asserted claim of their respective patents.  The USPTO's institution decisions found a reasonable likelihood that Masimo would prevail.  Cannon Ex. 1 at 2; Cannon Ex. 3 at 2; Cannon Ex. 5 at 2; Cannon Ex. 6 at 2.  Thus, the instituted IPRs will likely eliminate a substantial portion of the dispute.  This simplification favors a stay.  *AIP Acquisition LLC v. Level 3 Commc'ns, LLC*, No. CV 12-1688-GMS, 2014 WL 12642000, at *2 (D. Del. Jan. 9, 2014) ("[A] stay will allow the court and the parties to avoid wasting resources . . . to address claims that have a 'reasonable likelihood' of being amended or canceled."); *Signal IP v. Am. Honda Motor Co.*, No. LA CV 14-02454-JAK (JEMx), 2016 WL 4870346, at *3 (C.D. Cal. Mar. 4, 2016).

2.  **The Court Would Benefit From The USPTO's Guidance On Any Surviving Claims**

The USPTO's decisions often provide expert guidance as to any surviving claims.  *See*, *e.g.*, *IOENGINE*, 2019 WL 3943058, at *10 (collecting cases finding that the USPTO's expert guidance is invaluable to courts even when the USPTO does not invalidate all claims); *British Telecomms. PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2019 WL 4740156, at *8 (D. Del. Sept. 27, 2019); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert

view of the PTO (when a claim survives the reexamination proceeding).").  In a pending case between the parties in California, Apple successfully argued that the court should grant a stay pending IPR even before institution because "if any claims survive, the scope of claims will likely have been narrowed to distinguish prior art."  Ex. 7 at 1 (Apple CD Cal Stay Brief).

Here, Apple's patentability arguments in the IPRs will constitute additional prosecution history that may limit the claims.  *See IOENGINE*, 2019 WL 3943058, at *10; *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer.").  Notably, in its Claim Construction briefing, Apple relied upon Masimo's arguments in the IPR petitions.  -1378 Case, D.I. 294 at 66 ("ceramic"), 71 ("biosensor module"), 74 ("transparent"), 84 ("near-field communication system").  While the parties' IPR arguments are relevant, the USPTO's final written decisions would provide persuasive guidance.

### 3. IPR Claim Amendments Would Affect Liability

Apple moved to amend some unasserted claims of the '352 patent.  Cannon Ex. 4.  Apple does not seek to amend any of the asserted '352 claims.  However, the proposed amended claims are all dependent on one of asserted claims 1, 9, and 17.  Thus, any challenge to those proposed amended claims will likely affect the asserted claims.  For example, Masimo could challenge the amended claims based on §101.  *See Uniloc 2017 LLC v. Hulu, Inc.*, 966 F.3d 1295, 1305–07 (Fed. Cir. 2020) (holding that petitioners may challenge proposed substitute claims outside of §§ 102 and 103).  If the USPTO rules that the amended claims are unpatentable based on §101, then the asserted claims would likely be invalid under §101 too.

Apple also intends to amend at least some claims of the '257 patent. Cannon Ex. 7. Further litigation on these the current claims (before any approved amendments) would waste resources because their scope may change by such amendments. In addition, claim amendments during the '257 IPR can create intervening rights. 35 U.S.C. § 318(c); *Software Rights Archive LLC v. Facebook, Inc.*, No. C-12-3970-72, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013).

4.    **The Claims of The Non-Instituted Patents Overlap Substantially With The Claims of The Instituted Patents**

Courts often stay cases even when the USPTO does not institute IPR on some of the patents-in-suit where the instituted claims overlap substantially with the claims of the non-instituted patents. *See PACT XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv-01006-JDW, 2020 WL 13119705, at *1 (D. Del. Nov. 5, 2020) (staying litigation where IPR was instituted on 10 of the 12 patents-in-suit); *Contour IP Holding, LLC v. GoPro, Inc.*, No. CV 15-1108-LPS-CJB, 2016 WL 4474340, at *3 (D. Del. July 14, 2016) (simplification factor favors stay even where some claims are not before the USPTO because those claims contain "terms identical or similar to terms found in claims instituted for review"); *ACQUIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357-58 (D. Mass. 2015) (stay granted even though only two of 11 patents-in-suit and only 3 of the 22 claims were challenged in IPRs, but there was "significant overlap among the patents-in-suit").

Here, the instituted IPRs would likely simplify issues for the non-instituted '483 and '054 patents because the '483 and '054 patents overlap with patents in the instituted IPRs. For example, the '483 patent shares the same specification, inventors, and provisional application as the instituted '491 and '783 patents. Further, the '054 patent relates to the same technology as those three patents, namely, wearable electronic devices with ECG and optical health-monitoring functionality. *See* '054, '483, '491, and '783 patents, at Abstract.

Significantly, claim language in the '483 and '054 patents overlaps with claim language in the '491 and '783 patents. For example, claim 1 of the '483 patent includes claim limitations similar to the challenged claims of the instituted '491 patent:

| '483 Patent Claim 1 | '491 Patent Claims 1-3 |
|---|---|
| 1. A wearable electronic device comprising: a housing defining a first opening and a second opening; a display positioned at least partially within the first opening; a front cover positioned over the display and defining at least a portion of a front exterior surface of the wearable electronic device; a biosensor module comprising: a rear cover positioned at least partially within the second opening and defining an optically transparent window and a protruding convex surface; an optical sensor aligned with the optically transparent window; a first electrode positioned along a rear surface of the wearable electronic device; and a second electrode positioned along the rear surface of the wearable electronic device; and a third electrode positioned along a side of the wearable electronic device, wherein: the wearable electronic device is configured to measure a first physiological parameter of a wearer using the optical sensor; and the wearable electronic device is configured to measure a second physiological parameter using the first electrode, the second electrode, and the third electrode. | 1. An electronic watch comprising: a housing formed from a metal material and defining a rear opening along a rear portion of the housing; a touch-sensitive display positioned at least partially within the housing; a band coupled to the housing and configured to couple the electronic watch to a user; a cover formed from a dielectric material and forming a seal along the rear opening of the housing; an optical sensor positioned within the housing and configured to transmit an optical signal through the dielectric material of the cover; a charging coil positioned within the housing and configured to receive wireless power through the dielectric material of the cover; a first electrode positioned along a rear surface of the electronic watch; and a second electrode positioned along the rear surface of the electronic watch, wherein: the electronic watch is configured to measure a heart rate using the optical sensor; and the electronic watch is configured to measure an electrocardiogram using the first electrode and the second electrode. 2. The electronic watch of claim 1, wherein: the cover defines at least one window for the optical sensor; and the cover protrudes outward from a rear housing surface of the housing. 3. The electronic watch of claim 1, wherein: |

|  | the cover is formed from a transparent substrate; and<br><br>   the transparent substrate comprises one or more of a glass or a sapphire material. |
|---|---|

Multiple limitations highlighted above are material to disputed infringement and validity issues.  For example, the parties dispute whether the prior art and the accused products satisfy the limitations requiring (1) a "transparent" substrate or window (orange highlight) and (2) a "display positioned at least partially within" the housing or first opening (green highlight).  Apple's Final Response to Masimo's Invalidity Contentions at 454-55 ("display"), 456-58 ("transparent"); Masimo's Final Non-Infringement Contentions, Appendix F-1 at 1-3.  Further, the parties dispute the construction of "transparent" (orange highlight).  -1378 Case, D.I. 294 at 51-64.

Similarly, claim 1 of the '054 patent includes claim limitations similar to the challenged claims of the instituted '491 patent:

| '054 Patent Claim 1 | '491 Patent Claims 1 and 3 |
|---|---|
| 1. An electronic watch comprising:<br>   a housing member;<br>   a display at least partially enclosed by the housing member;<br>   a carrier assembly coupled to the housing member and comprising:<br>   a carrier member formed from a transparent material;<br>   a first electrode positioned on the carrier member, operably coupled to the processor and configured to detect a first voltage; and<br>   a second electrode positioned on the carrier member, operably coupled to the processor and configured to detect a second voltage, the first and second electrodes at least partially surrounding a first region of the carrier member and a second region of the carrier member; | 1. An electronic watch comprising:<br>   a housing formed from a metal material and defining a rear opening along a rear portion of the housing;<br>   a touch-sensitive display positioned at least partially within the housing;<br>   a band coupled to the housing and configured to couple the electronic watch to a user;<br>   a cover formed from a dielectric material and forming a seal along the rear opening of the housing;<br>   an optical sensor positioned within the housing and configured to transmit an optical signal through the dielectric material of the cover;<br>   a charging coil positioned within the housing and configured to receive wireless power through the dielectric material of the cover; |

| | |
|---|---|
| a light emitter positioned below the first region of the carrier member; a light receiver positioned below the second region of the carrier member and configured to receive light reflected from a wrist; a third electrode coupled to the housing member, operably coupled to the processor, and configured to detect a third voltage; and the processor positioned within the electronic watch and configured to determine an electrocardiogram using the first voltage, the second voltage, and the third voltage. | a first electrode positioned along a rear surface of the electronic watch; and a second electrode positioned along the rear surface of the electronic watch, wherein: the electronic watch is configured to measure a heart rate using the optical sensor; and the electronic watch is configured to measure an electrocardiogram using the first electrode and the second electrode. <br><br> 3. The electronic watch of claim 1, wherein: the cover is formed from a transparent substrate; and the transparent substrate comprises one or more of a glass or a sapphire material. |

As with the '483 patent, the overlapping limitations between the '054 and '491 patents are material to infringement and validity disputes in this case. The parties dispute whether the prior art and the accused products satisfy the overlapping limitations requiring (1) a "transparent" substrate or material (orange highlight) and (2) a "display positioned at least partially within" the housing or first opening (green highlight). Apple's Final Response to Masimo's Invalidity Contentions at 221 ("display"), 222-24 ("transparent"); Masimo's Final Non-Infringement Contentions, Appendix D-1 at 1-2 ("transparent"), Appendix F-1 at 1 ("display"). As stated above, the parties also dispute the construction of "transparent." -1378 Case, D.I. 294 at 51-64.

As a result, resolving the instituted IPRs could simplify issues for the non-instituted patents. *See, e.g.*, *IOENGINE*, 2019 WL 3943058, at *9 (where multiple patents share common specification, the USPTO's analysis of one of the patents concerning claim construction and its "assessment of the art will likely be instructive in the district court litigation.").

**B.**     **Factor 2:  Expert Discovery Is Ongoing And A Trial Date Has Not Been Set**

Generally, motions to stay are granted when a case is in the early stages of litigation. *Princeton Digit. Image Corp. v. Konami Digit. Ent., Inc.*, No. 12-cv-1461, 2014 WL 3819458, at *3 (D. Del. Jan 15, 2014).  In *Ethicon LLC v. Intuitive Surgical, Inc.*, this Court analyzed a stay request filed after fact discovery was complete and expert discovery was nearly concluded. *Ethicon LLC v. Intuitive Surgical, Inc.*, No. CV 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019).  The Court found the case was at "an efficient stopping point" because, despite the stage of the case, a stay would likely simplify the issues for trial.  *Id*.

Similarly, here, fact discovery is complete and expert discovery is ongoing.  Moreover, the Court has not construed the claims or set trial dates, and the parties have not filed dispositive motions.  As such, the case is at an efficient stopping point, and a stay would not disrupt the case. Instead, a stay would save the Court and parties from unnecessary work.  Once the USPTO issues its decisions, the parties can litigate the validity and infringement of any surviving asserted claims without the need to conduct fact or expert discovery.  Therefore, a stay would "advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."  *SITO Mobile*, 2021 WL 7628181, at *2.  Just as in *Ethicon*, this case is at an efficient stopping point.

**C.**     **Factor 3:  A Stay Would Not Unduly Prejudice Or Tactically Disadvantage Apple**

"Potential delay does not in itself establish undue prejudice to the non-movant."  *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc*., No. 12-CV-1107 (GMS), 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014).  "This Court has analyzed whether a plaintiff would suffer undue prejudice (and whether a defendant would gain an unfair tactical advantage) if a stay is granted by examining four factors: (1) the timing of the request for review; (2) the timing of the

request for stay; (3) the status of the review proceeding; and (4) the relationship of the parties."
*Princeton*, 2014 WL 3819458, at *4.

### 1.   Masimo Promptly Petitioned For IPR

Masimo petitioned for IPR well before the statutory deadline imposed by 35 U.S.C. § 315(b).  Masimo petitioned for IPRs on all asserted claims of the asserted patents by April 4, 2023, less than six months after Apple filed its complaint.  Cannon Decl. ¶¶ 3-9.  As this Court has explained, "a delay of six months from the filing of the complaint is not unreasonable." *IOENGINE*, 2019 WL 3943058, at *6.

### 2.   Masimo Promptly Moved For a Stay

Masimo is promptly requesting a stay.  The USPTO issued its institution decision on the last of the IPRs on November 21, 2023.  Cannon Ex. 8.  Masimo filed this motion in just one month after receiving the final institution decision even though it was simultaneously responding to numerous expert reports served by Apple.  Masimo's decision to file this motion after the USPTO issued institution decisions on all IPRs was reasonable because it allows the Court to assess the likelihood that the IPRs will simplify the issues.  Indeed, Apple itself has urged another district court to defer deciding a pending motion to stay until after the USPTO issued its institution decision.  Cannon Ex. 11 at 1.  Apple thus admits that obtaining institution decisions before filing a motion to stay is reasonable.

### 3.   The Status Of The Four Instituted IPRs Favors A Stay

Masimo does not seek a stay based on IPR petitions alone.  Rather, the USPTO had instituted four of Masimo's IPR petitions by October 16, 2023.  The USPTO should issue its final written decisions on these IPRs by October 16, 2024.  35 U.S.C. § 316(a)(11); 37 CFR § 42.100(c).  If this Court does not stay Apple's utility-patent claims, final written decisions could come at the

time of trial or during post-trial motion practice. Because instituted IPR decisions likely will affect the litigation, this factor favors a stay. *See IOENGINE*, 2019 WL 3943058, at *6. In the parties' previous case in California, Apple argued that "[t]he shortened timeline of IPR proceedings also ensures that any stay granted by the Court will be relatively short, which reduces the likelihood of undue prejudice or tactical disadvantage to Plaintiffs." Cannon Ex. 9 at 17.

### 4. The Relationship Of The Parties Warrants A Stay

Apple and Masimo are competitors in the health watch market. *See* -1378 Case, D.I. 15 ¶¶ 166-172. Where the parties are competitors, this sub-factor typically weighs against a stay. *Princeton*, 2014 WL 3819458, at *6. However, courts may weigh this factor in favor of a stay, even when the parties are competitors, when the patentee does not move for a preliminary injunction. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014); *Studer Pro. Audio GmbH v. Calrec Audio Ltd.*, No. 2:12–CV–02278, 2012 WL 3061495, at *2 (D.N.J. July 25, 2012) (concluding that a stay would not unduly prejudice a plaintiff that did not seek a preliminary injunction, even where the parties were direct competitors). Here, Apple did not move for a preliminary injunction, demonstrating that a stay would not prejudice Apple. In the parties' pending California case, Apple argued that Masimo's failure to seek a preliminary injunction weighed in favor of a stay. Cannon Ex. 9 at 17.

Further, Apple moved for an expedited trial of its design-patent case ***only***, not the utility patents at issue here. -1377 Case, D.I. 44 at 1-2. In that motion, Apple argued that such an expedited trial for its design patent case would mitigate alleged irreparable harm caused by Masimo's alleged infringement of the design patents. But Apple was silent about irreparable harm arising from any possible infringement of the utility patents, which are the only patents Masimo seeks to stay in this motion. *Id*. Therefore, Apple implicitly accepted the delay in the trial of the

utility patents. *Id*.  Apple's lack of urgency in prosecuting its utility-patent case also shows that a stay would not significantly prejudice Apple.  Indeed, Apple initially proposed a trial date of March 3, 2025, for the utility-patent case. -1378 Case, D.I. 66, Ex. 1 at 18.  The IPR proceedings at the USPTO should be completed in October 2024—five months before Apple's originally proposed trial date.  *See* 35 U.S.C. § 316(a)(11); 37 CFR § 42.100(c).  Thus, because Apple initially sought to have its design patents and utility patents tried separately, it will suffer no tactical disadvantage from a stay on the utility patents.  Moreover, in the parties' pending California case, Apple successfully argued that Masimo would suffer no tactical disadvantage from having its trade secret and patent infringement cases tried separately. Cannon Ex. 9 at 19.

Therefore, all of these sub-factors weigh in favor of a stay.

## D.      Factor 4:  A Stay Would Greatly Reduce the Burden Of Litigation

This case involves claims for infringement of eleven utility and four design patents, as well as antitrust, false advertising, and unfair competition claims—not including the five Masimo patents that are currently stayed pending the ITC investigation.  The large number of claims imposes a significant burden on the Court and the parties.  As the Court has explained, this case is taking up a disproportionately high share of the Court's limited resources.  -1378 Case, D.I. 376 (Transcript of September 1 Discovery Conference) at 4.  Masimo agrees.  A stay would reduce that burden.

## E.      Apple Routinely Asks and Receives Stays Pending IPR

As discussed, Apple successfully sought a stay pending IPRs on Masimo's patents in the parties' patent and trade secret case in the Central District of California. Cannon Ex. 10 (granting Apple's motion).  Moreover, Apple has moved for stays pending its IPR petitions in over 100 cases. Cannon Ex. 12.  Courts have granted most of these requests.  *Id*.  Further, Apple frequently

seeks to stay all asserted patents even when the USPTO instituted IPR of only a subset of those patents.  *See*, *e.g.*, *Smart Mobile Techs. LLC v. Apple Inc.*, No. 6:21-CV-00603-ADA, 2023 WL 5051374 (W.D. Tex. Aug. 8, 2023); *Speir Techs. Ltd. v. Apple, Inc.*, No. 5:23-CV-00095-EJD, 2023 WL 2714931 (N.D. Cal. Mar. 30, 2023).  Thus, a stay here would be consistent with Apple's positions in its stay requests.

## VII.   CONCLUSION

Because the USPTO has instituted IPR on the '257, '352, '491, and '783 patents, this Court should stay the case concerning all of Apple's utility patents.  Obtaining a final decision on these IPRs will significantly simplify and clarify the issues without undue prejudice to Apple. Additionally, obtaining final disposition of the IPRs avoids (1) wasting limited judicial resources on issues that may be resolved by the Patent Office; (2) wasting the public's resources on obtaining a potentially moot jury verdict; and (3) duplicating the parties' efforts in two different forums. Thus, the totality of the circumstances justifies a stay of Apple's utility patent case.

|  |  |
|---|---|
|  | Respectfully submitted, |
| December 20, 2023 | PHILLIPS MCLAUGHLIN & HALL, P.A. |
| Of Counsel: |  |
|  | By: */s/ John C. Phillips, Jr.* |
| Joseph R. Re | John C. Phillips, Jr. (No. 110) |
| Stephen C. Jensen | Megan C. Haney (No. 5016) |
| Stephen W. Larson | 1200 North Broom Street |
| Benjamin A. Katzenellenbogen | Wilmington, DE 19806 |
| Edward M. Cannon | (302) 655-4200 Telephone |
| Brian C. Claassen | (302) 655-4210 Fax |
| Jared C. Bunker | jcp@pmhdelaw.com |
| Mark Lezama | mch@pmhdelaw.com |
| Kendall M. Loebbaka |  |
| Douglas B. Wentzel | *Counsel for Defendants* |
| Knobbe, Martens, Olson & Bear, LLP | *Masimo Corporation and Sound United, LLC* |
| 2040 Main Street, 14th Floor |  |
| Irvine, CA  92614 |  |
| (949) 760-0404 Telephone |  |

(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
stephen.larson@knobbe.com
ben.katzenellenbogen@knobbe.com
ted.cannon@knobbe.com
brian.claassen@knobbe.com
jared.bunker@knobbe.com
mark.lezama@knobbe.com
kendall.loebbaka@knobbe.com
douglas.wentzel@knobbe.com

Brian Horne
Knobbe, Martens, Olson & Bear, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
Daniel P. Hughes
Knobbe, Martens, Olson & Bear, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com
Daniel.hughes@knobbe.com

Carol M. Pitzel Cruz
Knobbe, Martens, Olson & Bear, LLP
925 4th Ave., #2500
Seattle, WA 98104
206-405-2000 Telephone
206-405-2001 Facsimile
carol.pitzelcruz@knobbe.com