EXHIBIT 3

Trials@uspto.gov                                              Paper 8
571-272-7822                                  Date: September 20, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

MASIMO CORPORATION,
Petitioner,

v.

APPLE INC.,
Patent Owner.

———————

IPR2023-00664
Patent 11,106,352 B2

———————

Before KEN B. BARRETT, JOSIAH C. COCKS, and
ROBERT L. KINDER, *Administrative Patent Judges*.

KINDER, *Administrative Patent Judge*.

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2023-00664
Patent 11,106,352 B2

## I.      INTRODUCTION

### *A. Background and Summary*

Masimo Corporation ("Petitioner")[1] filed a Petition requesting *inter partes* review of U.S. Patent No. 11,106,352 B2 ("the '352 patent," Ex. 1001).  Paper 1 ("Pet.").  The Petition challenges the patentability of claims 1–24 of the '352 patent.  Apple Inc. ("Patent Owner")[2] did not file a Preliminary Response to the Petition.

We have authority to determine whether to institute an *inter partes* review, under 35 U.S.C. § 314 and 37 C.F.R. § 42.4.  An *inter partes* review may not be instituted unless it is determined that "the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314 (2018); *see also* 37 C.F.R. § 42.4(a) ("The Board institutes the trial on behalf of the Director.").

For the reasons provided below and based on the record before us, we determine that Petitioner has demonstrated a reasonable likelihood that Petitioner would prevail in showing the unpatentability of at least one of the challenged claims.  Accordingly, we institute an *inter partes* review on all grounds set forth in the Petition.

---

[1] Petitioner identifies Masimo Corporation as the real party-in-interest. Pet. 1.
[2] Patent Owner identifies Apple Inc. as the real party-in-interest.  Paper 4.

IPR2023-00664
Patent 11,106,352 B2

### B. Related Proceedings

Both parties identify, as a matter involving or related to the '352 patent, *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 1:22-cv-01378-MN (D. Del.). Pet. 1; Paper 4.

### C. The '352 Patent

The '352 patent "relates generally to electronic devices with touch-sensitive surfaces, including but not limited to electronic devices with touch-sensitive surfaces that include user interfaces for displaying notifications." Ex. 1001, 1:16–19. The '352 patent identifies "a need for electronic devices with faster, more efficient methods and interfaces for accessing notifications." *Id.* at 1:55–57. The '352 patent claims priority through a series of continuation applications to Provisional Application No. 62/507,181, which was filed May 16, 2017. *Id.* at codes (60), (63).

The '352 patent describes, and claims, various user interactions with a display for accessing notifications or applications. *Id.* at code (57). For example, the Abstract describes that when "displaying the wake screen user interface . . . a first input that is directed to a portion of the wake screen user interface" is detected and "if the first input includes first movement in a first direction, the computer system displays of a home screen user interface; and the first movement is in a second direction, the computer system displays a widget screen user interface that is different from the wake screen user interface and the home screen user interface." *Id.* Further, "the widget screen user interface includes a plurality of user interface objects corresponding to different applications," which may "contain[] application content from an application corresponding to the respective user interface object." *Id.*

3

IPR2023-00664
Patent 11,106,352 B2

*D. Illustrative Claim*

Claims 1, 9, and 17 are independent claims.  Claim 1, reproduced below, is illustrative.

1.   A method, comprising:

at computer system that is in communication with a display generation component and one or more input devices:

while the computer system is in a power saving state, detecting an input that meets display-waking criteria;

in response to detecting the input that meets the display-waking criteria, displaying, via the display generation component, a wake screen user interface;

while displaying the wake screen user interface, detecting a first input that is directed to a portion of the wake screen user interface and includes first movement; and

in response to detecting the first input that is directed to the portion of the wake screen user interface:

in accordance with a determination that the first input meets first criteria, wherein the first criteria require the first movement to be in a first direction in order for the first criteria to be met:

displaying of a home screen user interface that is different from the wake screen user interface, wherein the home screen user interface includes a plurality of application icons corresponding to different applications, and wherein a respective application icon of the plurality of application icons, when selected, causes display of an application corresponding to the respective application icon; and

in accordance with a determination that the first input meets second criteria different from the first criteria, wherein the second criteria require the first movement to be in a second direction that is different from the first direction in order for the second criteria

4

IPR2023-00664
Patent 11,106,352 B2

to be met:

> displaying a widget screen user interface that is different from
> the wake screen user interface and the home screen user
> interface, wherein the widget screen user interface includes a
> plurality of user interface objects corresponding to different
> applications, wherein a respective user interface object of the
> plurality of user interface objects contains application content
> from an application corresponding to the respective user
> interface object, and when selected, causes display of an
> application corresponding to the respective user interface
> object.

Ex. 1001, 86:49–87:27.

### E. Evidence

Petitioner relies on the following references:

| Name | Reference | Exhibit(s) |
|------|-----------|-----------|
| Chae | US 2012/0129495 A1, pub. May 24, 2012 | 1005 |
| Narendra | US 2013/0305351 A1, pub. Nov. 14, 2013 | 1006 |
| Android | Android 4.2 lock screen widgets (MP4 publicly accessible on YouTube video by Nov. 19, 2012) | 1007 1041 |
| Shuttleworth | US 2014/0189577 A1, pub. July 3, 2014 | 1008 |
| Hong | US 2015/0095819 A1, pub. Apr. 2, 2015 | 1010 |
| Karunamuni | US 2015/0346976 A1, pub. Dec. 3, 2015 | 1011 |

Petitioner also relies on the declaration of Craig Rosenberg, Ph.D. (Ex. 1003) in support of its arguments. Petitioner also relies on other exhibits as discussed below.

### F. Asserted Grounds of Unpatentability

Petitioner asserts that the challenged claims are unpatentable on the following grounds:

IPR2023-00664
Patent 11,106,352 B2

| Claims Challenged | 35 U.S.C. §[3] | Reference(s)/Basis |
|---|---|---|
| 1, 2, 6, 9, 10, 14, 17, 18, 22 | 103 | Chae alone or Chae, Narendra |
| 3–5, 11–13, 19–22 | 103 | Chae, Narendra, Shuttleworth |
| 7, 8, 15, 16, 23, 24 | 103 | Chae, Narendra, Karunamuni |
| 1, 2, 6, 9, 10, 14, 17, 18, 22 | 103 | Chae, Narendra, Hong and/or Android |
| 3–5, 11–13, 19–22 | 103 | Chae, Narendra, Shuttleworth, Hong and/or Android |
| 7, 8, 15, 16, 23, 24 | 103 | Chae, Narendra, Karunamuni, Hong and/or Android |

## II.   ANALYSIS OF PETITIONER'S CHALLENGES

### A. Principles of Law

Petitioner bears the burden of persuasion to prove unpatentability of the claims challenged in the Petition, and that burden never shifts to Patent Owner. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015).

A patent claim is unpatentable under 35 U.S.C. § 103 if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). The question of obviousness is resolved on the basis of underlying factual determinations including: (1) the scope and content of the prior art;

---

[3] The Leahy-Smith America Invents Act ("AIA") includes revisions to 35 U.S.C. §§ 102 and 103 that became effective on March 16, 2013. Because the earliest filed application identified in the '352 patent has a filing date of May 16, 2017 (Ex. 1001, codes (60), (63), 1:5–22), we apply the AIA-versions of 35 U.S.C. §§ 102 and 103.

IPR2023-00664
Patent 11,106,352 B2

(2) any differences between the claimed subject matter and the prior art;

(3) the level of skill in the art; and (4), if present, any objective evidence of obviousness or non-obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

### B. The Level of Ordinary Skill in the Art

In determining the level of ordinary skill in the art, various factors may be considered, including the "type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (quoting *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed.Cir.1986)).

Petitioner contends that:

> A POSITA [person of ordinary skill in the art] of the '352 patent would have had at least a bachelor's degree in a discipline related to human-computer interaction, such as Human Factors, Computer Science, Computer Engineering, or an equivalent discipline, and at least two years of experience working with touchscreen user interfaces. More education could substitute for less work experience, and vice-versa.

Pet. 12 (citing Ex. 1003 ¶ 34).

Petitioner's definition is consistent with the level of ordinary skill reflected in the prior art references of record. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (recognizing that the prior art itself may reflect an appropriate level of skill in the art). For purposes of this decision, we apply Petitioner's definition of the person of ordinary skill in the art.

IPR2023-00664
Patent 11,106,352 B2

## C. Claim Construction

We apply the same claim construction standard used in district court actions under 35 U.S.C. § 282(b), namely that articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  *See* 37 C.F.R. § 42.100(b). In applying that standard, claim terms generally are given their ordinary and customary meaning as would have been understood by a person of ordinary skill in the art at the time of the invention and in the context of the entire patent disclosure.  *Phillips*, 415 F.3d at 1312–13.  "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312–17).

Petitioner first proposes constructions for "wake screen user interface," "home screen user interface," "widget screen user interface," and "control panel user interface."  Pet. 14–24.

Notably, Petitioner's proposed constructions rely on surrounding claim language that provides context for each term.  For example, the claims require that "a home screen user interface [] is different from the wake screen user interface," and similarly, "a widget screen user interface [] is different from the wake screen user interface and the home screen user interface."  Ex. 1001, 87:1–2, 16–18.  Petitioner then adopts these additional claim elements into the definitions for the "home screen user interface," and "widget screen user interface," respectively.  Pet. 18, 21.

Although we see no error in Petitioner's proposed claim constructions, we do not believe it necessary to adopt them because the surrounding claim

8

IPR2023-00664
Patent 11,106,352 B2

language sufficiently defines the scope for each of the respective "user interface" limitations.

Petitioner next addresses the claim term "input that is directed to a portion of" a user interface.  Pet. 24–25.  Petitioner explains that "[n]umerous claims recite navigational actions invoked by 'input that is directed to a portion of' the current screen," such that "the input is directed to part of the screen, rather than a physical button, keyboard, or other input device external to the screen."  Pet. 24.  According to Petitioner, "[t]he claim language does not require the input to be directed to a ***predefined*** location on the screen, such as a location marked by a virtual home button or other indicator."  *Id.* (citing Ex. 1003 ¶ 53).  Referring to Figure 5GC of the Specification, Petitioner notes that "a user navigates from a wake screen to a home screen by an upward swipe 'at location that corresponds to home affordance 552, as indicated by focus selector 5244.'"  *Id.* (quoting Ex. 1001, 53:4–10).  Petitioner next relies on other embodiments, which describe the swipe gestures being directed to a part of the screen without regard to a predefined location.  Pet. 25 (citing Ex. 1001, 79:64–80:22)

Considering Petitioner's supporting arguments and evidence, and based on the limited record before us, we construe "input is directed to a portion of" the screen to mean the user input is directed to part of the screen (but not necessarily at a predefined location) rather than through another physical input device external to the screen.  *See id.* (citing Ex. 1003 ¶ 54).

Petitioner next contends that the use of ordinal numbers (such as first, second, third) do not convey any additional meaning or otherwise limit the claims or imply the existence of unclaimed instances.  Pet. 25–26.  We

IPR2023-00664
Patent 11,106,352 B2

determine that, for purposes of this decision, the ordinal numbers do not require express construction.

### D. *The Alleged Obviousness of Claims 1, 2, 6, 9, 10, 14, 17, 18, and 22 Over Chae and Narendra*

Petitioner alleges that claims 1, 2, 6, 9, 10, 14, 17, 18, and 22 would have been obvious over Chae and Narendra.  Pet. 33–70.  For reasons discussed below, we determine that Petitioner has shown a reasonable likelihood that it would prevail in its obviousness challenge based on Chae and Narendra.

#### 1. *Chae (Ex. 1005)*

Chae is titled "Mobile Terminal and Operating Method Thereof" and it relates to a mobile terminal with a touch screen and controller configured to simultaneously unlock the mobile terminal and a user identification module in response to a touch made on the touch screen.  Ex. 1005, codes (54), (57).  Chae discloses a dual-SIM smartphone that uses directional swipe gestures to navigate between different user-interface screens as depicted below in Figure 3:

10

IPR2023-00664
Patent 11,106,352 B2



Figure 3 of Chae represents "a flowchart that illustrates one example of the method for operating a mobile terminal," and it further "illustrates a method for unlocking SIMs based on a direction of a touch made on a touch screen." *Id.* ¶¶ 16, 101. Referring to Figure 3, at step S240, a controller determines the direction of a touch such as the directivity of a line when a user of mobile terminal draws the line on the touch screen. *Id.* ¶ 103.

Chae further discloses that the user-interface screens include multiple application "icons and widgets." *Id.* ¶ 100. For example, Chae's Figure 4 illustrates a user swiping in a bottom-to-top direction to display a screen including multiple application icons.

IPR2023-00664
Patent 11,106,352 B2

**FIG. 4**



Figure 4 illustrates unlocking a first SIM (SIM1) according to the method of operating a mobile terminal of Figure 3. *Id.* ¶ 104. "[W]hen a user draws a line a directivity of line drawn by a user on the touch screen is a bottom-to-top direction as shown in a diagram (a) of FIG. 4 the controller 180 unlocks the first SIM (SIM1) as shown in a diagram (b) of FIG. 4." *Id.* Figure 6 of Chae similarly shows a user swiping in a top-to-bottom direction to display a home screen customized to the second screen (SIM2) including multiple application icons or widgets. *Id.* ¶ 109.

  2. *Narendra (Ex. 1006)*

  Narendra is titled "Mobile Device with Password Protected Desktop Screen" and it relates to a mobile device with a plurality of desktop screens and "a touch sensitive display device that accepts gestures used to navigate between the desktop screens." Ex. 1006, codes (54), (57). Narendra discloses the use of directional swipe gestures to navigate among multiple user-interface screens of a single-SIM smartphone. *Id.*, code (57), ¶ 2. For example, Narendra's Figure 1 illustrates a user making a directional swipe gesture to navigate from one screen to another.

IPR2023-00664
Patent 11,106,352 B2



Figure 1 depicts "a prior art mobile device that navigates desktop screens with swipe gestures." *Id.* ¶ 3. Narendra's Figure 2 shows navigational paths between multiple screens that a user can navigate between using directional swipe gestures.



Figure 2 shows a logical orientation of multiple desktop screens with distinct swipe gestures for navigation between desktop screen 110 and two other screens. *Id.* ¶ 4. Narendra states that "[w]hen mobile device 100 is displaying desktop screen 110, a left-to-right swipe gesture navigates from desktop screen 110 to desktop screen 210, and mobile device 100 displays desktop screen 210 as a result." *Id.* ¶ 2. "Likewise, when mobile device 100 is displaying desktop screen 110, a right-to-left swipe gesture navigates from

13

IPR2023-00664
Patent 11,106,352 B2

desktop screen 110 to desktop screen 220, and mobile device 100 displays desktop screen 220 as a result." *Id.*

> ### 3. *Independent Claim 1.*

Petitioner presents undisputed contentions that claim 1 would have been obvious over the combined teachings of Chae and Narendra.  Pet. 5–6 (explaining the combination), 28–33 (discussing reasons for combining the references), 33–63 (claim 1).

> #### i. *"A method, comprising:"*

On this record, the cited evidence supports Petitioner's undisputed contention that Chae discloses a method for operating a mobile terminal. Ex. 1005 ¶ 101; Ex. 1003 ¶ 73.

> #### ii. *"at computer system that is in communication with a display generation component and one or more input devices:"*

On this record, the cited evidence supports Petitioner's undisputed contention that Chae discloses a "mobile terminal" that "can include . . . a smart phone, a laptop computer," and a person of ordinary skill in the art would have understood that a "smart phone" or a "laptop computer" is a "computer system.  Ex. 1005 ¶¶ 10, 43; Ex. 1003 ¶ 74; Pet. 34–35.

As for being an input device, Chae also discloses its mobile terminal "comprises a touch screen" and can be unlocked "in response to a touch made on the touch screen," as shown in Figure 4(a).  Ex. 1005 ¶ 10, Fig. 4(a).

14

IPR2023-00664
Patent 11,106,352 B2

> iii.   *"while the computer system is in a power saving state, detecting an input that meets display-waking criteria;"*

On this record, the cited evidence supports Petitioner's undisputed contention that Chae Figure 3 illustrates waking up the mobile terminal in step S210 in response to a user input as required by claim 1.  Pet. 36; Ex. 1005 ¶¶ 94, 102.



**FIG. 3**

Figure 3 of Chae represents "a flowchart that illustrates one example of the method for operating a mobile terminal," and it further "illustrates a method for unlocking SIMs based on a direction of a touch made on a touch screen."  Ex. 1005, ¶¶ 16, 101.  Chae describes the controller of the mobile terminal waking up the mobile terminal in response to a control signal that is generated based on a user's action such as clicking a button or a finger swipe.  *Id.* ¶¶ 94, 102, Figs. 2, 3.

15

IPR2023-00664
Patent 11,106,352 B2

Petitioner contends that "[a] POSITA would have understood Chae's disclosure that the mobile terminal 'wakes up' to refer to the typical wake-up process that was well-known and commonly implemented in smartphones."  Pet. 38–39.  We find persuasive Petitioner's evidence and argument that a person of ordinary skill in the art would "would have understood that the mobile terminal was in 'a power saving state' prior to waking up," and Chae's description of "user's action such as clicking a button" to teach the claim requirement of "input that meets display-waking criteria."  Pet. 39.

> *iv.  "in response to detecting the input that meets the display-waking criteria, displaying, via the display generation component, a wake screen user interface;"*

On this record, the cited evidence supports Petitioner's undisputed contention that Chae discloses a user touch of the touchscreen unlocking the mobile terminal in response to the touch.  Pet. 41; Ex. 1005, Figs 4(a), 4(b).  Petitioner provides testimony that a person of ordinary skill in the art would have understood that the screen in Figure 4(a) is a "wake screen user interface" because "the screen is displayed after the device wakes up and, in step S220, it receives user input for unlocking the mobile terminal in step S230."  Pet. 41 (citing Ex. 1003 ¶ 79).

> *v.  "while displaying the wake screen user interface, detecting a first input that is directed to a portion of the wake screen user interface and includes first movement; and"*

On this record, the cited evidence supports Petitioner's undisputed contentions regarding this limitation.  Pet. 42–45.  Specifically, Petitioner contends that Chae Figure 3 illustrates a decision block S240 that determines

16

IPR2023-00664
Patent 11,106,352 B2

a "direction of touch."  Pet. 42.  The "direction of touch" may be a "bottom-to-top" movement that "unlocks the first SIM" and "displays a home screen customized to the first SIM."  Ex. 1005 ¶¶ 103–104, Fig. 3.  Dr. Rosenberg testifies that Chae's disclosed swipe necessarily must be initiated at a portion of the wake screen located below the top edge of the screen so that the device will be able to detect the upward movement, and as such, the first input is "directed to a portion of the wake screen user interface."  Ex. 1003 ¶ 81.

> vi.  *"in response to detecting the first input that is directed to the portion of the wake screen user interface:*
>
> *in accordance with a determination that the first input meets first criteria, wherein the first criteria require the first movement to be in a first direction in order for the first criteria to be met:*
>
> *displaying of a home screen user interface that is different from the wake screen user interface, wherein the home screen user interface includes a plurality of application icons corresponding to different applications, and wherein a respective application icon of the plurality of application icons, when selected, causes display of an application corresponding to the respective application icon; and"*

On this record, the cited evidence supports Petitioner's undisputed contentions regarding this limitation.  Pet. 45–49.  Specifically, Petitioner relies on Figures 4(a) and 4(b) illustrating a bottom-to-top swipe for displaying a home screen, which depicts multiple application icons as seen in Figure 4(b).  Pet. 46–47 (quoting Ex. 1005 ¶ 100 ("Chae discloses that each screen may display 'items includ[ing] *icons* and widgets.'")).

17

IPR2023-00664
Patent 11,106,352 B2

Petitioner further relies on Narendra as supporting its position that a person of ordinary skill in the art "would have understood Chae's Figure 4(b) 'icons' to be 'application icons' as claimed in limitation 1f," because "Narendra expressly discloses: 'Mobile devices with touch sensitive displays typically include a desktop screen that shows icons used to launch applications.'"  Pet. 48 (quoting Ex. 1006 ¶ 2).  Petitioner further alleges that "[a] POSITA would have understood that Chae's technique of using directional swipe gestures to navigate among multiple screens would work just as well, and would have been just as easy to implement, in a smartphone having a single SIM as in a dual-SIM smartphone."  Pet. 6.

> vii.   *"in accordance with a determination that the first input meets second criteria different from the first criteria, wherein the second criteria require the first movement to be in a second direction that is different from the first direction in order for the second criteria to be met:*
>
> *displaying a widget screen user interface that is different from the wake screen user interface and the home screen user interface, wherein the widget screen user interface includes a plurality of user interface objects corresponding to different applications, wherein a respective user interface object of the plurality of user interface objects contains application content from an application corresponding to the respective user interface object, and when selected, causes display of an application corresponding to the respective user interface object."*

On this record, the cited evidence supports Petitioner's undisputed contentions regarding this limitation.  Pet. 49–63.  Petitioner relies on Chae Figure 3 illustrating a decision block S240 that determines a "direction of touch," and when the "direction of touch" is a "top-to-bottom" movement a

IPR2023-00664
Patent 11,106,352 B2

second SIM is unlocks that "displays a home screen customized to the second SIM." Ex. 1005 ¶ 108; Pet. 50.

Petitioner contends that a "[a] POSITA would have understood that the Figure 6(b) screen is a 'widget screen user interface' as claimed," because "the Figure 6(b) screen is 'different from' ***both*** (1) 'the wake screen user interface' (shown in Figures 4(a) and 6(a)) ***and*** (2) the 'home screen user interface' (shown in Figure 4(b))." Pet. 51–52 (quoting Ex. 1005 ¶ 109 ("In comparison to the diagram (b) of FIG. 4, the home screen of diagram (b) of FIG. 6 displays different items when the SIM is unlocked.")). Petitioner further argues that "[a] POSITA would have understood that two or more of the objects on the Figure 6(b) screen are 'user interface objects' in which each 'contains application content from an application corresponding to the respective user interface object.'" *Id.* For example, "the left-most and center objects include images and names of people (Lauran and Chris) and the right-most object includes a graphical depiction of weather conditions (partly cloudy)," such that "[a] POSITA would have understood this information to be 'application content from an application corresponding to the respective user interface object.'" Pet. 53.

Finally, Petitioner contends that "even if Chae did not expressly disclose that the Figure 6(b) screen is a widget screen user interface, it would have been obvious to include widgets on the Figure 6(b) screen, as taught by Paragraph 100." Pet. 55. Paragraph 100 discloses that "the home screen customized to the SIM has items displayed on the home screen different from those on a general home screen," and "[t]hese items include icons and widgets." Ex. 1005 ¶ 100.

IPR2023-00664
Patent 11,106,352 B2

Petitioner additionally relies on Narendra disclosing "[d]esktop screens on mobile device 300 display content such as application icons, *widgets*, and the like," and "using directional swipe gestures to navigate between different GUI screens, as shown by prior-art Figures 1 and 2." Pet. 56 (quoting Ex. 1006 ¶ 25). Petitioner, relying on Dr. Rosenberg's testimony, then contends that "the field of multi-screen GUIs for touchscreen devices, customizing one or more of the GUI screens to include multiple 'widgets' was well known," and "[a] POSITA would have understood, in view of Chae's and Narendra's disclosures, that those references used the term 'widget' to refer to a user interface object that displays content generated by an associated application without needing to (but being able to) open the application." Pet. 57 (quoting Ex. 1003 ¶ 92).

At this stage of the proceeding, Petitioner's stated reasoning for the proposed modifications to Chae is sufficiently supported, including by the unrebutted testimony of Dr. Rosenberg. *See, e.g.*, Ex. 1003 ¶¶ 57, 85–94.

*viii.   Summary*

For the foregoing reasons, we are persuaded that Petitioner's cited evidence and reasoning demonstrates a reasonable likelihood that Petitioner would prevail in its contentions regarding claim 1.

*4. Independent Claims 9 and 17.*

Petitioner presents undisputed contentions that claims 9 and 17 would have been obvious over the combined teachings of Chae and Narendra. Petitioner alleges "that Claim 9 is essentially the same as claim 1 in the form of a computer system with a processor that executes instructions stored in memory to perform the method of claim 1." Pet. 70. Petitioner relies on similar evidence and argument to support its position that "[c]laim 9 would

20

IPR2023-00664
Patent 11,106,352 B2

have been obvious in view of Chae and Narendra." Pet. 70–71 (citing
Ex. 1003 ¶ 111). Petitioner addresses unique claim 9 limitations, including
Chae's description of being implemented on a computer through one or
more processors. *Id.* (citing Ex. 1005 ¶ 90 (describing implementation using
ASICs, DSPs, or other types of processors)). Further, we find persuasive
Petitioner's contentions that "Chae discloses that its 'procedures or functions
can be implemented' using 'software codes' that can be 'stored in the
memory 160 and executed by the controller 180,'" and "[a] POSITA would
have understood that the disclosed 'software codes' are 'instructions' as
claimed." Pet. 71. (quoting Ex. 1005 ¶ 91; citing Ex. 1003 ¶ 116).

"Claim 17 is essentially the same as claim 1 in the form of a
computer-readable storage medium comprising instructions that, when
executed by a processor, perform the method of claim 1." *Id.*
Petitioner shows how Chae discloses implementation in a computer or
similar device readable recording medium using software or hardware and
using ASICs, DSPs, or other types of processors, such as Chae's controller.
Pet. 71–72. Petitioner demonstrates how Chae's disclosure of software
codes would be understood by a person of ordinary skill in the art to
encompass the claimed instructions. Pet. 72 (citing Ex. 1005 ¶¶ 90, 91;
Ex. 1003 ¶¶ 123, 124.

The remaining limitations of claims 9 and 17 are substantially the
same as claim 1 discussed above. Considering the record before us, we are
persuaded that Petitioner's cited evidence and reasoning demonstrates a
reasonable likelihood that Petitioner would prevail in its contentions
regarding claims 9 and 17.

IPR2023-00664
Patent 11,106,352 B2

   5. *Dependent Claims 2, 6, 10, 14, 18, and 22.*

   Petitioner presents undisputed contentions that claims 2, 6, 10, 14, 18, and 22, which depend directly or indirectly from independent claim 1, 9, or 17, are unpatentable over the combined teachings of Chae and Narendra, and provides arguments explaining how the references teach the limitations of these claims. Pet. 64–70, 72; Ex. 1003 ¶¶ 101–110, 127. Patent Owner does not offer, at this stage, any arguments addressing Petitioner's substantive showing. We have reviewed these arguments and the cited evidence, and we determine Petitioner has demonstrated a reasonable likelihood of prevailing as to these contentions.

   Moreover, as discussed in detail above, Petitioner has demonstrated a reasonable likelihood of prevailing on the challenge to claims 1, 9, and 17. Therefore, pursuant to USPTO policy implementing the decision in *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ("*SAS*"), we institute as to all claims challenged in the petition and on all grounds in the petition. *See* PTAB Consolidated Trial Practice Guide (Nov. 2019) ("Consolidated Guide")[4], 5–6, 64.

   *E. Other Grounds*

   Petitioner provides arguments and evidence, including the Rosenberg Declaration, in support of Petitioner's various other grounds challenging claims 1–24 of the '352 patent. Pet. 73–93; Ex. 1003 ¶¶ 128–168. Patent Owner does not offer, at this stage, any arguments addressing Petitioner's substantive showing. We have reviewed these arguments and the cited evidence, and we determine Petitioner has demonstrated a reasonable

---

[4]  Available at https://www.uspto.gov/TrialPracticeGuideConsolidated.

IPR2023-00664
Patent 11,106,352 B2

likelihood of prevailing as to these contentions.  We institute review of all of these challenges.  *See SAS*, 138 S. Ct. at 1348; Consolidated Practice Guide, 5–6, 64.

## III.    CONCLUSION

The Supreme Court held that a final written decision under 35 U.S.C. § 318(a) must decide the patentability of all claims challenged in the petition.  *SAS*, 138 S. Ct. at 1348.  After considering the evidence and arguments presented in the Petition, we determine that Petitioner has demonstrated a reasonable likelihood of success in proving that at least claims 1, 9, and 17 of the '352 patent are unpatentable.  Accordingly, we institute an *inter partes* review of all claims and all grounds set forth in the Petition.  *See* 37 C.F.R. § 42.108(a) ("When instituting . . . review, the Board will authorize the review to proceed on all of the challenged claims and on all grounds of unpatentability asserted for each claim.")

At this stage of the proceeding, we have not made a final determination as to the patentability of any challenged claim or as to the construction of any claim term.

## IV.    ORDER

In consideration of the foregoing, it is hereby:

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review of claims 1–24 of the '352 patent is instituted with respect to all grounds set forth in the Petition; and

FURTHER ORDERED that, pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4(b), *inter partes* review of the '352 patent shall commence

IPR2023-00664
Patent 11,106,352 B2

on the entry date of this Order, and notice is hereby given of the institution

of a trial.

IPR2023-00664
Patent 11,106,352 B2

PETITIONER:


Ted M. Cannon
Jarom D. Kesler
Philip M. Nelson
KNOBBE, MARTENS, OLSON & BEAR, LL
2tmc@knobbe.com
2jzk@knobbe.com
2pmn@knobbe.com
MasimoIPR-352@knobbe.com

PATENT OWNER:

W. Karl Renner
Roberto J. Devoto
 Craig A. Deutsch
Grace Kim
Andrew Patrick
FISH & RICHARDSON P.C.
axf-ptab@fr.com
devoto@fr.com
deutsch@fr.com
gkim@fr.com
patrick@fr.com