**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-1377-JLH |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-1378-JLH |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**JOINT LETTER FOR MARCH 20, 2024 CASE MANAGEMENT CONFERENCE**

| | |
|---|---|
| OF COUNSEL:<br><br>John M. Desmarais<br>Jordan N. Malz<br>Cosmin Maier<br>Kerri-Ann Limbeek<br>Jeffrey Scott Seddon, II<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400<br><br>Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>Tel: (415) 573-1900<br><br>Jennifer Milici<br>Dominic Vote<br>WILMER CUTLER PICKERING HALE<br>  AND DORR LLP<br>2100 Pennsylvania Avenue NW<br>Washington, DC 20037<br>Tel: (202) 663-6000<br><br>Mark A. Ford<br>WILMER CUTLER PICKERING HALE<br>  AND DORR LLP<br>60 State Street<br>Boston, MA  02109<br>Tel: (617) 526-6423 | David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Andrew M. Moshos (#6685)<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE  19801<br>Tel:  (302) 984-6000<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>amoshos@potteranderson.com<br><br>*Attorneys for Plaintiff/Counter-Defendant Apple Inc.* |

Dated:  March 8, 2024
11371453 / 12209.00051

Public Version Dated: March 16, 2024

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Tables summarizing the status of IPRs relating to Apple and Masimo patents |
| 2 | Email chain regarding Freedom watch |
| 3 | Deposition Transcript (Excerpted) of Joseph Kiani, Nov. 6, 2023 |
| 4 | Transcript of Masimo Earnings Call held on Feb. 27, 2024, available at https://seekingalpha.com/article/4674014-masimo-corporation-masi-q4-2023-earnings-call-transcript |
| 5 | Table of pending motions |
| 6 | February 26, 2024 Hearing in the parties' Central District of California litigation |

Dear Judge Hall:

Per the Court's Amended Scheduling Order, the parties respectfully submit this Letter.

**I.    Summary of claims and pending motions in the 1377 and 1378 cases**

Apple filed the 1377 and 1378 cases on October 20, 2022, asserting that Masimo and Sound United willfully infringe four of Apple's design patents[1] and six of Apple's utility patents.[2] Apple alleges infringement through, *e.g.*, the sale of Masimo's W1 watch and its charger. Apple also accuses Masimo's Freedom watch and Health Module of infringing Apple's patents. Masimo denies Apple's claims. Among other defenses, Masimo contends that the accused products do not infringe the asserted patents, the patents are invalid, and the design patents are unenforceable for inequitable conduct. *See* 1377 Case, D.I. 31; 1378 Case, D.I. 15.

Masimo asserts counterclaims that Apple willfully infringed ten Masimo patents[3] by selling Apple Watch. *See* 1378 Case, D.I. 15. Masimo also asserts claims against Apple for antitrust violations, false advertising, deceptive trade practices, and unfair competition. (*See id.*) Apple denies Masimo's claims. Among other defenses, Apple contends Masimo cannot show that Apple engaged in anticompetitive conduct or that Masimo suffered any antitrust injury in a relevant market. Apple also contends that, to the extent the claims arise from misappropriation or infringement of Masimo's intellectual property, they are barred by res judicata. Apple also contends that Apple Watch does not infringe any Masimo asserted patent, that those patents are invalid, and that those patents are unenforceable for inequitable conduct.

The Court has not yet issued a *Markman* Order. *See* 1377 D.I. 273; 1378 D.I. 294, 295. Additionally, multiple motions are pending, as listed in Exhibit 5.

**II.   Summary of all pending disputes between the parties in other venues**

The disputes between the parties outside of the 1377 and 1378 cases are as follows.

**Central District of California.** In January 2020, Masimo sued Apple in the Central District of California, asserting claims for patent infringement, trade secret misappropriation, and correction of ownership/inventorship of Apple patents. Masimo's patent infringement claims were stayed pending *inter partes* review ("IPR") proceedings filed by Apple and then subsequent appeals at the Federal Circuit. In April 2023, the court tried Masimo's trade secret misappropriation and patent ownership/inventorship claims. The trial ended in a mistrial when the jury could not reach a verdict. A retrial is scheduled to begin on October 31, 2024.

**International Trade Commission.** In June 2021, Masimo filed a complaint in the International Trade Commission ("ITC") against Apple for patent infringement. The ITC issued a Limited Exclusion Order and Cease and Desist Order against certain Apple Watch models with pulse oximetry. Those orders took effect on December 26, 2023, but were stayed by the Federal Circuit on December 27, 2023, and then reinstated on January 18, 2024. On December 26, 2023,

---

[1]  U.S. Patent Nos. D735,131, D883,279, D947,842, and D962,936.

[2]  U.S. Patent Nos. 10,076,257, 10,627,783, 10,942,491, 10,987,054, 11,106,352, and 11,474,483.

[3]  U.S. Patent Nos. 8,190,223, 10,687,743, 10,722,159, 10,736,507, and 10,984,911 (not stayed); U.S. Patent Nos. 7,761,127, 10,687,745, 10,912,501, 10,912,502, and 10,945,648 (stayed pursuant to 28 U.S.C. § 1659(a), *see* 1378 D.I. 25).

The Honorable Jennifer L. Hall    Page 2
March 8, 2024

Apple filed its petition for review and notice of appeal of the Final Determination of the ITC, including all underlying orders. On January 12, 2024, the Exclusion Order Enforcement Branch of U.S. Customs and Border Protection approved a redesigned version, finding that Apple had disabled the Blood Oxygen feature. On January 18, 2024, the Commission's Limited Exclusion Order and Cease and Desist Order covering Apple products with the Blood Oxygen feature took effect, and on that same day, Apple began to sell its redesigned Apple Watch.

**IPRs.** Four tables summarizing the status of all IPRs between the parties, and related appeals, are attached as Exhibit 1.

### III. Apple's position as to trial scope, timing, and sequence

These cases present three categories of claims: (1) Apple's claims for infringement of its design and utility patents—*i.e.*, the very first set of claims asserted in these cases—and Masimo's defenses to those same claims[4]; (2) Masimo's non-patent defenses and counterclaims, including its antitrust and false advertising counterclaims, and Apple's defenses to those counterclaims; and (3) Masimo's counterclaims on its own patents, and Apple's corresponding defenses. Apple respectfully submits that these three sets of claims will require three trials, and that the first trial—on the offensive / defensive patent issues related to the first set of claims asserted in these cases, namely, Apple's design and utility patents—should be held this summer. The second and third trials could be held later this year or next year, as the Court's schedule permits. Below, Apple provides more detail on its proposed structure for each trial.

**Trial 1:** Apple's claims for infringement of its design and utility patents should be tried first. These were the first-filed claims in these cases, and the number of patents—and Masimo's patent defenses—present ample complexity for a single trial. Apple may seek to enjoin Masimo from selling its W1 (both original design and "wave" design[5]) and from launching its forthcoming Freedom watch, while Masimo has no need for any injunctive relief. Masimo has positioned its Freedom watch as ███████████████████████████████ Ex. 3 (Masimo CEO Tr.) 166:4-167:13, 168:2-169:10. And Masimo has repeatedly threatened that the Freedom's launch is imminent.[6] *Id.* 167:23-168:1; Ex. 4 ("We have three product launches planned for 2024" including "Freedom"). Thus, time remains of the essence for Apple's affirmative patent claims, and those claims are narrow enough to be tried expeditiously. At a minimum, the Court should set for trial Apple's patents that are not in any IPR. The Apple patents not in any IPR are D'131, D'279, D'842, D'936, '054, and '483.

To the extent the Court does not enter summary judgment in Apple's favor on Masimo's counterclaim of inequitable conduct of Apple's design patents,[7] the inequitable conduct claim should be tried with or immediately following the trial on Apple's claims for infringement. *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (denying mandamus petition seeking to overturn district court's decision to hold separate trials on patent issues, including inequitable conduct, underlying antitrust claim and non-patent related antitrust issues); *DriveCam, Inc. v.*

---

[4] Apple does not waive its right to assert that a given issue should be tried to the bench, not jury.
[5] Masimo's assertion in its portion of this letter that it discontinued the original design is without support. Notably, throughout the past year Masimo's website advertised the "wave" design while shipping to customers only the original design. *See* D.I. 67; D.I. 529 at Ex. A46 ¶¶ 8-9.
[6] Recently, Masimo has refused to provide specific information about Freedom's launch. Ex. 2.
[7] Masimo asserts no claims of inequitable conduct against Apple's utility patents.

*SmartDrive Sys., Inc.*, No. 11-CV-0997, 2012 WL 13175930, at *7 (S.D. Cal. Mar. 26, 2012) (bifurcating inequitable conduct from *Walker Process* claim because "[r]esolution of these issues will eliminate or reduce some of the proof necessary to ultimately decide the antitrust counterclaims") (citing *Innotron*); *SanDisk Corp. v. STMicroelectronics Inc.*, No. C 04-4379, 2009 WL 1404689, at *2 (N.D. Cal. May 19, 2009) ("a finding that SanDisk did not engage in inequitable conduct may moot ST's Walker Process claim") (bifurcating inequitable conduct from remaining *Walker Process* elements) (citing *Innotron*); *Implant Innovations, Inc. v. Nobelpharma AB*, No. 93 C 7489, 1996 WL 568791, at *3 (N.D. Ill. Oct. 2, 1996) (bifurcating inequitable conduct claims to be resolved with the "patent claims" from remainder of antitrust claims) (citing *Innotron*). Trying Masimo's inequitable conduct claim together with Apple's patent claims would reduce jury confusion. Inequitable conduct is a patent claim, sensibly tried together with other patent claims involving the same patents. The jury's decision would then be preclusive as to the related elements of Masimo's *Walker Process* claim in a later antitrust trial, greatly simplifying those proceedings. *See Innotron*, 800 F.2d at 1086 (separate jury trials on inequitable conduct and antitrust claims did not violate Seventh Amendment). By contrast, trying Masimo's inequitable conduct claim together with its antitrust claims would add another entirely distinct (and complex) body of law and set of facts to a claim that already spans antitrust law and false advertising, and risk needlessly confusing the jury. The Court should determine the appropriate form of any necessary trial on inequitable conduct—including whether it is tried to a jury or to the Court—after ruling on Apple's motion for summary judgment of no antitrust violation, and Apple reserves all rights as to the form of any such trial to be determined at the appropriate time. Trial 1 would take approximately 5-7 days, depending on the number of patents set for trial and whether inequitable conduct is in the case.

Masimo's assertion that a trial on Apple's design patents should be delayed based on Masimo's speculation that the Federal Circuit will change the standard for design patent obviousness is Masimo's third attempt at raising this issue, which the Court denied previously. *See* D.I. 341-1 (August 3, 2023 Hearing Transcript) at 57:2-58:6; D.I. 365. Masimo offers no change in circumstances that warrants Masimo yet again raising it. Finally, Masimo is wrong in arguing that Apple has no right to a jury trial on its patent infringement claims. Masimo filed its motion on that issue only yesterday, March 7, and Apple will oppose the motion in due course. Apple maintains its jury trial demand for all its infringement claims.

**Trial 2:** To the extent not resolved at summary judgment, the second trial should focus on Masimo's antitrust and false advertising counterclaims. Masimo has shown no reason these claims must be resolved expeditiously, Masimo's "kitchen sink" counterclaims cannot, as a practical matter, be tried this summer, and rushing those claims to trial would not serve judicial economy.

*First*, "[e]conomy is served because in the trial of the patent issues, the validity of the patent and [any] affirmative defenses," including inequitable conduct, "will be determined and will become law of the case and thus removed from trial on the … antitrust issues." *Innotron*, 800 F.2d at 1085. If the patents are valid, then the *Walker Process* claim is moot. If the patents were obtained by fraud, then the later trial can resolve only the "distinct and separable" issues of market definition and antitrust injury, consistent with the Seventh Amendment's jury trial guarantee, along with the other claims of anticompetitive conduct. *Id.* at 1086; *see also Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010) (granting Masimo's motion to bifurcate in part because "a trial on Masimo's patent claims will simplify some of [the] antitrust counterclaims"). *Second*, "[a]voidance of prejudice and confusion is served in trying first the

The Honorable Jennifer L. Hall                                                                                                  Page 4
March 8, 2024

patent issues, without injecting the different counterclaim issues which require different proof and different witnesses." *Innotron*, 800 F.3d at 1085. Trying the patent claims before the antitrust and false advertising counterclaims will permit each jury to focus on a considerably less complex set of issues. *See Masimo*, 2010 WL 925864, at *2 (listing the "intricate factual and economic analyses" that would, in combination with the patent case, "pose a difficult task for even the most astute of juries"); *Innotron*, 800 F.3d at 1085 ("Convenience of all is served in trying the less complex patent issues first . . . ."). *Finally*, as explained above, "[e]xpedition is served because the patent issues on the present schedule will be ready for trial … before the antitrust issues can be made ready." *Innotron*, 800 F.3d at 1085. For these reasons, trying antitrust counterclaims after the original patent claims has remained the "common" approach for nearly 40 years. *Masimo*, 2010 WL 925864, at *1 & n.5; *see also DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 2024 WL 639991, at *6 (D. Del. Feb. 15, 2024).

Apple respectfully submits that the Court should wait until after it has resolved the pending summary judgment motions to schedule the date for the second trial. The Court allowed Masimo to pursue its theories in discovery, despite reservations as to their validity, and discovery has proven them to be baseless. Judicial economy would be greatly served by resolving those motions before scheduling Trial 2. Trial 2 could take approximately 10-12 days—although again, the precise scope will depend on the outcome of, *e.g.*, the summary judgment process.

**Trial 3:** The third trial should focus on Masimo's counterclaims regarding its patents. Masimo did not include any of the five unstayed patents in its multiple other litigations against Apple. If there were any urgency associated with those claims, Masimo would have asserted them long ago. In any event, Masimo agrees its patents should not be tried until they can all be tried together, so any trial needs to wait until after the Federal Circuit rules on Apple's appeal from the ITC decision.[8] Trial would take around 7 days, but could vary depending on the number of patents.

## IV.     Masimo's position as to trial scope, timing, and sequence

The Court asked the parties to address how to efficiently try the parties' claims. Masimo submits that the most efficient way to divide the claims for trial is as follows:

- All of Masimo's patent claims (including patents asserted at the ITC) in a jury trial after the Federal Circuit rules on Apple's appeal from the ITC decision.

- Masimo's antitrust claims and false-advertising claims in a jury trial before Apple's patent claims are tried.

- Apple's utility- and design-patent claims together in a ***bench*** trial after (1) the en banc decision in *LKQ v. General Motors*, (2) completion of all IPRs, and (3) trial on Masimo's antitrust claims.

*Masimo's Patent Claims*: Although Masimo is prepared to move forward on its patents that were not stayed, those patents cover the same accused products as the ITC patents and some of the patents share the same specification. Thus, the most efficient path would be to try all of

---

[8] Masimo proposes that discovery should begin with respect to the '501 patent, but that patent is stayed. While Masimo notes fact discovery on the '501 patent would substantially overlap with fact discovery on the two patents on which the ITC found a violation, that counsels in favor of holding any discovery until the Federal Circuit appeal is resolved so that discovery on all three patents can be conducted at once and avoid, *e.g.*, multiple depositions of the same witnesses.

Masimo's patents together in a single jury trial. Because the ITC patents are stayed by statute, this could occur only after the Federal Circuit rules on Apple's appeal from the ITC investigation. In the meantime, the parties should conduct discovery on Masimo's '501 patent, which has completed all ITC proceedings. Fact discovery will substantially overlap with the fact discovery on the two patents in the ITC on which a violation was found. Thus, opening discovery on the '501 patent now would position the case for a more prompt trial once the Federal Circuit rules in the ITC case.

*Masimo's Antitrust Claims*: Masimo submits that its antitrust and false-advertising claims should proceed together before Apple's claims for the following reasons:

*First*, Masimo's antitrust claims are based in part on a *Walker Process* theory, which shares factual issues with Masimo's inequitable-conduct defense. Thus, the *Walker Process* claims must be resolved by a jury before inequitable conduct is decided by the Court. *See Schering Corp. v. Mylan Pharms., Inc.*, 2010 WL 11474547 (D.N.J. June 10, 2010) (trying inequitable conduct before *Walker Process* would violate the Seventh Amendment because it would resolve "an equitable claim (the inequitable conduct defenses) prior to a legal claim (the *Walker Process* counterclaims), and said claims share common factual elements"); *Celgene Corp. v. Barr Labs., Inc.*, 2008 WL 2447354 (D.N.J. June 13, 2008) (bifurcating inequitable conduct and *Walker Process* "would violate [defendant's] Constitutionally-guaranteed right to trial by jury" and "must be denied" under *Beacon Theatres*).

Apple's cases cite back to *Innotron*, which merely denied a writ of mandamus after finding no abuse of discretion. Courts distinguish *Innotron* where the patent and antitrust cases are highly interwoven, for example, in claims involving "fraudulent procurement and enforcement of the patent." *See, e.g.*, *Malibu Boats, LLC v. MasterCraft Boat Co., LLC*, 2016 WL 8317032, at *2 (E.D. Tenn. Oct. 28, 2016) (quoting *In re Theodor Groz & Sohne*, 972 F.2d 1352, (Fed. Cir. May 18, 1992) (nonprec)). Courts also distinguish *Innotron* where, as here, "discovery is complete and all of the issues will be ready for trial simultaneously." *Nortel Networks Inc. v. Foundry Networks, Inc.*, 2003 WL 26476584, at *13 (D. Mass. Mar. 24, 2003) (noting that, in *Innotron*, "the patent issues were ready for trial more than one year before the antitrust issues"). Thus, the Court should reject Apple's request to try inequitable conduct before the *Walker Process* claims. At a minimum, the Court should not entertain Apple's request without full briefing because granting that request would violate Masimo's Seventh Amendment right to a jury.

*Second*, Apple cannot obtain any relief on its design patents until the inequitable-conduct defense is resolved. Thus, trying the antitrust case first could increase efficiency in any subsequent trial of Apple's patent claims.

*Third*, Masimo's false-advertising claims overlap with Masimo's antitrust claims because false advertising is one category of alleged anticompetitive conduct. The false-advertising claims could also be tried efficiently with Masimo's patent claims.

*Apple's Claims*: Masimo submits that Apple's utility and design patents should be tried to the bench after the en banc decision in *LKQ* and all IPRs are complete for the following reasons:

*First*, Apple's utility- and design-patent cases should be tried together. The patents address the same accused products: Masimo's W1 and other products that use Masimo's health module, such as Masimo's future Freedom watch. And because one of Apple's utility patents discloses the design claimed in the design patents, that utility patent is highly relevant to Masimo's functionality

The Honorable Jennifer L. Hall                                                                                                  Page 6
March 8, 2024

defense to Apple's design patents. *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016); MPEP § 1504.01(c)(ii).

*Second*, nothing warrants squeezing a trial on Apple's claims into the Court's summer schedule. Apple began this case under the pretense that the **back** of Masimo's W1 watch renders the watch a "knock off" and "pirate" product. Apple feigned that Masimo—the company that Apple singled out and pursued as the world leader in pulse-oximetry technology—is a "Shenzhen" copyist. Those farfetched accusations are baseless.

Putting aside Apple's saber rattling, Apple has no need to pursue any claim against the original design in Apple's complaint. Masimo has discontinued the original design (below left) and replaced it with the "wave" design (below right). Masimo told Apple early in the case that it would do so. As to that discontinued product, Apple seeks only $250 in disgorgement and a moot injunction. And, as Masimo demonstrated in its summary judgment motion, Apple's claims against the new wave design are frivolous.





Original Design        Wave Design

Moreover, this summer, the parties will be preparing for an October 2024 trial in California. The Court indicated it will add Masimo patents (***stayed since 2020 at Apple's request*** pending Apple's IPRs and appeals) to that trial. *See* Ex. 6 at 10:14-17. Thus, the parties will be conducting fact discovery, claim construction, and expert discovery on those patents throughout the summer.

*Third*, Apple cannot obtain any relief on its design patents until Masimo's inequitable-conduct defenses are resolved.

*Fourth*, all of Apple's claims should be stayed. As Masimo explained in its pending motion to stay Apple's utility patents, the PTAB instituted IPRs on four of those six utility patents. -1378 D.I. 445 at 1. Apple itself frequently seeks to stay cases even when the Patent Office institutes an IPR only on a subset of the patents asserted in those cases. *Id.* at 13-14. Apple should be held to its positions. If Apple's design-patent claims were to survive summary judgment, those claims should be stayed until the en banc Federal Circuit rules in *LKQ*. As Masimo explained in its stay motion on Apple's design patents, by taking the case en banc, the Federal Circuit will most likely change the obviousness standard. -1377 D.I. 298 at 1-2. The Federal Circuit heard oral argument on February 5, 2024. Although the Court denied the motion at the time, the Court invited the parties to "reraise the issue of claim/issue sequencing" at the March 20, 2024 conference. -1377 D.I. 365. Masimo therefore reraises the issue. -1377 D.I. 298. The Court should not waste resources under a changing standard.

*Fifth*, because the parties have no right to a jury on Apple's infringement claims, those claims should be tried separately to the bench. Apple seeks only equitable remedies of an injunction and disgorgement for its design-patent claims under 35 U.S.C. § 289. It seeks no actual damages (available only under 35 U.S.C. § 284) for any of its patent claims. *See* Masimo's Motion for Bench Trial. -1377 D.I. 576.

The Honorable Jennifer L. Hall  Page 7
March 8, 2024

                                              Respectfully,

                                              */s/ David E. Moore*

                                              David E. Moore

DEM:nmt/11371453/12209.00051

Enclosures

cc:    Clerk of Court (via hand delivery)
        Counsel of Record (via electronic mail)