IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - -

| | |
|---|---|
| APPLE, INC. | : 1:22-cv-01377-JLH<br>: 1:22-cv-01378-JLH |
| vs. | : |
| | : |
| MASIMO CORPORATION, et al | : |

-----

TRANSCRIPT

-----

PRETRIAL CONFERENCE held before the Honorable Jennifer L. Hall, USDCJ on the 11th day of October 2024, in Courtroom 6D at 11:03 a.m.

KIMBERLY A. BURSNER, RPR

COUNSEL APPEARED AS FOLLOWS:

Potter, Anderson & Corroon, LLP
BY: DAVID E. MOORE, ESQUIRE
BINDU A. PALAPURA, ESQUIRE
for Plaintiff Apple

Desmarais, LLP
BY: JOHN DESMARAIS, ESQUIRE
PAUL BONDOR, ESQUIRE
PETER MAGIC, ESQUIRE
DAVID SHAW, ESQUIRE
JEFF SEDDON, ESQUIRE
LINDSEY MILLER, ESQUIRE
BENJAMIN LUEHRS, ESQUIRE
JAMIE KRINGSTEIN, ESQUIRE
CARSON OLSHESKI, ESQUIRE
LEE MATALON, ESQUIRE
for Plaintiff Apple

WilmerHale
BY: MARK FORD, ESQUIRE
for Plaintiff Apple

Phillips, McLaughlin & Hall
BY: JOHN PHILLIPS, ESQUIRE
MEGAN HANEY, ESQUIRE
for Defendant Masimo Corporation

Knobbe Martens
BY: BRIAN HORNE, ESQUIRE
BEN KATZENELLENBOGEN, ESQUIRE
KENDALL LOEBBAKA, ESQUIRE
EDWARD CANNON, ESQUIRE
JEREMY ANAPOL, ESQUIRE
for Defendant Masimo Corporation

THE COURT: We're here for a pretrial conference in Apple versus Masimo and Sound United.

We have two civil action numbers. We have 22-1377 and 22-1378. Let's go ahead and put our appearances on the record.

MR. MOORE: Good morning, Your Honor. David Moore from Potter Anderson on behalf of Apple, joined by my partner Bindu Palapura and our co-counsel from the Desmarais Firm, John Desmarais.

MR. DESMARAAIS: Good morning, Your Honor.

MR. MOORE: Peter Magic.

MR. MAGIC: Good morning.

MR. MOORE: Paul Bondor.

MR. BONDOR: Good morning, Your Honor.

MR. MOORE: David Shaw.

MR. SHAW: Good morning, Your Honor.

MR. MOORE: Jeff Seddon.

MR. SEDDON: Good morning, Your Honor.

MR. MOORE: Lindsey Miller. Ben Luehrs, Jamie Kringstein, Carson Olsheski.

MR. OLSHESKI: Good morning.

MR. MOORE: Lee Matalon.

MR. MATALON: Good morning, Your Honor.

MR. MOORE: And also from Wilmer Hale, Mark Ford. And from Apple, Tucker Terapin and Natalie Pose.

THE COURT: All right. Good to see everybody. Good morning.

MR. PHILLIPS: Good morning, Your Honor. Jack Phillips on behalf of Masimo.

With me in the courtroom are Brian Horne, Ben Katzenellenbogen, Kendall Loebbaka, Edward Cannon, Jeremy Anapol and my partner Megan Haney.

THE COURT: Good morning, everyone. So, at the outset, I wanted to thank the parties for the proposed pretrial order. I have to say it's the best pretrial order that's come in in terms of organization and it was clear that the parties had taken time to incorporate our standard practices.

Before we started to go through the M.I.L.'s and the dispute in the pretrial order, I know that you have all seen that we

have this week worked our way -- and last week worked our way through the parties claim construction disputes and pending summary judgment and Daubert motions. And in light of that, I wanted to make sure that we all understand what everybody's position is on how we should proceed with the trial in terms of it being a jury trial or a bench trial and, obviously, this jury or bench trial issue has come up before, but the last time we discussed it, it was very clear to me that there was at least one issue that needed to get tried to a jury; namely, the fraud portion of Masimo's Walker Process claim.

So now that the Court has had a chance to rule on the summary judgment motion concerning inequitable conduct and fraud in the patent office, that's no longer the case. And so I wanted to hear from Apple if it is still taking the position that it wants a jury trial.

MR. DESMARAIS: Good morning, Your Honor. John Desmarais for Apple.

A couple things. So, first of all, thank you for getting all the rulings out. I

know there was a lot on your plate and as a result of that, we have been able to narrow the issues in the case.

So we have given to Masimo our final list of patents and claim and we narrowed it down to seven claims across five patents. So -- I'm sorry -- six patents. I'm sorry. Seven claims across six patents.

We do have a damages claim for those patents, both the statutory claim and the 284 royalty claim, so we are still seeking a jury trial on those claims.

THE COURT: And just to make sure that we're all clear, that's the damages claim is for a total of $250 across all seven patents in total?

MR. DESMARAIS: Yes. The point of this case, Your Honor, is as you see in the first paragraph of the pretrial order, after the trial, we want a willfulness finding from the jury. After the trial, we would like to file with Your Honor an injunction here, so that is the ultimate purpose for the trial. It's not for money. It's to get Masimo to stop copying our products.

THE COURT: I understand. I just want to make sure that I'm tracking, the reason that there is a right to a jury trial as opposed to a bench trial is because you are seeking the reasonable royalty and the statutory damages.

MR. DESMARAIS: And a willfulness finding.

THE COURT: And a willfulness finding which could increase damages up to potentially a maximum of $750.

MR. DESMARAIS: But it also leads to potential fee shifting. It also leads to the balance of the hardships in the injunction. The willfulness finding by the jury is very important to the remedies we are seeking which is attorneys' fees shifting the injunction.

THE COURT: But I can hear that later.

MR. DESMARAIS: You would have to have a separate jury trial because willfulness is a jury trial.

THE COURT: That's actually a really great point, but I don't need a willfulness

finding to shift fees. Right?

MR. DESMARAIS: It's a factor. You don't need it, but it's a factor.

THE COURT: So the reason we're having a jury trial, though, because I don't need it to shift the fees is that we have a damages claim of $250 which could get tripled to $750. But if that wasn't in the case, you would have no right to a jury trial. Right?

MR. DESMARAIS: I think we still believe we are entitled to a jury trial under the statutory damages under the --

THE COURT: Right. But if you weren't seeking the $250, if you were just seek an injunction, you would have no right to a jury trial. The $750 you would have a right to a jury trial.

MR. DESMARAIS: Right. The damages claim is two pronged. One is under the statutory damages and one is under --

THE COURT: A hundred percent. We are tracking so far. So the $750 is what is going to put people in the box here as --

MR. DESMARAIS: And the willfulness finding.

THE COURT: Right. But, again, there is no jury trial to a willfulness finding if you are not seeking any damages; right? There is no seventh amendment right to have a jury determine willfulness so that the Court can later take that in to account.

MR. DESMARAIS: I would agree with you, yes.

THE COURT: So I just want to make sure we are on the same page. So we are going to have 40 people come in here on October 21st to be called for jury duty. They are going to take off work, waiting for babysitters, get somebody to pick up their kids from school and then eight of the people going to have -- sit and do the same thing all week and the government is going to put them in hotel rooms, the ones coming from down state, and be away from their families and pay them their jurors' fees.

It's going to cost the government $1,600 to get them all called in. Another $2,000 in jury fees for them to sit through the week. A lot of them won't be paid at their jobs. And that's fine. And that's your

right. But we are going to do that so we can vindicate Apple's right for a $250 damages claim. We're on the same page?

MR. DESMARAIS: Yes. Just to be clear, the entire issue could go away if Masimo would just stop copying the design. It's not Apple's fault that we're here, and I've asked Masimo why are you fighting this. Why don't you just change the design and stop selling the copy of Apple's product and they have refused, so it's not Apple's fault we're here, Your Honor.

THE COURT: No. And I understand. And to be clear, it is my job to sit here and I'm happy to do it. It's a pleasure to see all of you. We are going to have a trial.

The question is whether or not we are going to take people off the street for the $250 jury trial or 750. That's my question. But that's your position and that's what it is.

MR. DESMARAIS: Yes, Your Honor. Thank you.

THE COURT: Okay. All right.

MR. HORNE: Brian Horne from Knobbe

for Masimo.

Two things we were talking about. One, whether Apple has an actual damages claim under Section 284 for their utility patents, which they don't. That's a subject of our motion in limine, number one. They never disclosed that, the basis. They haven't said whether they lost profits, reasonable royalty, price erosion, anything of the like. It was never disclosed. That should be excluded under Rule 37.

The design patent -- and if -- if there were a utility claim, that could be trebling, the design statutory minimum of 250, he keeps calling it damages, that's not damages. It's a statutory minimum of disgorgement under Section 289. That also cannot be not trebled even if there were a willfulness misfinding. The 289 remedy cannot be trebled.

THE COURT: I suppose if the jury finds no infringement of the design patents, but finds that Apple is entitled to a reasonable royalty of $250 for the utility patent, I suppose the Court could triple that

to $750.

MR. HORNE: But the royalty, the jury instructions and the interrogatory responses and the Rule 26 disclosures didn't say whether this is a royalty, how they got to a royalty, whether this is lost profits, how they're going to present this at trial, whether they are entitled to anything even what the basis is.

So there has been no Section 284 damages case in this entire case and if the Court is going to allow them to present that, we would like to know why and what the presentation is going to be because we haven't seen it yet.

THE COURT: Do you really think -- well, the statute says that a patentee is entitled to no less than a reasonable royalty for infringement. And do you really think that much needs to be said about their expert saying that $250 seems like a reasonable royalty to him?

MR. HORNE: But he didn't say that. He didn't. And so -- and you can weigh when we said this in our reply brief to our motion

in limine number one, even though the statute says not less than a reasonable royalty on Section 284, there have been cases where the plaintiff got zero damages and their have been cases where the plaintiffs have waived their right to a remedy under 284 which we think has happened here. And there have been cases that have struck it under Rule 37 which we think the Court should do here if the Court finds it's not waived.

So, if they are not entitled to money, it's because of the statute.

THE COURT: Well, we are getting ahead of the order that I wanted to go in, but that's okay.

MR. HORNE: We agree with Your Honor's statements about bringing a jury, but there is still six patents, seven claims, that's a lot for a one-week jury trial, so we think it should be a bench trial.

THE COURT: Yeah. I know. I figured you would say that.

MR. HORNE: But we really want to be heard on the -- on the 284 because it has not been disclosed and we don't know where it's

coming from, so we would really like to understand the reasoning if they are allowed to present that case.

MR. DESMARAIS: Your Honor, if I might on that point. They didn't move for summary judgment on damages. We have an interrogatory answer and we have an expert report. They didn't move for summary judgment.

THE COURT: I know. I know. Standby. Why don't you have a seat and we will discuss that when we get to it.

Let me ask you, Mr. Desmarais, would the Court be committing legal error if hypothetically it said that it didn't intend on enhancing damages to $750 from $250, so we're not going to present willfulness to the jury?

MR. DESMARAIS: Absolutely, Your Honor. We -- the conduct in this case is egregious. When you hear what Masimo did on the design of their watch. When we launched our watch, within days they went to the Apple Store to take a look at it. Then they got CAD drawings of our design. Then they

reached out to former Apple employees about how the Apple product was designed. They got our patent. They looked at the design of our patent. They literally copied. It's the most egregious case of copying I have ever seen. For you to say ahead of time that you won't take that evidence into account and won't enhance, would certainly be legal error.

THE COURT: Well, the time that it took you to say those three sentences, I think we are racking up at least $10 a second in attorneys' fees sitting here, so the argument that you need that extra $500 for Apple, that's what I'm trying to understand.

I can listen to that argument when we are talking about shifting fees which are going to be way more than $500, but why does a jury need to hear all this evidence of willfulness for a total maximum addition of $500?

MR. DESMARAIS: Apple is entitled under the statute and under the constitution to its day in court to stop Masimo's copying and we have a constitutional right to that

jury trial, Your Honor.

THE COURT: For the $250, but do you have it for the extra 500 if the Court says that no matter what the jury says, the Court is not going to give you that 500 taking everything in to account?

MR. DESMARAIS: I think it would be legal error for you to do that, but you certainly have the power to do that, but I think even if you were to reach that conclusion, it does not deny us the right to a jury trial.

THE COURT: On the 250. Okay.

MR. DESMARAIS: This whole thing could go away if they would just stop copying it. I mean, it's outrageous really what is going on and it is not Apple's fault.

THE COURT: No one is disputing the right to a trial. The question I have here is whether we need to bring a jury in for the damages because the jury trial right only comes from the claim for the damages.

MR. DESMARAIS: Understood.

THE COURT: Well, let's work through the disputes.

Is Apple's motion in limine number one moot now that the Apple conduct issue is out? I take it the answer is no?

MR. SHAW: It's David Shaw from Desmarais of behalf of Apple.

So, Your Honor, there has been over a hundred witnesses deposed in this case. Many no longer work at -- so at least 40 of those witnesses were Apple employees or former Apple employees. Many of them no longer work at Apple, so we can't force them to come to trial and we shouldn't be punished -- Masimo is still claiming a right to disparage us for not bringing all of those folks. We shouldn't be punished for folks that we can't bring. Right.

And then even for the folks that still work at Apple, it's more than a dozen people that have relevant evidence. We're having a five day timed trial, Your Honor. It's a practical matter that we can't possibly call all these people, but, yet, for each one that we don't call that we don't bring live to testify, they want to be able to tell the jury they are hiding something from that person.

That person would have given adverse evidence.

You are right that the primary dispute was about the unequitable conduct. I think the primary reason for that is that most of the cases Masimo cited deal with the situation where there is one or two alleged bad actors who don't come to trial and testify. A lot of times it's criminal cases, but the inequitable conduct allegations were a similar situation. Right.

When it's one or two people who don't come and testify, that's pretty clearly not a practical matter. It's a strategic choice not to have those bad actors come and face cross-examination. Right.

That's not what we are dealing with here. We are not making a strategic choice not to call 20 different people. It's a practical choice that we can't possibly call 20 different people to testify in a five day time trial, so we don't think we should be punished for that practicality by allowing them to make adverse claims that those people who didn't come would have said something adverse to Apple under cross-examination.

THE COURT: Could the Court just fix this by telling the jury that I've given the parties a limited amount of time and so -- I don't know -- you can come up with some language I can tell them.

MR. HORNE: I think, Your Honor, that would help. The better way might be to do the default rule that you announced in the Arendi case where you said, you don't get to disparage somebody who didn't come without having a side bar and asking me or explaining to you, the judge, why we want to point to that empty chair.

THE COURT: Did I say that? That sounds not unreasonable. All right. Thank you.

MR. KATZENELLENBOGEN: Benjamin Katzenellenbogen, Your Honor.

THE COURT: How about what we just talked about? Are you okay with that?

MR. KATZENELLENBOGEN: We are okay with taking it -- sorry. Depends which part.

THE COURT: What he said. I will have to go back and look at what lead to that, but apparently we came up with a rule

that you couldn't disparage somebody without checking with me first and they seemed like they were okay with it.

MR. KATZENELLENBOGEN: So we have a different reading of the transcript in Arendi. My reading of the transcript was that in Arendi there was a specific issue about a particular third party and whether that third party was, in fact, under control of one of the parties. And so the focus -- again, I don't want to tell the Court about what the Court was thinking.

THE COURT: Right.

MR. KATZENELLENBOGEN: I only read the transcript, but it appeared there was a dispute about control over a particular witness and the Court said, okay. If we get to that, we are going to need to address that. But, generally, if we are talking about witnesses over whom you genuinely have no control, then I don't want to hear an argument about a missing witness. And we completely agree with that because, of course, the premise of a missing witness inference or an argument for an instruction

is that the party has control over the witnesses.

And so certainly we agree if it's a witness Apple has no control over or conversely Masimo, then that would not be appropriate.

I think with the elimination of the inequitable conduct fraud issues we are talking about a much smaller group of omitted inventors. I'm not sure if any of them are former employees. I think maybe in the briefing we talked about seven in particular, at least six of them are current Apple employees, and our suggestion was, yes. Let's just take this as it unfolds in the trial. This may not end up being an issue.

But if, as the evidence comes in, there is evidence pointing toward one or two particular people and Apple does not bring them, then I think that may very well be appropriate.

THE COURT: Yes. Thank you very much. Here is how I think we'll do this.

I'm not going to issue a blanket ruling that there is going to be no

disparagement for failing to bring somebody. I'm open to a jury instruction that the parties have limited time. And then if, after the Court gives that instruction, somebody wants to waste time on pointing to an empty chair, but I could see a situation where there is an important witness that somebody does have control over that isn't here and somebody else wants to comment on that. It may, indeed, be appropriate, but I wasn't hearing from Masimo that they were adverse to the procedure whether they are going to check with me first, so that's what we will do.

Does everybody understand how we are going to proceed?

MR. DESMARAIS: Yes, Your Honor.

MR. HORNE: Yes, Your Honor.

THE COURT: Apple's motion in limine number two, which requests the Court to preclude evidence and argument involving pejorative characterization of a party or person. I think on this one I might want to hear from Masimo first because Apple has pointed to a lot of these exhibits which I'm not understanding if Masimo is going to even

use or how they're even admissible.

So why don't you tell me what part of Apple's motion you don't like and what it is you want to do that they don't like and then we'll try to decide this in a concrete way?

MR. HORNE: Brian Horne for Masimo again.

Your Honor, a lot of the exhibits we are talking about the motion in limine number two are, I would say, from a response expert report to some of the things Apple has suggested it might say. Their expert report on an injunction throw a lot of -- lot of mud at Masimo. It calls it a shanzhai copyist. It puts some of those exhibits on the exhibit list. I don't think they are going to present those.

We said in our opposition this is stuff that we might bring in depending where Apple goes. The motion itself, nothing pejorative or negative about anybody. I mean, they just called us a bunch of dirty copyists, so it kind of violated the breath if you take it at its face.

For the record, we disagree with

everything he said on us being a copyist and we believe we copied the patent, that's wrong. We will prove that at trial. This is not the time to debate that.

So for motion in limine two, as we said, most of it would be responsive if Apple went where I don't think they are going to go. Mr. Malackowski is on their witness last as a may call. Some of the exhibits are on the list. The stuff about criticizing Mr. Kiani about a Sound United acquisition.

There is a complaint in the Delaware Chancery Court of a shareholder lawsuit against Masimo and Mr. Kiani that they probably are going to add to the list. I don't think they are going to go there with this stuff either, but depending on what they say -- while they're pristine, we might need to be able to respond.

THE COURT: All right. Thank you.

MS. MILLER: Your Honor, Lindsey Miller, Desmarais on behalf of Apple.

So what counsel just described is accurate in part. Mr. Malackowski, Apple's expert, does talk about shanzhai copyist in

connection with this discussion of a permanent injunction in his analysis there. And, you know, to the extent that he does not come to the upcoming trial and addresses those remarks, we understand that there is no basis for Dr. Tyler to raise some of the documents that have been addressed here.

However, we disagree with the later comment by counsel. If Apple simply characterizes its patents as innovated or describes Masimo's infringement, willful infringement copying, we certainly don't think that would open the door and allow them to respond to that evidence using some of these documents.

As Your Honor probably saw, the documents make reference to manufacturing conditions that are very emotional. They talk about their hearsay statements from blog articles that we are not going to be able to challenge and cross-examine. It really is not appropriate, given the fact that we are going to be arguing this case infringement and willful infringement.

Those documents are not relevant to

those issues.

THE COURT: Yeah. So I don't know what the evidence is going to be. I have a general understanding there is a larger dispute between the parties than just the dispute we are going to hear at the trial in a couple weeks.

But if Apple presents evidence of Masimo's copying, you would agree if there is evidence of this -- and I don't know if there is -- that Masimo could respond by saying we didn't copy you. You copied us. They could do that. Right?

MS. MILLER: That's exactly right, Your Honor. In fact, in their opposition they argue that they think that these types of documents are appropriate rebuttal and we would just say that is completely not appropriate rebuttal.

What you do to rebut allegations of infringement and willful infringement copying for the Apple's patents that are not valid is to say they are not valid and we do not infringe.

We intend to win this case on the

merits. We don't intend to win this case by slinging mud.

THE COURT: Right. Okay. Thank you very much.

So here is what I'm going to say: Having just looked at a couple of the exhibits that are cited in the motion, it looked to me like they were totally hearsay and not admissible anyway. It does not sound like this is necessarily going to come up.

We had an agreement from Apple if the argument is that Masimo copied, Masimo can put on evidence that Apple copied from it if that evidence exists.

But general things about Apple being a bad actor are not going to come in unless Masimo can establish some connection to whatever that evidence is to an issue in the case.

So there has got to be a particular bad act that some nexus to the issue in this case. Apple copied our watch. Fine. News article about somebody saying something 20 years ago about copying. Not okay.

Does that make sense to everybody?

MR. HORNE: Understood, Your Honor.

MS. MILLER: But, Your Honor, that's not Apple's position. If I may.

So as Your Honor is probably aware, Masimo has counterclaims of infringement that Apple is infringing Masimo's technology and those have been bifurcated. They are not going to be addressed at the upcoming trial.

So we do not think that it's appropriate for Masimo to be able to get up and say, well, Apple is copying our products, too, because those are not the issues that the jury is going to be asked to address. They are going to be asked to address, are Apple's patents valid and are they infringed and willfully infringed by Masimo. Those are the issues.

So to say, well, but you copied me, too, that's not a defense to willful infringement.

THE COURT: But isn't it? I mean, if you were alleging that somebody copied from you, they could put on evidence that they independently developed it, couldn't they?

MS. MILLER: From a validity perspective, Your Honor, yes, they could do that.

THE COURT: Well, they could put it from a willful infringement defense perspective, too. They could do that, too, couldn't they?

MS. MILLER: Well, not according to Judge Andrews in the Zimmer Surgical versus Stryker case.

So there the Court excluded evidence that the accused infringer, Stryker, was an innovator and the patent owners then were copied. They found that it was not relevant to Stryker's willful infringement. In fact, Judge Andrews in that case says, it is not a defense to willful infringement to say that plaintiff copied our same.

THE COURT: Yeah. I don't know what the particular circumstances in the case are and, again, I don't know what the particular evidence here is going to be, but if you are saying that the other side copied certain aspects and they have got evidence that, no, in fact, they developed that and you copied

from them, that seems to me to be something that ought to come in, but I guess we will deal with it on a case-by-case basis.

Mr. Desmarais?

MR. DESMARAIS: I was going to agree with Your Honor if it is limited to the thing that we say they copied, and they want to respond and say, no, on that thing you copied from us. We don't have a beef with that.

THE COURT: No general allegations of copying, but I think that's consistent with what I said which is that we have to have some nexus between whatever the allegation of copying is and the issue that's going to get tried in this case.

MR. DESMARAIS: Exactly.

MS. MILLER: Exactly, Your Honor. And I apologize. I didn't understand the nuance that you were describing, but as you probably saw, the documents we were talking about talk about many other Apple products that are not at issue in this case.

THE COURT: Right. All right. Good. I think everybody understands the contours.

Let's move onto Apple'a motion in limine number three.

Let me refresh my recollection. I got it.

MR. SHAW: David Shaw from Desmarais for Apple.

This M.I.L. three kind of touches on the same issues you were just discussing with my colleague, Ms. Miller.

So the claims that are actually being tried to the jury in this case are Masimo copied Apple, Masimo willfully infringes. Apple's patents are valid.

The way for them to defend would be to say we didn't copy. We don't infringe. Your patents are invalid. And instead what they want to do is point to a bunch of other litigations and a bunch of allegations that we stole their trade secrets and we hired their employees back in the 2013, 2014, 2015 time frame.

Frankly, Your Honor, it sort of reminds me of the end of the Wizard of Oz when Dorothy and her clan show up and they find the man behind the curtain and the man behind the

curtain says, pay no attention to the man behind the curtain, even though the man behind the curtain is the only issue that matters.

And here the man behind the curtain is the fact that Masimo willfully infringes Apple's patents and that is what the jury should stay focused on.

So the first distraction Masimo wants to point to is an ITC case that they filed against Apple back in 2022. They had their day in court on that. It was a five-day trial. It's over.

The second distraction they want to point to is a trade secret case they filed in the Central District of California against Apple. They had their day in court on those issues. That was a 14-day trial, Your Honor. It's over.

And, to be frank, it's being retried again on November 5th, so they are going to have another day in court.

THE COURT: Is it?

MR. SHAW: That's my understanding, Your Honor. It's rescheduled for November 5th for a retrial.

MR. DESMARAIS: Yes, Your Honor.

THE COURT: I read the news. Sounded like maybe the judge was suggesting there is a jury-bench issue there that maybe might delay that trial.

MR. SHAW: I don't think it's been decided whether it's going to delay the trial, but the issue is out there. As of now, my understanding is it's scheduled for November 5.

The point being they had their day in court and they are going to have it again somewhere besides here on October 21st. They explained this in their opposition brief. Right. They say, oh, well, here's all these allegations, a page and a half, two page of allegations about how Apple hired Masimo employees back in 2013, 2014, 2015, the parties met once in 2013.

That is not relevant to whether Masimo willfully infringes Apple's patents on the Apple watch. In fact, back then the technology that Masimo had, the supposedly leading technology that they had, they're these big machines in the hospital that you

roll in to a hospital room to measure folks' blood oxygen saturation. It's not this little bitty watch that you wear on your wrist. They didn't have a watch until 2021.

So that's six, seven, eight years after these trade secret allegations that they are making in the opposition brief and that they want to bring up again in this case.

So to be clear, Your Honor, we are asking you to keep the jury focused on the issues that are being tried, which is Masimo's willful infringement of Apple's patents.

THE COURT: You are saying there is no -- well, let me hear from them.

MR. HORNE: Brian Horne for Masimo.

Your Honor, I want to look at these in a couple different buckets.

First of all, the 2013 -- I'll call it the 2013 story. And Mr. Shaw just referred to the big hospital equipment that Masimo sells. They also sell sensors. And both parties, in fact, started with a Masimo forehead sensor to develop their watches.

In 2012 Apple set up a shell company to buy a Masimo sensor and used that forehead

sensor. It's a reflective sensor. So the Court may not realize, some of these sensors go on the finger. There is an LED on one side. There is a diode on the other. We call it a transmitted sensor.

Reflecting sensors are used on the forehead with LEDs and the portable diodes are on the same side.

Apple bought a Masimo product, a forehead sensor, tore it down, tested it and used that as a benchmark to start developing their watch back in 2012 and 2013.

Then they came to us recognizing we're leaders in the industry and we could help Apple build their consumer product.

So we don't even have to say that Apple copied us for that or re-live the California trade secret case.

Some of the evidence that --

THE COURT: And just to be -- we had a lot of narrowing of claims and patents. The sensor that you are talking about, is that aspect of the watch something that is in one of the currently asserted claims?

MR. HORNE: Well, the design patent

is for a reflective sensor and so both parties started with that same sensor. When we started our watch, we used a forehead sensor as well, the same forehead sensor or very similar to what Apple tore down in 2012 and 2013.

So starting at the same place, might the parties stand up in a similar place and it might explain and should explain some of the similarities Apple is pointing to.

Second, if --

THE COURT: Say that one more time.

MR. HORNE: Sure.

THE COURT: So the answer to the question is that the design patent covers something about the sensor. And so you are going to say that -- well, first of all, they are not asserting willful infringement as to the design patent because they can't; right?

MR. HORNE: Well, they can and can't. I don't know if they are asserting willful infringement.

THE COURT: I'm going to say they can't assert it because it's not permitted under the federal circuit case law. Is there

something in one of the utility patents that covers the sensor where they can say, you are willfully infringing our utility patent and you can say, no, they actually stole our sensor?

MR. HORNE: I would have to defer to Mr. Anapol on that.

MR. ANAPOL: Yes, Your Honor, is the short answer.

MR. HORNE: But some of the evidence that they are going to point to to say we copied, they are to say we studied their product and that constitutes copying. We had one of their products in a landscape power point patent, that shows we copied. Well, no. They tear down products all the time. They torn down one of our products. They torn down other products.

Part of their story is that we were inept. As Mr. Shaw just said, we are just a hospital company and we are late to the party, but in 2013, they were thinking of acquiring us or partnering with us to use our technology in a commercial consumer product, so it's relevant for context of the history of the

parties, even if we don't say they copied or committed the tort back then, it puts the parties relationship in to context. It says, well, just because you tore something down does not necessarily mean you copied and it shows that we are not some inept hospital company that has technology that's unrelated to the consumer field that needs to copy Apple just to offer a consumer product.

So that is relevant, even if we don't say they copied and sold our trade secrets. It's the facts are relevant to this case for the context.

THE COURT: Right. So do you need to reference the litigation and proceedings in the trade secret case, then, to make that point?

MR. HORNE: No. I'm not asking to do that. Again, it could come up. They have a press release I think or an article on their exhibit list of the mistrial in California, assuming they are not going to play that. There could be things that open the door. We are not planning to do that.

THE COURT: Okay.

MR. HORNE: It's the facts, not the lawsuit. Not even an accusation. Here is what happened. That puts in the context the allegations they're making here. We think it's very important, Your Honor.

THE COURT: So to the extent that something happened, I think this falls under what we discussed with Apple's motion in limine number two. We talked about what the contours were of being able to say that they copied from you, but not -- so we have already talked about that. Now you said you are not going to reference the trade secret proceedings, so let's put that aside.

MR. HORNE: Okay.

THE COURT: Is there any other proceedings, legal remedies and allegations that you want to put on that you think that this motion is trying to prevent you from putting on?

MR. HORNE: It depends on what Apple says for the reason for bringing the case. We believe that this case was brought for press reasons. The ITC case, the ruling was supposed to come out a week or so after they

filed their complaint. So there could be things that open the door to that, but the 2013 -- I'm calling it the 2013 story is very different. Totally unrelated to any lawsuit.

So that's -- I'm treating that very separately. We think there is things they could do to bring in the ITC case. I'm not going to die on that hill today, Your Honor.

THE COURT: So what you are saying is if Apple says we are bringing this case to stop their infringement, in your view, that opens the door to you putting on evidence that that is not the real reason they are bringing the case?

MR. HORNE: We think it could, but, again, that's a separate issue.

THE COURT: Let me hear from Apple.

MR. SHAW: Just a few points, Your Honor. It seems like we focus down to the 2013 story.

There is no tie between the facts of the 2013 story to anything that they relayed in contentions or expert reports about the issues that we are trying in this case.

The Masimo sensor that he mentioned

is not alleged prior art. The Masimo folks that Apple hired are not alleged prior artists. They are not alleged unnamed inventors. They are not alleged to have brought the patented inventions to Apple from Masimo. They are completely irrelevant to the legal contentions that we are going to be trying in a couple weeks.

THE COURT: Well, they say that they have got -- that you are asserting a claim against them of a utility patent that has a sensor as an aspect and if you are alleging that they willfully infringed that, shouldn't they be able to say that you stole their sensor technology?

MR. SHAW: I don't think that was ever raised in contentions, Your Honor, so I wouldn't think so. I think it's been made at this point.

THE COURT: I don't have your contentions in front of me.

MR. SHAW: All right. One more point, if I may, on this idea that they want to say that they are innovators or that they were competent to develop their own product.

I think they can do that without prejudicial evidence that is intended to color the jury's opinion of Apple based on non-substantive things like us hiring their employees or meeting with them once 12 years ago.

THE COURT: Thanks very much. Why don't you all meet and confer on this one and Masimo can point to Apple what claim it thinks is implicated, claim meaning claim of the patent that has to do with the sensor and Apple can point to where it thinks making this argument is waived, and you can see if you can come up with an agreement on it and if not, I'll take two-page letters from each side by next Friday at noon and hopefully this dispute will be a little more crystalized in a way that I can rule on it.

All right. Masimo's motion in limine number one, which we are going back to the issue we started out talking about.

So this motion is styled -- Masimo's motion to preclude evidence or argument for any monetary relief beyond a minimum of $250 under Section 289 and to preclude testimony

from James Malackowski.

Let me just ask Apple. Are you going to ask for monetary relief beyond the minimum of $250 in any witness or argument?

MR. DESMARAIS: We're asking for 250 for the design patents under the design statute and 250 on the utility patents under 284. We are only going to ask for one 250, but it's two separate reasons.

THE COURT: Right. Right. But it's a total of 250 and the witness is not going to say, you can get 500. The witness is not going to say you can give whatever you want and you are not going to say in closing argument, you could -- you should give what's right.

MR. DESMARAIS: I'm not.

THE COURT: So that part of it we are done with.

So let's hear from Masimo about whatever is left of this motion.

MR. HORNE: Well, Your Honor, I'll go back and repeat my other arguments.

THE COURT: Let's get in to the details and talk about that.

So they said in their contentions, didn't they, that by law their damages are in no event less than a reasonable royalty.

So is your problem that they didn't say that that is $250?

MR. HORNE: They didn't say what it was, what theory it was, how they were going to calculate it, what evidence supports it. They're just reciting the 284 statute back. That is not a disclosure under Rule 26.

THE COURT: Are you saying you are prejudiced by not knowing that they want $250?

MR. HORNE: I'm prejudiced by, A, not knowing what they are going to present and the basis for it, whether Mr. Malackowski is going to come and what he's going to say about it because there's nothing about it in his expert report. And we are also prejudiced because the jury issue is hanging on this. They are relying on the 284. They are only assuming the 284 damages in retrospect because they know they have a problem because they don't get a jury on the design patents. That's what is going on

here.

THE COURT: I agree with you to the extent they are only asserting the 284 because they want a jury. We all know that that's the case.

MR. HORNE: Correct.

THE COURT: But is it in retrospect or not because I'm looking at the expert report and it seems to me that that's what they were thinking at that time, too.

MR. HORNE: I think it was an excuse for not doing the analysis under 284.

THE COURT: How much analysis do you have to do to ask for $250? I guess that's the question. He could do no analysis. In fact, I could -- I'm not going to, but I could strike his expert report and they could still ask the jury for $250, couldn't they?

MR. HORNE: No, because they didn't disclose it in pretrial, so they can't on the utility patents because their Rule 26 disclosures and interrogatory response didn't say we are asking for $250 and why. Is this a running royalty? A penny a unit? Is this a lump sum up front royalty? I don't know.

Is it --

THE COURT: How much do you need to know I guess for $250?

MR. HORNE: I don't know what they are going to present and the reason for it and how to respond.

THE COURT: I just heard it which was 250 is a low amount and it seems -- like how much do you need to present. I guess that is the question. And as we are talking, I'm thinking about, I hear a cash register in my head racking up legal fees for both sides as we are sitting here, but I understand that this is about a jury trial. We all know that. But I guess if the argument is, we are prejudiced because we didn't know they wanted $250, I just -- that's a hard -- that's hard for me to say that you were.

MR. HORNE: The basis for how they plan to present it at trial, what they are going to say about damages in general at trial. We don't know any of this.

THE COURT: Well, I think we heard from Mr. Desmarais they're going to say that they should get $250.

MR. HORNE: And with no why. And are they going to do a Georgia-Pacific analysis? Are they going to say what it is for? I don't know, Your Honor.

THE COURT: All right. Are you going to do a Georgia-Pacific analysis of the $250? Let's ask him.

MR. DESMARAIS: We don't believe that's necessary.

THE COURT: Yeah.

MR. HORNE: So I still -- I understand Your Honor's point, but we have not -- I don't see where it's been disclosed in the record. Up until now it's not in the opinion in his report. He says, I don't have to address 284 because Apple can't recover both, so he didn't do a 284 analysis. Now they are trying to back fill a theory that was never presented in the Rule 26 disclosure and interrogatory response or an expert report.

THE COURT: All right. Thank you very much.

MR. SEDDON: Jeff Seddon of Desmarais.

Good afternoon, Your Honor, or good morning.

So, first of all, I think it is, as Your Honor can see, Mr. Malackowski did address damages for the utility patents in his report. It's on page 63. He says, the $250 represents damages for infringement in both the Apple asserted design patents and the Apple asserted utility patents.

Second, I think to Your Honor's point, there is just not that much analysis necessary to ask for $250.

I think Your Honor can look at the Lindemann case that we said in our briefing as an example. There the federal circuit affirmed the finding of $10,000 in damages without any real analysis or underlying evidence beyond the fact of the unit sales of two accused products and the sales price.

And, in fact, the Court in that situation looked at the proposed damages expert that the patentee proposed and rejected it.

So it's just unit sales. The sales price said $10,000 is fine.

And as far as disclosure goes, we absolutely disclosed that we intended to rely upon unit sales. We pointed to the testimony from both Mr. Muhsin who addressed the amount of manufacturing in the U.S. and from Mr. Young, Masimo's CFO, that said, what they were sold for and how many units were sold. That itself is enough to address $250 in damages.

Other than that, I think it is just that straight forward. They know what we are asking for. They have known what we were asking for since expert discovery. It's a very straight forward ask. There is nothing more to do and there is certainly no prejudice there.

MR. DESMARAIS: But can I add a theme, too? They sold a lot of these watches. They should be pleased we are not actually asking for a royalty on every watch. The case is not about the money. It's about getting them to stop.

We could have -- we could have asked them for millions. We chose not to. It's not because they are not selling it.

THE COURT: Right. I understand

everybody's position. Thank you very much.

So we will take a closer look at this and get you a final answer. My inclination is that this was disclosed, that Apple might seek a reasonable royalty. I think it was fairly in the expert report. I can't find that Apple's request for $250 in and of itself, if it wasn't disclosed, which I think it was, is particularly prejudicial. I think the prejudice comes from the jury versus bench trial, if there is any, but I don't think that is the kind of prejudice that I'm looking for here for this so...

MR. DESMARAIS: And it's not a summary judgment motion.

THE COURT: Right. Yeah. We will get you a final answer on this, but that's where we are at with that.

MR. HORNE: Your Honor, Brian Horne. One more thing.

THE COURT: Go ahead.

MR. HORNE: I am handing Mr. Desmarais an envelope with $900 cash. That is the most that Apple could possibly recover if they got the 250 on the two of

these patents.

MR. DESMARAIS: That was very kind of them.

MR. HORNE: And prejudgment interest that moots any claim for actual damages they have recovered and moots their case and we think it should be a bench trial.

THE COURT: All right. Should we take a recess and you can discuss the settlement proposal?

MR. DESMARAIS: If they would stop selling the copy, we can avoid the trial and here is your $900.

THE COURT: Is that an offer of judgment?

MR. HORNE: No, Your Honor. It's to satisfy their legal claim for damages. We are not admitting infringement. If they want to continue on their equitable claim for injunction, they can do that. We have tendered every dollar they could get from this case. If they want an injunction, they can go for that in a bench trial.

THE COURT: Is there some rule of civil procedure you think that this works to

X out their claim for damages? You know, you have a lot of papers there. I'm going to -- there is a lot of moving parts. I didn't know before I came out here Apple was still requesting a jury trial. In light of everything that's transpired together, including the cash changing hands, why don't you all meet and confer on this. And if you have some authority that thinks you can boot out their claim for damages such that you are entitled to a bench trial, even if they are right about the seventh amendment right to have a jury hear their claim, why don't you discuss that with each other and we will hear about it on Wednesday.

MR. HORNE: Your Honor, it's the Google case in June of this year where Google tendered the United States Government and it mooted the claim. I have a copy of it here somewhere.

THE COURT: I will take that as well then, so I can get a jump start on what your positon is going to be, but I want to give them a fair chance sua sponte.

MR. HORNE: Sure. If you just give

me a second, Your Honor.

THE COURT: Sure.

MR. HORNE: Here we go. I apologize. I may have highlighted on this, Your Honor. I do have my own highlights, so..

THE COURT: If you want, why don't you just give us the citation and we will print it out ourselves.

MR. HORNE: It's case 1:23-cv-108 in the Eastern District of Virginia. It was document 748 filed on June 11, 2024.

THE COURT: All right. Thank you very much.

MR. HORNE: Judge Brinkema.

THE COURT: All right. Does Apple have a trick play before we get on to the next quarter? We are good. All right.

Masimo's motion in limine number three. That looked to us potentially to have been mooted.

Is there anything left of it?

MR. KATZENELLENBOGEN: Benjamin Katzenellenbogen, Your Honor.

Our understanding was that the

Markman's order likely resolved this based on the Court's statement.

I apologize. On page eight that depending on the evidence and arguments presented at trial -- just to confirm, we are on Masimo number three?

THE COURT: Yes.

MR. KATZENELLENBOGEN: Okay. That's depending on the evidence and arguments presented at trial, the Court remains open to requests to usefully guide the finder of fact by assessing and describing the effect of any representations that may have been made in the course of the prosecution history.

We interpreted that as presuming that those statements in the prosecution history could be admitted as evidence and then the Court, based on how the evidence came in, would decide how, if, what it was going to say to the jury for the jury instructions.

THE COURT: That makes sense to me. Is anybody at Apple -- some of this is gone now because the '352 Patent is dropped. Right? Oh, no. The 352 was the utility patent. I'm mixing it up.

So the point is, is that you think there might be a reason to present to the jury some of Apple's statements in the IPR?

MR. KATZENELLENBOGEN: Correct. Sorry. Was Your Honor done?

THE COURT: Yeah. I'm done.

MR. KATZENELLENBOGEN: And we are fine with not referencing the outcome of the IPR if -- our preference would be that all of the IPR evidence can come in, that it's the prosecution history. And so if the parties want to spend time addressing why the board found something, you know, what the decision was. Hey, this patent survived. We are okay with that as long as it's the same for our patents and their patents. But to the extent -- that was our main issue in bringing this was we just want to avoid a whipsaw where Apple says, hey, in this trial because there are patents, we get to tell the jury, look, they survived IPR and in the next trial when it's our patents, Apple says, oh, no, no, those can't come in.

THE COURT: Got it.

MR. KATZENELLENBOGEN: And our

concern about that was crystalized when their opposition said, oh, no, of course, they shouldn't come in unless Masimo opens the door by making an argument we know Masimo is going to make which is to point out the functional aspects of the design claims.

THE COURT: Got it.

MR. KATZENELLENBOGEN: So we felt -- we thought, okay, wait a minute. We see how this is going to play out. And so that was why our position was, look, we think we are not afraid of the evidence. We think the evidence is great. We'd love for all the prosecution history, including the IPR's coming in now and coming in on our patents. But we also understand that the Court might say, wait a minute. I -- I'm fine with sort of anonymizing it. You can say, look, Apple made this argument to the patent office. The patent office responded with this statement and we will just leave it at that.

THE COURT: Yeah. I understand what you are saying. All right. So to the extent the ask is that I be fair to both sides, that is granted. I will be fair to both sides,

and I will consider requests to put the IPR stuff in as it's relevant, so you opened by talking about how we might tell the jury that some of the statements Apple made with respect to the design patents, that seems fair to me. And then we will analyze the rest on a case-by-case basis with the understanding that the Court will do its best to be consistent. I'm sure you will remind me if I'm not.

Is there anything else we should discuss about that?

MR. KATZENELLENBOGEN: From our perspective, that addresses it. We understand your ruling.

THE COURT: Thank you.

MR. DESMARAIS: I think the only nuance would be -- and this is John Desmarais for Apple.

I agree with all of that. The only nuance would be, I don't think we should be talking about what the patent office said and that these are IPR proceedings. It should be if Apple said something in the IPR proceedings, certainly our witnesses should be

cross-examined about that. Similarly, if their witnesses said something in the proceedings, their witnesses should be crossed, but we shouldn't then be saying, "and the patent office responded," and then, and it was an IPR and what that means is, like that is besides the point. Right.

THE COURT: Right. Well, this was their motion. They seemed happy with the answer. I'm generally disinclined to tell the jury about IPR results. I think you all probably already know that. We will address it when it comes up, but you know that's my preference. All right.

I'm turning now to the body of the pretrial order. There was a dispute between the parties in paragraph nine about claim narrowing. It sounds like that's already happened. Where are we with that?

MR. KATZENELLENBOGEN: I apologize, Your Honor. Benjamin Katzenellenbogen.

My confusion was, I think we may have skipped over Masimo motion in limine number two.

THE COURT: Sorry about that. Okay.

Sorry about. Well, it was related to one, at least in my mind.

Go ahead. Why don't you add what is on number two?

MR. KATZENELLENBOGEN: Yes, Your Honor. And certainly the -- Your Honor's comment that they can't assert willful infringement of a design patent is exactly right.

So I think that one resolves this motion with regard to the design patents because they can see that supposed evidence of copying is not relevant to infringement and, in fact, the Shure versus ClearOne decision that both sides have cited said, not only is it not relevant, but it would be unfairly prejudicial to it in front of a jury because a jury might confuse copying with evidence of infringement.

So Apple's only response to that was, wait a minute. We think it's relevant to willfulness and since Your Honor has held that you can't willfully infringe a design patent, there is no trebling, there is no relevance under 402 for evidence of copying and it would

be also unfairly prejudicial under 403.

So I think under that first bucket with regard to any copying evidence or any willfulness evidence regarding the design patents, we think that should be easy to grant.

And then it is slightly more complicated only because their arguments are a little different under 284 for the utility patents. As we have explained and it sounds like we will be revisiting, we don't -- sorry. Have I --

THE COURT: No. Go ahead. Sometimes I don't have a poker face when I'm thinking.

MR. KATZENELLENBOGEN: As an attorney appearing in front of you, that is wonderful because if you don't understand or I'm not being clear, I would much rather you tell me that now. So that's very helpful.

Did the point about the 289 and the --

THE COURT: I understand. I understand everybody's point on that.

MR. KATZENELLENBOGEN: Right. So no

copy willfulness on the design patents.

On the utility patents, if Your Honor agrees with us that to a damages case was either not disclosed or it was insufficiently disclosed for the theory under Rule 37 such that they're not allowed to present it, and at the risk of repeating my colleague's arguments, position as I think he said is there isn't a sliding scale of disclosure under Rule 37 based on how much you are seeking that you simply, if you are going to ask for damages or if you are going to ask for a reasonable royalty, you need to tell the other side, okay. This is what I'm asking for and this is how I'm going to calculate it.

We all certainly understand the practical comments of Your Honor saying, geez, at some point is it small enough that maybe that doesn't matter. There is potential slippery slope there, but we understand Your Honor's point.

If Your Honor agrees with us, then if there is no damages claim, then there is no right to a jury trial. It can't be enhanced so now there is no willfulness issue, and so

then copying as to the utility patents also wouldn't be relevant.

However, regardless of the outcome, now that we have tendered the full amount of anything they could possibly recover, including argued damages of 250 traveling up to 750, plus any potential prejudgment interest, the damages claim, the claim for damages, is now moot because it has been satisfied.

And that is what the Google case held that goes all the way back. There is Supreme Court precedent that gets addressed a lot in like class action cases with picking off the lead plaintiff, things like that, that it's well-accepted that you can moot the plaintiff's claim for monetary recovery by simply tendering that.

And so once that gets addressed, then there is no relevance to copying or willfulness as to the utility patents either.

THE COURT: All right. Thank you very much.

So this is bound up with what we were talking about already. Does Apple have

anything they want to add? We are going to hear from the parties on Wednesday about -- you can have a seat.

Did you have something else to say?

MR. KATZENELLENBOGEN: I think with the caveat that it's only bound up with regard to alleging copying on the utility patents.

THE COURT: Yeah. Right. Understood. Okay.

MR. MAGIC: Your Honor, Peter Magic, Desmarais for Apple.

I do want to make a few points in response.

So, first of all, Mr. Desmarais went through all the facts earlier with you, so I'm not going to repeat all that about the entire development of their product being shot through with myriad of facts about how they developed that by looking at our IP and our products.

And I don't know if this point was specifically made earlier, but I want to make it.

First and foremost, we are dealing

with a motion that should have been a motion for summary judgment and we are dealing with it far too late. They have known about the allegations since the day we filed the complaint. So there is that.

As far as specifically, responding to some of the points that just came up, Your Honor, Apple certainly doesn't concede that that copying and willfulness are not relevant to design patents. Setting aside whether enhancement is possible or not, Apple would not make the concession that copying and willfulness are not relevant. It's relevant to a whole host of things on the design side.

For example, relevant to article of manufacturing. It is actually part of the test as set forth by the Apple Samsung decision that Masimo cited and is in the briefing and district courts have followed ever since, that copying shows the prominence of the design which is one of the factors for article of manufacturer.

It's relevant, obviously, for secondary considerations. That remains true no matter what, regardless of enhancement, so

we are talking about the evidence related to copying, the evidence relating to willfulness. All of that stuff is independently relevant for a variety of reasons for design patents.

Also, the way that Masimo changed its design midstream completely bound up with the facts of how they did that and copying, that relates to alternative designs which is again relevant on the design patent side.

Even one more, when you talk about article of manufacturer on the design patent side, that is relevant to an aspect of infringement which is analogous prior art that is used in the comparative prior art part of infringement analysis on design patents where you look at the closest prior art and you look at the accused product and that it's far closer to the patented design than to the prior art.

Article of manufacturing comes in to play there. Copying, in turn, is part of determining article of manufacture. And above all, it would be eminently unfair for Masimo to be able to talk about its product and how it made its product in a one-sided fashion

where it's trying to tie Apple's hand behind its back and not let the facts about how it made its product be told which was, in fact, all about copying Apple.

So, for all those reasons, I mean, the evidence remains relevant regardless of whether Masimo is focusing its argument specifically on whether willfulness should be on the verdict form. The evidence remains relevant even independent of that question.

THE COURT: All right. Thank you very much.

MR. MAGIC: Thank you, Your Honor.

THE COURT: Here is what I'll say about motion in limine number two.

Did you have something you wanted to add?

MR. KATZENELLENBOGEN: Benjamin Katzenellenbogen.

If Your Honor is -- if it's still clear that there is no copied evidence regarding the design patents, then I don't need to say anything. If Your Honor wanted me to, I could address the four issues and supposed relevance that counsel just brought

up and explain why they don't apply here, but that may not be necessary. I don't want to waste the Court's time.

THE COURT: Why don't you put on the record what you want to put on the record.

MR. KATZENELLENBOGEN: Okay. So they said it was relevant to the article of manufacturing. That is a concept that only applies when you are dealing with an actual disgorgement claim under Section 289 and you have to determine -- you have to allocate issues of profit. That's not at issue here. So that's completely irrelevant to this case.

Secondary considerations, that would only be relevant in rebuttal to an obviousness case and, of course, we have the option of whether to present an obviousness case so they couldn't present any copying evidence in their prima facie case and unless and until we present it in obviousness case.

Third, alternative designs. That does not make any sense. If they want to present evidence that we had design one and design two, they can present that and they want to argue that that shows there are

different designs available, that has nothing to do with any evidence or allegation of copying.

And, then, finally they raise this concept of analogous art. Analogous art has to do with what prior art is appropriate for consideration with regard to the patent. It is defined with regard to the scope of the patent and the useful article that is addressed in the patent. Again, has nothing to do with Masimo or Masimo's product.

The scope of analogous art to Apple's design patents, obviously, does not change based on who it's asserting those patents against.

So all of their arguments individually are meritless, but I don't think Your Honor even needs to get there because, of course, we agree that there is no copying or willfulness with regard to design patents.

THE COURT: Okay. Thank you very much.

Let me just ask Apple, you wanted a willfulness interrogatory for the jury on the verdict form. Shouldn't that be restricted to

the utility patents?

MR. MAGIC: It should not, Your Honor, because willfulness comes in to play additionally for consideration of an injunction as well. You're going to need that finding as part of the analysis for an injunction, so it absolutely should not be something that's considered --

THE COURT: You don't have a jury trial right to that finding then, do you?

MR. MAGIC: Willfulness is a fact determined by a jury and the jury is going to be determining it --

THE COURT: But you are saying it's a fact relevant to an equitable remedy?

MR. MAGIC: That's correct. It is relevant to an equitable remedy. Correct. Yes. Further down the line when I'm talking about the analysis of the injunction, yes, absolutely.

And so the jury is going to be considering facts that demonstrate the willfulness that will be relevant to that issue.

THE COURT: All right. Thank you.

We will take that one under advisement.

My inclination is that we will probably restrict the willfulness interrogatory to the utility patents. We will think about the rest. I'm not entirely persuaded that evidence of copying of the design has no relevance, but we will take a closer look and I think that's all that is left of this one. So we will get you an answer.

Yes, counsel?

MR. KATZENELLENBOGEN: Benjamin Katzenellenbogen.

I was simply going to add, if the Court finds that there is any marginal relevance, we would ask the Court to take a look at the Shure Clearview decision saying, even if it survives Rule 402 by the skin of its teeth, under Rule 402 it would be unfairly prejudicial because of any risk of the fact finder, the jury, improperly using that evidence.

THE COURT: How would it improperly use it?

MR. KATZENELLENBOGEN: So -- sorry.

And the Shure decision probably does a more eloquent job of explaining this than I will, but the issue is, as we have gone through, the test of substantial similarity and confusion for design patents probably could be more clearly articulated by the federal circuit than it has so far, and so the risk is that the jury, if someone were to say wait a minute, this copied this, they might think, wait a minute. That is somehow evidence that the designs that they ended up with are substantially similar. And it's not.

Everybody agrees. Even Apple agrees, of course, having evidence of purported copying is not relevant to design patent infringement. And so then the question is, well, could it have any relevance to a willfulness determination where there is -- where willfulness is not at issue that, of course, it has no relevance because there is no finding of willfulness for the design patents that could be relevant to anything and Your Honor was exactly right, that where there is no legal -- legal claim on which there is a right to a trial by jury, then, of course, an

allegation of willfulness carries no right to a trial by jury. And if there were to be any evidence presented that Your Honor thought might be relevant to an injunction, then under Rule 403 and Shure that would be presented to the Court outside the presence of the jury.

And so we got to do that in a separate proceeding or if there were a few minutes of testimony that Apple wanted to present, we could excuse the jury to be presented only to the Court.

THE COURT: Thank you very much.

MR. MAGIC: May I just briefly respond?

THE COURT: Yes.

MR. MAGIC: I appreciate it. Thank you, Your Honor. Just very briefly.

It's the same evidence of copying both -- essentially the same core set of evidence of copying both for the utility claims and the design claims. This is not a separable thing. And the Shure case was not --

THE COURT: So, then, what's the problem? When you put it on, why don't you

say this is relevant to the utility claims and then he does not have an argument at that point. That's all I'm saying.

MR. MAGIC: At a minimum, yes. It doesn't -- so the evidence should be in no matter what, regardless of how they want to slice and dice whether specifically the jury should be instructed on willful as to design patents. The evidence should still be in for the variety of reasons I mentioned. On the design side still relevant to all the issues other than infringement and even on the infringement side relevant to article of manufacture which feeds in to analogous art used in the infringement analysis.

Now, the Shure case didn't seem to be grappling with any of those particulars, like the article of manufacture. Perhaps the parties didn't raise them, but it didn't grapple with those issues. The other issues that I explained, you know, tie in to copying and willfulness. So it just did not address them.

THE COURT: Okay. Thank you very much. Let's move on to the pretrial order.

So there was a dispute in paragraph nine about claim narrowing. Has everybody narrowed to what they are going to narrow it to or do we still have some dispute?

MR. DESMARAIS: Apple has narrowed to the claims it's going to try which are the seven claims across six patents.

Masimo's turn now is to narrow their prior art. This agreed to narrow to two prior art references per patent, but we haven't received that yet.

THE COURT: All right. Do you have an understanding about when that is going to --

MR. HORNE: We plan to do it Monday, Your Honor. We got their list of claims last night, which we think is a little late.

So we maintain the pretrial conference order given that we got the notice so late, they should be limited to four claims at trial. If it were a bench trial, maybe a few more than that, but to get it narrowed so late, that's a lot to prepare for, so we think it should be limited to four claims.

THE COURT: I understand your

position. I'm not going to require them to narrow to four claims, but I will say that Apple has gone down to whatever it is. I forget what you said. Eight.

MR. DESMARAIS: Seven.

THE COURT: Seven. You get down to your final defenses and then whatever it is on Monday is going to be what it is. If something does not get tried, the jury is going to get a verdict form on it and I'll tell them that the Court has granted judgment as matter of law on that issue because the party failed to meet their burden of proof.

So figure out what it is you are going to try and be done with it on Monday and do it in good faith because it's not going to look good in front of the jury.

MR. ANAPOL: Jeremy Anapol. Just very minor so the record is clear, Mr. Desmarais mentioned two prior art references per patent. It is actually two prior art grounds which could be a combination of references.

MR. DESMARAIS: That's fine. Yes.

THE COURT: And as long as we are

splitting hairs here, we are talking about the prior art grounds. Are there going to be other grounds that are not prior art grounds? I'm seeing a nod yes. Are we going to have a dispute about that, or is everybody going to understand there is going to be additional grounds that are not prior art grounds?

MR. DESMARAIS: I think we do have a dispute about that because we think that Your Honor's recent rulings have eliminated inventorship and functionality as validity defenses, and that is one of the things we wanted to raise with Your Honor because Masimo thinks they should still pursue those, but they didn't -- they don't have that left. They didn't plead inventorship as a separate invalidity defense and functionality was resolved by Your Honor. We can talk about that now if you want to, but --

THE COURT: Why don't you meet and confer on that? Maybe they're not bringing it up anyway.

MR. DESMARAIS: We did already meet and confer on that and they are dead set on that. Should we talk about that now?

THE COURT: Yes. I wasn't prepared to hear this, so I'm almost wondering if I shouldn't just request letters from the parties so that I could go back and look.

I can tell you that I don't have a recollection of resolving defenses besides an equitable conduct, but if there is an argument that there was no separate defense besides unequitable conduct that was disclosed, I guess that's what we are talking about here.

MR. LUEHRS: Ben Luehrs from Desmarais on behalf of Apple. It's nice to see you again, Your Honor.

So that's one of the issues with respect to inventorship. With respect to functionality, the federal circuit has been very clear that Your Honor is within her discretion to determine whether or not something is purely functional at claim construction and that is what we understand Your Honor did.

Your Honor put in a sentence in the order about if there is evidence at trial that might help the jury with respect to some aspect of the design that might have some

function, that Your Honor would instruct the jury about that, but that the jury would still consider that part of the design.

And so this defense that there is no ornamentality that's protected by the design patents is out based on Your Honor's order.

THE COURT: Do you want to say anything on the record today or -- I will hear briefing on this, so don't feel like you have to get it all in, but you are welcome to say what you want to say.

MR. KATZENELLENBOGEN: Sure. Benjamin Katzenellenbogen. With that, I will try to keep it very brief.

Disagree. Inventorship was definitely disclosed. It was in our invalidity contentions. Apple responded to it in their response to invalidity contentions. It was in our final design patent invalidity contentions. It was in our supplemental responses and objections to the interrogatory 34. It was in both sides proposed final jury instructions. It was in both side's verdict forms.

So the idea that it wasn't disclosed,

we think is wrong and with regard to the functionality aspect, I think Mr. Luehrs may be pointing to page seven of Your Honor's claim construction order where it says, additionally on this record I agree with Apple that none of these terms identified by Masimo are purely functional. We understood that to mean on the claim construction record that the Court was not sua sponte granting summary judgment against that defense. That issue was not briefed and particularly in light of Apple's arguments trying to characterize motions in limine as untimely motions for summary judgment based on Rule 37 disclosures, for Apple to kind of back door that and say ah-ha, based on some language that likely didn't have that intent, we are entitled to summary judgment on this we think would be unfair.

THE COURT: Understood. Yep. I understand what everybody's positions are. I want to make sure that I respond appropriately, so I will take papers on this.

By the way, so add this to the list of things that we are going to hear from you

on, but as we are talking, I'm now thinking that I want to hear from you on Wednesday instead of Friday to give us some time.

So I think we have three things on the list so far.

MR. KATZENELLENBOGEN: So we have a two-page letter on the --

THE COURT: We are going to switch and do omnibus letters on all issues left open at the pretrial conference and we will decide the page number after we get to the end because the list is getting longer as we go.

MR. KATZENELLENBOGEN: So at the end we will double check to make sure that everybody is on the same page as to what those issues are.

THE COURT: Yes.

MR. KATZENELLENBOGEN: Thank you, Your Honor.

THE COURT: Okay. But putting aside the issue about whether or not Masimo could still proceed on those other defenses, it's Masimo's understanding that they get the two prior art based defenses, plus those

defenses, not that they then need to pick two total. Right?

MR. KATZENELLENBOGEN: Benjamin Katzenellenbogen.

Yes. Correct. And the parties were I believe, on the same page. There are two prior art based grounds of invalidity per claim.

MR. DESMARAIS: Per patent. Per patent.

THE COURT: Oh, boy.

MR. DESMARAIS: It's only -- there is only one patent that has two claims, but the agreement was per patent.

THE COURT: Why don't you take back. This may not be an issue. It's preserved to make the argument. I don't know if -- it's preserved to make the argument to each other and we will go forward. Everybody have a seat. We will hear about it next week. Yeah. We're not going to --

MR. HORNE: It is their proposal on the pretrial conference order.

THE COURT: Yes. Work it out.

MR. DESMARAIS: That has been

subsequently negotiated and it is very clear.

THE COURT: Work it out. Work it out. All right.

There was a dispute about language in paragraph 14. I hesitate to even mention it. If somebody thinks somebody else is now trying to broaden what is getting tried, it seems unlikely, but why don't you work it out and make sure you both understand where you are at on this one, too.

Just a comment. I had noticed that these exhibit lists are just beyond. I assume we're not going to have 3,000 exhibits from each side that are attempted to be introduced in to evidence. I'm seeing nodding from both sides.

Let's talk about paragraph 23. I don't know what this means. From Apple?

MR. DESMARAIS: Yes, Your Honor. I just think what we were trying to capture is what I understand has been the practice in Delaware for a long time. Documents don't just come in. A witness has to talk about them in order for them to be admitted, even if there are no objections to them. That is

all that was trying to capture. It is not going to be a document dump. It's going to be a witness needs to talk about it.

THE COURT: Absolutely. Was that your understanding as well?

MR. HORNE: So we just didn't understand the paragraph either, Your Honor. That's what we said -- we got an e-mail last night saying that Apple was going to withdraw this paragraph.

THE COURT: So we will take that paragraph out because I don't understand what it means, but it is everybody's understanding and the Court is ordering that documents need to come in by introduction at trial and before a document will be admitted a witness needs to talk about it and I'll go a step further and say, if you want to focus the Court in your post-trial briefing and any particular portion of a document, the witness should have talked about that portion of the document as well.

MR. DESMARAIS: That was all that paragraph was trying to get at, Your Honor.

THE COURT: Great. In paragraph 36,

that's moot; right?

MR. DESMARAIS: It is.

THE COURT: Okay. Great. It looked like the proposal regarding deposition designations or -- excuse me -- the exchange of exhibits and demonstratives followed our procedures. That's fine. Just to be clear, we do need that stuff by 7:00 a.m. if you want a ruling on it that day. We will plan to take the bench around 8:30 and address any outstanding disputes about demonstratives or exhibits and the time for that will get charged in the way that the Court determines is the most fair.

There is a dispute in page 18 which is paragraph 76 that had to do with demonstratives created during opening statements. That will be resolved in Apple's favor.

Paragraph 81 had a dispute about these may-call live witnesses. Is this still something that's in dispute? I need to understand better what this dispute is.

MR. KATZENELLENBOGEN: Ben Katzenellenbogen, Your Honor.

We have been working on this. There seem to be some misunderstanding between the parties as to where the disagreement was. Initially we thought the disagreement had to do with witnesses on Apple's may-call live list and how far in advance do they need to tell us whether they're actually bringing them live so that we can prepare live cross as opposed to relying on the designations.

And so we wanted that more than two days ahead of time, so that -- and I don't know -- I think that may still be an issue which is that we need to know that -- we feel like we should probably already know that. We had initially requested that they had to tell us who they are actually bringing by October 7. Obviously, that date has passed.

So there was that issue. Then we found out I think it was either last night that Apple added Joe Kiani, Masimo's former CEO, who is on our will-call list and we will be bringing to testify in our primary case. They added him to their witness list and we found out that they want to call him in their case in chief.

So we have been working on trying to address that. We still I think need to work through that. As I understand, the tentative issue was that if they want to call him provided it's okay with his schedule, if they tell us when they are going to call him, we may be able to do that, but we would need to, at the very least, be able to have our direct or our cross go beyond the scope of their examination and then, of course, we would have to be able to bring him back to address any additional evidence that was elicited after he testified.

So I think we can work this out with them as long -- but, I mean, it was -- it came as a little bit of a surprise to us.

MR. DESMARAIS: We're working it out.

THE COURT: Okay. We will move on then. I will say this: It seems to me that sometimes during the course of the trial you might have somebody in town and then by Wednesday you think things are going well or not going well for you, you decide not to put that person on the stand. I'm not going to

say that one side or the other can't do that, but I would ask you to work in good faith. If you know that there is somebody that you are not going to bring, that you let the other side know and it sounds like everybody is working on the rest of it.

Is there anybody else that Masimo thinks I need to order them to do?

MR. HORNE: None on that, Your Honor, we will keep working on it.

MR. DESMARAIS: We are working on it.

MR. HORNE: There is one thing I think is out of order and Mr. Kiani and the fact that they put him on the witness list a few days ago. As the Court may be aware, there has been a lot of things in the news about Masimo and Mr. Kiani's position in the company.

THE COURT: I heard that.

MR. HORNE: I think that is inappropriate for trial and I would like the representation that his examination will not go in to those areas with the shareholders --

THE COURT: I appreciate that. Why

don't you work that out. Add that to the list if you think there is something else. It seems like you really are -- I'm not going to say anything more. I'm not going to decide hypothetical disputes. Let's just put it that way. All right. Thank you.

MR. HORNE: Thank you, Your Honor.

THE COURT: Eighty-three?

MR. SHAW: David Shaw, Your Honor.

I think just a quick question on this one. The parties are trying to work it out and one question that came up among us is how far in advance of the day when designations are played do you like to receive the full designations and objections to get ready to decide the case?

THE COURT: So that's what I was going to -- I notice this later on because it seemed inconsistent, what you gave me.

If you want a ruling on day X about it, I need to have the transcript with it the morning of by 7:00 a.m. And then we are going to sit here and we are going to go through them one by one and rule on them. Sometimes I usually get them the first day like that and

everybody decides it's really not that important, but that's what we will do.

MR. SHAW: I think the plan is for us to work backwards from that and try to work this out without you --

THE COURT: Okay. Thank you.

MR. SHAW: Thank you.

THE COURT: Ninety-eight nobody has to stand up. We are going to go with Apple's proposal.

The one question I have here about 98 was that Masimo had suggested, quote, displaying previous trial testimony and for the life of me, I was trying to think about what that was going to refer to and why would we be displaying previous trial testimony?

MR. HORNE: I've seen before, Your Honor, even in a case against Apple what they will do is they will blow up testimony on a slide for a witness. They will take testimony from Monday and blow up on a slide for a witness testifying Wednesday. I consider that to be a demonstrative and then around disclosing it in advance or disclosing exhibits, which would be demonstratives, then

those types of things should be disclosed which is why we had the objection ruled on, making things apply. That looks to us like an end around. We just want full disclosure.

THE COURT: Okay. Understood. I appreciate it and that's helpful. I was thinking about displaying testimony from another case or deposition or something. We are not going to be doing that.

And so this is talking about, for example, displaying fact witness testimony for the experts to --

MR. DESMARAIS: As an example, you would say to an expert, I mean, I've done this in every trial. Mr. Expert, were you sitting in the courtroom when Joe Blow said X. What did you think about that? That's normal.

THE COURT: Yeah. That's going to be permitted.

MR. HORNE: I'm fine with that. I'm just saying with the slides, our whole issue is creating slides on the fly as an end around the disclosure part. That's our only issue.

THE COURT: No. So I'm not going to require transcript of trial testimony to be disclosed ahead of time or blow ups of exhibits or creating stuff while we are sitting here in the courtroom. The whole idea is that if they got something prepared, I'll take a look at it and if the objection is resolved in advance, we are going to try to do that, but because we don't know what it's going to look like in advance, we are not going to do that.

If it turns out -- and I can't imagine that either side would do this -- that they are misquoting a trial transcript or something like that, then that's a different situation but...

MR. HORNE: It is not misquoting. It's come up before. Whether what's being blown up and shown is within the scope of the report and you don't know until we see it being done on the fly, and with the depo -- with the demonstratives being created on the fly, I think they know what they are going to do.

By the way, we agree, if there is an

exhibit and we have no objection to the exhibit, they can blow it up and call it and highlight it. That's totally fair game. We are not asking for that to be disclosed in advance. It is when there is a demonstrative that's created and they knew they were going to create it, how they are going to create it. If they are dealing with demonstratives in advance, we should get that, too.

THE COURT: I understand your position. That objection is overruled. We will go with Apple's proposal.

And then I think the reasoning is the same in paragraph 99 if we have got just a big poster board of the exhibit that's been admitted that does not need to be disclosed ahead of time.

One hundred, again, I agree with Apple insofar as they don't need to re -- well, re-disclose demonstratives in closing that they have already used with an expert. I guess hypothetically this could come up if somebody is trying to have one expert testify about something that wasn't in the report that the other expert blew it in their direct and

didn't get it in. So why don't you disclose the demonstratives for the experts again, if you are going to use it with another expert. Okay.

MR. DESMARAIS: Okay.

THE COURT: In paragraph 104 you had a question about witness binders. We will take two copies. We'll certainly give them back after the witness leaves the stand, but it is helpful for us to have them.

105 and 106, we weren't really sure what the dispute was here.

MR. DESMARAIS: Yeah. I can explain it, Your Honor. So I think Masimo wants the cross-examination exhibits ahead of time in a binder and we don't think that's appropriate. We would give them to Masimo at the same time we give them to the witness so that we are not giving them our cross-examination ahead of time. If you have a witness, say, that comes in at four o'clock and I got to give them -- under their proposal, I got to give them a binder of everything that I'm going to do with that witness and we are going to break for the day, and they are going to have

it all night.

So our provision says, we will give it to you when we give it to the witness for cross, and if it's happening in the morning, and we know we are going to finish it, maybe we will put it in a bender for them to make it easy, but we should not be giving them a binder of all our cross exhibits at the time we start.

THE COURT: Do you disagree with that?

MR. HORNE: Yes and no. We weren't asking for them in advance, number one. The request is when cross begins, or even if you want, when you start -- when you hand the exhibit to the witness an exhibit binder, you ought to give one to opposing counsel. And that's for the day. If he starts at 4:00, we would like them in binders because it is easier to flip through. We have got a lot of paper here. Every case I have ever done we have a cross-examination binder.

So yeah. We are not saying give us your cross stuff the day before or the night before. It is when cross begins. If he wants

to do it when he starts handing exhibits, that's fine. If he wants to do it for the day, that's fine. It's just loose paper, you know, to try to keep everything straight.

THE COURT: Okay. He's going to give you a binder I already heard from him. Right? You are going to give it to him in binder form or are you going to do it as -- with each exhibit?

MR. DESMARAIS: I think, as I was saying, it depends on the circumstance. If I'm starting a cross first thing in the morning and I know I'm going to use everything, I'll be happy to give him a binder. If I'm starting at 4:00, I don't want to give him a binder because we are going to break for the day.

THE COURT: Understood. Another hypothetical dispute, but give them whatever you give the witness and give us. I'm not going to require binders. That's what we'll do.

I mean, for -- to be clear, even if they had it all night, everybody understands the rule in Delaware that once the witness has

been tendered for cross, you can't talk to them about the subject matter of the testimony. So I'm not sure what you do with it by having it all night, but it does not matter because of how we came out on that one.

Number 109 just seemed to be belt and suspenders. So we will go with Apple's proposal on that.

MR. DESMARAIS: Thank you, Your Honor.

THE COURT: All right. You all agree that 14 hours -- the problem with 14 hours is we can't get done in a week with 14 hours and I learned this the hard way, unfortunately.

So what we were thinking was 12 hours, minus the time that we need to deduct from the discovery disputes which we have clocked at Apple for 43 minutes and Masimo at 30 minutes, so that gives each side more than 11 hours and 15 minutes which, for what it's worth, is more than we have given in other trials of this complexity and have gotten done in plenty of time.

Anybody have anything they want to

say about that?

MR. DESMARAIS: We can live with that, Your Honor.

MR. HORNE: We can as well.

THE COURT: Okay. Great. We'll probably do the charge conference on Tuesday or Wednesday. I guess it's possible that we go in to Thursday if we have other complications coming up. We will try to get as much of it done on Tuesday and Wednesday if that's possible.

Looks like the parties have agreed on the juror notebooks. That's fine, although I would like to see what the parties are giving the jury in terms of the claim construction before it actually goes to them, so that needs to be cleared with us first. If you just want to file it with a cover letter before you make up the jury binders, that's fine. I just want to lay eyes on it even if you agreed on it because it -- is me instructing them, so I like to make sure it doesn't have typos and looks like I know what I'm doing.

Apple needs to bring copies of the voir dire and pens for the jurors. We have

the parties proposed voir dire. I haven't looked at that yet. We will get that to you sometime next week, what we need. Copies throughout the morning of.

I can't remember how many jurors we have called. We called 60.

And then we will also need copies of the preliminary jury instructions to be brought by Apple as well.

Just in indication I forget to tell you, when we get to that point, we will need copies of the final jury instructions as well because I know at the last trial we were all looking at each other.

Are we playing the patent video as part of the preliminary jury instructions from the FJC?

MR. DESMARAIS: Ordinarily we do, but if that's Your Honor's preference, whatever you would like.

THE COURT: The only thing I would say is that the parties agree on it, that's fine, but we should have a copy of the sample patent in the juror notebook that we give them because it says during the video you

have all been provided with a copy of the sample patent and everybody looks at me about where their sample patent is instead of paying attention to the video.

So we can tell them ahead of time that we will talk about a sample patent and they won't get it. That's also fine. I just want it to be sorted out ahead of time.

MR. DESMARAIS: And that won't come out of our time for trial; right?

THE COURT: The video?

MR. DESMARAIS: Yeah.

THE COURT: No. No.

MR. HORNE: Understood.

THE COURT: By October 18th the parties should work together and file a letter on the docket that indicates the list of witness' names and technical names for the court reporter. I'm told we should get that earlier. So we will do that by Wednesday, as well, which I think is October 16th.

I understand everybody has worked out to get access to the courtroom before the trial. All of that should be coordinated through the courtroom deputy, if it hasn't

already.

Any edits or corrections to the transcript we need no later than two weeks after the trial so that we have a transcript that we can all work off of for post-trial briefing.

Are we going to need to seal the courtroom?

MR. ANAPOL: Jeremy Anapol for Masimo.

We have an issue with showing that certain references where prior art might depend on third-party confidential materials. That's one example.

And I have an issue about a witness that I want -- that I just found out about last night that I want to raise here that I might need to seal today, but that's not during the trial.

THE COURT: All right. Thank you very much.

So, if there is going to be a need to seal the courtroom, I need to have that raised in the morning before the jury comes out, so we don't just have a surprise in the middle of

the trial we are going to take the jury out, so I need to know if it's going to be happening, if it does need to happen. If it does need to happen, it needs to be kept to the bare minimum and hopefully we can have the parties work together to minimize sealing.

MR. HORNE: We will, Your Honor.

THE COURT: All right. I mentioned we are looking at the jury instruction and voir dire. We will get you edits for that next week.

Is there anything else that we overlooked or that we need to discuss while everybody is sitting here?

MR. HORNE: One thing, Judge. We still maintain it should be a bench trial, but how does the voir dire procedure work, Your Honor, and how many strikes do we get?

THE COURT: Oh, sure. Okay.

MR. MAGIC: Your Honor, we wanted to confirm you wanted to conduct jury selection on the Friday before or not?

THE COURT: We haven't called the jury on Friday before, so they are coming Monday. Yes. So we are doing it on Monday.

Those letters went out a couple weeks ago so it's too late to change it now, which is probably the reason why I can't give you any more time.

So we will have everybody seated up here in order that is randomized by the government computer that does it, but the order which is known to me, so there will be 1 through 60. They will each have a copy of the voir dire questions and they will have a pen. And I will tell them to circle the question if they have a yes answer to that question.

So do you work for Apple? Yes. And so we are going to walk through them all that way, so everybody has their paper that shows that they have yes answers. And the voir dire is designed so the yes answers are the ones we need to flag, so when we review the voir dire, that's one of the things we look at is make sure that the questions are written in such a way that the yes answers are the flag.

And then after we are done reading the voir dire, I will provide with counsel into the jury room which is right back here. My courtroom deputy will start with juror

number one and ask them if they have any yes answers. If they do, we will find out what the yes answers are. Courtroom deputy will come back and tell us. We are going to have juror number one and this is who it is. That is when you are going to find out who juror number one is. And we will find out what questions they have yes answers to. And then I will question them. I will give the attorneys a brief opportunity to ask any follow-up questions that they want to ask.

Counsel will have a very little bit of leeway, but if it gets to start to take a long time, then we are going to start charging trial time. Most often it's obvious whether or not somebody should be struck for cause or not, but I will hear applications outside the hearing of the juror about that and we will send them back into the courtroom.

If there is no basis to strike them for cause, we will keep working through juror by juror until we have a total of 14 jurors that have not been struck for cause.

At that point we will cease bringing people back and then the courtroom deputy will

shuttle back and forth between counsel table and allow each side to exercise their three preemptory strikes at which time we will have eight total jurors, or if we have more than eight, because somebody doesn't use theirs, that is fine, too. The first eight will get seated in the jury box.

I think that's exactly the way we have done it for the last couple years. Delaware counsel can tell me if I said something different, from their understanding, but that's the way that we have done it.

Do we have jury consultants that are coming in?

MR. HORNE: Yes.

THE COURT: So how many people are we going to have from each side back there?

MR. DESMARAIS: We're happy to just do it with two, Your Honor.

MR. HORNE: We would like to have three, two attorneys and a consultant.

THE COURT: Three is fine with me.

Anything else?

MR. DESMARAIS: What is Your Honor's daily schedule like on Monday and Tuesday for

the week?

THE COURT: So I think everybody should be here at 8:30 every day. I think that the jury coordinator generally brings the jury up around 9:30 and so that's when we will do the voir dire. My hope is that we can get a jury selected and we can read the preliminary jury instructions before we send them off to lunch. Otherwise, we will send them off to lunch, read the instructions and then go right in to openings after that.

I like to get six hours of charged time in every day, and so sometimes we will go a little over, if for some reason I feel like we have lost time. And sometimes that's my fault, but sometimes it's the fault of jurors showing up late, so in an ideal world, we would have everybody out of here by 4:30 every day. Sometimes that gets closer to 5:00 if I feel like we need to make up time to get our six hours on the record.

So everybody should be here at 8:30. I will take the bench at 8:30, if I need to. I will be off the bench by 9:00. If all the jurors get here early, we will start early and

then we will hopefully be done by 4:30.

MR. ANAPOL: This is Jeremy Anapol again for Masimo.

We just have one potentially serious health issue that we learned about for one of our witnesses last night. And so I already discussed it with Apple's counsel. I don't think we have any dispute to bring to the Court right now, but as we get more information about that witness' condition and treatments that he might need, we might ask to bring him by Zoom instead of having him fly out, or we might ask to take him out of order.

So Apple has indicated that they will work with us on that, but I just wanted to make Your Honor aware that we might need a Zoom for the witness.

THE COURT: That's fine. We have been able to accommodate that in another trial. I don't know how it's done, but I'm sure how that we have got the right people here at the court to accomplish that.

MR. ANAPOL: Is there like a time that we should provide notice to the Court like how many days ahead do we need to

provide notice of the Zoom?

THE COURT: Why don't you at least notify us as soon as you know and then contact the courtroom deputy and we'll get you in touch with the right people. I mean, if you know it's going to happen when you set up the courtroom, maybe we should test to make sure that that is all working.

MR. ANAPOL: We don't know for sure at this point, Your Honor.

THE COURT: Okay. All right.

MS. KRINGSTEIN: Jamie Kringstein from Desmarais for Apple. Good afternoon, Your Honor.

So we conferred with Masimo. We believe that there might be a typo in the Court's design patent claim construction order.

My understanding is the parties agree on this, but be wanted to flag it for Your Honor. So it's docket number 692-1377 case at page three.

THE COURT: Standby.

MS. KRINGSTEIN: So for term four of the claim of the D131 Patent the clerk

construed that as the ornamental design for an electronic device charger. That should be just a charger.

And then additionally it says as shown in figures one to nine. That should be figures one to eleven.

THE COURT: Got it. We had a little cut and paste issue there. Absolutely. And Masimo agrees.

MR. KATZENELLENBOGEN: Yes, Your Honor.

THE COURT: I'll tell you what we'll do. I'm hereby ordering that we are going to edit that as stated by counsel and we will file a corrected version on the docket which will replace this version. Thank you.

MS. KRINGSTEIN: Thank you, Your Honor.

MR. HORNE: Just a few clean-up questions, Your Honor. How many rounds of examination does the Court allow or prefer? Sometime there's direct, cross, redirect, sometimes a recross and sometimes you end at three.

Does the Court have a preference?

THE COURT: There's not going to be recross unless there is some reason why. For example, if both sides are calling the witness in their case.

MR. HORNE: Okay. And then on Mr. Kiani, and we're going to work this out, if they are able to call him in their case, he ought to be an exception. And on that I think we have agreed that because there is a one and done with the witnesses, there is not going to be outside the scope objections during cross-examination.

THE COURT: Again, that sort of depends on what witness it is.

MR. HORNE: Correct. And then do we get a list of jurors and if so, when and how do we access that?

THE COURT: So that should be worked out with the jury coordinator. Again, you'll have the alphabetical list of who is called, but you won't have the randomized list.

MR. MATALON: Good afternoon, Your Honor. Lee Matalon from Desmarais on behalf of the plaintiff, Apple.

Just wanted to preview for the Court

another issue that has come up. Masimo told us through the process of pretrial order that they are contesting whether Apple owns the design patents.

What they have told us is that it is premised on the inventorship issues which the Court knows our positions on that, which involves only Apple employees. That's all the information we have been given.

So we would just ask that the Court might consider that in the letter that considers whether Masimo's various defenses are still in the case.

THE COURT: Thank you very much.

So is Masimo going to raise an ownership defense, or do you just want to put them to their proof that they own them?

MR. KATZENELLENBOGEN: It was putting them to the proof and there was in the pretrial conference, proposed pretrial conference order, we did largely agree with them.

Apple was asking for some additional stipulations that we weren't able to provide, so I don't think it's going to be a major

issue pretrial.

THE COURT: It is incredible how every trial ownership is coming up and it never gets tried after all, so okay.

So we have got a number of items on the list. I'll let you all consult the transcript as to exactly what they are. I'll take a maximum of six-page letters, omnibus letters from each side. We need to move that deadline up to Wednesday, so we will hear from the parties Wednesday at close of business.

And then if you want to include other issues, too, that's fine, as long as you meet that and confer with the other side that you are going to include that other issue so that they can put their position there, too. And then if additional things come up, we will hear about that.

MR. HORNE: I did have one last thing, Your Honor. As Apple has been dropping patents in the last few weeks, we believe those should be dismissed with prejudice. That was an understanding when we were stipulating. This morning we asked that it be explicit, it being dismissed with

prejudice and I don't think they agreed, so I want to make sure that is clear that's our position.

THE COURT: I understand your position. Thank you.

Anything else?

MR. DESMARAIS: Nothing from Apple, Your Honor.

THE COURT: One more thing. Will the parties agree to provide the jurors with lunches?

MR. DESMARAIS: Yes, Your Honor, of course.

MR. HORNE: Yes.

THE COURT: So I'll ask you to work together and with the courtroom deputy to arrange on who is taking what day.

All right. Thanks very much. We will see you all soon.

COURT CLERK: All rise.

(At 1:07 p.m. proceedings were concluded.)

- - -

C E R T I F I C A T E

I, KIMBERLY A. BURSNER, Registered Professional Reporter, do hereby certify that the foregoing is an accurate transcript of the proceedings, as reported by me, in the case herein stated, and that I am neither counsel nor kin to any party or participant in said action, nor interested in the outcome thereof.

Kimberly A. Bursner
Registered Professional
Reporter

COURT CLERK: [1] 112/20
MR. ANAPOL: [6] 37/8 75/18 100/9 106/2 106/23 107/9
MR. DESMARAAIS: [1] 3/12
MR. DESMARAIS: [56] 5/22 6/17 7/7 7/12 7/21 8/2 8/10 8/18 8/24 9/7 10/4 10/22 14/4 14/19 15/22 16/7 16/14 16/23 22/16 30/5 30/16 33/1 43/5 43/17 47/8 49/16 50/14 51/2 51/11 57/17 74/5 75/5 75/24 76/8 76/23 81/9 81/12 81/25 82/19 83/23 84/2 86/17 87/11 90/13 93/5 93/13 95/10 96/9 97/2 98/18 99/9 99/12 104/18 104/24 112/7 112/12
MR. HORNE: [61] 10/25 12/2 12/23 13/16 13/23 19/6 22/17 23/6 28/1 34/15 35/25 36/13 36/20 37/6 37/10 38/18 39/1 39/15 39/21 40/15 43/22 44/6 44/14 45/6 45/11 45/19 46/4 46/19 47/1 47/11 50/19 50/22 51/4 51/16 52/16 52/25 53/3 53/10 53/15 74/15 81/22 83/6 87/9 87/13 87/21 88/7 89/17 90/21 91/17 94/12 97/4 99/14 101/7 101/15 104/15 104/20 108/19 109/5 109/15 111/19 112/14
MR. KATZENELLENBOGEN: [28] 19/17 19/21 20/4 20/14 53/23 54/8 55/4 55/7 55/25 56/8 57/13 58/20 59/5 60/16 60/25 63/5 66/18 67/6 70/12 70/25 78/12 80/6 80/14 80/19 81/3 84/24 108/10 110/18
MR. MAGIC: [9] 63/11 66/13 69/2 69/11 69/16 72/13 72/16 73/4 101/20
MR. SEDDON: [1] 47/24
MR. SHAW: [10] 17/4 31/5 32/23 33/6 40/18 41/16 41/22 88/9 89/3 89/7
MS. MILLER: [5] 26/14 28/2 29/1 29/8 30/17
THE COURT: [166]

$

$1,600 [1] 9/22
$10 [1] 15/12
$10,000 [2] 48/16 48/25
$2,000 [1] 9/23
$250 [24] 6/15 8/7 8/14 10/2 10/19 11/24 12/21 14/16 16/2 42/24 43/4 44/5 44/13 45/14 45/18 45/23 46/3 46/17 46/25 47/7 48/6 48/12 49/8 50/7
$500 [3] 15/14 15/18 15/21
$750 [6] 7/11 8/8 8/16 8/22 12/1 14/16
$900 [2] 50/23 51/13

'

'352 [1] 54/23

1

104 [1] 93/6
105 [1] 93/11
106 [1] 93/11
108 [1] 53/10
109 [1] 96/6
11 [2] 53/12 96/21
11:03 [1] 1/17
11th [1] 1/16
12 [2] 42/5 96/16
1377 [2] 3/5 107/21
1378 [1] 3/5
14 [5] 82/5 96/12 96/12 96/13 103/22
14-day [1] 32/17
15 [1] 96/21
16th [1] 99/21
18 [1] 84/15
18th [1] 99/15
1:07 [1] 112/21
1:22-cv-01377-JLH [1] 1/4
1:22-cv-01378-JLH [1] 1/4
1:23-cv-108 [1] 53/10

2

20 [3] 18/18 18/20 27/23
2012 [3] 34/24 35/12 36/5
2013 [12] 31/20 33/18 33/19 34/18 34/19 35/12 36/6 37/22 40/3 40/3 40/20 40/22
2014 [2] 31/20 33/18
2015 [2] 31/20 33/18
2021 [1] 34/4
2022 [1] 32/10
2024 [2] 1/16 53/12
21st [2] 9/12 33/13
22-1377 [1] 3/5
22-1378 [1] 3/5
23 [1] 82/17
250 [9] 11/14 16/13 43/5 43/7 43/8 43/11 46/8 50/25 62/6
26 [4] 12/4 44/10 45/21 47/19
284 [15] 6/10 11/4 12/10 13/3 13/6 13/24 43/8 44/9 44/21 44/22 45/3 45/12 47/16 47/17 60/9
289 [5] 11/17 11/19 42/25 60/21 67/10

3

3,000 [1] 82/13
30 [1] 96/20
34 [1] 78/22
352 [1] 54/24
36 [1] 83/25
37 [5] 11/11 13/8 61/5 61/10 79/14

4

40 [2] 9/11 17/8
402 [3] 59/25 70/18 70/19
403 [2] 60/1 72/5
43 [1] 96/19
4:00 [2] 94/18 95/15
4:30 [2] 105/18 106/1

5

500 [3] 16/3 16/5 43/12
5:00 [1] 105/19
5th [2] 32/20 32/25

6

60 [2] 98/6 102/9
63 [1] 48/6
692-1377 [1] 107/21
6D [1] 1/17

7

748 [1] 53/12
750 [2] 10/19 62/7
76 [1] 84/16
7:00 [1] 88/22
7:00 a.m [1] 84/8

8

81 [1] 84/20
8:30 [4] 84/10 105/3 105/22 105/23

9

98 [1] 89/11
99 [1] 92/14
9:00 [1] 105/24
9:30 [1] 105/5

A

a.m [3] 1/17 84/8 88/22
able [14] 6/2 17/24 24/19 25/20 28/10 39/10 41/14 65/24 86/7 86/8 86/11 106/19 109/7 110/24
about [106] 11/2 12/20 13/17 15/1 15/17 18/3 19/19 19/20 20/8 20/11 20/16 20/20 20/22 21/9 21/12 23/9 23/21 24/10 24/11 24/25 25/19 27/15 27/23 27/24 30/21 30/21 33/17 35/22 36/16 39/9 39/12 40/23 42/21 43/20 43/25 44/18 44/18 46/11 46/14 46/21 49/20 49/20 52/12 52/15 56/1 57/3 57/12 57/22 58/1 58/11 58/17 58/25 59/1 60/21 62/25 63/2 63/17 63/19 64/3 65/1 65/10 65/24 66/2 66/4 66/15 69/19 70/5 74/2 74/13 76/1 76/5 76/9 76/18 76/25 77/10 77/23 78/2 80/22 81/20 82/4 82/17 82/23 83/3 83/17 83/21 84/11 84/20 87/18 88/20 89/11 89/14 90/7 90/10 90/17 92/24 93/7 96/2 97/1 99/2 99/6 100/15 100/16 103/18 106/5 106/10 111/18
above [1] 65/22
absolutely [6] 14/19 49/2 69/7 69/20 83/4 108/8
accepted [1] 62/16
access [2] 99/23 109/17
accommodate [1] 106/19
accomplish [1] 106/22
according [1] 29/8
account [3] 9/6 15/7 16/6
accurate [2] 24/24 113/6
accusation [1] 39/2
accused [3] 29/12 48/19 65/17
acquiring [1] 37/22
acquisition [1] 24/11
across [4] 6/6 6/8 6/15 74/7
act [1] 27/21
action [3] 3/4 62/14 113/10
actor [1] 27/16
actors [2] 18/7 18/14
actual [3] 11/3 51/5 67/9
actually [9] 7/24 31/10 37/4 49/19 64/16 75/21 85/7 85/16 97/16
add [8] 24/15 49/16 59/3 63/1 66/17 70/14 79/24 88/1
added [2] 85/20 85/23
addition [1] 15/20
additional [4] 76/6 86/12 110/23 111/17
additionally [3] 69/4 79/5 108/4
address [12] 20/18 28/13 28/14 47/16 48/5 49/8 58/12 66/24 73/22 84/10 86/2 86/11
addressed [6] 25/7 28/8 49/4 62/13 62/19 68/10
addresses [2] 25/4 57/14
addressing [1] 55/12
admissible [2] 23/1 27/9
admitted [4] 54/17 82/24 83/16 92/16
admitting [1] 51/18
advance [8] 85/6 88/13 89/24 91/8 91/10 92/5 92/9 94/13
adverse [4] 18/1 18/23 18/25 22/11

## A

advisement [1] 70/1
affirmed [1] 48/16
afraid [1] 56/12
after [12] 6/19 6/21 22/3 34/6 39/25 80/11 86/12 93/9 100/4 102/22 105/11 111/4
afternoon [3] 48/1 107/13 109/22
again [17] 9/1 20/11 23/7 29/21 32/20 33/12 34/8 38/19 40/16 65/8 68/10 77/13 92/18 93/2 106/3 109/13 109/19
against [7] 24/14 32/10 32/15 41/11 68/15 79/10 89/18
ago [4] 27/24 42/6 87/16 102/1
agree [17] 9/7 13/16 20/23 21/3 26/9 30/5 45/2 57/20 68/19 79/5 91/25 92/18 96/12 98/22 107/19 110/21 112/10
agreed [5] 74/9 97/12 97/20 109/9 112/1
agreement [3] 27/11 42/14 81/14
agrees [5] 61/3 61/22 71/13 71/13 108/9
ah [1] 79/16
ah-ha [1] 79/16
ahead [14] 3/5 13/14 15/6 50/21 59/3 60/13 85/11 91/3 92/17 93/15 93/19 99/5 99/8 106/25
al [1] 1/6
all [85] 4/8 4/25 5/5 5/24 5/25 6/14 6/15 9/17 9/22 10/16 10/24 15/19 17/14 17/22 19/15 24/20 30/23 33/15 34/18 36/17 37/16 41/22 42/8 42/19 45/4 46/14 47/5 47/22 48/3 51/8 52/8 53/13 53/16 53/18 55/9 56/13 56/23 57/20 58/11 58/14 61/16 62/12 62/22 63/15 63/16 63/17 65/3 65/23 66/4 66/5 66/11 68/16 69/25 70/8 73/3 73/11 74/12 78/10 80/9 82/3 83/1 83/23 88/6 94/1 94/8 95/24 96/4 96/11 96/11 98/13 99/1 99/24 100/5 100/20 101/8 102/14 105/24 107/8 107/11 110/8 111/4 111/6 112/18 112/19 112/20
allegation [3] 30/14 68/2 72/1
allegations [10] 18/9 26/20 30/10 31/18 33/16 33/17 34/6 39/4 39/17 64/4
alleged [5] 18/6 41/1 41/2 41/3 41/4
alleging [3] 28/22 41/12 63/7
allocate [1] 67/11
allow [4] 12/12 25/13 104/2 108/21
allowed [2] 14/2 61/6
allowing [1] 18/22
almost [1] 77/2
alphabetical [1] 109/20
already [10] 39/12 58/12 58/18 62/25 76/23 85/14 92/21 95/6 100/1 106/6
also [12] 4/5 7/12 7/13 11/17 34/21 44/19 56/16 60/1 62/1 65/5 98/7 99/7
alternative [2] 65/8 67/21
although [1] 97/13
am [2] 50/22 113/8
amendment [2] 9/4 52/12
among [1] 88/12
amount [4] 19/3 46/8 49/4 62/4
analogous [5] 65/13 68/5 68/5 68/12 73/14
analysis [13] 25/2 45/12 45/13 45/15 47/3 47/6 47/17 48/11 48/17 65/15 69/6 69/19 73/15
analyze [1] 57/6
ANAPOL [6] 2/18 4/14 37/7 75/18 100/9 106/2
Anderson [2] 2/2 3/8
Andrews [2] 29/9 29/16
announced [1] 19/8
anonymizing [1] 56/18
another [7] 9/22 32/21 90/8 93/3 95/18 106/19 110/1
answer [9] 14/7 17/3 36/14 37/9 50/3 50/17 58/10 70/10 102/12
answers [6] 102/16 102/17 102/21 103/2 103/3 103/8
any [31] 9/3 21/10 39/16 40/4 42/24 43/4 46/22 48/17 50/11 51/5 54/12 60/3 60/3 62/7 67/18 67/22 68/2 70/15 70/20 71/17 72/2 73/17 83/19 84/10 86/11 100/2 102/3 103/1 103/10 106/8 113/9
anybody [4] 23/21 54/22 87/7 96/25
anything [15] 11/9 12/8 40/22 53/22 57/11 62/5 63/1 66/23 71/22 78/8 88/4 96/25 101/12 104/23 112/6
anyway [2] 27/9 76/22
apologize [4] 30/18 53/4 54/3 58/20
apparently [1] 19/25
appearances [1] 3/6
appeared [2] 2/1 20/15
appearing [1] 60/17
APPLE [108] 1/4 2/3 2/10 2/12 3/2 3/9 4/6 5/19 5/23 11/3 11/23 14/23 15/1 15/2 15/15 15/22 17/2 17/5 17/9 17/9 17/11 17/18 18/25 21/4 21/13 21/19 22/23 23/11 23/20 24/6 24/22 25/9 26/8 27/11 27/13 27/15 27/22 28/6 28/11 30/21 31/6 31/12 32/10 32/16 33/17 33/22 34/24 35/9 35/15 35/17 36/5 36/10 38/8 39/21 40/10 40/17 41/2 41/5 42/3 42/9 42/12 43/2 47/16 48/8 48/9 50/4 50/24 52/4 53/16 54/22 55/19 55/22 56/18 57/4 57/19 57/24 62/25 63/12 64/8 64/11 64/17 66/4 68/23 71/13 72/9 74/5 75/3 77/12 78/17 79/5 79/15 82/18 83/9 85/20 89/18 92/19 96/19 97/24 98/9 102/13 106/14 107/13 109/24 110/3 110/8 110/23 111/20 112/7
Apple'a [1] 31/1
Apple's [29] 10/2 10/7 10/10 10/11 16/17 17/1 22/18 23/3 24/24 26/22 28/3 28/14 31/13 32/6 33/21 34/12 39/8 50/7 55/3 59/20 66/1 68/12 79/12 84/18 85/5 89/9 92/12 96/7 106/7
applications [1] 103/17
applies [1] 67/9
apply [2] 67/1 90/3
appreciate [3] 72/16 87/25 90/6
appropriate [9] 21/6 21/21 22/10 25/22 26/17 26/19 28/10 68/6 93/16
appropriately [1] 79/23
are [230]
areas [1] 87/24
Arendi [3] 19/9 20/6 20/7
argue [2] 26/16 67/25
argued [1] 62/6
arguing [1] 25/23
argument [18] 15/14 15/16 20/22 20/25 22/20 27/12 42/13 42/23 43/4 43/15 46/15 56/4 56/19 66/7 73/2 77/7 81/17 81/18
arguments [7] 43/23 54/4 54/9 60/8 61/8 68/16 79/12
around [5] 84/10 89/24 90/4 90/24 105/5
arrange [1] 112/17
art [20] 41/1 65/13 65/14 65/16 65/19 68/5 68/5 68/6 68/12 73/14 74/9 74/10 75/20 75/22 76/2 76/3 76/7 80/25 81/7 100/12
article [11] 27/23 38/20 64/15 64/22 65/11 65/20 65/22 67/7 68/9 73/13 73/18
articles [1] 25/20
articulated [1] 71/6
artists [1] 41/3
as [82] 2/1 6/1 6/18 7/4 8/23 21/15 21/17 24/5 24/8 25/10 25/16 28/4 30/19 33/8 35/11 36/4 36/18 37/20 41/12 46/10 46/13 48/3 48/14 49/1 49/1 52/21 54/15 54/17 55/15 55/15 57/2 60/10 60/16 61/8 62/1 62/21 64/6 64/6 64/17 69/5 69/6 71/3 73/8 75/12 75/25 75/25 76/11 76/16 79/13 80/1 80/12 80/16 83/5 83/22 85/3 85/8 86/3 86/15 86/16 87/16 90/13 90/23 92/19 95/8 95/10 97/4 97/10 98/9 98/12 98/15 99/20 106/9 107/3 107/3 108/1 108/4 108/14 111/7 111/13 111/13 111/20 113/7
aside [3] 39/14 64/10 80/21
ask [22] 14/13 43/2 43/3 43/8 45/14 45/18 47/7 48/12 49/13 56/24 61/12 61/12 68/23 70/16 87/2 103/1 103/10 103/11 106/11 106/13 110/10 112/15
asked [5] 10/8 28/13 28/14 49/22 111/24
asking [12] 19/11 34/10 38/18 43/5 45/23 49/11 49/12 49/19 61/14 92/4 94/13 110/23
aspect [5] 35/23 41/12 65/12 77/25 79/2
aspects [2] 29/24 56/6
assert [2] 36/24 59/7
asserted [3] 35/24 48/8 48/9
asserting [5] 36/18 36/21 41/10 45/3 68/14
assessing [1] 54/12
assume [1] 82/12
assuming [2] 38/22 44/22
at [83] 1/17 4/17 5/11 9/24 12/7 14/24 15/3 15/12 17/8 17/8 17/10 17/18 19/24 21/13 23/14 23/24 24/3 26/6 27/6 28/8 30/22 34/16 36/7 41/18 42/16 45/8 45/10 46/20 46/21 48/13 48/21 50/2 50/18 54/5 54/10 54/22 56/21 59/1 61/6 61/18 63/20 65/16 65/17 67/12 70/17 71/19 73/2 73/4 74/21 77/19 77/23 80/10 80/14 82/9 83/15 83/24 86/8 91/7 93/17 93/21 94/8 94/18 95/15 96/19 96/19 98/2 98/13 98/14 99/2 101/9 102/19 103/24 104/3 105/3 105/22 105/23 106/22 107/2 107/10 107/21 108/23 111/11 112/21
attempted [1] 82/14
attention [2] 32/1 99/4
attorney [1] 60/17
attorneys [2] 103/10 104/21
attorneys' [2] 7/17 15/13
authority [1] 52/9
available [1] 68/1
avoid [2] 51/12 55/18
aware [3] 28/4 87/16 106/16
away [3] 9/19 10/5 16/15

## B

babysitters [1] 9/14
back [24] 19/24 31/20 32/10 33/18 33/22 35/12 38/2 42/20 43/23 44/9 47/18 62/12 66/2 77/4 79/15 81/15 86/11 93/9

B

back... [6] 102/24 103/4 103/19 103/25 104/1 104/17
backwards [1] 89/4
bad [4] 18/7 18/14 27/16 27/21
balance [1] 7/14
bar [1] 19/11
bare [1] 101/5
based [10] 42/3 54/1 54/18 61/10 68/14 78/6 79/14 79/16 80/25 81/7
basis [8] 11/7 12/9 25/5 30/3 44/16 46/19 57/7 103/20
be [153]
because [51] 7/4 7/22 8/5 12/14 13/12 13/24 16/21 20/23 22/23 28/12 36/19 36/24 38/4 44/18 44/20 44/23 44/24 45/4 45/8 45/19 45/21 46/16 47/16 49/24 54/23 55/19 59/12 59/17 60/8 60/18 62/9 68/18 69/3 70/20 71/20 75/12 75/16 76/9 76/13 80/12 83/12 88/18 91/9 94/19 95/16 96/5 97/21 98/13 98/25 104/5 109/9
beef [1] 30/9
been [29] 6/2 12/10 13/3 13/5 13/7 13/25 17/6 25/7 28/7 33/6 41/18 47/13 53/21 54/13 62/9 64/1 77/16 81/25 82/21 85/1 86/1 87/17 92/15 96/1 99/1 103/23 106/19 110/9 111/20
before [17] 1/14 4/23 5/10 52/4 53/17 83/16 89/17 91/18 94/24 94/25 97/16 97/18 99/23 100/24 101/22 101/24 105/8
begins [2] 94/14 94/25
behalf [6] 3/8 4/11 17/5 24/22 77/12 109/23
behind [6] 31/25 31/25 32/2 32/2 32/4 66/1
being [15] 5/8 21/16 24/1 27/15 31/10 32/19 33/11 34/11 39/10 60/19 63/18 91/18 91/21 91/22 111/25
believe [7] 8/11 24/2 39/23 47/8 81/6 107/16 111/22
belt [1] 96/6
BEN [5] 2/17 3/24 4/13 77/11 84/24
bench [14] 5/8 5/9 7/4 13/20 33/4 50/10 51/7 51/23 52/11 74/21 84/10 101/16 105/23 105/24
benchmark [1] 35/11
bender [1] 94/6
BENJAMIN [8] 2/8 19/17 53/23 58/21 66/18 70/12 78/13 81/3
besides [4] 33/13 58/7 77/6 77/8
best [2] 4/19 57/8
better [2] 19/7 84/23
between [6] 26/5 30/13 40/21 58/16 85/2 104/1
beyond [5] 42/24 43/3 48/18 82/12 86/9
bifurcated [1] 28/7
big [3] 33/25 34/20 92/14
binder [9] 93/16 93/23 94/8 94/16 94/22 95/6 95/8 95/15 95/16
binders [4] 93/7 94/19 95/21 97/19
BINDU [2] 2/3 3/9
bit [2] 86/16 103/12
bitty [1] 34/3
blanket [1] 21/24
blew [1] 92/25
blog [1] 25/19
blood [1] 34/2
blow [5] 89/19 89/21 90/16 91/3 92/2
blown [1] 91/19
board [2] 55/12 92/15
body [1] 58/13
BONDOR [3] 2/5 3/16 3/17
boot [1] 52/9
both [17] 6/10 34/21 36/1 46/12 47/17 48/7 49/4 56/24 56/25 59/15 72/19 72/20 78/22 78/23 82/9 82/15 109/3
bought [1] 35/9
bound [3] 62/24 63/6 65/6
box [2] 8/23 104/7
boy [1] 81/11
break [2] 93/25 95/17
breath [1] 23/23
BRIAN [6] 2/16 4/12 10/25 23/6 34/15 50/19
brief [5] 12/25 33/14 34/7 78/14 103/10
briefed [1] 79/11
briefing [6] 21/12 48/14 64/19 78/9 83/19 100/6
briefly [2] 72/13 72/17
bring [13] 16/20 17/15 17/23 21/19 22/1 23/19 34/8 40/7 86/11 87/4 97/24 106/8 106/12
bringing [11] 13/17 17/14 39/22 40/10 40/14 55/17 76/21 85/7 85/16 85/22 103/24
brings [1] 105/4
Brinkema [1] 53/15
broaden [1] 82/7
brought [4] 39/23 41/5 66/25 98/9
bucket [1] 60/2
buckets [1] 34/17
build [1] 35/15
bunch [3] 23/22 31/17 31/18
burden [1] 75/13
BURSNER [3] 1/25 113/4 113/14
business [1] 111/11
but [105] 5/10 7/12 7/19 7/25 8/3 8/8 8/13 9/1 10/1 10/20 11/23 12/2 12/23 13/15 13/17 13/23 15/18 16/2 16/8 16/9 17/22 18/9 19/25 20/15 20/19 21/17 22/6 22/10 24/17 26/8 27/15 28/2 28/18 28/21 29/22 30/2 30/11 30/19 33/8 37/10 37/22 39/11 40/2 40/15 43/9 43/10 45/7 45/16 46/13 46/15 47/12 49/16 50/11 50/17 52/23 55/16 56/16 58/4 58/13 59/16 61/20 63/23 67/1 68/17 69/14 70/7 71/3 73/19 74/10 74/22 75/2 76/15 76/19 77/7 78/2 78/10 80/1 80/21 81/13 82/8 83/13 86/7 86/15 87/2 89/2 91/9 91/16 93/9 94/7 95/19 96/4 98/19 98/23 100/18 101/17 102/7 103/13 103/17 104/12 105/16 106/9 106/15 106/20 107/20 109/21
buy [1] 34/25

C

CAD [1] 14/25
calculate [2] 44/8 61/15
California [3] 32/15 35/18 38/22
call [15] 17/22 17/23 18/18 18/19 24/9 34/18 35/4 84/21 85/5 85/21 85/24 86/4 86/6 92/2 109/7
called [7] 9/12 9/22 23/22 98/6 98/6 101/23 109/20
calling [3] 11/15 40/3 109/3
calls [1] 23/14
came [8] 19/25 35/13 52/4 54/18 64/7 86/15 88/12 96/5
can [50] 7/19 9/6 10/1 12/24 15/16 19/4 19/5 27/12 27/17 36/20 37/2 37/4 42/1 42/9 42/12 42/13 42/14 42/18 43/12 43/13 48/4 48/13 49/16 51/9 51/12 51/20 51/23 52/9 52/22 55/10 56/18 59/12 62/16 63/3 67/24 76/18 77/5 85/8 86/14 92/2 93/13 97/2 97/4 99/5 100/5 101/5 104/10 105/7 105/7 111/16
can't [20] 17/11 17/15 17/21 18/19 36/19 36/21 36/24 45/20 47/16 50/6 55/23 59/7 59/23 61/24 87/1 91/12 96/1 96/13 98/5 102/3
CANNON [2] 2/18 4/14
cannot [2] 11/18 11/19
capture [2] 82/20 83/1
carries [1] 72/1
CARSON [2] 2/9 3/25
case [67] 5/18 6/3 6/18 8/8 12/11 12/11 14/3 14/20 15/5 17/7 19/9 25/23 26/25 27/1 27/19 27/22 29/10 29/16 29/20 30/3 30/3 30/15 30/22 31/11 32/9 32/14 34/8 35/18 36/25 38/12 38/16 39/22 39/23 39/24 40/7 40/10 40/14 40/24 45/5 48/14 49/20 51/6 51/22 52/17 53/10 57/7 57/7 61/3 62/11 67/13 67/16 67/17 67/19 67/20 72/22 73/16 85/22 85/25 88/16 89/18 90/8 94/21 107/21 109/4 109/7 110/13 113/8
cases [6] 13/3 13/5 13/8 18/5 18/8 62/14
cash [3] 46/11 50/23 52/7
cause [3] 103/16 103/21 103/23
caveat [1] 63/6
cease [1] 103/24
Central [1] 32/15
CEO [1] 85/21
certain [2] 29/23 100/12
certainly [10] 15/8 16/9 21/3 25/12 49/14 57/25 59/6 61/16 64/8 93/8
certify [1] 113/5
CFO [1] 49/6
chair [2] 19/13 22/6
challenge [1] 25/21
chance [2] 5/16 52/24
Chancery [1] 24/13
change [3] 10/9 68/13 102/2
changed [1] 65/5
changing [1] 52/7
characterization [1] 22/21
characterize [1] 79/12
characterizes [1] 25/10
charge [1] 97/6
charged [2] 84/13 105/12
charger [2] 108/2 108/3
charging [1] 103/14
check [2] 22/12 80/15
checking [1] 20/2
chief [1] 85/25
choice [3] 18/13 18/17 18/19
chose [1] 49/23
circle [1] 102/11
circuit [4] 36/25 48/15 71/7 77/16
circumstance [1] 95/11
circumstances [1] 29/20
citation [1] 53/8
cited [4] 18/5 27/7 59/15 64/18
civil [2] 3/4 51/25
claim [39] 5/2 5/14 6/5 6/9 6/10 6/11 6/15 8/7 8/19 10/3 11/3 11/13 16/22 41/10 42/9 42/10 42/10 51/5 51/17 51/19 52/1 52/10 52/13 52/19 58/17

## C

claim... [14] 61/23 62/8 62/8 62/17 67/10 71/24 74/2 77/19 79/4 79/8 81/8 97/15 107/17 107/25
claiming [1] 17/13
claims [19] 6/6 6/8 6/12 13/18 18/23 31/10 35/21 35/24 56/6 72/21 72/21 73/1 74/6 74/7 74/16 74/20 74/24 75/2 81/13
clan [1] 31/24
class [1] 62/14
clean [1] 108/19
clean-up [1] 108/19
clear [14] 4/21 5/11 6/14 10/5 10/14 34/9 60/19 66/21 75/19 77/17 82/1 84/7 95/23 112/2
cleared [1] 97/17
clearly [2] 18/12 71/6
ClearOne [1] 59/14
Clearview [1] 70/17
clerk [1] 107/25
clocked [1] 96/19
close [1] 111/11
closer [4] 50/2 65/18 70/8 105/19
closest [1] 65/16
closing [2] 43/14 92/20
co [1] 3/10
co-counsel [1] 3/10
colleague [1] 31/9
colleague's [1] 61/7
color [1] 42/2
combination [1] 75/23
come [29] 4/20 5/10 9/11 17/11 18/7 18/12 18/14 18/24 19/4 19/10 25/3 27/10 27/16 30/2 38/19 39/25 42/14 44/17 55/10 55/23 56/3 82/23 83/15 91/18 92/22 99/9 103/4 110/1 111/17
comes [8] 16/22 21/17 50/10 58/13 65/20 69/3 93/21 100/24
coming [8] 9/18 14/1 56/15 56/15 97/9 101/24 104/14 111/3
comment [4] 22/9 25/9 59/7 82/11
comments [1] 61/17
commercial [1] 37/24
committed [1] 38/2
committing [1] 14/14
company [4] 34/24 37/21 38/7 87/19
comparative [1] 65/14
competent [1] 41/25
complaint [3] 24/12 40/1 64/5
completely [5] 20/23 26/18 41/6 65/6 67/13
complexity [1] 96/23
complicated [1] 60/8
complications [1] 97/9
computer [1] 102/7
concede [1] 64/8
concept [2] 67/8 68/5
concern [1] 56/1
concerning [1] 5/17
concession [1] 64/12
concluded [1] 112/22
conclusion [1] 16/11
concrete [1] 23/5
condition [1] 106/10
conditions [1] 25/18
conduct [9] 5/17 14/20 17/2 18/3 18/9 21/8 77/7 77/9 101/21
confer [5] 42/8 52/8 76/21 76/24 111/14
conference [8] 1/14 3/2 74/19 80/10 81/23 97/6 110/20 110/21
conferred [1] 107/15
confidential [1] 100/13
confirm [2] 54/5 101/21
confuse [1] 59/18
confusion [2] 58/22 71/5
connection [2] 25/1 27/17
consider [4] 57/1 78/3 89/23 110/11
consideration [2] 68/7 69/4
considerations [2] 64/24 67/14
considered [1] 69/8
considering [1] 69/22
considers [1] 110/12
consistent [2] 30/11 57/9
constitutes [1] 37/13
constitution [1] 15/23
constitutional [1] 15/25
construction [6] 5/3 77/20 79/4 79/8 97/15 107/17
construed [1] 108/1
consult [1] 111/6
consultant [1] 104/21
consultants [1] 104/13
consumer [4] 35/15 37/24 38/8 38/9
contact [1] 107/4
contentions [8] 40/23 41/7 41/17 41/21 44/1 78/17 78/18 78/20
contesting [1] 110/3
context [4] 37/25 38/3 38/13 39/3
continue [1] 51/19
contours [2] 30/25 39/10
control [6] 20/9 20/16 20/21 21/1 21/4 22/8
conversely [1] 21/5
coordinated [1] 99/24
coordinator [2] 105/4 109/19
copied [24] 15/4 24/2 26/12 27/12 27/13 27/22 28/18 28/22 29/14 29/18 29/23 29/25 30/7 30/8 31/12 35/17 37/12 37/15 38/1 38/5 38/11 39/11 66/21 71/9
copies [5] 93/8 97/24 98/3 98/7 98/12
copy [10] 10/10 26/12 31/15 38/8 51/12 52/19 61/1 98/23 99/1 102/9
copying [35] 6/25 10/6 15/5 15/24 16/15 25/12 26/9 26/21 27/24 28/11 30/11 30/14 37/13 59/13 59/18 59/25 60/3 62/1 62/20 63/7 64/9 64/12 64/20 65/2 65/7 65/21 66/4 67/18 68/3 68/19 70/6 71/15 72/18 72/20 73/21
copyist [3] 23/14 24/1 24/25
copyists [1] 23/22
core [1] 72/19
CORPORATION [3] 1/6 2/15 2/19
correct [6] 45/6 55/4 69/16 69/17 81/5 109/15
corrected [1] 108/15
corrections [1] 100/2
Corroon [1] 2/2
cost [1] 9/21
could [40] 7/10 8/7 10/5 11/13 11/25 16/15 19/1 22/6 26/11 26/12 28/23 29/2 29/4 29/6 35/14 38/19 38/23 40/1 40/7 40/15 43/15 45/15 45/16 45/17 45/17 49/22 49/22 50/24 51/21 54/17 62/5 66/24 71/5 71/17 71/22 72/10 75/22 77/4 80/22 92/22
couldn't [5] 20/1 28/24 29/7 45/18 67/18
counsel [14] 2/1 3/10 24/23 25/9 66/25 70/11 94/17 102/23 103/12 104/1 104/10 106/7 108/14 113/9
counterclaims [1] 28/5
couple [7] 5/24 26/7 27/6 34/17 41/8 102/1 104/9
course [11] 20/24 54/14 56/2 67/16 68/19 71/14 71/20 71/25 86/10 86/21 112/13
court [49] 1/1 5/15 9/6 11/25 12/12 13/9 13/10 14/14 15/24 16/3 16/4 19/1 20/11 20/12 20/17 22/4 22/19 24/13 29/11 32/11 32/16 32/21 33/12 35/2 48/20 54/10 54/18 56/16 57/8 62/13 70/15 70/16 72/6 72/11 75/11 79/9 83/14 83/19 84/13 87/16 99/19 106/9 106/22 106/24 108/21 108/25 109/25 110/7 110/10
Court's [3] 54/2 67/3 107/17
courtroom [15] 1/16 4/12 90/16 91/5 99/23 99/25 100/8 100/23 102/25 103/3 103/19 103/25 107/4 107/7 112/16
courts [1] 64/19
cover [1] 97/18
covers [2] 36/15 37/2
create [2] 92/7 92/7
created [3] 84/17 91/22 92/6
creating [2] 90/23 91/4
criminal [1] 18/8
criticizing [1] 24/10
cross [18] 18/15 18/25 25/21 58/1 85/8 86/9 93/15 93/19 94/4 94/8 94/14 94/22 94/24 94/25 95/12 96/1 108/22 109/12
cross-examination [6] 18/15 18/25 93/15 93/19 94/22 109/12
cross-examine [1] 25/21
cross-examined [1] 58/1
crossed [1] 58/4
crystalized [2] 42/18 56/1
current [1] 21/13
currently [1] 35/24
curtain [5] 31/25 32/1 32/2 32/3 32/4
cut [1] 108/8
cv [3] 1/4 1/4 53/10

## D

D131 [1] 107/25
daily [1] 104/25
damages [37] 6/9 6/14 7/6 7/10 8/7 8/12 8/18 8/20 9/3 10/2 11/3 11/15 11/16 12/11 13/4 14/6 14/16 16/21 16/22 44/2 44/22 46/21 48/5 48/7 48/16 48/21 49/8 51/5 51/17 52/1 52/10 61/3 61/12 61/23 62/6 62/8 62/9
date [1] 85/17
Daubert [1] 5/4
DAVID [7] 2/2 2/6 3/8 3/19 17/4 31/5 88/9
day [24] 1/16 15/24 17/20 18/20 32/11 32/11 32/16 32/17 32/21 33/11 64/4 84/9 88/13 88/20 88/25 93/25 94/18 94/24 95/3 95/17 105/3 105/13 105/19 112/17
days [4] 14/23 85/11 87/16 106/25
dead [1] 76/24
deadline [1] 111/10
deal [2] 18/5 30/3
dealing [5] 18/16 63/25 64/2 67/9 92/8
debate [1] 24/4
decide [6] 23/5 54/19 80/11 86/24 88/5 88/16
decided [1] 33/7
decides [1] 89/1

## D

decision [5] 55/13 59/14 64/18 70/17 71/1
deduct [1] 96/17
default [1] 19/8
defend [1] 31/14
Defendant [2] 2/14 2/19
defense [8] 28/19 29/5 29/17 76/17 77/8 78/4 79/10 110/16
defenses [7] 75/7 76/12 77/6 80/23 80/25 81/1 110/12
defer [1] 37/6
defined [1] 68/8
definitely [1] 78/16
DELAWARE [5] 1/2 24/12 82/22 95/25 104/10
delay [2] 33/5 33/7
demonstrate [1] 69/22
demonstrative [2] 89/23 92/5
demonstratives [8] 84/6 84/11 84/17 89/25 91/22 92/8 92/20 93/2
deny [1] 16/11
depend [1] 100/13
depending [4] 23/19 24/17 54/4 54/9
depends [4] 19/22 39/21 95/11 109/14
depo [1] 91/21
deposed [1] 17/7
deposition [2] 84/4 90/8
deputy [6] 99/25 102/25 103/3 103/25 107/4 112/16
described [1] 24/23
describes [1] 25/11
describing [2] 30/19 54/12
design [50] 10/6 10/9 11/12 11/14 11/22 14/22 14/25 15/3 35/25 36/15 36/19 43/6 43/6 44/25 48/8 56/6 57/5 59/8 59/11 59/23 60/4 61/1 64/10 64/14 64/21 65/4 65/6 65/9 65/11 65/15 65/18 66/22 67/23 67/24 68/13 68/20 70/7 71/5 71/15 71/21 72/21 73/8 73/11 77/25 78/3 78/5 78/19 107/17 108/1 110/4
designations [4] 84/5 85/9 88/13 88/15
designed [2] 15/2 102/17
designs [4] 65/8 67/21 68/1 71/11
Desmarais [20] 2/4 2/5 3/10 3/11 5/23 14/13 17/5 24/22 30/4 31/5 46/24 47/25 50/23 57/18 63/12 63/15 75/20 77/12 107/13 109/23
details [1] 43/25
determination [1] 71/18
determine [3] 9/5 67/11 77/18
determined [1] 69/12
determines [1] 84/13
determining [2] 65/22 69/13
develop [2] 34/23 41/25
developed [3] 28/24 29/25 63/20
developing [1] 35/11
development [1] 63/18
device [1] 108/2
dice [1] 73/7
did [13] 14/21 19/14 48/4 60/21 63/4 65/7 66/16 73/22 76/23 77/21 90/17 110/21 111/19
didn't [28] 12/4 12/23 12/24 14/5 14/8 14/15 18/24 19/10 26/12 30/18 31/15 34/4 44/2 44/4 44/6 45/19 45/22 46/16 47/17 52/3 73/16 73/19 73/19 76/15 76/16 79/17 83/6 93/1
die [1] 40/8
different [9] 18/18 18/20 20/5 34/17 40/4 60/9 68/1 91/15 104/11
diode [1] 35/4
diodes [1] 35/7
dire [9] 97/25 98/1 101/10 101/17 102/10 102/16 102/18 102/23 105/6
direct [3] 86/8 92/25 108/22
dirty [1] 23/22
disagree [4] 23/25 25/8 78/15 94/10
disagreement [2] 85/3 85/4
disclose [3] 45/20 92/20 93/1
disclosed [16] 11/7 11/10 13/25 47/13 49/2 50/4 50/8 61/4 61/5 77/9 78/16 78/25 90/1 91/3 92/4 92/16
disclosing [2] 89/24 89/24
disclosure [6] 44/10 47/19 49/1 61/9 90/4 90/24
disclosures [3] 12/4 45/22 79/14
discovery [2] 49/12 96/18
discretion [1] 77/18
discuss [5] 14/12 51/9 52/14 57/12 101/13
discussed [3] 5/10 39/8 106/7
discussing [1] 31/8
discussion [1] 25/1
disgorgement [2] 11/17 67/10
disinclined [1] 58/10
dismissed [2] 111/22 111/25
disparage [3] 17/13 19/10 20/1
disparagement [1] 22/1
displaying [4] 89/13 89/16 90/7 90/11
dispute [19] 4/24 18/3 20/16 26/5 26/6 42/17 58/16 74/1 74/4 76/5 76/9 82/4 84/15 84/20 84/22 84/23 93/12 95/19 106/8
disputes [5] 5/3 16/25 84/11 88/5 96/18
disputing [1] 16/18
distraction [2] 32/8 32/13
district [5] 1/1 1/2 32/15 53/11 64/19
do [88] 6/9 9/16 10/1 10/15 12/16 12/19 13/9 16/2 16/8 16/9 19/8 21/23 22/13 23/4 26/13 26/20 26/23 28/9 29/2 29/6 31/17 38/14 38/19 38/24 40/7 42/1 42/11 45/13 45/14 45/15 46/2 46/9 47/2 47/6 47/17 49/14 51/20 53/5 57/8 63/13 68/2 68/6 68/11 69/10 72/7 74/4 74/12 74/15 75/16 76/8 78/7 80/9 84/8 84/16 85/5 85/6 86/7 87/1 87/8 88/14 89/2 89/19 91/9 91/11 91/13 91/24 93/24 94/10 95/1 95/2 95/8 95/22 96/3 97/6 98/18 99/20 101/18 102/13 103/2 104/13 104/19 105/6 106/25 108/13 109/15 109/17 110/16 113/5
docket [3] 99/17 107/21 108/15
document [5] 53/12 83/2 83/16 83/20 83/22
documents [8] 25/6 25/15 25/17 25/25 26/17 30/20 82/22 83/14
does [25] 15/18 16/11 21/19 22/7 22/14 24/25 25/3 27/9 27/25 38/5 53/16 62/25 67/22 68/13 71/1 73/2 75/9 92/16 96/4 101/3 101/4 101/17 102/7 108/21 108/25
doesn't [5] 61/19 64/8 73/5 97/22 104/5
doing [4] 45/12 90/9 97/23 101/25
dollar [1] 51/21
don't [88] 7/25 8/3 8/5 10/9 11/5 13/25 14/11 17/23 17/23 18/7 18/11 18/21 19/4 19/9 20/11 20/21 23/2 23/3 23/4 23/16 24/7 24/16 25/12 26/2 26/10 27/1 29/19 29/21 30/9 31/15 33/6 35/16 36/21 38/1 38/10 41/16 41/20 42/8 44/24 45/25 46/4 46/22 47/4 47/8 47/13 47/15 50/11 52/7 52/13 53/7 57/21 59/3 60/11 60/14 60/18 63/22 66/22 67/1 67/2 67/4 68/17 69/9 72/25 76/15 76/20 77/5 78/9 81/15 81/17 82/8 82/18 82/22 83/12 85/11 88/1 91/9 91/20 92/19 93/1 93/16 95/15 100/25 106/7 106/20 107/2 107/9 110/25 112/1
done [16] 43/19 55/5 55/6 75/15 90/14 91/21 94/21 96/13 96/23 97/10 102/22 104/9 104/12 106/1 106/20 109/10
door [6] 25/13 38/24 40/2 40/12 56/4 79/15
Dorothy [1] 31/24
double [1] 80/15
down [12] 6/6 9/19 35/10 36/5 37/16 37/17 37/18 38/4 40/19 69/18 75/3 75/6
dozen [1] 17/18
Dr. [1] 25/6
Dr. Tyler [1] 25/6
drawings [1] 14/25
dropped [1] 54/23
dropping [1] 111/21
dump [1] 83/2
during [5] 84/17 86/21 98/25 100/19 109/12
duty [1] 9/12

## E

e-mail [1] 83/8
each [12] 17/22 42/15 52/14 81/18 82/14 95/9 96/20 98/14 102/9 104/2 104/17 111/9
earlier [3] 63/16 63/23 99/20
early [2] 105/25 105/25
easier [1] 94/20
Eastern [1] 53/11
easy [2] 60/5 94/7
edit [1] 108/14
edits [2] 100/2 101/10
EDWARD [2] 2/18 4/14
effect [1] 54/12
egregious [2] 14/21 15/5
eight [8] 9/15 34/5 54/3 75/4 89/8 104/4 104/5 104/6
Eighty [1] 88/8
Eighty-three [1] 88/8
either [6] 24/17 61/4 62/21 83/7 85/19 91/13
electronic [1] 108/2
eleven [1] 108/6
elicited [1] 86/12
eliminated [1] 76/10
elimination [1] 21/7
eloquent [1] 71/2
else [9] 22/9 57/11 63/4 82/6 87/7 88/2 101/12 104/23 112/6
eminently [1] 65/23
emotional [1] 25/18
employees [9] 15/1 17/9 17/10 21/11 21/14 31/20 33/18 42/5 110/8
empty [2] 19/13 22/5
end [7] 21/16 31/23 80/12 80/14 90/4 90/23 108/23
ended [1] 71/11
enhance [1] 15/8
enhanced [1] 61/24
enhancement [2] 64/11 64/25

E

enhancing [1] 14/16
enough [2] 49/8 61/18
entire [3] 10/5 12/11 63/17
entirely [1] 70/5
entitled [8] 8/11 11/23 12/8 12/18 13/11 15/22 52/11 79/17
envelope [1] 50/23
equipment [1] 34/20
equitable [4] 51/19 69/15 69/17 77/7
erosion [1] 11/9
error [3] 14/14 15/9 16/8
ESQUIRE [20] 2/2 2/3 2/5 2/5 2/6 2/6 2/7 2/7 2/8 2/8 2/9 2/9 2/11 2/13 2/14 2/16 2/17 2/17 2/18 2/18
essentially [1] 72/19
establish [1] 27/17
et [1] 1/6
even [25] 11/18 12/8 13/1 16/10 17/17 22/25 23/1 32/2 35/16 38/1 38/10 39/2 52/11 65/10 66/10 68/18 70/18 71/13 73/12 82/5 82/24 89/18 94/14 95/23 97/20
event [1] 44/3
ever [4] 15/5 41/17 64/20 94/21
every [8] 49/19 51/21 90/15 94/21 105/3 105/13 105/18 111/3
everybody [20] 4/9 22/14 27/25 30/24 71/13 74/2 76/5 80/16 81/19 87/5 89/1 95/24 99/2 99/22 101/14 102/5 102/15 105/2 105/18 105/22
everybody's [5] 5/6 50/1 60/24 79/21 83/13
everyone [1] 4/16
everything [6] 16/6 24/1 52/6 93/23 95/4 95/14
evidence [57] 15/7 15/19 17/19 18/1 21/17 21/18 22/20 25/14 26/3 26/8 26/10 27/13 27/14 27/18 28/23 29/11 29/22 29/24 35/19 37/10 40/12 42/2 42/23 44/8 48/18 54/4 54/9 54/17 54/18 55/10 56/12 56/13 59/12 59/18 59/25 60/3 60/4 65/1 65/2 66/6 66/9 66/21 67/18 67/23 68/2 70/6 70/22 71/10 71/14 72/3 72/18 72/20 73/5 73/9 77/23 82/15 86/12
exactly [7] 26/14 30/16 30/17 59/8 71/23 104/8 111/7
examination [9] 18/15 18/25 86/10 87/23 93/15 93/19 94/22 108/21 109/12
examine [1] 25/21
examined [1] 58/1
example [6] 48/15 64/15 90/11 90/13 100/14 109/3
exception [1] 109/8
exchange [1] 84/5
excluded [2] 11/10 29/11
excuse [3] 45/11 72/10 84/5
exercise [1] 104/2
exhibit [9] 23/15 38/21 82/12 92/1 92/2 92/15 94/16 94/16 95/9
exhibit to [1] 94/16
exhibits [13] 22/24 23/8 23/15 24/9 27/6 82/13 84/6 84/12 89/25 91/4 93/15 94/8 95/1
exists [1] 27/14
expert [19] 12/20 14/7 23/10 23/12 24/25 40/23 44/19 45/8 45/17 47/20 48/22 49/12 50/6 90/14 90/15 92/21 92/23 92/25 93/3
experts [2] 90/12 93/2
explain [4] 36/9 36/9 67/1 93/13
explained [3] 33/14 60/10 73/21
explaining [2] 19/11 71/2
explicit [1] 111/25
extent [5] 25/3 39/6 45/3 55/17 56/23
extra [2] 15/14 16/3
eyes [1] 97/20

F

face [3] 18/14 23/24 60/14
facie [1] 67/19
fact [19] 20/9 25/22 26/15 29/15 29/25 32/5 33/22 34/22 45/16 48/18 48/20 54/11 59/14 66/3 69/11 69/15 70/20 87/15 90/11
factor [2] 8/2 8/3
factors [1] 64/21
facts [8] 38/12 39/1 40/21 63/16 63/19 65/7 66/2 69/22
failed [1] 75/13
failing [1] 22/1
fair [6] 52/24 56/24 56/25 57/6 84/14 92/3
fairly [1] 50/5
faith [2] 75/16 87/2
falls [1] 39/7
families [1] 9/19
far [9] 8/22 49/1 64/3 64/6 65/17 71/7 80/5 85/6 88/13
fashion [1] 65/25
fault [5] 10/7 10/11 16/17 105/16 105/16
favor [1] 84/19
federal [4] 36/25 48/15 71/6 77/16
fee [1] 7/13
feeds [1] 73/14
feel [4] 78/9 85/13 105/14 105/20
fees [8] 7/17 8/1 8/6 9/20 9/23 15/13 15/17 46/12
felt [1] 56/8
few [7] 40/18 63/13 72/8 74/22 87/16 108/19 111/21
field [1] 38/8
fighting [1] 10/8
figure [1] 75/14
figured [1] 13/22
figures [2] 108/5 108/6
file [4] 6/22 97/18 99/16 108/15
filed [5] 32/9 32/14 40/1 53/12 64/4
fill [1] 47/18
final [7] 6/4 50/3 50/17 75/7 78/19 78/22 98/12
finally [1] 68/4
find [5] 31/24 50/6 103/2 103/6 103/7
finder [2] 54/11 70/21
finding [11] 6/20 7/8 7/10 7/15 8/1 8/25 9/3 48/16 69/6 69/10 71/21
finds [4] 11/22 11/23 13/10 70/15
fine [18] 9/25 27/22 48/25 55/8 56/17 75/24 84/7 90/21 95/2 95/3 97/13 97/19 98/23 99/7 104/6 104/22 106/18 111/13
finger [1] 35/3
finish [1] 94/5
Firm [1] 3/10
first [16] 5/24 6/19 20/2 22/13 22/23 32/8 34/18 36/17 48/3 60/2 63/15 63/25 88/25 95/12 97/17 104/6
five [4] 6/6 17/20 18/20 32/11
five-day [1] 32/11
fix [1] 19/1
FJC [1] 98/17
flag [3] 102/18 102/21 107/20
flip [1] 94/20
fly [4] 90/23 91/21 91/23 106/12
focus [3] 20/10 40/19 83/18
focused [2] 32/7 34/10
focusing [1] 66/7
folks [4] 17/14 17/15 17/17 41/1
folks' [1] 34/1
follow [1] 103/11
follow-up [1] 103/11
followed [2] 64/19 84/6
FOLLOWS [1] 2/1
force [1] 17/11
FORD [2] 2/11 4/6
foregoing [1] 113/6
forehead [6] 34/23 34/25 35/7 35/10 36/3 36/4
foremost [1] 63/25
forget [2] 75/4 98/10
form [4] 66/9 68/25 75/10 95/8
former [4] 15/1 17/9 21/11 85/20
forms [1] 78/24
forth [2] 64/17 104/1
forward [3] 49/10 49/13 81/19
found [5] 29/14 55/13 85/19 85/24 100/16
four [6] 66/24 74/20 74/24 75/2 93/21 107/24
four o'clock [1] 93/21
frame [1] 31/21
frank [1] 32/19
Frankly [1] 31/22
fraud [3] 5/13 5/17 21/8
Friday [4] 42/16 80/3 101/22 101/24
front [5] 41/21 45/25 59/17 60/17 75/17
full [3] 62/4 88/14 90/4
function [1] 78/1
functional [3] 56/6 77/19 79/7
functionality [4] 76/11 76/17 77/16 79/2
further [2] 69/18 83/18

G

game [1] 92/3
gave [1] 88/19
geez [1] 61/17
general [4] 26/4 27/15 30/10 46/21
generally [3] 20/19 58/10 105/4
genuinely [1] 20/20
Georgia [2] 47/2 47/6
Georgia-Pacific [2] 47/2 47/6
get [52] 5/12 6/24 8/7 9/14 9/22 14/12 19/9 20/17 28/10 30/15 43/12 43/24 44/24 46/25 50/3 50/17 51/21 52/22 53/17 55/20 68/18 70/9 74/22 75/6 75/9 75/10 78/10 80/11 80/24 83/24 84/12 88/15 88/25 92/9 93/1 96/13 97/9 98/2 98/11 99/7 99/19 99/23 101/10 101/18 104/6 105/7 105/12 105/20 105/25 106/9 107/4 109/16
gets [5] 62/13 62/19 103/13 105/19 111/4
getting [5] 5/25 13/13 49/21 80/12 82/7
give [26] 16/5 43/13 43/15 52/23 52/25 53/8 80/3 93/8 93/17 93/18 93/21 93/22 94/2 94/3 94/17 94/23 95/6 95/7 95/14 95/16 95/19 95/20 95/20 98/24 102/3 103/9
given [7] 6/4 18/1 19/2 25/22 74/19 96/22 110/9

G

gives [2] 22/4 96/20
giving [3] 93/19 94/7 97/14
go [28] 3/5 4/23 10/5 13/14 16/15 19/24 24/7 24/16 35/3 43/23 50/21 51/23 53/3 59/3 60/13 77/4 80/13 81/19 83/17 86/9 87/24 88/23 89/9 92/12 96/7 97/8 105/11 105/13
goes [4] 23/20 49/1 62/12 97/16
going [149]
gone [3] 54/22 71/3 75/3
good [22] 3/7 3/12 3/15 3/17 3/20 3/22 4/1 4/3 4/8 4/9 4/10 4/16 5/22 30/24 48/1 48/1 53/18 75/16 75/17 87/2 107/13 109/22
Google [3] 52/17 52/17 62/11
got [23] 12/5 13/4 14/24 15/2 27/20 29/24 31/4 41/10 50/25 55/24 56/7 72/7 74/16 74/19 83/8 91/6 92/14 93/21 93/22 94/20 106/21 108/7 111/5
gotten [1] 96/23
government [4] 9/17 9/21 52/18 102/7
grant [1] 60/6
granted [2] 56/25 75/11
granting [1] 79/9
grapple [1] 73/20
grappling [1] 73/17
great [5] 7/25 56/13 83/25 84/3 97/5
grounds [7] 75/22 76/2 76/3 76/3 76/7 76/7 81/7
group [1] 21/9
guess [8] 30/2 45/14 46/3 46/9 46/15 77/10 92/22 97/7
guide [1] 54/11

H

ha [1] 79/16
had [22] 4/21 5/15 27/11 32/10 32/16 33/11 33/23 33/24 35/20 37/13 67/23 82/11 84/16 84/20 85/4 85/15 85/15 89/12 90/2 93/6 95/24 108/7
hairs [1] 76/1
Hale [1] 4/6
half [1] 33/16
Hall [2] 1/15 2/13
hand [2] 66/1 94/15
handing [2] 50/22 95/1
hands [1] 52/7
HANEY [2] 2/14 4/15
hanging [1] 44/20
happen [3] 101/3 101/4 107/6
happened [4] 13/7 39/3 39/7 58/19
happening [2] 94/4 101/3
happy [4] 10/15 58/9 95/14 104/18
hard [3] 46/17 46/17 96/14
hardships [1] 7/14
has [42] 5/9 5/15 11/3 12/10 13/7 13/24 17/6 21/1 21/4 22/23 23/11 27/20 28/5 38/7 41/11 42/11 59/22 62/9 68/1 68/5 68/10 70/7 71/7 71/20 74/2 74/5 75/3 75/11 77/16 81/13 81/25 82/21 82/23 85/17 87/17 89/8 95/25 99/22 102/15 106/14 110/1 111/20
hasn't [1] 99/25
have [177]
haven't [5] 11/7 12/14 74/10 98/1 101/23
having [7] 8/5 17/20 19/11 27/6 71/14 96/4 106/12
he [20] 11/15 12/23 12/24 19/23 24/1 25/3 40/25 45/15 47/15 47/17 48/6 61/8 73/2 86/12 94/18 94/25 95/1 95/2 106/11 109/7
he's [2] 44/17 95/5
head [1] 46/12
health [1] 106/5
hear [22] 5/19 7/19 14/21 15/19 20/21 22/23 26/6 34/14 40/17 43/20 46/11 52/13 52/14 63/2 77/2 78/9 79/25 80/2 81/20 103/17 111/10 111/18
heard [5] 13/24 46/7 46/23 87/20 95/6
hearing [2] 22/10 103/18
hearsay [2] 25/19 27/8
held [3] 1/14 59/22 62/11
help [3] 19/7 35/15 77/24
helpful [3] 60/20 90/6 93/10
her [2] 31/24 77/17
here [47] 3/1 6/22 8/23 9/11 10/7 10/12 10/14 13/7 13/9 15/13 16/19 18/17 21/23 22/8 25/7 27/5 29/22 32/4 33/13 39/2 39/4 45/1 46/13 50/13 51/13 52/4 52/19 53/3 66/14 67/1 67/12 76/1 77/10 88/23 89/11 91/5 93/12 94/21 100/17 101/14 102/6 102/24 105/3 105/18 105/22 105/25 106/22
here's [1] 33/15
hereby [2] 108/13 113/5
herein [1] 113/8
hesitate [1] 82/5
hey [2] 55/14 55/19
hiding [1] 17/25
highlight [1] 92/3
highlighted [1] 53/4
highlights [1] 53/5
hill [1] 40/8
him [16] 12/22 47/7 85/23 85/24 86/4 86/6 86/11 87/15 95/6 95/7 95/14 95/16 106/12 106/12 106/13 109/7
hired [3] 31/19 33/17 41/2
hiring [1] 42/4
his [7] 25/2 44/19 45/17 47/15 48/5 86/5 87/23
history [5] 37/25 54/14 54/16 55/11 56/14
Honor [105] 3/7 3/13 3/18 3/20 3/23 4/4 4/11 5/23 6/18 6/22 10/12 10/22 14/4 14/20 16/1 17/6 17/20 19/6 19/18 22/16 22/17 23/8 24/21 25/16 26/15 28/1 28/2 28/4 29/2 30/6 30/17 31/22 32/17 32/24 33/1 34/9 34/16 37/8 39/5 40/8 40/19 41/17 43/22 47/4 48/1 48/4 48/13 50/19 51/16 52/16 53/1 53/5 53/24 55/5 58/21 59/6 59/22 61/2 61/17 61/22 63/11 64/8 66/13 66/20 66/23 68/18 69/3 71/23 72/3 72/17 74/16 76/13 76/18 77/13 77/17 77/21 77/22 78/1 80/20 82/19 83/7 83/24 84/25 87/10 88/7 88/9 89/18 93/14 96/10 97/3 101/7 101/18 101/20 104/19 106/16 107/10 107/14 107/21 108/11 108/18 108/20 109/23 111/20 112/8 112/12
Honor's [10] 13/17 47/12 48/10 59/6 61/21 76/10 78/6 79/3 98/19 104/24
Honorable [1] 1/15
hope [1] 105/6
hopefully [3] 42/16 101/5 106/1
HORNE [6] 2/16 4/13 10/25 23/6 34/15 50/19
hospital [5] 33/25 34/1 34/20 37/21 38/6
host [1] 64/14
hotel [1] 9/18
hours [7] 96/12 96/13 96/14 96/17 96/21 108/12 105/21
how [42] 5/6 12/5 12/7 15/2 19/19 21/23 22/14 23/1 33/17 44/7 45/13 46/2 46/6 46/9 46/19 49/7 54/18 54/19 56/9 57/3 61/10 61/15 63/19 65/7 65/24 66/2 70/23 73/6 85/6 88/12 92/7 96/5 98/5 101/17 101/18 104/16 106/20 106/21 106/25 108/20 109/16 111/2
However [2] 25/8 62/3
hundred [3] 8/21 17/7 92/18
hypothetical [2] 88/5 95/19
hypothetically [2] 14/15 92/22

I

I'll [12] 34/18 42/15 43/22 66/14 75/10 83/17 91/7 95/14 108/12 111/6 111/7 112/15
I'm [58] 6/7 6/7 7/2 10/15 15/15 21/10 21/24 22/2 22/24 27/5 36/23 38/18 40/3 40/5 40/7 43/17 44/14 45/8 45/16 46/11 50/12 52/2 54/25 55/6 56/17 57/9 57/10 58/10 58/15 60/14 60/19 61/14 61/15 63/16 69/18 70/5 73/3 75/1 76/4 77/2 80/1 82/15 86/25 88/3 88/4 90/21 90/21 91/1 93/23 95/12 95/13 95/15 95/20 96/3 97/23 99/19 106/20 108/13
I've [4] 10/8 19/2 89/17 90/14
idea [3] 41/23 78/25 91/6
ideal [1] 105/17
identified [1] 79/6
if [140]
imagine [1] 91/13
implicated [1] 42/10
important [4] 7/16 22/7 39/5 89/2
improperly [2] 70/21 70/23
in [271]
inappropriate [1] 87/22
INC [1] 1/4
inclination [2] 50/3 70/2
include [2] 111/12 111/15
including [3] 52/7 56/14 62/6
inconsistent [1] 88/19
incorporate [1] 4/22
increase [1] 7/10
incredible [1] 111/2
indeed [1] 22/10
independent [1] 66/10
independently [2] 28/24 65/3
indicated [1] 106/14
indicates [1] 99/17
indication [1] 98/10
individually [1] 68/17
industry [1] 35/14
inept [2] 37/20 38/6
inequitable [3] 5/17 18/9 21/8
inference [1] 20/25
information [2] 106/10 110/9
infringe [3] 26/24 31/15 59/23
infringed [3] 28/15 28/16 41/13
infringement [28] 11/22 12/19 25/11 25/12 25/23 25/24 26/21 26/21 28/5 28/20 29/5 29/15 29/17 34/12 36/18 36/22 40/11 48/7 51/18 59/8 59/13 59/19 65/13 65/15 71/16 73/12 73/13 73/15
infringer [1] 29/12
infringes [3] 31/12 32/5 33/21
infringing [2] 28/6 37/3
initially [2] 85/4 85/15

I


injunction [12] 6/22 7/14 7/18 8/15 23/13 25/2 51/20 51/22 69/5 69/7 69/19 72/4
innovated [1] 25/10
innovator [1] 29/13
innovators [1] 41/24
insofar [1] 92/19
instead [4] 31/16 80/3 99/3 106/12
instruct [1] 78/1
instructed [1] 73/8
instructing [1] 97/21
instruction [4] 20/25 22/2 22/4 101/9
instructions [8] 12/3 54/20 78/23 98/8 98/12 98/16 105/8 105/10
insufficiently [1] 61/4
intend [3] 14/15 26/25 27/1
intended [2] 42/2 49/2
intent [1] 79/17
interest [2] 51/4 62/8
interested [1] 113/10
interpreted [1] 54/15
interrogatory [7] 12/3 14/7 45/22 47/20 68/24 70/4 78/21
into [3] 15/7 102/24 103/19
introduced [1] 82/14
introduction [1] 83/15
invalid [1] 31/16
invalidity [5] 76/17 78/17 78/18 78/19 81/7
inventions [1] 41/5
inventors [2] 21/10 41/4
inventorship [5] 76/11 76/16 77/15 78/15 110/6
involves [1] 110/8
involving [1] 22/20
IP [1] 63/20
IPR [9] 55/3 55/9 55/10 55/21 57/1 57/23 57/24 58/6 58/11
IPR's [1] 56/14
irrelevant [2] 41/6 67/13
is [335]
isn't [3] 22/8 28/21 61/9
issue [39] 5/9 5/12 10/5 17/2 20/7 21/16 21/24 27/18 27/21 30/14 30/22 32/3 33/4 33/8 40/16 42/21 44/20 55/17 61/25 67/12 69/24 71/3 71/19 75/12 79/10 80/22 81/16 85/12 85/18 86/4 90/22 90/25 100/11 100/15 106/5 108/8 110/1 111/1 111/15
issues [19] 6/3 21/8 26/1 28/12 28/17 31/8 32/17 34/11 40/24 66/24 67/12 73/11 73/20 73/20 77/14 80/9 80/17 110/6 111/13
it [285]
it's [92] 4/19 6/24 6/24 8/2 8/3 9/21 10/7 10/11 10/15 11/16 13/10 13/12 13/25 15/4 16/16 17/4 17/18 17/21 18/8 18/11 18/13 18/18 21/3 28/9 32/12 32/18 32/19 32/24 33/6 33/7 33/9 34/2 35/1 36/24 37/24 38/12 39/1 39/5 41/18 43/9 43/10 47/13 47/14 48/6 48/24 49/12 49/20 49/23 50/14 51/16 52/16 53/10 55/10 55/15 55/22 57/2 59/21 62/15 63/6 64/13 64/23 65/17 66/1 66/20 68/14 69/14 71/12 72/18 74/6 75/16 77/12 80/23 81/12 81/16 81/17 83/2 86/5 89/1 91/10 91/18 94/4 95/3 96/21 97/7 101/2 102/2 103/15 105/16 106/20 107/6 107/21 110/25
ITC [3] 32/9 39/24 40/7
items [1] 111/5
its [11] 15/24 23/24 25/10 57/8 65/5 65/24 65/25 66/2 66/3 66/7 70/19
itself [3] 23/20 49/8 50/7


J


Jack [1] 4/11
James [1] 43/1
JAMIE [3] 2/8 3/25 107/12
JEFF [3] 2/7 3/21 47/24
Jennifer [1] 1/15
JEREMY [5] 2/18 4/14 75/18 100/9 106/2
JLH [2] 1/4 1/4
job [2] 10/14 71/2
jobs [1] 9/25
Joe [2] 85/20 90/16
JOHN [5] 2/5 2/13 3/10 5/23 57/18
joined [1] 3/9
judge [6] 19/12 29/9 29/16 33/3 53/15 101/15
judgment [11] 5/4 5/16 14/6 14/9 50/15 51/15 64/2 75/11 79/10 79/14 79/18
jump [1] 52/22
June [2] 52/17 53/12
June 11 [1] 53/12
juror [8] 97/13 98/24 102/25 103/5 103/6 103/18 103/21 103/22
jurors [8] 97/25 98/5 103/22 104/4 105/16 105/25 109/16 112/10
jurors' [1] 9/20
jury [92] 5/8 5/9 5/13 5/20 6/11 6/21 7/3 7/15 7/22 7/23 8/5 8/9 8/11 8/16 8/17 9/2 9/5 9/12 9/23 10/19 11/21 12/3 13/17 13/19 14/18 15/19 16/1 16/4 16/12 16/20 16/21 17/24 19/2 22/2 28/13 31/11 32/6 33/4 34/10 44/20 44/24 45/4 45/18 46/14 50/10 52/5 52/13 54/20 54/20 55/2 55/20 57/3 58/11 59/17 59/18 61/24 68/24 69/9 69/12 69/12 69/21 70/21 71/8 71/25 72/2 72/6 72/10 73/7 75/9 75/17 77/24 78/2 78/2 78/22 97/15 97/19 98/8 98/12 98/16 100/24 101/1 101/9 101/21 101/24 102/24 104/7 104/13 105/4 105/5 105/7 105/8 109/19
jury's [1] 42/3
jury-bench [1] 33/4
just [71] 6/13 7/1 8/14 9/9 10/4 10/6 10/9 16/15 19/1 19/19 21/15 23/22 24/23 26/5 26/18 27/6 31/8 34/19 35/20 37/20 37/20 38/4 38/9 40/18 43/2 44/9 46/7 46/17 48/11 48/24 49/9 52/25 53/8 54/5 55/18 56/21 64/7 66/25 68/23 72/13 72/17 73/22 75/18 77/3 82/11 82/12 82/20 82/23 83/6 84/7 88/5 88/10 90/4 90/22 92/14 95/3 96/6 97/17 97/19 98/10 99/7 100/16 100/25 104/18 106/4 106/15 108/3 108/19 109/25 110/10 110/16


K


KATZENELLENBOGEN [10] 2/17 4/13 19/18 53/24 58/21 66/19 70/13 78/13 81/4 84/25
keep [5] 34/10 78/14 87/10 95/4 103/21
keeps [1] 11/15
KENDALL [2] 2/17 4/13
kept [1] 101/4
Kiani [5] 24/10 24/14 85/20 87/14 109/6
Kiani's [1] 87/18
kids [1] 9/15
KIMBERLY [3] 1/25 113/4 113/14
kin [1] 113/9
kind [5] 23/23 31/7 50/12 51/2 79/15
knew [1] 92/6
Knobbe [2] 2/16 10/25
know [52] 4/25 6/1 12/13 13/21 13/25 14/10 14/10 19/4 25/3 26/2 26/10 29/19 29/21 36/21 44/23 45/4 45/25 46/3 46/4 46/14 46/16 46/22 47/4 49/10 52/1 52/4 55/13 56/4 58/12 58/13 63/22 73/21 81/17 82/18 85/12 85/13 85/14 87/3 87/5 91/9 91/20 91/23 94/5 95/4 95/13 97/23 98/13 101/2 106/20 107/3 107/6 107/9
knowing [2] 44/12 44/15
known [3] 49/11 64/3 102/8
knows [1] 110/7
KRINGSTEIN [6] 2/8 3/25 107/12 107/12 107/24 108/17


L


landscape [1] 37/14
language [3] 19/5 79/16 82/4
largely [1] 110/21
larger [1] 26/4
last [12] 5/1 5/10 24/8 74/16 83/8 85/19 98/13 100/17 104/9 106/6 111/19 111/21
late [7] 37/21 64/3 74/17 74/20 74/23 102/2 105/17
later [5] 7/20 9/6 25/8 88/18 100/3
launched [1] 14/22
law [3] 36/25 44/2 75/12
lawsuit [3] 24/13 39/2 40/4
lay [1] 97/20
lead [2] 19/24 62/15
leaders [1] 35/14
leading [1] 33/24
leads [2] 7/12 7/13
learned [2] 96/14 106/5
least [7] 5/12 15/12 17/8 21/13 59/2 86/8 107/2
leave [1] 56/21
leaves [1] 93/9
LED [1] 35/3
LEDs [1] 35/7
LEE [3] 2/9 4/2 109/23
leeway [1] 103/13
left [5] 43/21 53/22 70/9 76/15 80/9
legal [9] 14/14 15/8 16/8 39/17 41/7 46/12 51/17 71/24 71/24
less [3] 12/18 13/2 44/3
let [9] 14/13 31/3 34/14 40/17 43/2 66/2 68/23 87/4 111/6
let's [11] 3/5 16/24 21/14 31/1 39/14 43/20 43/24 47/7 73/25 82/17 88/5
letter [4] 80/7 97/18 99/17 110/11
letters [6] 42/15 77/3 80/9 102/1 111/8 111/9
life [1] 89/14
light [3] 5/4 52/5 79/11
like [44] 6/21 11/9 12/13 12/21 14/1 20/2 23/3 23/4 27/8 27/9 33/3 40/19 42/4 46/8 58/6 58/18 60/11 62/14 62/15 73/17 78/9 84/4 85/14 87/5 87/22 88/3 88/14 88/25 90/3 91/10 91/15 94/19 97/12 97/14 97/22 97/23 98/20 104/20 104/25 105/12 105/14 105/20 106/23

## L


like... [1] 106/25
likely [2] 54/1 79/16
limine [13] 11/6 13/1 17/1 22/18 23/9 24/5 31/2 39/9 42/19 53/19 58/23 66/15 79/13
limited [5] 19/3 22/3 30/6 74/20 74/24
Lindemann [1] 48/14
LINDSEY [3] 2/7 3/24 24/21
line [1] 69/18
list [19] 6/5 23/16 24/10 24/15 38/21 74/16 79/24 80/5 80/12 85/6 85/21 85/23 87/15 88/2 99/17 109/16 109/20 109/21 111/6
listen [1] 15/16
lists [1] 82/12
literally [1] 15/4
litigation [1] 38/15
litigations [1] 31/18
little [8] 34/2 42/17 60/9 74/17 86/16 103/12 105/14 108/7
live [7] 17/23 35/17 84/21 85/5 85/8 85/8 97/2
LLP [2] 2/2 2/4
LOEBBAKA [2] 2/17 4/13
long [6] 55/15 75/25 82/22 86/15 103/14 111/13
longer [4] 5/18 17/8 17/10 80/12
look [17] 14/24 19/24 34/16 48/13 50/2 55/21 56/11 56/18 65/16 65/16 70/8 70/17 75/17 77/4 91/7 91/10 102/19
looked [7] 15/3 27/6 27/7 48/21 53/20 84/3 98/2
looking [5] 45/8 50/12 63/20 98/14 101/9
looks [4] 90/3 97/12 97/23 99/2
loose [1] 95/3
lost [3] 11/8 12/6 105/15
lot [16] 6/1 9/24 13/19 18/8 22/24 23/8 23/13 23/13 35/21 49/17 52/2 52/3 62/13 74/23 87/17 94/20
love [1] 56/13
low [1] 46/8
LUEHRS [5] 2/8 3/25 77/11 77/11 79/2
lump [1] 45/25
lunch [2] 105/9 105/10
lunches [1] 112/11


## M


M.I.L [1] 31/7
M.I.L.'s [1] 4/24
machines [1] 33/25
made [7] 41/18 54/13 56/19 57/4 63/23 65/25 66/3
MAGIC [4] 2/6 3/14 3/15 63/11
mail [1] 83/8
main [1] 55/17
maintain [2] 74/18 101/16
major [1] 110/25
make [26] 5/5 6/13 7/2 9/9 18/23 25/17 27/25 38/16 56/5 63/13 63/23 64/12 67/22 79/22 80/15 81/17 81/18 82/9 94/6 97/18 97/22 102/19 105/20 106/16 107/8 112/2
makes [1] 54/21
making [6] 18/17 34/7 39/4 42/12 56/4 90/3
Malackowski [5] 24/8 24/24 43/1 44/16 48/4
man [5] 31/25 31/25 32/1 32/2 32/4
manufacture [3] 65/22 73/14 73/18
manufacturer [2] 64/22 65/11
manufacturing [5] 25/17 49/5 64/16 65/20 67/8
many [9] 17/7 17/10 30/21 49/7 98/5 101/18 104/16 106/25 108/20
marginal [1] 70/15
MARK [2] 2/11 4/6
Markman's [1] 54/1
Martens [1] 2/16
MASIMO [68] 1/6 2/14 2/19 3/2 4/11 6/4 6/24 10/6 10/8 11/1 14/21 17/12 18/5 21/5 22/11 22/23 22/25 23/6 23/14 24/14 26/11 27/12 27/12 27/17 28/5 28/10 28/16 31/11 31/12 32/5 32/8 33/17 33/21 33/23 34/15 34/20 34/22 34/25 35/9 40/25 41/1 41/6 42/9 43/20 54/6 56/3 56/4 58/23 64/18 65/5 65/23 66/7 68/11 76/14 79/6 80/22 87/7 87/18 89/12 93/14 93/17 96/19 100/10 106/3 107/15 108/9 110/1 110/15
Masimo's [15] 5/13 15/24 25/11 26/9 28/6 34/11 42/19 42/22 49/6 53/19 68/11 74/8 80/24 85/20 110/12
MATALON [5] 2/9 4/2 4/3 109/22 109/23
materials [1] 100/13
matter [9] 16/4 17/21 18/13 61/19 64/25 73/6 75/12 96/2 96/5
matters [1] 32/3
maximum [3] 7/11 15/20 111/8
may [19] 21/16 21/20 22/9 24/9 28/3 35/2 41/23 53/4 54/13 58/22 67/2 72/13 79/2 81/16 84/21 85/5 85/12 86/7 87/16
may-call [2] 84/21 85/5
maybe [8] 21/11 33/3 33/4 61/18 74/21 76/21 94/5 107/7
McLaughlin [1] 2/13
me [35] 4/12 5/11 14/13 19/11 20/2 22/13 23/2 27/7 28/18 30/1 31/3 31/23 34/14 40/17 41/21 43/2 45/9 46/18 53/1 54/21 57/6 57/10 60/20 66/23 68/23 84/5 86/20 88/19 89/14 97/21 99/2 102/8 104/10 104/22 113/7
mean [10] 16/16 23/21 28/21 38/5 66/5 79/8 86/15 90/14 95/23 107/5
meaning [1] 42/10
means [3] 58/6 82/18 83/13
measure [1] 34/1
meet [6] 42/8 52/8 75/13 76/20 76/23 111/13
meeting [1] 42/5
MEGAN [2] 2/14 4/15
mention [1] 82/5
mentioned [4] 40/25 73/10 75/20 101/8
meritless [1] 68/17
merits [1] 27/1
met [1] 33/19
middle [1] 100/25
midstream [1] 65/6
might [27] 14/5 19/7 22/22 23/12 23/19 24/18 33/5 36/7 36/9 50/4 55/2 56/16 57/3 59/18 71/9 72/4 77/24 77/25 86/22 100/12 100/18 106/11 106/11 106/13 106/16 107/16 110/11
MILLER [5] 2/7 3/24 24/21 24/22 31/9
millions [1] 49/23
mind [1] 59/2
minimize [1] 101/6
minimum [6] 11/14 11/16 42/24 43/3 73/4 101/5
minor [1] 75/19
minus [1] 96/17
minute [5] 56/9 56/17 59/21 71/9 71/10
minutes [4] 72/9 96/19 96/20 96/21
misfinding [1] 11/19
misquoting [2] 91/14 91/17
missing [2] 20/22 20/24
mistrial [1] 38/21
misunderstanding [1] 85/2
mixing [1] 54/25
Monday [7] 74/15 75/8 75/15 89/21 101/25 101/25 104/25
monetary [3] 42/24 43/3 62/17
money [3] 6/24 13/12 49/20
MOORE [10] 2/2 3/7 3/8 3/14 3/16 3/19 3/21 3/24 4/2 4/5
moot [4] 17/2 62/9 62/16 84/1
mooted [2] 52/19 53/21
moots [2] 51/5 51/6
more [20] 15/18 17/18 36/12 41/22 42/17 49/14 50/20 60/7 65/10 71/1 71/6 74/22 85/10 88/4 96/20 96/22 102/4 104/4 106/9 112/9
morning [19] 3/7 3/12 3/15 3/17 3/20 3/22 4/1 4/3 4/9 4/10 4/16 5/22 48/2 88/22 94/4 95/13 98/4 100/24 111/24
most [6] 15/5 18/4 24/6 50/24 84/14 103/15
motion [25] 5/16 11/6 12/25 17/1 22/18 23/3 23/9 23/20 24/5 27/7 31/1 39/8 39/19 42/19 42/22 42/23 43/21 50/15 53/19 58/9 58/23 59/11 64/1 64/1 66/15
motions [3] 5/4 79/13 79/13
move [6] 14/5 14/8 31/1 73/25 86/19 111/9
moving [1] 52/3
MR [25] 3/7 3/14 3/15 3/16 3/17 3/19 3/20 3/21 3/22 3/24 4/1 4/2 4/3 4/5 4/10 24/10 24/14 30/4 37/7 37/20 46/24 49/5 77/11 109/5 109/22
Mr. [14] 14/13 24/8 24/24 34/19 44/16 48/4 49/4 50/23 63/15 75/20 79/2 87/14 87/18 90/15
Mr. Desmarais [4] 14/13 50/23 63/15 75/20
Mr. Expert [1] 90/15
Mr. Kiani [1] 87/14
Mr. Kiani's [1] 87/18
Mr. Luehrs [1] 79/2
Mr. Malackowski [4] 24/8 24/24 44/16 48/4
Mr. Muhsin [1] 49/4
Mr. Shaw [1] 34/19
MS [5] 24/21 31/9 107/12 107/24 108/17
much [23] 12/20 21/9 21/23 27/4 42/7 45/13 46/2 46/9 47/23 48/11 50/1 53/14 60/19 61/10 62/23 66/12 68/22 72/12 73/25 97/10 100/21 110/14 112/18
mud [2] 23/13 27/2
Muhsin [1] 49/4
my [22] 3/9 4/14 10/14 10/19 20/6 31/3 31/9 32/23 33/9 43/23 46/12 50/3 53/5 58/13 58/22 59/2 61/7 70/2 102/25 105/6 105/15 107/19
myriad [1] 63/19


## N


namely [1] 5/13
names [2] 99/18 99/18
narrow [5] 6/2 74/3 74/8 74/9 75/2
narrowed [4] 6/5 74/3 74/5 74/22

## N


narrowing [3] 35/21 58/18 74/2
Natalie [1] 4/7
necessarily [2] 27/10 38/5
necessary [3] 47/9 48/12 67/2
need [46] 7/25 8/3 8/6 15/14 15/19 16/20 20/18 24/18 38/14 46/2 46/9 61/13 66/23 69/5 81/1 83/14 84/8 84/22 85/6 85/13 86/2 86/7 87/8 88/21 92/16 92/19 96/17 98/3 98/7 98/11 100/3 100/7 100/18 100/22 100/23 101/2 101/3 101/4 101/13 102/18 105/20 105/23 106/11 106/16 106/25 111/9
needed [1] 5/12
needs [8] 12/20 38/8 68/18 83/3 83/17 97/16 97/24 101/4
negative [1] 23/21
negotiated [1] 82/1
neither [1] 113/8
never [4] 11/6 11/10 47/19 111/4
news [3] 27/22 33/2 87/17
next [6] 42/16 53/18 55/21 81/20 98/3 101/11
nexus [2] 27/21 30/13
nice [1] 77/12
night [9] 74/17 83/9 85/19 94/1 94/24 95/24 96/4 100/17 106/6
nine [3] 58/17 74/2 108/5
Ninety [1] 89/8
Ninety-eight [1] 89/8
no [64] 5/18 8/9 8/15 9/2 9/4 10/13 11/22 12/10 12/18 16/4 16/18 17/3 17/8 17/10 20/21 21/4 21/25 25/5 29/24 30/8 30/10 32/1 34/14 37/4 37/16 38/18 40/21 44/3 45/15 45/19 47/1 49/14 51/16 54/24 55/22 55/23 56/2 59/24 59/24 60/13 60/25 61/23 61/23 61/25 62/20 64/25 66/21 68/19 70/7 71/20 71/21 71/24 72/1 73/5 77/8 78/4 82/25 91/1 92/1 94/12 99/13 99/13 100/3 103/20
nobody [1] 89/8
nod [1] 76/4
nodding [1] 82/15
non [1] 42/4
non-substantive [1] 42/4
none [2] 79/6 87/9
noon [1] 42/16
nor [2] 113/9 113/10
normal [1] 90/18
not [162]
notebook [1] 98/24
notebooks [1] 97/13
nothing [6] 23/20 44/18 49/13 68/1 68/10 112/7
notice [4] 74/19 88/18 106/24 107/1
noticed [1] 82/11
notify [1] 107/3
November [3] 32/20 32/25 33/10
November 5 [1] 33/10
November 5th [2] 32/20 32/25
now [21] 5/15 17/2 33/9 39/12 47/14 47/17 54/23 56/15 58/15 60/20 61/25 62/4 62/9 73/16 74/8 76/19 76/25 80/1 82/6 102/2 106/9
nuance [3] 30/19 57/18 57/21
number [21] 11/6 13/1 17/1 22/19 23/9 31/2 39/9 42/20 53/19 54/6 58/23 59/4 66/15 80/11 94/13 96/6 103/1 103/5 103/7 107/21 111/5
numbers [1] 3/4


## O


o'clock [1] 93/21
objection [4] 90/2 91/7 92/1 92/11
objections [4] 78/21 82/25 88/15 109/11
obvious [1] 103/15
obviously [4] 5/9 64/23 68/13 85/17
obviousness [3] 67/15 67/17 67/20
October [6] 1/16 9/12 33/13 85/17 99/15 99/21
October 16th [1] 99/21
October 18th [1] 99/15
October 21st [2] 9/12 33/13
October 7 [1] 85/17
off [7] 9/13 10/18 62/14 100/5 105/9 105/10 105/24
offer [2] 38/9 51/14
office [5] 5/18 56/19 56/20 57/22 58/5
often [1] 103/15
oh [6] 33/15 54/24 55/22 56/2 81/11 101/19
okay [34] 10/24 13/15 16/13 19/20 19/21 20/3 20/17 27/3 27/24 38/25 39/15 54/8 55/14 56/9 58/25 61/14 63/10 67/6 68/21 73/24 80/21 84/3 86/5 86/19 89/6 90/5 93/4 93/5 95/5 97/5 101/19 107/11 109/5 111/4
OLSHESKI [3] 2/9 3/25 4/1
omitted [1] 21/9
omnibus [2] 80/9 111/8
on [186]
once [4] 33/19 42/5 62/19 95/25
one [63] 5/12 8/19 8/20 11/3 11/6 13/1 13/19 16/18 17/2 17/22 18/6 18/11 20/10 21/18 22/22 35/3 35/24 36/12 37/1 37/14 37/17 41/22 42/8 42/20 43/8 50/20 59/1 59/10 64/21 65/10 65/25 67/23 70/1 70/9 76/12 77/14 81/13 82/10 87/1 87/13 88/11 88/12 88/24 88/24 89/11 92/18 92/23 94/13 94/17 96/5 100/14 101/15 102/19 103/1 103/5 103/7 106/4 106/5 108/5 108/6 109/10 111/19 112/9
one-sided [1] 65/25
one-week [1] 13/19
ones [2] 9/18 102/17
only [20] 16/21 20/14 32/3 43/8 44/22 45/3 57/17 57/20 59/15 59/20 60/8 63/6 67/8 67/15 72/11 81/12 81/13 90/24 98/21 110/8
onto [1] 31/1
open [6] 22/2 25/13 38/23 40/2 54/10 80/10
opened [1] 57/2
opening [1] 84/17
openings [1] 105/11
opens [2] 40/12 56/3
opinion [2] 42/3 47/15
opportunity [1] 103/10
opposed [2] 7/4 85/9
opposing [1] 94/17
opposition [5] 23/18 26/15 33/14 34/7 56/2
option [1] 67/16
or [70] 5/8 5/9 10/17 10/19 17/9 18/6 18/11 19/11 20/25 21/4 21/18 22/21 23/1 23/21 25/10 35/17 36/4 37/23 38/1 38/20 39/25 40/23 41/24 42/5 42/23 43/4 45/8 47/20 48/1 48/17 60/3 60/18 61/4 61/12 62/20 64/11 68/2 68/11 68/19 72/8 74/4 76/5 77/18 78/8 80/22 84/5 84/11 86/9 86/23 87/1 89/24 90/8 90/8 91/3 91/4 91/14 94/14 94/24 95/8 97/7 100/2 101/13 101/22 103/16 103/16 104/4 106/13 108/21 110/16 113/9
order [22] 4/18 4/19 4/25 6/19 13/14 54/1 58/16 73/25 74/19 77/23 78/6 79/4 81/23 82/24 87/8 87/14 102/6 102/8 106/13 107/18 110/2 110/21
ordering [2] 83/14 108/13
Ordinarily [1] 98/18
organization [1] 4/20
ornamental [1] 108/1
ornamentality [1] 78/5
other [24] 29/23 30/21 31/17 35/4 37/18 39/16 43/23 49/9 52/14 61/14 73/12 73/20 76/3 80/23 81/18 87/1 87/5 92/25 96/22 97/8 98/14 111/12 111/14 111/15
Otherwise [1] 105/9
ought [3] 30/2 94/17 109/8
our [56] 3/6 3/10 4/22 5/1 5/2 6/4 6/25 11/5 12/25 12/25 14/23 14/25 15/3 15/3 21/14 23/18 27/22 28/11 29/18 36/3 37/3 37/4 37/17 37/23 38/11 48/14 53/25 55/9 55/15 55/17 55/22 55/25 56/11 56/15 57/13 57/25 63/20 63/20 78/16 78/19 78/20 84/6 85/21 85/22 86/8 86/9 90/22 90/24 93/19 94/2 94/8 99/10 105/20 106/6 110/7 112/2
ourselves [1] 53/9
out [44] 5/25 15/1 17/3 33/8 39/25 42/21 52/1 52/4 52/10 53/9 56/5 56/10 75/14 78/6 81/24 82/2 82/3 82/8 83/12 85/19 85/24 86/14 86/18 87/14 88/1 88/11 89/5 91/12 96/5 99/8 99/10 99/22 100/16 100/24 101/1 102/1 103/2 103/6 103/7 105/18 106/13 106/13 109/6 109/19
outcome [3] 55/8 62/3 113/10
outrageous [1] 16/16
outset [1] 4/17
outside [3] 72/6 103/17 109/11
outstanding [1] 84/11
over [10] 17/6 20/16 20/20 21/1 21/4 22/8 32/12 32/18 58/23 105/14
overlooked [1] 101/13
overruled [1] 92/11
own [3] 41/25 53/5 110/17
owners [1] 29/13
ownership [2] 110/16 111/3
owns [1] 110/3
oxygen [1] 34/2
Oz [1] 31/23


## P


p.m [1] 112/21
Pacific [2] 47/2 47/6
page [15] 9/10 10/3 33/16 33/16 42/15 48/6 54/3 79/3 80/7 80/11 80/16 81/6 84/15 107/22 111/8
paid [1] 9/24
PALAPURA [2] 2/3 3/9
paper [3] 94/21 95/3 102/15
papers [2] 52/2 79/23
paragraph [14] 6/19 58/17 74/1 82/5 82/17 83/7 83/10 83/12 83/24 83/25 84/16 84/20 92/14 93/6
part [12] 19/22 23/2 24/24 37/19 43/18

P


part... [7] 64/16 65/14 65/21 69/6 78/3 90/24 98/16
participant [1] 113/9
particular [8] 20/8 20/16 21/12 21/19 27/20 29/20 29/21 83/20
particularly [2] 50/9 79/11
particulars [1] 73/17
parties [30] 4/18 4/21 5/2 19/3 20/10 22/3 26/5 33/19 34/22 36/2 36/8 38/1 38/3 55/11 58/17 63/2 73/19 77/4 81/5 85/3 88/11 97/12 97/14 98/1 98/22 99/16 101/6 107/19 111/11 112/10
partner [2] 3/9 4/14
partnering [1] 37/23
parts [1] 52/3
party [8] 20/8 20/9 21/1 22/21 37/21 75/13 100/13 113/9
passed [1] 85/17
paste [1] 108/8
patent [43] 5/18 11/12 11/25 15/3 15/4 24/2 29/13 35/25 36/15 36/19 37/3 37/15 41/11 42/11 54/23 54/25 55/14 56/19 56/20 57/22 58/5 59/8 59/23 65/9 65/11 68/7 68/9 68/10 71/15 74/10 75/21 78/19 81/9 81/10 81/13 81/14 98/15 98/24 99/2 99/3 99/6 107/17 107/25
patented [2] 41/5 65/18
patentee [2] 12/17 48/22
patents [57] 6/5 6/6 6/7 6/8 6/10 6/16 11/4 11/22 13/18 25/10 26/22 28/15 31/13 31/16 32/6 33/21 34/12 35/21 37/1 43/6 43/7 44/25 45/21 48/5 48/8 48/9 51/1 55/16 55/16 55/20 55/22 56/15 57/5 59/11 60/5 60/10 61/1 61/2 62/1 62/21 63/8 64/10 65/4 65/15 66/22 68/13 68/14 68/20 69/1 70/4 71/5 71/22 73/9 74/7 78/6 110/4 111/21
PAUL [2] 2/5 3/16
pay [2] 9/20 32/1
paying [1] 99/4
pejorative [2] 22/21 23/21
pen [1] 102/10
pending [1] 5/3
penny [1] 45/24
pens [1] 97/25
people [15] 8/23 9/11 9/15 10/18 17/19 17/22 18/11 18/18 18/20 18/23 21/19 103/25 104/16 106/21 107/5
per [6] 74/10 75/21 81/7 81/9 81/9 81/14
percent [1] 8/21
Perhaps [1] 73/18
permanent [1] 25/1
permitted [2] 36/24 90/20
person [4] 17/25 18/1 22/22 86/25
perspective [3] 29/2 29/6 57/14
persuaded [1] 70/6
PETER [3] 2/6 3/14 63/11
Phillips [4] 2/13 2/13 4/10 4/11
pick [2] 9/14 81/1
picking [1] 62/14
place [2] 36/7 36/8
plaintiff [7] 2/3 2/10 2/12 13/4 29/18 62/15 109/24
plaintiff's [1] 62/17
plaintiffs [1] 13/5
plan [4] 46/20 74/15 84/9 89/3
planning [1] 38/24
plate [1] 6/1
play [5] 38/23 53/17 56/10 65/21 69/3
played [1] 88/14
playing [1] 98/15
plead [1] 76/16
pleased [1] 49/18
pleasure [1] 10/15
plenty [1] 96/24
plus [2] 62/7 80/25
point [29] 6/17 7/25 14/5 19/12 31/17 32/9 32/14 33/11 37/11 37/15 38/17 41/19 41/23 42/9 42/12 47/12 48/11 55/1 56/5 58/7 60/21 60/24 61/18 61/21 63/22 73/3 98/11 103/24 107/10
pointed [2] 22/24 49/3
pointing [4] 21/18 22/5 36/10 79/3
points [3] 40/18 63/13 64/7
poker [1] 60/14
portable [1] 35/7
portion [3] 5/13 83/20 83/21
Pose [1] 4/7
position [13] 5/6 5/20 10/20 28/3 50/1 56/11 61/8 75/1 87/18 92/11 111/16 112/3 112/5
positions [2] 79/21 110/7
positon [1] 52/23
possible [3] 64/11 97/7 97/11
possibly [4] 17/21 18/19 50/24 62/5
post [2] 83/19 100/5
post-trial [2] 83/19 100/5
poster [1] 92/15
potential [3] 7/13 61/19 62/7
potentially [3] 7/11 53/20 106/4
Potter [2] 2/2 3/8
power [2] 16/9 37/14
practical [4] 17/21 18/13 18/19 61/17
practicality [1] 18/22
practice [1] 82/21
practices [1] 4/22
precedent [1] 62/13
preclude [3] 22/20 42/23 42/25
preemptory [1] 104/3
prefer [1] 108/21
preference [4] 55/9 58/14 98/19 108/25
prejudgment [2] 51/4 62/7
prejudice [5] 49/14 50/10 50/12 111/23 112/1
prejudiced [4] 44/12 44/14 44/20 46/16
prejudicial [5] 42/2 50/9 59/17 60/1 70/20
preliminary [3] 98/8 98/16 105/8
premise [1] 20/24
premised [1] 110/6
prepare [2] 74/23 85/8
prepared [2] 77/1 91/6
presence [1] 72/6
present [17] 12/7 12/12 14/3 14/17 23/16 44/15 46/5 46/9 46/20 55/2 61/6 67/17 67/18 67/20 67/23 67/24 72/10
presentation [1] 12/14
presented [6] 47/19 54/5 54/10 72/3 72/5 72/11
presents [1] 26/8
preserved [2] 81/16 81/18
press [2] 38/20 39/24
presuming [1] 54/15
pretrial [16] 1/14 3/2 4/18 4/19 4/24 6/19 45/20 58/16 73/25 74/18 80/10 81/23 110/2 110/20 110/20 111/1
pretty [1] 18/12
prevent [1] 39/19
preview [1] 109/25
previous [2] 89/13 89/16
price [3] 11/9 48/19 48/25
prima [1] 67/19
primary [3] 18/2 18/4 85/22
print [1] 53/9
prior [17] 41/1 41/2 65/13 65/14 65/16 65/19 68/6 74/9 74/9 75/20 75/22 76/2 76/3 76/7 80/25 81/7 100/12
pristine [1] 24/18
probably [11] 24/15 25/16 28/4 30/20 58/12 70/3 71/1 71/5 85/14 97/6 102/3
problem [4] 44/4 44/24 72/25 96/12
procedure [3] 22/12 51/25 101/17
procedures [1] 84/7
proceed [3] 5/7 22/15 80/23
proceeding [1] 72/8
proceedings [8] 38/15 39/14 39/17 57/23 57/25 58/3 112/21 113/7
process [2] 5/14 110/2
product [14] 10/10 15/2 35/9 35/15 37/13 37/24 38/9 41/25 63/18 65/17 65/24 65/25 66/3 68/11
products [9] 6/25 28/11 30/21 37/14 37/16 37/17 37/18 48/19 63/21
Professional [2] 113/5 113/15
profit [1] 67/12
profits [2] 11/8 12/6
prominence [1] 64/20
pronged [1] 8/19
proof [3] 75/13 110/17 110/19
proposal [7] 51/10 81/22 84/4 89/10 92/12 93/22 96/8
proposed [6] 4/18 48/21 48/22 78/22 98/1 110/20
prosecution [4] 54/14 54/16 55/11 56/14
protected [1] 78/5
prove [1] 24/3
provide [5] 102/23 106/24 107/1 110/24 112/10
provided [2] 86/5 99/1
provision [1] 94/2
punished [3] 17/12 17/15 18/22
purely [2] 77/19 79/7
purported [1] 71/14
purpose [1] 6/23
pursue [1] 76/14
put [19] 3/6 8/23 9/17 27/12 28/23 29/4 39/14 39/18 57/1 67/4 67/5 72/25 77/22 86/24 87/15 88/5 94/6 110/16 111/16
puts [3] 23/15 38/2 39/3
putting [4] 39/20 40/12 80/21 110/19


Q


quarter [1] 53/18
question [15] 10/17 10/19 16/19 36/15 45/15 46/10 66/10 71/16 88/10 88/12 89/11 93/7 102/11 102/12 103/9
questions [5] 102/10 102/20 103/8 103/11 108/20
quick [1] 88/10
quote [1] 89/12


R


racking [2] 15/12 46/12
raise [6] 25/6 68/4 73/19 76/13 100/17 110/15
raised [2] 41/17 100/23
randomized [2] 102/6 109/21
rather [1] 60/19

## R


re [3] 35/17 92/19 92/20
re-disclose [1] 92/20
re-live [1] 35/17
reach [1] 16/10
reached [1] 15/1
read [4] 20/14 33/2 105/7 105/10
reading [3] 20/5 20/6 102/22
ready [1] 88/15
real [2] 40/13 48/17
realize [1] 35/2
really [10] 7/24 12/16 12/19 13/23 14/1 16/16 25/21 88/3 89/1 93/11
reason [10] 7/3 8/4 18/4 39/22 40/13 46/5 55/2 102/3 105/14 109/2
reasonable [9] 7/5 11/8 11/24 12/18 12/21 13/2 44/3 50/5 61/13
reasoning [2] 14/2 92/13
reasons [5] 39/24 43/9 65/4 66/5 73/10
rebut [1] 26/20
rebuttal [3] 26/17 26/19 67/15
receive [1] 88/14
received [1] 74/11
recent [1] 76/10
recess [1] 51/9
reciting [1] 44/9
recognizing [1] 35/13
recollection [2] 31/3 77/6
record [10] 3/6 23/25 47/14 67/5 67/5 75/19 78/8 79/5 79/8 105/21
recover [3] 47/16 50/25 62/5
recovered [1] 51/6
recovery [1] 62/17
recross [2] 108/23 109/2
redirect [1] 108/22
refer [1] 89/15
reference [3] 25/17 38/15 39/13
references [4] 74/10 75/21 75/23 100/12
referencing [1] 55/8
referred [1] 34/19
Reflecting [1] 35/6
reflective [2] 35/1 36/1
refresh [1] 31/3
refused [1] 10/11
regard [7] 59/11 60/3 63/7 68/7 68/8 68/20 79/1
regarding [3] 60/4 66/22 84/4
regardless [4] 62/3 64/25 66/6 73/6
register [1] 46/11
Registered [2] 113/4 113/15
rejected [1] 48/22
related [2] 59/1 65/1
relates [1] 65/8
relating [1] 65/2
relationship [1] 38/3
relayed [1] 40/22
release [1] 38/20
relevance [7] 59/24 62/20 66/25 70/7 70/16 71/17 71/20
relevant [33] 17/19 25/25 29/14 33/20 37/25 38/10 38/12 57/2 59/13 59/16 59/21 62/2 64/9 64/13 64/13 64/15 64/23 65/3 65/9 65/12 66/6 66/10 67/7 67/15 69/15 69/17 69/23 71/15 71/22 72/4 73/1 73/11 73/13
relief [2] 42/24 43/3
rely [1] 49/2
relying [2] 44/21 85/9
remains [4] 54/10 64/24 66/6 66/9
remarks [1] 25/5
remedies [2] 7/16 39/17
remedy [4] 11/19 13/6 69/15 69/17
remember [1] 98/5
remind [1] 57/9
reminds [1] 31/23
repeat [2] 43/23 63/17
repeating [1] 61/7
replace [1] 108/16
reply [1] 12/25
report [12] 14/8 23/11 23/12 44/19 45/9 45/17 47/15 47/21 48/6 50/6 91/20 92/24
reported [1] 113/7
reporter [3] 99/19 113/5 113/15
reports [1] 40/23
representation [1] 87/23
representations [1] 54/13
represents [1] 48/7
request [3] 50/7 77/3 94/14
requested [1] 85/15
requesting [1] 52/5
requests [3] 22/19 54/11 57/1
require [3] 75/1 91/2 95/21
rescheduled [1] 32/24
resolved [4] 54/1 76/18 84/18 91/8
resolves [1] 59/10
resolving [1] 77/6
respect [4] 57/5 77/15 77/15 77/24
respond [7] 24/19 25/14 26/11 30/8 46/6 72/14 79/22
responded [3] 56/20 58/5 78/17
responding [1] 64/6
response [6] 23/10 45/22 47/20 59/20 63/14 78/18
responses [2] 12/4 78/21
responsive [1] 24/6
rest [3] 57/7 70/5 87/6
restrict [1] 70/3
restricted [1] 68/25
result [1] 6/2
results [1] 58/11
retrial [1] 32/25
retried [1] 32/19
retrospect [2] 44/23 45/7
review [1] 102/18
revisiting [1] 60/11
right [84] 4/8 7/3 8/1 8/9 8/9 8/13 8/15 8/17 8/18 9/1 9/4 9/4 10/1 10/2 10/24 13/6 15/25 16/11 16/19 16/21 17/13 17/16 18/2 18/10 18/15 19/15 20/13 24/20 26/13 26/14 27/3 30/23 30/23 33/15 36/19 38/14 41/22 42/19 43/10 43/10 43/16 47/5 47/22 49/25 50/16 51/8 52/12 52/12 53/13 53/16 53/18 54/24 56/23 58/7 58/8 58/14 59/9 60/25 61/24 62/22 63/9 66/11 69/10 69/25 71/23 71/25 72/1 74/12 81/2 82/3 84/1 88/6 95/7 96/11 99/10 100/20 101/8 102/24 105/11 106/9 106/21 107/5 107/11 112/18
rise [1] 112/20
risk [3] 61/7 70/20 71/7
roll [1] 34/1
room [2] 34/1 102/24
rooms [1] 9/18
rounds [1] 108/20
royalty [16] 6/11 7/5 11/8 11/24 12/2 12/5 12/6 12/18 12/22 13/2 44/3 45/24 45/25 49/19 50/5 61/13
RPR [1] 1/25
rule [19] 5/16 11/11 12/4 13/8 19/8 19/25 42/18 44/10 45/21 47/19 51/24 61/5 61/10 70/18 70/19 72/5 79/14 88/24 95/25
ruled [1] 90/2
ruling [5] 21/25 39/24 57/15 84/9 88/20
rulings [2] 5/25 76/10
running [1] 45/24


## S


said [30] 11/7 12/20 12/25 14/15 18/24 19/9 19/23 20/17 23/18 24/1 24/6 30/12 37/20 39/12 44/1 48/14 48/25 49/6 56/2 57/22 57/24 58/2 59/15 61/8 67/7 75/4 83/8 90/16 104/10 113/10
sales [5] 48/18 48/19 48/24 48/24 49/3
same [16] 9/10 9/16 10/3 29/18 31/8 35/8 36/2 36/4 36/7 55/15 72/18 72/19 80/16 81/6 92/14 93/17
sample [4] 98/23 99/2 99/3 99/6
Samsung [1] 64/17
satisfied [1] 62/10
satisfy [1] 51/17
saturation [1] 34/2
saw [2] 25/16 30/20
say [66] 4/19 12/5 12/23 13/22 15/6 15/11 19/14 23/10 23/12 24/18 26/18 26/23 27/5 28/11 28/18 29/17 30/7 30/8 31/15 33/15 35/16 36/12 36/17 36/23 37/2 37/4 37/11 37/12 38/1 38/11 39/10 41/9 41/14 41/24 43/12 43/13 43/14 44/5 44/6 44/17 45/23 46/18 46/21 46/24 47/3 54/19 56/17 56/18 63/4 66/14 66/23 71/8 73/1 75/2 78/7 78/11 78/11 79/15 83/18 86/20 87/1 88/4 90/14 93/20 97/1 98/22
saying [17] 12/21 26/11 27/23 29/23 34/13 40/9 44/11 56/23 58/4 61/17 69/14 70/17 73/3 83/9 90/22 94/23 95/11
says [17] 12/17 13/2 16/3 16/4 29/16 32/1 38/3 39/22 40/10 47/15 48/6 55/19 55/22 79/4 94/2 98/25 108/4
scale [1] 61/9
schedule [2] 86/5 104/25
scheduled [1] 33/9
school [1] 9/15
scope [5] 68/8 68/12 86/9 91/19 109/11
seal [3] 100/7 100/18 100/23
sealing [1] 101/6
seat [3] 14/11 63/3 81/20
seated [2] 102/5 104/7
second [5] 15/12 32/13 36/11 48/10 53/1
secondary [2] 64/24 67/14
secret [5] 32/14 34/6 35/18 38/16 39/13
secrets [2] 31/19 38/11
Section [6] 11/4 11/17 12/10 13/3 42/25 67/10
SEDDON [4] 2/7 3/21 3/22 47/24
see [13] 4/8 6/18 10/15 22/6 42/13 47/13 48/4 56/9 59/12 77/13 91/20 97/14 112/19
seeing [2] 76/4 82/15
seek [2] 8/15 50/4
seeking [6] 6/11 7/5 7/16 8/14 9/3 61/11
seem [2] 73/16 85/2
seemed [4] 20/2 58/9 88/19 96/6
seems [9] 12/21 30/1 40/19 45/9 46/8 57/5 82/7 86/20 88/3
seen [4] 4/25 12/15 15/6 89/17

S

selected [1] 105/7
selection [1] 101/21
sell [1] 34/21
selling [3] 10/10 49/24 51/12
sells [1] 34/21
send [3] 103/19 105/8 105/9
sense [3] 27/25 54/21 67/22
sensor [18] 34/23 34/25 35/1 35/1 35/5 35/10 35/22 36/1 36/2 36/4 36/4 36/16 37/2 37/5 40/25 41/12 41/15 42/11
sensors [3] 34/21 35/2 35/6
sentence [1] 77/22
sentences [1] 15/11
separable [1] 72/22
separate [6] 7/22 40/16 43/9 72/8 76/16 77/8
separately [1] 40/6
serious [1] 106/4
set [5] 34/24 64/17 72/19 76/24 107/6
Setting [1] 64/10
settlement [1] 51/10
seven [10] 6/6 6/8 6/15 13/18 21/12 34/5 74/7 75/5 75/6 79/3
seventh [2] 9/4 52/12
shanzhai [2] 23/14 24/25
shareholder [1] 24/13
shareholders [1] 87/24
SHAW [8] 2/6 3/19 3/20 17/4 31/5 34/19 37/20 88/9
shell [1] 34/24
shift [2] 8/1 8/6
shifting [3] 7/13 7/17 15/17
short [1] 37/9
shot [1] 63/18
should [48] 5/7 11/10 13/9 13/20 18/21 32/7 36/9 43/15 46/25 49/18 51/7 51/8 57/11 57/21 57/23 57/25 58/3 60/5 64/1 66/8 69/2 69/7 73/5 73/8 73/9 74/20 74/24 76/14 76/25 83/21 85/14 90/1 92/9 94/7 98/23 99/16 99/19 99/24 101/16 103/16 105/3 105/22 106/24 107/7 108/2 108/5 109/18 111/22
shouldn't [7] 17/12 17/14 41/13 56/3 58/4 68/25 77/3
show [1] 31/24
showing [2] 100/11 105/17
shown [2] 91/19 108/5
shows [5] 37/15 38/6 64/20 67/25 102/15
Shure [6] 59/14 70/17 71/1 72/5 72/22 73/16
shuttle [1] 104/1
side [20] 19/11 29/23 35/4 35/8 42/16 61/14 64/14 65/9 65/12 73/11 73/13 82/14 87/1 87/5 91/13 96/20 104/2 104/17 111/9 111/14
side's [1] 78/23
sided [1] 65/25
sides [7] 46/12 56/24 56/25 59/15 78/22 82/16 109/3
similar [4] 18/10 36/5 36/8 71/12
similarities [1] 36/10
similarity [1] 71/4
Similarly [1] 58/1
simply [4] 25/9 61/11 62/18 70/14
since [4] 49/12 59/22 64/4 64/20
sit [4] 9/16 9/23 10/14 88/23
sitting [5] 15/13 46/13 90/16 91/5 101/14
situation [5] 18/6 18/10 22/6 48/21 91/16
six [9] 6/7 6/8 13/18 21/13 34/5 74/7 105/12 105/21 111/8
six-page [1] 111/8
skin [1] 70/18
skipped [1] 58/23
slice [1] 73/7
slide [2] 89/20 89/21
slides [2] 90/22 90/23
sliding [1] 61/9
slightly [1] 60/7
slinging [1] 27/2
slippery [1] 61/20
slope [1] 61/20
small [1] 61/18
smaller [1] 21/9
so [194]
sold [4] 38/11 49/7 49/7 49/17
some [30] 19/4 23/11 23/15 24/9 25/6 25/14 27/17 27/21 30/13 35/2 35/19 36/9 37/10 38/6 51/24 52/9 54/22 55/3 57/4 61/18 64/7 74/4 77/24 77/25 79/16 80/3 85/2 105/14 109/2 110/23
somebody [16] 9/14 19/10 20/1 22/1 22/4 22/7 22/8 27/23 28/22 82/6 82/6 86/22 87/3 92/23 103/16 104/5
somehow [1] 71/10
someone [1] 71/8
something [24] 17/25 18/24 27/23 30/1 35/23 36/16 37/1 38/4 39/7 55/13 57/24 58/2 63/4 66/16 69/8 75/9 77/19 84/22 88/2 90/8 91/6 91/15 92/24 104/11
sometime [2] 98/3 108/22
sometimes [9] 60/14 86/21 88/24 105/13 105/15 105/16 105/19 108/23 108/23
somewhere [2] 33/13 52/20
soon [2] 107/3 112/19
sorry [8] 6/7 6/7 19/22 55/5 58/25 59/1 60/11 70/25
sort [3] 31/22 56/17 109/13
sorted [1] 99/8
sound [3] 3/3 24/11 27/9
Sounded [1] 33/3
sounds [4] 19/15 58/18 60/10 87/5
specific [1] 20/7
specifically [4] 63/23 64/6 66/8 73/7
spend [1] 55/12
splitting [1] 76/1
sponte [2] 52/24 79/9
stand [4] 36/8 86/25 89/9 93/9
standard [1] 4/22
Standby [2] 14/11 107/23
start [8] 35/11 52/22 94/9 94/15 102/25 103/13 103/14 105/25
started [5] 4/23 34/22 36/2 36/3 42/21
starting [3] 36/7 95/12 95/15
starts [2] 94/18 95/1
state [1] 9/19
stated [2] 108/14 113/8
statement [2] 54/2 56/20
statements [6] 13/17 25/19 54/16 55/3 57/4 84/18
STATES [2] 1/1 52/18
statute [6] 12/17 13/1 13/12 15/23 43/7 44/9
statutory [6] 6/10 7/6 8/12 8/20 11/14 11/16
stay [1] 32/7
step [1] 83/17
still [21] 5/20 6/11 8/10 13/18 17/13 17/18 45/18 47/11 52/4 66/20 73/9 73/11 74/4 76/14 78/2 80/23 84/21 85/12 86/2 101/16 110/19
stipulating [1] 111/24
stipulations [1] 110/24
stole [3] 31/19 37/4 41/14
stop [8] 6/25 10/6 10/9 15/24 16/15 40/11 49/21 51/11
Store [1] 14/24
story [5] 34/19 37/19 40/3 40/20 40/22
straight [3] 49/10 49/13 95/4
strategic [2] 18/13 18/17
street [1] 10/18
strike [2] 45/17 103/20
strikes [2] 101/18 104/3
struck [3] 13/8 103/16 103/23
Stryker [2] 29/10 29/12
Stryker's [1] 29/15
studied [1] 37/12
stuff [8] 23/19 24/10 24/17 57/2 65/3 84/8 91/4 94/24
styled [1] 42/22
sua [2] 52/24 79/9
subject [2] 11/5 96/2
subsequently [1] 82/1
substantial [1] 71/4
substantially [1] 71/12
substantive [1] 42/4
such [3] 52/10 61/5 102/20
suggested [2] 23/12 89/12
suggesting [1] 33/3
suggestion [1] 21/14
sum [1] 45/25
summary [9] 5/3 5/16 14/6 14/8 50/15 64/2 79/9 79/14 79/18
supplemental [1] 78/20
supports [1] 44/8
suppose [2] 11/21 11/25
supposed [3] 39/25 59/12 66/25
supposedly [1] 33/23
Supreme [1] 62/12
sure [22] 5/5 6/13 7/2 9/10 21/10 36/13 52/25 53/2 57/9 78/12 79/22 80/15 82/9 93/11 96/3 97/22 101/19 102/20 106/21 107/8 107/9 112/2
Surgical [1] 29/9
surprise [2] 86/16 100/25
survived [2] 55/14 55/21
survives [1] 70/18
suspenders [1] 96/7
switch [1] 80/8

T

table [1] 104/1
take [27] 9/6 9/13 10/18 14/24 15/7 17/3 21/15 23/23 42/15 50/2 51/9 52/21 70/1 70/7 70/16 79/23 81/15 83/11 84/10 89/20 91/7 93/8 101/1 103/13 105/23 106/13 111/8
taken [1] 4/21
taking [4] 5/20 16/5 19/22 112/17
talk [14] 24/25 25/18 30/21 43/25 65/10 65/24 76/18 76/25 82/17 82/23 83/3 83/17 96/1 99/6
talked [5] 19/20 21/12 39/9 39/12 83/21
talking [18] 11/2 15/17 20/19 21/9 23/9 30/20 35/22 42/21 46/10 57/3 57/22 62/25 65/1 69/18 76/1 77/10 80/1 90/10
tear [1] 37/16
technical [1] 99/18
technology [6] 28/6 33/23 33/24 37/23

T
technology... [2] 38/7 41/15
teeth [1] 70/19
tell [20] 17/24 19/5 20/11 23/2 55/20 57/3 58/10 60/20 61/13 75/11 77/5 85/7 85/15 86/6 98/10 99/5 102/11 103/4 104/10 108/12
telling [1] 19/2
tendered [4] 51/21 52/18 62/4 96/1
tendering [1] 62/18
tentative [1] 86/3
Terapin [1] 4/7
term [1] 107/24
terms [4] 4/20 5/7 79/6 97/15
test [3] 64/17 71/4 107/7
tested [1] 35/10
testified [1] 86/13
testify [6] 17/24 18/8 18/12 18/20 85/22 92/23
testifying [1] 89/22
testimony [11] 42/25 49/3 72/9 89/13 89/16 89/19 89/21 90/7 90/11 91/2 96/3
than [17] 12/18 13/2 15/18 17/18 26/5 44/3 49/9 65/18 71/2 71/7 73/12 74/22 85/10 96/20 96/22 100/3 104/4
thank [30] 4/17 5/25 10/23 19/15 21/22 24/20 27/3 47/22 50/1 53/13 57/16 62/22 66/11 66/13 68/21 69/25 72/12 72/16 73/24 80/19 88/6 88/7 89/6 89/7 96/9 100/20 108/16 108/17 110/14 112/5
Thanks [2] 42/7 112/18
that [603]
that's [88] 4/20 5/18 6/14 7/24 9/25 9/25 10/19 10/20 10/20 11/5 11/15 13/15 13/19 15/15 18/12 18/16 22/13 24/2 26/14 28/2 28/19 30/11 30/14 32/23 34/5 38/7 40/5 40/16 44/25 45/5 45/9 45/14 46/17 46/17 47/9 50/17 52/6 54/8 58/13 58/18 60/20 67/12 67/13 69/8 69/16 70/8 73/3 74/23 75/24 77/10 77/14 78/5 83/8 84/1 84/7 84/22 88/17 89/2 90/6 90/17 90/19 90/24 91/15 92/3 92/6 92/15 93/16 94/18 95/2 95/3 95/21 97/11 97/13 97/19 98/19 98/22 99/7 100/14 100/18 102/19 104/8 104/12 105/5 105/15 106/18 110/8 111/13 112/2
their [67] 9/14 9/19 9/20 9/25 11/4 12/20 13/4 13/6 14/22 23/12 24/8 25/19 26/15 31/19 31/19 32/10 32/16 33/11 33/14 34/23 35/12 35/15 37/12 37/14 37/19 38/21 40/1 40/11 41/14 41/25 42/4 44/1 44/2 45/21 51/6 51/17 51/19 52/1 52/10 52/13 55/16 56/1 58/2 58/3 58/9 60/8 63/18 67/18 68/16 74/8 74/16 75/13 78/18 81/22 85/23 85/24 86/9 92/25 93/22 99/3 102/15 104/2 104/11 109/4 109/7 110/17 111/16
theirs [1] 104/5
them [65] 9/18 9/20 9/22 9/23 9/24 12/12 17/10 17/11 18/23 19/5 21/10 21/13 21/20 25/13 30/1 31/14 34/14 41/11 42/5 49/21 49/23 51/3 52/24 73/19 73/23 75/1 75/11 82/24 82/24 82/25 85/7 86/15 87/8 88/24 88/24 88/25 93/8 93/10 93/17 93/18 93/19 93/22 93/23 94/6 94/7 94/13 94/19 95/19 96/2 97/16 97/21 98/25 99/5 102/11 102/14 103/1 103/9 103/19 103/20 105/9 105/10 110/17 110/17 110/19 110/22
theme [1] 49/17
then [56] 9/15 14/24 14/25 17/17 20/21 21/5 21/20 22/3 23/4 29/13 33/22 35/13 38/2 38/16 52/22 54/17 57/6 58/4 58/5 60/7 61/22 61/23 62/1 62/19 66/22 68/4 69/10 71/16 71/25 72/4 72/24 73/2 75/7 81/1 85/18 86/10 86/20 86/22 88/22 89/23 89/25 91/15 92/13 98/7 102/22 103/8 103/14 103/25 105/11 106/1 107/3 108/4 109/5 109/15 111/12 111/17
theory [3] 44/7 47/18 61/5
there [110] 5/11 6/1 7/3 9/2 9/4 11/13 11/18 12/10 13/3 13/7 13/18 17/6 18/6 20/7 20/15 21/18 21/25 22/6 24/12 24/16 25/2 25/5 26/4 26/9 26/10 27/20 29/11 33/4 33/4 33/8 34/13 35/3 35/4 36/25 38/23 39/16 40/1 40/6 40/21 48/11 48/15 49/13 49/14 49/15 50/11 51/24 52/2 52/3 53/22 55/2 55/20 57/11 58/16 59/24 59/24 61/9 61/19 61/20 61/23 61/23 61/25 62/12 62/20 64/5 65/21 66/21 67/25 68/18 68/19 70/15 71/18 71/20 71/23 71/24 72/2 72/8 74/1 76/2 76/6 77/7 77/8 77/23 78/4 81/6 81/12 82/4 82/25 84/15 85/1 85/18 87/3 87/7 87/13 87/17 88/2 91/25 92/5 100/22 101/12 102/8 103/20 104/17 106/23 107/16 108/8 109/2 109/9 109/10 110/19 111/16
there's [3] 44/18 108/22 109/1
thereof [1] 113/11
these [15] 17/22 22/24 25/14 26/16 33/15 33/25 34/6 34/16 35/2 49/17 51/1 57/23 79/6 82/12 84/21
they [219]
they're [10] 12/7 23/1 24/18 33/24 39/4 44/9 46/24 61/6 76/21 85/7
thing [12] 9/16 16/14 30/6 30/8 50/20 72/22 87/13 95/12 98/21 101/15 111/20 112/9
things [19] 5/24 11/2 23/11 27/15 38/23 40/2 40/6 42/4 62/15 64/14 76/12 79/25 80/4 86/23 87/17 90/1 90/3 102/19 111/17
think [99] 8/10 12/16 12/19 13/7 13/9 13/20 15/12 16/7 16/10 18/4 18/21 19/6 21/7 21/11 21/20 21/23 22/22 23/16 24/7 24/16 25/12 26/16 28/9 30/11 30/24 33/6 38/20 39/4 39/7 39/18 40/6 40/15 41/16 41/18 41/18 42/1 45/11 46/23 48/3 48/10 48/13 49/9 50/5 50/8 50/9 50/11 51/7 51/25 55/1 56/11 56/12 57/17 57/21 58/11 58/22 59/10 59/21 60/2 60/5 61/8 63/5 68/17 70/5 70/8 71/9 74/17 74/23 76/8 76/9 79/1 79/2 79/18 80/4 82/20 85/12 85/19 86/2 86/14 86/23 87/14 87/21 88/2 88/10 89/3 89/14 90/17 91/23 92/13 93/14 93/16 95/10 99/21 104/8 105/2 105/3 106/8 109/9 110/25 112/1
thinking [8] 20/12 37/22 45/10 46/11 60/15 80/1 90/7 96/16
thinks [6] 42/10 42/12 52/9 76/14 82/6 87/8
third [4] 20/8 20/9 67/21 100/13
third-party [1] 100/13
this [119]
those [30] 6/9 6/12 15/11 17/8 17/14 18/14 18/23 23/15 23/17 25/4 25/25 26/1 28/7 28/12 28/16 32/16 54/16 55/23 66/5 68/14 73/17 73/20 76/14 80/17 80/23 80/25 87/24 90/1 102/1 111/22
though [3] 8/5 13/1 32/2
thought [3] 56/9 72/3 85/4
three [12] 15/11 31/2 31/7 53/20 54/6 80/4 88/8 104/2 104/21 104/22 107/22 108/24
through [15] 4/23 5/2 9/23 16/24 63/16 63/19 71/3 86/3 88/23 94/20 99/25 102/9 102/14 103/21 110/2
throughout [1] 98/4
throw [1] 23/13
Thursday [1] 97/8
tie [3] 40/21 66/1 73/21
time [38] 4/21 5/10 15/6 15/10 18/21 19/3 22/3 22/5 24/4 31/20 36/12 37/16 45/10 55/12 67/3 80/3 82/22 84/12 85/11 91/3 92/17 93/15 93/17 93/20 94/8 96/17 96/24 99/5 99/8 99/10 102/4 103/14 103/15 104/3 105/13 105/15 105/20 106/23
timed [1] 17/20
times [1] 18/8
today [3] 40/8 78/8 100/18
together [4] 52/6 99/16 101/6 112/16
told [4] 66/3 99/19 110/1 110/5
too [13] 28/12 28/19 29/6 29/6 45/10 49/17 64/3 82/10 92/9 102/2 104/6 111/13 111/16
took [1] 15/11
tore [3] 35/10 36/5 38/4
torn [2] 37/17 37/18
tort [1] 38/2
total [7] 6/15 6/16 15/20 43/11 81/2 103/22 104/4
totally [3] 27/8 40/4 92/3
touch [1] 107/5
touches [1] 31/7
toward [1] 21/18
town [1] 86/22
tracking [2] 7/2 8/22
trade [7] 31/19 32/14 34/6 35/18 38/11 38/16 39/13
transcript [11] 1/11 20/5 20/6 20/15 88/21 91/2 91/14 100/3 100/4 111/7 113/6
transmitted [1] 35/5
transpired [1] 52/6
traveling [1] 62/6
treating [1] 40/5
treatments [1] 106/11
trebled [2] 11/18 11/20
trebling [2] 11/14 59/24
trial [81] 5/7 5/8 5/8 5/9 5/21 6/12 6/20 6/21 6/23 7/3 7/4 7/22 7/23 8/5 8/9 8/11 8/16 8/17 9/2 10/16 10/19 12/7 13/19 13/20 16/1 16/12 16/19 16/21 17/11 17/20 18/7 18/21 21/15 24/3 25/4 26/6 28/8 32/12 32/17 33/5 33/8 46/14 46/20 46/22 50/11 51/7 51/12 51/23 52/5 52/11 54/5 54/10 55/19 55/21 61/24 69/10 71/25 72/2 74/21 74/21 77/23 83/15 83/19 86/21 87/22 89/13 89/16 90/15 91/2 91/14 98/13 99/10 99/24 100/4 100/5 100/19 101/1 101/16 103/15 106/20 111/3

T

trials [1] 96/23
trick [1] 53/17
tried [7] 5/12 30/15 31/11 34/11 75/9 82/7 111/4
triple [1] 11/25
tripled [1] 8/7
true [1] 64/24
try [8] 23/5 74/6 75/15 78/14 89/4 91/8 95/4 97/9
trying [15] 15/15 39/19 40/24 41/8 47/18 66/1 79/12 82/6 82/20 83/1 83/24 86/1 88/11 89/14 92/23
Tucker [1] 4/6
Tuesday [3] 97/6 97/10 104/25
turn [2] 65/21 74/8
turning [1] 58/15
turns [1] 91/12
two [32] 3/4 8/19 11/2 18/6 18/11 21/18 22/19 23/10 24/5 33/16 39/9 42/15 43/9 48/19 50/25 58/24 59/4 66/15 67/24 74/9 75/20 75/21 80/7 80/24 81/1 81/6 81/13 85/10 93/8 100/3 104/19 104/21
two-page [2] 42/15 80/7
Tyler [1] 25/6
types [2] 26/16 90/1
typo [1] 107/16
typos [1] 97/22

U

U.S [1] 49/5
ultimate [1] 6/23
under [31] 8/11 8/12 8/19 8/20 11/4 11/11 11/17 13/6 13/8 15/23 15/23 18/25 20/9 36/25 39/7 42/25 43/6 43/7 44/10 45/12 59/25 60/1 60/2 60/9 61/5 61/10 67/10 70/1 70/19 72/4 93/22
underlying [1] 48/17
understand [32] 5/6 7/1 10/13 14/2 15/15 22/14 25/5 30/18 46/13 47/12 49/25 56/16 56/22 57/15 60/18 60/23 60/24 61/16 61/20 74/25 76/6 77/20 79/21 82/9 82/21 83/7 83/12 84/23 86/3 92/10 99/22 112/4
understanding [13] 22/25 26/4 32/23 33/9 53/25 57/8 74/13 80/24 83/5 83/13 104/11 107/19 111/23
understands [2] 30/24 95/24
understood [8] 16/23 28/1 63/10 79/7 79/20 90/5 95/18 99/14
unequitable [2] 18/3 77/9
unfair [2] 65/23 79/19
unfairly [3] 59/16 60/1 70/19
unfolds [1] 21/15
unfortunately [1] 96/15
unit [4] 45/24 48/18 48/24 49/3
UNITED [4] 1/1 3/3 24/11 52/18
units [1] 49/7
unless [4] 27/16 56/3 67/19 109/2
unlikely [1] 82/8
unnamed [1] 41/3
unreasonable [1] 19/15
unrelated [2] 38/7 40/4
until [5] 34/4 47/14 67/19 91/20 103/22
untimely [1] 79/13
up [49] 5/10 7/10 9/14 15/12 19/4 19/25 21/16 27/10 28/10 31/24 34/8 34/24 36/8 38/19 42/14 45/25 46/12 47/14 54/25 58/13 62/6 62/24 63/6 64/7 65/6 67/1 71/11 76/22 88/12 89/9 89/19 89/21 91/18 91/19 92/2 92/22 97/9 97/19 102/5 103/11 105/5 105/17 105/20 107/7 108/19 110/1 111/3 111/10 111/17
upcoming [2] 25/4 28/8
upon [1] 49/3
ups [1] 91/3
us [32] 16/11 17/13 23/22 24/1 26/12 30/9 35/13 35/17 37/23 37/23 42/4 53/8 53/20 61/3 61/22 80/3 85/7 85/16 86/6 86/16 88/12 89/4 90/3 93/10 94/23 95/20 97/17 103/4 106/15 107/3 110/2 110/5
USDCJ [1] 1/15
use [6] 23/1 37/23 70/24 93/3 95/13 104/5
used [7] 34/25 35/6 35/11 36/3 65/14 73/15 92/21
useful [1] 68/9
usefully [1] 54/11
using [2] 25/14 70/21
usually [1] 88/25
utility [20] 11/4 11/13 11/24 37/1 37/3 41/11 43/7 45/21 48/5 48/9 54/24 60/9 61/2 62/1 62/21 63/7 69/1 70/4 72/20 73/1

V

valid [4] 26/22 26/23 28/15 31/13
validity [2] 29/1 76/11
variety [2] 65/4 73/10
various [1] 110/12
verdict [4] 66/9 68/25 75/10 78/23
version [2] 108/15 108/16
versus [4] 3/2 29/9 50/10 59/14
very [32] 5/11 7/15 21/20 21/22 25/18 27/4 36/5 39/5 40/3 40/5 42/7 47/23 49/13 50/1 51/2 53/14 60/20 62/23 66/12 68/21 72/12 72/17 73/24 75/19 77/17 78/14 82/1 86/8 100/21 103/12 110/14 112/18
video [4] 98/15 98/25 99/4 99/11
view [1] 40/11
vindicate [1] 10/2
violated [1] 23/23
Virginia [1] 53/11
voir [9] 97/25 98/1 101/10 101/17 102/10 102/16 102/18 102/23 105/6

W

wait [5] 56/9 56/17 59/21 71/8 71/10
waiting [1] 9/13
waived [3] 13/5 13/10 42/13
walk [1] 102/14
Walker [1] 5/14
want [57] 6/20 7/2 9/9 13/23 17/24 19/12 20/11 20/21 22/22 23/4 30/7 31/17 32/13 34/8 34/16 39/18 41/23 43/13 44/12 45/4 51/18 51/22 52/23 53/7 55/12 55/18 63/1 63/13 63/23 67/2 67/5 67/22 67/25 73/6 76/19 78/7 78/11 79/22 80/2 83/18 84/9 85/24 86/4 88/20 90/4 94/15 95/16 96/25 97/17 97/19 99/8 100/16 100/17 103/11 110/16 111/12 112/2
wanted [16] 4/17 5/5 5/19 13/14 46/16 66/16 66/23 68/23 72/9 76/13 85/10 101/20 101/21 106/15 107/20 109/25
wants [7] 5/20 22/5 22/9 32/8 93/14 94/25 95/2
was [94] 4/21 5/11 5/11 6/1 11/9 15/2 18/3 20/6 20/7 20/9 20/12 20/15 21/14 29/12 29/14 30/5 32/11 32/17 33/3 39/23 39/24 41/16 44/7 44/7 45/11 46/8 47/19 50/4 50/5 50/8 51/2 52/4 53/11 53/25 54/19 54/24 55/5 55/14 55/17 55/18 56/1 56/10 56/11 58/6 58/8 58/16 58/22 59/1 59/20 61/3 61/4 63/22 66/3 67/7 70/14 71/23 72/22 74/1 76/17 77/8 77/9 78/15 78/16 78/19 78/20 78/22 78/23 79/9 79/10 81/14 82/4 83/1 83/4 83/9 83/23 83/24 85/3 85/18 85/19 86/4 86/12 86/15 88/17 89/12 89/14 89/15 90/6 93/12 95/10 96/16 110/18 110/19 110/23 111/23
wasn't [6] 8/8 22/10 50/8 77/1 78/25 92/24
waste [2] 22/5 67/3
watch [10] 14/22 14/23 27/22 33/22 34/3 34/4 35/12 35/23 36/3 49/19
watches [2] 34/23 49/18
way [18] 5/1 5/2 15/18 19/7 23/5 31/14 42/18 62/12 65/5 79/24 84/13 88/6 91/25 96/14 102/15 102/21 104/8 104/12
we [435]
We'd [1] 56/13
we'll [7] 21/23 23/5 93/8 95/21 97/5 107/4 108/12
we're [15] 3/1 6/14 8/4 10/3 10/7 10/11 14/17 17/19 35/14 43/5 81/21 82/13 86/17 104/18 109/6
wear [1] 34/3
Wednesday [10] 52/15 63/2 80/2 86/23 89/22 97/7 97/10 99/20 111/10 111/11
week [11] 5/1 5/1 9/17 9/24 13/19 39/25 81/20 96/13 98/3 101/11 105/1
weeks [5] 26/7 41/8 100/3 102/1 111/21
weigh [1] 12/24
welcome [1] 78/10
well [35] 12/17 13/13 15/10 16/24 21/20 28/11 28/18 29/4 29/8 33/15 34/14 35/25 36/4 36/17 36/20 37/15 38/4 41/9 43/22 46/23 52/21 58/8 59/1 62/16 69/5 71/17 83/5 83/22 86/23 86/24 92/20 97/4 98/9 98/12 99/21
well-accepted [1] 62/16
went [4] 14/23 24/7 63/15 102/1
were [38] 8/14 11/2 11/13 11/18 16/10 17/9 18/9 20/3 22/11 27/8 28/22 29/13 30/19 30/20 31/8 37/19 37/22 39/10 41/25 44/7 45/10 46/18 49/6 49/7 49/11 62/24 71/8 72/2 72/8 74/21 81/5 82/20 90/15 92/6 96/16 98/13 111/24 112/21
weren't [4] 8/14 93/11 94/12 110/24
what [102] 5/6 8/22 10/20 12/9 12/13 14/21 15/15 16/4 16/16 18/16 19/19 19/23 19/24 20/12 22/13 23/2 23/3 24/17 24/23 26/3 26/20 27/5 29/19 29/21 30/12 31/16 32/6 36/5 39/3 39/8 39/9 39/21 40/9 42/9 44/6 44/7 44/8 44/15 44/17 44/25 45/9 46/4 46/20 47/3 49/6 49/10 49/11 52/22 54/19 55/13 56/22 57/22 58/6 59/3 61/14 62/11 62/24 64/25 66/14 67/5 68/6 73/6 74/3 75/4 75/8 75/14 77/10 77/20 78/11 79/21 80/16 82/7 82/18 82/20 82/21 83/8 83/12 84/23 88/17 88/19 89/2 89/15 89/18 90/17 91/9 91/23 93/12 95/21 96/3 96/16 96/21 97/14 97/23

W


what... [9] 98/3 103/2 103/7 104/24 108/12 109/14 110/5 111/7 112/17
what's [3] 43/15 72/24 91/18
whatever [8] 27/18 30/13 43/13 43/21 75/3 75/7 95/19 98/20
when [34] 12/24 14/12 14/21 14/22 15/16 18/11 31/23 36/2 55/22 56/1 58/13 60/14 65/10 67/9 69/18 72/25 74/13 86/6 88/13 90/16 92/5 94/3 94/14 94/15 94/15 94/25 95/1 98/11 102/18 103/6 105/5 107/6 109/16 111/23
where [25] 13/3 13/5 13/25 18/6 19/9 22/6 23/19 24/7 37/2 42/12 47/13 50/18 52/17 55/19 58/19 65/15 66/1 71/18 71/19 71/23 79/4 82/9 85/3 99/3 100/12
whether [24] 10/17 11/3 11/8 12/5 12/6 12/8 16/20 20/8 22/12 33/7 33/20 44/16 64/10 66/7 66/8 67/17 73/7 77/18 80/22 85/7 91/18 103/15 110/3 110/12
which [39] 7/10 7/17 8/7 11/5 13/6 13/8 15/17 19/22 22/19 22/24 30/12 34/11 42/20 46/7 50/8 56/5 64/21 65/8 65/13 66/3 71/24 73/14 74/6 74/17 75/22 84/15 85/13 89/25 90/2 96/18 96/21 99/21 102/2 102/8 102/24 104/3 108/15 110/6 110/7
while [3] 24/18 91/4 101/13
whipsaw [1] 55/18
who [12] 18/7 18/11 18/24 19/10 49/4 68/14 85/16 85/21 103/5 103/6 109/20 112/17
whole [4] 16/14 64/14 90/22 91/5
whom [1] 20/20
why [29] 10/8 10/9 12/13 14/11 15/18 19/12 23/2 42/7 45/23 47/1 52/7 52/13 53/7 55/12 56/11 59/3 67/1 67/4 72/25 76/20 81/15 82/8 87/25 89/15 90/2 93/1 102/3 107/2 109/2
will [96] 14/12 19/23 22/13 24/3 30/2 42/17 50/2 50/16 52/14 52/21 53/8 56/21 56/25 57/1 57/6 57/8 57/9 58/12 60/11 69/23 70/1 70/2 70/4 70/7 70/9 71/2 75/2 78/8 78/13 79/23 80/10 80/15 81/19 81/20 83/11 83/16 84/9 84/12 84/18 85/21 85/21 86/19 86/20 87/10 87/23 89/2 89/19 89/19 89/20 92/12 93/7 94/2 94/6 96/7 97/9 98/2 98/7 98/11 99/6 99/20 101/7 101/10 102/5 102/8 102/9 102/10 102/11 102/23 102/25 103/2 103/3 103/7 103/9 103/9 103/12 103/17 103/18 103/21 103/24 103/25 104/3 104/6 105/6 105/9 105/13 105/23 105/24 105/25 106/1 106/14 108/14 108/16 111/10 111/17 112/9 112/19
will-call [1] 85/21
willful [12] 25/11 25/24 26/21 28/19 29/5 29/15 29/17 34/12 36/18 36/22 59/7 73/8
willfully [7] 28/16 31/12 32/5 33/21 37/3 41/13 59/23
willfulness [32] 6/20 7/7 7/9 7/15 7/23 7/25 8/24 9/2 9/5 11/19 14/17 15/20 59/22 60/4 61/1 61/25 62/21 64/9 64/13 65/2 66/8 68/20 68/24 69/3 69/11 69/23 70/3 71/18 71/19 71/21 72/1 73/22
Wilmer [1] 4/5
WilmerHale [1] 2/11
win [2] 26/25 27/1
withdraw [1] 83/9
within [3] 14/23 77/17 91/19
without [5] 19/10 20/1 42/1 48/17 89/5
without you [1] 89/5
witness [31] 20/17 20/22 20/24 21/4 22/7 24/8 43/4 43/11 43/12 82/23 83/3 83/16 83/20 85/23 87/15 89/20 89/22 90/11 93/7 93/9 93/18 93/20 93/24 94/3 94/16 95/20 95/25 100/15 106/17 109/4 109/14
witness' [2] 99/18 106/10
witnesses [11] 17/7 17/9 20/20 21/2 57/25 58/2 58/3 84/21 85/5 106/6 109/10
Wizard [1] 31/23
won't [6] 9/24 15/7 15/8 99/7 99/9 109/21
wonderful [1] 60/18
wondering [1] 77/2
work [24] 9/13 16/24 17/8 17/10 17/18 81/24 82/2 82/2 82/8 86/2 86/14 87/2 88/1 88/11 89/4 89/5 99/16 100/5 101/6 101/17 102/13 106/15 109/6 112/15
worked [4] 5/1 5/2 99/22 109/18
working [8] 85/1 86/1 86/17 87/6 87/10 87/11 103/21 107/8
works [1] 51/25
world [1] 105/17
worth [1] 96/22
would [59] 6/21 7/21 8/9 8/15 8/16 9/7 10/6 12/13 13/22 14/1 14/13 15/8 16/7 16/15 18/1 18/24 19/7 21/5 23/10 24/6 25/13 26/9 26/18 31/14 37/6 51/11 54/19 55/9 57/18 57/21 59/16 59/25 60/19 64/11 65/23 67/14 70/16 70/19 70/23 72/5 78/1 78/2 79/18 86/7 86/10 87/2 87/22 89/15 89/25 90/14 91/13 93/17 94/19 97/14 98/20 98/21 104/20 105/18 110/10
wouldn't [2] 41/18 62/2
wrist [1] 34/3
written [1] 102/20
wrong [2] 24/2 79/1


Y


yeah [13] 13/21 26/2 29/19 47/10 50/16 55/6 56/22 63/9 81/21 90/19 93/13 94/23 99/12
year [1] 52/17
years [4] 27/24 34/5 42/5 104/9
Yep [1] 79/20
yes [39] 6/17 9/8 10/4 10/22 21/14 21/22 22/16 22/17 29/2 33/1 37/8 54/7 59/5 69/18 69/19 70/11 72/15 73/4 75/24 76/4 77/1 80/18 81/5 81/24 82/19 94/12 101/25 102/12 102/13 102/16 102/17 102/21 103/1 103/3 103/8 104/15 108/10 112/12 112/14
yet [4] 12/15 17/22 74/11 98/2
you [265]
you'll [1] 109/19
You're [1] 69/5
Young [1] 49/6
your [133]


Z


zero [1] 13/4
Zimmer [1] 29/9
Zoom [3] 106/12 106/17 107/1